1  DAVID C. SHONKA
   Acting General Counsel
2  ADAM M. WESOLOWSKI
   GREGORY A. ASHE
3  Federal Trade Commission
4  600 Pennsylvania Avenue NW
   Washington, DC 20850
5  Telephone: 202-326-3068 (Wesolowski)
   Telephone: 202-326-3719 (Ashe)
6  Facsimile: 202-326-3768
7  Email: awesolowski@ftc.gov, gashe@ftc.gov.

8  STEVEN W. MYHRE
   Acting United States Attorney
9  BLAINE T. WELSH
10 Assistant United States Attorney
   Nevada Bar No. 4790
11 333 Las Vegas Blvd. South, Suite 5000
   Las Vegas, Nevada 89101
12 Phone: (702) 388-6336
13 Facsimile: (702) 388-6787

14 Attorneys for Plaintiff

15            UNITED STATES DISTRICT COURT
16               DISTRICT OF N

17 FEDERAL TRADE COMMISSION,        **2:18-cv-00030-GMN-PAL**

18         Plaintiff,

19         v.                        **FTC'S EXHIBITS IN SUPPORT
                                     OF ITS *EX PARTE* MOTION FOR
20                                   TEMPORARY RESTRAINING
                                     ORDER WITH ASSET FREEZE,
21 CONSUMER DEFENSE, LLC, *et al.*,  APPOINTMENT OF RECEIVER,
                                     AND OTHER EQUITABLE
22         Defendants.              RELIEF, AND ORDER TO SHOW
                                     CAUSE WHY A PRELIMINARY
23                                   INJUNCTION SHOULD NOT
                                     ISSUE
24
25                                   **FILED UNDER SEAL**
26
27                          **VOLUME 4**
28

1
2
3
## TABLE OF EXHIBITS
4
### Volume 1
5
6     Declaration of Adassa Brown ............................................................................ PX01
7     Declaration of Donna Brundage ....................................................................... PX02
8     Declaration of Ecco Debnam ........................................................................... PX03
9     Declaration of Karyn Evert .............................................................................. PX04
10    Declaration of Stephanie Frierson .................................................................... PX05
11    Declaration of Patrick Garrett .......................................................................... PX06
12    Declaration of Jason Jones ............................................................................... PX07
13    Declaration of Richard Latimer ........................................................................ PX08
14    ### Volume 2
15    Declaration of Joseph Parma ............................................................................ PX09
16    Declaration of Dennis Peterson ........................................................................ PX10
17    Declaration of Genevieve Podoski .................................................................... PX11
18    Declaration of Stefan Prince ............................................................................. PX12
19    Declaration of Lori Schulz ................................................................................ PX13
20    ### Volume 3
21    Declaration of Terri Riley ................................................................................. PX14
22    Declaration of Timothy Goss ............................................................................ PX15
23    Declaration of Wanda Jackson ......................................................................... PX16
24    Declaration of Matthew Wilson ........................................................................ PX17
25    Declaration of Sheri Charnock .......................................................................... PX18
26    Declaration of Timothy James .......................................................................... PX19
27
28

Declaration of Elizabeth Feldstein ................................................................................ PX20

    Declaration – Attachment C, pages 1 - 66

**Volume 4**

    Attachment D – Attachment X, part 1, pages 67 - 317

**Volume 5**

    Attachment X, part 2 – Attachment Z, part 1, pages 318-568

**Volume 6**

    Attachment Z, part 2 – Attachment DD, part 1, pages 569 - 819

**Volume 7**

    Attachment DD, part 2 – Attachment GG, pages 820 - 1074

**Volume 8**

    Attachment HH – Attachment PPP, pages 1075 - 1341

**Volume 9**

Declaration of David Aguayo ..................................................................................... PX21

Declaration of Jennifer Yadoo ................................................................................... PX22

    Declaration – Attachment C part 1, pages 1 - 217

**Volume 10**

    Attachment C part 2 – Attachment P, pages 218 - 465

**Volume 11**

    Attachment Q – Attachment CC, pages 466 - 563

Declaration of Renee Crawford ................................................................................. PX23

Declaration of Nathaniel Al-Najjar ............................................................................ PX24

Supplemental Declaration of Jennifer Yadoo ............................................................ PX25

Supplemental Declaration of Elizabeth Feldstein ...................................................... PX26

# EXHIBIT 20

# DECLARATION OF ELIZABETH FEDLSTEIN (continued)

# Attachment D

RECEIVED
NOV 0 1 2011
Utah Div of Corp & Comm. Code

# ARTICLES OF ORGANIZATION

## FOR

## AM PROPERTY MANAGEMENT, LLC



### ARTICLE I
### LIMITED LIABILITY COMPANY NAME

The name of the limited liability company is AM PROPERTY MANAGEMENT, LLC (the "Company").

### ARTICLE II
### PURPOSE

The purpose of the Company is to engage in any lawful act or activity for which a limited liability company may be organized under the laws of the State of Utah

### ARTICLE III
### REGISTERED OFFICE/AGENT

The name and address of the Company's initial registered agent in the State of Utah is

> Benjamin R Horton, Attorney
> 9035 S 700 E, Ste 203
> Sandy, UT 84070

### ARTICLE IV
### LOCATION

The address of the Company is as follows

> AM Property Management, LLC
> 8220 S 2660 E
> Sandy, UT 84093

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certified that the foregoing has been filed
and approved on this _____ day of _____ 2011
In this office of this Division and hereby issued
This Certificate thereof

Examiner_____ Date 11-4-11
Kathy Berg
Kathy Berg
Division Director

11-01-11P01 52 RCVD

Date   11/01/2011
Receipt Number 3741924
Amount Paid   $70 00

8142329

PX20 - 68

## ARTICLE V
### MANAGER-MANAGED

The Company is to be manager-managed   The name and street address of the initial manager is as follows

Amparo Moncayo
8220 S 2660 E
Sandy, UT  84093

## ARTICLE VI
### DURATION

The duration of the Company shall be ninety-nine (99) years from the date these Articles of Organization are filed with the State of Utah

IN WITNESS THEREOF, the undersigned manager and organizer has executed these Articles of Organization pursuant to Utah Code Ann  § 48-2c-403 on this, the 31st day of October, 2011

**MANAGER**

Amparo Moncayo                                  10/31/11
                                                Date

10/31/2011                    Articles of Organization                    Page 2 of 2



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: AM PROPERTY MANAGEMENT, LLC

Entity number: 8142329-0160

Date of Filing: 12/08/2011

| PREVIOUS Registered Principals: | UPDATED Registered Principals: |
|---|---|
| **Name** ......... AMPARO MONCAYO<br>**Position** .... Manager<br>**Address** .... 8220 S 2660 E<br>Sandy, UT 84093 | **Name** ......... AMPARO MONCAYO<br>**Position** .... Manager<br>**Address** .... 8220 S 2660 E<br>Sandy, UT 84093 |
| **Name** ......... BENJAMIN R HORTON, ATT<br>**Position** .... Registered Agent<br>**Address** .... 8220 S 2660 E<br>Sandy, UT 84093 | **Name** ......... BENJAMIN R HORTON, ATT<br>**Position** .... Registered Agent<br>**Address** .... 8220 S 2660 E<br>Sandy, UT 84093 |
| | **Name** ......... STEPHANIE MONTALBAN<br>**Position** .... Manager<br>**Address** .... 3350 N College Ave<br>Indianapolis, IN 46205 |

Benjamin R. Horton 12/08/2011

**Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

# *Summary of Online Changes*



Business Name: AM PROPERTY MANAGEMENT, LLC

Entity number: 8142329-0160

Date of Filing: 09/27/2012

<u>Registered Principals:</u>

New Information (added or updated)
**Name** ...............................BENJAMIN R HORTON, ATT
**Position** ...........................Registered Agent
**Address** ...........................8220 S 2660 E
                           Sandy, UT 84093

New Information (added or updated)
**Name** ...............................SANDRA HANLEY
**Position** ...........................Manager
**Address** ...........................8220 S 2660 E
                           SANDY, UT 84093

Old Information (removed or updated)
**Name** ...............................BENJAMIN R HORTON, ATT
**Position** ...........................Registered Agent
**Address** ...........................8220 S 2660 E
                           Sandy, UT 84093

BENJAMIN R HORTON 09/27/2012

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: AM PROPERTY MANAGEMENT, LLC

Entity number: 8142329-0160

Date of Filing: 01/30/2013

Principal Office Address:
**Street** ...............................8180 south 700 east #110
**City** ...................................Sandy
**State** .................................UT
**Zip** ....................................84070

**PREVIOUS Registered Principals:**

**Name** ......... SANDRA HANLEY
**Position** .... Manager
**Address** .... 8220 S 2660 E
              SANDY, UT 84093

**Name** ......... BENJAMIN R HORTON, ATT
**Position** .... Registered Agent
**Address** .... 8220 S 2660 E
              SANDY, UT 84093

**Name** ......... STEPHANIE MONTALBAN
**Position** .... Manager
**Address** .... 3350 N COLLEGE AVE
              INDIANAPOLIS, IN 46205

**Name** ......... AMPARO MONCAYO
**Position** .... Manager
**Address** .... 8220 S 2660 E
              Sandy, UT 84093

**UPDATED Registered Principals:**

**Name** ......... SANDRA HANLEY
**Position** .... Manager
**Address** .... 8180 south 700 east #110
              SANDY, UT 84070

**Name** ......... BENJAMIN R HORTON, ATT
**Position** .... Registered Agent
**Address** .... 8180 south 700 east #110
              SANDY, UT 84070

**Name** ......... STEPHANIE MONTALBAN
**Position** .... Manager
**Address** .... 3350 N COLLEGE AVE
              INDIANAPOLIS, IN 46205

**Name** ......... AMPARO MONCAYO
**Position** .... Manager
**Address** .... 8180 south 700 east #110
              Sandy, UT 84070

Sandra Hanley 01/30/2013

**Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: AM PROPERTY MANAGEMENT, LLC

Entity number: 8142329-0160

Date of Filing: 07/19/2013

| **PREVIOUS Registered Principals:** | **UPDATED Registered Principals:** |
|---|---|
| | Benjamin R. Horton 07/19/2013 |

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



# State of Utah
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: AM PROPERTY MANAGEMENT, LLC

Entity number: 8142329-0160

Date of Filing: 10/03/2013

Registered Principals:
New Information (added or updated)
**Name** .......................... BENJAMIN R HORTON, ATT
**Position** ...................... Registered Agent
**Address** ...................... 2825 E COTTONWOOD PKWY
                                   STE 500
                                   SALT LAKE CITY, UT 84121
Old Information (removed or updated)
**Name** .......................... BENJAMIN R HORTON, ATT
**Position** ...................... Registered Agent
**Address** ...................... 8180 SOUTH 700 EAST #110
                                   SANDY, UT 84070

Benjamin R Horton 10/03/2013

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

## *Summary of Online Changes*



Business Name: AM PROPERTY MANAGEMENT, LLC

Entity number: 8142329-0160

Date of Filing: 12/16/14

Registered Principals:
Old Information (removed or updated)
**Name** ...........................STEPHANIE MONTALBAN
**Position** ......................Manager
**Address** .....................3350 N COLLEGE AVE
                                      INDIANAPOLIS, IN 46205

Benjamin R Horton , 12/16/14

**Underr GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

# *Summary of Online Changes*



Business Name: AM PROPERTY MANAGEMENT, LLC

Entity number: 8142329-0160

Date of Filing: 9/27/16

Registered Principals:
New Information (added or updated)
**Name** ..........................JONATHAN HANLEY
**Position** ......................Registered Agent
**Address** ....................8180 S 700 E STE 100
                            SANDY, UT 84070
Old Information (removed or updated)
**Name** ........................BENJAMIN R HORTON, ATT
**Position** ......................Registered Agent
**Address** ....................2825 E COTTONWOOD PKWY
                            STE 500
                            SALT LAKE CITY, UT 84121
New Information (added or updated)
**Name** ..........................JONATHAN HANLEY
**Position** ......................Manager
**Address** ....................8180 S 700 E STE 100
                            SANDY, UT 84070
Old Information (removed or updated)
**Name** ..........................JONATHAN HANLEY
**Position** ......................Manager
**Address** ....................9035 S 700 E
                            STE 203
                            SANDY, UT 84070

Benjamin R Horton , 9/27/16

Underr GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

*Summary of Online Changes*



**Business Name:** AM PROPERTY MANAGEMENT, LLC

**Entity number:** 8142329-0160

**Date of Filing:** 10/4/16

**PREVIOUS Registered Principals:**                    **UPDATED Registered Principals:**

**Name** ....... SANDRA HANLEY
**Position** ....Manager
**Address** ... 8180 SOUTH 700 EAST #110
              SANDY, UT

**Name** ....... JONATHAN HANLEY
**Position** ....Registered Agent
**Address** ... 8180 S 700 E STE 100
              SANDY, UT

**Name** ....... JONATHAN HANLEY
**Position** ....Manager
**Address** ... 8180 S 700 E STE 100
              SANDY, UT

                                                **Name** ....... REGISTERED AGENTS INC.
                                                **Position** ....Commercial Registered Agent
                                                **Address** ...

                                                **Name** ....... APPOINTED MANAGER
                                                **Position** ....Manager
                                                **Address** ... 8180 S 700 E STE 100
                                                              SANDY, UT 84070

                                                **Name** ....... APPOINTED MANAGER
                                                **Position** ....Manager
                                                **Address** ... 8180 S 700 E STE 100
                                                              SANDY, UT 84070

Jonathan Hanley , 10/4/16

**Underb GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**

# Attachment E

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certified that the foregoing has been filed
and approved on this ___ day of ____ 20__
In this office of this Division and hereby issued
This Certificate thereof.                09-24-2012
Examiner _____ Date _____

Kathy Berg
Division Director

RECEIVED
SEP 21 2012
Utah Div. of Corp. & Comm. Code

# ARTICLES OF INCORPORATION

## OF

# AMERICAN HOME LOAN COUNSELORS

THE UNDERSIGNED PERSONS who are eighteen years of age or more, acting as incorporators

under the provisions of the Utah Revised Nonprofit Corporation Act § 16-6a-101 *et seq.*, (hereinafter

referred to as the "Act") adopt the following Articles of Incorporation.

## ARTICLE I
### NAME

The name of this corporation shall be AMERICAN HOME LOAN COUNSELORS (the "Corporation").

## ARTICLE II
### PURPOSE

The Corporation is organized and shall be operated exclusively for charitable purposes *only* within

the meaning of § 501(c)(3) *of* the Internal Revenue Code, in particular for the following:  (1) the

promotion of housing development for the relief of the poor, indigent, underprivileged, and distressed;

(2) the prevention of community deterioration through home occupancy; (3) the increase of

homeownership opportunities for low- and moderate-income families and individuals; (4) to help remedy

housing discrimination and to promote fair housing rights; and (5) to educate tenants and homeowners

with respect to property maintenance, financial management, and such other matters as my be

appropriate to assist them in improving their housing conditions and in meeting the responsibilities of

tenancy or homeownership.

No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to

its Directors, Officers, or other private persons, except that the Corporation shall be authorized and

empowered to pay reasonable compensation for services rendered and to make payments and

8445150

distributions in furtherance of the purposes set forth in this Article  The Corporation shall not participate

in, or intervene in (including the publishing or distribution of statements other than those obtained by the

Corporation in furtherance of its exempt purposes) any political campaign on behalf of any candidate for

public office  Notwithstanding any other provision of this document, the Corporation shall not carry on

any other purposes not permitted to be carried on by an organization exempt from federal income tax

under § 501(c)(3) of the Internal Revenue Code or the corresponding section of any future federal tax

code

## ARTICLE III
### LOCATION

The Corporation shall be located at

AMERICAN HOME LOAN COUNSELORS
9035 S 700 E, Ste  203
Sandy, UT  84070

## ARTICLE IV
### DURATION

The duration of the Corporation shall be perpetual, unless sooner dissolved in accordance with

these Bylaws or the Act

## ARTICLE V
### SHAREHOLDERS & MEMBERS

The Corporation shall not have Shareholders or Members

## ARTICLE VI
### DISTRIBUTION UPON DISSOLUTION

The Corporation shall use its funds only to accomplish the objectives and purposes specified in

these Articles of Incorporation and no part of said funds shall inure, or be distributed, to the Directors or

Officers of the Corporation, or any private person  On dissolution of the Corporation, any assets

remaining shall be distributed for one or more exempt purposes within the meaning of § 501(c)(3) or §

501(c)(4) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or

shall be distributed to the federal government, or to a state or local government, for a public purpose

Any such assets not disposed of shall be disposed of by the District Court of the county in which the

principal office of the Corporation is then located, exclusively for such purposes or to such organization or

organizations, as said Court shall determine, which are organized and operated exclusively for such

purposes

## ARTICLE VII
### REGISTERED OFFICE & AGENT

The address of the initial registered agent and registered office of the Corporation shall be

> Benjamin R Horton, Attorney
> 8180 S 700 E STE 110
> SANDY, UT 84070-0564

The appointment of Benjamin R Horton as the initial registered agent of the Corporation is
hereby accepted

Benjamin R Horton, Attorney

## ARTICLE VIII
### INCORPORATORS AND DIRECTORS

The name and address of the incorporators and directors are as follows

> Benjamin R Horton, Attorney
> 8180 S 700 E STE 110
> SANDY, UT 84070-0564

> Jonathan Hanley
> 9035 S 700 E, Ste 203
> Sandy, UT 84070

Paul Jensen
9347 Peacock Dr.
Sandy, UT  84093

**IN WITNESS WHEREOF,** the undersigned, being the Incorporators of the Corporation hereby

execute these Articles of Incorporation and certify to the truth of the facts herein stated this 21st day of

September, 2012.

Benjamin R. Horton
Incorporator and Director


Jonathan Hanley
Incorporator and Director


Paul Jensen
Incorporator and Director



# State of Utah
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: AMERICAN HOME LOAN COUNSELORS

Entity number: 8445150-0140

Date of Filing: 03/12/2014

**PREVIOUS Registered Principals:**          **UPDATED Registered Principals:**

**Name** ....... PAUL JENSEN
**Position** ....Director
**Address** ... 9437 PEACOCK DR
         Sandy, UT 84093

**Name** ....... PAUL JENSEN
**Position** ....Director
**Address** ... 9437 PEACOCK DR
         Sandy, UT 84093

                                          **Name** ....... PHILLIP HANLEY
                                          **Position** ....Director
                                          **Address** ... 9035 S 700 E STE 203
                                                   SANDY, UT 84070

                                          03/12/2014

**Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: AMERICAN HOME LOAN COUNSELORS

Entity number: 8445150-0140

Date of Filing: 2/18/15

| PREVIOUS Registered Principals: | UPDATED Registered Principals: |
|---|---|
| **Name** ....... BENJAMIN R HORTON<br>**Position** ....Registered Agent<br>**Address** ... 8180 S 700 E STE 110<br>(attorney)<br>Sandy, UT | **Name** ....... BENJAMIN R HORTON<br>**Position** ....Registered Agent<br>**Address** ... 2825 E COTTONWOOD PKWY STE 500<br>SALT LAKE CITY, UT 84121 |
| **Name** ....... BENJAMIN R HORTON<br>**Position** ....Director<br>**Address** ... 8180 S 700 E STE 110<br>(attorney)<br>Sandy, UT | **Name** ....... BENJAMIN R HORTON<br>**Position** ....Director<br>**Address** ... 2825 E COTTONWOOD PKWY<br>STE 500<br>SALT LAKE CITY, UT 84121 |

Benjamin R Horton , 2/18/15

**Underb GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**

PX20 - 87



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

*Summary of Online Changes*



Business Name: AMERICAN HOME LOAN COUNSELORS

Entity number: 8445150-0140

Date of Filing: 2/22/15

Principal Office Address:
Street ................................ 8180 S 700 E
                                      STE 110
City ................................... Sandy
State .................................. UT
Zip .................................... 84070

PREVIOUS Registered Principals:       UPDATED Registered Principals:

Benjamin R Horton , 2/22/15

Underb GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

## *Summary of Online Changes*



**Business Name:** AMERICAN HOME LOAN COUNSELORS

**Entity number:** 8445150-0140

**Date of Filing:** 4/8/15

| PREVIOUS Registered Principals: | UPDATED Registered Principals: |
|---|---|
| **Name** ....... BENJAMIN R HORTON<br>**Position** ....Registered Agent<br>**Address** ... 2825 E COTTONWOOD PKWY STE 500<br>SALT LAKE CITY, UT | **Name** ....... JONATHAN HANLEY<br>**Position** ....Registered Agent<br>**Address** ... 9035 S 700 E STE 203<br>Sandy, UT 84070 |
| **Name** ....... BENJAMIN R HORTON<br>**Position** ....Director<br>**Address** ... 2825 E COTTONWOOD PKWY<br>STE 500<br>SALT LAKE CITY, UT | |
| | **Name** ....... SANDRA HANLEY<br>**Position** ....Director<br>**Address** ... 8180 S 700 E STE 110<br>SANDY, UT 84070 |

Benjamin R. Horton , 4/8/15

Underb GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

This form must be type written or computer generated.



**State of Utah**
**Department of Commerce**
**Division of Corporations & Commercial Code**
Articles of Dissolution (After Issuance of Shares)

RECEIVED
RECEIVED

JUN 26 2017

Utah Div. Of Corp. & Comm. Code

Entity Number: 8445150-0140

☐ Profit Corporation   ☒ Nonprofit Corporation (Skip Number 4)

**Pursuant to the provisions of the Utah Revised Business Corporation Act, the undersigned directors or incorporators adopt the following Articles of Dissolution.**

1): Corporation Name: AMERICAN HOME LOAN COUNSELORS

2): The address of the Corporation's principal office or other address where service of process may be mailed:

8180 S 700 E STE 110                                 SANDY            UTAH      84070
Street Address                                        City             State     Zip
(Utah Street Address Required, PO Boxes can be listed after the street address)

3): The date of the dissolution was authorized by the Shareholders/Member(s) on: May 31, 2017

4): The total number of votes cast *for* dissolution was: _____

The total number of votes cast *against* dissolution was: _____
**OR**
The total number of votes cast for dissolution by each voting group was _____
This was sufficient for approval.

**Under penalties of perjury I declare that these Articles of Dissolution have been examined by me and are, to the best of my knowledge and belief, true, correct and complete.**

By: _____  Title: Director  Date: June 1, 2017

Jonathan Hanley

If the filer requests a copy of the Articles of Dissolution an additional exact copy of the filed document along with a return-addressed envelope with adequate first-class postage must also be submitted.

Under GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, you may use the business entity physical address rather than the residential or private address of any individual affiliated with the entity.

Mailing/Faxing Information: www.corporations.utah.gov/contactus.html   Division's website: www.corporations.utah.gov

JUN 26 '17 PM 2:51

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certified that the foregoing has been filed
and approved on this ___ day of ___ 20__
in this office of this Division and hereby issued
This Certificate thereof

Examiner (KSW)   Date 6-29-17

Kathy Berg
Division Director

01/14

# Attachment F

Date:          08/20/2012
Receipt Number: 4019881
Amount Paid:   $70.00

RECEIVED
AUG 2 0 2012
Utah Div. Of Corp. & Comm. Code

# ARTICLES OF ORGANIZATION

## FOR

## AMERICAN HOME LOANS, LLC

### ARTICLE I
### LIMITED LIABILITY COMPANY NAME

The name of the limited liability company is AMERICAN HOME LOANS, LLC (the "Company").

### ARTICLE II
### PURPOSE

The purpose of the Company is to engage in any lawful act or activity for which a limited liability company may be organized under the laws of the State of Utah.

### ARTICLE III
### REGISTERED OFFICE/AGENT

The name and address of the Company's initial registered agent in the State of Utah is:

Benjamin R. Horton, Attorney
8180 S 700 E STE 110
SANDY, UT  84070

### ARTICLE IV
### LOCATION

The address of the Company is as follows:

American Home Loans, LLC
8180 S 700 E STE 110
SANDY, UT  84070

08-20-12A11:50 RCVD

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certified that the foregoing has been filed
and approved on this 20th day of Aug 20 12
In this office of this Division and hereby issued
This Certificate thereof.
Examiner ___ PB ___  Date 8/21/12

_Kathy Berg_
Kathy Berg
Division Director

8414450

PX20-092

## ARTICLE V
## MANAGER-MANAGED

The Company is to be manager-managed.  The name and street address of the initial manager is as follows:

Jonathan Hanley
8180 S 700 E STE 110
SANDY, UT  84070

## ARTICLE VI
## DURATION

The duration of the Company shall be ninety-nine (99) years from the date these Articles of Organization are filed with the State of Utah.


IN WITNESS THEREOF, the undersigned manager and organizer has executed these Articles of Organization pursuant to Utah Code Ann. § 48-2c-403 on this, the 20th day of August, 2012.

**MANAGER**

_____          8/20/12
Jonathan Hanley                                        Date

PX20 - 93



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

## *Summary of Online Changes*



Business Name: AMERICAN HOME LOANS, LLC

Entity number: 8414450-0160

Date of Filing: 10/03/2013

<u>Registered Principals:</u>
New Information (added or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ..................... Registered Agent
**Address** ..................... 2825 E COTTONWOOD PKWY
                                STE 500
                                SANDY, UT 84070
Old Information (removed or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ..................... Registered Agent
**Address** ..................... 8180 S 700 E STE 110
                                Sandy, UT 84070

Benjamin Horton 10/03/2013

Under GRAMA {63-2-201}, all registration information maintained by the Division is
classified as public record. For confidentiality purposes, the business entity physical
address may be provided rather than the residential or private address of any individual
affiliated with the entity.



# State of Utah
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**
This certifies that the Administrative Dissolution has been revoked and the reinstatement is effective and was approved on 12/9/14 in the office of the Division and hereby issues this Certification thereof.

*Kathy Berg*

Kathy Berg
Division Director

## *Summary of Online Changes – REINSTATEMENT*



Business Name: AMERICAN HOME LOANS, LLC

Entity number: 8414450-0160

Date of Filing: 12/9/14

Registered Principals:
New Information (added or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ...................... Registered Agent
**Address** ...................... 2825 E COTTONWOOD PKWY
                                  STE 500
                                  SANDY, UT 84070
Old Information (removed or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ...................... Registered Agent
**Address** ...................... 2825 E COTTONWOOD PKWY
                                  STE 500
                                  SANDY, UT 84070

Shannon Martinez , 12/9/14

Underr GRAMA (63-2-201), all registration information maintained by the Division is
classified as public record. For confidentiality purposes, the business entity physical
address may be provided rather than the residential or private address of any individual
affiliated with the entity.



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**
This certifies that the Administrative Dissolution has been revoked and the reinstatement is effective and was approved on 12/2/16 in the office of the Division and hereby issues this Certification thereof.

*Kathy Berg*

Kathy Berg
Division Director

## *Summary of Online Changes – REINSTATEMENT*



Business Name: AMERICAN HOME LOANS, LLC

Entity number: 8414450-0160

Date of Filing: 12/2/16

Principal Office Address:
Street ...........................8180 S 700 E STE 110
City ..............................Sandy
State ............................. UT
Zip ............................... 84070

Registered Principals:
New Information (added or updated)
Name .........................Jonathan Hanley
Position ......................Registered Agent
Address .....................8180 S 700 E STE 100
                          Sandy, UT 84070
Old Information (removed or updated)
Name ..........................BENJAMIN R HORTON
Position ......................Registered Agent

**Address** ......................2825 E COTTONWOOD PKWY
                         STE 500
                         SANDY, UT 84070

Jonathan Hanley , 12/2/16

**Underr GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

## *Summary of Online Changes*



**Business Name:** AMERICAN HOME LOANS, LLC

**Entity number:** 8414450-0160

**Date of Filing:** 12/13/16

**Principal Office Address:**
Street ................................ 2825 E Cottonwood Pkwy
                                                  Suite 500
City ..................................... Salt Lake City
State ................................... UT
Zip ..................................... 84121

| PREVIOUS Registered Principals: | UPDATED Registered Principals: |
|---|---|
| **Name** ....... JONATHAN HANLEY | **Name** ....... JONATHAN HANLEY |
| **Position** .... Manager | **Position** .... Manager |
| **Address** ... 2825 E Cottonwood Pkwy | **Address** ... 2825 E Cottonwood Pkwy |
| Suite 500 | Suite 500 |
| Salt Lake City, UT | Salt Lake City, UT 84095 |
| | |
| **Name** ....... JONATHAN HANLEY | **Name** ....... INCORP SERVICES, INC. |
| **Position** .... Registered Agent | **Position** .... Registered Agent |
| **Address** ... 8180 S 700 E STE 100 | **Address** ... 1226 W. South Jordan Pkwy, Suite B |
| SANDY, UT | South Jordan, UT 84095 |

Jonathan Hanley , 12/13/16

Underb GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

*Summary of Online Changes*



Business Name: AMERICAN HOME LOANS, LLC

Entity number: 8414450-0160

Date of Filing: 1/30/17

**Principal Office Address:**
Street .................................. 41 W 9000 S
City ..................................... Sandy
State .................................... UT
Zip ....................................... 84070

**PREVIOUS Registered Principals:**        **UPDATED Registered Principals:**

Jonathan Hanley , 1/30/17

Underb GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



# State of Utah
## DEPARTMENT OF COMMERCE
### Division of Corporations & Commercial Code

## *Summary of Online Changes*



**Business Name:** AMERICAN HOME LOANS, LLC

**Entity number:** 8414450-0160

**Date of Filing:** 2/15/17

**Principal Office Address:**
Street ...................................... 2825 E Cottonwood Pkwy
                                          Suite 500
City ........................................ Salt Lake City
State ....................................... UT
Zip ......................................... 84121

**PREVIOUS Registered Principals:**          **UPDATED Registered Principals:**

                                             Jonathan Hanley , 2/15/17

**Underb GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**

# Attachment G

File Number: 7949666

**Profit Corporation**

# ARTICLES OF INCORPORATION
## OF
## Brown Legal, Inc.

**The undersigned persons, acting as incorporators under the Utah Revised Business Corporation Act, adopt the following Articles of Incorporation for such Corporation:**

## Article I
## Corporate Name

**The name of the corporation is** Brown Legal, Inc.

## Article II
## Purpose

Processing and preparation of documents for law firms.

The corporation shall further have unlimited power to engage in and do any lawful act concerning any and all lawful business for which corporations may be organized under the Utah Revised Business Corporation Act and any amendments thereto.

## Article III
## Capital Stock

| Class of Shares | Number of Shares |
|-----------------|------------------|
| Common          | 1000             |
| Preferred       | 0                |

## Article IV
## Name and Address of Registered Agent

**The address of the corporation's initial registered office shall be:**

9925 Aplomado
Sandy, UT 84092

**The corporation's initial registered agent at such address shall be:**

Jonathan Phillip Hanley

**I hereby acknowledge and accept appointment as corporation registered agent:**

Jonathan Phillip Hanley

**Signature**

## Article V
## Names and Addresses of Incorporators

PX20 - 103

**The name(s) and address(es) of the incorporators are:**

>Incorporator #1
>Jonathan Phillip Hanley
>9925 Aplomado
>Sandy, UT 84092
>Jonathan Phillip Hanley
>Signature

**In Witness Whereof I / We have executed these Articles of Incorporation on 5 4, 2011 and say:**

**That they are all incorporators herein; that they have read the above and foregoing Articles of Incorporation; know the contents thereof and that the same is true to the best of their knowledge and belief, excepting as to matters herein alleged upon information and belief and as to those matters they believe to be true.**

## Article VI
### Names and Addresses of Officers and Directors

**The name(s) and address(es) of each officer and director:**

>Officer #1
>Jonathan Phillip Hanley
>9925 Aplomado
>Sandy, UT 84092
>Jonathan Phillip Hanley
>Signature


>Director #1
>Jonathan Phillip Hanley
>9925 Aplomado
>Sandy, UT 84092
>Jonathan Phillip Hanley
>Signature


## Article VII
### Principal Place of Business

**The street address of the principal place of the business is:**

>9925 Aplomado
>Sandy, UT, 84092

## Article VIII

**The duration of the corporation shall be 10**



State of Utah
Department of Commerce
Division of Corporations & Commercial Code

This certifies that this registration has been filed and
approved on 5, April 2011 in the office of the Division
and hereby issues this Certification thereof.

KATHY BERG
Division Director

Under GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

# Attachment H



RECEIVED
FEB 1 1 2016
Utah Div. of Corp. & Comm. Code

FEB 11, 2016 12:40 PM

# CERTIFICATE OF ORGANIZATION

## FOR

# CONSUMER DEFENSE, LLC

### ARTICLE I
### NAME OF LIMITED LIABILITY COMPANY

The name of the limited liability company is Consumer Defense, LLC (the "Company").

### ARTICLE II
### PRINCIPAL OFFICE STREET AND MAILING ADDRESS

The street and mailing address of the Company's principal office:

Consumer Defense, LLC
7709 S Keswick
Cottonwood Heights, UT 84093

### ARTICLE III
### REGISTERED OFFICE/AGENT

The name and address of the Company's registered agent in the State of Utah:

Jonathan Hanley
7709 S Keswick
Cottonwood Heights, UT 84093

### ARTICLE IV
### ORGANIZER

The name and address of the Company's organizer:

Date: 02/11/2016
Receipt Number: 6331739
Amount Paid: $70.00

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certified that the foregoing has been filed
and approved on this ___11___ day of ___Feb___ 20 16
in this office of this Division and hereby issued
This Certificate thereof.

Examiner _____ KA _____ Date 2|22|16

Kathy Berg
Kathy Berg Page 1 of 2
Division Director 20 107

9698959



Jonathan Hanley
7709 S Keswick
Cottonwood Heights, UT 84093

## ARTICLE V
## MANAGER-MANAGED

The Company is to be managed by managers  The name and address of its manager

Jonathan Hanley
7709 S Keswick
Cottonwood Heights, UT 84093

## ARTICLE VI
## PERPETUAL DURATION

Unless otherwise dissolved in accordance with Utah law, the duration of the Company shall be perpetual

## ARTICLE VII
## PURPOSE

The purpose of the Company is to engage in any lawful act or activity for which a limited liability company may be organized under the laws of the State of Utah.

IN WITNESS THEREOF, the undersigned organizer has executed this Certificate of Organization pursuant to Utah Code § 48-3a-201 of the Utah Revised Uniform Limited Liability Company Act, on this the 11th day of February, 2016

**ORGANIZER AND MANAGER**

_____        2/11/16
Jonathan Hanley                          Date



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: CONSUMER DEFENSE, LLC

Entity number: 9698959-0160

Date of Filing: 7/28/16

**PREVIOUS Registered Principals:**

Name ....... JONATHAN HANLEY
Position ....Registered Agent
Address ... 7709 S KESWICK
             Cottonwood Heights, UT

Name ....... JONATHAN HANLEY
Position ....Manager
Address ... 7709 S KESWICK
             Cottonwood Heights, UT

**UPDATED Registered Principals:**

Name ....... JONATHAN HANLEY
Position ....Registered Agent
Address ... 8180 S 700 E STE 110
             SANDY, UT 84070

Name ....... JONATHAN HANLEY
Position ....Manager
Address ... 500 North Rainbow Blvd
             Suite 300
             Las Vegas, NV 89107

Benjamin R Horton , 7/28/16

**Underh GRAMA [63-2-201], all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**

PX20 - 109



# State of Utah
## DEPARTMENT OF COMMERCE
## Division of Corporations & Commercial Code

# *Summary of Online Changes*



**Business Name:** CONSUMER DEFENSE, LLC

**Entity number:** 9698959-0160

**Date of Filing:** 9/30/16

### Principal Office Address:
Street ................................. 500 North Rainbow Blvd
                                      Suite 300
City ................................... Las Vegas
State .................................. NV
Zip .................................... 89107

**PREVIOUS Registered Principals:**

Name ....... JONATHAN HANLEY
Position ....Registered Agent
Address ... 8180 S 700 E STE 110
            SANDY, UT

Name ....... JONATHAN HANLEY
Position ....Manager
Address ... 500 NORTH RAINBOW BLVD
            STE 300
            LAS VEGAS, NV

**UPDATED Registered Principals:**

Name ....... REGISTERED AGENTS INC.
Position ....Commercial Registered Agent
Address ...

Name ....... APPOINTED MANAGER
Position ....Manager
Address ... 500 North Rainbow Blvd
            Suite 300
            Las Vegas, NV 89107

Jonathan Hanley , 9/30/16

**Underb GRAMA (63–2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**

Att. 1

# Attachment I

File Number: 8140954

# LLC

# ARTICLES OF ORGANIZATION
# OF
# FMG Partners, LLC

**The undersigned person(s) do hereby adopt the following Articles of Organization for the purpose of forming a Utah Limited Liability Company.**

## Article I
**The name of the limited liability company is to be** FMG Partners, LLC

## Article II
**The purpose or purposes for which the company is organized is to engage in:**
The business purpose or purposes for which the Company is organized is to do all things and engage in all lawful activities related to management and consulting services

The Company shall further have unlimited power to to engage in or to perform any and all lawful acts pertaining to the management of any lawful business as well as to engage in and to do any lawful act concerning any and all lawful business for which a Limited Liability Company may be organized under the Utah Limited Liability Company Act and any amendments thereto.

## Article III
**The Company shall continuously maintain an agent in the State of Utah for service of process who is an individual residing in said state. The name and address of the initial registered agent shall be:**

(Registered Agent Name & Address)
Fernando Alfredo Moncayo
2081 Pinnacle Terrace Way
Cottonwood Heights, UT, 84121

ACCEPTANCE OF APPOINTMENT:

Fernando Alfredo Moncayo
Registered Agent Signature

**The Director of the Division of Corporations and Commercial Code of the Department of Commerce for the State of Utah is appointed the registered agent of the Company for the service of process if the registered agent has resigned, the registered agent's authority has been revoked, or the registered agent cannot be found or served with the exercise of reasonable diligence.**

## Article IV

Name, Street address & Signature of all members/managers
Member #1
Fernando Alfredo Moncayo
2081 Pinnacle Terrace Way
Cottonwood Heights, UT 84121
Fernando Alfredo Moncayo
Signature


**DATED** 31 October, 2011.


# Article V

Management statement
This limited liability company will be managed by its Members

# Article VI

Address of the designated office
2081 Pinnacle Terrace Way
Cottonwood Heights, UT 84121


# Article VII

**The Company shall keep at its designated office or a statement that the company's registered office shall be its designated office, which records include, but are not limited to the following:**

## Article VII.1

A current list, in alphabetical order, of the names and current business street address of each Organizer who is not a member or manager.

## Article VII.2

A copy of the stamped Articles of Organization and all certificates of amendment thereto.

## Article VII.3

Copies of all tax returns and financial statements of the Company for the past 3 years. A Limited Liability Company is also required to maintain copies of financial statements, if any, for the three most recent years, as well as a copy of the operating agreement.


# Article VIII

The street address of the principal place of business is:

2081 Pinnacle Terrace Way
Cottonwood Heights, UT 84121


# Article IX

**The duration of the company shall be 99 years**

 State of Utah
Department of Commerce
Division of Corporations & Commercial Code

This certifies that this registration has been filed and
approved on 31, October 2011 in the office of the
Division and hereby issues this Certification thereof.

KATHY BERG
Division Director

**Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

## *Summary of Online Changes*



Business Name: FMG PARTNERS, LLC

Entity number: 8140954-0160

Date of Filing: 03/01/2012

NAICS - Business Purpose:
**Code** ................................5414
**Description** ......................Specialized Design Services

### PREVIOUS Registered Principals:

**Name** ......... Fernando Alfredo Moncayo
**Position** .... Member
**Address** .... 2081 Pinnacle Terrace Way
STE 201
Cottonwood Heights, UT 84121

**Name** ......... Fernando Alfredo Moncayo
**Position** .... Registered Agent
**Address** .... 2081 Pinnacle Terrace Way
STE 201
Cottonwood Heights, UT 84121

### UPDATED Registered Principals:

**Name** ......... Fernando Alfredo Moncayo
**Position** .... Member
**Address** .... 2081 Pinnacle Terrace Way
STE 201
Cottonwood Heights, UT 84121

**Name** ......... Fernando Alfredo Moncayo
**Position** .... Registered Agent
**Address** .... 2081 Pinnacle Terrace Way
STE 201
Cottonwood Heights, UT 84121

**Name** ......... CHRIS H STULTZ
**Position** .... Manager
**Address** .... 3350 NORTH COLLEGE AVE
INDIANAPOLIS, IN 46205

BENJAMIN R. HORTON 03/01/2012

**Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public**

record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**
This certifies that the Administrative Dissolution has been revoked
and the reinstatement is effective and was approved on 01/30/2013
in the office of the Division and hereby issues this Certification
thereof.

Kathy Berg
Division Director

## *Summary of Online Changes - REINSTATEMENT*

Business Name: FMG PARTNERS, LLC

Entity number: 8140954-0160

Date of Filing: 01/30/2013

Registered Principals:

New Information (added or updated)
**Name** ...............................FERNANDO ALFREDO MONCAYO
**Position** ...........................Registered Agent
**Address** ...........................2081 Pinnacle Terrace Way
                           STE 201
                           Cottonwood Heights, UT 84121

New Information (added or updated)
**Name** ...............................CHRIS H STULTZ
**Position** ...........................Manager
**Address** ...........................3350 NORTH COLLEGE AVE
                           INDIANAPOLIS, IN 46205

Old Information (removed or updated)
**Name** ...............................Fernando Alfredo Moncayo
**Position** ...........................Registered Agent
**Address** ...........................2081 Pinnacle Terrace Way
                           STE 201
                           Cottonwood Heights, UT 84121

Old Information (removed or updated)
**Name** ...............................CHRIS H STULTZ
**Position** ...........................Manager
**Address** ..........................3350 NORTH COLLEGE AVE
                                       INDIANAPOLIS, IN 46205

Fernando Alfredo Moncayo 01/30/2013

**Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**



**State of Utah**
DEPARTMENT OF COMMERCE
**Division of Corporations & Commercial Code**

*Summary of Online Changes*



Business Name: FMG PARTNERS, LLC

Entity number: 8140954-0160

Date of Filing: 08/11/2013

Registered Principals:
Old Information (removed or updated)
**Name** .......................... CHRIS H STULTZ
**Position** ..................... Manager
**Address** ..................... 3350 NORTH COLLEGE AVE
                                  INDIANAPOLIS, IN 46205
New Information (added or updated)
**Name** .......................... FERNANDO ALFREDO MONCAYO
**Position** ..................... Manager
**Address** ..................... 2081 Pinnacle Terrace Way
                                  STE 201
                                  Cottonwood Heights, UT 84121

Fernando A. Moncayo 08/11/2013

**Under GRAMA {63-2-201}, all registration information maintained by the Division is
classified as public record. For confidentiality purposes, the business entity physical
address may be provided rather than the residential or private address of any individual
affiliated with the entity.**



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



**Business Name:** FMG PARTNERS, LLC

**Entity number:** 8140954-0160

**Date of Filing:** 8/26/14

**Registered Principals:**
Old Information (removed or updated)
**Name** ........................... Fernando Alfredo Moncayo
**Position** ...................... Member
**Address** ..................... 2081 Pinnacle Terrace Way
STE 201
Cottonwood Heights, UT 84121
New Information (added or updated)
**Name** ........................... FERNANDO ALFREDO MONCAYO
**Position** ...................... Manager
**Address** ..................... 2081 Pinnacle Terrace Way
STE 201
Cottonwood Heights, UT 84121
New Information (added or updated)
**Name** ........................... CHRIS H STULTZ
**Position** ...................... Member
**Address** ..................... 3350 NORTH COLLEGE AVE
INDIANAPOLIS, IN 46205

Fernando Moncayo , 8/26/14

Underr GRAMA [63-2-201], all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

**Att. J**

# Attachment J



RECEIVED
OCT 2 6 2011
Utah Div. of Corp. & Comm. Code

# ARTICLES OF ORGANIZATION

## FOR

## MODIFICATION REVIEW BOARD, LLC

### ARTICLE I
### LIMITED LIABILITY COMPANY NAME

The name of the limited liability company is MODIFICATION REVIEW BOARD, LLC (the "Company").

### ARTICLE II
### PURPOSE

The purpose of the Company is to engage in any lawful act or activity for which a limited liability company may be organized under the laws of the State of Utah.

### ARTICLE III
### REGISTERED OFFICE/AGENT

The name and address of the Company's initial registered agent in the State of Utah is:

Benjamin R. Horton, Attorney
9035 S 700 E, Ste. 203
Sandy, UT 84070

### ARTICLE IV
### LOCATION

The address of the Company is as follows:

Modification Review Board, LLC
9035 S 700 E, Ste. 203
Sandy, UT 84070

10-26-11PG1:40 RCVD

State of Utah
Department of Commerce
Division of Corporations and Commerce ...
hereby certified that the foregoing has been filed
nd approved on this ___ day of ___ 20 __
in this office of the Division and hereby issued
This Certificate thereof.

examiner_____ Date 11/1/11
Kathy Berg

Date: 10/26/2011
Receipt Number: 3736638
Amount Paid: $70.00

8137390

PX20 - 124

**ARTICLE V**
**MANAGER-MANAGED**

The Company is to be manager-managed   The names and street addresses of the initial managers are as follows

Jonathan Hanley
9035 S 700 E, Ste  203
Sandy, UT  84070

Sandra Hanley
9035 S 700 E, Ste  203
Sandy, UT  84070

**ARTICLE VI**
**DURATION**

The duration of the Company shall be ninety-nine (99) years from the date these Articles of Organization are filed with the State of Utah

IN WITNESS THEREOF, the undersigned managers and organizers have executed these Articles of Organization pursuant to Utah Code Ann  § 48-2c-403 on this, the 26th day of October, 2011

**MANAGERS**

| | |
|---|---|
| _Jonathan Hanley_ | 10/26/11 |
| Jonathan Hanley | Date |
| _Sandra Hanley_ | 10/24/11 |
| Sandra Hanley | Date |

PX20 - 125



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

# *Summary of Online Changes*



Business Name: MODIFICATION REVIEW BOARD, LLC

Entity number: 8137390-0160

Date of Filing: 09/27/2012

Registered Principals:

New Information (added or updated)
**Name** ..............................BENJAMIN R HORTON
**Position** ..........................Registered Agent
**Address** ..........................8180 S 700 E STE 110
                                 SANDY, UT 84070-0564

Old Information (removed or updated)
**Name** ..............................BENJAMIN R HORTON
**Position** ..........................Registered Agent
**Address** ..........................9035 S 700 E STE 203
                                 Sandy, UT 84070

BENJAMIN R HORTON 09/27/2012

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



# State of Utah
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: MODIFICATION REVIEW BOARD, LLC

Entity number: 8137390-0160

Date of Filing: 12/11/2013

Registered Principals:
New Information (added or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ...................... Registered Agent
**Address** ...................... 2825 E COTTONWOOD PKWY STE 500
                                   SALT LAKE CITY, UT 84121
Old Information (removed or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ...................... Registered Agent
**Address** ...................... 8180 S 700 E STE 110
                                   SANDY, UT 84070-0564



Benjamin R Horton 12/11/2013


**Under GRAMA {63-2-201}, all registration information maintained by the Division is
classified as public record. For confidentiality purposes, the business entity physical
address may be provided rather than the residential or private address of any individual
affiliated with the entity.**



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

## *Summary of Online Changes*



Business Name: MODIFICATION REVIEW BOARD, LLC

Entity number: 8137390-0160

Date of Filing: 1/21/15

Registered Principals:
New Information (added or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ...................... Registered Agent
**Address** ...................... 2825 E COTTONWOOD PKWY STE 500
                                  SALT LAKE CITY, UT 84121
Old Information (removed or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ...................... Registered Agent
**Address** ...................... 8180 S 700 E STE 110
                                  SANDY, UT 84070-0564

Benjamin R Horton , 1/21/15

**Underr GRAMA [63-2-201], all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

## *Summary of Online Changes*



Business Name: MODIFICATION REVIEW BOARD, LLC

Entity number: 8137390-0160

Date of Filing: 12/16/15

Registered Principals:
New Information (added or updated)
**Name** .........................JONATHAN HANLEY
**Position** .......................Registered Agent
**Address** ......................9035 S 700 E
                                STE 203
                                SANDY, UT 84070
Old Information (removed or updated)
**Name** .........................BENJAMIN R HORTON
**Position** .......................Registered Agent
**Address** ......................2825 E COTTONWOOD PKWY STE 500
                                SALT LAKE CITY, UT 84121


Benjamin R Horton , 12/16/15


**Underr GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**



**State of Utah**
**Department of Commerce**
**Division of Corporations & Commercial Code**
**Amendment to Certificate of Organization**

*This form must be type written or computer generated* **AMENDMENT**

**EXPEDITE**

RECEIVED

JAN 1 2 2017

Utah Div. Of Corp. & Comm. Co

**Non-Refundable Processing Fee: $37.00**

Pursuant to UCA § 48-3a-202, the individual named below causes this Amendment to the Certificate of Organization to be delivered to the Utah Division of Corporations for filing, and states as follows:

Entity Number: 8137390-0160

The name of the limited liability company is: Modification Reivew Board, LLC

The Certificate of Organization shall be amended as set forth herein (complete all that apply):

    There is a change in the name of the limited liability company to:
    Consumer Defense Group, LLC

    The Certificate of Organization is amended as follows:

    The name of the company shall be changed to: Consumer Defense Group, LLC located at the
    following address: 41 W 9000 S, Sandy, UT 84070

Filing date of initial certificate October 26, 2011

Future effective date (if not to be effective upon filing) _____ *(not to exceed 90 days)*

Under penalties of perjury, I declare that this Amendment of Certificate of Organization has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

Name: Jonathan Hanley and Sandra Hanley      Signed:

Title: Managers      Dated: 1/9/2017

Under GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, you may use the business entity physical address rather than the residential or private address of any individual affiliated with the entity.

Amount Paid: $117.00

01/14

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certified that the foregoing has been filed
and approved on this 13 day of Jun 20 17
In this office of this Division and hereby issued
This Certificate thereof.



Examiner _____ Date 1-13-17

Kathy Berg
Kathy Berg
Division Director

PX20 - 130

# Attachment K

Date:          10/26/2011
Receipt Number: 3735629
Amount Paid:   $70.00

# ARTICLES OF ORGANIZATION

## FOR

# PREFERRED LAW, PLLC



RECEIVED
OCT 2 6 2011
Utah Div. of Corp. & Comm. Code

CLS

## ARTICLE I

## PROFESSIONAL LIMITED LIABILITY COMPANY NAME

The name of the professional limited liability company is PREFERRED LAW, PLLC (the "Company").

## ARTICLE II

## PROFESSION AND PURPOSE – LEGAL SERVICES

The purpose of the Company is to provide professional legal services pursuant to the laws of the State of Utah.

## ARTICLE III

## LOCATION

The name and address of the Company is:

> Preferred Law, PLLC
> 9035 S 700 E, Ste. 203
> Sandy, UT 84070

## ARTICLE IV

## REGISTERED OFFICE/AGENT

The name and address of the Company's initial registered agent in the State of Utah is:

> Benjamin R. Horton, Attorney
> 9035 S 700 E, Ste. 203
> Sandy, UT 84070

State of Utah
Department of Commerce
Division of Corporations and Commerce ...
hereby certified that the foregoing has been file
d approved on this _____ day of OCT 20 11
this office of this Division and hereby issued
This Certificate thereof.

Examiner _____ Date 11/1/11

Kathy Berg

10-26-11P01:37  RCVD

Amount Paid:   $70.00

10/26/2011                 Articles of Organization                 Page 1 of 2

8137385

PX20 - 132

## ARTICLE V
### MANAGER-MANAGED/MEMBER'S ADDRESS

The Company is to be manager-managed   The name and street address of the manager and member is as follows

Benjamin R  Horton, Attorney
9035 S 700 E, Ste  203
Sandy, UT  84070

## ARTICLE VI
### DURATION

The duration of the Company shall be ninety-nine (99) years from the date these Articles of Organization are filed with the State of Utah

IN WITNESS THEREOF, the undersigned member, manager, and organizer has executed these Articles of Organization pursuant to Utah Code Ann  §§ 48-2c-403 and 48-2c-1509 on this, the 26th day of October, 2011

**MEMBER AND MANAGER**

_____          10/26/11
Benjamin R  Horton                                    Date

PX20 - 133



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: PREFERRED LAW, PLLC

Entity number: 8137385-0162

Date of Filing: 04/17/2012

Principal Office Address:
**Street** ..............................8180 S 700 E STE 110
**City** ...................................SANDY
**State** .................................UT
**Zip** ...................................84070-0564

| PREVIOUS Registered Principals: | UPDATED Registered Principals: |
|---|---|
| **Name** ......... BENJAMIN R HORTON | **Name** ......... BENJAMIN R HORTON |
| **Position** .... Registered Agent | **Position** .... Registered Agent |
| **Address** .... 9035 S 700 E STE 203 | **Address** .... 8180 S 700 E STE 110 |
|     Sandy, UT 84070 |     SANDY, UT 84070-0564 |
| | |
| **Name** ......... BENJAMIN R HORTON | **Name** ......... BENJAMIN R HORTON |
| **Position** .... Manager | **Position** .... Manager |
| **Address** .... 9035 S 700 E STE 203 | **Address** .... 8180 S 700 E STE 110 |
|     Sandy, UT 84070 |     SANDY, UT 84070-0564 |

Benjamin Horton 04/17/2012

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

PX20 - 134



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

*Summary of Online Changes*



Business Name: PREFERRED LAW, PLLC

Entity number: 8137385-0162

Date of Filing: 08/29/2013

Principal Office Address:
**Street** ..........................2825 E COTTONWOOD PKWY
                              STE 500
**City** ............................ SALT LAKE CITY
**State** .......................... UT
**Zip** .............................. 84121

Registered Principals:
New Information (added or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ..................... Registered Agent
**Address** .....................2825 E COTTONWOOD PKWY
                              STE 500
                              SALT LAKE CITY, UT 84121
Old Information (removed or updated)
**Name** .......................... BENJAMIN R HORTON
**Position** ..................... Registered Agent
**Address** .....................8180 S 700 E STE 110
                              SANDY, UT 84070-0564

Benjamin R. Horton 08/29/2013

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



**State of Utah**
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**

## *Summary of Online Changes*



Business Name: PREFERRED LAW, PLLC

Entity number: 8137385-0162

Date of Filing: 11/14/14

Registered Principals:
New Information (added or updated)
Name .......................... BENJAMIN R HORTON
Position ...................... Manager
Address ...................... 2825 E COTTONWOOD PKWY
STE 500
SALT LAKE CITY, UT 84121
Old Information (removed or updated)
Name .......................... BENJAMIN R HORTON
Position ...................... Manager
Address ...................... 8180 S 700 E STE 110
SANDY, UT 84070-0564

Benjamin R Horton , 11/14/14

Underr GRAMA (63-2-201), all registration information maintained by the Division is
classified as public record. For confidentiality purposes, the business entity physical
address may be provided rather than the residential or private address of any individual
affiliated with the entity.

RECEIVED

NOV 16 2016

Utah Div. Of Corp. & Comm. Code

## Statement of Dissolution

Limited Liability Company Name:  PREFERRED LAW, PLLC

Entity Number:  8137385-0162

The dissolution of above named limited liability company will become effective:

&#9746; upon filing with the Division of Corporations and Commercial Code.
&#9744; the future effective date of _____.

Under penalties of perjury, I declare that this Statement of Dissolution has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

Date: 11/16/16

Sign here ▶

Name:      Benjamin Horton
Capacity:   Sole-Manager

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certified that the foregoing has been filed and approved on this ___ day of Nov 20__ in this office of this Division and hereby issued This Certificate thereof

Examiner __KSW__  Date 11·16·16

Kathy Berg
Kathy Berg
Division Director

# Attachment L

Date:          07/14/2016
Receipt Number: 6494300
Amount Paid:   $70.00

TEM

JUL 13 '16 PM 2:22

# CERTIFICATE OF ORGANIZATION

## FOR

## ZINLY, LLC

**RECEIVED**

**JUL 1 3 2016**

Utah Div. Of Corp. & Comm. Code

### ARTICLE I
### NAME OF LIMITED LIABILITY COMPANY

The name of the limited liability company is Zinly, LLC (the "Company").

### ARTICLE II
### PRINCIPAL OFFICE STREET AND MAILING ADDRESS

The street and mailing address of the Company's principal office:

> Zinly, LLC
> 9980 South 300 West
> Suite 200
> Sandy, UT 84070

### ARTICLE III
### REGISTERED OFFICE/AGENT

The name and address of the Company's registered agent in the State of Utah:

> Registered Agents Inc.
> 881 Baxter Drive, STE 100
> South Jordan, Utah 84095

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certified that the foregoing has been filed
and approved on this ___23___ day of ___JUL___ 20/6
in this office of this Division and hereby issued
This Certificate thereof.

Examiner ___BSB___   Date 7/21/16

Kathy Berg
Division Director

### ARTICLE IV
### ORGANIZER

The name and address of the Company's organizer:

987759

Jonathan Hanley
9980 South 300 West
Suite 200
Sandy, UT 84070

## ARTICLE V
## MANAGER-MANAGED

The Company is to be managed by managers.  The name and address of its manager:

Jonathan Hanley
9980 South 300 West
Suite 200
Sandy, UT 84070

## ARTICLE VI
## PERPETUAL DURATION

Unless otherwise dissolved in accordance with Utah law, the duration of the Company shall be perpetual.

## ARTICLE VII
## PURPOSE

The purpose of the Company is to engage in any lawful act or activity for which a limited liability company may be organized under the laws of the State of Utah.

IN WITNESS THEREOF, the undersigned organizer has executed this Certificate of Organization pursuant to Utah Code § 48-3a-201 of the Utah Revised Uniform Limited Liability Company Act, on this the 28th day of June, 2016.

**ORGANIZER AND MANAGER**

_____        6/29/16
Jonathan Hanley                       Date



# State of Utah
## DEPARTMENT OF COMMERCE
## Division of Corporations & Commercial Code

# *Summary of Online Changes*



**Business Name: ZINLY, LLC**

**Entity number: 9871759-0160**

**Date of Filing: 11/3/16**

**Principal Office Address:**
Street ................................. 9980 S 300 W STE 200
City ..................................... Sandy
State ................................... UT
Zip ...................................... 84070

**PREVIOUS Registered Principals:**      **UPDATED Registered Principals:**

**Name** ....... Sandra Hanley
**Position** ....Manager
**Address** ... 9980 S 300 W STE 200
                 Sandy, UT 84070


**Jonathan Hanley , 11/3/16**

**Underb GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.**

# Attachment M



# SALT LAKE COUNTY

Text: Larger - Smaller

Parcel ID Search

SLCo > Assessor > Search > Parcel 27014290250000

This page shows the assessor's CAMA data, as it was, on May 22, 2017.

## Parcel

### Search ☐

## Resource

### Links ☐

Printer Friendly Version

Classic Parcel View

Property Tax Information

Legal Description

Property Type Search

Interactive Parcel Map

Neighborhood Values

Adjoining Values

| Parcel | 27-01-429-025-0000 |
|---|---|
| Owner | ZINLY, LLC |
| Address | 41 W 9000 S |
| Total Acreage | 0.01 |
| Above Grade sqft. | |
| Property Type | 660 - CND-OFFICE |
| Tax District | 36P |
| 2017 Land Value | $ 217,300 |
| 2017 Building Value | $ 252,400 |
| **2017 Market Value** | **$ 469,700** |

Google
40.586921520
-111.892490190
Map data ©2017 Google

## Value History

| | | Land Value | Building Value | Market Value |
|---|---|---|---|---|
| **2017** | | $ 217,300 | $ 252,400 | $ 469,700 |
| **2016** | 1 | $ 215,300 | $ 324,000 | $ 539,300 |
| **2015** | 1 | $ 215,300 | $ 313,700 | $ 529,000 |
| **2014** | 1 | $ 242,200 | $ 345,600 | $ 587,800 |
| **2013** | 1 | $ 242,200 | $ 286,400 | $ 528,600 |

## Land Record                                    27-01-429-025-0000

| Record ID 1 | | Influence Effect | |
|---|---|---|---|
| Lot Use | COMMERCIAL | Assmt. | COM-SECONDRY |

PX20 - 144

| | | | |
|---|---|---|---|
| Lot Type | PRIMARY-FRNT | Class | |
| Land Class | | Lot Depth | 525 |
| Income Flag | YES | Acres | 3.80 |
| Seasonal use | | Zone | RC |
| Influence Type | | Sewer | PUBLIC |
| | | Number Lots | |
| Lot Shape | REGULAR | Traffic | HEAVY |
| Lot Location | BACKAGE | Traffic Influence | TYPICAL |
| Neighborhood | 5060 | Street type | HIGHWAY |
| Nbhd Type | DEVELOPING | Street Finish | PAVED |
| Nbhd Effect | TYPICAL | Curb Gutter | Y |
| Topography | LEVEL | Sidewalk | Y |

Commercial Section

| | | | |
|---|---|---|---|
| Number of Occurances | | Perimeter | 141 |
| Building Number | | Stories | 2.0 |
| Class | D | Street Height | 9 |
| Depreciation Grade | A | Ground Floor Area | 2910 |
| Tenant Apeal | A | Exterior Wall type | SO |
| Foundation | Y | % office | |
| Year Built | 2003 | Rental Class | B |
| Effective Year Built | 2004 | | |
| Year Remodeled | | | |
| Economic Life | | | |
| Remaining Eco. Life | | | |
| Land Building ratio | 2.83 | | |
| Commercial Group | | | |
| Commercial Use | 660 | Outside Condition | VG |
| Cost Grade | A | Base Floor | 1 |
| Inside Grade | A | Base Floor Area | 2910 |
| Outside Grade | A | Number of Floors | 2 |
| Over all Condition | VG | Additional Floor Area | |
| Inside Condition | VG | Total Floor Area | 5820 |
| Lighting | A | Average Inc Unit Size | 5760 |
| Heating/Cooling type 1 | PU | Percent Heated 1 | 100 |
| Heating/Cooling type 2 | | Percent Heated 2 | |
| Partitioning | | Percent Sprinklers | |
| Total Income Area | 5760 | Rentable Sq. Footage | |
| Total of Income Units | 1 | Number of Units | |

**Legal Description**                                    **27-01-429-025-0000**

UNIT 7, SANDY CENTRAL PARK PLAT A CONDOMINIUM. 9160-7525
10085-4234 10433-732

Back to Top



SL County Home   Important Dates   FAQ   Contact   SITE MAP   Home

Find and Like Us on Facebook

Comments about this site?

# Attachment N



Documents | Assessor Information | Surveys | Tax Account Search | Onbase Public Documents | Summit County Home Page | County Map

Summary
Account
Owner
Value
Tax
Estimate Taxes
View Account in GIS Map
**Models**
Building
Land
**Permit**
BD-16-22529
BD-16-22463
**Transfer**
01003870
00960512
00428771
00326226
00326224
00317269
00281813
00275944
00246724
**External Links**
Link To Image
Plat Map
Subdivision
Link to Treasurer
For more detail information click on the above links.

## Account  0249346

| Location | Owner | Value | | | |
|---|---|---|---|---|---|
| **Account Number** 0249346 | **Name** AM PROPERTY MANAGEMENT LLC 8180 S 700 E #110 SANDY, UT 84070 | **Market** (2017) | | | $1,600,000 |
| **Acres** 0 | | **Taxable** | | | $1,600,000 |
| **Situs** 8165 ROYAL ST E #9 , | | **Tax Area: 07   Tax Rate:** 0.007820 | | | |

| Type | Actual | Assessed | SQFT | Units |
|---|---|---|---|---|
| Improvement | $1,500,000 | $1,500,000 | 3316.000 | |
| Land | $100,000 | $100,000 | | 1.000 |

**Tax District** 07 - PARK CITY A,J,K,U (D-D)

**Parcel Number** AH-AM-9

**Legal** LOT 9 OF ASPEN HOLLOW P.U.D. FIRST AMENDED THE SAME AS IS RECORDED IN OFFICE OF THE SUMMIT COUNTY RECORDER CONT 2001.87 SQ FT LOT SIZE AND 3316 SQ FT TOTAL LIVING SPACE TOGETHER WITH AN UND 6.2194% INT IN THE COMMON AREA. (NOTE: SEE AFFIDAVIT OF CORRECTION 2106-477 FOR CHANGE OF UNIT SQUARE FEET) (NOTE: SEE AMENDED DECLARATION #948009 BK 2134 PG 1130 FOR CHANGE OF UNIT SQUARE FEET) 374-316 442-630 458-132 546-663 569-274-280 880-72 2106-477 2164-105 2258-1801

| Transfers | | |
|---|---|---|
| **Entry Number** | **Form Name** | **Recording Date** |
| 01003870 | | 09/26/2014 03:19:00 PM |
| 00960512 | | 12/31/2012 10:46:56 AM |
| 00428771 | | 04/27/1995 03:20:00 PM |

| | |
|---|---|
| 00326226 | 06/28/1990 01:55:00 AM |
| 00326224 | 06/28/1990 01:55:00 AM |
| 00317269 | 12/20/1989 02:21:00 AM |
| 00281813 | 12/18/1987 04:19:00 AM |
| 00275944 | 09/02/1987 01:27:00 AM |
| 00246724 | 02/21/1986 01:20:00 AM |

| Tax | Images |
|---|---|

| Tax Year | Taxes |
|---|---|
| *2017 | $12,512.00 |
| 2016 | $12,854.40 |

* Estimated

Copyright (c) 2017
Tyler Technologies, Inc.
All Rights Reserved

Summit County Utah
Recorder-435.336.3238
Assessor-435.336.3211

Att. U

# Attachment O

Regus                                                                                    Page 1 of 2


**Regus**                                          Online Virtual Office Agreement

---

Agreement Date : June 14, 2016        Confirmation No : 32768-608689

| Business Center Details | | Client Details | |
| --- | --- | --- | --- |
| **NV, Reno - Downtown Reno** | | Company Name | Consumer Link, LLC |
| Address | 200 S. Virginia | Contact Name | Jonathan Hanley |
| | 8th floor | Address | ▮▮▮▮▮▮ |
| | Reno | | Sandy |
| | NEVADA | | Nevada |
| | 89501 | | United States of America |
| | United States of America | | |
| Sales Manager | Stacy Whittemore | Phone | ▮▮▮▮▮▮ |
| | | Email | bonhantenesq@yahoo.com |

**Virtual Office Payment Details** (exc. tax and exc. services)

Virtual Office Type :  Mailbox Plus

*[handwritten: 4/23 Changed jhanley@modifiedhomeweinberd .com in P65 & BNO]*

| Initial Payment : | | First month's fee : | $ 89.00 |
| --- | --- | --- | --- |
| | | One Time Registration Fee : | $ 49.00 |
| | | Service Retainer : | $ 178.00 |
| | | Total Initial Payment : | $ 316.00 |
| **Monthly Payment :** | | Total Monthly Payment : | $ 89.00 |

| Service Provision : | Start Date | July 1, 2016 | End Date | June 30, 2017 |
| --- | --- | --- | --- | --- |

All agreements end on the last calendar day of the month.

---

**Terms and Conditions**

We are Regus Management Group, LLC, the "Provider". This Agreement incorporates our terms of business set out on the attached Terms and Conditions and House Rules which you confirm you have read and understood. We both agree to comply with those terms and our obligations as set out in them. This agreement is binding from the agreement date and may not be terminated once it is made, except in accordance with its terms. Note that the Agreement does not come to an end automatically. See "Cancellation" section of your terms and conditions.

AGREEMENT TO ARBITRATE; CLASS ACTION WAIVER: Any dispute or claim relating in any way to this agreement shall be resolved by binding arbitration administered by the American Arbitration Association in accord with its Commercial Arbitration Rules (available at www.adr.org), except that you or the Provider may assert claims in small claims court and the Client and the Provider may pursue court actions to remove you, or prevent your removal, from the Center if you do not leave when this agreement terminates. The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this agreement. The arbitrator shall not conduct arbitration as a class or representative action. The Client and the Provider acknowledge that this agreement is a transaction in interstate commerce governed by the Federal Arbitration Act. The Client and the Provider agree to waive any right to pursue any dispute relating to this agreement in any class, private attorney general, or other representative action.

☑ I accept the terms and conditions

                                        Download the house rules

---

Regus

**Confirm by typing your name in the box below**

Name :  | Jonathan Henley |  on behalf of Consumer Link, LLC

**I confirm these details are correct to the best of my knowledge**

**Signed on
June 22, 2016**

United States Postal Service®
## Application for Delivery of Mail Through Agent
See Privacy Act Statement on Reverse

| 1. Date |
|---|
| June 28, 2016 |

In consideration of delivery of my or our (firm) mail to the agent named below, the addressee and agent agree: (1) the addressee or the agent must not file a change of address order with the Postal Service™ upon termination of the agency relationship; (2) the transfer of mail to another address is the responsibility of the addressee and the agent; (3) all mail delivered to the agency under this authorization must be prepaid with new postage when redeposited in the mails; (4) upon request the agent must provide to the Postal Service all addresses to which the agency transfers mail; and (5) when any information required on this form changes or becomes obsolete, the addressee(s) must file a revised application with the Commercial Mail Receiving Agency (CMRA).

**NOTE:** The applicant must execute this form in duplicate in the presence of the agent, his or her authorized employee, or a notary public. The agent provides the original completed PS Form 1583 to the Postal Service and retains a duplicate completed signed copy at the CMRA business location. The CMRA copy of PS Form PS 1583 must at all times be available for examination by the postmaster (or designee) and the Postal Inspection Service. The addressee and the agent agree to comply with all applicable Postal Service rules and regulations relative to delivery of mail through an agent. Failure to comply will subject the agency to withholding of mail from delivery until corrective action is taken.

This application may be subject to verification procedures by the Postal Service to confirm that the applicant resides or conducts business at the home or business address listed in boxes 7 or 10, and that the identification listed in box 8 is valid.

| 2. Name in Which Applicant's Mail Will Be Received for Delivery to Agent. *(Complete a separate PS Form 1583 for EACH applicant. Spouses may complete and sign one PS Form 1583. Two items of valid identification apply to each spouse. Include dissimilar information for either spouse in appropriate box.)* <br><br> Consumer Link, Inc. | 3a. Address to be Used for Delivery *(Include PMB or # sign.)* <br><br> 200 S. Virginia St., 8th Floor |
|---|---|

| | 3b. City <br> Reno | 3c. State <br> NV | 3d. ZIP + 4® <br> 89501 |
|---|---|---|---|

| 4. Applicant authorizes delivery to and in care of: | 5. This authorization is extended to include restricted delivery mail for the undersigned(s): |
|---|---|
| a. Name <br><br> Regus Reno Downtown Center | Yes |

| b. Address *(No., street, apt./ste. no.)* 200 S. Virginia, 8th Floor | | |
|---|---|---|
| c. City <br> Reno | d. State <br> NV | e. ZIP + 4 <br> 89501 |

| 6. Name of Applicant <br> Jonathan Hanley | 7a. Applicant Home Address *(No., street, apt./ste. no)* ▉▉▉▉▉ |
|---|---|

| 8. Two types of identification are required. One must contain a photograph of the addressee(s). Social Security cards, credit cards, and birth certificates are unacceptable as identification. The agent must write in identifying information. Subject to verification. | 7b. City <br> Sandy | 7c. State <br> UT | 7d. ZIP + 4 ▉▉ |
|---|---|---|---|
| a. <br><br> Driver's License | 7e. Applicant Telephone Number *(include area code)* <br> 801-386-5100 | | |
| | 9. Name of Firm or Corporation <br> Zinly, LLC | | |
| b. <br><br> Auto Insurance Policy | 10a. Business Address *(No., street, apt./ste. no)* <br> 9980 South 300 West, Suite 200 | | |
| Acceptable identification includes: valid driver's license or state non-driver's identification card; armed forces, government, university, or recognized corporate identification card; passport, alien registration card or certificate of naturalization; current lease, mortgage or Deed of Trust; voter or vehicle registration card; or a home or vehicle insurance policy. A photocopy of your identification may be retained by agent for verification. | 10b. City <br> Sandy | 10c. State <br> UT | 10d. ZIP + 4 <br> 84070 |
| | 10e. Business Telephone Number *(include area code)* <br> 801-386-5100 | | |
| | 11. Type of Business <br> Consumer Counseling Nonprofit Services | | |

12. If applicant is a firm, name each member whose mail is to be delivered. *(All names listed must have verifiable identification. A guardian must list the names of minors receiving mail at their delivery address.)*

| 13. If a CORPORATION, Give Names and Addresses of its Officers <br><br> Jonathan Hanley | 14. If business name *(corporation or trade name)* has been registered, give name of county and state, and date of registration. |
|---|---|

Warning: The furnishing of false or misleading information on this form or omission of material information may result in criminal sanctions (including fines and imprisonment) and/or civil sanctions (including multiple damages and civil penalties).

| 15. Signature of Agent/Notary Public <br><br> *(signature)* | 16. Signature of Applicant *(If firm or corporation, application must be signed by officer. Show title.)* <br><br> *(signature)* |
|---|---|

PS Form 1583, December 2004 *(Page 1 of 2)* (7530-01-000-9365)                                This form on Internet at www.usps.com®

**JURAT WITH AFFIANT STATEMENT**

State of _Utah_

County of _Salt Lake_ } ss.

☒ See Attached Document (Notary to cross out lines 1–7 below)
☐ See Statement Below (Lines 1–7 to be completed only by document signer[s], *not* Notary)

_Signature of Document Signer No. 1_          _Signature of Document Signer No. 2 (if any)_

Subscribed and sworn to (or affirmed) before me

this _13th_ day of _July_, _2016_, by
          Date          Month          Year

_Jonathan Hanley_
Name of Signer No. 1

Name of Signer No. 2 (if any)

_Crista P Romero_
Signature of Notary Public

_Sandy, UT March 18, 2020_
Any Other Required Information
(Residence, Expiration Date, etc.)

KRISTEN P ROMERO
Notary Public
State of Utah
Comm. No. 687926
My Comm. Expires Mar 18, 2020

Place Notary Seal/Stamp Above

──────────── **OPTIONAL** ────────────

*This section is required for notarizations performed in Arizona but is optional in other states. Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _App for Delivery of mail Through Agent_
_Consumer Link, Office_

Document Date: _June 28, 2016_          Number of Pages: _3 of 3_

Signer(s) Other Than Named Above: _____

© 2013 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #25924

PX20 - 154



**GEICO.**
geico.com

**Utah Insurance Identification Card**
**1-800-841-3000**

GEICO CASUALTY COMPANY
PO BOX 509090          SAN DIEGO, CA 92150-9090

| Policy Number | Effective Date 02-06-18 | Expiration Date 08-06-18 |
|---|---|---|

| Year 2007 | Make CHEV | Model SUBURBAN | Vehicle ID No. |
|---|---|---|---|

Insured:
JONATHAN PHILLIP AND SANDRA X
HANLEY

## Important Information

Here are your Policy Identification Cards. Please destroy your old cards when the new cards become effective.

Due to space limitations on the ID card, only the Named Insured and the Co-Insured are listed. For a full list of drivers covered under this policy, please reference the Drivers section of your Declarations Page, which is included with your insurance packet.

Please notify us promptly of any change in your address to be sure you receive all important policy documents. Prompt notification will enable us to service you better.

Your policy is recorded under the name and policy number shown on the card. If you would like additional ID cards, you can call us at 1-800-841-3000.

**What to do at the time of an accident.**

- Do not admit fault
- Do not reveal the limits of your liability coverage to anyone
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also identify witnesses and collect contact information.
- Contact the police or 911 if applicable
- Contact GEICO by calling 1-800-841-3000 or visit geico.com to report the accident.

U-4-UT (01-14)



# Attachment P

Regus                                                                    Page 1 of 2



**Regus**                                          **Online Virtual Office Agreement**

Agreement Date : June 14, 2016       Confirmation No : 32768-608695

| Business Center Details | | Client Details | |
|---|---|---|---|
| **NV, Las Vegas - Rainbow** | | Company Name | Consumer Defense, Inc. |
| Address | 500 North Rainbow Blvd | Contact Name | Jonathan Hanley |
| | Suite300 | Address | |
| | Las Vegas | | Sandy |
| | NEVADA | | Nevada |
| | 89107 | | |
| | United States of America | | United States of America |
| Sales Manager | Stacy Whittemore | Phone | |
| | | Email | benhortonesq@yahoo.com |

**Virtual Office Payment Details**  (exc. tax and exc. services)

**Virtual Office Type :**  Mailbox Plus

| Initial Payment : | | First month's fee : | $ 89.00 |
|---|---|---|---|
| | | One Time Registration Fee : | $ 49.00 |
| | | Service Retainer : | $ 178.00 |
| | | Total Initial Payment : | $ 316.00 |
| Monthly Payment : | | Total Monthly Payment : | $ 89.00 |
| Service Provision : | Start Date | July 1, 2016 | End Date | June 30, 2017 |

All agreements end on the last calendar day of the month.

### Terms and Conditions

We are Regus Management Group, LLC, the "Provider". This Agreement incorporates our terms of business set out on the attached Terms and Conditions and House Rules which you confirm you have read and understood. We both agree to comply with those terms and our obligations as set out in them. This agreement is binding from the agreement date and may not be terminated once it is made, except in accordance with its terms. Note that the Agreement does not come to an end automatically. See "Cancellation" section of your terms and conditions.

AGREEMENT TO ARBITRATE; CLASS ACTION WAIVER: Any dispute or claim relating in any way to this agreement shall be resolved by binding arbitration administered by the American Arbitration Association in accord with its Commercial Arbitration Rules (available at www.adr.org), except that you or the Provider may assert claims in small claims court and the Client and the Provider may pursue court actions to remove you, or prevent your removal, from the Center if you do not leave when this agreement terminates. The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this agreement. The arbitrator shall not conduct arbitration as a class or representative action. The Client and the Provider acknowledge that this agreement is a transaction in interstate commerce governed by the Federal Arbitration Act. The Client and the Provider agree to waive any right to pursue any dispute relating to this agreement in any class, private attorney general, or other representative action.

☑  I accept the terms and conditions

Download the house rules

Regus

**Confirm by typing your name in the box below**

Name :    Jonathan Hanley          on behalf of Consumer Defense, Inc.

I confirm these details are correct to the best of my knowledge

Signed on
June 22, 2016

**Payment Details**

Card Type : Visa
Name on Card : Jonathan Hanley
Card Number : **** **** **** 4537
Expiry Date : ▮▮

☑ I authorise the Provider to debit my credit card for the total initial payment
above plus applicable TAX/VAT and for all future charges incurred thereafter,
unless another form of payment is provided.

United States Postal Service®
## Application for Delivery of Mail Through Agent
See Privacy Act Statement on Reverse

| 1. Date |
|---|
| June 28, 2016 |

In consideration of delivery of my or our (firm) mail to the agent named below, the addressee and agent agree: (1) the addressee or the agent must not file a change of address order with the Postal Service™ upon termination of the agency relationship; (2) the transfer of mail to another address is the responsibility of the addressee and the agent; (3) all mail delivered to the agency under this authorization must be prepaid with new postage when redeposited in the mails; (4) upon request the agent must provide to the Postal Service all addresses to which the agency transfers mail; and (5) when any information required on this form changes or becomes obsolete, the addressee(s) must file a revised application with the Commercial Mail Receiving Agency (CMRA).

NOTE: The applicant must execute this form in duplicate in the presence of the agent, his or her authorized employee, or a notary public. The agent provides the original completed signed PS Form 1583 to the Postal Service and retains a duplicate completed signed copy at the CMRA business location. The CMRA copy of PS Form PS 1583 must at all times be available for examination by the postmaster (or designee) and the Postal Inspection Service. The addressee and the agent agree to comply with all applicable Postal Service rules and regulations relative to delivery of mail through an agent. Failure to comply will subject the agency to withholding of mail from delivery until corrective action is taken.

This application may be subject to verification procedures by the Postal Service to confirm that the applicant resides or conducts business at the home or business address listed in boxes 7 or 10, and that the identification listed in box 8 is valid.

| 2. Name in Which Applicant's Mail Will Be Received for Delivery to Agent. *(Complete a separate PS Form 1583 for EACH applicant. Spouses may complete and sign one PS Form 1583. Two items of valid identification apply to each spouse. Include dissimilar information for either spouse in appropriate box.)* | | | 3a. Address to be Used for Delivery *(include PMB or # sign.)* | | |
|---|---|---|---|---|---|
| Consumer Defense, LLC | | | 500 N. Rainbow Blvd, Suite 300, PMB 130 | | |
| | | | 3b. City | 3c. State | 3d. ZIP + 4® |
| | | | Las Vegas | NV | 89107 |
| 4. Applicant authorizes delivery to and in care of: | | | 5. This authorization is extended to include restricted delivery mail for the undersigned(s): | | |
| a. Name | | | | | |
| Regus Management | | | | | |
| b. Address *(No., street, apt./ste. no.)* 500 N. Rainbow Blvd, Suite 300 | | | | | |
| c. City | d. State | e. ZIP + 4 | | | |
| Las Vegas | NV | 89107 | | | |
| 6. Name of Applicant | | | 7a. Applicant Home Address *(No., street, apt./ste. no)* | | |
| Jonathan Hanley | | | | | |
| 8. Two types of identification are required. One must contain a photograph of the addressee(s). Social Security cards, credit cards, and birth certificates are unacceptable as identification. The agent must write in identifying information. Subject to verification. | | | 7b. City | 7c. State | 7d. ZIP + 4 |
| | | | Sandy | UT | |
| | | | 7e. Applicant Telephone Number *(include area code)* | | |
| a. | | | 801-386-5100 | | |
| Driver's License | | | 9. Name of Firm or Corporation | | |
| | | | Zinly, LLC | | |
| b. | | | 10a. Business Address *(No., street, apt./ste. no)* | | |
| | | | 9980 South 300 West, Suite 200 | | |
| Auto Insurance Policy | | | 10b. City | 10c. State | 10d. ZIP + 4 |
| | | | Sandy | UT | 84070 |
| Acceptable identification includes: valid driver's license or state non-driver's identification card; armed forces, government, university, or recognized corporate identification card; passport, alien registration card or certificate of naturalization; current lease, mortgage or Deed of Trust; voter or vehicle registration card; or a home or vehicle insurance policy. A photocopy of your identification may be retained by agent for verification. | | | 10e. Business Telephone Number *(include area code)* | | |
| | | | 801-386-5100 | | |
| | | | 11. Type of Business | | |
| | | | Consumer Counseling Nonprofit Services | | |
| 12. If applicant is a firm, name each member whose mail is to be delivered. *(All names listed must have verifiable identification. A guardian must list the names of minors receiving mail at their delivery address.)* | | | | | |
| | | | | | |
| 13. If a CORPORATION, Give Names and Addresses of its Officers | | | 14. If business name *(corporation or trade name)* has been registered, give name of county and state, and date of registration. | | |
| Jonathan Hanley | | | | | |

Warning: The furnishing of false or misleading information on this form or omission of material information may result in criminal sanctions (including fines and imprisonment) and/or civil sanctions (including multiple damages and civil penalties).

| 15. Signature of Agent/Notary Public | 16. Signature of Applicant *(If firm or corporation, application must be signed by officer. Show title.)* |
|---|---|
| | |

PS Form 1583, December 2004 *(Page 1 of 2)* (7630-01-000-9365)

This form on Internet at www.usps.com®



**JURAT WITH AFFIANT STATEMENT**

State of ___Utah___

County of ___Salt Lake___   } ss.

☒ See Attached Document (Notary to cross out lines 1–7 below)
☐ See Statement Below (Lines 1–7 to be completed only by document signer[s], not Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____
7 _____

Signature of Document Signer No. 1          Signature of Document Signer No. 2 (if any)

Subscribed and sworn to (or affirmed) before me

this __13th__ day of __July__, __2016__, by
         Date            Month        Year

__Jonathan Hanley__
Name of Signer No. 1

_____
Name of Signer No. 2 (if any)

_____
Signature of Notary Public

__Sandy, UT March 18, 2020__
Any Other Required Information
(Residence, Expiration Date, etc.)

KRISTEN P ROMERO
Notary Public
State of Utah
Comm. No. 687636
My Comm. Expires Mar 18, 2020

Place Notary Seal/Stamp Above

——————— OPTIONAL ———————

This section is required for notarizations performed in Arizona but is optional in other states. Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: __App for Delivery of Mail Through Agent__
__Consumer Defense, LLC__
Document Date: __June 28, 2016__      Number of Pages: __3 of 3__

Signer(s) Other Than Named Above: _____

© 2013 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #25924

PX20 - 162



**GEICO.**
geico.com
GEICO CASUALTY COMPANY
PO BOX 509090          SAN DIEGO, CA 60-9090

Utah Insurance Identification Card
1-800-841-3000

Policy Number

| Effective Date | Expiration Date |
|---|---|
| 02-08-16 | 08-08-16 |

| Year | Make | Model | Vehicle ID No. |
|---|---|---|---|
| 2007 | CHEV | SUBUR | |

Insured:
JONATHAN PHILLIP AND SANDRA X
HANLEY

## Important Information

Here are your Policy Identification Cards. Please destroy your old cards when the new cards become effective.

Due to space limitations on the ID card, only the Named Insured and the Co-insured are listed. For a full list of drivers covered under this policy, please reference the Drivers section of your Declarations Page, which is included with your insurance packet.

Please notify us promptly of any change in your address to be sure you receive all important policy documents. Prompt notification will enable us to service you better.

Your policy is recorded under the name and policy number shown on the card. If you would like additional ID cards, you can call us at 1-800-841-3000.

### What to do at the time of an accident.

• Do not admit fault
• Do not reveal the limits of your liability coverage to anyone
• Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also identify witnesses and collect contact information.
• Contact the police or 911 if applicable
• Contact GEICO by calling **1-800-841-3000** or visit **geico.com** report the accident.

U-4-UT (01-14)

# Attachment Q

 **Regus**

# Online Virtual Office Agreement

**Agreement Date : August 28, 2013          Confirmation No : 24576-716300**

| **Business Center Details** | **Client Details** | |
|---|---|---|
| **UT, Salt Lake City - Cottonwood Center** | Company Name | Preferred Law |
| Address   2825 E Cottonwood Parkway | Contact Name | Benjamin Horton |
| Suite 500 | Address | 8180 S 700 E |
| Salt Lake City | | Ste 110 |
| UTAH | | Sandy |
| 84121 | | Utah |
| United States of America | | 84070 |
| | | United States of America |
| Sales Manager   Stacy Whittemore | | |
| | Phone | 801-814-4913 |
| | Email | benhortonesq@yahoo.com |

**Virtual Office Payment Details** (exc. tax and exc. services)

**Virtual Office Type :** Standard Virtual Office

| **Initial Payment :** | | | |
|---|---|---|---|
| | First month's fee : | | $ 12.48 |
| | One Time Registration Fee : | | $ 99.00 |
| | Service Retainer : | | $ 258.00 |
| | Total Initial Payment : | | $ 369.48 |
| **Monthly Payment :** | Total Monthly Payment : | | $ 129.00 |
| **Service Provision :** | Start Date   August 29, 2013 | End Date | February 28, 2014 |

All agreements end on the last calendar day of the month.

Comments:

## Terms and Conditions

We are Regus Management Group, LLC, "Regus". This Agreement incorporates our terms of business set out on our Terms and Conditions which you confirm you have read and understood. We both agree to comply with those terms and our obligations as set out in them. This agreement is binding from the agreement date and may not be terminated once it is made, except in accordance with its terms. Note that the Agreement does not come to an end automatically. See "Bringing your Agreement to an end".

☑  I accept the terms and conditions

## Confirm by typing your name in the box below

Name :  [Benjamin R. Horton]  on behalf of Preferred Law

**Signed on**
**August 29, 2013**

I confirm these details are correct to the best of my knowledge



## Company Information

**Company ID:** 6380312

**Company Name:** American Home Loans

**Company Address:** 8180 S 700 E
Ste 110
Sandy
Utah
84070
United States of America

## Contact Information

**Contact ID:** 5025649

**Contact Name:** Mr. Benjamin Horton

**Contact Address:** ███████████
Sandy
Utah
████
United States of America

## Payment Card Information

**Cardholder Name:** Sandra Haney

**Billing Address:** 8180 S 700 E
Ste 110
Sandy
Utah
84070
United States of America

**Name on Card:** Sandra Haney

**Card Type:** Visa

**Card Number:** **** **** **** 6267

**Expiry Date:** ████

## User Information

**Created By:** Joshua Camacho

**IP Address:** 207.170.54.2

**Date Stamp:** 05/11/2015 19:47:00



## Company Information

**Company ID:** 6360812

**Company Name:** American Home Loans

**Company Address:** 8180 S 700 E
Ste 110
Sandy
Utah
84070
United States of America

## Payment Card Information

**Cardholder Name:** Sandra Hanley

**Billing Address:** 8180 S 700 E
Unit 110
Sandy
Utah
84070
United States of America

**Name on Card:** Sandra Hanley

**Card Type:** Mastercard

**Card Number:** **** **** **** 4529

**Expiry Date:** ▮▮

## Contact Information

**Contact ID:** 5035649

**Contact Name:** Mr. Benjamin Horton

**Contact Address:** ▮▮▮ ▮▮▮▮▮▮
Sandy
Utah
▮▮▮▮
United States of America

## User Information

**Created By:** Aaron Wan

**IP Address:** 207.173.5.▮

**Date Stamp:** 05/10/2016 13:07:07



## Company Information

**Company ID:** 608-812

**Company Name:** American Home Loans

**Company Address:** 8180 S 700 E
Ste 110
Sandy
Utah
84070
United States of America

## Contact Information

**Contact ID:** 5025045

**Contact Name:** Mr. Benjamin Horton

**Contact Address:** ████████████
Sandy
Utah
████
United States of America

## Payment Card Information

**Cardholder Name:** Sandra Hanley

**Billing Address:** 8180 S 700 E
Ste 110
Sandy
84070
United States of America

**Name on Card:** Sandra Hanley

**Card Type:** Mastercard

**Card Number:** ···· ···· ···· 1275

**Expiry Date:** ██

## User Information

**IP Address:** -

**Date Stamp:** 29/09/2013 20:15:00

**Email from Reception - Bill Short Paid**

Utah SaltLakeCW

Thu 3/31/2016 12:55 PM
benhortonesq@yahoo.com; bcollins@preferredlawteam.com

Hello Preferred Law!

I hope you are doing well!

I am reaching out to you in regards to **Invoice 1769-8883** in the amount of **138.00**. We have received payment for **$132.87**, however there is still **$5.13** to be paid. Can you please advise on this and when this will be paid?

Please reach out if you have further questions.

Best Regards,

Malia Campos
Client Service Representative

**Regus**

---

**Your Virtual Office Renewal**

utah.saltlakecw@regus.com

Sat 12/3/2016 11:14 AM
Utah SaltLakeCW

Dear Mr. Benjamin Horton - Company Ref: 6380812 (Preferred Law),

We are pleased to inform you that your Virtual Office agreement has been renewed until 31 Aug 2017 at $144.00 per month. As you have had a discount with no increase over a 12-month period we have amended your current discount slightly. Please note that once your renewal period has started a top-up retainer may be added, if applicable, to your monthly invoice.

We have also extended your complimentary Regus Businessworld Gold membership, giving you unlimited access to Regus Business Center lounges in all of our locations throughout the world for the same period.

We would like to thank you for your continued and valued business and are pleased to be serving you.

If for any reason you would like to renew for a longer term, or have any questions regarding your renewal, please feel free to contact us within 10 days of receipt of this email.

Sincerely,
Your Center Team
+1 801 990 3100

**From:** Utah SaltLakeCW [mailto:Utah.SaltLakeCW@regus.com]
**Sent:** Monday, December 5, 2016 11:28 AM
**To:** benhortonesq@yahoo.com
**Subject:** Email from Reception

Good morning Benjamin,

I'm emailing to follow up on our phone conversation from earlier today. If you could please send me the address you'd like your mail forwarded to, I'd be happy to make that adjustment in your account. As you and I discussed, we can begin forwarding your mail next week. Do you have a preference as to how often you'd like us to forward the mail?

Emina Tatarevic

Regus

**3000 locations, 900 cities, 120 countries**

2825 E Cottonwood Pkwy, Suite 500
Salt Lake City, UT 84121

D  (801) 990 3100
F  (801) 990 3111
E  Utah.SaltLakeCW@Regus.com

---

**RE: Email from Reception**

**Benjamin Horton, Attorney <benhortonesq@yahoo.com>**

You replied to this message on 12 5 2016 12 08 PM.

Mon 12/5/2016 12:05 PM
Utah SaltLakeCW

Thank you for your response.

I think we're going to hold off on mail forwarding for probably 2 more months as our outstanding accounts wind up. I'll email you then with the information.

- Ben

**Re: Email from Reception**

Bobbi Collins <bcollins@consumerdefense.com>

ⓘ Click here to download pictures. To help protect your privacy, Outlook prevented automatic download of some pictures in this message.

Wed 12/28/2016 1:37 PM
Utah SaltLakeCW

wrote:

Hello Bobbi,

Wanted to let you know that we received a Fed Ex package for Preferred Law PLLC - Anthony D Hamilton yesterday 12/27.

Hope you had a fantastic Holiday.

Regards,

**Kelsie Lewis**

Area Manager

**Regus**

---

**Re: Email from Reception**

Bobbi Collins <bcollins@consumerdefense.com>

ⓘ Click here to download pictures. To help protect your privacy, Outlook prevented automatic download of some pictures in this message.

Wed 12/28/2016 1:37 PM
Utah SaltLakeCW

okay great thank you for letting me know

Thanks

**Bobbi Collins**
**Manager**

# Attachment R

Box Number(s) *9 9*

# Application for Post Office Box™ Service

*Fill out all non-shaded fields, and take this application to the Post Office™.*

1. This service is for *(Required selection):*  ☑ Business/Organization Use   ☐ Residential/Personal Use

2. Name of Business/Organization *(if applicable):*  Consumer Defense, LLC

3. Name of Person Applying *(Last, First, M) — include title if representing a business/organization):*  Jonathan Hanley

4. Address: Number, Street, Suite ~~PO Box 700 #10~~                                          Verify Initials

   City  Sandy, UT            State UT   ZIP+4® 84070

5. Telephone Number *(Include Area Code)*  801-913-5504   6. Email Address

7. Box Size(s) (Required) *See page 1 for details*   ☐ Size 1   ☐ Size 2   ☑ Size 3   ☐ Size 4   ☐ Size 5

8. Applicant must select and enter the ID Number for two items of valid identification listed below. You must present the IDs at a Post Office. One item must contain a photograph and one must be traceable to the bearer (prove your physical address). Both must be current.

   **Select one photo ID:**
   ☑ Valid driver's license or state non-driver's ID card
   ☐ Armed forces, government, university, or recognized corporate ID
   ☐ Passport, passport card, alien registration card, or certificate of naturalization

   **Select one non-photo ID:**
   ☐ Current lease, mortgage, or deed of trust
   ☐ Voter or vehicle registration card        *Gieco*
   ☑ Home or vehicle insurance policy

   Photo ID Number: ▓▓▓▓▓▓▓▓   10/18   Non-Photo ID Number: ▓▓▓▓▓▓▓

   Verify Initials *(For Post Office Use Only)*

9. On the *back of this form*, list the name(s) of all individuals, including members of a business, who will be receiving mail at this (these) PO Box number(s).

10. On the *back of this form*, list the names of the persons or representatives of the business/organization authorized to pick up mail addressed to this (these) PO Box number(s).

**Optional Automatic Renewal Payment — Terms and Agreement (Required for 3-month payment option)**
By initialing below and establishing automatic renewal payments at a Post Office, I hereby authorize the U.S. Postal Service® (USPS®) to charge my credit card for the amount of my designated box size per USPS pricing on the scheduled interval I have selected (i.e., 3, 6, or 12 months). This charge could appear on my credit card statement as early as the 15th of the month prior to the due date. If I provided my email address, I understand that I will receive email notification at least 10 days prior to the actual credit card charge. I will also receive a payment due notice in my PO Box before the payment due date. I understand that I may cancel the automatic payment option any time after the initial application/payment process is complete during the business hours at the Post Office where my box is located. If I do not cancel by the 14th of the month prior to the next payment due date, I understand that the payment will be charged to my credit card. I understand that if the payment cannot be transacted due to incorrect credit card or payment information or the transaction would exceed the credit limit of the account, or the bank or credit card company rejects/returns the payment request, my PO Box may be closed and any mail received after closure would be returned to the sender. If my PO Box is closed for nonpayment, I understand that I could be charged a late payment fee to reactivate my PO Box service. If there are any changes to my credit card number, billing address, or expiration date, I agree to notify the Post Office where my box is located of these changes. I understand that this agreement will remain in effect until I or USPS terminates the PO Box service. The USPS may receive updated credit card account information from the institution that issued the credit card identified for payment. If I decide to close my PO Box, I must visit the Post Office where my box is located during business hours. (See the PO Box refund policy for information on refunds.) The USPS may terminate my participation under the automatic payment agreement in the event I provide incorrect, false, or fraudulent account information or if I have any returned payment items.

Customer Initials _____   Billing Address *(If different from address in 4 above):*

Number, Street, Suite _____

City _____   State _____   ZIP+4® _____

| Application Date | Number of Keys Issued | Customer Eligible for No-Fee Service | |
|---|---|---|---|
| 3/10 2016 | | ☐ Yes   ☐ No | |

**Signature of Applicant** *(Same as item 3)* I certify that all information furnished on this form is accurate, truthful, and complete. I understand that anyone who furnishes false or misleading information on this form or omits information requested on this form may be subject to criminal and/or civil penalties, including fines and imprisonment.

Post Office Date Stamp

PX20 - 173

Application for Post Office Box™ Service

The Postal Service™ may consider it valid evidence that a person is authorized to remove mail from the box if that person possesses a key or combination to the box.

11. Names of individuals (including members of a business) who will be receiving mail at this (these) PO Box number(s) are listed below.

a. **Residential/Personal Use** — Each adult listed must present two forms of valid identification to the Post Office.

b. **Business/Organization Use** — Each person listed must, upon request, present two forms of valid identification to the Post Office.

A parent or guardian may receive the mail of minors by listing their names (no ID is required).

12. Persons or representatives of the business/organization who are authorized to pick up mail addressed to this (these) PO Box number(s) are listed below. All names listed must have verifiable ID and upon request, present this identification to the Postal Service.

| | Verify initials (for Post Office Use Only) |
|---|---|
| Zinly, LLC | |
| Consumer Defense, LLC | Sandra Hanley |
| Consumer Link, LLC | Bobbi Chilleg |
| | Teresa Hernandez |
| | Jen Hanley |

| Verify initials (for Post Office Use Only) | Verify initials (for Post Office Use Only) |
|---|---|

**Privacy Act Statement:** Your information will be used to provide Post Office Box™ service and to ensure delivery to the box. Collection is authorized by 39 U.S.C. 401, 403, and 404. Providing the information is voluntary; but, if not provided, we will be unable to provide this service to you. We do not disclose your information to third parties without your consent, except to facilitate the transaction, to act on your behalf or request, or as legally required. This includes the following limited circumstances: to a congressional office on your behalf; to financial entities regarding financial transactions issues; to a U.S. Postal Service® auditor; to entities, including law enforcement, as required by law or in legal proceedings; to contractors and other entities aiding us to fulfill the service (service providers); to process servers; to domestic governmental agencies when needed as part of their duties; and to a foreign government agency for violations and alleged violations of law. Information concerning an individual box holder who has filed a protective court order with the postmaster will not be disclosed except pursuant to court order. For more information regarding our privacy policies, visit usps.com/privacypolicy.

™2011 United States Postal Service®. All Rights Reserved. The Eagle Logo, PO Box and Your Other Address are "some of the many trademarks of the U.S. Postal Service®."

PS Form 1093-T, January 2012 (Page 4 of 4)  PSN 7530-13-000-7111



THIS COULD BE **YOUR OTHER ADDRESS**™

GET A PO BOX™ ONLY FROM THE U.S. POSTAL SERVICE®.
SEE INSIDE FOR DETAILS ON HOW TO APPLY.

*UNITED STATES POSTAL SERVICE®*

PX20 - 174

# Attachment S

1               OFFICIAL TRANSCRIPT PROCEEDING

2

                    FEDERAL TRADE COMMISSION

3

4

5

    MATTER NO.      1723021

6

    TITLE           PREFERRED LAW LLC

7

    DATE            RECORDED:   OCTOBER 14, 2016

8                   TRANSCRIBED:  SEPTEMBER 27, 2017

9   PAGES           1 THROUGH 6

10

11

12         TELEPHONE CONVERSATION WITH DEBRA AND PAUL

                   2016.10.14 Beth Call

13

14

15

16

17

18

19

20

21

22

23

24              For The Record, Inc.

25      (301) 870-8025 - www.ftrinc.net - (800) 921-5555

```
1                    FEDERAL TRADE COMMISSION

2                         I N D E X

3

4   RECORDING:                              PAGE:

5   Telephone conversation with Debra and Paul      4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    FEDERAL TRADE COMMISSION

2

3    In the Matter of:            )

4    Preferred Law               )   Matter No. 1723021

5                                 )

6    ------------------------------)

7                            October 14, 2016

8

9

10

11           The following transcript was produced from a

12    digital file provided to For The Record, Inc. on

13    September 19, 2017.

14

15

16

17

18

19

20

21

22

23

24

25

```
1                  P R O C E E D I N G S

2                     -    -    -    -    -

3              MS. FELDSTEIN:  My name is Elizabeth

4     Feldstein.  I'm a paralegal with the Federal Trade

5     Commission, and today I'm going to be calling

6     Preferred Law, LLC, at 801-36 -- sorry, 386-5100.

7     That's 801-386-5100.  It's October 14th, 2016, at

8     about 12:45 p.m.  And I'm going to be using the

9     undercover profile of ███████████ .

10

11        TELEPHONE CONVERSATION WITH DEBRA AND PAUL

12              RECORDING:  Welcome to Default Support

13    Center, American Home Loan Counselors and Preferred

14    Law.  Our office hours are Monday through Friday, 9:00

15    a.m. to 5:00 p.m., Mountain time.

16                  For a directory of extensions, press one.

17    For immediate assistance, press three.

18                  (Number pressed.  Phone ringing.)

19              DEBRA:  This is Debra.  How may I direct

20    your call?

21              MS. FELDSTEIN:  Hi, I'm having some trouble

22    paying my mortgage and I was wondering if you all

23    could help me.

24              DEBRA:  Okay, yeah, let me go ahead and get

25    you over to Paul, okay?
```

5

1          MS. FELDSTEIN:  Okay.

2          DEBRA:  All right.

3          (On hold.  Phone ringing.)

4          PAUL:  This is Paul.

5          MS. FELDSTEIN:  Hi, my name is ▬▬, and

6  I'm having some trouble paying my mortgage and I was

7  wondering if you all could help me out.

8          PAUL:  Well, possibly.  I'm on the other

9  line, ▬▬.  Can I call you back when I'm done with

10 this call?

11         MS. FELDSTEIN:  Sure.  Let me give you my

12 number.

13         PAUL:  Okay (inaudible).

14         MS. FELDSTEIN:  ▬▬▬▬.

15         PAUL:  ▬▬, ▬▬.  Okay, I'll call you

16 back, ▬▬.  My name is Paul, senior advisor here at

17 Consumer Defense.

18         MS. FELDSTEIN:  Okay.

19         PAUL:  ▬▬▬▬.

20         MS. FELDSTEIN:  ▬ --

21         PAUL:  Okay, I'll call you back.

22         MS. FELDSTEIN:  Sure.

23         PAUL:  Bye.  All right.

24         (The call was concluded.)

25         (The recording was concluded.)

```
 1              CERTIFICATE OF TRANSCRIPTIONIST

 2

 3

 4          I, Elizabeth M. Farrell, do hereby certify

 5     that the foregoing proceedings and/or conversations

 6     were transcribed by me via CD, videotape, audiotape or

 7     digital recording, and reduced to typewriting under my

 8     supervision; that I had no role in the recording of

 9     this material; and that it has been transcribed to the

10     best of my ability given the quality and clarity of

11     the recording media.

12          I further certify that I am neither counsel

13     for, related to, nor employed by any of the parties to

14     the action in which these proceedings were

15     transcribed; and further, that I am not a relative or

16     employee of any attorney or counsel employed by the

17     parties hereto, nor financially or otherwise

18     interested in the outcome of the action.

19

20

21     DATE:  9/27/2017

22                         ELIZABETH M. FARRELL, CERT

23

24

25
```

Att. T'

# Attachment T

Michele Anderson-West [9249]
RICHARDS BRANDT MILLER NELSON
Wells Fargo Center, 15th Floor
299 South Main Street, 15th Floor
Salt Lake City, Utah 84110-2465
Telephone: (801) 531-2000
Facsimile: (801) 532-5506
Email: Michele-Anderson-West@rbmn.com

*Attorney for Plaintiffs*

---

## IN THE UNITED STATES DISCTICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RODERICK and TERONA FEACHER, individuals,** | |
| **Plaintiffs,** | **COMPLAINT** |
| **v.** | **[JURY TRIAL REQUESTED]** |
| **JONATHAN HANLEY, an individual, MODIFCATION REVIEW BOARD, LLC a Utah limited liability corporation, PREFERRED LAW, LLC, a Utah limited liability corporation and BENJAMIN R. HORTON, an individual,** | **Case No. 2:13-cv-00092 EJF** |
| **Defendants.** | |

Plaintiffs Rod and Terona Feacher, through the undersigned counsel, complain and allege

against Defendants as follows.

1

PRELIMINARY STATEMENT

Mr. and Mrs. Feacher are residents of Jacksonville, Florida who sought the services of

Defendants to assist them in obtaining a loan modification.   Defendants promised a modification

of Mr. and Mrs. Feacher's loan through Wells Fargo and guaranteed Plaintiffs they would not

lose their home to foreclosure.  Mr. and Mrs. Feacher paid Defendants $3,896.00 for the

promised services.  Defendants failed to deliver on the promises made and as a result, Plaintiffs

lost money, respect of their community and their family home.

JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §1332 as the Plaintiffs and

Defendants are citizens of different states and the amount in controversy exceeds $75,000.

2.      The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §

1331.

PARTIES

3.      Plaintiffs Rod and Terona Feacher ("Plaintiffs") are married individuals

residing in Jacksonville, Florida.

4.      Defendant Jonathan Hanley ("Hanley") is a resident of the State of Utah.

Hanley is the Owner and Manager of Defendant Modification Review Board, LLC and Owner

of Defendant Preferred Law, LLC.

5.      Defendant Modification Review Board, LLC ("MRB") is a for-profit

limited liability corporation organized under the laws of the State of Utah, with offices at

9035 South 700 East, Suite 203, Sandy, Utah 84070.

2

6.        Defendant Preferred Law, LLC ("Preferred Law") is a for-profit limited liability corporation organized under the laws of the State of Utah, with offices at 8180 South 700 East, Suite 110, Sandy, Utah 84070.

7.        Defendant Benjamin R. Horton ("Horton") is an individual and an attorney licensed to practice law in the State of Utah.  Horton is the Registered Agent for Defendant MRB and is the Manager, Registered Agent and Attorney of Record for Defendant Preferred Law.

<u>FACTUAL ALLEGATIONS</u>

8.        In or around the last week of April 2012, Plaintiffs came upon the website for MRB when researching assisting in obtaining a loan modification through their lender, Wells Fargo.

9.        MRB's website represented that MRB as a law firm priding itself in "representing clients who have foreclosure problems and evaluate their situation for foreclosure defenses." [See screen shot for MRB attached hereto as Exhibit "A"]

10.       MRB's website represented that MRB's attorneys "can get you the results you need and inform you of your legal rights." [See Exhibit "A"]

11.       MRB's website further represented "only a licensed attorney can legally represent you and provide you with legal advice." [See Exhibit "A"]

12.       While unknown to Plaintiffs at the time they viewed the website, MRB is <u>not</u> a law firm and employed no one who was qualified to offer legal advice or assistance.  [See Utah Business Search attached hereto as Exhibit "B"]

3

13.     While unknown to Plaintiffs at the time they viewed the website, MRB is owned

and managed by non-attorneys Hanley and Hanley's wife. [See Articles of Organization for MRB

attached hereto as Exhibit "C"]

14.     While unknown to Plaintiffs at the time they viewed the website, MRB had no

attorneys associated with it.  [See Utah State Bar Public Directory attached hereto as Exhibit

"D"]

15.     Plaintiffs, relying on the statements on MRB's website, called the telephone

number provided.

16.     Plaintiffs were connected with Rod Kartchner, who identified himself as a loan

modification adviser with MRB.

17.     The discussion between Plaintiffs and Mr. Kartchner included, but was not limited

to the following:

        a.     Potential foreclosure proceedings;

        b.     Wells Fargo's reluctance in providing a loan modification;

        c.     Plaintiffs' desire to keep their home "no matter what;"

        d.     Mr. Feacher's current bankruptcy.

18.     MRB requested bank statements, electric bills, water bills and pay stubs which

Plaintiffs provided to MRB.

19.     MRB conducted an assessment of Plaintiffs' situation to determine if a

modification was even possible.

4

20.     MRB explained that if the assessment yielded positive results, then Plaintiffs would be referred to Preferred Law for assistance.

21.     MRB further explained that Preferred Law is particular about choosing clients because they have a good track record of "winning in Court" and in "getting banks to comply with a modification."

22.     MRB also explained that if the assessment yielded negative results, then Preferred Law would not be able to assist Plaintiffs.

23.     Plaintiffs researched Preferred Law and found the website (Preferred Law Team) exactly mirrored that of MRB with the substitution of Preferred Law in place of Modification Review Board. [See screen shot of Preferred Law attached hereto as Exhibit E]

24.     Preferred Law and MRB share the same address.  [See Articles of Organization for Preferred Law attached hereto as Exhibit F]

25.     Preferred Law, unlike MRB, has one attorney associated with it:  Defendant Horton. [See Public Directory Utah State Bar attached hereto as Exhibit G]

26.     MRB called Plaintiffs back and informed them they had been accepted as clients of Preferred Law; and guaranteed that through Preferred Law, a "modification would be no problem."

27.     Plaintiffs were then transferred to Ms. Martinez, who identified herself as a paralegal with Preferred Law.

29.     Ms. Martinez told Plaintiffs she would handle the paperwork necessary to submit to Wells Fargo in order to start the loan modification process.

5

30.    Ms. Martinez told Plaintiffs that the information would be reviewed by "one of their attorneys" as needed.

31.    Unknown to Plaintiffs at the time, Preferred Law had only one attorney associated with it, Horton.

32.    Plaintiffs contacted Preferred Law approximately twice a week for a period of four (4) weeks to ensure it had received all the paper work necessary for submitting the application for the loan modification.

33.    Each time Plaintiffs called Preferred Law, it assured Plaintiffs it had everything it needed for the loan modification.

34.    Plaintiffs never spoke with Horton or any other attorney alleged to be connected with Preferred Law.

35.    Horton did not review Plaintiffs loan modification documents or any other papers concerning Plaintiffs.

36.    In the middle of June 2012, Plaintiffs received Notice from Wells Fargo that a foreclosure of their home was scheduled for August 30, 2012.

37.    Plaintiffs immediately called Preferred Law to speak with one of its attorneys.

38.    Preferred Law's automated telephone menu did not provide an extension for Horton and did not provide an option for an Operator.

39.    Plaintiffs were connected with Ms. Martinez.

40.    Ms. Martinez asked Plaintiffs to fax over to Preferred Law the Notice of Sale, which Plaintiffs promptly sent.

6

41.     Ms. Martinez told Plaintiffs "not to worry" that Preferred Law's attorneys would submit paperwork to the Courts to stop the sale and assured Plaintiffs that the attorneys had it all handled.

42.     Preferred Law told Plaintiffs that the Notice of Sale was received in plenty of time for the attorneys reviewing options for Plaintiffs.

43.     Plaintiffs called Preferred Law every day for a period of three weeks to make sure everything was being taken care of.

44.     Each time Plaintiffs called Preferred Law, they were told that everything was fine and it was a matter of going through the procedures necessary to stop the sale and get Plaintiffs their loan modification.

45.     On or around July 20, 2012, when Plaintiffs called Preferred Law, they were told that Ms. Martinez was no longer assisting them and instead, were transferred to Ms. Thacker.

46.     Ms. Thacker identified herself as the paralegal that worked directly with Wells Fargo.

47.     Ms. Thacker told Plaintiffs she would be handling the legal issues such as researching to see where Wells Fargo made mistakes and bring those mistakes to the attention of the Court.

48.     Preferred Law assured Plaintiffs that it knew a foreclosure sale had been scheduled and told Plaintiffs not to worry about a thing since "the lawyers" would make sure the sale was cancelled.

7

49.     Plaintiffs continued to contact Preferred Law, through Ms. Thacker daily through the middle of July 2012.

50.     In mid-July 2012, Ms. Thacker told Plaintiffs that their file was in "underwriting" which process took approximately 90 days.

51.     Preferred Law asked Plaintiffs not to contact it daily since their file was in underwriting.

52.     Plaintiffs were told by Preferred Law that it would contact Plaintiffs if any additional information was required and instructed Plaintiffs that Preferred Law had everything covered.

53.     Horton, the only attorney associated with Preferred Law never researched Plaintiffs' legal issues.

54.     Horton, the only attorney associated with Preferred Law never reviewed information from Wells Fargo on behalf of Plaintiffs.

55.     Horton, the only attorney associated with Preferred Law never brought allegations to the attention of any Court.

56.     On October 8, 2012, Ms. Feacher returned from a funeral to find an Eviction Notice placed on Plaintiffs' front door.

57.     The Eviction Notice was signed by the same Sheriff's department at which Mr. Feacher is employed as a Sheriff.

58.     Unknown to Plaintiffs, their home was sold at foreclosure back on August 30, 2012.

8

59.     Ms. Feacher immediately called Preferred Law, but found that office was closed due to the Columbus Day holiday.

60.     Ms. Feacher left a message and also sent an email to Ms. Thacker with a copy sent to Mr. Kartchner. [See email of October 8, 2012, 1:08 p.m. attached hereto as Exhibit H]

61.     Ms. Feacher received an email response from Mr. Kartchner telling Plaintiffs he was sending an email to Ms. Thacker. [See email of October 8, 2012, 3:50 p.m. attached hereto as Exhibit I]

62.     Mr. Kartchner sent an email to Phil Hanley and Ms. Thacker of Preferred Law, with a copy to Hanley and advised them about the eviction notice, asked for options and gave possible solutions to Plaintiffs' pending eviction.  [See email of October 8, 2012, 11:24 p.m. attached hereto as Exhibit J]

63.     Immediately the next morning, but to no avail, Plaintiffs went to the Duval County Courthouse in Jacksonville, Florida and filed a Stay of Eviction.

64.     However, Plaintiffs were told that their request for a stay of eviction was denied and were instructed to vacate their home within 48 hours.

65.     Phil Hanley, of Preferred Law, who is Defendant Hanley's father and not an attorney, called Plaintiffs later that day.

66.     Phil Hanley offered Plaintiffs no explanation as to why the foreclosure sale took place; offered no explanation why Preferred Law had not done anything through the Courts to stop the sale; and offered no explanation why Preferred Law never contacted Plaintiffs regarding the sale.

9

67. Phil Hanley instructed Plaintiffs not to leave the home and told Plaintiffs that he would contact the new owners of Plaintiffs' house in an attempt to re-negotiate the sale.

68. Phil Hanley called Plaintiffs back a short time later and told Plaintiffs the new owners of Plaintiffs' house would not re-negotiate the sale and advised Plaintiffs to go to the Federal Courthouse and file bankruptcy.

69. Phil Hanley stated that the bankruptcy would prevent Plaintiffs from being evicted and would give Preferred Law time to figure out what had transpired.

70. Although Preferred Law professed it had "attorneys" on staff ready to help, its only attorney, Horton, did absolutely nothing to prevent the foreclosure of Plaintiffs' home and did nothing after the foreclosure to attempt to rescind the sale.

71. While Ms. Feacher was at the Federal Courthouse filling out bankruptcy information, she received a telephone call from Defendant Hanley.

72. Defendant Hanley instructed Ms. Feacher not to file bankruptcy because Plaintiffs' home was sold to a third party.

73. Defendant Hanley told Ms. Feacher that filing bankruptcy filing would not give Plaintiffs their home back.

74. As Plaintiffs packed up their belongings and prepared to move from their home, Phil Hanley called back and told Plaintiffs he had arranged for Plaintiffs to rent their home from the new owners for $1,300.00 a month.

10

75.    Plaintiffs rejected the offer to rent their own home and vacated the premises on October 12, 2012.

76.    Plaintiffs asked both MRB and Preferred Law for a refund of the $3,896.00 paid for a guaranteed loan modification and for protection from foreclosure.

77.    MRB and Preferred Law refused to refund Plaintiffs' money, telling Plaintiffs that Preferred Law did nothing wrong.

78.    Plaintiffs contacted MRB, Preferred Law, Phil Hanley and Defendant Hanley several times asking for a refund.

79.    Defendants refused to return Plaintiffs' money.

<u>FIRST CAUSE OF ACTION</u>
Alter Ego

80.    Plaintiffs reallege and incorporate herein each of the averments set forth above.

81.    Hanley incorporated MRB on October 26, 2011 [See Exhibit B]

82.    Hanley incorporated Preferred Law on October 26, 2011. [See Exhibit F]

83.    MRB and Preferred Law share the same business address.

84.    Hanley's father, Phil Hanley and Hanley's wife, Sandra Hanley are the people in charge of the operations of Preferred Law and MRB.

85.    Hanley is a non-attorney and as such, engaged Horton as the attorney associated with Preferred Law.

11

86.     Horton's relationship with Preferred Law is one of name only:  there is no extension listed on the telephone directory for Horton; when calling Preferred Law, one can't be transferred to speak to Horton; Horton never reviewed even one of Plaintiffs' documents.

87.     Hanley is the sole owner, president, secretary and treasurer of both LMB and Preferred Law.

88.     Hanley and Horton are alter egos of Preferred Law and MRB.

89.     Preferred Law and MRB are alter egos of Hanley and Horton.

90.     If the corporate form were to be observed, this would sanction fraud, promote injustice and result in inequity, enabling the Defendants to hide assets and prevent proper remedy for their wrongdoing.

SECOND CAUSE OF ACTION
INTENTONAL MISREPRESENTATION

91.     Plaintiffs reallege and incorporate herein each of the averments set forth above.

92.     Defendants made representations to Plaintiffs in the areas of loan modification services and preventing foreclosure.

93.     Defendants knew that the statements they made regarding the services and results promised were false.

94.     Each of the false representations Defendants made to Plaintiffs concerned a presently existing material fact, which was false and which Defendants knew was false at the time the representation was made.

12

95.     Defendants enticed Plaintiffs to retain their services with intentional misrepresentations are set forth above, including but not limited to:

   a.   Representing MRB as a law firm, which it is not a law firm;

   b.   Representing MRB represents clients who have foreclosure problems, when there was no attorney representation;

   c.   Representing MRB offers "litigation" as a specialty, when there are no lawyers associated with MRB;

   d.   Representing Preferred Law specializes in foreclosure defense, when it did nothing at all to prevent Plaintiffs' foreclosure;

   e.   Representing Preferred Law offers "litigation" as a specialty "in or outside of Utah" when Horton is only licensed to practice law in the State of Utah and as Plaintiffs' property at issue is in Jacksonville, Florida, Horton could never have represented Plaintiffs without association with an attorney licensed to practice law in Florida.

96.     Defendants intended that Plaintiffs rely on the misrepresentations for the purposes of inducing Plaintiffs to remit payment of approximately $3,896.00.

97.     Plaintiffs believed and relied on the intentional misrepresentations of Defendants, remitted payment of $3,896.00 trusting that the experienced lawyers would have their backs.

98.     Defendants' statements were made knowing they were false when made and in reckless disregard to the rights of Plaintiffs.

13

99.     As a result of Defendants' intentional misrepresentations, Plaintiffs are entitled to punitive damages in an amount to be proved at trial.

100.    Additionally, Plaintiffs have suffered direct and consequential damages as a result of Defendants' intentional misrepresentations.

101.    Plaintiffs are entitled to direct, consequential and punitive damages to be proven at trial as well as costs and reasonable attorney's fees.

THIRD CAUSE OF ACTION
NEGLIGENT MISREPRESENTATION

102.    Plaintiffs reallege and incorporate herein each of the averments set forth above.

103.    Defendants made negligent representations to Plaintiffs in the areas of loan modification services and preventing foreclosure.

104.    Defendants made statements repeatedly and with reckless disregard to whether the statements were true or false regarding the services and results promised.

105.    Each of the negligent and false representations Defendants made to Plaintiffs concerned a presently existing material fact, which was false and which Defendants knew was false at the time the representation was made or which statement Defendants made with reckless disregard to whether the statements were true or false.

106.    Defendants enticed Plaintiffs to retain their services with negligent and reckless misrepresentations are set forth above, including but not limited to:

   a.   Telling Plaintiffs MRB and Preferred Law could obtain a loan modification on their behalf, when Plaintiffs did not qualify for a loan modification;

14

b. Telling Plaintiffs that Preferred Law had attorneys who could get them the results they needed, when Horton never spoke to Plaintiffs and certainly did not produce the results Plaintiffs needed;

c. Telling Plaintiff that the foreclosure information would be submitted to Court two weeks prior to the foreclosure, when Horton did not submit any documents on Plaintiffs'' behalf to any Court.

107.     Defendants intended that Plaintiffs rely on the misrepresentations for the purposes of inducing Plaintiffs to remit payment of approximately $3,896.00.

108.     Plaintiffs believed and relied on the negligent misrepresentations of Defendants, remitted payment of $3,896.00 and trusted that the experienced lawyers would have their backs.

109.     Plaintiffs have suffered both direct and consequential damages as a result of Defendants' negligent misrepresentations.

110.     Plaintiffs are entitled to direct, consequential and punitive damages to be proven at trial as well as costs and reasonable attorney's fees.

FOURTH CAUSE OF ACTION
FRAUD

111.     Plaintiffs reallege and incorporate herein each of the averments set forth above.

112.     Defendants made false statements of material fact to Plaintiffs, including, but not limited to:

a. telling Plaintiffs they qualified for a loan modification, when they did not qualify;

15

b. telling Plaintiffs they would prevent foreclosure of Plaintiffs' home, when they could not and did not stop the foreclosure;

c. representing MRB as a law firm, which it is not a law firm;

d. representing MRB as specializing in representing clients who have foreclosure problems, when there was no attorney representation;

e. representing MRB as specializing in "litigation," when there are no lawyers associated with MRB;

f. representing Preferred Law specializes in foreclosure defense, when Horton did nothing to prevent Plaintiffs' foreclosure and did nothing post foreclosure to rescind the sale;

g. representing Preferred Law specializes in "litigation" "in or outside of Utah" when Horton is only licensed to practice law in the State of Utah and could not have represented Plaintiffs without associating with an attorney licensed to practice law in Florida.

h. telling Plaintiffs MRB and Preferred Law could obtain a loan modification on their behalf, when Plaintiffs did not qualify for a loan modification;

i. telling Plaintiffs that Preferred Law had attorneys who could get them the results they needed, when Horton never spoke to Plaintiffs and certainly did not produce the results Plaintiffs needed;

16

      j.   telling Plaintiff that the foreclosure information would be submitted to Court two weeks prior to the foreclosure, when Horton did not submit any documents on Plaintiffs'' behalf to any Court.

113.   Defendants made the false statements in order to induce Plaintiffs to pay a substantial amount of money for the sole purpose of Defendants' financial gain.

114.   Defendants were in a position of power over Plaintiffs as the supposed legal experts, which position made Defendants in a position to know the inaccuracy of the statements they made.

115.   Plaintiffs were in an inferior position to know the truth or falsity of the statements made by the Defendants and relied on the statements to their detriment.

116.   Plaintiffs have suffered both direct and consequential damages as a result of Defendants' fraud.

117.   As a result of Defendants' fraud, Plaintiffs are entitled to punitive damages in an amount to be proved at trial.

118.   Plaintiffs are entitled to direct, consequential and punitive damages to be proven at trial, together with costs and reasonable attorney's fees.

FIFTH CAUSE OF ACTION
(Legal Malpractice-Horton)

119.   Plaintiffs reallege and incorporate herein each of the averments set forth above.

120.   Legal malpractice involves an attorney/client relationship where an attorney fails to use the same degree of care, skill, judgment and diligence used by reasonably careful

17

attorneys under similar circumstances and the failure to use such care resulted in plaintiff's harm.

121.   Horton is the Manager and only attorney with Preferred Law.

122.   Plaintiffs retained the services of Preferred Law and its lawyer, to represent them in securing a loan modification and defending foreclosure.

123.   Plaintiffs and Horton engaged in an Attorney/Client Relationship when Plaintiffs retained the services of Preferred Law as Horton is Preferred Law's manager, managing partner, and the only attorney associated with Preferred Law.

124.   Plaintiffs home was located in Jacksonville, Florida.

125.   Horton is licensed to practice law in the State of Utah and is not licensed to practice law in Jacksonville, Florida.

126.   Horton, through his association with Preferred Law, could never have represented Plaintiffs with their foreclosure defense because Horton is not licensed to practice law in Florida.

127.   In order for Horton to have represented Plaintiffs as was promised through the representations and through Horton's affiliation with Preferred Law, he should have and could have applied to practice pro hac vice in Florida and began foreclosure defense litigation on behalf of Plaintiffs.

128.   Horton should have and could have associated with Florida counsel to assist Plaintiffs in filing a bankruptcy to stop the foreclosure.

129.   Horton should have and could have researched the documents provided by Wells Fargo to determine if there were violations in the servicing of Plaintiffs' mortgage which would warrant litigation.

18

130.   Horton should have and could have applied pro hac vice in Florida to represent Plaintiffs post-foreclosure.

131.   Instead, Horton did absolutely nothing on behalf of Plaintiffs.

132.   Horton failed to use the minimal standard of care of the practice of law with regard to Plaintiffs.

133.   As a result of the legal malpractice, Plaintiffs have lost their house and any rights they had to legitimate legal recourse:  bankruptcy, pre-foreclosure litigation against Wells Fargo, post-foreclosure litigation prior to being evicted.

134.   As a result of Horton's inaction and malpractice, Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs ask the Court for the following relief:

a.   For compensatory damages in an amount to be determined at trial;

b.   For punitive damages;

c.   For costs and attorneys fees;

d.   For other such relief as the Court deems fair and just.

RICHARDS BRANDT MILLER NELSON

_____/s/ Michele Anderson-West____

19

Exhibit H

Email of October 8, 2012-1:08 p.m.

---------- Forwarded message ----------
From: R FEACHER <feacher904@bellsouth.    >
Date: Mon, Oct 8, 2012 at 1:08 PM
Subject: Eviction notice on door of Feacher residence
To: mthacker@preferredlawteam.com
Cc: rkartchner@modificationreviewboard.com

Michelle,

This is Terona Feacher. Today when I arrived home after I left a funeral then
to pick up my son from school, there was an eviction notice on our front
door. The notice was placed today at 1:05pm, and stated we have 24hrs to
be move off the property or else JSO will come to remove all persons from
the premises. I know we have not been in contact on either end lately but
we have complied and have been on time with payments and paperwork. I
know you spoke with us and said Wells Fargo would try everything they
possibly can up until the last point, but this is the last point and time is of
the essence. I know its a holiday today so time is really against us at this
moment. Is the paperwork which you filed for us under the protection of the
Hamp 3.3 law which protects us from eviction? If so, what was the effective
date of this letter? Please call me asap once you are back in the office. I will
be waiting for your call.

Sincerely,
Terona Feacher 904-318-4053 or 904-713-0317
Roderic Feacher 904-568-0907

http://us.mg204.mail.yahoo.com/dc/launch?.partner=sbc&.gx=1&.rand=3q2e81v7hlit6          12/30/2012

Exhibit I

Email of October 8, 2012-3:50 p.m.

**From:** Rod Kartchner (rkartchner@modificationreviewboard.com)
**To:** feacher904@bellsouth.net;
**Date:** Mon, October 8, 2012 3:50:55 PM
**Cc:**
**Subject:** Re: Eviction notice on door of Feacher residence

Hi Terona,

I sent am Email to Michelle Thacker requesting that she contact you tomorrow to review the status of your modification file.

Thanks for keeping me in the loop.

Rod


On Mon, Oct 8, 2012 at 1:08 PM, R FEACHER <feacher904@bellsouth.net> wrote:

> Michelle,
>
> This is Terona Feacher. Today when i arrived home after i left a funeral then to pick up my son from school, there was an eviction notice on our front door. The notice was placed today at 1:05pm, and stated we have 24hrs to be move off the property or else JSO will come to remove all persons from the premises. I know we have not been in contact on either end lately but we have complied and have been on time with payments and paperwork. I know you spoke with us and said Wells Fargo would try everything they possibly can up until the last point, but this is the last point and time is of the essence. I know its a holiday today so time is really against us at this moment. Is the paperwork which you filed for us under the protection of the Hamp 3.3 law which protects us from eviction? If so, what was the effective date of this letter? Please call me asap once you are back in the office. I will be waiting for your call.
>
> Sincerely,
> Terona Feacher 904-318-4053 or 904-713-0317
> Roderic Feacher 904-568-0907

Exhibit J

Email of October 8, 2012-11:24 p.m.

PX20 - 206

**From:** Rod Kartchner (rkartchner@modificationreviewboard.com)
**To:** phanley@preferredlawteam.com; mthacker@preferredlawteam.com;
**Date:** Mon, October 8, 2012 7:11:24 PM
**Cc:** jhanley@modificationreviewboard.com;
**Subject:** Emergency Action Required.......Fwd: Eviction notice on door of Feacher residence

Michelle and Phil,

On Tuesday morning when you are back at work, please review the modification file of Rod and Terona Feacher in Jacksonville, Florida right away, and contact Mr. Rod Feacher.

Today they received an eviction notice from the very police / sheriff's office that Mr. Feacher works at as a police officer, (from one of his colleges).

Personally, I don't see how they could legally do an eviction with less than a 24 hour notice.

But, an even better question is: How did it get this far since the modification for the Feacher family was initialized in early June, 4 months ago?

My understanding is that the HAMP laws would effectively protect the Feacher family from these kinds of legal actions.

I explained to officer Rod Feacher, that I am not an attorney, but that in my opinion one of the many options for them might be a bankruptcy filing. I don't know, but this issue can certainly be addressed on Tuesday. When I spoke to Mr. Feacher today I learned that their current 13 plan is only in his name. If this is the case, then Mrs. Feacher, who is also on the loan as the co or the primary borrower, should be able to do a last minute BK filing to invoke the automatic stay.

Also, be advised that the eviction issue is going before a local judge (I think tomorrow - Tuesday).

The cell number for Rod Feacher is (904) 568-0907. Please call him immediately. There is also a cell number for Mrs. Feacher in the file, as well as a home land line.

Thanks,

Rod Kartchner

--------- Forwarded message ----------
From: **Rod Kartchner** <rkartchner@modificationreviewboard.com>
Date: Mon, Oct 8, 2012 at 1:49 PM
Subject: Fwd: Eviction notice on door of Feacher residence
To: Michelle Thacker <mthacker@preferredlawteam.com>

Hi MIchelle,

I received a call this morning from Terona Feacher in Florida.

She is upset because she received an eviction notice.

http://us.mg204.mail.yahoo.com/dc/launch?.partner=sbc&.gx=1&.rand=3q2e81v7hlit6        12/30/2012

Michele Anderson-West [9249]
RICHARDS BRANDT MILLER NELSON
Wells Fargo Center, 15th Floor
299 South Main Street, 15th Floor
Salt Lake City, Utah 84110-2465
Telephone: (801) 531-2000
Facsimile: (801) 532-5506
Email: Michele-Anderson-West@rbmn.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RODERICK and TERONA FEACHER,** | |
| **Plaintiffs,** | **FIRST AMENDED COMPLAINT** |
| **v.** | **[JURY TRIAL REQUESTED]** |
| **PHILLIP HANLEY, ROD KARTCHNER, MICHELLE THACKER, SHANNON MARTINEZ, BENJAMIN R. HORTON, MODIFCATION REVIEW BOARD, LLC , PREFERRED LAW, LLC,** | |
| **Defendants.** | **Case No. 2:13-cv-00092** **Magistrate Judge Evelyn J. Furse** |

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiffs Roderick and Terona Feacher, through

the undersigned counsel, complain and allege against Defendants as follows.

PRELIMINARY STATEMENT

This matter involves Plaintiffs loss of their family home due to the arrogance, greed and

disregard of Defendants. Defendants here include a father and son, who previously worked in

1

businesses involving loan modification schemes, and their associates engaged to make money at the expense of others.   During a time of economic distress, Defendants operated a scheme dependent on the distress of Plaintiffs and preyed on that distress for financial gain.  Defendants operated several websites and phantom business services designed to entice individuals, such as Plaintiffs, to engage Defendants' services for modification of mortgage loans and to prevent foreclosure.  Defendants' model for success depended on volume of  distressed homeowners such as Plaintiffs, who believed the representations that Defendants were experts, attorneys and other professionals with experience saving houses.  Defendants, instead, worked together to entice unsuspecting individuals like Plaintiffs and in turn, received commissions, bonuses, and other compensation.   Here, Plaintiffs, believing in Defendants' representations, engaged Defendants' services and instead of obtaining guidance and relief of financial distress, lost their savings and family home.

<u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction pursuant to 28 U.S.C. §1332 as the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

2.      The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

<u>PARTIES</u>

3.      Plaintiffs Roderick and Terona Feacher are husband and wife and at all times relevant herein, resided in Jacksonville, Florida.

2

4.      Defendant Phillip Hanley is an individual who at all times relevant herein was affiliated with each co-defendant.

5.      Defendant Rod Kartchner is an individual who at all times relevant herein was affiliated with each co-defendant.

6.      Defendant Shannon Martinez is an individual who at all times relevant herein was affiliated with each co-defendant.

7.      Defendant Michelle Thacker is an individual who at all times relevant herein was affiliated with each co-defendant.

8.      Defendant Benjamin R. Horton is an individual and at all times relevant herein was affiliated with each co-defendant.

9.      Defendant Modification Review Board, LLC is a for-profit limited liability corporation organized under the laws of the State of Utah.

10.     Defendant Preferred Law, LLC is a for-profit limited liability corporation organized under the laws of the State of Utah.

<u>FACTUAL BACKGROUND</u>

11.     Phillip Hanley and Jonathan Hanley[1] are father and son, who together and separately, have engaged in loan modification businesses.

12.     Prior to forming and becoming affiliated with Modification Review Board and Preferred Law, Jon Hanley and Phil Hanley worked for CC Brown Law Office.

---

[1] Jonathan Hanley was a named Defendant in the Complaint but has subsequently filed for protection under the Bankruptcy Code. Jonathan Hanley is mentioned herein for reference purposes only and is not a defendant herein.

3

13.     Jon Hanley was employed in the capacity of Head Case Manager and General Manager while at CC Brown.

14.     Phil Hanley was employed in the capacity of Case Manager and Litigation Case Manager while at CC Brown.

15.     CC Brown came under suspicion of the FBI and was raided by the FBI in June 2012.

16.     A scheme and practice of CC Brown was operating various websites marketed to individuals in financial distress, facing foreclosure and desiring modifications of home mortgages.

17.     Jon Hanley and Phil Hanley, upon terminating employment with CC Brown, owned, operated, and were otherwise affiliated a similar scheme and practice involving numerous websites marketed to individuals in financial distress, facing foreclosure and desiring modifications of home mortgages.

18.     Jon Hanley and Phil Hanley are associated with the following such businesses, which are not inclusive:

     a.  Brown Legal, Inc.

     b.  Hanley Law Group

     c.  AM Property Management, LLC

     d.  Preferred Legal, LLC

     e.  Preferred Law, PLLC

     f.  Modification Review Board

4

     g.  Preferred Services, Inc.

     h.  American Home Loan Counselors

     i.  American Home Loans

     j.  Armour Debt Collections, LLC

19.    The businesses listed above, upon information and belief, engage in a similar scheme and practice model of CC Brown.

20.    Defendant Benjamin Horton acts in the capacity as manager, attorney and/or registered agent for the above-referenced businesses.

21.    Jon Hanley is not an attorney, yet owns, operates and manages businesses labeled as "legal services."

22.    Phil Hanley is not an attorney, yet owns, operates and manages businesses labeled as "legal services."

23.    Defendant Rod Kartchner works with co-defendants in the capacity of manger, employee and business partner.

24.    In addition to the affiliations with the named co-defendants, Defendant Rod Kartchner has additional affiliations with co-defendant Benjamin Horton in association with the following businesses:

     a.  DTR Enterprises, LLC

     b.  Agritex USA, Inc.

     c.  M.E. Enterprises, Inc.

     d.  JRK Enterprises, Inc.

5

     e.   JLK Events, Inc.

25.     Upon information and belief, the above listed businesses are engaged in legal services and/or loan modification services similar to those of the co-defendants and similar to that of CC Brown.

26.     In April 2012, Plaintiffs reviewed the website of Modification Review Board when researching getting assistance with obtaining a loan modification for their home mortgage.

27.     Modification Review Board represented it was a law firm "representing clients who have foreclosure problems and evaluate their situation for foreclosure defenses."

28.     Modification Review Board represented that its attorneys "can get you the results you need and inform you of your legal rights."

29.     Modification Review Board advertised "only a licensed attorney can legally represent you and provide you with legal advice."

30.     Plaintiffs, in reliance on the representations of Modification Review Board, called the number as provided on its website and were connected with Rod Kartchner.

31.     In answering the call, Kartchner identified himself as a loan modification adviser.

32.     The discussion between Plaintiffs and Kartchner included, but was not limited to the following:

     a.   Plaintiffs' denial of a previous loan modification through Wells Fargo;

     b.   Potential foreclosure proceedings;

     c.   Plaintiffs' desire to keep their home "no matter what;"

6

33.    Kartchner requested Plaintiffs send him bank statements, electric bills, water bills and pay stubs for him to forward to Modification Review Board in order to determine whether Modification Review Board could assist Plaintiffs in obtaining a loan modification.

34.    Kartchner told Plaintiffs that if Modification Review Board reviewed their documents and that review "yielded positive results" Plaintiffs would be referred to Modification Review Board's sister company, Preferred Law for further assistance.

35.    Kartchner explained that Preferred Law may not accept Plaintiffs as "because it has a good track record of winning in Court" it must be very particular about choosing clients.

36.    Kartchner further stated that Preferred Law has a good track record of "getting banks to comply with a modification."

37.    Kartchner told Plaintiffs that if Modification Review Board's analysis of Plaintiffs' requested records "yielded negative results" then Preferred Law would not be able to assist Plaintiffs.

38.    When the telephone call with Kartchner concluded, Plaintiffs researched Preferred Law.

39.    Preferred Law's website exactly mirrored that of Modification Review Board with the substitution of Preferred Law in place of Modification Review Board.

40.    Additionally, the websites of Preferred Law and Modification Review Board exactly mirrored the website of the defunct CC Brown.

PX20 - 214

41.     A day or so later, Kartchner called Plaintiffs back and told them they were accepted as clients of Preferred Law and "guaranteed" that Preferred Law could assist them stating that a "modification would be no problem."

42.     Kartchner then transferred Plaintiffs' call to Shannon Martinez, who identified herself as a paralegal with Preferred Law.

43.     Ms. Martinez in fact, is not a paralegal, but provided various clerical services for Preferred Law.  Ms. Martinez told Plaintiffs she would handle the paperwork necessary to submit to Wells Fargo in order to start the loan modification process.

44.     Ms. Martinez represented to Plaintiffs that the information would be reviewed by "one of their attorneys" as needed.

45.     Benjamin Horton is the only attorney affiliated with Modification Review Board and Preferred Law.

46.     Plaintiffs contacted Preferred Law approximately twice a week for a period of approximately four (4) weeks to ensure it had received all the paper work necessary for submitting the application for the loan modification.

47.     Rod Kartchner, Shannon Martinez and Phil Hanley individually and representing Modification Review Board and Preferred Law assured Plaintiffs they had everything needed for the loan modification.

48.     Although Plaintiffs were assured their documents and the oversight of the loan modification process was being reviewed by Benjamin Horton, Mr. Horton never communicated with Plaintiffs in any manner.

8

49.     Benjamin Horton, nor any other attorney, reviewed Plaintiffs' loan modification documents or any other papers concerning Plaintiffs.

50.     Plaintiffs' loan modification regarding property located in Jacksonville, Florida, yet Benjamin Horton is not licensed to practice law in Florida so could never have assisted Plaintiffs in the legal matters at hand.

51.     In the middle of June 2012, Plaintiffs received Notice from Wells Fargo that a foreclosure of their home was scheduled for August 30, 2012.

52.     Plaintiffs immediately called Preferred Law to speak with one of its attorneys.

53.     Preferred Law's automated telephone menu did not provide an extension for Horton and did not provide an option for an Operator.

54.     Plaintiffs were connected with Ms. Martinez.

55.     Ms. Martinez asked Plaintiffs to fax over to Preferred Law the Notice of Sale, which Plaintiffs promptly sent.

56.     Ms. Martinez told Plaintiffs "not to worry" that Preferred Law's attorneys would submit paperwork to the Courts to stop the sale, two weeks prior to the scheduled sale and assured Plaintiffs that the attorneys had it handled.

57.     Although Ms. Martinez referred to Preferred Law having "attorneys" apparently in an effort to make the business sound larger than it truly was, the only attorney connected with Preferred Law was and is Benjamin Horton.

58.     Further, Ms. Martinez told Plaintiffs that the Notice of Sale was received in plenty of time for the attorneys reviewing options for Plaintiffs.

9

59.     Plaintiffs, called Preferred Law every day for a period of three weeks to make sure everything was being taken care of.

60.     Each time Plaintiffs called Preferred Law, they were told that everything was fine and it was a matter of procedures to take place to stop the sale and get Plaintiffs their loan modification.

61.     Plaintiffs, in reliance on Ms. Martinez' previous statements indicating she was a Paralegal, in reliance on the representations that Modification Review Board, Preferred Law and the attorneys that Plaintiffs' interests were protected and everything was under control.

62.     On or around July 20, 2012, when Plaintiffs called Preferred Law, they were told that Ms. Martinez was no longer assisting them and instead, were transferred to Michelle . Thacker.

63.     Ms. Thacker identified herself as the Paralegal that worked directly with Wells Fargo.

64.     Ms. Thacker is not a Paralegal.

65.     Ms. Thacker did not work directly with Wells Fargo.

66.     Additionally, Ms. Thacker told Plaintiffs she would be handling the legal issues such as researching to see where Wells Fargo made mistakes and bring those mistakes to the attention of the Court.

67.     Ms. Thacker did not have relevant experience to research legal issues.

68.     Ms. Thacker did not have any ability, as a non-attorney, to bring any issues to the attention of the Court.

10

69.     Ms. Thacker further assured Plaintiffs that Defendants knew a foreclosure sale had been scheduled and told Plaintiffs not to worry about a thing since "the lawyers" would make sure the sale was cancelled.

70.     Plaintiffs continued to contact Preferred Law, through Ms. Thacker daily through the middle of July 2012.

71.     In or around July 15, 2012, Ms. Thacker instructed Plaintiffs that she would not accept daily telephone calls from Plaintiffs.

72.     Ms. Thacker instructed Plaintiffs that they were not to call Defendants daily.

73.     Ms. Thacker told Plaintiffs that their file was in "underwriting" which process took approximately 90 days.

74.     Plaintiffs' file was not in underwriting.

75.     Ms. Thacker also told Plaintiffs that Defendants would contact Plaintiffs if any additional information was required and instructed Plaintiffs that Preferred Law had everything covered.

76.     Defendants did not have everything covered.

77.     Defendants did not contact Plaintiffs for any additional updates.

78.     Defendants did not contact Plaintiffs for any additional information.

79.     Benjamin Horton did not review or administer Plaintiffs' file or communicate with counsel in Florida that may have been able to assist Plaintiffs.

80.     Benjamin Horton, the only licensed attorney associated with Defendants, did nothing on behalf of Plaintiffs, although Defendants claimed otherwise.

11

81.  On October 8, 2012, Ms. Feacher returned from a funeral to find an Eviction Notice placed on Plaintiffs' front door.

82.  The Eviction Notice was signed by the very Sheriff's Office at which Mr. Feacher is employed as a Sheriff.

83.  Unknown to Plaintiffs, their home was sold at foreclosure on August 30, 2012.

84.  Defendants did nothing to notify or alert Plaintiffs that the August 30, 2012 foreclosure moved forward.

85.  In fact, Defendants did just the opposite.  Between the time of the foreclosure and October 8, 2012 when Plaintiffs found the eviction notice, Defendants did absolutely nothing.

86.  When Plaintiffs found the eviction notice, they called Preferred Law immediately.

87.  October 8, 2012 fell on Columbus Day so Plaintiffs found Preferred Law and Modification Review Board closed.

88.  Ms. Feacher left a voice mail message and also sent emails to Michelle Thacker and Rod Kartchner.

89.  Mr. Kartchner responded to Plaintiffs stating he was going to follow up with Ms. Thacker to determine what had happened.

90.  Mr. Kartchner sent an email to Phil Hanley and Ms. Thacker of Preferred Law, with a copy to Hanley.

91.  Mr. Kartchner's email advised Phil Hanley, Ms. Thacker and Hanley about the eviction notice, asked for options and gave possible remedies to Plaintiffs' pending eviction

92.     Immediately the next morning Plaintiffs went to the Duval County Courthouse in Jacksonville, Florida and filed a Stay of Eviction.

93.     Plaintiffs were not represented by legal counsel as intended through Defendants and as a result, the stay of eviction was denied.

94.     Plaintiffs were instructed to must vacate their home within 48 hours.

95.     The next day, Phil Hanley contacted Plaintiffs but offered no explanation as to either why the foreclosure sale took place; offered no explanation why Preferred Law had not done anything through the Courts to stop the sale; offered no explanation why Preferred Law did not contact Plaintiffs prior to the foreclosure; did not offer any explanation why Plaintiffs were left without legal counsel.

96.     Phil Hanley advised Plaintiffs not to leave the home and instructed Plaintiffs that he would contact the new owners of Plaintiffs house and ask them to re-negotiate the sale.

97.     Phil Hanley called Plaintiffs back a short time later and told Plaintiffs the new owners of Plaintiffs' house would not re-negotiate the sale and advised Plaintiffs to go to the Federal Courthouse and file bankruptcy.

98.     Phil Hanley stated that the bankruptcy would prevent Plaintiffs from being evicted and would give Preferred Law time to figure out what had transpired.

99.     Although Benjamin Horton purported to be the attorney of record for Preferred Law he did nothing to advise Plaintiffs as to their options regarding the foreclosure.

100.    Mr. Horton did absolutely nothing to prevent the foreclosure of Plaintiffs' home and did nothing after the foreclosure to attempt to rescind the sale.

13

101.   While Ms. Feacher was at the Federal Courthouse filling out bankruptcy information, she received a telephone call from Phil Hanley who instructed Plaintiffs <u>not</u> to file bankruptcy because Plaintiffs' home was sold to a third party.

102.   Hanley told Plaintiffs that there was nothing Defendants could do that would give Plaintiffs their home back.

103.   Plaintiffs have suffered direct and consequential damages as a result of Defendants' actions, including but not limited to, anxiety, depression, embarrassment, emotional distress, financial loss, loss of home equity, and other damages, including punitive damages, to be proven at trial.

<u>FIRST CAUSE OF ACTION</u>
INTENTONAL MISREPRESENTATION

104.   Plaintiffs reallege and incorporate herein each of the averments set forth above.

105.   Defendants made representations to Plaintiffs through the websites, personal conversations and emails stating Defendants would prevent a foreclosure of Plaintiffs' home and would secure a loan modification for Plaintiffs.

106.   Defendants made the false statements, as outlined above, knowing they were false.

107.   Each of the false representations Defendants made to Plaintiffs concerned a presently existing material fact, which was false and which Defendants knew was false at the time the representation was made.

14

108.   Defendants enticed Plaintiffs to retain their services with intentional misrepresentations are set forth above, including but not limited to:

    a.   Stating Modification Review Board as a law firm, which it is not a law firm;

    b.   Stating Modification Review Board represents clients who have foreclosure problems, when there was no attorney representation;

    c.   Stating Modification Review Board offers "litigation" as a specialty, when there are no lawyers associated with it;

    d.   Stating Ms. Rodriguez and Ms. Thacker were paralegals working directly with Wells Fargo, when that was not true;

    e.   Representing Preferred Law specializes in foreclosure defense, when it did nothing at all to prevent Plaintiffs' foreclosure;

    f.   Representing Preferred Law offers "litigation" as a specialty "in or outside of Utah" when Horton is only licensed to practice law in the State of Utah and as Plaintiffs' property at issue is in Jacksonville, Florida, Horton could never have represented Plaintiffs without association with an attorney licensed to practice law in Florida.

109.   Defendants intended that Plaintiffs rely on the misrepresentations for the purposes of inducing Plaintiffs to remit payment of approximately $3,896.00.

110.   Plaintiffs relied on Defendants representations and not only remitted the $3,896.00 to Defendants, but gave Defendants complete deference and trust to ensure Plaintiffs' home was secure.

15

111.    Defendants intended to do nothing to prevent Plaintiffs' foreclosure and intended to do nothing to secure a loan modification from Wells Fargo.

112.    Defendants' purpose of inducing Plaintiffs to retain the services was for financial gain.

113.    Defendants' false statements were made knowing they were false when made, in reckless disregard to the rights of Plaintiffs, and made to for Defendants' financial gain.

114.    As a result of Defendants' intentional misrepresentations, Plaintiffs are entitled to punitive damages in an amount to be proved at trial.

115.    Additionally, Plaintiffs have suffered direct and consequential damages as a result of Defendants' intentional misrepresentations.

116.    Plaintiffs are entitled to direct, consequential and punitive damages to be proven at trial as well as costs and reasonable attorney's fees.

<u>SECOND CAUSE OF ACTION</u>
NEGLIGENT MISREPRESENTATION

117.    Plaintiffs reallege and incorporate herein each of the averments set forth above.

118.    Defendants made negligent representations to Plaintiffs in the areas of loan modification services and preventing foreclosure, as specifically outlined in the paragraphs above.

119.    Defendants made statements repeatedly and with reckless disregard to whether the statements were true or false regarding the services and results promised.

120.    Each of the negligent and false representations Defendants made to Plaintiffs concerned a presently existing material fact, which was false and which Defendants knew was false at the time the representation was made or which statement Defendants made with reckless disregard to whether the statements were true or false.

121.    Defendants enticed Plaintiffs to retain their services with negligent and reckless misrepresentations are set forth above, including but not limited to:

   a.   Telling Plaintiffs Modification Review Board and Preferred Law could obtain a loan modification on their behalf, when Plaintiffs did not qualify for a loan modification;

   b.   Telling Plaintiffs that Preferred Law had attorneys who could get them the results they needed, when Horton never spoke to Plaintiffs, never reviewed their file, never contacted them before or after the foreclosure, and certainly did not produce the results Plaintiffs needed;

   c.   Telling Plaintiff that the foreclosure information would be submitted to Court two weeks prior to the foreclosure, when Horton did not submit any documents on Plaintiffs'' behalf to any Court.

122.    Defendants intended that Plaintiffs rely on the misrepresentations for the purposes of inducing Plaintiffs to remit payment of approximately $3,896.00.

123.    Plaintiffs believed and relied on the negligent misrepresentations of Defendants, remitted payment of $3,896.00 and trusted that the experienced lawyers would have their backs to protect their home ownership.

17

124.    Plaintiffs have suffered both direct and consequential damages as a result of Defendants' negligent misrepresentations.

125.    Plaintiffs are entitled to direct, consequential and punitive damages to be proven at trial as well as costs and reasonable attorney's fees.

### THIRD CAUSE OF ACTION
FRAUD

126.    Plaintiffs reallege and incorporate herein each of the averments set forth above.

127.    Defendants made false statements of material fact to Plaintiffs, including, but not limited to:

    a.   Telling Plaintiffs they qualified for a loan modification, when they did not qualify;

    b.   Telling Plaintiffs they would prevent foreclosure of Plaintiffs' home, when they could not and did not stop the foreclosure;

    c.   Representing Modification Review Board as a law firm, which it is not a law firm;

    d.   Representing Modification Review Board as specializing in representing clients who have foreclosure problems, when there was no attorney representation;

    e.   Representing Modification Review Board as specializing in "litigation," when there are no lawyers associated with Modification Review Board;

18

f.  Representing Preferred Law specializes in foreclosure defense, when its only attorney, Horton, did nothing to prevent Plaintiffs' foreclosure and did nothing post foreclosure to rescind the sale;

g.  Representing Preferred Law specializes in "litigation" "in or outside of Utah" when Horton is only licensed to practice law in the State of Utah and could not have represented Plaintiffs without associating with an attorney licensed to practice law in Florida.

h.  Telling Plaintiffs Modification Review Board and Preferred Law could obtain a loan modification on their behalf, when Plaintiffs did not qualify for a loan modification;

i.  Telling Plaintiffs that Preferred Law had attorneys who could get them the results they needed, when Horton never spoke to Plaintiffs and certainly did not produce the results Plaintiffs needed;

j.  Telling Plaintiff that the foreclosure information would be submitted to Court two weeks prior to the foreclosure, when Horton did not submit any documents on Plaintiffs'' behalf to any Court.

128.  Defendants made the false statements in order to induce Plaintiffs to pay a substantial amount of money for the sole purpose of Defendants' financial gain.

129.  Defendants were in a position of power over Plaintiffs as the supposed legal experts, which position made Defendants in a position to know the inaccuracy of the statements they made.

130.   Plaintiffs were in an inferior position to know the truth or falsity of the statements made by the Defendants and relied on the statements to their detriment.

131.   Plaintiffs have suffered both direct and consequential damages as a result of Defendants' fraud.

132.   As a result of Defendants' fraud, Plaintiffs are entitled to punitive damages in an amount to be proved at trial.

133.   Plaintiffs are entitled to direct, consequential and punitive damages to be proven at trial, together with costs and reasonable attorney's fees.

### FOURTH CAUSE OF ACTION
### CIVIL CONSPIRACY

134.   Plaintiffs reallege and incorporate herein each of the averments set forth above.

135.   Defendants conspired to defraud Plaintiffs in securing Defendants' services, which Plaintiffs believed, would assist Plaintiffs in saving their home and securing a loan modification.

136.   Defendants' misrepresentations and fraud, individually and through Modification Review Board, and as outlined in the paragraphs above, were based on Defendants' objectives of financial gain, through perpetrating the fraud.

137.   As a result of the civil conspiracy, by and between each Defendant, Plaintiffs have suffered direct and consequential damages to be proved at trial.

### FIFTH CAUSE OF ACTION
### LEGAL MALPRACTICE

138.   Plaintiffs reallege and incorporate herein each of the averments set forth above.

20

139.   Mr. Horton, although listed as the only attorney associated with Modification Review Board and Preferred Law failed to use any degree of care, skill, judgment and diligence he should have used on behalf of Plaintiffs.

140.   Mr. Horton's failure to review Plaintiffs' file, communicate with Plaintiffs, oversee and/or supervise the handling of Plaintiffs' modification file, failure to speak with Plaintiffs and failure to use any reasonable care at all with regard to Plaintiffs is a sole and proximate cause of Plaintiffs' losing their family home.

141.   Had Mr. Horton reviewed Plaintiffs' documents, he would have seen that Mr. Feacher had previously filed bankruptcy, which then would not be an available option to further stop a potential foreclosure.

142.   Had Mr. Horton reviewed Plaintiffs' documents, he would have seen that the Feachers' home was in Jacksonville, Florida, where Mr. Horton is not licensed to practice law.

143.   Had Mr. Horton reviewed Plaintiffs' documents, and seen the Feachers' home was in Jacksonville, Florida, he might have associated Florida counsel to better advocate for Plaintiffs.

144.   Had Mr. Horton reviewed Plaintiffs' documents, he would have seen that Wells Fargo denied Plaintiffs previously for loan modifications and as such, Plaintiffs would never qualify for a loan modification.

145.   Through Preferred Law, Mr. Horton created an attorney/client relationship with Plaintiffs.

21

146.    Yet, Mr. Horton, through his association with Preferred Law, could never have represented Plaintiffs with their foreclosure defense because Horton is not licensed to practice law in Florida.

147.    In order for Horton to have represented Plaintiffs as was promised through the representations and through Horton's affiliation with Preferred Law, he should have and could have applied to practice pro hac vice in Florida and began foreclosure defense litigation on behalf of Plaintiffs.

148.    Horton should have and could have associated with Florida counsel to assist Plaintiffs in filing a bankruptcy to stop the foreclosure.

149.    Horton should have and could have researched the documents provided by Wells Fargo to determine if there were violations in the servicing of Plaintiffs' mortgage which would warrant litigation.

150.    Horton should have and could have applied pro hac vice in Florida to represent Plaintiffs post-foreclosure.

151.    Instead, Horton did absolutely nothing on behalf of Plaintiffs.

152.    Horton failed to use the minimal standard of care of the practice of law with regard to Plaintiffs.

153.    As a result of the legal malpractice, Plaintiffs have lost their house and any rights they had to legitimate legal recourse:  bankruptcy, pre-foreclosure litigation against Wells Fargo, post-foreclosure litigation prior to being evicted.

22

154.   As a result of Horton's inaction and malpractice, Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs ask the Court for the judgment against Defendants, jointly and severally, as follows:

a.   For direct and consequential damages, to be determined at trial, but not less than $100,000 ;

b.   For punitive damages;

c.   For costs and attorneys fees;

d.   For other such relief as the Court deems fair and just.

Dated this 5th day of March, 2014.

RICHARDS BRANDT MILLER NELSON

_____ /s/ Michele Anderson-West _____

23

PX20 - 230

CERTIFICATE OF SERVICE

I certify that on the 5th day of March, 2014, I served a true and correct copy of the

foregoing via CM/ECF to:

>    Benjamin R. Horton
>    2825 East Cottonwood Parkway, Suite 500
>    Salt Lake City, Utah 84121
>    benhortonesq@yahoo.com

>    _____ /s/  Michele Anderson-West_____

24

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RODERICK FEACHER, et al., | **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | |
| v. | Case No.  2:13-cv-92-EJF |
| JONATHAN HANLEY, et al., | Magistrate Judge Evelyn J. Furse |
| Defendants. | |

This case arises out of Roderick and Terona Feacher's attempt to save their home from foreclosure.  To that end, the Feachers contracted with Preferred Law, PLLC ("Preferred Law") a Utah law firm.  But the Feacher's ultimately lost their home.  They then filed this action against Defendants Jonathan Hanley, Modification Review Board ("MRB"), Preferred Law, and Benjamin Horton, alleging claims of intentional misrepresentation, negligent misrepresentation, fraud, and alter ego, in addition to a malpractice claim against Defendant Benjamin Horton.  In response, Defendants[1] filed a motion to stay this case and compel arbitration based on the arbitration clause in the Fee and Representation Agreement the Feachers signed with Preferred Law.  The Feachers claim the contract is unconscionable, and the Court should not enforce the arbitration provision.

---

[1]  Defendant Jonathan Hanley filed a Notice of Bankruptcy on April 16, 2013.  (ECF No. 18.)  The Court stayed the case as to Defendant Hanley only. *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) (noting automatic stay does not apply to solvent co-defendants).

The Court carefully considered the Motion, Memoranda, and materials submitted for and against Defendants' Motion and held a hearing on October 11, 2013.  (*See* ECF No. 33.) Because the Court[2] finds the contract the Feachers signed with Preferred Law unconscionable, the Court denies Defendants' Motion.

## FACTUAL BACKGROUND

In April 2012, the Feachers sought help to obtain a loan modification.  Through their research they discovered Defendant MRB's website.  The Feachers contacted MRB to discuss their situation.  MRB told the Feachers it would review their situation and, if the review had a positive result, refer them to Preferred Law for further assistance.

Eventually, MRB told the Feachers Preferred Law accepted them as clients.  In early June 2012, a Preferred Law employee e-mailed a Fee and Representation Agreement (the "Contract"), drafted by Preferred Law, to the Feachers.  Preferred Law gave the Feachers forty-eight hours or less to sign and return the Contract "so [it could] get started on [their] modification."  (ECF No. 27-1 at 6.)  The Feachers state they followed the instructions and signed the Contract and faxed it back to Preferred Law without reading it.  At oral argument, counsel for Preferred Law represented that this is the only contract Preferred Law ever offered with these services, and it never had any clients modify the agreement.

In mid-June 2012, Wells Fargo notified the Feachers of its intent to foreclose on their home on August 30, 2012.  The Feachers contacted Preferred Law for assistance.  Eventually, in October 2012, Ms. Feacher returned home to find an eviction notice.  The Feachers ultimately lost their home.

---

[2] The parties consented to the exercise of jurisdiction by the undersigned Magistrate Judge under 28 U.S.C. § 636(c).  (ECF No. 21.)

# DISCUSSION

The Contract at issue includes a clause that states the parties will resolve all disputes between them "by submission to and litigation in the SMALL CLAIMS DIVISION OF THE SALT LAKE COUNTY JUSTICE COURT OF UTAH." (Def.'s Br., Ex. A at 5, ECF No. 11.) The Contract provides that the parties will resolve any dispute arising from matters within the Contract not subject to the Small Claims Division's jurisdiction through arbitration as provided by Utah law. (*Id.*) However, the Feachers argue the Contract they signed with Preferred Law is unconscionable, and therefore Preferred Law may not compel arbitration.[3] *See Sosa v. Paulos*, 924 P.2d 357, 359 (Utah 1996) (citation omitted) (noting "under Utah law, an unconscionable agreement is not enforceable").

Although Defendants filed this Motion citing the Federal Arbitration Act ("FAA"), the Contract at issue states that Utah law applies and that "BORROWER MAY BE COMPELLED TO ARBITRATE UNDER UTAH LAW . . . ." (*Id.*) At the October 11 hearing, this Court asked Defendants' counsel whether the FAA, 9 U.S.C. § 1 *et seq.*, or the Utah Uniform Arbitration Act ("UUAA"), Utah Code Ann. § 78B-11-101 *et seq.*, govern this dispute's arbitrability. The Court finds the arbitration agreement is invalid because the Contract is unconscionable, and therefore the arbitration agreement is unenforceable under either the FAA or the UUAA. *Compare* 9 U.S.C. § 2 (making arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"), *with* Utah Code Ann. § 78B-11-107(1) (making arbitration agreements "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract").

---

[3] Although the Feachers raised the issue of other Defendants' ability to force arbitration, the issue is moot because the Contract is unconscionable.

## A. The Contract is Unconscionable

The question of unconscionability presents a question of law for the Court to decide. *Sosa*, 924 P.2d at 360. "A party claiming unconscionability bears a heavy burden." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998) (citation omitted). Utah courts apply a two-pronged analysis to determine whether a contract is unconscionable. *Id.* (citing *Sosa*, 924 P.2d at 360). "The first prong—substantive unconscionability—focuses on the agreement's contents. The second prong—procedural unconscionability—focuses on the formation of the agreement." *Id.* (citation omitted). Substantive unconscionability alone may render a contract invalid. *Sosa*, 924 P.2d at 361 (citation omitted). And although a determination of procedural unconscionability alone may invalidate a contract, "that would be rare." *Id.*

### 1. Substantive Unconscionability

"[S]ubstantive unconscionability focus[es] on the contents of the agreement, examining the 'relative fairness of the obligations assumed.'" *Sosa*, 924 P.2d at 361 (citation omitted). "[A] showing of substantive unconscionability requires evidence that a term is 'so one-sided as to oppress or unfairly surprise an innocent party.'" *Id.* at 362 (citation omitted). "The terms of the contract should be considered '"according to the mores and business practices of the time and place."'" *Id.* at 361 (quoting *Res. Mgmt. Co. v. Weston Ranch & Livestock Co., Inc.*, 706 P.2d 1028, 1042 (Utah 1985)).

The Feachers argue the Contract is substantively unconscionable because it wholly favors Preferred Law. First, the Feachers point out the Contract limits Preferred Law's liability to the fee paid by the Feachers. Second, the Contract provides Preferred Law with liquidated damages of $250 if the Feachers chargeback a credit card payment for any reason. (Mem. Opp'n 7, ECF No. 26.) Third, the Feachers note the Contract allows Preferred Law to withdraw immediately

from representing the Feachers or place their file on hold but provides no opportunity to cancel

the Contract to the Feachers.  (*Id.*)  Finally, the Feachers note the Contract specifically excludes

*the* service the Feachers sought: loan modification.  (Mem. Opp. 7–8, <u>ECF No. 26</u>.)  Although

the Feachers allege they discussed the necessary steps for obtaining a loan modification, (*e.g.*,

Compl. ¶ 32, <u>ECF No. 2</u>), the Contract states "PREFERRED LAW DOES *NOT* PERFORM

THE FOLLOWING SERVICES: . . . LOAN MODIFICATION ASSISTANCE."  (Def.'s Br.,

Ex. A at ¶ 1, <u>ECF No. 11</u>.)

### i. *Limited Liability*

The provision limiting Preferred Law's malpractice liability to the amount of the fee paid

under the Contract raises a serious concern in any contract for legal services.  While a provision

limiting liability may appear in other types of contracts, lawyers may not prospectively limit

liability as a matter of their ethical obligations without meeting very strict requirements.

Rule 1.8 of Utah's Rules of Professional Conduct provides that lawyers shall not "make

an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the

client *is* independently represented in making the agreement."  Utah R. Prof'l Conduct 1.8(h)(1)

(emphasis added).  Utah Rule of Professional Conduct 1.8(h)(1) adopts the ABA Model Rule of

Professional Conduct 1.8(h)(1).  *See* ABA Model Rules of Prof'l Conduct 1.8(h)(1).  The

comment to the rule explains the problem:

> Agreements prospectively limiting a lawyer's liability for malpractice are
> prohibited unless the client is independently represented in making the agreement
> because they are likely to undermine competent and diligent representation.  Also,
> many clients are unable to evaluate the desirability of making such an agreement
> before a dispute has arisen, particularly if they are then represented by the lawyer
> seeking the agreement.

Utah R. Prof'l Conduct 1.8(h), comment [14].  Although the Utah Rules of Professional Conduct

do not "create a basis for civil liability," *Archuleta v. Hughes*, 969 P.2d 409, 414 (Utah 1998),

the Court finds the provision relevant evidence of "the mores and business practices of the time

and place," *Ryan*, 972 P.2d at 402 (citation omitted).

      Preferred Law, recognizing this rule, put boilerplate language into the contract stating:

"BORROWER ACKNOWLEDGES THAT HE OR SHE HAS HAD ADEQUATE TIME TO

SEEK INDEPENDENT COUNSEL AND IS NOW CURRENTLY REPRESENTED IN

MAKING THIS AGREEMENT IN LIMITING PREFERRED LAW'S POTENTIAL

MALPRACTICE AND OTHER LIABILITY TO BORROWER."  (Def.'s Br., Ex. A at ¶ 8, ECF

No. 11.)  Although the Contract requires the Feachers to acknowledge they had adequate time to

seek independent counsel and had representation in making the agreement, the facts here show

that the Feachers did not have separate counsel prior to signing the Contract and did not know of

the provision.  The Feachers had at most two days to review the Contract.  Further, neither side

claims anyone from Preferred Law or MRB ever mentioned the paragraph or made any inquiry

about separate representation.

      "Because the attorney-client relationship involves professional and fiduciary duties on the

part of the lawyer that generally are not present in other relationships, the retainer contract may

be subject to special oversight and review."  ABA Comm. on Ethics & Prof'l Responsibility,

Formal Op. 02-425 (Retainer Agreement Requiring the Arbitration of Fee Disputes and

Malpractice Claims); *see also Hodges v. Reasonover*, 2012-0043 (La. 7/2/12); 103 So. 3d 1069,

1073 ("agreements between law firms and clients are held to higher scrutiny than normal

commercial contracts because of the fiduciary duties involved").  Attorneys must obtain a

client's informed consent where a course of action may adversely affect the client's interest.  The

Utah Rules of Professional Conduct state "'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Utah R. Prof'l Conduct 1.0(f).[4]

No evidence suggests Prferred Law ever explained that the Contract limited liability to the fee paid by the Feachers. The harm the Feachers allege they suffered, loss of their home, far exceeded the amount they paid Preferred Law in fees—a problem that could frequently arise in legal contract cases. Thus, without explanation from Preferred Law and without separate counsel, the Feachers' consent does not qualify as informed. This limit on Preferred Law's liability to less than its potential liability under common or statutory law makes the Contract suspect. Failure to comply with the requirements of Rule 1.8(h) alone may invalidate a malpractice liability waiver. *See In re Thompson*, 116 B.R. 679, 682 (Bankr. W.D. Ark. 1990) (finding malpractice release invalid because of lack of evidence attorney complied with requirements of Rule 1.8(h)); ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 02-425 ("The Committee agrees that mandatory arbitration provisions are proper unless the retainer agreement insulates the lawyer from liability or limits the liability to which she otherwise would be exposed under common or statutory law."); *see also Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 825 (2010) (affirming trial court's denial of motion to compel arbitration

---

[4] In the context of an arbitration agreement, Preferred Law should have explained the possible consequences of entering into the agreement. *See Hodges*, 103 So. 3d at 1077 ("In the context of attorney-client arbitration clauses . . . the lawyer has an obligation to fully explain to the client the possible consequences of entering into an arbitration clause, including the legal rights the client gives up by agreeing to binding arbitration."). No evidence suggests Preferred Law explained the arbitration clause to the Feachers. Instead, Preferred Law apparently failed to comply with the requirements of Rule 1.0(e) and 1.8(h).

where arbitration clause in an adventure travel provider's contract, which limited liability to amount paid, was unconscionable).

Although a violation of the Rules of Professional Conduct does not necessarily violate the law, the Court finds Preferred Law's apparent failures relevant to the Court's determination of whether the Contract is substantively unconscionable because they do provide evidence of the mores and business practices at issue. *See Ryan*, 972 P.2d at 402 (noting courts determine substantive unsconscionability "according to the mores and business practices of the time and place").

### ii. Liquidated Damages

The Contract provides Preferred Law with liquidated damages of $250 if the Feachers chargeback a credit card payment for any reason. The Feachers argue this term adds to the imbalance between the parties' rights and obligations under the Contract. (Mem. Opp'n 7, ECF No. 26.)

Liquidated damages clauses "are enforceable if designed to provide fair compensation for a breach based on a reasonable relation to actual damages." *Robbins v. Finlay*, 645 P.2d 623, 625–26 (Utah 1982) (citation omitted). Although this liquidated damages clause may be unenforceable, the Feachers do not present evidence to suggest it lacks a "reasonable relation to actual damages." *See id.* Accordingly, this term, without more, does not require a finding of substantive unconscionability.

### iii. Withdrawal

The Feachers note the Contract allows Preferred Law to withdraw immediately from representing the Feachers or place their file on hold but provides no opportunity to cancel the Contract to the Feachers. The Contract grants Preferred Law this right in the event the Feachers

fail to make timely payments, fail to cooperate with or follow Preferred Law's advice on a material matter, or if a situation arises that would make Preferred Law's continued representation of the Feachers unethical or unlawful.  (Def.'s Br., Ex. A ¶ 4, <u>ECF No. 11</u>.)

Utah Rule of Professional Conduct 1.16 sets forth the circumstances under which attorneys may terminate representation.  The grounds for withdrawal listed in the Contract are based on circumstances described in Rule 1.16.  However, the Contract's grounds would include circumstances beyond those permitted by Rule 1.16.  For example, Rule 1.16(b)(5) permits a lawyer to terminate representation where "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled."  Although the Rule requires reasonable warning, the Contract allows Preferred Law to withdraw without notice if, for example, the Feachers simply made a late payment.

A lawyer may also withdraw where the client uses the lawyer's services for actions the lawyer reasonably believes are criminal or fraudulent, where the client already "has used the lawyer's services to perpetrate a crime or fraud" or where "the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement."  Utah R. Prof'l Conduct 1.16(b)(2)–(4).  By contrast, the Contract allows Preferred Law to withdraw if the Feachers "fail[] to cooperate with or follow advice on a material matter."  (Def.'s Br., Ex. A ¶ 4, <u>ECF No. 11</u>.)  This could include situations beyond the intended scope of Rule 1.16.

That the Contract permits Preferred Law such broad withdrawal rights creates particular concern here because Preferred Law did not represent the Feachers in a court action; were that the case, the court would have had oversight of Preferred Law's withdrawal.  The lack of such

court oversight makes the Feachers vulnerable with regard to Preferred Law's withdrawal rights. While Preferred Law could have exercised its contract rights within the bounds of legal ethics, this term raises concerns of substantive unconscionability when placed in the context of the entire contract.

### iv. Exclusion of Loan Modification Services

The Feachers also argue the Contract is substantively unconscionable because it excludes the service the Feachers sought and Preferred Law/MRB agreed orally Preferred Law would perform: loan modification assistance. (*See* Mem. Opp'n 5–8, ECF No. 26.) A court may find a contract substantively unconscionable where "a term is 'so one-sided as to oppress or unfairly surprise an innocent party.'" *Sosa*, 924 P.2d at 362 (citation omitted).

Here, the Feachers paid Preferred Law approximately $4,000 for loan modification services Preferred Law promised to perform. The Contract, however, specifically precludes loan modification services. The Contract states: "PREFERRED LAW DOES *NOT* PERFORM THE FOLLOWING SERVICES: . . . LOAN MODIFICATION ASSISTANCE." (Def.'s Br., Ex. A at ¶ 1, ECF No. 11 (emphasis in original).) This provision that specifically excludes the service both parties discussed providing indicates an extreme imbalance. By contrast, Preferred Law's own documents state that a Preferred Law employee told the Feachers prior to their signing the Contract they had forty-eight hours or less to return the Contract so they could "get started on your modification." (ECF No. 27-1 at 6.) While the parties may have had a contract, the parties did not have a meeting of the minds on this contract. Because the Contract specifically precludes the one service the Feachers sought, and because other terms discussed above demonstrate an unfair imbalance favoring Preferred Law over the Feachers, the Court finds the Contract as a whole substantively unconscionable.

### 2. Procedural Unconscionability

"Procedural unconscionability focuses on the negotiation of the contract and the circumstances of the parties." *Ryan*, 972 P.2d at 403 (citation omitted). "[The] principle inquiry is whether there was overreaching by a contracting party occupying an unfairly superior bargaining position." *Id.* (citation omitted). Utah courts look to the following factors:

> (1) whether each party had a reasonable opportunity to understand the terms and conditions of the agreement; (2) whether there was a lack of opportunity for meaningful negotiation; (3) whether the agreement was printed on a duplicate or boilerplate form drafted solely by the party in the strongest bargaining position; (4) whether the terms of the agreement were explained to the weaker party; (5) whether the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the agreement; and (6) whether the stronger party employed deceptive practices to obscure key contractual provisions.

*Id.* (citation omitted). "None of the factors is dispositive; rather, [courts] consider all the circumstances in light of the doctrine's purpose to prevent oppression and unfair surprise." *Id.*

In *Sosa*, the Utah Supreme Court found the arbitration agreement between a patient and doctor unconscionable. Someone in the defendant doctor's office asked Ms. Sosa to sign three documents less than an hour before her surgery. *Sosa*, 924 P.2d at 359. In one of the three documents Ms. Sosa agreed to arbitration. *Id.* Feeling "rushed and hurried" and believing she had to sign to proceed with the procedure, Ms. Sosa signed the documents without reading them. *Id.* at 362. "In short, Ms. Sosa was in a vulnerable position when she was shown the document for the first time and asked to sign it." *Id.* at 363.

The Utah Supreme Court reached the opposite conclusion in *Ryan*. In *Ryan*, a grocery store employee argued an acknowledgment form that identified him as an at-will employee constituted an unconscionable contract. *Ryan*, 972 P.2d at 402. The court found the plaintiff had a reasonable opportunity to understand the terms of the acknowledgment form and that his employer had discussed the terms with him. *Id.* at 404. The court also found the employer did

not use deceptive practices. *Id.* Although the employer drafted the form and Ryan had no opportunity to negotiate the at-will term, the court stated "these factors alone do not render the acknowledgment unconscionable" and noted employers almost always draft employment agreements. *Id.* The court specifically distinguished *Sosa*, contrasting Ryan's "meaningful choice in deciding whether to accept the terms of the agreement" with Ms. Sosa's "vulnerable position when she signed the arbitration agreement." *Id.* at 403.

The Court now considers the above-listed factors, bearing in mind *Ryan* and *Sosa*. The first factor asks whether each party had a reasonable opportunity to understand the terms and conditions of the agreement. Here, the Feachers assert Preferred Law e-mailed them the Contract while on the phone with a Preferred Law employee, Mr. Kartchner. The Feachers state Mr. Kartchner told them the Contract outlined everything the Feachers had discussed with him over the previous several weeks and instructed the Feachers to sign and return the Contract immediately. Preferred Law contends its employee e-mailed the Contract to the Feachers two days before the Feachers's phone call with Mr. Kartchner. In considering this factor the Court notes that unlike in *Miller v. Corinthian Colleges, Inc.*, 769 F. Supp. 2d 1336, 1346 (D. Utah 2011), where the court found a college enrollment agreement's arbitration provision not unconscionable, the Feachers's Contract with Preferred Law did not provide for a period of time after execution during which the Feachers could have cancelled the Contract. The facts show the Feachers neither read nor understood the Contract's terms. While a party to a contract generally has a duty to read the contract, procedural unconscionable behavior can negate that duty. *Sosa*, 924 P.2d at 363.

The second and third factors ask whether the recipient of the contract lacked the opportunity for meaningful negotiation and whether the proponent of the agreement printed it on

a duplicate or boilerplate form drafted solely by the party in the strongest bargaining position. Here, Preferred Law drafted the Contract, which it admits is a standard form contract. Although the Feachers allege MRB told them to sign and return the Contract immediately, Defendants' counsel—who is also a Defendant—said Preferred Law would have negotiated the Contract had the Feachers asked. However, Preferred Law admitted no client had ever modified this contract, although this is the only contract used for these services. Given the apparent rush placed on the Feachers to sign and return the Contract, and the lack of modification by any party in the Feachers' position, Preferred Law provided no apparent opportunity for negotiation.

Factor four asks whether the proponent of the contract explained the terms of the agreement to the weaker party. Here, the Feachers submitted a declaration that states Mr. Kartchner told them the Contract "stated everything [the Feachers] had discussed with Mr. Kartchner in the previous six weeks." (R. Feacher Decl. ¶ 9, ECF No. 26-1.) According to Mr. Feacher's declaration, Mr. Kartchner also told the Feachers the Contract "contained the guarantee to secure a loan modification for [the Feachers] and guaranteed to keep [the Feachers'] house safe from foreclosure." (*Id.* ¶¶ 10–11.) The Contract, however, does not contain these guarantees. Neither, claim the Feachers, does the Contract represent the discussions between the Feachers and Defendants over the six weeks prior to execution of the Contract. The Feachers thought Preferred Law would provide loan modification services, but the Contract precludes that service. Thus, while Defendants apparently provided some explanation of the Contract, that explanation appears inaccurate and deceptive in that it lulled the Feachers into signing a contract they had not read and did not understand.

Notably, Paragraph 16 of the Contract states: "Borrower acknowledges and represents that he or she has had reasonable opportunity to seek independent legal counsel and is currently

represented by independent counsel in signing this agreement." (Def.'s Br., Ex. A at ¶ 16, ECF No. 11.) The parties dispute how long the Feachers had the Contract before Mr. Kartchner instructed them to sign and return it: Under Defendants' version, two days; under the Feacher's version, the duration of a phone call. Under either version the Feachers had a near impossibly short amount of time in which to engage separate counsel, and in any event did not have separate counsel, let alone receive legal advice.

The Court also notes the extreme imbalance in power between the Feachers and Preferred Law/MRB. The Feachers are not sophisticated consumers of legal services. In the face of losing their home to foreclosure they searched the Internet and found MRB who connected them with Preferred Law. The Feachers relied upon Preferred Law/MRB to save their home. Because Preferred Law and MRB are closely connected, Mr. Kartchner's explanation of the Contract terms applies to MRB and Preferred Law. For example, the Feachers allege, and the Defendants have not contested, that MRB and Preferred Law's websites are the same apart from the names attached to each. (*See* Compl. ¶ 23, ECF No. 2.) They also share the same address. (*Id.* at ¶ 24.) Defendant Jonathan Hanley owns both MRB and Preferred Law. (*Id.* at ¶ 3.) MRB refers clients, like the Feachers, to Preferred Law for services identified on MRB's website. MRB bolsters the desire for Preferred Law's representation by touting both its success and exclusivity. MRB and Preferred Law held themselves out as experts in the field of mortgage modifications. Preferred Law, as discussed earlier, held itself out as a fiduciary for its clients by offering them legal services. Under these circumstances, the Feachers occupied much weaker bargaining power.

Factor five asks whether the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the agreement. The Utah Supreme Court discussed this factor

at some length in *Ryan*, comparing that case with *Sosa*. In *Sosa*, the Utah Supreme Court found a medical arbitration agreement unconscionable. The plaintiff in *Sosa* received an arbitration agreement minutes before her scheduled for surgery. *Sosa*, 924 P.2d at 363. Neither the surgeon nor any of his staff explained the agreement to the plaintiff, who was already "dressed in her surgical clothing, was quite nervous about the surgery, and felt rushed and hurried." *Id.* The Utah Supreme Court invalidated the arbitration agreement, noting the plaintiff's vulnerable position. *Id.*

In *Ryan*, however, the proponent of the contract, a grocery store which employed the plaintiff in its pharmacy, gave the plaintiff "an opportunity to review the [contract] and ask questions, both of which [he] did." *Ryan*, 972 P.2d at 404. The plaintiff conceded he understood the disputed term—an at-will provision. *Id.* The plaintiff in *Ryan* argued the proponent of the contract coerced his assent by refusing to provide his pay check until he agreed to the at-will term. *Id.* The Utah Supreme Court noted the plaintiff still had a choice—he could have refused to sign the agreement and then obtained his paycheck or he could have signed the form, quit his employment with the grocery store, and thereafter received his paycheck. Although he may have preferred to work at the grocery store's pharmacy, he remained free to seek employment at a pharmacy that did not require an at-will term. *Id.*

This case does not closely resemble *Ryan* or *Sosa*. The Feachers may have had up to two days to review the Contract and decide whether to sign it, but even that amount of time would hardly have allowed enough time for the Feachers to seek and obtain independent legal counsel, as the Contract required. While the Feachers could have opted not to sign the Contract and sought assistance from other sources, they faced the imminent foreclosure of their home, and this circumstance made them vulnerable, particularly because they had already spent six weeks

working with MRB to try to get Preferred Law to accept them as clients. Thus, the Feachers'

case leans slightly more toward *Sosa* than *Ryan*.

Finally, the sixth factor asks whether the stronger party employed deceptive practices to

obscure key contractual provisions. The Feachers have provided some evidence to suggest the

Defendants employed deceptive practices. As noted in the discussion of factor four, the Feachers

state Mr. Kartchner told them the Contract represented the discussions between the parties and

contained a guarantee the Feachers would receive a loan modification that would save their

home. Although the Contract contains no guarantee and specifically excludes loan modification

services, Preferred Law does not affirmatively contradict the Feachers' statements about the

verbal guarantee. Further, Mr. Kartchner's assurances regarding the Contract dissuaded a close

reading of the Contract thus avoiding detection of the discrepancies between the verbal

representations and the Contract.

In light of the discussion above, the Court finds the Contract both substantively and

procedurally unconscionable. The Contract terms—which specifically exclude the service the

Feachers sought—favor Preferred Law to an extent it unfairly oppressed, and no doubt surprised,

the Feachers. Additionally, Defendants rushed the Feachers into signing the Contract without

allowing them a reasonable opportunity to read and understand the Contract or obtain

independent legal counsel. Even under Defendants' version of the facts—where a Preferred Law

employee e-mailed the Contract to the Feachers two days before their conversation with Mr.

Kartchner—the Feachers had an unreasonably short period of time in which to seek and obtain

independent counsel, which would have enabled them to make an informed decision. Although

the Feachers did not find themselves in as vulnerable a position as the plaintiff in *Sosa*, the threat

of losing their home placed the Feachers in a vulnerable position. The Court also notes

Defendants' use of deception in telling the Feachers the Contract represented their discussions with Defendants and contained a guarantee weighs heavily in favor of a finding of procedural unsconsionability.

Because the Court finds the Contract unconscionable both substantively and procedurally, the Court denies Defendants' Motion to stay this case and compel arbitration. *See* 9 U.S.C. § 2 (noting arbitration agreements may be invalidated on the same grounds for the revocation of a contract); Utah Code Ann. § 78B-11-107(1) (same).

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to stay this case and compel arbitration.  The Court FURTHER ORDERS Defendants to answer or otherwise respond to the Complaint within 21 days of this Order's entry.

DATED this 10th day of January, 2014.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge

# Attachment U

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Brian L. Evert<br>and<br>Karyn E. Evert, ) ) ) ) | |
| Plaintiffs, | Case No.:   3:16-cv-1116 |
| v. | Judge: |
| Preferred Law, PLLC, Modification<br>Review Board, LLC, American Home<br>Loan Counselors, and Benjamin R. Horton, | |
| Defendants. | **COMPLAINT FOR MONEY**<br>**DAMAGES AND INJUNCTIVE**<br>**RELIEF** |
| | **JURY DEMAND ENDORSED HEREON** |

For their complaint against Defendants Preferred Law, PLLC, Modification Review Board, LLC, American Home Loan Counselors, and Benjamin R. Horton ("Defendants"), Plaintiffs Brian L. Evert and Karyn E. Evert ("The Everts") state as follows:

**Preliminary Statement**

1.     The Everts bring this action to seek monetary damages, injunctive relief, pre-judgment and post-judgment interest, attorneys' fees, their costs in this action and any other relief to which they may be entitled to compensate them for the Defendants' violations of the Ohio Consumer Sales Practices Act, Oh. Rev. Code § 1345.01, *et seq.*, the Ohio Debt Adjustment Companies Act, Revised Code § 4710.01, violation of the Ohio Telephone Solicitors Act, Revised Code §4719.15(A), fraud, and professional negligence, all of which prohibit persons engaged in purported home loan modification services from engaging in abusive, deceptive, and unfair practices.

1

### Jurisdiction and Venue

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1).

3.     Venue is proper in this court pursuant to 28 U.S.C. §1391(b)(2) and Oh. Northern Dist.

Loc. R. 3.8(a).

### Parties

4.     The Everts have at all times relevant to this action been residents of Marion County,

Ohio.

5.     According to the Utah Secretary of State's website, defendant Preferred Law, PLLC is a

Utah professional limited liability company organized for the purposes of providing legal

services.   Preferred Law, PLLC is located in Salt Lake City, Utah.  Defendant Benjamin R.

Horton is the managing member of Preferred Law, PLLC.

6.     At no time in its dealings with The Everts did Preferred Law, PLLC employ any

attorneys that are licensed to practice law in the State of Ohio.

7.     At all times relevant to this complaint, according to the Utah Secretary of State's website,

defendant Modification Review Board, LLC is a Utah limited liability company whose registered

agent was defendant Benjamin R. Horton based in Sandy, Utah.

8.     At all times relevant to this complaint, according to the Utah Secretary of State's website,

defendant American Home Loan Counselors is a Utah corporation based in Salt Lake City, Utah.

Previously, defendant Benjamin R. Horton was both the registered agent and a director of

American Home Loan Counselors.

9.     According to the Utah State Bar Association, defendant Benjamin R. Horton was

admitted to the bar of the state of Utah in 2007 and works for Preferred Law, PLLC.  Benjamin

R. Horton has never been licensed by the state of Ohio as an attorney.

2

10.     For the purposes of this Complaint, unless otherwise indicated, "defendant" or "defendants" means all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the defendants named in this caption.

11.     During all times relevant to this action, the defendants regularly engaged in business in Ohio and directed solicitations to residents of Ohio.

12.     The defendants purposefully availed themselves of the Ohio marketplace and secured the benefits of that marketplace.

13.     The defendants' conduct included some or all of the following, among other things:

     a.     holding themselves out as experts in preventing foreclosures;

     b.     holding themselves out as experts in achieving modifications of the terms of residential home loans, including those that that were in default or were in danger of going into default;

     c.     directing business solicitations into the State of Ohio seeking participation in defendants' mortgage modification programs;

     d.     contracting in Ohio with Ohio consumers for foreclosure prevention and loan modification services;

     e.     contracting in Ohio with Ohio consumers for various services, including debt settlement or debt adjustment services;

     f.     offering to perform and/or performing activities for Ohio residents, including foreclosure prevention, loan modification services; and/or

     g.     claiming they would perform legal services in Ohio for Ohio consumers without being properly licensed to do so and failing to perform those services.

3

14.     Benjamin R. Horton and the corporate defendants have a unity of interest such that the separate existence of the corporations and Benjamin R. Horton no longer exists.  Horton is or was either a manager, director, or registered agent of each corporate entity.  The corporations are or were simply alter egos of Benjamin R. Horton.

15.     Benjamin R. Horton and the corporate defendants had a unity of interest and effective ownership and control such that there was no separate corporate existence.  The corporate form of the corporate defendants was in all cases merely the alter ego of Benjamin R. Horton and as such the corporate form must be disregarded.

### Background

16.     At all times relevant to this action, the defendants were engaged in the business of  debt adjusting, specifically helping homeowners obtain modifications of residential home mortgages.

17.     The defendants held themselves out to the public, including consumers such as The Everts in Ohio, as providing services in the management of debts by effecting the adjustment, compromise, or discharge of any account, note or other indebtedness of their customers.

18.     As an example, defendant Preferred Law, PLLC gives details on its website of mortgage modifications obtain for other consumers.

19.     In 2011, the Everts were experiencing financial difficulty, including difficulty in paying the mortgage on their home.

20.     They subsequently sought protection under the United States' bankruptcy laws and filed a court-supervised repayment plan with the United States Bankruptcy Court for the Northern District of Ohio in the Western Division at Toledo, Ohio.

21.     The case was styled *In Re Brian L. Evert & Karyn E. Evert*, Case No.:  11-36038.

PX20 - 253

22.    The Everts continued to struggle with their mortgage payment at times subsequent to the filing of their bankruptcy case.

23.    In the summer of 2014, the Everts received a phone call from an agent or employee of Preferred Law, PLLC.  The Everts had no prior business relationship with any of the defendants and had not sought out any assistance or services from Preferred Law, PLLC prior to that time.

24.    Using high pressure sales tactics, Preferred Law, PLLC's agent convinced The Everts that they should stop paying their mortgage and should instead pay Preferred Law, PLLC.

25.    In direct violation of bankruptcy law, Preferred Law, PLLC told The Everts they did not need bankruptcy approval to hire Preferred Law, PLLC.

26.    On or about June 25, 2014, agents or employees of defendant Preferred Law, PLLC prepared and sent a Fee and Representation Agreement to The Everts.

27.    The Everts signed the Fee and Representation Agreement on or about July 1, 2014 and returned it to defendant Preferred Law, PLLC.  A true and accurate copy of the Fee and Representation Agreement is attached to this complaint as exhibit A.  Certain personal identifiers have been redacted.

28.    The agreement is unfair, deceptive, and unconscionable in the following respects:

      a.  the Fee and Representation Agreement is substantively unconscionable in that it wholly favors the defendants in all material respects, including but not limited to:

           i.  limiting the defendants' liability to the fee paid by The Everts in paragraph 8;

           ii.  providing the defendants with liquidated damages of $250 for any chargeback on a credit card payment in paragraph 3.d.;

5

    iii.  specifically excluding the loan modification services Preferred Law, PLLC's representative originally sold to The Everts;

    iv.  creating one-sided withdrawal rights for Preferred Law, PLLC but then also stating that the rights to withdraw are governed by the Utah Rules of Professional Conduct, which have no bearing on attorneys performing legal services in Ohio;

    v.  attempting to force The Everts to bring any claims against the defendants either in arbitration or small claims court in Salt Lake City, Utah, when The Everts are citizens of Ohio; and

    vi.  attempting to force The Everts to arbitrate their claims against defendants Preferred Law, PLLC and Benjamin Horton when no attorney represented The Everts with respect to the arbitration provision, in violation of Ohio's Rules of Professional Conduct for Attorneys and in violation of Ohio case law.

b.  the Fee and Representation Agreement is procedurally unconscionable in that the defendants used their superior bargaining position to extract a wholly one-sided agreement with The Everts that:

    i.  they did not fully understand;

    ii.  that was not a product of meaningful negotiations;

    iii.  that was drafted solely for the benefit of the defendants who occupied the strongest bargaining position as between themselves and The Everts, who are not sophisticated consumers  of legal services; and

6

    iv.  that has previously been held by United States District Court Magistrate Judge Evelyn J. Furst to be unconscionable in the matter of <u>Feacher v. Hanely</u> *et al.* United States District Court for the District of Utah, Central Division, Case No.: 1:13-cv-92-EJF.

29.    The Everts paid the defendants $2,437.50 from July, 2014 to March 6, 2015 in installments of $162.50 after an initial payment of $650.00.

30.    Despite having paid the defendants $2,437.50, The Everts eventually obtained a modification of their mortgage directly with their lender.

31.    The defendants performed no valuable, substantive services for The Everts on their mortgage issue despite being well-paid to do so.

32.    As an example of both the lack of any substantive performance by the defendants and the co-mingling of their operations, on March 11, 2015, an agent of the defendants, Brianne Whitmire, emailed The Everts and told them:

> Your lender is still moving the file along and stating that no new information is needed at this time.
>
> Just wanted to provide you with an update, even if it is just to inform you that the modification is still being reviewed.
>
> Please send in bank statements and utility bill as you receive them so we always have the most current on file. If anything else is needed, I will make sure to contact you and let you know.
>
> Feel free to email or call me if you have any additional questions.
>
> --Thanks
>
> --Brianne Whitmire
>  Negotiator
>
> American Home Loan Counselors
>
> 8180 S 700 E #110

7

Sandy UT 84070

801.386.5100 EXT 233
888.224.6524 FAX
Hours of operation Monday-Friday 8:30-4:30 (MST)

33.     The email was sent from the account of bwhitmire@preferredlawteam.com, not from an email account with American Home Loan Counselors, after The Everts had already obtained a modification using their own efforts with their mortgage lender.

34.     The defendants made various misrepresentations or non-disclosures in an effort to induce The Everts to enter into the illegal Fee and Representation Agreement, including but not limited to:

    a.      That the defendants could get The Everts an adjustment or modification on the amount of debt owed by The Everts on their mortgage;

    b.      That the defendants would provide competent legal representation to The Everts;

    c.      That the defendants would obtain a loan modification for The Everts;

    d.      That The Everts did not need permission from the bankruptcy court to hire Preferred Law, PLLC or the defendants; and

    e.      Accepting money from The Everts while knowing that they would not provide substantive services of equivalent value to The Everts in exchange for the money paid.

35.     Defendants were all times relevant to this complaint engaged in the unauthorized practice of law in the State of Ohio.

36.     Defendants engaged in the unauthorized practice of law in an effort to induce The Everts to execute a contract for the defendants' purported services.

8

37.    Defendants Preferred Law, PLLC and Benjamin Horton made no attempt to comply with the Disciplinary Rules which govern the practice of law in the State of Ohio with regard to but not limited to:

      a.    Advertising,

      b.    Malpractice Insurance, and

      c.    The sharing of attorney fees with non-attorneys.

38.    On April 22, 2016, the bankruptcy court entered an order (Doc. 130) releasing the Everts' income from the Chapter 13 estate because they had fulfilled their obligations under their Chapter 13 plan.  The entry of a discharge order is believed to be immenient and the Chapter 13 Trustee's office declined any involvement in this case because the Everts were expected to receive their discharge.

39.    Upon information and belief, defendant Benjamin Horton, as the managing partner of Preferred Law, PLLC, directs the actions of all the other defendants in this case.

40.    Defendant Benjamin Horton is responsible for the actions of his agents under the doctrine of respondeat superior.

### Claim 1: Violation of the Ohio Consumer Sales Practices Act and the Ohio Debt Adjustment Companies Act

41.    All prior paragraphs are incorporated into this claim by reference.

42.    The Everts are a "consumers" as defined by the Ohio Consumer Sales Practices Act, Oh. Rev. Code § 1345.01(D).

43.    Each named defendant is a "person" as defined by the DACA, Oh. Rev. Code § 4710.01(A) engaged in the act of "debt adjusting" as defined by the DACA, Oh. Rev. Code § 4710.01(B).

9

44.     Each named defendant is also a "supplier" as defined by the OCSPA, Oh. Rev. Code §
1345.01(C), because each defendant was engaging in the business of effecting "consumer
transactions", either directly or indirectly, by engaging in the business of mortgage loan
modification, debt adjustment, or holding oneself out, by words of similar import, as providing
foreclosure defense services and mortgage modification services to a consumer in the State of
Ohio for purposes that were primarily for personal, family or household use.

45.     The defendants committed unfair, deceptive and unconscionable acts or practices in
violation of Oh. Rev. Code §§ 1345.02(A)and/or 1345.03(A) of the Consumer Sales Practices
Act including but not limited to the following:

    a.      the defendants operated a debt settlement company in the State of Ohio without
    complying with applicable Ohio law, namely, Oh. Rev. Code § 4710, et seq.;

    b.      the defendants charged an excessive fee for debt adjusting;

    c.      the defendants failed to register with the Ohio Secretary of State prior to doing
    business in Ohio as required by Oh. Rev. Code § 1703.03;

    d.      the defendants engaged in debt adjustment activities, including representing
    themselves to Ohio consumers as being able to affect the adjustment, compromise, or
    discharge of any account, note, or other indebtedness of consumers who sign up for their
    services, without complying with Oh. Rev. Code §§ 4710.02(A) and (B).  More
    specifically, the defendants charged fees in excess of those permitted by the Ohio Debt
    Adjusters Act;

    e.      the defendants made false or misleading statements to induce a consumer to pay
    for their purported services;

10

f.      the defendants advised The Everts that The Everts did not need bankruptcy court approval to enter into the Fee and Representation Agreement, which is false and could have jeopardized their right to remain in a Chapter 13 bankruptcy;

g.      the defendants violated Ohio Adm. Code § 109:4-3-09(A) by accepting money from consumers for goods or services ordered by mail, telephone, or otherwise and then failed to make full delivery as promised;

h.      the defendants had knowledge of the inability of The Everts to receive a substantial benefit from the subject of the consumer transaction;

i.      the defendants required The Everts to enter into a consumer transaction, including the Fee and Representation Agreement on terms they, as "Suppliers" as defined by law, knew were substantially one-sided in their favor and which they knew had previously been declared unconscionable;

j.      the defendants failed to arrange for and undergo an audit conducted by an independent, third party, certified public accountant of their business and then file the audit and opinion with the consumer protections division of the attorney general in violation of Oh. Rev. Code §§ 4710.02(D)(1-2) and 4710.02(F)(2);

k.      the defendants failed to obtain and maintain insurance coverage of not less than $100,000.00 for employee dishonesty, forgery, and fraud in violation of Oh. Rev. Code §§ 4710.02(E)(1) &(2) and 4710.02(F)(2);

l.      the defendants committed deceptive acts by failing to comply with Disciplinary Rules with regard to practicing law in the State of Ohio; and

m.      the defendants committed a deceptive act when they converted funds held on behalf of The Everts to their own use without having provided any services to The Everts.

11

46.     Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, Oh. Rev. Code § 1345.01 et seq.

47.     The defendants committed said violations after such decisions were available for public inspection pursuant to Oh. Rev. Code § 1345.05(A)(3).

48.     Specifically, the following cases have held that the acts and practices committed by the defendants violate the Ohio Consumer Sales Practices Act: McKeen v. Professional Debt Solutions (Belmont Co. Ct. C.P. 2013), Case No.: 12 CV 306 (PIF # 10003061); In Re YouPutZeroDown.com, Docket No.: 244328, October 31, 2007 (PIF# 244328); In Re Mortgage Assistance Solutions, LLC, Docket No.: 359847, January 28, 2009 (PIF# 10002750); State of Ohio ex rel. DeWine v. Rojas (Cuyahoga Co. Ct. C.P. 2012), Case No.: CV-12-780588, (PIF# 10003040); State of Ohio ex rel. Rogers v. Lavensky (Cuyahoga Co. Ct. C.P. 2008), Case No.: CV-07-632077 (PIF# 10002711); and State of Ohio ex rel. Cordray v. Brotherton (Greene Co. Ct. C.P. 2009), Case No.: 2009 CV 0709 (PIF # 10002831).

49.     The defendants knowingly committed the unfair, deceptive, and unconscionable acts and practices.

50.     As a direct and proximate result of Defendants' unfair, deceptive, and unconscionable acts and practices, The Everts has been damaged in an amount in excess of $75,000.00.

**Claim 2:  Fraud**

51.     All prior paragraphs are incorporated into this claim by reference.

52.      The defendants took approximately $2,437.50 from The Everts  after promising The Everts they would obtain a modification of The Everts' mortgage, including a reduction in the principal balance owed, and after telling The Everts they did not need bankruptcy court approval to enter into the Fee and Representation Agreement.

12

53.     The defendants' representations concerning the work they claimed they would perform were made falsely, with knowledge of their falsity, or with such utter disregard and recklessness as to whether the representations were true or false that knowledge may be inferred.

54.     The representations were made with the intent of misleading The Everts into relying upon them.

55.     The Everts were justified in relying upon the defendants' representations.

56.     In light of the prior court ruling that the Fee and Representation Agreement was unconscionable, the defendants acted maliciously or with such reckless disregard of The Everts rights that malice may be inferred, subjecting the defendants to liability for punitive damages.

57.     As a direct and proximate result of the defendants' fraud, The Everts have incurred damages in amounts in excess of $75,000.00.

**Claim 3:  Professional Negligence (Defendants Horton and Preferred Law, PLLC)**

58.     All prior paragraphs are incorporated into this claim by reference.

59.     The Everts entered into an attorney client relationship with defendants Preferred Law, PLLC and Benjamin Horton by signing the Fee and Representation Agreement on or about July 1, 2014.  A copy of the Fee and Representation Agreement is attached to this complaint as exhibit A.

60.     Defendants Preferred Law, PLLC and Horton had a duty to competently and conscientiously advise The Everts regarding their rights and obligations on their mortgage and their bankruptcy case.

61.     Preferred Law, PLLC and Horton breached the duty referred to in the previous paragraph by failing to provide competent legal services, including the handling of The Everts loan modification.

13

62.    As a direct and proximate result of the breach of defendants Horton and Preferred Law,

PLLC of the duty owed to The Everts, The Everts has suffered damages in an amount in excess

of $75,000.00.

### Claim 4:  Violation of the Ohio Telephone Solicitors Act

63.    All prior paragraphs are incorporated into this claim by reference.

64.    The Everts are "purchasers" as defined by Oh. Rev. Code § 4719.01(A)(5), commonly

known as the Telephone Solicitors Act.

65.    The defendants are  "telephone solicitors" as defined by § 4719.01(A)(8) of the

Telephone Solicitors Act, and the defendants' initial phone call to The Everts as referenced in

this complaint, was a "telephone solicitation" as defined by Oh. Rev. Code §4719.01(A)(7).

66.    Defendants committed acts and practices violation of the Telephone Solicitors Act,

including, but not limited to:

    a.    acting as a telephone solicitor without having first obtained a certificate of

    registration from the Ohio attorney general;

    b.     failing to maintain a resident of Ohio to sit as statutory agent for the purpose of

    service of process;

    c.    misrepresenting, both directly and by implication, aspects of the performance,

    efficacy, nature or characteristics of the services being solicited; and

    d.    making false or misleading statements to induce Plaintiff to purchase their

    services;

67.    Each of the foregoing violations of the Telephone Solicitors Act constitutes an unfair or

deceptive act or practice in violation of Oh. Rev. Code § 1345.02 of the Consumer Sales

Practices Act.

68.     Each of the foregoing violations of the Telephone Solicitors Act has previously been determined by Ohio courts to be an act or practice that violates the Consumer Sales Practices Act.

69.     The defendants violated the Telephone Solicitors Act and Consumer Sales Practices Act after such Ohio court decisions were available for public inspection, pursuant to Rev. Code § 1345.05(A)(3).

70.     After a reasonable to conduct discovery, The Everts believe they can prove:

        a.      that the defendants' actions violation of TSA were done intentionally, knowingly and willfully and with conscious disregard for rights of The Everts; and

        b.      that the defendants have engaged a pattern and practice of such wrongful and unlawful behavior.

71.     As a direct and proximate result of the defendants' violations of the Telephone Solicitors Act, The Everts have suffered damages, entitling them to injunctive relief, actual damages in excess of $75,000.00, treble damages, costs, and attorneys' fees as provided for by Oh. Rev. Code §§1345.09 and 4719.15.

**Claim 5:  Claim for an Accounting of Funds Paid and Disbursed**

72.     All prior paragraphs are incorporated into this claim by reference.

73.     The defendants, as The Everts' agents, occupied a position of trust and confidence in that the defendants accepted money from The Everts to represent The Everts and to obtain a modification of The Everts' mortgage.

74.     The Everts, having not been in a position to know what disbursements have been made and how fees may have been split among the defendants, have a need for the defendants to

15

render a full accounting of all money received and paid out to themselves, and split among themselves.

75.     As a result and by virtue of the fiduciary relationship between The Everts and the defendants and the defendants' violations of the OCSPA, violations of the DACA, their fraudulent conduct, and the professional negligence of defendants Preferred Law, PLLC and Horton, The Everts are entitled to an accounting of the fact, location, date and amount of every payment received from The Everts and disbursed from their account, including money taken by the defendants, and the division of any money among the defendants.

**Prayer for Relief**

**Wherefore,** Plaintiffs prays for judgment against the Defendants as follows:

1.  On Claim 1, for money damages in excess of $75,000.00;

2.  On Claim 2, for compensatory damages in excess of $75,000.00;

3.  On Claim 3, for compensatory damages in excess of $75,000.00;

4.  On Claim 4, for money damages equal to The Everts' actual damages  and exemplary damages in amounts to be determined at trial;

5.  On Claim 5, for an accounting of all money paid to defendants and retained for themselves or split among themselves,

6.  For an amount of money equal to the costs of this action and The Everts' reasonable attorneys' fees pursuant to Oh. Rev. Code §1345.09(F)(2);

7.  For punitive damages in an amount to be determined at trial in excess of $75,000.00;

8.  For an order declaring that the Defendants have engaged in acts and  practices in violation of the Consumer Sales Practices Act, Oh. Rev. Code § 1345.01et seq., the Debt

16

Adjustment Companies Act, Oh. Rev. Code §4710..01, and the Telephone Solicitors Act, Oh. Rev. Code §4719.01 *et seq.*;

9. For a Permanent Injunction enjoining the defendants, their agents, servants, employees, successors or assigns, and all persons acting in concert and participation with them, directly or indirectly, through any corporate device, partnership, or other association, under the names listed in this Complaint or any other name, from engaging in the acts and practices which Plaintiffs complains in the State of Ohio until complying with the laws of the State of Ohio and satisfaction of any monetary obligations to Plaintiff;

10. For Pre-judgment and post-judgment interest; and

11. For any and all other legal or equitable relief to which he may be entitled.

Respectfully submitted,


/s/ Matthew L. Alden
Matthew L. Alden (0065178)
Paul S. Kuzmickas (0076507)
Luftman, Heck & Associates LLP
2012 West 25th Street
Suite 701
Cleveland, Ohio 44113-4131
Phone: 216-978-4778
Fax:    216-539-9326
malden@lawlh.com

Counsel for Plaintiffs Brian L. Evert & Karyn E. Evert

### Demand For A Jury Trial

Pursuant to Fed. R. Civ. P. 38, The Everts demand a trial by jury on all contested issues of fact.


/s/ Matthew L. Alden
Matthew L. Alden (0065178)
Paul S. Kuzmickas (0076507)

17



# PREFERRED LAW

# **EXHIBIT A**

June 25, 2014

Karyn E. Evert
283 Orchard Street
Marion, OH. 43302

Re: Fee and Representation Agreement

Dear Karyn:

Thank you for choosing the law firm of Preferred Law, PLLC to assist you in protecting your homeowner rights pursuant to certain federal statutes and programs.  Fundamental to a sound relationship is a clear understanding of the terms and conditions upon which we will be providing federal homeowner relief services.  Please read this representation agreement (the "Agreement") carefully as this Agreement constitutes a binding contract.  Should you disagree with any of the terms of this Agreement, you must notify Preferred Law, PLLC as soon as practicable so such terms may be meaningfully negotiated.

This Agreement is entered into between the law firm of Preferred Law, PLLC ("Preferred Law") and the following borrower and co-borrower:

|  | Borrower | Co-Borrower |
|---|---|---|
| Name | Karyn E. Evert | Brian L. Evert |
| Address | 283 Orchard St. | 283 Orchard St. |
| City, State, Zip | Marion, Ohio 43302-3627 | Marion, Ohio 43302-3627 |
| Phone Number | ▮▮▮▮▮▮▮▮ | ▮▮▮▮▮▮▮▮ |
| E-mail | ▮▮▮▮▮▮▮▮ | ▮▮▮▮▮▮▮▮ |

IN CONSIDERATION of the promises and covenants of the parties to this Agreement, the above-named borrower and co-borrower(s) (collectively referred to as "Borrower") and Preferred Law hereby agree as follows:

1. **Services and Fees – Federal Services Only.**  Borrower hereby appoints Preferred Law as Borrower's agent to analyze his or her federal case, prepare documents, and speak with the Borrower's lender or other person/entity servicing Borrower's account only as provided in this Agreement.  The services and fees are set out in detail below and in Addendum A of this Agreement, which is incorporated herein.  Borrower AGREES to the services and fees identified in Addendum A.  All fees will be charged monthly but will never exceed the amount chargeable for work that has already been completed by Preferred Law.
   All state related matters related to Borrower's case, if any, will be immediately forwarded, with Borrower's permission, to local counsel and will not be governed by the terms of this agreement.  Borrower acknowledges and agrees that Preferred Law only analyzes, consults, and determines Borrower's federal rights and protection identified under federal law, including the

1 | P a g e
R e t a i n e r   A g r e e m e n t

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (888) 980-7157 • Fax: (888) 234-3215 • www.preferredlawteam.com

PX20 - 267



Equal Credit Opportunity Act (ECOA), Fair Credit Reporting Act (FCRA), Real Estate Settlement Procedures Act (RESPA) and the Truth in Lending Act (TILA), Making Home Affordable Program (MHA), Home Affordable Modification Program (HAMP), FHA-HAMP, Home Affordable Foreclosure Alternatives Program (HAFA), Home Affordable Refinance Program (HARP), Home Affordable Unemployment Program (UP), Second Lien Modification Program (2MP), Treasury/FHA Second Lien Program (FHA2LP), and other federally derived programs and laws. These services also include the drafting of any necessary Qualified Written Request pursuant to the TILA 15 U.S.C. § 1601, et seq., the Fair Debt Collection Practices Act (FDCPA) and RESPA, codified as Title 12 § 2605 (e)(1)(B) and Reg. X § 3500.21(f)2 of the United States Code, and the subsequent analysis and review of all documentation supplied by the lender.

PREFERRED LAW ONLY REPRESENTS THE BORROWER WITH RESPECT TO HIS OR HER FEDERAL RIGHTS.  IN ACCORDANCE WITH STATE AND FEDERAL LAW, PREFERRED LAW DOES *NOT* PERFORM THE FOLLOWING SERVICES: FORECLOSURE RESCUE AND PREVENTION SERVICES, LOSS MITIGATION SERVICES, FORECLOSURE CONSULTATION, LOAN MODIFICATION ASSISTANCE, MORTGAGE LOAN ORIGINATION AND SERVICING, MORTGAGE ASSISTANCE RELIEF SERVICE, DEBT NEGOTIATION OR ADJUSTMENT, OR OTHER STATE RELATED RELIEF.  PREFERRED LAW IS NOT ASSOCIATED WITH THE GOVERNMENT AND OUR SERVICES HAVE NOT BEEN APPROVED BY BORROWER'S LENDER.  ALL MORTGAGE ASSISTANCE RELIEF SERVICES, IF ANY, ARE DIRECTED TO AMERICAN HOME LOAN COUNSELORS, A NONPROFIT CORPORATION, AN ALTERNATIVE COMPETENT MORTGAGE ASSISTANCE RELIEF SERVICE IN ACCORDANCE WITH 12 C.F.R. PART 1015 (REGULATION O), A HUD APPROVED HOUSING COUNSELING AGENCY, OR LOCAL COUNSEL, WHICH SHALL NOT BE GOVERNED BY THE TERMS OF THIS AGREEMENT UNLESS STATED OTHERWISE.  BORROWER MAY AT HIS OR HER OPTION SELECT AN ALTERNATIVE MORTGAGE ASSISTANCE RELIEF SERVICE OR NONPROFIT AT ANY TIME TO ASSIST BORROWER.  BORROWER AGREES PREFERRED LAW MAY ENGAGE THE SERVICES OF, AND RELEASE BORROWER'S FINANCIAL AND OTHER CONFIDENTIALLY INFORMATION TO AMERICAN HOME LOAN COUNSELORS, LOCAL COUNSEL, OR OTHER MORTGAGE ASSISTANCE RELIEF SERVICE ON BEHALF OF BORROWER AS PREFERRED LAW DEEMS NECESSARY UNLESS DIRECTED OTHERWISE BY BORROWER IN WRITING.  BORROWER ACKNOWLEDGES AND AGREES THAT PREFERRED LAW IS AN ENTIRELY SEPARATE ENTITY FROM AMERICAN HOME LOAN COUNSELORS, MODIFICATION REVIEW BOARD, LLC, HUD APPROVED COUNSELING AGENCIES, AND BORROWER'S LOCAL COUNSEL.  BORROWER ACKNOWLEDGES AND AGREES THAT PREFERRED LAW SHALL NOT BE GOVERNED BY ANY PROMISES OR GUARANTEES MADE BY ANY OTHER ENTITY, AND ANY CLAIM BY BORROWER RELATED TO ANY PURPORTED PROMISES OR GURANTEES SHALL BE DIRECTED TO SUCH OTHER ENTITY AND NOT PREFERRED LAW.

2. **Limited Scope of this Agreement in Predatory Lending Demand Letter Cases.**  Where Preferred Law has agreed that there is a basis for submitting a verified complaint and demand letter pursuant to federal law, Preferred Law agrees that this Agreement shall include specific follow-up negotiations that are precipitated by the demand letter.  However, the commencement of actual litigation in the form of a court or arbitration filing of the complaint and service on the defendant is NOT covered by this Agreement and will be handled through local counsel only.

2 | P a g e
R e t a i n e r   A g r e e m e n t

PREFERRED LAW  PLLC ● 2825 E COTTONWOOD PKWY ● STE 500 ● SALT LAKE CITY, UT 84121
Phone (888) 980-7157 ● Fax (888) 33? ?755 ● www.preferredlawteam.com



Preferred Law litigation attorneys are licensed to litigate in the States of Utah and Texas, but may work with co-counsel in other states in which affiliated attorneys are present. Borrower understands and agrees that co-counsel, if any is required, will likely charge fees to Borrower in addition to Preferred Law, particularly if any litigation, bankruptcy, or state-matter representation is required

3. **Borrower's Obligations.** Borrower AGREES to the following:

    a. Borrower shall immediately notify Preferred Law if Borrower receives telephone calls, e-mails or any other correspondence from his or her lender or lender's attorney(s). Although Borrower is free to communicate with his or her lender at all times, Borrower should direct any and all communications from his or her lender to Preferred Law. Borrower hereby certifies that he or she does not have a sale date, except as set forth previously in this Agreement.

    b. Borrower shall provide Preferred Law with accurate and current financial information and financial history as requested by Preferred Law and shall cooperate with ongoing requests. Borrower agrees to submit the completed Preferred Law financial package within ten (10) days from the date of this Agreement (or such time frame agreed upon in writing between Borrower and Preferred Law).

    c. Borrower shall make all payments in accordance with the payment schedule identified in Addendum A. Borrower acknowledges that any rejected or delayed payments will result in a fee payable to Preferred Law in the amount of $25 for each NSF payment and a $25 fee for payment rescheduling. No payment rescheduling shall be authorized within 5 days before the payment date. Borrower agrees to pay a late fee of $50 for each payment not received within 30 days from the due date of the payment.

    d. Borrower agrees that should Borrower use a credit card to pay for Preferred Law's services, BORROWER AGREES NOT TO CHARGEBACK THE CARD for any reason. Borrower agrees that Preferred Law makes NO GUARANTEE of services. In the event that Borrower breaches this provision and chargebacks his or her credit card, Borrower agrees that liquidated damages of $250 shall be applied to Borrower's account in addition to all other remedies provided in this Agreement and under law.

**Failure to meet any of these obligations may negatively affect the outcome of this representation.** Preferred Law may attempt to provide the services set forth under this Agreement even if Borrower has failed to meet the obligations set forth above. Borrower agrees that he or she solely bears the responsibility for providing accurate and timely information and documents as set forth above.

4. **Withdrawal from Representation.** Preferred Law reserves the right to IMMEDIATELY withdraw from representation or place Borrower's file on hold if, among other things, Borrower fails to

3 | P a g e
R e t a i n e r   A g r e e m e n t

PREFERRED LAW, PLLC ● 2825 E. C....  .... ..  .... ● ... . ..50 ● SALT LAKE CITY, UT 84121
Phone: (888) 980-7152 ● Fa.. ... ... ... ● ... . preferredlawteam.com

PX20 - 269



honor the terms of this Agreement, including non-payment or untimely payment to Preferred Law and/or court filing fees; failure to cooperate with or follow advice on a material matter, or if any fact or circumstance arises that would render continuing representation unlawful or unethical or in violation of the Utah Rules of Professional Conduct. Upon withdrawal, Preferred Law shall be entitled to any and all fees earned to that point, including fees necessary to close Borrower's account, and shall return any and all unearned fees to Borrower. Notwithstanding the above, Preferred Law shall only withdraw from representation as strictly permitted under the Utah Rules of Professional Conduct.

5. **Confidentiality.** Borrower agrees to not disclose to third parties, other than Borrower's attorney(s) or financial advisor(s), any information obtained from Preferred Law, including the forms used in this transaction or other proprietary information obtained from Preferred Law in the course of receiving service from Preferred Law.

6. **Limited Legal Advice.** Borrower does not anticipate, and does not hereby authorize, Preferred Law to represent Borrower in any litigation, lawsuit or other court proceeding, or to provide any tax advice unless otherwise agreed to in a separate agreement. Unless otherwise agreed to in writing and signed by the parties, Preferred Law will *not* be assisting, representing, or forming an attorney-client relationship with Borrower in any manner or capacity *except* with respect to those federal matters discussed above. This Agreement does NOT cover other related claims that may arise and may require legal services (e.g., lender lawsuits, insurance disputes, collection defense, tax advice, bankruptcy, etc.). Non-attorney representatives of Preferred Law, including agents who communicate with Borrower are not authorized to give legal advice, whether relating to bankruptcy or other legal issues.

7. **No Guarantee of Success.** Borrower understands that Preferred Law does NOT GUARANTEE that a foreclosure sale will be stopped or that Preferred Law will otherwise help Borrower reach a desirable outcome. Borrower understands and agrees that representation by Preferred Law will not necessarily result in stopping the foreclosure sale. Borrower acknowledges that Preferred Law has made no promises about the outcome and that any opinion offered by Preferred Law or any other entity will not constitute a guaranty.

8. **Limitation of Liability.** Borrower and Preferred Law agree that any claim for damages by Borrower against Preferred Law (which shall include for purposes of this paragraph American Home Loan Counselors and Modification Review Board, LLC) for any reason shall be strictly limited only to the FEE paid by Borrower to Preferred Law pursuant to this Agreement. Preferred Law makes NO WARRANTY, express or implied, except as expressly stated in this Agreement. Borrower hereby expressly waives all warranties, express or implied, except as expressly stated in this Agreement. Borrower also expressly waives any right to claim damages against Preferred Law, whether consequential or incidental, except for damages not exceeding the FEE actually paid by Borrower. Borrower expressly acknowledges Preferred Law has made no such promises or guarantees of results.

PREFERRED LAW, PLLC ● 2825 E. COTTONWOOD PKWY ● ___ ● SALT LAKE CITY, UT 84121
Phone: (888) 990-2457 ● Fax: ___ ● ___ preferredlawteam.com



BORROWER ACKNOWLEDGES THAT HE OR SHE HAS HAD ADEQUATE TIME TO SEEK INDEPENDENT COUNSEL AND IS NOW CURRENTLY REPRESENTED IN MAKING THIS AGREEMENT IN LIMITING PREFERRED LAW'S POTENTIAL MALPRACTICE AND OTHER LIABILITY TO BORROWER.

9. **Paperless Documents, E-mail, and Signatures.**  Preferred Law is committed to reducing waste and as such, conducts significant business via electronic, paperless means.  Therefore, the parties mutually understand and agree that signature of a facsimile copy and electronic signature shall be deemed authentic and original for all lawfully enforceable purposes.  Further, Borrower agrees to receive any and all correspondence and communications from Preferred Law via e-mail and grants Preferred Law authority to sign, electronically or otherwise, routine documents that relate to the scope of representation on Borrower's behalf.  Borrower AGREES that Preferred Law, including its attorneys, agents, representatives, and employees, may communicate with Borrower or send information to Borrower me via e-mail.  Borrower acknowledges any and all risks inherent with electronic communications and releases, discharges, acquits and forgives Preferred Law, including its attorneys, agents, representatives, and employees, from any and all claims, actions, suits, and demands due to disclosure or theft of Borrower's identify or information.

10. **Amendments.**  This Agreement, including all Addendums, may not be superseded, amended or added to except by a separate agreement in writing, signed by the parties hereto, or their respective successors-in-interest.

11. **Indemnity.**  So far as permitted under law, Borrower agrees to indemnify and hold Preferred Law (including American Home Loan Counselors and/or Modification Review Board, LLC) harmless from any and all liability, loss or expenses (including attorney's fees and costs) arising out of or relating to the real property identified herein, Borrower's lender arrangement, or the services provided by Preferred Law for Borrower pursuant to this Agreement.

12. **Interpretation/Applicable Law/Venue.**  This Agreement is made in Salt Lake County, Utah, and shall be construed pursuant to the laws of the State of Utah, without reference to any conflict of laws provisions and/or procedures which may otherwise apply.  Subject to the small claims court and arbitration provisions below, the parties to this Agreement (including American Home Loan Counselors and/or Modification Review Board, LLC) further agree that the venue for the resolution of any dispute between the parties arising out of this Agreement shall be proper only in Salt Lake County, Utah.

13. **Collection.**  Notwithstanding any other Section of this Agreement, should Borrower fail in any manner to timely pay Preferred Law for its services as described in this Agreement and Addendum A, Borrower AGREES to pay any and all attorney's fees and costs, incurred by Preferred Law or any other authorized collection entity in collecting the same.  Borrower AGREES that Preferred Law or its authorized agent may use any and all personal, employment, financial, confidential, and other information supplied by Borrower to Preferred Law, including

PREFERRED LAW, PLLC • 2825 E. C... ... ... ... ... • ... .00 • SALT LAKE CITY, UT 84121
Phone: (888) 980-2457 • Fax ... ... ... ... ... preferredlawteam.com



information obtained from Borrower's lender(s), financial institution(s), family, etc., in pursuing collection against Borrower.

14. **Partial Invalidity.** If any court of competent jurisdiction holds any sentence, term, or provision of this Agreement to be illegal or invalid, said sentence, term, or provision shall be deemed to be severed and deleted; such deletion shall not affect the validity of the remaining terms and provisions of this Agreement.

15. **Lien.** To the fullest extent permitted under Utah and federal law, and pursuant to Utah Code Ann. § 38-2-7, commencing on the date of Borrower's signature and acceptance below, Preferred Law is hereby given a lien for the balance of compensation due from Borrower on any money or property owned by Borrower, including Borrower's home, that is the subject of or connected with work performed by Preferred Law for Borrower, including but not limited to:  (a) any real or personal property that is the subject of or connected with the work performed for Borrower; (b) any funds held by Preferred Law for Borrower, including any amounts paid as a retainer to Preferred Law; and (c) any settlement, verdict, report, decision, or judgment in Borrower's favor in any matter or action in which Preferred Law assisted, including any proceeds derived from the matter or action, whether or not Preferred Law is employed by Borrower at the time the settlement, verdict, report, decision, or judgment is obtained.  Borrower AGREES that any amounts received by Preferred Law related to Borrower's matter may be first applied towards any and all outstanding fees and costs incurred on Borrower's behalf prior to any disbursement to Borrower.

16. **Small Claims Court and Arbitration.** Excluding collection proceedings against Borrower as described in Section 13 above, any and all disputes between the parties, including malpractice claims, *shall* be resolved by submission to and litigation in the SMALL CLAIMS DIVISION OF THE SALT LAKE COUNTY JUSTICE COURT OF UTAH.  If for any reason the dispute is not within the jurisdiction of the Small Claims division of the Salt Lake County Justice Court of Utah, then the dispute *shall* be resolved by *binding* arbitration in Salt Lake City, Utah, without appeal, and any award rendered thereunder may be entered in any court of competent jurisdiction.  Excluding collection proceedings against Borrower as described in Section 13 above, the prevailing party shall be awarded attorney's fees and costs as set by the court or arbitrator but in no manner shall such amount exceed $2,000 total.

EXCLUDING MATTERS SUBJECT TO THE JURISDICTION OF THE SMALL CLAIMS DIVISION OF THE SALT LAKE COUNTY JUSTICE COURT DESCRIBED ABOVE, BORROWER AGREES TO HAVE ANY AND ALL DISPUTES ARISING OUT OF THE MATTERS DESCRIBED IN THIS AGREEMENT, INCLUDING MALPRACTICE CLAIMS AND ALL CLAIMS AGAINST MODIFICATION REVIEW BOARD, LLC AND AMERICAN HOME LOAN COUNSELORS, DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY UTAH OR FEDERAL LAW AND BORROWER IS GIVING UP ANY RIGHT BORROWER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT, JURY TRIAL, OR BY CLASS ACTION.  IF BORROWER REFUSES TO SUBMIT TO ARBITRATION, BORROWER MAY BE COMPELLED TO ARBITRATE UNDER UTAH LAW AND PREFERRED LAW SHALL BE AWARDED ALL ATTORNEY'S FEES AND COSTS IN

PREFERRED LAW, PLLC ● 2826 E. C...  ... ... ... ... SALT LAKE CITY, UT 84121
Phone: (888) 380-7457 ● Fa...  ... ... ...  preferredlawteam.com



# PREFERRED LAW

COMPELLING THE SAME NOTWITHSTANDING ANY OTHER PROVISION.  BORROWER HAS READ AND UNDERSTANDS THE FOREGOING SECTION AND HEREBY AGREES TO ITS TERMS.

17. **Legal Representation.**  Borrower acknowledges and represents that he or she has had reasonable opportunity to seek independent legal counsel and is currently represented by independent counsel in signing this Agreement.

18. **Entire Agreement.**  This Agreement and any follow-on addendums, including Addendum A, constitute the entire agreement between the parties relating to the transactions contemplated hereby and all other prior or contemporaneous agreements, promises, claims, understandings, representations and statements, oral or written, are merged into this Agreement.  By signing below, Borrower is AGREEING to all of the Phases identified in Addendum A.  Borrower may agree to additional phases of work through execution of additional addendums.

**NOTICE TO BORROWER. It is not necessary to pay a third party to arrange for a loan modification or other form of forbearance from Borrower's mortgage lender or servicer. Borrower may call his or her lender directly to ask for a change in loan terms. Nonprofit housing counseling agencies also offer these and other forms of borrower assistance free of charge. A list of nonprofit housing counseling agencies approved by the United States Department of Housing and Urban Development (HUD) is available from a local HUD office or by visiting www.hud.gov. Preferred Law is not associated with the government, and Preferred Law's federal legal services have not been approved by the government or Borrower's lender. Borrower's lender may not agree to change Borrower's loan; and if Borrower stops paying Borrower's mortgage, Borrower could lose Borrower's home and damage Borrower's credit rating.  Borrower acknowledges that Preferred Law encourages Borrower to make timely mortgage payments at all times in accordance with Borrower's agreement with his or her lender.**

I (We), the borrower(s) and homeowner(s), affirm that I (we) have received, read, and understand the foregoing agreement, and AGREE to the terms thereof.

Borrower:

Date: _7 | 1 | 14_          Sign here ▶ _Karen E. Evert_

                            Client Name: _Karen Evert_

Co-Borrower:
Date: _07/01/14_          Sign here ▶ _Brian L. Evert_

                            Client Name: _Brian L. Evert_

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (888) 980-7457 • Fax: (888) 334-7255 • www.preferredlawteam.com

PX20 - 273



**(Addendum to "Limited Services Agreement")**

The federal legal services provided by Preferred Law, PLLC ("Preferred Law") are roughly divided into four phases and the principal fees for those services are due upon completion of each phase. No upfront fees are required. The payment arrangement may be broken into multiple payments depending on circumstances as agreed to by Preferred Law in writing. Funds paid to Preferred Law may in its discretion be disbursed immediately or be held in a trust account governed by Utah law until such fees are earned by and disbursed to Preferred Law as described below.

### Phases and Estimated Value of Services

#### Phase 1 – Preliminary Legal Review; File Underwriting

Initial consultation and review. Preliminary federal legal review of the file. Initial attorney review. Attorney or paralegal phone consultation. Underwriting of the file based on financial ratios for conformity to federal and/or lender specific guidelines and known policies and tolerances. Review and analysis of possible federal predatory lending issues and review of forensic audit if applicable. Borrower financial review. Submission of Borrower's documentation and information to a Mortgage Assistance Relief Service (e.g., American Home Loan Counselors, a nonprofit corporation, HUD Approved Housing Counseling Agencies, and/or local counsel) for submittal and/or escalation.

Estimated Value of Service          $974

#### Phase 2 – Application and Processing Assistance

If necessary, submittal of cease and desist letter, Borrower's Authorization letter, and if applicable, RESPA & TILA letters. Preparation and submittal of package to a Mortgage Assistance Relief Service or nonprofit entity based on federal and/or lender specific guidelines, including analysis and compilation of income verification (e.g. profit and loss statements), expenses, etc. Review by Preferred Law attorney for federal eligibility and compliance. Attorney review for alternative federal legal options. Cooperation with Mortgage Assistance Relief Service, nonprofit entity, and/or local counsel for processing of Borrower's application.

Estimated Value of Service          $974

#### Phase 3 – Verification and Supplemental Submissions

Secure confirmation that the package has been received and is in active review. Preparation and submittal of other necessary documents as needed including a Qualified Written Request pursuant to federal law. Develop dialogue with Borrower and lender to ensure that loss mitigation process continues unabated with Mortgage Assistance Relief Service. Review of

8 | P a g e
R e t a i n e r   A g r e e m e n t

PREFERRED LAW, PLLC ● 2825 E ............ ... ... ... .. ... ... .. 90 ● SALT LAKE CITY, UT 34121
Phone: (833) 380-7457 ● Fax: ... ... ... ... ... .. ... preferredlawteam.com



Mortgage Assistance Relief Service's preparation and submittal of supplemental or additional modification packages and income verification as required by the lender.

**Estimated Value of Service**  **$974**

**Phase 4 – Tender of Demand Letter with Verified Complaint**

Review and analysis of the documentation provided through Qualified Written Request. Collecting and submitting additional or updated information. If Preferred Law has agreed to take the matter on as a preliminary federal predatory lending case, research and prepare a verified predatory lending complaint and cover demand letter through local counsel as necessary. Tender of the verified complaint and demand letter and specific follow on negotiations as limited and set forth in the "Limited Services Agreement."

**Estimated Value of Service**  **$974**

A. <u>Notice Regarding Compliance with Applicable State Law</u>. By signing this agreement, Borrower is agreeing to pay the above fees upon completion of service. No advance fee is required. Borrower must provide a completed Payment Form (included herein); however payment shall be due or processed in accordance with the dates on the Payment Form.

B. <u>Purpose of Fees</u>. Borrower acknowledges, understands, and agrees that Preferred Law will use the aforementioned fees and costs for legal services rendered by Preferred Law and **such fees will not be used to pay Borrower's escrow or mortgage payment or for other purposes**. Preferred Law's fees are separate from those of local counsel.

C. <u>Limited Availability of Refund</u>. The aforementioned fees are due only after the agreed upon work has been completed or the associated costs or expenses have been incurred and are not advance fees. Fees charged are not in any way predicated upon success of Preferred Law's services. Preferred Law believes in earning fees through persistent efforts and work performed, before billing Borrower for that work. In many cases, success of Preferred Law on behalf of borrower depends on the actions and decisions of third parties and may be outside of the control of Preferred Law. Additionally, programs and financial institutions may frequently change policies without notice. A refund will not be available in cases where duplicative efforts and/or increased time and resources are required.

D. <u>Payment Dates are Approximate</u>. The payment dates listed on the Payment Information Form and within this Agreement are approximate. Actual payments generally will usually be charged within three business days of the date listed. This allows for delays due to unavailability of funds, holidays, weekends and unanticipated technical issues. Please ensure that funds are available for the scheduled payment well in advance (at least 3 days) of the payment date(s) listed and remain available after that date. Please also refer to the NSF and Payment Chargeback sections contained in the Payment Information Form and this Agreement for more information.

9 | P a g e
R e t a i n e r   A g r e e m e n t

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (888) 980-7457 • Fax: (888) 354-7735 • www.preferredlawteam.com

PX20 - 275



**PREFERRED LAW**

E. **Document and Preparation Fees.** Borrower is responsible for payment of document and preparation fees for each calendar month in which work is performed by Preferred Law. This fee covers the monthly expenses and costs such as facsimiles, photocopies, courier fees, mailing costs, long-distance telephone calls, file maintenance and other miscellaneous document and preparation costs associated with ongoing efforts on Borrower's behalf. In most cases, a loan work-out, as arranged through a Mortgage Assistance Relief Service or nonprofit entity, has been agreed to within the first five months of representation under this agreement. However, work may, due to third party delays, continue past that time period due to circumstances beyond the control of Preferred Law. In such cases, the document and preparation fees are increased to reflect increased expenses associated with the maintenance of long-term representation.

If necessary, the document and preparation fees (after payment of the phases above) will be **$297 monthly** beginning after the end of the payment schedule date of this Agreement.

F. **10% Reduction of Principal Contingency Fee.** If applicable, **American Home Loan Counselors** (not Preferred Law) may negotiate to reduce or discharge the secured debt including a second mortgage attached to your property. Only if American Home Loan Counselors is successful and you agree to the lender's offer, you AGREE to pay a contingency fee to American Home Loan Counselors or its assigns in the amount of 10% of the total debt forgiven as a result of the negotiation with respect to the property. This Debt Reduction Contingency Fee must be paid over a period not to exceed five years in equal monthly payments at 4% annual interest. American Home Loan Counselors and Preferred Law make no guarantees or claims regarding the potential tax consequences of debt forgiveness.

    I (we) the undersigned person(s) hereby agree to the <u>10% Reduction of Principal Contingency Fee</u> described above.

    **Borrower's Initials:** _KEE_      **Co-Borrower's Initials:** _BE_

I hereby acknowledge that I have read and understand all of the terms and conditions set forth in this agreement/addendum and do AGREE to them.

**Borrower:**

Date: _7/1/14_      Sign here ▶ _Kamyn E Evert_

                    Client Name: _Kamyn E. Evert_

**Co-Borrower:**
Date: _2/01/14_      Sign here ▶ _Bryan L Evert_

                    Client Name: _Bryan L. Evert_

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone (888) 980-7457 • Fax (888) 513-2711 • www.preferredlawteam.com

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# Attachment V

## IN THE UNITED STATES BANKRUPTCY COURT
### Eastern District of Virginia
### Richmond Division

**In re: Bernice James Bentley**
**Debtor**

**Case No. 16-34358-KLP**
**Chapter 13**

---

BERNICE JAMES BENTLEY
     Plaintiff

v.

Adv. Pro. No. _____

PREFERRED LAW, PPLC,
     Defendant.

### COMPLAINT FOR TURNOVER OF ESTATE ASSETS
### AND TO DETERMINE VIOLATION OF THE AUTOMATIC STAY

     Comes now Bernice James Bentley, by counsel, pursuant to 11 U.S.C. § 362(k)

and 11 U.S.C. § 105 and files this Complaint to Determine Violation of the Automatic

Stay. In support thereof, Plaintiff respectfully states the following:

### Jurisdiction

     1.     This Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C.

§ 1334.

     2.     This proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B),

(K), and (O).

     3.     Venue is proper pursuant to 28 U.S.C. §1409.

### Parties

     4.     Bernice James Bentley ("Ms. Bentley"), the plaintiff herein, is the debtor in

the related Chapter 13 case and is a resident of the Commonwealth of Virginia.

Emily Connor Fort  (VSB #83889)
Mark C. Leffler (VSB #40712)
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588
Telephone (804) 358-9900
Counsel for Plaintiff

5.      The defendant, Preferred Law, PPLC, is a foreign professional limited liability company formed in Utah.

**Facts**

6.      On September 1, 2016, Ms. Bentley filed for an order for relief under Chapter 13 of the Bankruptcy Code protection pursuant to 11 U.S.C. § 101 et seq.

7.      On September 1, 2016, Ms. Bentley filed her Schedules, including Official Form 106/E/F (Schedule E/F: Creditors Who have Unsecured Claims) ("Schedule E/F"). Ms. Bentley listed Preferred Law in Schedule E/F as a general unsecured creditor holding a total claim of $1,500.00. A copy of Schedule E/F is attached to this complaint as "Exhibit 1".

8.      On September 1, 2016, Ms. Bentley also filed Official Form 106G (Schedule G: Executory Contracts and Unexpired Leases) ("Schedule G"). Ms. Bentley listed Preferred Law in Schedule G, and she stated her intention to reject the contract. A copy of Schedule G is attached to this complaint as "Exhibit 2".

9.      On September 4, 2016, the Bankruptcy Noticing Center sent notice of the instant bankruptcy filing to Preferred Law via first class mail. A copy of the notice is attached to this complaint and labeled as "Exhibit 3".

10.     On October 3, 2016, Ms. Bentley contacted counsel in her bankruptcy case, Boleman Law Firm, P.C. ("Boleman"), and alerted Boleman that Preferred Law drafted $350.00 from Ms. Bentley's Virginia Credit Union bank account post-petition.

11.     On October 4, 2016, Boleman received a fax from Ms. Bentley that included a statement, sent from Virginia Credit Union, which provided a detailed description of Preferred Law's post-petition draft.  A copy of the statement is attached to

this complaint and labeled as "Exhibit 4".

12.     On October 4, 2016, Emily Swartz ("Ms. Swartz"), an employee of

Boleman, called Preferred Law at the phone number associated with the bank draft,

801-913-5504, and left a message requesting that Preferred Law return the funds.

13.     On October 5, 2016, Ms. Swartz called Preferred Law at that same

number once again. She spoke with an individual who identified himself as "John". Ms.

Swartz advised John that the funds taken post-petition needed to be returned. John

falsely stated that Ms. Bentley was still employing Preferred Law to assist in negotiating

a mortgage loan modification, he falsely asserted that Ms. Bentley's actions in

continuing to use Preferred Law for loan modification services were a "reaffirmation" of

Ms. Bentley's pre-petition debt.

14.     Ms. Bentley denies requesting that Preferred Law continue working for her

after she filed bankruptcy.

15.     On October 24, 2016, Boleman faxed a demand letter to Preferred Law at

the number listed on the Preferred Law website, as well as the fax number associated

with its registered agent, (now-suspended) attorney Benjamin R. Horton, on the Utah

State Bar Association website. The letter was transmitted to both fax numbers

successfully. A copy of the demand letter is attached to this complaint and labeled as

"Exhibit 5".

16.     Even though it received written notification of Ms. Bentley's bankruptcy

filing through the Bankruptcy Notification Center, Preferred Law continued to collect

upon the pre-petition debt. Preferred Law unlawfully drafted $350.00 from Ms. Bentley

post-petition, and—despite receiving warning calls and several instances of written

notice—refuses to return the funds. Preferred Law's initial action in drafting funds post-petition, coupled with its continued refusal to return Ms. Bentley's funds, indicate that Preferred Law is willfully violating the automatic stay without any regard for Ms. Bentley's protections under her chapter 13 bankruptcy.

<u>**Discussion**</u>

17.    11 U.S.C. § 362(a)(1) prohibits not only "the commencement" of an action against debtors but also the "continuation" of such action. 11 U.S.C. § 362(a)(1).

18.    11 U.S.C. § 362(k)(1) states, in pertinent part, " . . . [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

19.    A party seeking damages for violation of the automatic stay must establish three elements:

      a. that a violation occurred;

      b. that the violation was committed willfully; and

      c. that the violation caused actual damages.

<u>Skillforce, Inc. v. Hafer</u>, 509 B.R. 523, 529 (E.D. Va. 2014), *citing* <u>In re Bright</u>, 334 B.R. 19, 24 (Bankr. D. Mass. 2005), *aff'd*, 338 B.R. 530 (B.A.P. 1st Cir. 2006).

20.    "[T]he willfulness requirement in § 362(k)(1) does not require the specific intent to violate the automatic stay; rather, it is sufficient to show that the creditor knew that the stay was in effect and then intentionally committed an act or failed to act, which had the effect of violating the stay." <u>Id.</u> at 533, citing <u>Budget Serv. Co. v. Better Homes</u>, 804 F.2d 289, 292-93 (4th Cir. 1986).

21.     11 U.S.C. § 105(a) allows the court to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

## Argument

22.     On September 1, 2016, Ms. Bentley filed a petition for Chapter 13 bankruptcy. Ms. Bentley's petition invoked the protection of the automatic stay, which prohibits "any act to collect, assess, or recover a claim against the debtor" that arose prior to the filing of that debtor's petition. 11 U.S.C. §362(a)(6).

23.     On September 4, 2016, the Bankruptcy Noticing Center sent notice of  Ms. Bentley's bankruptcy through the Bankruptcy Noticing Center, to the address that Preferred Law specified. Any action taken by Preferred Law thereafter to collect upon the debt listed in Ms. Bentley's Schedules, or to assert control over property of the estate, should be treated as a willful violation of the automatic stay.

24.     Nevertheless, on October 1, 2016—almost a month after the Bankruptcy Noticing Center sent notice—Preferred Law drafted $350.00 from Ms. Bentley's bank account with Virginia Credit Union.

25.     Even after being notified both via telephone and again in writing that it is violating the automatic stay, Preferred Law is refusing to return the funds that it wrongfully drafted from Ms. Bentley's account. When Ms. Swartz called Preferred Law and requested the return of Ms. Bentley's funds, an individual identifying himself as "John" told Ms. Swartz that he considered Ms. Bentley's debt with Preferred Law as reaffirmed. Preferred Law's egregious actions demonstrate how willing it is act without concern for either Ms. Bentley's protections under her bankruptcy, or the repercussions that Preferred Law faces for its willful and malicious conduct.

26.    As a result of Preferred Law's wrongful actions, Ms. Bentley has suffered damages, including potential lost wages as a result of prosecuting this action, emotional distress, and liability for attorney's fees payable to the Boleman Law Firm, P.C., due to its efforts to obtain Preferred Law's compliance with the automatic stay, and its efforts in prosecuting this action.

27.    Preferred Law's actions, taken after receiving notice of Ms. Bentley's bankruptcy filing, have caused Ms. Bentley to incur attorney fees and expenses. Additional attorney's fees, which will likely be incurred in the prosecution of the instant matter, represent continuing damages suffered by Ms. Bentley a result of Preferred Law's actions. Pursuant to 11 U.S.C. § 362(k)(1), Ms. Bentley is entitled to recover "actual damages, including costs and attorney's fees" as a result of Preferred Law's willful violation of the automatic stay. No exception exists under §362(k)(2) or otherwise to excuse Preferred Law's conduct and liability for damages.

28.    11 U.S.C. §362(k) provides that the one who has been injured by a willful violation of the automatic stay provisions of 11 U.S.C. § 362 may recover punitive damages in appropriate circumstances. The circumstances of this case are appropriate for an award of punitive damages. Preferred Law has refused to acknowledge the notice of filing and has, instead, drafted funds from Ms. Bentley in violation of her protections under the automatic stay. Even after representatives from Boleman notified Preferred Law of its violation, both over the telephone and in writing, Preferred Law refused to return the funds. Preferred Law's actions, which it took without regard to Ms. Bentley's bankruptcy, justify the imposition of punitive damages.

29.    Preferred Law had knowledge of Ms. Bentley's bankruptcy and, after

obtaining that knowledge, refused to return the funds that it wrongfully drafted.

Accordingly, not only were the violations willful, but they were intentional and malicious.

Both the original Notice of Chapter 13 Bankruptcy Case and 11 U.S.C. § 362(k)

provided Preferred Law with fair notice that its conduct would be subject to punishment

and potentially severe penalties. For these and other reasons, Preferred Law should be

punished for its actions to an extent that is significant enough to discourage it—and

similar malefactors—from pursuing like courses of action in this and other bankruptcy

cases. This deterring result can only be achieved by the imposition of punitive damages.

WHEREFORE, Ms. Bentley respectfully prays that this Court:

A.     Order Preferred Law to immediately turn over funds totaling $350.00 to

Ms. Bentley representing the funds debited from her bank account;

B.     Determine that after being fully informed of the nature of the automatic

stay and its existence, Preferred Law's actions constitute a willful violation of the

automatic stay;

C.     Award damages, attorney fees and costs, including any and all attorney's

fees and costs incurred in the course of collecting payment of damages from Preferred

Law, and punitive damages;

D.     Order Preferred Law to immediately cease and desist any and all actions

to collect the debt owed to it by Ms. Bentley; and

E.     Award such other remedies and further relief for Defendant's willful

violation of the automatic stay as appears just.

Respectfully submitted,

**BERNICE JAMES BENTLEY**

By Counsel:

 /s/  Emily Connor Fort
Emily Connor Fort (VSB# 83889)
Mark C. Leffler (VSB #40712)
Boleman Law Firm, P.C.
P. O. Box 11588
Richmond, Virginia 23230-1588
Telephone (804) 358-9900
Counsel for Plaintiff

# Attachment W

FILED DISTRICT COURT

**2016 OCT -7 PM 4:04**

FILED BY_____ BCT

Jonathan Hanley
7709 S Keswick
Sandy, UT  84093
Phone: (801) 913-5504

---

### In the District Court of Utah
### Third Judicial District Summit County, Silver Summit District Court

6300 Justice Center Road Ste A, Park City, UT 84098

| | |
|---|---|
| JONATHAN HANLEY,<br><br>    Plaintiff<br><br>v.<br><br>ASPEN HOLLOW HOMEOWNERS<br>ASSOCIATION,<br><br>    Defendant | **COMPLAINT FOR DECLARATORY<br>JUDGMENT**<br><br><br><br>Case Number: 160500424<br><br>Judge: ___Pettit___ |

COMES NOW Plaintiff JONATHAN HANLEY ("Hanley"), appearing pro se, and

complains against Defendant ASPEN HOLLOW HOMEOWNERS ASSOCIATION ("the

HOA") as follows:

### PARTIES

1.      Plaintiff JONATHAN HANLEY ("Plaintiff") resides in Salt Lake County, Utah.

Plaintiff is the owner of the property located at 8165 Royal Street E #9, Park City, Summit

County, Utah, 84060 (the "Property").

1

2.    Defendant ASPEN HOLLOW HOMEOWNERS ASSOCIATION (the "HOA"),
is located at 2064 Prospector Avenue PO Box 827, Park City, Summit County, Utah, 84060. Its
registered agent is Rhonda Sideris located at the same address.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the parties pursuant to Utah Code Ann. §§ 78A-5-
102.

4.    Venue is properly laid in this Court in accordance with Utah Code Ann. §§ 78B-
3-301 et seq.

## GENERAL ALLEGATIONS

5.    A dispute has arisen between the parties concerning the Conditions, Covenants
and Restrictions ("CC&Rs") and whether the replaced rear deck located at the Property is
compatible with the CC&R's and other decks located within the community known as Aspen
Hollow.

6.    In accordance with the CC&RS, on or about April 7, 2016, Plaintiff submitted his
proposed deck replacement at the Property to the HOA.

7.    On April 12, 2016, the HOA's agent, Brad Bowdle, approved the deck
replacement request and plans. *See* Exhibit A.

8.    On one page of the approval, Brad Bowdle inserted a copied section on the
submitted plans numbered 1 through 8. Paragraph 1 of the copied section reads:

2

"All planking, posts, stain, etc. to be compatible with the design of the current and similar AH[1] decks."

*See* Exhibit B.

9.      At no time did Mr. Bowdle tell Plaintiff and his contractors that the posts had to be rounded or log-shaped.

10.      On information and belief, no other relevant communications were sent between the parties from April 7 (the application) and April 12 (the approval).

11.      Furthermore, decks located in the Aspen Hollow community are varied and not uniform.

12.      With the understanding that the deck planking and posts only had "to be compatible with the design of the current and similar [Aspen Hollow] decks" as stated by the HOA, rectangular posts were used in the construction of the deck.

13.      The HOA now claims that the rectangular posts are non-compatible and must be rounded.  The only cited reason for the alleged non-compatibility of the posts was the rectangular shape of the posts.

14.      On June 20, 2016, Mr. Bowdle, on behalf of the HOA, wrote the following email to Plaintiff:

Dear Jonathan,

During the architectural review process for your Aspen Hollow unit 9 deck expansion, you submitted several copies of plans for the proposed improvements. *On each submittal it was clearly noted that the deck posts and railings would match the existing.*

---

[1] "AH" refers to Aspen Hollow, the HOA community where the property is located.

3

The new railings do not match the existing, nor are they consistent with any of the railings in Aspen Hollow.

The Board reviewed several photos of the deck and determined that the railings as installed are not acceptable and must be replaced. ***The posts shall be replaced with similar diameter and style logs as the front stairs and deck areas.*** The rails and spindles shall match the front stairs and deck areas as well. All of the rear decks were stained last year at the expense of the HOA to ensure uniformity across the development. Please insure that your rear deck is stained to match. Specific details on stain specifications can be obtained from Park City Lodging.

The Board requests that the work be completed as soon as possible, and certainly prior to the 2016 Labor Day holiday. Please provide written confirmation to the Board by June 30, 2016 on your timeframe for repairs as requested.

Sincerely,

Brad Bowdle

(Emphasis added).

15.    By claiming he stated that "deck posts and railing would match the existing," Mr. Bowdle tacitly admitted that the word "match" would have been appropriate. However, Mr. Bowdle never said that the "deck posts and railing would match the existing" but only said "All planking, posts, stain, etc. to be compatible with the design of the current and similar AH decks." *See* Exhibit B.

16.    The terms "to be compatible with" and "match" have very different meanings and "to be compatible with" gives more leeway to the homeowner to construct a deck that fits generally within the community. As constructed, the deck fits well within the community.

4

17.     If the HOA required rounded posts, then the HOA should have told Plaintiff that all decks posts must be "rounded" or that the posts should look like "logs" but the HOA negligently never told Plaintiff the same.

18.     Nevertheless, on September 1, 2016, the HOA stated that it's going to proceed with replacing the deck posts which will likely incur substantial costs that the HOA will then bill Plaintiff for.

19.     Plaintiff also seeks a preliminary injunction against the HOA enjoining it from proceeding with the planned replacement at the Property.

20.     The Court has power to issue a declaratory judgment pursuant to Utah Code Ann. § 78B-6-401(1), which provides:  "Each district court has the power to issue declaratory judgments determining rights, status, and other legal relations within its respective jurisdiction. An action or proceeding may not be open to objection on the ground that a declaratory judgment or decree is prayed for."

21.     Wherefore, Plaintiffs prays for judgment pursuant to Utah Code Ann. § 78B-6-401 *et seq.* and Rule 57 of the Utah Rules of Civil Procedure, declaring that the property deck is in compliance with the CC&Rs and the requirements of the HOA; or, in the alternative, that the HOA is solely responsible for replacing the posts at its own cost due to its negligence in not detailing exactly what type of posts were required in the construction.

DATED this ____ day of October, 2016.

Jonathan Hanley

5

# Attachment X

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

IN RE:                    ) Bankruptcy Case Number
                          ) 13-24007 RKM (Chapter 7)
JONATHAN PHILLIP HANLEY,  )
and SANDRA XIMENA HANLEY, ) 2004 EXAMINATION OF
                          ) JONATHAN PHILLIP HANLEY
         Debtors.         ) And SANDRA XIMENA HANLEY

Durham Jones & Pinegar
111 East Broadway, Suite 900
Salt Lake City, Utah 84110

Thursday, January 9, 2014
10:18 a.m. to 12:35 p.m.

Lori Lawrence
Certified Shorthand Reporter
Registered Professional Reporter

*Intermountain Court Reporters*
*Murray, UT 84107*
*(801) 263-1396*



1

```
 1                    A P P E A R A N C E S
                      - - - - - - - - - - -
 2
     FOR THE CHAPTER 7 TRUSTEE:
 3
             Mr. Patrick Johnson
 4           DURHAM JONES & PINEGAR
             111 East Broadway, Suite 900
 5           P.O. Box 4050
             Salt Lake City, Utah 84110
 6

 7   FOR THE DEBTOR:

 8           Mr. George Hofmann
             PARSONS KINGHORN HARRIS
 9           111 East Broadway, 11th Floor
             Salt Lake City, Utah 84110
10

11   OTHERS PRESENT:

12           (None)

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                          2
```

```
 1                        I N D E X
                          - - - -

 2
     WITNESSES:  JONATHAN PHILLIP HANLEY and
 3                SANDRA XIMENA HANLEY

 4   EXAMINATIONS                       PAGE

 5   By Mr. Johnson                      4

 6

 7                     E X H I B I T S
                       - - - - - - - -

 8
     NUMBER              DESCRIPTION              PAGE
 9
     1 -- Order Denying Trustee's Motion for Civil
10         Contempt and Debtors are Ordered to Appear
           to the Rescheduled 2004 Examination or the
11         Court Will Render Sanctions (2 pgs.)      6

12   2 -- Subpoena Duces Tecum for Rule 2004
           Examination (6 pgs.)                      6
13   .
     3 -- Document produced last week (13 pgs.)      7
14
     4 -- (None)
15
     5 -- Objections and Responses of the Hanley
16         Companies to Subpoena Duces Tecum (8 pgs.)  30

17   6 -- Registered Principal Search for "hanley, j"
           (1 pg.)                                  40
18
     7 -- Registered Principal Search for "hanley, p"
19         (1 pg.)                                  50

20   8 -- Statement of Financial Affairs (32 pgs.)  54  9 --

21   Modification Review Board website (2 pgs.)   87

22

23

24

25
                                                     3
```

```
 1                  Salt Lake City, Utah

 2          Thursday, January 9, 2014; 10:18 a.m.

 3              JONATHAN PHILLIP HANLEY

 4                        and

 5              SANDRA XIMENA HANLEY,

 6        produced as witnesses, having been first duly

 7        sworn, were examined and testified as follows:

 8          MR. JOHNSON:  Do you want to make an appearance for

 9    the record?

10          MR. HOFMANN:  Absolutely.  George Hofmann,

11    appearing on behalf of the debtors.

12          MR. JOHNSON:  Okay.  This is the Rule 2004

13    examination set for January 9th, 2014, at ten a.m.

14    of Jonathan and Sandra Hanley.

15                      EXAMINATION

16    BY MR. JOHNSON:

17          Q.    Please state your names for the record.

18          MR. JONATHAN HANLEY:  Jonathan Hanley.

19          MS. SANDRA HANLEY:  Sandra Hanley.

20          Q.    My name is Patrick Johnson.  I represent the

21    trustee, Duane Gillman, in these proceedings.  I just

22    want to go over a couple sort of ground rules.  It sounds

23    like George might have went over a few of them before we

24    started.  Have either of you ever been deposed before?

25          MR. JONATHAN HANLEY:  Yes.
```

4

PX20-297

1        Q.    You have.

2        MS. SANDRA HANLEY:  Yes.

3        Q.    Ever been deposed?  Okay.  So then you

4  understand that you're under oath and that your

5  statements are just as though they were in court before a

6  judge or a jury, correct?

7        MS. SANDRA HANLEY:  Uh-huh (affirmative).

8        MR. JONATHAN HANLEY:  Yes.

9        Q.    Okay.  Are you both prepared to answer my

10  questions today?

11        MS. SANDRA HANLEY:  Yes.

12        MR. JONATHAN HANLEY:  (Nodded up and down.)

13        Q.    There's nothing that prevents you from

14  answering my questions?

15        MS. SANDRA HANLEY:  No.

16        Q.    You haven't taken medications or anything

17  like that?

18        MR. JONATHAN HANLEY:  Oh, no, nothing like that.

19        Q.    Okay.  Since we're -- there's three of us

20  here, I'll try, and we can all try to not talk over each

21  other.  It could get quite difficult for the court

22  reporter to transcribe, so if you'd wait for me to finish

23  my questions before you answer, I'll likewise try to wait

24  for you to finish answering the question before I ask the

25  next one.

5

1          MR. JONATHAN HANLEY:  Understood.

2          Q.    What did you do to get ready today for the

3     2004 examination?

4          MR. JONATHAN HANLEY:  We reviewed some of the

5     documents that we had tendered to you folks last week.

6     We had a short meeting with George.  And that was the

7     extent of it.

8          Q.    Okay.  Was there anyone else present when you

9     met with your lawyer, with George?

10         MR. JONATHAN HANLEY:  No.

11         Q.    Okay.  Just go through a few exhibits.

12    I'm showing you what's been marked as Exhibit 1.

13    Have you seen this document?

14         MR. JONATHAN HANLEY:  I have, yes.

15         Q.    Okay.  And is it your understanding that this

16    an order of the court that orders you to appear at

17    today's 2004 examination?

18         MR. JONATHAN HANLEY:  Yes.

19         Q.    Okay.  I'm showing you what's been marked as

20    Exhibit 2.  Do you recognize this document?

21         MR. JONATHAN HANLEY:  Yes.

22         Q.    And is this a -- is it your understanding

23    that this is a subpoena for you to attend today's 2004

24    examination and also to have produced documents?

25         MR. JONATHAN HANLEY:  That's correct.

6

1      Q.    That's correct.  Great.  Showing you what's

2   been marked as Exhibit 3.  Do you recognize this packet

3   of documents?  Oh.  Why don't we trade.

4      MR. JONATHAN HANLEY:  Yeah, because I'm certain I

5   didn't make those marks.

6      MR. HOFMANN:  It's Patrick's secret thoughts.

7      MR. JOHNSON:  Right.  They're not going to be

8   secret in a minute, but I need to see them so that I know

9   what the secret questions are.

10     MR. JONATHAN HANLEY:  I believe these are the

11  documents that we had produced last week.

12     Q.    (BY MR. JOHNSON)  Great.  Why don't we go

13  ahead and go through those now.  The first two pages, can

14  you tell me what these are or represent?

15     MR. JONATHAN HANLEY:  Okay.  So the first two pages

16  correspond to your Request No. 3 on Exhibit A.  These are

17  the documents that correspond to a life insurance policy

18  that I took out.

19     Q.    Okay.  And who makes the payments on that

20  policy?

21     MR. JONATHAN HANLEY:  The payments are made from

22  one of my dad's business checking accounts.

23     Q.    Which business?

24     MR. JONATHAN HANLEY:  I believe the drafts come

25  from the Brown Legal checking account.

7

1          Q.    Is it Brown Legal checking account?

2          MR. JONATHAN HANLEY:  Correct.

3          Q.    And approximately when was this policy taken

4     out?  Do you recall?

5          MR. JONATHAN HANLEY:  Yeah.  On the first page it

6     looks like it was taken out on July of 2010.

7          Q.    Great.  If you could turn to the second -- or

8     the third page.  Can you tell me what -- and this goes

9     through at least three pages.

10         MR. JONATHAN HANLEY:  Okay.

11         Q.    It looks like the docket printed off in the

12    state court's exchange website.

13         MR. JONATHAN HANLEY:  Uh-huh (affirmative).

14         Q.    And it looks like the docket for the case of

15    Premier Management of Utah against you and Sandra.  Is

16    that correct?

17         MR. JONATHAN HANLEY:  Correct.

18         Q.    What's the basis for that lawsuit?

19         MR. JONATHAN HANLEY:  That was a forcible entry and

20    detainer action.  We were evicted for nonpayment of rent

21    from our home.

22         Q.    What was the address of that home?

23         MR. JONATHAN HANLEY:  ████████████████████, Sandy,

24    Utah, █████ -- either █████ or █████

25         Q.    And you were renting that home?

                                                        8

1         MR. JONATHAN HANLEY:  Correct.

2         Q.    And when did you move into that home?

3         MR. JONATHAN HANLEY:  One year before.

4         Q.    One year before the case was commenced?

5         MR. JONATHAN HANLEY:  Yes, that's correct.

6         Q.    So approximately June -- June of 2011?

7         MR. JONATHAN HANLEY:  Yeah, that sounds about

8    right.

9         Q.    And who was the owner of that home?  Do you

10   know?

11        MR. JONATHAN HANLEY:  The -- so the owner or the

12   management company?

13        Q.    The owner.

14        MR. JONATHAN HANLEY:  The owner was -- I believe

15   her name was Marceline Arrowchis.

16        Q.    Could you spell that last name?

17        MR. JONATHAN HANLEY:  I would definitely be taking

18   a shot in the dark, but I want to say it's

19   A-R-R-O-W-C-H-I-S.

20        Q.    And are there any other -- or when you left

21   this residence, where did you move to?

22        MR. JONATHAN HANLEY:  We moved -- well, needless to

23   say, we were caught by surprise when some constables from

24   the -- I don't know if they were from the Ogden Sheriff's

25   Office.  One day they showed up, and we had to move that

                                                        9

1    instant.  I think we stayed in a hotel for a couple days,

2    and then we found a short-term rental for a month while

3    we made some arrangements with my dad.

4         Q.    And after the short-term rental, is?

5    that -- did you move into the current home you're living

6    in?

7         MR. JONATHAN HANLEY:  That's right.

8         Q.    And what's that address?

9         MR. JONATHAN HANLEY:  ███████████████████,

10   ████████████, and that's ████ area code.

11        Q.    And approximately when did you move into that

12   house?

13        MR. JONATHAN HANLEY:  October of 2012.

14        Q.    Are there any other lawsuits pending against

15   you right now?

16        MR. HOFMANN:  There's -- the statement of financial

17   affairs list several.

18        MR. JOHNSON:  Okay.  We can wait.  I was going to

19   go through those, so we can discuss those as we go

20   through.

21        MR. HOFMANN:  It just might be easier to put it in

22   front of him.  There are several.

23        MR. JOHNSON:  Yeah.  I'll wait.

24        MR. HOFMANN:  It's up to you.

25        MR. JOHNSON:  Thank you for that.

                                                      10

1      Q.    Why don't we turn to the next or beyond the

2  lawsuit, the docket, and it looks like there's a page

3  that begins with "Inventory of Hanley household items."

4      MR. JONATHAN HANLEY:  Yes.

5      Q.    And what is this?

6      MR. JONATHAN HANLEY:  That's -- that's an

7  itemization that I put together I want to say -- so this

8  corresponds to your Request No. 11.  It's a list of

9  things that we have in our home.

10     Q.    Okay.  Is this everything in the home?

11     MR. JONATHAN HANLEY:  I mean outside of getting

12 into like dishes and silverware, you know, minutia of a

13 household.

14     Q.    What kind of silverware is there?

15     MR. JONATHAN HANLEY:  Nothing valuable.

16     Q.    Let's go to the next page, if you don't mind.

17 This is entitled Hanley Business Agreement.

18     MR. JONATHAN HANLEY:  Okay.

19     Q.    Can you give me just a brief description of

20 what this document is?

21     MR. JONATHAN HANLEY:  That's an agreement that my

22 dad and I entered into when we had decided that we were

23 going to try and work together.

24     Q.    Okay.  And this is -- this is the document

25 that you entered into prior to forming Brown Legal, Inc.;

11

1      is that correct?

2          MR. JONATHAN HANLEY:  I don't know if this was

3      entered into before the entity was formed or after.

4          MR. HOFMANN:  Your question assumes that he knows

5      when it was formed and actually did form it, and I'm not

6      sure that's accurate.  You might ask him that, but that's

7      your choice.

8          MR. JOHNSON:  Thank you.

9          Q.    Who do you work for right now?

10         MR. JONATHAN HANLEY:  Modification Review Board.

11         Q.    Do you work -- do you work for any other

12     companies?

13         MR. JONATHAN HANLEY:  No.

14         Q.    Do you know what Brown Legal, Inc., does?

15         MR. JONATHAN HANLEY:  I don't think it does

16     anything.

17         Q.    Do you know when Brown Legal, Inc., was

18     formed?

19         MR. JONATHAN HANLEY:  I believe it was formed in

20     2011.

21         Q.    Did you form Brown Legal, Inc.?

22         MR. JONATHAN HANLEY:  I believe that I may have,

23     yeah.

24         Q.    Are you the owner of Brown Legal, Inc.?

25         MR. JONATHAN HANLEY:  No.

                                                          12

1    Q.    Who is the owner?

2    MR. JONATHAN HANLEY:  My dad.

3    Q.    So just -- your testimony is that Brown

4  Legal, Inc., does nothing.  Is that your understanding?

5    MR. JONATHAN HANLEY:  Yes.

6    Q.    And are you an officer and director of Brown

7  Legal, Inc.?

8    MR. JONATHAN HANLEY:  I believe when I filed the

9  papers on whatever the Utah business site is that does

10  it, I think I did identify myself as a manager.

11    Q.    The business agreement discusses that, in the

12  beginning, the second whereas paragraph, that Phillip

13  Hanley -- who is your father, correct?

14    MR. JONATHAN HANLEY:  Correct.

15    Q.    Was going to invest in this company.  Did he

16  invest any money in the company?

17    MR. JONATHAN HANLEY:  I would -- I would say that

18  the ultimate investment was made in Modification Review

19  Board.

20    Q.    Is there any business relationship between

21  Brown Legal, Inc., and Modification Review Board?

22    MR. JONATHAN HANLEY:  The -- and I would be

23  speaking for my dad, but I believe his intent was to

24  start a loan modification consulting business.

25  He and I had previously worked for another law firm,

13

1    which was called The Law Offices of C.C. Brown, and they

2    wanted us to set up a separate entity for the purposes of

3    the paperwork and the processing work.  Almost

4    immediately thereafter, my dad and I both resigned, and

5    he said let's . . .

6        Q.    And you --

7             MR. JONATHAN HANLEY:  Oh, sorry.

8        Q.    You said that they wanted you to set up a

9    separate document processing part of -- from C.C.  Brown.

10   Who is "they"?

11            MR. JONATHAN HANLEY:  The -- the -- the owners or

12   the controllers of C.C. Brown.

13       Q.    Who are they?

14            MR. JONATHAN HANLEY:  Charles Craig Brown, Chad

15   Gettel, and John McCall.

16       Q.    Are any of them attorneys?

17            MR. JONATHAN HANLEY:  John McCall is, and Charles

18   Craig Brown is.  I don't think Chad is.

19       Q.    Are they licensed in Utah?  Do you know?

20            MR. JONATHAN HANLEY:  Charles Brown is, and John is

21   possibly.  I think he's licensed in Idaho, Wyoming, and

22   Colorado.

23       Q.    Do you have any similar business agreement or

24   other documents between -- or related to any of the other

25   entities that you're involved in, Modification -- which

                                                           14

1   includes Modification Review Board; American Home Loan

2   Counselors; AM Property Management, LLC; American Home

3   Loans, LLC; Armour Debt Collections, LLC; Preferred

4   Legal, LLC?

5          MR. HOFMANN:  Now, Patrick, can I pause you there?

6   There are two entities on your list that he has no idea,

7   he has no connection with whatsoever.

8          MR. JOHNSON:  Okay.

9          MR. HOFMANN:  And so what might be easier for you,

10  depending on how you want to proceed, if we carve those

11  two entities out that he's never --  doesn't even know

12  what they are, then you could, you know, define a term

13  that's the businesses or whatever you want to call it

14  that's the businesses he does know something about,

15  because otherwise I think it's going to get confusing

16  when you ask him a question about eight different

17  businesses, especially when he doesn't know anything

18  about two of them.

19         MR. JOHNSON:  I understand.  Well, and I think that

20  I'll probably hone in more on the companies as we get

21  down to them.

22         MR. HOFMANN:  That's fine.

23         MR. JOHNSON:  But why don't --

24         MR. HOFMANN:  It's not possible to answer that

25  question other than giving a separate answer for eight

15

1  different companies, I think.

2      MR. JOHNSON:  Yeah.  Well, why don't I ask my

3  question again and see if he has -- the question is

4  simply if he has any contracts with -- like this

5  agreement with any of these, and then that will identify

6  which ones he --

7      MR. HOFMANN:  And that's a different question.

8  There were some facts assumed at the beginning that he

9  had some involvement with them, which is not true, but if

10  you said, "Do you have a contract with" -- and you went

11  through each of the entities, that's perfectly fair game.

12      MR. JOHNSON:  Okay.

13      Q.    Do you have any contracts with Modification

14  Review Board?

15      MR. JONATHAN HANLEY:  I guess our agreement is that

16  because we never -- he never did anything with Brown

17  Legal --

18      MR. HOFMANN:  Who's "he"?

19      MR. JONATHAN HANLEY:  My dad.  We --  Modification

20  Review Board I believe was formed very shortly

21  thereafter, and that was the entity that he used to --

22  for the business that this agreement --  what's the right

23  word?

24      MR. HOFMANN:  So are you saying that even though

25  the agreement is not with Modification Review Board,

16

```
 1    Modification Review Board essentially took the place of
 2    Brown Legal in that agreement?  Is that what you're
 3    saying?
 4         MR. JONATHAN HANLEY:  That's what I'm saying.
 5    Outside of that, there are no other agreements between
 6    any other entities.
 7         Q.    (BY MR. JOHNSON)  There's no agreements that
 8    you have or related to American Home Loan Counselors?
 9         MR. JONATHAN HANLEY:  No.
10         Q.    There's no agreements related to AM Property
11    Management, LLC?
12         MR. JONATHAN HANLEY:  Aside from an oral rental
13    agreement that we had that, for the purposes of these
14    proceedings, we decided to put into writing, then that
15    would be it.
16         Q.    Okay.  And what I'm asking for are agreements
17    between you and these entities or individuals related to
18    these entities, so that would include if you contracted
19    directly with the company or you contracted with your
20    father or some other individual as part of, you know,
21    your affiliation or nonaffiliation with those entities.
22         MR. JONATHAN HANLEY:  Sure.
23         Q.    So any contracts --
24         MR. HOFMANN:  We produced this contract between him
25    and his father, so his father has to do with many of
```

                                                    17

1    these entities, so I think you would have to talk about

2    this agreement with respect to all those if you're going

3    to characterize it that way.

4         MR. JOHNSON:  Okay.

5         Q.    Any contracts with -- I lost track.  American

6    Home Loans, LLC?

7         MR. JONATHAN HANLEY:  No, and if it helps, American

8    Home Loans has never conducted business, hasn't -- it was

9    formed in that -- I know it was never -- hasn't done

10   anything.

11        Q.    Any contracts with Armour Debt Collections,

12   LLC?

13        MR. JONATHAN HANLEY:  No, and the same applies to

14   Armour Debt Collections as American Home Loans.

15        Q.    Any contracts with Preferred Legal, LLC?

16        MR. JONATHAN HANLEY:  No, and the same applies as

17   the previous two.

18        Q.    So if I understand sort of the dialogue that

19   you had with your attorney a moment ago, you're generally

20   operating Modification Review Board under the contract

21   you've entered into with Brown Legal and your father.

22        MR. JONATHAN HANLEY:  That's correct.

23        Q.    And is it your understanding that you have

24   the right to purchase ownership of the company from your

25   father?

                                                        18

1     MR. JONATHAN HANLEY:  That's correct.

2        Q.    And the price is his investment plus twenty

3   percent simple interest?  Is that your understanding?

4        MR. JONATHAN HANLEY:  Correct.

5        Q.    And how much is his investment?  Do you know?

6        MR. JONATHAN HANLEY:  I would guess as of now a

7   buyout would -- I mean it would be well over $2,000,000.

8        Q.    And is that money that he put in up front or

9   he's put into the company over time?

10       MR. JONATHAN HANLEY:  Over time.

11       Q.    Do you know what he put in as a start-up

12  initially?

13       MR. JONATHAN HANLEY:  Boy, I sure -- I'd be

14  guessing, but I know it's over a hundred thousand.

15       Q.    Let's turn to the last page of that packet.

16       MR. JONATHAN HANLEY:  The last page of the

17  agreement or the --

18       Q.    The last page of the packet, I believe.

19       MR. JONATHAN HANLEY:  Okay.

20       Q.    And that's the page entitled Compensation

21  agreement between Phillip Hanley and Jonathan Hanley.

22       MR. HOFMANN:  It's the second-to-last page, if I'm

23  not mistaken.

24       MR. JONATHAN HANLEY:  Oh, sorry.

25       MR. HOFMANN:  I have a page after that.

                                                    19

1        MR. JOHNSON:  You do?

2        MR. HOFMANN:  Uh-huh (affirmative).

3        MR. JOHNSON:  Which one is that?

4        MR. HOFMANN:  That's the statement that he made

5  about the production of documents.

6        MR. JOHNSON:  Oh.  It's separate on mine.  Thanks

7  for clarifying.  I'll add that to the back of mine.

8        Q.   So the second-to-the-last page of the packet

9  is Compensation agreement between Phillip Hanley and

10  Jonathan Hanley?

11        MR. JONATHAN HANLEY:  Yes.

12        Q.   And tell me about that document.

13        MR. JONATHAN HANLEY:  So as discussed earlier, my

14  wife and I found ourselves between a rock and a hard

15  place with respect to where we were going to be able to

16  live, and, you know, my dad helped me out, obviously.

17        Q.   So you don't pay him that rent then, do you?

18        MR. JONATHAN HANLEY:  No.

19        Q.   And the amount of the rent is considered to

20  be compensation for the services that you provide for

21  Modification Review Board?

22        MR. JONATHAN HANLEY:  Yeah.

23        Q.   And you said that your father owns this

24  property; is that correct?

25        MR. HOFMANN:  Who's the owner of the property?

20

1          MR. JONATHAN HANLEY:   The owner is AM Property, and

2     he owns AM Property.

3          Q.    (BY MR. JOHNSON)   Okay.   Do you have any

4     ownership in AM Property?

5          MR. JONATHAN HANLEY:   No.

6          Q.    Please turn to the last page.

7          MR. JONATHAN HANLEY:   Okay.

8          Q.    And this page is entitled Statement of

9     Jonathan Hanley in connection with outstanding Request

10    for Production of Documents?

11         MR. JONATHAN HANLEY:   Yes.

12         Q.    So it's correct that you have not prepared

13    returns for 2009, '10, '11, and '12?

14         MR. JONATHAN HANLEY:   That's correct.

15         Q.    And it's your testimony that a flood

16    destroyed a number of documents when you lived in

17    Illinois?

18         MR. JONATHAN HANLEY:   Yes.

19         Q.    Okay.   Where did you live in Illinois?

20         MR. JONATHAN HANLEY:   We lived in Elmhurst.

21         Q.    And when did you leave Illinois?

22         MR. JONATHAN HANLEY:   We moved to Utah in March of

23    2010.   We still left our furniture and things like that.

24    We rented a furnished basement apartment in somebody's

25    house here, and when it appeared as though I had secured

                                                          21

1     employment, we went back in August of 2010 and got a

2     moving truck, so I guess we tested the waters in March,

3     and it was official in August of 2010.

4           Q.     And was the home in Illinois a home or an

5     apartment?

6           MR. JONATHAN HANLEY:  It was a home.

7           Q.     Did you own it?

8           MR. JONATHAN HANLEY:  Yes.

9           Q.     Did you have insurance on it?

10         MR. JONATHAN HANLEY:  I believe our lender had

11    taken out a forced place policy.

12         Q.     And did you file a claim for the flood?

13         MR. JONATHAN HANLEY:  No.

14         Q.     How much was damaged in the flood?

15         MR. JONATHAN HANLEY:  There was probably two feet

16    of water in the basement, so . . .

17         MR. HOFMANN:  What stuff was lost in the flood?

18    Could you describe that for him?

19         MR. JONATHAN HANLEY:  Lots -- lots and lots and

20    lots of receipts, records, you know, personal --

21    miscellaneous personal property.

22    Basement was only partially finished, so we didn't have

23    too much furniture down there.

24         Q.     (BY MR. JOHNSON)  The third paragraph, it

25    says that you were unable to produce business records

22

1  because you're not the owner of the underlying business.

2  Is that correct?

3      MR. JONATHAN HANLEY:  Uh-huh (affirmative).

4      Q.    And it says that you -- and it's your

5  testimony that you don't have authority to produce the

6  documents?

7      MR. JONATHAN HANLEY:  Yes.

8      Q.    What's the basis for that statement?  Just

9  your understanding of why you can't produce those

10  documents, in your own words.

11      MR. JONATHAN HANLEY:  My dad said I don't have

12  permission to tender those documents.

13      Q.    When did he say that?

14      MR. HOFMANN:  And you'll render instruction from

15  Michael Johnson on this point, who I believe does

16  represent the businesses.  I think you're asking really

17  him for a legal conclusion.  You're entitled to ask his

18  understanding, absolutely, but I think it's a legal

19  conclusion whether he's authorized or not authorized, and

20  we have a statement from Mike Johnson on the record on

21  that point.

22      MR. JOHNSON:  So is that an objection then, or is

23  it just --

24      MR. HOFMANN:  He has -- Michael Johnson -- I mean

25  if you want to seek discovery of an entity, obviously you

                                                    23

1   need to proceed by way of a subpoena to that entity in a

2   30(b)(6).

3        MR. JOHNSON:  I understand.

4        MR. HOFMANN:  You haven't sought that.  You've

5   sought discovery through the debtor, which you're

6   absolutely entitled to.

7        Q.   (BY MR. JOHNSON)  So can I -- could you

8   please answer the question of what's your understanding

9   of why you can't -- I think my last question is:  When

10  did your father tell you not to produce the documents?

11       MR. JONATHAN HANLEY:  You know, we've --  this has

12  obviously been a subject that we've been discussing for

13  the last several months, so I mean I would say

14  definitively at some point in the last ninety days.

15       Q.   Okay.  Could you turn back to Page 2 of the

16  Hanley business agreement?  And if actually you'll look

17  at maybe Page 1, Paragraph 3.

18       MR. JONATHAN HANLEY:  Okay.

19       Q.   It says, "In his exclusive discretion,

20  Phillip may assist with managing the business in such

21  capacity as he desires."

22       MR. JONATHAN HANLEY:  Uh-huh (affirmative).

23       Q.   "Jonathan shall be the active and

24  listed business -- active and listed manager of the

25  business at all times.  Jonathan shall devote full time

                                                        24