DAVID C. SHONKA
Acting General Counsel
ADAM M. WESOLOWSKI
GREGORY A. ASHE
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20850
Telephone: 202-326-3068 (Wesolowski)
Telephone: 202-326-3719 (Ashe)
Facsimile: 202-326-3768
Email: awesolowski@ftc.gov, gashe@ftc.gov,

STEVEN W. MYHRE
Acting United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Facsimile: (702) 388-6787

Attorneys for Plaintiff

UNITED STATES DIS
DISTRICT OF

**2:18-cv-00030-GMN-PAL**

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

CONSUMER DEFENSE, LLC, *et al.*,

    Defendants.

**FTC'S EXHIBITS IN SUPPORT OF ITS *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF RECEIVER, AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**FILED UNDER SEAL**

**VOLUME 7**

Page 1 of 3

1
2
3

**TABLE OF EXHIBITS**

4

**Volume 1**

5

Declaration of Adassa Brown ............................................................................... PX01

Declaration of Donna Brundage ........................................................................... PX02

Declaration of Ecco Debnam ................................................................................ PX03

Declaration of Karyn Evert ................................................................................... PX04

Declaration of Stephanie Frierson ........................................................................ PX05

Declaration of Patrick Garrett .............................................................................. PX06

Declaration of Jason Jones ................................................................................... PX07

Declaration of Richard Latimer ............................................................................ PX08

**Volume 2**

Declaration of Joseph Parma ................................................................................ PX09

Declaration of Dennis Peterson ............................................................................ PX10

Declaration of Genevieve Podoski........................................................................ PX11

Declaration of Stefan Prince ................................................................................. PX12

Declaration of Lori Schulz.................................................................................... PX13

**Volume 3**

Declaration of Terri Riley ..................................................................................... PX14

Declaration of Timothy Goss................................................................................ PX15

Declaration of Wanda Jackson.............................................................................. PX16

Declaration of Matthew Wilson............................................................................ PX17

Declaration of Sheri Charnock.............................................................................. PX18

Declaration of Timothy James .............................................................................. PX19

Declaration of Elizabeth Feldstein ................................................................................ PX20

   Declaration – Attachment C, pages 1 - 66

### Volume 4

   Attachment D – Attachment X, part 1, pages 67 - 317

### Volume 5

   Attachment X, part 2 – Attachment Z, part 1, pages 318-568

### Volume 6

   Attachment Z, part 2 – Attachment DD, part 1, pages 569 - 819

### Volume 7

   Attachment DD, part 2 – Attachment GG, pages 820 - 1074

### Volume 8

   Attachment HH – Attachment PPP, pages 1075 - 1341

### Volume 9

Declaration of David Aguayo ....................................................................................... PX21

Declaration of Jennifer Yadoo ..................................................................................... PX22

   Declaration – Attachment C part 1, pages 1 - 217

### Volume 10

   Attachment C part 2 – Attachment P, pages 218 - 465

### Volume 11

   Attachment Q – Attachment CC, pages 466 - 563

Declaration of Renee Crawford ................................................................................... PX23

Declaration of Nathaniel Al-Najjar .............................................................................. PX24

Supplemental Declaration of Jennifer Yadoo ............................................................. PX25

Supplemental Declaration of Elizabeth Feldstein ....................................................... PX26

# EXHIBIT 20

# DECLARATION OF ELIZABETH FEDLSTEIN
# ATTACHMENT DD (continued)

```
 1   work for both?
 2        A.    No.
 3        Q.    What is a senior intake advisor?
 4        A.    Someone I guess that would take the
 5   client's information.
 6        Q.    What advice is she giving; do you know?
 7        A.    No, I don't know.
 8        Q.    Would it be any kind of legal advice?
 9        A.    I don't know.  I'm not the manager of
10   Modification Review Board.
11        Q.    So she didn't work for you?
12        A.    No.
13        Q.    And then the next one is Candace Davies.
14   It says requested law documents.  Candace Davies.  Who
15   is she?
16        A.    Someone, I believe, that worked with us at
17   one time.
18        Q.    She worked for Preferred Law?
19        A.    More a part of, I guess, the team American
20   Home Loan Counselors/Preferred Law.  But she was under
21   the supervision of American Home Loan Counselors, if I
22   remember correctly.
23        Q.    It says her e-mail address is Preferred-
24   Lawteam.com.
25        A.    Uh-huh (affirmative).
```

1        Q.    So doesn't that represent to people that
2   she works for Preferred Law?
3        A.    I would say it represents she works for
4   the Preferred Law team.
5        Q.    Okay.  But you already said there was no
6   Preferred Law team.
7        A.    I said it was American Home Loan
8   Counselors and Preferred Law, what I would consider the
9   Preferred Law team.
10       Q.    But they don't work at Preferred Law or
11  for Preferred Law.
12       A.    No.
13       Q.    And then it says, "I am your paralegal
14  assigned to your case."  Is she a paralegal?
15       A.    Sure.
16       Q.    Do you know that for sure?
17       A.    Well, she would deal with these legal
18  matters, and we use the term kind of broadly.
19       Q.    Did you pay her for her work?
20       A.    Yeah.  I mean, her work, yeah.  It was
21  paid for.
22       Q.    So you would have her billable hours that
23  she would give to you and you would have some
24  documentation that you paid her?
25       A.    We didn't deal with billable hours.

```
1          Q.     How was she paid?

2          A.     Salary, I'm sure.

3          Q.     For paralegal services?

4          A.     Uh-huh (affirmative).

5          Q.     What's her salary?

6          A.     I don't know.  I don't recall.

7          Q.     Did you fill out a W-2 for her?

8          A.     No.

9          Q.     But she is a salaried employee of

10   Preferred Law?

11         A.     No.

12         Q.     Or was?

13         A.     No.

14         Q.     Okay.  And you don't know whether she

15   really has a paralegal certificate or not, right?

16         A.     No.

17         Q.     And on the next page she claims to be a

18   processor and works for Preferred Law.  Do you see

19   that?

20         A.     Which page?

21         Q.     Just the very next page.

22         A.     Uh-huh (affirmative).

23         Q.     Okay.  But she didn't work for Preferred

24   Law, did she?

25         A.     Well, no.  She worked for American Home
```

1   Loan Counselors.

2          Q.    Okay.  Is there any reason why she would

3   say that she worked for Preferred Law instead of

4   American Home Loan Counselors?  What's wrong with just

5   saying that?

6          A.    Initially the difficulty with it was the

7   clients became confused.  So there were times when they

8   would be like, "Wait a second.  Am I talking to

9   Preferred Law, American Home Loan Counselors?"  And so

10  at some time they were able to say, "We are with

11  Preferred Law," based on the idea that I'm supervising

12  their work.  But since then, it would say American Home

13  Loan Counselors.

14         Q.    Okay.  You said earlier you didn't

15  supervise any of these people.

16         A.    This is American Home Loan Counselors, and

17  I do act as a supervisor.  But I'm not listed as a

18  manager.  I have access to all the notes.  They come to

19  me with the questions.  I maintain a satellite office

20  there.  So those things, yes.

21         Q.    But this wasn't accurate because she

22  wasn't an employee of Preferred Law.

23         A.    No.

24         Q.    Let's look at the next one.  This is on

25  Eric Trager's case.  Shannon Martinez, was she an

1   employee of Preferred Law?

2       A.    She was very closely associated with

3   Preferred Law, and if I recall I would say yes, that

4   she is probably -- I don't pay her W-2, but she is what

5   I would consider an employee of Preferred Law.

6       Q.    How was she an employee if you don't pay

7   her?

8       A.    Because she is like my -- she does a lot

9   of work for me.  I work with her on a near daily basis.

10      Q.    But she gets paid by someone else?

11      A.    Yes.

12      Q.    Who is that entity?

13      A.    It would be through American Home Loan

14  Counselors.

15      Q.    So she gets paid my American Home Loan

16  Counselors but she represents here that she is a

17  manager at Preferred Law.

18      A.    Yeah.  Sure.  I would still allow her to

19  use that designation.

20      Q.    Even though she is not an employee or a

21  manager at Preferred Law?

22      A.    Well, I would call her a manager.

23      Q.    At Preferred Law?

24      A.    Yes.

25      Q.    Where you said you have no employees; it

1    was just you?

2          A.      Well, technically no employees.  But she

3    has my full authorization to act on my behalf.

4          Q.      All right.  Let's go to the next one.

5    This is a letter from Deanne Mosher, and I think you

6    said she worked for Modification Review Board, right?

7          A.      Yeah, I believe so.  I don't recall.

8          Q.      And again here it says, "Preferred Law -

9    Authorization."  Can you explain that?

10          A.      She had the paperwork for her to sign,

11    that she was sending the paperwork over to the client

12    for them to fill out.

13          Q.      Okay.  And then she represents to

14    Mr. Trager that once the forms are filled out, they

15    will start immediately on the modification, "Which will

16    protect you from your lending foreclosing or harassing

17    you in any way."  Do you see that?

18          A.      Yes.

19          Q.      Did you authorize that statement?

20          A.      No.

21          Q.      Do you know who did?

22          A.      No.

23          Q.      Is this a form letter that is sent to

24    everyone?

25          A.      I don't think so.

1        Q.    Have you ever seen this letter before?

2        A.    I don't think so, no.

3        Q.    So you had nothing to do with this?

4        A.    No.

5        Q.    Okay.  And she is a senior intake advisor,

6   not at Preferred Law, right?

7        A.    No.

8        Q.    So then the next one is a Preferred Law

9   paper, right?  So this came from your office, right?

10       A.    Sure.  Yeah.

11       Q.    Okay.  And it talks about an explanation

12  of the retainer agreement and the fees that are going

13  to be charged, right?

14       A.    Uh-huh (affirmative).

15       Q.    Do you do that personally with the clients

16  or borrowers; do you talk to them about what the

17  agreement is with them?

18       A.    No.  Shannon or Bobbi would probably

19  explain it to them.

20       Q.    Have you ever explained one to any client?

21       A.    A couple, yeah.

22       Q.    Who would that be?

23       A.    I don't recall.

24       Q.    None of the three that are involved in

25  this case, right?

1          A.      No.

2          Q.      And it says, "Under Utah law we are

3    required to disclose the cost of services."  And I'm

4    assuming you mean legal services, right?

5          A.      Uh-huh (affirmative).

6          Q.      Because it is Preferred Law.  So what

7    statute requires you to disclose the cost of legal

8    services?

9          A.      I would say the Rules of Professional

10   Conduct do.

11         Q.      Okay.  But there's not a law --

12         A.      I don't know if you would call it a law.

13   I didn't write this.  She wrote it.  It's not one of

14   those things that would cause a huge issue between

15   whether it's a law or Rules of Professional Conduct.

16         Q.      Okay.  I'm just wondering.

17         A.      Okay.

18         Q.      I just wondered about that.  So you had

19   nothing to do with preparing this document?

20         A.      No.

21         Q.      Or reviewing it?

22         A.      Well, you know, she writes quite a bit of

23   the documents on my behalf.  So I don't review all of

24   them, no.  I didn't review this.

25         Q.      Did you supervise the sending of these --

1          A.     Yes.  I would stand behind anything she
2    said.
3          Q.     Okay.  It says, "The modification is
4    broken down into four phases."  What does that mean?
5          A.     It's kind of outlined there in the fee
6    agreement.  But I really can't just recall it off
7    memory, how it's broken down.
8          Q.     Okay.  Well, if you understand what you're
9    doing, in doing modifications, you would probably --
10         A.     I'm not doing modifications.
11         Q.     You're not doing any of this work?
12         A.     Not the modification work, no.
13         Q.     Okay.
14         A.     But the modification work would come from
15   American Home Loan Counselors.  The phases or whatever
16   you want to call it, maybe that's just a way to make it
17   more easily understood by the client, I guess.
18         Q.     So the cost of each phase is $974, right?
19   You see that?
20         A.     Correct.
21         Q.     Did you have anything to do with setting
22   the costs for these --
23         A.     Yes, I did have input on setting up the
24   fees on how much we are going to charge for this.
25         Q.     For each phase?

1          A.    Yes.

2          Q.    Even though you don't know what the phases

3    are?

4          A.    I didn't say I don't know what they are. I

5    just couldn't recall them offhand.

6          Q.    Okay.  So that money would come to your

7    office, Preferred Law --

8          A.    Sure.  Yes.

9          Q.    -- for legal services.

10         A.    Uh-huh (affirmative).

11         Q.    Correct?

12         A.    Yes.

13         Q.    All four phases?

14         A.    Yes.

15         Q.    Okay.  So the modification is included in

16    the legal services?

17         A.    No.  We don't perform modifications, so

18    it's not -- essentially the modification is performed

19    without cost to the client.

20         Q.    Without cost?

21         A.    Yes.

22         Q.    So what are they paying for?

23         A.    For my services as a lawyer.

24         Q.    And what did you do for them?

25         A.    Submit the qualified request, review the

1    documents.  As I explained before.

2        Q.    Do you have billable hour charts that we
3    could see?

4        A.    No.  We don't do it by that.  It's more of
5    a flat fee arrangement.  I mean, we could hire billable
6    people to keep track of it all, but it just adds more
7    cost.

8        Q.    What's the flat fee for your personal
9    legal services?

10       A.    About $4000, typically.  It's
11   approximately about $4000.  Sometimes it's less.
12   Sometimes it's going to only be $2000.  Sometimes it's
13   $4000.  And then if it continues beyond, like it starts
14   getting where they -- for whatever reason it's one of
15   those cases that drags on because the bank or whatever
16   issue is going on with the client, then there will be
17   an additional -- something like $250 a month or
18   something that continues.  Continuity payments.

19       Q.    What does that cover?  What kind of legal
20   services?

21       A.    The continued work that I'm still
22   reviewing the file.

23       Q.    So you're ongoing, all these phases,
24   ongoing review of the file?

25       A.    Yes.

CITICOURT, LLC
(801) 532-3441

PX20 - 830

Benjamin Horton  *  June 1, 2016                    62

1          Q.     And you charge $4000 for that?

2          A.     From the beginning to end, pretty much,

3   yes.

4          Q.     Would you be able to break that down on

5   your actual work that you do on these cases and what

6   your billable hourly rate would be?  Even on flat fees

7   you have to do that, because you have to justify the

8   fees as being reasonable.

9          A.     Well, I think this fee is reasonable.  But

10  I don't think I have to --

11         Q.     What makes it reasonable?

12         A.     Find someone cheaper.

13         Q.     What work are you doing?  What legal work

14  are you doing for clients that makes $4000 that they

15  pay to you reasonable?  That's all I'm asking.

16         A.     Because, first of all, our success rate.

17  We are better than anybody.

18         Q.     Okay.  So sometimes we use outcome as a

19  factor.

20         A.     And so our expertise, our contacts, the

21  people that we have, enable us to -- enable that

22  modification to take place better than anybody.  But I

23  would add on that cost the fact that we are dealing

24  with a very regulated and unfriendly atmosphere.  There

25  have been a lot of bad businesses, a lot of them.  And

1   so what they have caused is a very sour taste against

2   our field of work.  And so I would say that includes

3   the fact that we are going to have to give a lot more

4   money back than most lawyers.  We are going to get a

5   lot more complaints than most lawyers.  So yeah, I

6   think you calculate all those factors in, I think the

7   $4000 is reasonable.

8        Q.    So the fact that you might have to give

9   somebody a refund for services, you calculate that into

10  your fee?

11       A.    Yeah.  Because, unfortunately, they can

12  make -- there are too many regulatory agencies they can

13  go to.  And it makes it very hard, the -- they have

14  fifty attorney general offices that enforce, you know,

15  no modification charges that they can complain to.  And

16  what happens when they complain, then I have to deal

17  with all those and face potentially -- been able to win

18  so far.  But face, potentially, individual liability

19  costs on these type of things.  So I would say that's

20  one of the factors.

21           We are dealing with -- if you can imagine

22  the worst clients, ours are the worst; the ones that

23  complain the most, the ones that will figure out ways

24  to try to cheat out of paying their bills the most.  We

25  have those clients.  It's like a bankruptcy attorney

1   who would operate under a "pay me once you can" type of

2   arrangement.  It is just not going to happen very well.

3        Q.    Okay.  Some of the reasonableness factors

4   we have covered.  But usually there's -- the one that

5   we mainly look at is what work did you actually do.

6   And the way you show that, at least to our office, is

7   by billable hour statements, invoices that are sent

8   detailing what work is done, and how much the person is

9   going to have to pay.  Or even correspondence that you

10  personally sent out; if you have appeared in court; if

11  you have talked to the person in your office.  Do you

12  have anything that shows any work that you personally

13  did on these cases?

14       A.    No.  I didn't know the rules required

15  that.

16       Q.    Okay.

17       A.    Maybe you do, but I didn't know the rules

18  did.

19       Q.    Okay.

20       A.    And if they do require it, I would

21  institute it that all those things are tracked.  But

22  unfortunately it's one of those things where you try to

23  keep costs low.  When you deal with a lot of clients,

24  it's cumbersome and requires you to hire more people to

25  do that.

1     Q.    Do you understand that flat fees need to
2  be put into the trust account until they are earned?
3     A.    I understand the trust account rules, yes.
4  But these fees have always been earned immediately.
5     Q.    How are they earned immediately?
6     A.    Because we start the work immediately.  I
7  mean, we submit the QWR immediately, usually before
8  they even hand us a payment.  So it's for services as
9  they are being performed.
10    Q.    Okay.
11    A.    Fees earned.
12    Q.    But you can't show us what services are
13 being performed or have been performed by the time you
14 receive the money, can you?
15    A.    No.  I don't keep track of those hours.
16    Q.    Okay.  Shannon Martinez says she is a
17 paralegal.  Is she really a paralegal at your firm?
18    A.    Yeah.  She handles a lot of legal matters.
19    Q.    At your firm?
20    A.    Yeah.
21    Q.    She works for you?
22    A.    She is not technically an employee, but
23 yeah, I work with her on a near daily basis.
24    Q.    So "technically" meaning you pay her from
25 your firm and she is an employee.  But she is not.

Benjamin Horton  *  June 1, 2016                66

```
 1        A.    No.
 2        Q.    Okay.  Do you know if she is a paralegal
 3   for sure?
 4        A.    I would consider her a paralegal.
 5        Q.    Have you ever seen her paralegal
 6   certificate?
 7        A.    I didn't know you had to have a paralegal
 8   certificate to call yourself a paralegal.
 9        Q.    Who does she work for?
10        A.    American Home Loan Counselors would
11   probably be her primary one.
12        Q.    Okay.  Jenna Adams, do you know who she
13   is?
14        A.    I don't recall.
15        Q.    Does she work for Preferred Law
16   technically?
17        A.    She is probably one of the advisors.  We
18   have a lot of advisors, people that do the day-to-day
19   work for American Home Loan Counselors.  So she was
20   probably one of those.
21        Q.    Okay.  So who answers e-mails at
22   PreferredLawteam.com?  Where do those go?  Where do
23   they come into so that somebody can respond?  Is that
24   your office?
25        A.    Yeah.
```

1      Q.    You answer those?

2      A.    It doesn't come to me.  I would assume

3  Bobbi, but I actually don't know.  I don't know

4  offhand.

5      Q.    Okay.  So how would Jenna get that e-mail

6  if she doesn't work for the Preferred Law team?

7      A.    Well, it's how her e-mail is set up.

8      Q.    So they just use your name and set it up

9  so it kind of looks like they work for Preferred Law?

10      A.    They just use the Preferred Law Team.

11  Like I said, it's kind of a combination effort between

12  Preferred Law and American Home Loan Counselors.  I

13  think that word "team" kind of states that.

14      Q.    Okay.  And then it states down there in

15  the first paragraph, "The original package we received

16  at Preferred Law," so meaning she is representing to

17  Cindie that she works at Preferred Law, right?  Do you

18  see that?

19      A.    I think it speaks for itself.

20      Q.    Yeah.

21      A.    You can interpret it any way you want.

22      Q.    She is representing that she works at

23  Preferred Law, isn't she?

24      A.    That's your conclusion.  I would say no.

25      Q.    Do you think a client would say that when

1    they see this?  "The original package we received at

2    Preferred Law."  Don't you think the client might think

3    that?

4          A.    A lot of that has been cleaned up where

5    they understand, you know, that they are coming from

6    American Home Loan Counselors.  There was,

7    unfortunately, quite a bit of confusion as we were

8    setting these up that made it into the minds of some of

9    the representatives at American Home Loan Counselors,

10   and it angers me that I see that, and it shouldn't have

11   happened.  But most of that has been cleaned up now,

12   and it doesn't happen.

13          But in that case I still think "the

14   Preferred Law team" was broad enough to entail that we

15   were going to be working with American Home Loan

16   Counselors and other entities, as it was stated in the

17   fee agreement.

18          Q.    Okay.  Let's look at the next document.

19   And my only question on this is it says up at the top

20   that there's a billing department at Preferred Law.  Is

21   there actually a billing department at Preferred Law?

22          A.    Yeah.  We have a couple people in charge

23   of billing or something.

24          Q.    At your office, Preferred Law office?

25          A.    Well, I don't pay them a W-2 but I can --

1    yeah, they handle all the payments.

2         Q.    Who do they really work for, though?

3         A.    Their W-2 would probably come from

4    Modification Review Board.

5         Q.    The next document, I was curious because

6    at the bottom it says "2016 Preferred Law Team."  So

7    are you still representing to people there's a

8    Preferred Law team?

9         A.    Yeah.

10        Q.    Okay.  All right.  The next one is a

11   Modification Review Board, and this is a letter that

12   was in September to Eric Trager.

13        A.    I'm at the end of my document.

14        Q.    I'm sorry.  It's the next exhibit.

15             MR. SACKETT:  Can we take a short break?

16             MS. TOWNSEND:  Yeah.

17             (Break taken from 11:28 to 11:30 a.m.)

18             (EXHIBIT 4 WAS MARKED.)

19        Q.    This is Exhibit 4.  So this is a document

20   from Modification Review Board that was sent to your

21   client, Eric Trager, right?

22        A.    Yes.

23        Q.    And he was a client of yours and Preferred

24   Law, right?

25        A.    Yes.

1      Q.     And it says, "Modification Review Board
2  guarantees that a modification will be secured for you
3  conditioned upon the following."  Did you know that
4  Modification Review Board was guaranteeing that?
5      A.     I found out shortly after this about this
6  letter that was going out, and I demanded that it stop.
7  But I will stand behind it, so to speak.  But this was
8  what Jonathan Hanley wrote.
9      Q.     Okay.  But you talked to him about it?
10     A.     (Witness nods head up and down.)
11     Q.     Okay.  And it says Jonathan Hanley,
12 general manager, Modification Review Board.  Is that
13 what he is over there?
14     A.     Sure.
15     Q.     Okay.  Just by the way, does he do payroll
16 for Modification Review Board and for American Home
17 Loan Counselors?
18     A.     Yes.  His wife.
19     Q.     And does he also do the payroll for you?
20     A.     Yes.
21     Q.     So he pays you, right?
22     A.     Yeah.
23     Q.     And you submit to him something saying, "I
24 did this amount of work," or, "I worked on these
25 cases"?

Benjamin Horton  *  June 1, 2016                    71

1        A.     It's all verbal.  He knows which clients
2   we have.
3        Q.     He brings the clients in and --
4        A.     Because he helps manage American Home Loan
5   Counselors, so he is there on a daily basis.
6        Q.     Okay.  Does he send you the same amount of
7   money every month?
8        A.     Yes.
9        Q.     Or is it weekly?
10       A.     Weekly.  Like I said, it's about $2000 a
11  week.
12       Q.     And he just sends you that flat out?
13       A.     Yes.
14       Q.     Do you submit a W-4 so that he can take
15  taxes out of that?
16       A.     I'm not an employee.  No.
17       Q.     Okay.  So is it --
18       A.     It's an independent contractor basis.
19       Q.     Okay.  So you have a 1099 at the end of
20  the year?
21       A.     Yes.
22       Q.     And he does that from Modification Review
23  Board?  Is that who is hiring you?
24       A.     You keep saying Jonathan.  It's more
25  Sandra.

1       Q.    But that would be the company that's
2   paying you, Modification Review Board?
3       A.    Yes.  It's just how we started it off, and
4   it has kind of continued that way.  I wonder if that's
5   not the best way to do it, but it works right now.
6   Maybe it could be cleaned up.
7       Q.    Okay.  Let's go to the next one which is
8   the same letter but sent on Preferred Law letterhead.
9   You see that?
10      A.    Yes.
11      Q.    Did you approve this?
12      A.    No.
13      Q.    Draft this?
14      A.    No.
15      Q.    Have anything to do with this?
16      A.    No.  But again, I will stand behind it.
17  But no, I didn't.
18      Q.    And it's another guarantee of a
19  modification.
20      A.    Yeah.
21      Q.    And this one was sent to the Dodds.
22      A.    Yes.
23      Q.    In Tennessee, right?
24      A.    It appears so, yes.
25      Q.    Okay.  And it says here Jonathan Hanley,

1    general manager of Preferred Law.

2         A.    Yeah.

3         Q.    Did you know he was representing to people

4    that he was Preferred Law?

5         A.    No.

6         Q.    Did it shock you when you found out?

7         A.    But, I mean -- yes, I was very angry and

8    we got that changed.  But in this case, he is an office

9    manager at Preferred Law.  It's just this was not what

10   we should have done, so ...

11        Q.    So he is the office manager for Preferred

12   Law?

13        A.    Yeah.  I consider him an officer manager,

14   yes.

15        Q.    But he does it from the Modification

16   Review Board company, right?  I mean, he doesn't fill

17   out paperwork for Preferred Law as far as tax things?

18        A.    No.

19        Q.    And a general manager managing your --

20        A.    No.  I'm the owner/manager of Preferred

21   Law, but I also consider him as a lower level manager.

22        Q.    Of your law firm?

23        A.    Yeah.  Law office.

24        Q.    Okay.  So the next one is the fee and

25   representation agreement.  I just want you to take me

1   through this a little bit.  I'll ask you a few

2   questions.  I think I already asked this but it says --

3   and this is a fee agreement for legal fees, right?

4        A.    Correct.

5        Q.    Legal services.

6        A.    Yes.

7        Q.    With your law firm, right?

8        A.    Yes.

9        Q.    And then you say down here, "In

10  consideration of the promises and covenants of the

11  parties to this Agreement, the above-named borrower,"

12  known as "borrower," "and Preferred Law hereby agree as

13  follows."  Why would you say "borrower" instead of

14  "client"?

15       A.    It might have been changed by now, but we

16  just used "borrower" because that was how the banks

17  understood them, as the borrower.  That's how they

18  always referred to them.  So that verbiage was

19  initially used.  I didn't see an issue with it.  It's

20  just how they were referred to.

21       Q.    Why would the banks ever see this document?

22       A.    They wouldn't.  It's just how the -- it's

23  just how -- you know, yeah, it doesn't make -- I don't

24  have a great explanation.  It's just one of those

25  things I overlooked when drafting this.  In the other

1   agreement I probably pulled it from the authorization

2   agreement, pulled the language or something, and didn't

3   really change the names.  Maybe that's why I did it.  I

4   don't recall.

5          But on the one it's an authorization and

6   there they are known as the borrower, and that is seen

7   before the bank.  Here I might have said, "I'll go with

8   the same language and use 'borrower' again."  But in

9   retrospect maybe, that should be "client."

10       Q.    You used fee agreements in your work

11  before you started doing loan modification, right?

12       A.    Yes.

13       Q.    And it was always a client/attorney

14  agreement?

15       A.    Yeah.

16       Q.    Okay.  In paragraph number one, at the

17  last line of that first paragraph, it says, "All fees

18  will be charged monthly but will never exceed the

19  amount chargeable for work that has already been

20  completed by Preferred Law."  What does that mean?

21       A.    It means that the fees have to be earned.

22       Q.    Well, how would you know that if you are

23  just billing people monthly --

24       A.    Well --

25       Q.    -- a set amount.  How would you know how

Benjamin Horton  *  June 1, 2016                76

```
 1    much work --
 2          A.    To me the biggest fee that we have is
 3    submitting the qualified written request and taking on
 4    the representation.  By doing that, that's kind of one
 5    of the primary things they are paying for.  And since
 6    that is done at the beginning, it is more they are just
 7    paying for past services.  But the continued services,
 8    they still go on.  But the most billable things happen
 9    right at the beginning.
10          Q.    So why don't you take the whole $4000 and
11    put it in your operating account?
12          A.    It's easier for clients to not come up
13    with a lump sum.  It just seemed easier.
14          Q.    Okay.  But you wouldn't be able to say
15    what exactly -- what work was done exactly that month
16    that they are paying for?
17          A.    No.  Other than when the qualified written
18    request was sent off.  And those things are tracked,
19    but my personal billable hours are not.
20          Q.    How many hours does it take to do one of
21    those qualified documents?
22          A.    Not much.  It's more of a standard form.
23          Q.    Okay.  So give me a ballpark:  An hour to
24    draft that up and mail it off?
25          A.    Sure.  An hour.
```

CITICOURT, LLC
(801) 532-3441

PX20 - 845

1         Q.     Okay.  What's your billable hour rate?

2         A.     I don't maintain one.

3         Q.     What was it before you started doing this

4    kind of work?

5         A.     Approximately $200, $225.

6         Q.     Do you think that's what you're worth now?

7         A.     Well, it depends.  I mean, how I came up

8    with the services was based on how much work goes into

9    it with respect to like a probate.  My last office

10   where I worked with Ms. Canning, we charged $4000 for a

11   probate.  It's a similar amount of work that I'm

12   performing and it's with much more potential for crummy

13   clients to sue you.  So no.  That's how I judged how

14   much it would be worth is based on past probates.

15   Probate forms are very standard.  It takes me an hour

16   to prepare all the initial documents for filing a

17   probate.  Does that mean I can't charge $4000 for it?

18   I don't think so.

19        Q.     You personally would have met with that

20   client, though, and reviewed all of their estate

21   information, right?

22        A.     Generally.

23        Q.     Or Ms. Canning would have.

24        A.     Yeah.

25        Q.     One of you.

PX20 - 846

1          A.      Yes.

2          Q.      So what goes into that is reviewing all

3    those documents, you personally talking to the client,

4    and then drafting the appropriate forms.

5          A.      In this case reviewing comes later.

6          Q.      Okay.  So on the next page, the paragraph

7    that starts with "Preferred Law," it says, "Preferred

8    Law only represents the borrower with respect to his or

9    her federal rights."  What does that mean?

10         A.      You can't touch state law.

11         Q.      How would you explain that to a client?

12         A.      As it's stated here.

13         Q.      You think they would understand this

14   paragraph?

15         A.      I would think so, yeah.

16         Q.      Okay.  "Borrower acknowledges that

17   Modification Review Board, LLC and Preferred Law are

18   entirely separate entities."  You see that at the

19   bottom of that paragraph?

20         A.      Yeah.  I think I put it a couple places.

21         Q.      Yeah.  What does it mean?  Because they

22   are not entirely separate.

23         A.      They are entirely separate.  I didn't want

24   them to think that Modification Review Board and

25   Preferred Law are the same company.

1        Q.     Why not?

2        A.     Because they are not.

3        Q.     You said the Preferred Law team includes

4   all those people.

5        A.     I said American Home Loan Counselors, but

6   they are not the same company.  But that's why I

7   thought "team" seemed appropriate.

8        Q.     Modification Review Board pays you, pays

9   everything at Modification Review Board, pays the

10  people at American Home Loan Counselors, but you are

11  completely separate entities; is that what you are

12  saying?

13       A.     Yeah.

14       Q.     And this is an accurate statement?

15       A.     Yeah.  Legally it's accurate.

16       Q.     Well, explain that, because it seems like

17  what you are trying to do is get around some of the

18  statutes by doing this.  Because over here isn't it

19  true that Modification Review Board can do the

20  modification stuff, but the federal stuff has to be an

21  attorney and you have to keep it all separate with

22  that?

23       A.     No.

24       Q.     Okay.  Explain it to me.

25       A.     It's under the MARS statute.  Under MARS

1   only state law firms can perform modification work.  So

2   I understood that when I read it and it was like, "Wait

3   a second, we can't do any of this.  But what can we

4   charge for?  We can still provide some service here

5   that will be effective."  And that's where the

6   arrangement that we currently have came up with.

7           It's -- sure, there's laws that have been

8   drafted that say you can't do this service.  So we had

9   to say, "Well, what can we do?"  And so can we create,

10  through federal laws, can we create that atmosphere

11  that we can establish that a modification can take

12  place?  And my opinion, after reading through all the

13  laws and everything was that, yeah, we could do that.

14  In the end, it seems that some states disagree and some

15  states said it was okay.  Illinois said fine.  A lot of

16  the states said that was fine.  A few of them are

17  like -- they were angry about it.  They don't like the

18  idea that I figured out a way that we could charge a

19  service that they were hoping to ban altogether, so to

20  speak.

21          So yeah, they believe I figured out a way

22  that we could charge for a service.  I mean, if I could

23  come out and say, "We hereby charge you to do these

24  modifications," and all that stuff, I wouldn't have to

25  go through a lot of these hassles and things.  But we

1   had to set it up in a way that I could charge for

2   certain services.  And in that case, it has really hurt

3   our income, as well, because you can't go out there and

4   advertise that you do modification.

5        Q.    So the federal rights, what do you do to

6   protect somebody's federal rights?  What personally did

7   you do, what services did you provide to that client?

8        A.    You review the documentation.  It's more

9   about federal compliance with the modification

10  procedures.  And those are all federal laws.

11       Q.    So you would have billed for reviewing the

12  federal law on each one of these cases?

13       A.    Yeah.

14       Q.    Over and over and over again.

15       A.    No.  Reviewing their file to make sure

16  that everything is happening correctly with the lender.

17  They have to meet certain standards.

18       Q.    Like what?

19       A.    A whole slew, a whole bunch of things on

20  the notices that are required.  The information, the

21  numbers involved with obtaining a modification are all

22  based on federal laws.  Things like that.

23       Q.    Okay.  And how long does it take you to do

24  that analysis for one case?

25       A.    A couple of hours.

1      Q.      Okay.  So two hours.  And so you don't do

2  anything with those forms because those are state law,

3  right?  The forms that we just talked about, the

4  qualified filling out the forms.

5      A.      That's federal law.

6      Q.      How do you distinguish it?  You are

7  sending it to a bank.  How is that --

8      A.      It's only based on federal law.  It's not

9  a state request.  It's all required under federal law.

10     Q.      Okay.  But the loan modification stuff is

11 not federal law.

12     A.      Yes, it is.

13     Q.      Okay.  So tell me what the state part is

14 that you're not allowed to do.

15     A.      Charge for modifications.

16     Q.      So you're not charging for the

17 modification --

18     A.      Without a license.  Without a state

19 license.

20     Q.      You are charging for what?

21     A.      Federal legal services.

22     Q.      Which are what?

23     A.      Making sure everything happens in

24 compliance with federal law.

25     Q.      But anybody who is doing the modification

1    paperwork is fine to do that without a lawyer, without

2    you.

3         A.     As long as it's not charging the client.

4         Q.     Why can't they charge a client?

5         A.     That's where you run into state rules.

6         Q.     If you are an attorney in that state you

7    can do it, right?

8         A.     Yeah.  Actually, strangely enough, not

9    always, no.

10        Q.     But if I wanted to hire somebody in Utah

11   to help me with a foreclosure, they could do all that,

12   right?

13        A.     With a foreclosure?

14        Q.     With a modification.

15        A.     In Utah, yes.

16        Q.     They could do everything --

17        A.     But not in a lot of states.

18        Q.     But if I were to hire you and you were an

19   attorney that didn't have a license in Utah, you

20   wouldn't be able to do it and charge for it.

21        A.     No.

22        Q.     Okay.

23        A.     Not under MARS.

24        Q.     Okay.

25        A.     But not under -- the state statutes vary.

1          Q.     So what you did here was put in this
2     language for federal rights so you could charge for
3     something that you wouldn't be able to charge for
4     normally?
5          A.     I can charge for those -- you are
6     rewording it wrong.  I can charge for those federal
7     services.  I can legally federally create an atmosphere
8     in which that modification work can take place and be
9     effective.  So yes, I can charge for those.
10         Q.     Okay.  Let's read that next paragraph.  It
11    talks about the limited scope of the agreement.  So it
12    doesn't cover the commencement of actual litigation,
13    right?
14         A.     No.
15         Q.     Tell me what this paragraph means, because
16    I'm not following.
17                By the way, did you draft these retainer
18    agreements?
19         A.     Yes, I did.
20         Q.     Did Jonathan Hanley have anything to do
21    with this?
22         A.     He might have reviewed it.
23         Q.     Did he have one that he used from Compass
24    Law and from before?
25         A.     I might have used parts of -- I can't

1    recall.  It's been quite a few years.  But I might have

2    used part from a Compass Law agreement.  I don't

3    recall.

4         Q.    Okay.  Go ahead with explaining that

5    paragraph.

6         A.    It is what it is.

7         Q.    Okay.  It says, "Preferred Law litigation

8    attorneys are licensed to litigate in the states of

9    Utah and Texas," and it says "attorneys."  Are there

10   any other attorneys at Preferred Law?

11        A.    Well, at the time, Omar could have -- he

12   said he would probably be willing to work with us on a

13   part-time basis and stuff when that was drafted.  But I

14   should actually -- no.

15        Q.    This is on 1-15-2013.

16        A.    Yeah.

17        Q.    Okay.

18        A.    So it shouldn't say "S."  Probably should

19   change that until we get someone else hired.

20        Q.    Because you are the one in Utah and Texas,

21   right?

22        A.    Yes.

23        Q.    And then it says, "But may work with

24   co-counsel in other states in which affiliated

25   attorneys are present."  What does that mean?

1      A.    That we will work with -- if, for whatever

2   reason, we have to hire another lawyer, we will hire

3   them out.  We had affiliates at one time, not like

4   contractual affiliates but other attorneys that we can

5   call for state-related issues.

6      Q.    Do you know in what states you have

7   affiliates?

8      A.    I can't recall.  But the name of it -- we

9   belonged to a service that was kind of "of counsel"

10  service type situation.  It was some service that we

11  belonged to where we could find quick lawyers for doing

12  this type of service.

13     Q.    Okay.  Let's look at (d) on the next page.

14  Here it says, "Borrower agrees that Preferred Law makes

15  no guarantee.  In the event the Borrower breaches this

16  provision --"

17          MR. SACKET:  Where are we?

18          MS. TOWNSEND:  On (d) the next page.

19  Little D.

20     Q.    (By Ms. Townsend)  What does that mean?

21  Is that just with respect to the chargeback you make no

22  guarantee, or what does that mean?

23     A.    We were saying that we make no guarantee

24  of the effectiveness of the service.

25     Q.    Okay.  And then it says, "Borrower agrees

1   that liquidated damages of $250 shall be applied to

2   Borrower's account."  What's that for?

3        A.    That's if they do the chargeback.  Just a

4   deterrent.  We have never done anything with that.

5        Q.    Because do you think that's ethical under

6   the Rules of Professional Conduct to have that in

7   there?

8        A.    I don't know of a rule that prohibits it.

9        Q.    Well, is it a fee that's actually going to

10  be incurred?

11       A.    Yes.  Because of the amount of work that

12  goes into having to fix that.

13       Q.    So it would be attorneys fees.

14       A.    Uh-huh (affirmative).

15       Q.    Okay.  In addition to the $4000 that you

16  have already charged?

17       A.    Yes.

18       Q.    And then in paragraph 4 it says, "Upon

19  withdrawal, Preferred Law shall be entitled to any and

20  all fees earned to that point, including fees necessary

21  to close Borrower's account, and shall return any and

22  all unearned fees to the Borrower."  And didn't you

23  already say that the fees are already earned when you

24  receive them?

25       A.    Yes.

1      Q.     So you wouldn't really be returning
2   anything unearned to anyone, would you?
3      A.     No.
4      Q.     Okay.  But you haven't been able to --
5      A.     I might want to pull that from the form.
6      Q.     Okay.  But let's say they fire you and you
7   didn't get all the work done for that month, would you
8   return the unearned fees?
9      A.     It wouldn't be a month.  They are
10  happening within -- before days.  But no.  I mean, we
11  don't take money up front, usually.  And if we do, I
12  try to make sure that goes into the trust account.
13     Q.     Okay.  That was my next question.  So the
14  money that you receive up front would go in your trust
15  account until earned, right, pursuant to the rules?
16     A.     Yes.  But it didn't apply with those three
17  clients that are at issue right now.
18     Q.     It didn't apply?
19     A.     No.
20     Q.     Why not?
21     A.     Because the fees were earned.
22     Q.     Yeah.  Well, you've said that.  But you
23  haven't been able to show how they were earned exactly.
24     A.     Submitting the qualified written request.
25  It's in the notes when those were sent.

1    Q.     I read those.  But you have told me here

2  today that you did two hours of work on the federal

3  stuff.  And your billable hour rate is let's say $200

4  an hour, because it's easier for me to do it that way.

5  So that would be how much?  Two hours times $200 --

6    A.     But again, these are flat fees.

7    Q.     Let me finish my question.

8    A.     Okay.

9    Q.     That's $400.  And you're charging people

10  $4000 for your legal services.  So you can see where

11  people might not think that you've earned that, right?

12    A.     You want me to conjecture about what other

13  people think?  I don't think that's unreasonable, as

14  all lawyers -- it is very customary to charge flat fees

15  for many services.

16    Q.     Flat fees also have to be reasonable under

17  Rule 1.5.  Do you know that?

18    A.     Absolutely.

19    Q.     Okay.  And you have to earn them.  And

20  flat fees need to go into the trust account until they

21  are earned.  Are you aware of that?

22    A.     Yes.

23    Q.     Okay.  So number 7, you don't guarantee

24  any success, but you have already guaranteed to these

25  people that you are going to get them a modification,

1  right?

2      A.    Like I said before, that wasn't with my

3  approval.  But I would say that that would override

4  that, under contract law.  That that particular one-

5  page agreement would override the fee agreement.

6      Q.    Okay.  So the guarantee hold in those

7  cases.  You have guaranteed.

8      A.    Yes.

9      Q.    Even though this says that you haven't.

10     A.    Yeah.  Because that's our standard

11  provision.  But I would say the particular would

12  override the general.

13     Q.    Okay.  So let's' look at number 8,

14  Limitation of Liability.  It says, "Borrower has

15  expressly waived any right to claim damages against

16  Preferred Law."  Do you see that?

17     A.    Uh-huh (affirmative).

18     Q.    Why is that in there?

19     A.    Well, mostly for a deterrent.

20     Q.    A deterrent?

21     A.    Otherwise -- because the nature that's

22  involved here, that with a modification service, that a

23  lot of people -- when I say "a lot," a handful of

24  people are going to lose their homes.  No matter what

25  you do, a handful of people are going to lose their

1   homes in the end.  And when someone loses a home they

2   become very angry and will sue for everything.

3   Hundreds of thousands of dollars over just this one

4   service.  And so that's why that was in there is to try

5   to deter that from happening.

6          Q.     Do you know if it's ethical under the

7   rules to put a clause like this in your fee agreement?

8          A.     I believe it is if they represent that

9   they have independent counsel making that agreement.

10         Q.     And I see where you've put that in here.

11   "Borrower acknowledges that he or she has had adequate

12   time to seek independent counsel and is now currently

13   represented in making this agreement in limiting

14   Preferred Law's potential malpractice and other

15   liability to the Borrower."  Did you personally check

16   to see if these people had seen independent counsel and

17   were currently represented by independent counsel when

18   they signed this?

19         A.     No.

20         Q.     Okay.  So you don't know whether they did

21   or not.

22         A.     All I can do is go off of that they signed

23   it and agreed.

24         Q.     Do you think most people would understand

25   what this means, most lay people who are not lawyers

1   would understand what they are giving up here?

2        A.    I assume so, yes.

3        Q.    Okay.  Do you know if the Dodds, when they

4   signed this, had other representation?

5        A.    No.  I don't know if any of those clients

6   had independent representation.

7        Q.    Okay.  And then in 16 you had that again.

8   "Borrower acknowledges and represents that he or she

9   has had reasonable opportunity to seek independent

10  legal counsel and is currently represented."  Why would

11  you put that in there?

12       A.    So that it's very clear.  I put it in

13  there twice deliberately so there is no confusion.

14       Q.    Why didn't you ask them who their current

15  representative was, who their counsel was, and have

16  that person sign this agreement?  Wouldn't that be a

17  better way to do this?

18       A.    Potentially, yeah.

19       Q.    Because most likely the client didn't even

20  read this, right?

21       A.    I hope that they read it.

22       Q.    Yeah.  If they read it, they probably

23  would have asked you a question and said, "Am I

24  supposed to have representation right now?"  Did

25  anybody ever ask you that?

1       A.      No.

2       Q.      Let's go on to the addendum, which is the

3    next document.  And this is where you say that it's a

4    limited services agreement.  What does that mean?

5               Oh, this is just the addendum to what you

6    call your retainer agreement is a limited service

7    agreement?

8       A.      Yeah.

9       Q.      Okay.  It says no up front fees are

10   required, and that services are due upon completion of

11   each phase.  How would the client know when each phase

12   was complete and that the work was done?

13      A.      I assume talking with their representative

14   from American Home Loan Counselors to make sure that

15   everything has been done.

16      Q.      And exactly what work, if you can remember,

17   is done in each phase, and by whom?

18      A.      I don't recall on any of these clients.

19      Q.      Okay.  I know you have given us the notes.

20   If you went through those, could you tell us what work

21   was done in each phase and how much time was involved

22   and those things?

23      A.      Just what's there from our purposes would

24   be when this qualified written request was submitted,

25   those kinds of things, those are tracked in all those

1    notes.  After that, no, it's not tracked on those.

2         Q.    Okay.  Let me just go on to the Phase 1.

3    It says, "Initial consultation and review."  Did you

4    ever meet with any of these clients --

5         A.    No.

6         Q.    -- in an initial consultation?

7         A.    No.

8         Q.    Okay.  So the first phase is $974.  It

9    looks like each one is the same amount.  Why would that

10   be?

11        A.    It's just kind of breaking down just a

12   flat fee of what's happening with their file.  So it's

13   -- just took the $4000 and just kind of broke it up

14   into four parts.

15        Q.    So you, as the -- I think you said you are

16   supervising the people that are billing this time out,

17   right?  Or that are doing the work?

18        A.    Yeah.

19        Q.    With the exception of your initial review.

20        A.    Yes.

21        Q.    Okay.  So are you making sure that all of

22   these services are done before this money is collected?

23        A.    Yeah.

24        Q.    Okay.  Personally on every file?

25        A.    A lot of them.  But also Bobbi makes

1  certain about that, as well.

2       Q.    Okay.  Under the next page it says, "B.

3  Purpose of Fees."  It says, "Preferred Law's fees are

4  separate from those of the Mortgage Assistance Relief

5  Service."  Who is that?

6       A.    I believe that would have been fees to,

7  like, American Home Loan Counselors if they were going

8  to charge any.

9       Q.    Do they charge?

10      A.    No.

11      Q.    How do they get paid?

12      A.    They get paid through my office,

13  essentially.

14      Q.    For doing what?

15      A.    The day-to-day work on the files.

16      Q.    That's not included in the $974?

17      A.    No.

18      Q.    Okay.

19      A.    You can't charge for that service.

20      Q.    So it's overhead at your office?

21      A.    Legal experts, is what I would throw it

22  under.

23      Q.    Home loan people are legal experts?

24      A.    Yes.

25      Q.    How are they qualified as legal experts?

1          A.     They are very -- they have a lot of

2     expertise in this field of home loan modification.

3          Q.     And you consider that a legal field?

4          A.     I mean, it's like an expert witness.  I

5     didn't mean it like lawyer service.  I mean like expert

6     witness.  Like paying a surveyor with respect to

7     litigation involved with real property.  Something like

8     that.

9          Q.     So they are the loan service people.  They

10    do what daily on these files?

11         A.     Call the bank, call the clients, submit

12    documents.

13         Q.     Okay.  And so who are the people that earn

14    the $974 a month?

15         A.     All through the law office.  That's just

16    my service.

17         Q.     But you don't have any employees, so does

18    that all go to you?

19         A.     Technically I guess yeah, it all goes to

20    me.

21         Q.     For your two hours of reviewing the file?

22         A.     Sure.

23         Q.     So you collect $974 per case a month --

24         A.     It's about --

25         Q.     -- up to about $4000 --

1          A.     Yes.

2          Q.     -- for doing two hours of legal work?

3          A.     Yeah.

4          Q.     How much does Jonathan Hanley make on each

5     of these cases?

6          A.     I would say something similar.

7          Q.     Is there a percentage?  He makes a

8     percentage, you make a percentage?

9          A.     No.

10         Q.     So you get all of the $974 a month?

11         A.     No.  I mean, it's distributed.

12         Q.     How?

13         A.     To all the employees and for marketing and

14    all that.

15         Q.     And who does that?

16         A.     Sandra.

17         Q.     Through your office.  So you would have

18    records of these disbursements to these other people

19    from your law office?

20         A.     Yeah.  I think I would have those records,

21    yeah.

22         Q.     I think we asked for those.  I would like

23    to have those.  All the disbursements on these cases to

24    employees and --

25         A.     It wouldn't be individual cases.  It would

1    all be lump sums.  It is all combined.

2         Q.    I'd like that maybe for the years that we

3    are talking about here.

4              MR. SACKETT:  Shortly after we do this,

5    can you send me an e-mail?

6              MS. TOWNSEND:  Yeah.  I will do that.  Let

7    me write myself a note.

8         Q.    (By Ms. Townsend)  So it's -- would it be

9    a monthly aggregate disbursement --

10        A.    It would be aggregate.

11        Q.    -- or weekly?  You are paid weekly.  Is

12   everybody paid weekly?

13        A.    It might be weekly.  I don't recall.  It

14   comes from the merchanting accounts.

15        Q.    It comes from what?

16        A.    Merchanting accounts.

17        Q.    Let's talk about that for a minute.  These

18   are the credit card accounts, right?

19        A.    Yes.

20        Q.    So that money comes into Preferred Law

21   when people use their credit cards on these cases?

22        A.    On those cases, those went to the other

23   merchant accounts.  On current cases, most of them come

24   through a Preferred Law account.

25        Q.    Okay.  So you have one merchant account at

```
 1    your office?
 2         A.    Yes.
 3         Q.    Okay.  And then does Jonathan Hanley have
 4    a merchant account?
 5         A.    I believe he still has the AM Property
 6    merchant account.
 7         Q.    Okay.  So that's his account, where we saw
 8    some of that money went in there?  AM Properties is
 9    his?
10         A.    Yes.
11         Q.    And the other one was FMG.  Who has that
12    one?
13         A.    It was Jonathan's father, I believe.
14    Father-in-law.  Sorry.
15         Q.    And what's his name?
16         A.    Sandra's father.  Fernando.
17         Q.    Why would he be receiving any money on
18    those cases?
19         A.    He wouldn't receive the money.  We used
20    those account.
21         Q.    Why?
22         A.    Because those merchant accounts are kind
23    of hard to set up.
24         Q.    So when is the money transferred from his
25    merchant account to your trust account?
```

1          A.     To the trust account?

2          Q.     Yeah.

3          A.     If it's going in the trust account, it

4     goes in there immediately once it is processed by the

5     merchant.

6          Q.     And you wouldn't think you would need to

7     go through somebody else's merchant account for that.

8     That's why I'm struggling.  I don't understand why you

9     are using AM Properties or FMG on any of this when you

10    have your own her merchant account.

11         A.     Our Preferred Law -- I don't recall the

12    exact day it was set up.  But they put limitations on

13    how much transaction you can do, on credit card

14    transactions and things like that.  So it couldn't be

15    done all under the Preferred Law immediately.  It was

16    kind of a process.

17         Q.     Okay.  So there's a limitation on how much

18    you can run through one of those in a day or week?

19         A.     Yeah.  Something like that.

20         Q.     So the funds had to be run through other

21    accounts?

22         A.     Through the other merchant accounts, yes.

23         Q.     Your legal fees for your legal work you

24    are running through other people's merchant accounts?

25         A.     Yes.

1       Q.      I just want to make sure I got that right.
2       A.      But, of course, you are supervised.  It's
3   not like --
4       Q.      How often do you supervise those accounts?
5       A.      Not very often.
6       Q.      Give me a ballpark.  Once a week?  Once a
7   year?
8       A.      Maybe once a month, maybe.
9       Q.      Do you look at statements for each of
10  those accounts?
11      A.      Well, the other ones -- you mean currently
12  or at this time?
13      Q.      At that time.
14      A.      I don't recall.  I don't recall how often
15  I looked at it.  A few times, I guess.
16      Q.      Doesn't Jonathan handle most of that, or
17  his wife?
18      A.      Jonathan and his wife.
19      Q.      And you really didn't have much to do with
20  it?
21      A.      No.  You are making sure it's being
22  handled correctly, that's all.
23      Q.      And what was Sandra's father's name?
24      A.      Fernando.
25      Q.      Fernando what?

CITICOURT, LLC
(801) 532-3441

1        A.    I don't recall his last name.

2        Q.    The next one is Eric Trager's fee schedule

3    here for Eric Trager, and the dates that his payments

4    were supposed to be made.  Can you just take me

5    through, I think we have done this a little bit, but

6    walk me through that $650.  Once he charges that, once

7    that is charged, where does it go?

8        A.    To one of those merchant accounts.  I

9    can't remember if it was FMG or AM Property.

10       Q.    Or yours, maybe?

11       A.    Or Preferred Law's.

12       Q.    And then after that, so where --

13       A.    Jonathan --

14       Q.    It's got to go in a bank account.

15       A.    Jonathan or Sandra would take that money

16   and disburse it.

17       Q.    Do they have bank accounts that they put

18   the money in.

19       A.    I'm sure.

20       Q.    So their merchant account would be tied to

21   whatever their bank account is?

22       A.    Yeah.

23       Q.    Do you know where they bank?

24       A.    No.

25       Q.    So you're supervising all this and you

1  don't know what bank this money is going into?

2      A.    Well, just as long as the distributions

3  are happening.

4      Q.    How do you know the distributions are

5  happening?

6      A.    You know, you meet with them all the time.

7  People are being paid.  You want to make sure everyone

8  is getting paid.

9      Q.    Do you look at bank statements?

10     A.    At their bank statements, no.

11     Q.    Do you look at your own bank statements?

12     A.    No, not really.

13     Q.    So the $650, the first payment, let's say

14  it goes -- this one goes to AM Property merchant

15  account into Jonathan Handley's account.  Then what

16  happens?

17     A.    It would probably go in like the AM

18  Property account or something, and then be distributed

19  to me, to Preferred Law, to the Modification Review

20  Board.

21     Q.    By check?

22     A.    Or American Home Loan Counselors.

23     Q.    By check?

24     A.    Probably by wire.

25     Q.    So wire transfers --

1        A.      Immediately.

2        Q.      Into your operating or trust account?

3        A.      It depends.  It would just be operating

4    account for all these clients.

5        Q.      Okay.  So no checks.  And so you don't get

6    like a payroll check for your services.  You just get

7    wire transfers into your account from Jonathan --

8        A.      No.  I get a check.  Kind of like -- it's

9    not ideal, but Modification Review Board is the one

10   that sends the check to me.  And most of these clients

11   get a check from Modification Review Board.  I'm sorry.

12   Not clients, but most of the all of the employees get a

13   check from --

14       Q.      For Home Loan and for Modification for

15   everyone?

16       A.      Yeah.

17       Q.      And Bobbi, too?

18       A.      Yes.

19       Q.      Does Bobbi just work for you or does she

20   work for the other companies?

21       A.      She is the primary manager for American

22   Home Loan Counselors, but she also works for me.  She

23   wears both hats.

24       Q.      Okay.  I'm going to move on.

25               (EXHIBIT 5 WAS MARKED.)

Benjamin Horton  *  June 1, 2016                105

```
1          Q.    Can you tell us what that is, what this
2    lawsuit is about?
3          A.    A suit from the Feachers against myself
4    and several other entities like Jonathan and
5    Modification Review Board, Preferred Law, et cetera.
6          Q.    And why were you being sued by the
7    Feachers?
8          A.    I don't recall.  Sued that they wanted
9    money back.  I can't recall if they lost their house.
10   I don't remember.
11         Q.    Were you representing yourself in this
12   lawsuit?
13         A.    Yes.
14         Q.    And you can't recall what the claims were?
15         A.    It's been a while.  I mean, I could read
16   through it.  It's in the Complaint.  You can read it
17   yourself.
18         Q.    I have read it.
19         A.    Then ...
20         Q.    I mean, if you know generally what it's
21   about, that would be good to have on the record, since
22   you were being sued.
23         A.    I don't know.  I haven't read this
24   complaint in years.
25         Q.    Okay.  Do you know how the case was
```

1   resolved?

2          A.     Yes.  We just settled with them.

3          Q.     How much money did you pay them?

4          A.     $7000, I think.

5          Q.     So you paid the Feachers $7000 to settle

6   the case.  Do you know if Judge Furse made any or

7   rendered any opinions with respect to your contract in

8   this case?

9          A.     Yeah.

10         Q.     What did she say?

11         A.     She rendered -- she found it unconscionable

12   in the circumstance.

13         Q.     Okay.

14         A.     But it wasn't -- from her point of view,

15   if I remember correctly, she said it was because they

16   weren't independently verified that they had lawyers

17   executing that contract.

18         Q.     And that's the thing that we just went

19   through on those contracts, right?

20         A.     (Witness nods head up and down.)

21         Q.     Do you still include that in your --

22         A.     Yes, I do.  I was actually in the process

23   of challenging this with the appellate court.  I'm not

24   sure, I think we filed the paperwork for the appeal.

25   And that's when they settled.

1          Q.     Well, didn't you pay them money?

2          A.     I'm sorry?

3          Q.     Didn't you give them the money?

4          A.     The Feachers, yeah.

5          Q.     Okay.  Because it sounded like you were

6     saying you were all set to appeal and they settled.

7          A.     No.  We appealed, and they didn't want to

8     fight it in the appellate court, so they settled.

9          Q.     So you offered them money so you wouldn't

10    have to appeal?  Okay.  Let's look at number 6.

11               I think we are almost done.

12               (EXHIBIT 6 WAS MARKED.)

13         Q.     Mr. Horton, are you aware of what this

14    lawsuit is about?

15         A.     Yeah.  The Everts.

16         Q.     You were being sued by Brian and Karyn

17    Evert.

18         A.     Yes.

19         Q.     And it's Preferred Law Modification Review

20    Board, American Home Loan Counselors, and you.  Do you

21    know what the claims are in this one?

22         A.     Violation of, I believe, taking money for

23    doing a modification or something.

24         Q.     Okay.  And do you know what the status of

25    this case is?

1        A.      Dismissed.

2        Q.      Why was it dismissed?

3        A.      Because the judge found that they couldn't

4    now raise this issue because of -- they have already --

5    because the bank -- they didn't raise this issue at the

6    bankruptcy court.

7        Q.      Okay.  Did you pay them any money?

8        A.      No.

9        Q.      Okay.  Let's look at Number 7.

10              Are you aware of any other lawsuits that

11   you are being sued in?

12       A.      Right now there's -- I believe the Everts

13   have just refiled in the federal court, which to me

14   would be barred by res judicata.  But that wasn't -- I

15   believe they just filed.

16       Q.      Any other ones?

17       A.      I was sued in Kansas.  I forget the name

18   of the client, but it was small claims.

19       Q.      And is that it?

20       A.      And in Oregon, I think.  Yeah, Oregon has

21   a suit against us for performing modification in their

22   state without a license.

23       Q.      Is that against you personally or

24   Preferred Law?

25       A.      They included me personally, yeah, on that

1   one.

2          Q.    Okay.

3          A.    And the other one was Connecticut.

4          Q.    And is that the same thing?

5          A.    The Connecticut one -- Oregon hasn't

6   reached a hearing yet.  The Connecticut one, we had a

7   hearing.  And strangely, the judge never ruled.

8          Q.    And it's been a while, I take it?

9          A.    Been a couple years.

10         Q.    Okay.

11               (EXHIBIT 7 WAS MARKED.)

12         Q.    The only reason I have this in here is

13  because I wanted to know who Phillip Hanley was, and I

14  think you might have already answered that.

15         A.    Yeah.

16         Q.    Did he work for Preferred Law?

17         A.    Yeah, he did.  Well, American Home Loan

18  Counselors, pretty much.  But yeah.

19         Q.    When did he work for you?

20         A.    Well, this was a few years ago.  He was

21  terminated approximately around this time.

22         Q.    Around 2012?

23         A.    Yes.

24         Q.    What was he terminated for?

25         A.    I believe he had some personal issues.  It

1    was personal issues.  We had to remove him.

2         Q.    Okay.  He didn't mess up a case or

3    anything?

4         A.    It seems like he was having a harder time

5    keeping pace with his clients and things.  So he was

6    taken out.

7         Q.    Okay.  What does "Case Manager, Litigation

8    Division" mean?

9         A.    I don't know.  He shouldn't have put that

10   there.

11        Q.    So you didn't give him that title?

12        A.    No.

13        Q.    Okay.  And I think I already asked you, he

14   is not a lawyer, right?

15        A.    No.  He went to law school and graduated

16   from Chicago, but he is not a Utah lawyer.

17        Q.    Okay.

18              (EXHIBIT 8 WAS MARKED.)

19        A.    Oh, this wasn't against me.

20        Q.    Right.  But I think you were representing

21   Compass Law and Jonathan Hanley in this case.

22        A.    Yes.

23        Q.    And this is Cindy Price versus Compass

24   Law.  What is this case about?

25        A.    It is about nonpayment for services, I

1    think.

2          Q.    And she worked for Compass Law, right?

3          A.    Yeah.

4          Q.    And it's on the second page, if you look

5    at the Statement of Facts, it says she was an employee

6    and she was a sales person and then a sales manager at

7    Compass Law.

8          A.    Yes.

9          Q.    So my question is your law firm, you

10   talked a little bit about sales people.  Are some of

11   those people sales people that work for Modification

12   Review Board or American Home Loan Counselors?  Are

13   they considered sales people?

14         A.    Yeah.  Some of them in Modification Review

15   Board are sales.

16         Q.    What are they selling?  I guess I don't

17   understand what they are selling.

18         A.    Our services.

19         Q.    Okay.

20         A.    And other services.  I guess the services

21   of helping them achieve their modification desires.

22         Q.    Okay.  But they are also selling your

23   legal services, are they not?

24         A.    Well, yeah, I guess.

25         Q.    And it's true that most clients come to

1   you, come to Preferred Law because you are a lawyer?

2        A.    No.  I would say most people come to

3   Preferred Law because we have a pretty good track

4   record.

5        Q.    Okay.  But do people generally go to a

6   legal entity that does loan modifications, or would

7   they just go to the Modification Review Board if it

8   didn't say it was lawyers?  Do you see what I'm saying?

9   Do people --

10       A.    I think they would go anywhere they could

11  get that service done.  I don't know how better to

12  answer your question.

13       Q.    But in the three cases that we have in

14  your case, those people all went to you because you

15  were a lawyer providing legal services, right?

16       A.    In part, yeah.  I would say yes, in part.

17       Q.    And they thought they were getting --

18       A.    But not Chvilicek.

19       Q.    Why not?

20       A.    Because that would have been Compass.

21       Q.    Okay.  Right.  But they went to Compass

22  Law for legal services?

23       A.    I don't know what they did.

24       Q.    Okay.  It says on page 3 that her

25  compensation arrangement was commissions.  Is that

1   similar to what you have at Preferred Law?  Do you pay

2   people commissions?

3        A.    No.  I mean, that's all arranged through

4   Modification Review Board.

5        Q.    Do you know if people are paid commissions?

6        A.    I believe some of them are, yeah.

7        Q.    Okay.  And what --

8        A.    Maybe half for salary, half for

9   commission.

10       Q.    What would that be based on?

11       A.    The clients that come in and are approved

12   and make payments.

13       Q.    Okay.  So if they can get somebody on

14   board with Preferred Law and the person makes payments,

15   then whoever sold them the package gets paid, right?

16       A.    Yeah.  Of course, they have to be

17   approved, the client and everything.  But if that was

18   what they did, yeah.  If they were the initial contact

19   and worked with them, yes.

20       Q.    Is that the only thing they do on the

21   case?

22       A.    I believe they talked to them about lots

23   of different options and things that they can try.

24       Q.    But they are the initial contact only.

25   And then it moves on to someone else, I'm assuming?

1      A.    Most of the time.  A lot of times it comes

2  through American Home Loan Counselors or something like

3  that.  And then in that case, it's Bobbi -- it would be

4  Bobbi that would primarily explain our services for

5  them.  Or Shannon.

6      Q.    But the commission part, does that come

7  out of the $974 a month that comes in?

8      A.    It is paid to Modification Review Board

9  for advertising.  What they do with it, it's kind of --

10  it's Jonathan's business.

11      Q.    But the advertising comes out of the $974,

12  too?

13      A.    Yeah.  Advertising comes out of everything

14  that's paid, yeah.

15      Q.    Okay.  So the $974 --

16      A.    Office overhead.

17      Q.    -- is not strictly for legal services for

18  your law firm?

19      A.    Well, paying for advertising and overhead

20  and all that stuff, so yeah.

21      Q.    Okay.  So technically you wouldn't be

22  earning that $974 for performing legal services, would

23  you, if part of it can go out for commissions, and

24  parts of it can go to advertising?

25      A.    It seems all law offices pay for

1   advertising.

2          Q.    Yes.  But the difference is you are saying

3   these are fees that are earned on receipt because you

4   did the legal work.  You see what I'm saying?

5          A.    No, I don't.

6          Q.    Okay.  The difference is other people take

7   in legal fees, put them in their trust account, take

8   out so much when they earn it.  A portion of that.  And

9   then they pay their overhead out of their earned

10  monies.  You are not doing it that way.

11         A.    Yeah.  I mean, maybe it would be better if

12  I did do it that way.  When I initially looked at this,

13  I read through the rules.  I did.  And I didn't see

14  anything that prohibited that type of arrangement as

15  long as the fees were earned.

16              Now, if it goes into a trust account, it

17  is totally different.  With a lump sum or something, it

18  is going to a trust account until it is earned, so ...

19         Q.    All right.  Let's move on a little bit.

20         **(EXHIBIT 9 WAS MARKED.)**

21         Q.    I will just represent to you that I think

22  this is your operating account information from Bank of

23  the West; is that right?  It says Preferred Law

24  operating account.

25         A.    Yeah.  I would assume that, too.

1       Q.      Okay.  And the signatories on this account

2   are you and Sandra Hanley.

3       A.      Correct.

4       Q.      Why would she be a signatory on your

5   operating account?

6       A.      So she can write checks, do whatever she

7   needs to do, which she does very often.

8       Q.      What does she need to pay out of your

9   operating account?

10      A.      Any sort of bills.  I mean, she handles

11  bills that come in the office.  Rent.

12      Q.      You don't do any of that?

13      A.      No.  She is the one that handles kind of

14  the financial area.  I don't write the checks very

15  often.  I write a lot of -- only when she is not in the

16  office is when I write checks.

17      Q.      Is she a W-2 employee of your firm?

18      A.      No.

19      Q.      How does she get paid?

20      A.      She also gets paid -- I mean, well, she is

21  paid through that Modification Review Board, I guess

22  technically pays her.

23      Q.      To run your law firm?

24      A.      Yeah.  Well, that would be a part of it,

25  yeah.

1     Q.    Okay.  I just have marked a couple of

2  pages in there.  Let's look at the May 1 -- I think May

3  1 might be the first one in there.

4     A.    April 1st.

5     Q.    April 1st.  Okay.  Let's look at April

6  1st.  Just take me through what these Global Pay items

7  are.

8     A.    I'm sure those would probably be merchant

9  accounts.  I don't know which ones they are.

10     Q.    All right.  So these are, since you said

11  you didn't have any other clients, I'm assuming these

12  are all loan modification clients.

13     A.    Yes.  Can't really call them all loan

14  modification clients, but I understand what you're

15  saying.  Broadly speaking, yes.

16     Q.    I don't want to speak for you.  So what

17  other kinds of clients do you have?

18     A.    I would call them federal services clients.

19     Q.    And you are calling them that why?

20     A.    Because I can't charge for modification.

21     Q.    Okay.  But the clients signed up thinking

22  they were getting a loan modification, right?  And

23  that's the service you were going to provide?

24     A.    No.  My representations are in the fee

25  agreement, what they are getting, yeah.  Do they want a

```
1    modification?  Yes.  But is it what the law office is
2    providing?  No.
3         Q.    And that's what you guaranteed them,
4    right?  A loan modification?
5         A.    Jonathan guaranteed that it would happen,
6    yes.
7         Q.    Okay.  So the money comes in, and are
8    these all merchant accounts?
9         A.    Yes.
10        Q.    Okay.  $88,000 this month, this one month,
11   right, comes into Preferred Law?  Did you ever see this
12   bank statement?
13        A.    If I want to.
14        Q.    Do you ever look at them and go, "Wow,
15   $88,000 I earned this month"?
16        A.    No.
17        Q.    Because you said, didn't you, that you've
18   earned all this money by doing the work already when it
19   comes in.  So once it hits your bank, it's your money.
20   It's in your operating account.
21        A.    Yeah, but I mean with high overhead,
22   sure --
23        Q.    What's your overhead?
24        A.    -- it's meaningless.
25        Q.    What's your overhead?  You have a virtual
```

1   office, no employees.

2        A.    You are paying all of American Home Loan

3   Counselors.  You are paying the advertising.

4        Q.    You are not paying them, though.

5             MR. SACKETT:  Let him finish his answer,

6   please.

7             MS. TOWNSEND:  Sorry.

8        A.    I am paying them, technically.  So yeah,

9   it comes to me.  Just might not go through my account

10  initially.  It might go through a merchant account to

11  another account or something, but it's me paying them.

12       Q.    So you did not earn these fees that come

13  in from all these different clients?

14       A.    What?  I never said that.

15       Q.    Well, if you earned it, then you would be

16  able to keep this and not give it to someone else.

17       A.    I'm under obligations, contractual

18  obligations, to pay it out.

19       Q.    Do you have those contracts?

20       A.    I said they were all verbal.

21       Q.    Okay.  And I guess I misunderstood.  I

22  thought you said that John Hanley was disbursing all

23  the money, and you were just receiving $2000 a week.

24       A.    Yeah.  Jonathan and Sandra kind of handle

25  that.

Benjamin Horton  *  June 1, 2016                    120

1       Q.      But this goes into your operating account

2   for your law firm.

3       A.      Yeah.

4       Q.      So you are technically disbursing all of

5   these funds.

6       A.      I agree.

7       Q.      So let's look at May.  And again, are

8   these all funds that are taken in from borrowers, or

9   clients that you call borrowers?  Is that what this is?

10      A.      Yes.

11      Q.      Almost $105,000 in a month.  Do you see

12  that?

13      A.      Yeah.

14      Q.      How much of that do you take home?

15      A.      About $2000 a week.  At this time it was

16  actually a little less.

17      Q.      And where does the rest of it go?

18      A.      Overhead.  Advertising.

19      Q.      How much do you pay in advertising a

20  month?

21      A.      A ton.  Most of it, I guess.  But then

22  also the American Home Loan Counselors.  I pay for all

23  the employees.

24      Q.      Go back to the advertising, please, and

25  answer that.  How much do you pay in advertising a

1    month?

2         A.    It depends.  It's never a set amount.

3         Q.    Well, it has to be a set amount because

4    you pay people a set amount for advertising.

5         A.    I don't recall at this time exactly how

6    much was paid.

7         Q.    What kind of advertising do you do?

8         A.    Well, Jonathan, he -- well, of course,

9    you've got the internet advertising.

10        Q.    How much does that cost?

11        A.    I don't know.  Jonathan handles that.

12        Q.    So if I asked for those records, I could

13   get them.  How much he pays in advertising from your

14   law firm, from your account, how much goes to

15   advertising, how much goes to home loan investment and

16   how much goes to whoever, I could get those records?

17        A.    I presume.

18        Q.    Okay.  I believe I asked for those.

19        A.    They wouldn't be from me, though.

20        Q.    Well, it's going into your account.  This

21   money is going into your operating account.  So checks

22   are being written out of your operating account. You

23   can see down here.  Checks are being written somewhere

24   out of your account, because you ended up with only

25   $11,000 in that month.  So out of that account, $99,000

1    went somewhere.

2         A.    Yeah.  So I'd like to see where that went.

3         Q.    Do you keep ledgers for each client?

4         A.    We provided everything we had on each of

5    those clients.

6         Q.    I got notes, but I have never seen any

7    ledgers where you --

8         A.    Per client.

9         Q.    -- keep track of transactions.

10        A.    I showed you what we have.

11        Q.    Okay.  Do you keep a general ledger on all

12   the transactions for clients?

13        A.    For all of them?

14        Q.    For your accounts.

15        A.    For global?  You mean global, like all of

16   them put together?

17        Q.    Yeah.

18        A.    Yeah, I guess.

19        Q.    Okay.  I need to get a copy of that.  Do

20   you do it on QuickBooks or do you do it manually or how

21   do you do it?

22        A.    With Smart Sheets or something like that.

23        Q.    Okay.  I'll send you an e-mail on that.

24             (EXHIBIT 10 WAS MARKED.)

25        Q.    And this is, I believe, your trust account

1    record.

2         A.    Uh-huh (affirmative).

3         Q.    Is that right?

4         A.    Yes.

5         Q.    It says Preferred Law, Utah Bar

6    Foundation.

7         A.    Yeah.  I would assume.

8         Q.    And you know what Utah Bar Foundation

9    does, don't you?

10        A.    I read it once, but I can't recall it

11   offhand.

12        Q.    They are entitled to all the interest on

13   whatever is in your trust account, and then they pay it

14   out to different groups so that they can keep those

15   running.  So you would pay interest on the money that's

16   kept in your trust account, right?

17        A.    (Witness nods head up and down.)

18        Q.    And so on your trust account you are one

19   of the signatories.  And then again Sandra Hanley, why

20   would she be on your trust account?

21        A.    Just in case I need her to make a

22   disbursement from it.

23        Q.    And do you supervise every disbursement

24   she makes out of your client --

25        A.    A trust account?  Yeah.

1        Q.      Do you sign checks with her in every case?

2        A.      No, I don't think so.

3        Q.      Do you know if you have separate colored

4    checks so you don't get confused with your operating

5    account and your trust account?

6        A.      No, we don't have separate colored checks.

7        Q.      Do you keep track of what is in your trust

8    account?

9        A.      Yeah.  Not on a daily basis, but yeah.

10       Q.      So we are going to look at April, May, and

11   June of 2013 in your trust account, like we already

12   looked at your operating account, just to see if any of

13   that money went into your trust account.  And let me

14   have you verify for April if any of the client monies

15   went into your trust account for April.

16       A.      I don't know.  $3900?

17       Q.      Do you know where that came from?

18       A.      A client.

19       Q.      Okay.  So you would have a register that

20   would show, or some sort of ledger that would show

21   where that came from?

22       A.      It wasn't from any of the three that are

23   at issue.  That's admitted.

24       Q.      Okay.  But do you have a ledger for your

25   trust account, so we could see what went in and what

Benjamin Horton  *  June 1, 2016                125

1   was coming out?  Bank statements aren't a very good --

2         A.    That would seem to fall under

3   attorney/client privilege.  They are admitted, yes.  We

4   did not put those in other people's accounts.  So you

5   are asking for a record of another client's account, so

6   I can't provide that.

7         Q.    I don't think it's attorney/client

8   privilege.  It's just accounting information from your

9   office.

10        A.    Well, if you are asking who it came from,

11  it would be.

12        Q.    I'm asking where the money came in from

13  and where it went to.  So those checks, that wouldn't

14  be any information that you talked to your client

15  about.  It is simply telling us how the money came in

16  and where it went.  So do you have a ledger that shows

17  that for your trust account?

18        A.    For the trust account?  I presume.  I'd

19  have to look.

20        Q.    Have you ever seen one?

21        A.    No.

22        Q.    Okay.

23        A.    I never really --

24        Q.    Usually it's the attorney that puts in the

25  transactions.

1        A.      I'm protective of the trust account.  I
2   try to make sure everything happens legitimately with
3   that.  None of the clients have claimed that I violated
4   any trust account provisions.  It's just, I don't
5   understand what you are looking for.  We already
6   admitted they did not go into the trust account, and
7   now you want more records on the trust account.  I
8   don't understand why.
9        Q.      I'm trying to get at how you do your
10  accounting in your office, because there are some rules
11  on supervision and it doesn't appear that you are
12  supervising Ms. Hanley very well, or Mrs. Hanley.
13       A.      On the trust account?
14       Q.      Is she keeping track of the account?
15       A.      Of course.
16       Q.      Okay.  And then how often do you look at
17  the ledger that she keeps up, or keep track of what's
18  going on in your trust account?
19       A.      Once every few months.  You know.  Six
20  months or something.  I don't know.
21       Q.      Okay.  Let's look at the May one.  We just
22  looked at May in your operating account and you had
23  over $100,000 in client fees going into your operating
24  account.  If you look at this, it doesn't appear that
25  any of that money went into your trust account, did it?

1        A.    No.

2        Q.    Okay.

3        A.    Except maybe the $4000.

4        Q.    Well, that was already there from the last

5    month, I think.  Yeah.  An ending balance of $4000 from

6    the previous month.  So deposits were 34 cents, which I

7    assume is interest, and then withdrawal was negative

8    three cents.  So I think it's fair to say, isn't it,

9    that none of the client money went into your trust

10   account?

11       A.    Yeah.

12       Q.    Can we take a short break.  I think I'm

13   done but I want to talk to Diane for a second.

14             MR. SACKETT:  Okay.

15             (Break taken from 12:41 to 12:46 p.m.)

16       Q.    You may have already answered this,

17   Mr. Horton, but I just want to ask you again on the fee

18   agreements, for the specific cases that we have here,

19   the Trager, Chvilicek, and Dodd cases, did you meet

20   with or talk with any of those clients over the phone

21   to explain the fee agreement?

22       A.    Not that I recall.

23       Q.    Okay.  Who would have done that?

24       A.    Could have been any number of people.

25   Maybe Bobbi.  Maybe their representative, the first

Benjamin Horton   *   June 1, 2016                128

```
 1   contact with American Home Loan Counselors, whoever
 2   that was.  I can't recall who that was on the notes for
 3   each of them.
 4        Q.    Have you ever trained either Bobbi or any
 5   of the other people on the aspects of the fee
 6   agreement?
 7        A.    Oh, yeah.  Bobbi.  We do a lot of that.
 8        Q.    So do you think she explained to them and
 9   verified that they had outside counsel?
10        A.    I don't think she would verify like on
11   each of those that they each had outside counsel, no.
12   I don't think she did.  I haven't ever told her to.
13        Q.    Okay.  Is it possible that somebody just
14   sent them the fee agreement and they were kind of on
15   their own to review it?
16        A.    Is it possible?
17        Q.    Yeah.
18        A.    Yeah.  It's always a possibility.
19        Q.    Okay.  That's all I have.
20              MR. SACKETT:  I don't have anything.
21              (The deposition concluded at 12:48 p.m.)
22
23
24
25
```

Benjamin Horton  *  June 1, 2016          129

1              **REPORTER'S CERTIFICATE**

2
STATE OF UTAH          )
3                      )  ss.
COUNTY OF SALT LAKE    )
4

5              I, Diana Kent, Registered Professional
Reporter and Notary Public in and for the State of
6  Utah, do hereby certify:

7              That prior to being examined, the witness,
Benjamin Horton, was by me duly sworn to tell the
8  truth, the whole truth, and nothing but the truth;

9              That said deposition was taken down by me
in stenotype on June 1, 2016, at the place therein
10  named, and was thereafter transcribed and that a true
and correct transcription of said testimony is set
11  forth in the preceding pages;

12             I further certify that, in accordance with
Rule 30(e), a request having been made to review the
13  transcript, a reading copy was sent to Attorney Gary
Sackett for the witness to read and sign, and the
14  original transcript will be delivered to Attorney
Barbara Townsend for safekeeping.
15
               I further certify that I am not kin or
16  otherwise associated with any of the parties to said
cause of action and that I am not interested in the
17  outcome thereof.

18             WITNESS MY HAND AND OFFICIAL SEAL this
14th day of October, 2016.
19

20

21

22

23

24      Diana Kent, CSR, RPR, CRR
        Notary Public
25      Residing in Salt Lake County

CITICOURT, LLC
(801) 532-3441

0130

PX20 - 898

# Attachment EE

PX20 - 899

In the Matter of the Discipline of

Benjamin R. Horton #11452

Third Judicial District Court

Civil No. 140905954

# Underlying OPC Case

# #13-0413

# Benjamin R. Horton / ███ █████

PX20 - 900

**OFFICE OF PROFESSIONAL CONDUCT**
**INITIAL COMPLAINT FORM**
(Return to: 645 S. 200 E.
Salt Lake City, Utah 84111)



*(please type or print legibly)*

Attorney's Full Name: *Benjamin R. Horton*
Your Name:
Address:

*Huntingdon*                    *TN*
(City)                          (State)         (Zip)

Phone Number:     (Day)                (Night) *Same.*

Date Attorney was Hired & Terminated (if terminated): *12-19-12*
What He/She was Hired to do: *PREFERRED LAW was hired*
*To Procure A Loan Modification From Chase*
*For*
Total Fees Billed: *$900.00*
Total Fees Actually Paid: *$120.00*

Briefly describe what the attorney did or failed to do that you believe is unethical. A chronological explanation of the facts supporting your charge of misconduct is appreciated.

*I was searching for help on line through*
*The Making Homes Affordable Programs, as my*
*home was in foreclosure. Preferred Law*
*Called immediately saying They could help with*
*my Problem. I ask if they were one of the*
*Government Programs. I didn't get a clear*
*Answer. I explained I had Been Trying for a*
*Modification for over 3 years with EMC Mortage*
*Then Chase when They took over EMC. Also That*
*I was very deligent Because They wouldn't*
*accept any money. Preferred Law Assured*
*me. They could work it out And I would*
*Get my modification with a Reduced Balance*
*And a 2% fixed interest Rate. They worked*

PX20 - 901

with a particular Person at Chase. They
faxed me 44 Pages of satisfied customers
and was given a web sight to Look at.
On 12-19-12 I signed a Payment form. I
faxed To Them Each time. what they asked
for. Rebecca Peace was first Lady, Then
Wendi Kartchner & finally Jenna
Adam was assigned To me. I would
call & check how Things were going. They
wasn't for Sure or it was in under writers.
A day or Two Before 5th Payment was due,
Jenna Adam called & said They could Not
help me, That I should Think About
Calling Keep my Terry Home Program, or do a
Short Sale on my Home. Chase had informed
Them my Past Due Amount was Too great.
I have Not received Anything in Writing from
Them. The TN. Attorney General's Office in
Nashville, TN , Mr. Matt Pulle, has contacted me
About This. I AM Enclosing copies of Pay-
ments That was drawn from my Checking
account, & Their Payment form. I Know I was
greatly mis informed. I AM asking you to
Please help me. If I Do not Retrieve my
money, Please Dont Allow This To happen To
some one else. I AM 69 years old And
feel I was Taken. Thank you for Listening.
Sincerely,

Huntingdon. TN

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Provide names, addresses, and phone numbers of any witnesses to support your allegations of misconduct:

*I have NUONE To suppert my Allegations my husband works Away from, Home. Only Home on weeK end. Paper worK is All I have.*

Enclose copies of all supporting documents (i.e. fee agreements, payment receipts or cancelled checks, letters, court documents with case number, etc.) Include only those documents which support your allegations of wrong doing.

**VERIFICATION:**
I hereby attest to the accuracy of the information contained in this complaint.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓          6-25-13
Signature                                              Date

SUBSCRIBED and SWORN to me before this 25 day of June , 2013

Darlene Kirk
Notary Public
Residing in Carroll County, ~~Utah~~ TN

My Commission Expires:
09/01/2014

PX20 - 903



# PREFERRED LAW

December 18, 2012



**Huntingdon, TN**

Preferred Law guarantees that a modification will be secured for you conditioned upon the following requirements:

1. All documents needed will be returned when requested by the deadlines given

2. There will be no changes to your current circumstances

3. All payments are made on time per the Payment Schedule

4. The information given is accurate and complete

Jonathan Hanley
General Manager

8081 South 700 East, Suite 110, Sandy, UT 84070  Phone:  801-386-5100 Fax: 888-224-6524

PX20 - 904

**STATEMENT**



Carroll Bank and Trust
19510 Main St. W.
Huntingdon, TN 38344
(731) 986-4401

McLemoresville • Huntingdon • McKenzie • Camden • Milan • Bradford

ACCOUNT:
DOCUMENTS:
18



PAGE:   2
01/15/2013

===================================================================
FREE CHECKING ACCOUNT
===================================================================

- - - - - - - - OTHER DEBITS - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| FMG PARTNERS LLC FMG M4880655429 | 12/26 | 1,000.00 |

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
***************************************************************
*                        | TOTAL FOR  |   TOTAL    |  PREVIOUS   *
*                        | THIS PERIOD| YEAR TO DATE| YEAR TOTAL *
*------------------------                                       *
* TOTAL OVERDRAFT FEES:  |                                      *
*------------------------                                       *
* TOTAL RETURNED ITEM FEES: |                                   *
***************************************************************
```

- - - - - - - DAILY BALANCE - - - - - - -

| DATE.........BALANCE | DATE.........BALANCE | DATE.........BALANCE |
|---|---|---|





PX20 - 905



# Utah State Bar

**Office of Professional Conduct**
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-9912
E-mail: opc@utahbar.org

Billy L. Walker
Senior Counsel

Todd Wahlquist
Deputy Senior Counsel

Diane Akiyama
Assistant Counsel

Adam C. Bevis
Assistant Counsel

Sharadee Fleming
Assistant Counsel

Barbara L. Townsend
Assistant Counsel

July 3, 2013

Benjamin R. Horton
8180 S 700 E
STE 110
Sandy UT 84070

Re:   Informal Complaint Against Benjamin R. Horton
OPC File No. 13-0413

Dear Mr. Horton:

This is to notify you that the Utah State Bar's Office of Professional Conduct ("OPC") has received a Notarized and Verified Informal Complaint from ▄▄ ▄▄ A copy of the informal complaint is enclosed. We recognize that having our office involved in matters such as this can be inconvenient and unsettling.   For this reason the OPC strives to determine the appropriate course of action as quickly as possible.   In accordance with its authority, and pursuant to Rule 14-504(b)(3)(B) and Rule 14-510(a)(6) of the Rules of Lawyer Discipline and Disability, the OPC will review the matter and take one of the following actions:

The OPC may decide to dismiss the complaint without the necessity of a response from you when, in our view, the factual allegations of the Informal Complaint, even if true, do not raise the likelihood that there has been a violation of the Rules of Professional Conduct.

Where appropriate the OPC may exercise its discretion and decline to prosecute any ethical misconduct allegations.  This typically occurs in situations where the allegations are unsupported by sufficient evidence or where there are issues underlying the allegations that should be first considered in another forum. The OPC will inform the person sending the information that once the issues are resolved, information can be resubmitted and reconsidered.

In appropriate cases, Rule 14-533 of the Rules of Lawyer Discipline and Disability allows an attorney the option of diverting certain types of complaints away from discipline, and into one or more alternative programs, the suitability of which depends on the issues and/or misconduct presented by the complaint. If you are interested in Diversion you are encouraged to review the rule to familiarize yourself with the

PX20 - 906

qualifications and requirements of the program.  A request to have your case considered for Diversion should be submitted to the OPC in writing.

Finally, if the OPC determines that the allegations in the informal complaint rise to the level of possible rule violations, you will be asked to submit a written response as part of the OPC's investigation into the matter.

For more information about the process, and the rules governing the OPC, you may visit the Bar's website at www.utahbar.org/opc/.

You will be notified as the matter progresses in accordance with what has been stated in this letter.

Sincerely,

Adam C. Bevis
Assistant Counsel
Office of Professional Conduct

ACB/jl
Enclosure

PX20 - 907



**Jonathan LaGuna**

| | |
|---|---|
| **From:** | Matt Pulle [Matt.Pulle@ag.tn.gov] |
| **Sent:** | Monday, July 08, 2013 3:37 PM |
| **To:** | OPC Staff |
| **Subject:** | Complaint against Benjamin Horton—update |



To whom it may concern,

I wanted to provide an update in the case outlined below. An employee of the Preferred Law Group contacted the complainant recently and talked to her about the complaint she filed. The complainant said that the employee seemed angry.

I thought I would share this information with you.

Thank you.

Matt

Matt Pulle
Tennessee Attorney General's Office
Assistant Attorney General/Mortgage Settlement Coordinator
Consumer Advocate & Protection Division
Post Office Box 20207
Nashville, Tennessee 37202-0207

(615) 741-3533 Work
Matt.Pulle@ag.tn.gov

---

> **From:** Matt Pulle
> **Sent:** Friday, June 21, 2013 3:18 PM
> **To:** opcstaff@utahbar.org
> **Subject:** complaint against Benjamin Horton
>
> To whom it may concern,
>
> My name is Matt Pulle and I'm an Assistant Attorney General with the Tennessee Attorney General's Office where I am leading our state's efforts to implement the National Mortgage Settlement. I wanted to provide some additional background to a complaint soon to be filed by ███ ███ a Tennessee consumer, against a Utah attorney named Benjamin Horton and his firm Preferred Law.
>
> In the course of my duties, I learned about Ms. ████ who is at risk of foreclosure. She says that a paralegal from Preferred Law in Sandy, Utah contacted her about her mortgage with JP Morgan Chase. The paralegal took down financial information from the consumer and said that she qualified for a two-percent interest rate. *This was a false statement* as there are no federal or state programs that would give a consumer a two-percent interest rate based purely on stated financial information.
>
> The paralegal at Preferred Law assured the consumer that her firm has a special relationship with Chase, a contention that was vigorously denied by our office's Chase representative. After winning over Ms. ████ confidence, the paralegal sent her a contract and told her that she needed to make a $1,000 down payment to Preferred Law. The consumer did as instructed and later made four monthly

payments of $780.00.

As far as our office can tell, Preferred Law offered nothing of value to the consumer. In fact, she's in a far worse position today than when she first started working with the firm. Our conversations with Chase confirm this. Mr. Horton is listed as the firm's lone attorney although to my knowledge she did not speak directly with him.

Although we have not done a complete investigation of Preferred Law, we are concerned that the firm's actions may be in violation of the following provisions of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.:

• Unfair or deceptive acts or practices affecting the conduct of any trade or commerce. Tenn. Code Ann. § 47-18-104(a).

• Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of services. Tenn. Code Ann. § 47-18-104(b)(2).

• Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another. Tenn. Code Ann. § 47-18-104(b)(3).

• Representing that services have sponsorship, approval, or benefits that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have. Tenn. Code Ann. § 47-18-104(b)(5).

• Engaging in any other act or practice which is deceptive to the consumer or to any other person. Tenn. Code Ann. § 47-18-104(b)(27).

I am also concerned that Preferred Law is in violation of a provision of our state's foreclosure-rescue statute, specifically Tenn. Code Ann. § 47-18-5402(a)(3). That  provision prohibits a firm from collecting an upfront payment for "foreclosure-related rescue services before completing or performing all services contained in the agreement for foreclosure-related rescue services." In our case, Ms. ▮▮▮ paid Preferred Law over $4,000 even though Preferred Law has not performed all of its contractual duties.

Our office has talked to the consumer several times about her experiences with Preferred Law. We've also had conversations with our office's designated contact at Chase. That said, we have not completed a complete investigation of Preferred Law's conduct and are not making any legal conclusions.

We would like to be of any assistance to your office if you decide to investigate Ms. ▮▮▮ complaint. In our experience working with Tennessee homeowners, law firms who solicit clients at risk of foreclosure and charge them upfront fees almost always make a difficult situation far worse. These firms and attorneys rarely offer anything of value and often prey on desperate consumers who are already overwhelmed by serious financial problems.  As we work hard to help homeowners avoid foreclosure, we are continually learning about people who have been victimized by these firms.

Thank you for reviewing our correspondence.  Please call or email me if you have any questions.

Matt

Matt Pulle

Tennessee Attorney General's Office
Assistant Attorney General/Mortgage Settlement Coordinator
Consumer Advocate & Protection Division
Post Office Box 20207
Nashville, Tennessee 37202-0207

(615) 741-3533 Work
Matt.Pulle@ag.tn.gov

This office is unable by law to represent individuals. As a result, if
you believe you have a matter requiring legal assistance or advice, you
should seek the assistance of a private attorney. Failure to commence
legal action within certain time frames may bar you from obtaining legal
relief. Therefore, you should act quickly to consult with an attorney to
review your rights.

The information contained in this e-mail message is intended only for
the use of the individual or entity named above. If the reader is not
the intended recipient, or the employee or agent responsible for
delivering it to the intended recipient, you are hereby notified that
any dissemination, distribution, or copying of this communication is
strictly prohibited. If you have received this communication in error,
please immediately notify us by telephone at 615-741-1671 and
permanently delete the message from your system. Receipt by anyone other
than the intended recipient is not a waiver of any joint prosecution or
investigation privilege, attorney-client privilege, work product
immunity or any other privilege or immunity.

**Jonathan LaGuna**

**From:** Matt Pulle [Matt.Pulle@ag.tn.gov]
**Sent:** Wednesday, July 10, 2013 11:59 AM
**To:** OPC Staff
**Subject:** Update 2: complaint against Benjamin Horton

Preferred Law continues to call the complainant, sometimes leaving up to four messages a day. They are also apparently trying to re-enroll her as well which would cost her close to $300 a month.

---

**From:** Matt Pulle
**Sent:** Friday, June 21, 2013 3:18 PM
**To:** opcstaff@utahbar.org
**Subject:** complaint against Benjamin Horton

To whom it may concern,

My name is Matt Pulle and I'm an Assistant Attorney General with the Tennessee Attorney General's Office where I am leading our state's efforts to implement the National Mortgage Settlement.  I wanted to provide some additional background to a complaint soon to be filed by ███ ███ a Tennessee consumer, against a Utah attorney named Benjamin Horton and his firm Preferred Law.

In the course of my duties, I learned about Ms. ███ who is at risk of foreclosure. She says that a paralegal from Preferred Law in Sandy, Utah contacted her about her mortgage with JP Morgan Chase. The paralegal took down financial information from the consumer and said that she qualified for a two-percent interest rate. *This was a false statement* as there are no federal or state programs that would give a consumer a two-percent interest rate based purely on stated financial information.

The paralegal at Preferred Law assured the consumer that her firm has a special relationship with Chase, a contention that was vigorously denied by our office's Chase representative. After winning over Ms. ███ confidence, the paralegal sent her a contract and told her that  she needed to make a  $1,000 down payment to Preferred Law. The consumer did as instructed and later made four monthly payments of $780.00.

As far as our office can tell, Preferred Law offered nothing of value to the consumer. In fact, she's in a far worse position today than when she first started working with the firm. Our conversations with Chase confirm this. Mr. Horton is listed as the firm's lone attorney although to my knowledge she did not speak directly with him.

Although we have not done a complete investigation of Preferred Law, we are concerned that the firm's actions may be in violation of the following provisions of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.:

•       Unfair or deceptive acts or practices affecting the conduct of any trade or commerce. Tenn. Code Ann. § 47-18-104(a).

•       Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of services. Tenn. Code Ann. § 47-18-104(b)(2).

•       Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another. Tenn. Code Ann. § 47-18-104(b)(3).

**Alisa Webb**

| | |
|---|---|
| **From:** | Matt Pulle [Matt.Pulle@ag.tn.gov] |
| **Sent:** | Monday, August 19, 2013 2:07 PM |
| **To:** | OPC Staff |
| **Subject:** | FW: Complaint against Benjamin Horton--update |



RECEIVED
AUG 1 9 2013
Office of Professional Conduct

To whom it may concern,

I wanted to provide an update on the case outlined below. Preferred Law continued to contact the borrower even though she has indicated that she does not want to work with them. It appears that Preferred Law, knowing that is the subject of an investigation, is trying to mend fences with the borrower. In the process, however, they appear to be causing her great stress.

Thank you.

Matt

> **From:** Matt Pulle
> **Sent:** Friday, June 21, 2013 3:18 PM
> **To:** opcstaff@utahbar.org
> **Subject:** complaint against Benjamin Horton
>
> To whom it may concern,
>
> My name is Matt Pulle and I'm an Assistant Attorney General with the Tennessee Attorney General's Office where I am leading our state's efforts to implement the National Mortgage Settlement. I wanted to provide some additional background to a complaint soon to be filed by ████ ████ a Tennessee consumer, against a Utah attorney named Benjamin Horton and his firm Preferred Law.
>
> In the course of my duties, I learned about Ms. ████ who is at risk of foreclosure. She says that a paralegal from Preferred Law in Sandy, Utah contacted her about her mortgage with JP Morgan Chase. The paralegal took down financial information from the consumer and said that she qualified for a two-percent interest rate. *This was a false statement* as there are no federal or state programs that would give a consumer a two-percent interest rate based purely on stated financial information.
>
> The paralegal at Preferred Law assured the consumer that her firm has a special relationship with Chase, a contention that was vigorously denied by our office's Chase representative. After winning over Ms. ████ confidence, the paralegal sent her a contract and told her that she needed to make a $1,000 down payment to Preferred Law. The consumer did as instructed and later made four monthly payments of $780.00.
>
> As far as our office can tell, Preferred Law offered nothing of value to the consumer. In fact, she's in a far worse position today than when she first started working with the firm. Our conversations with Chase confirm this. Mr. Horton is listed as the firm's lone attorney although to my knowledge she did not speak directly with him.
>
> Although we have not done a complete investigation of Preferred Law, we are concerned that the firm's actions may be in violation of the following provisions of the

# FAX

| | |
|---|---|
| **From:** | Modification Review Board - Preferred Law, PLLC |
| **Return Fax:** | (888)224-6524 |
| **Attention To:** | ██ ██ |
| **Regarding:** | Confirmation |

I have received all your paperwork and have forwarded your file to the legal department. The paralegal to whom your modification file is assigned will be your new contact person. The toll free number for the Law Offices of PREFERRED LAW, PLLC, is: (801) 386-5100. Please give your paralegal 24 hours to respond to your phone calls. As a back up, you can contact Shannon Martinez at (801) 386-5100 extension 202. Your third option is to call extension #200.

In addition, I have attached the notes regarding a possible credit of your Crisis Fee if Chase has stopped your sale. (Please note that postponing it is not the same as stopping it. If you still have a sale date any date in the future, the Crisis Fee applies)

As we discussed there will be documents that Preferred Law will need you to complete and sign.

One is a retainer agreement. Please be advised that there is a section that outlines the "value" of the services we provide. It is just that. If you read it carefully, it is not a payment schedule. Your payment plan is the schedule you signed. .not the description for services and the dollar amount given for it's "value" found in the Retainer Agreement.

In addition, there is a section in the agreement that addresses a "no guarantee" policy, however, your guarantee letter is binding. The reason for the verbage in the agreement is because we cannot offer a blanket guarantee. We cannot guarantee that your circumstances will not change, nor can we guarantee that you will get us the documents we need when we need them This is why the guarantee letter we gave you outlines the requirements for the guarantee we've given you. Again, the guarantee you have been given is binding and supercedes the verbage in the agreement as far as the provisions of the guarantee are satisfied.

If you have any questions, please don't hesitate to call.

PX20 - 913



# Utah State Bar

**Office of Professional Conduct**
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-8912
E-mail: opc@utahbar.org

**Billy L. Walker**
Senior Counsel

**Todd Wahlquist**
Deputy Senior Counsel

**Diane Akiyama**
Assistant Counsel

**Adam C. Bevis**
Assistant Counsel

**Sharadee Fleming**
Assistant Counsel

**Barbara L. Townsend**
Assistant Counsel

October 28, 2013

Benjamin R. Horton
2825 E Cottonwood Pkwy
Ste. 500
Salt Lake City, UT 84121

## NOTICE OF INFORMAL COMPLAINT
### OPC File No.:13-0413

Dear Mr. Horton:

███████ ████ has filed an informal complaint against you with the Utah State Bar's Office of Professional Conduct ("OPC"). You were already provided a copy of the complaint. Nevertheless, another true copy of the signed informal complaint is attached hereto, along with copies of any supplemental information this office has received.

Based on the complaint and our investigation thus far, this is a summary of our viewpoint as to what has occurred:

1.     Ms. ██████ home was in foreclosure and she was attempting to seek assistance with a loan modification. She was contacted by Preferred Law, and told that she would be able to obtain a modification with a reduced balance and a fixed 2% interest rate.

2.     On December 19, 2012 she signed a fee agreement with Preferred Law and paid the initial $1,000 payment.

3.     Ms. █████ faxed requested documents to Preferred Law. She states she worked with Rebecca Peace, Wendi Kartchner, and Jenna Adam. It does not appear that she ever discussed her case with you as the supervising attorney.

4.     Shortly before she made her fifth installment payment to Preferred Law she was contacted and told that she would not qualify for a modification and should pursue other alternatives.

5.     Ms. ██████ believes she was misinformed about the services you could provide and was overcharged for legal work.

PX20 - 914

6.      Ms. ■■■ contacted the Tennessee Attorney General's office and complained about your business practices. The correspondence from Mr. Matt Pulle, Assistant Attorney General, is in the OPC file.

We have talked to the following witnesses and reviewed the following documents to reach the above summary: at this point the OPC investigation is limited to the materials in the file.

Considering the information currently available, we believe the following Rules of Professional Conduct are implicated:

Rule 1.2(a), Scope of Representation and Allocation of Authority Between Client and Lawyer. This rule states: "Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." You may have violated this Rule based upon the allegations in paragraph 3.

Rule 1.5(a). Fees. This rule states: "A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following 1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; 2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; 3) the fee customarily charged in the locality for similar legal services; 4) the amount involved and the results obtained; 5) the time limitations imposed by the client or by the circumstances; 6) the nature and length of the professional relationship with the client; 7) the experience, reputation and ability of the lawyer or lawyers performing the services; and 8) whether the fee is fixed or contingent." You may have violated this Rule if you failed to perform sufficient work to earn the fees you collected from Ms. ■■■

PX20 - 915

Rule 5.5(a). Unauthorized Practice of Law; Multijurisdictional Practice of Law. This rule states: "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." You may have violated this Rule by engaging in the practice of law in Tennessee if you are not licensed to practice there.

Rule 7.1. Communications Concerning a Lawyer's Services. "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading." You may have violated this Rule based upon certain statements that were made to Ms. ████ For example, she alleges that she was informed she would be able to obtain a 2% interest rate of she retained Preferred Law. Also, in a letter dated December 18, 2012 she was guaranteed to obtain a loan modification (based upn certain conditions).

**Please note that as the investigation continues, including the screening panel process, if necessary, facts may be developed that implicate additional rules not included in this Notice.**

Rule 14-510(a)(5) of the Rules of Lawyer Discipline and Disability ("RLDD"), as amended of January 1, 2003, provides, "[w]ithin twenty (20) days after service of the Notice of Informal Complaint on the respondent, the respondent shall file with OPC counsel a written and signed answer setting forth in full an explanation of the facts surrounding the informal complaint, together with all defenses and responses to the claims of possible misconduct." If you previously submitted a written response, you may incorporate your previous response into your answer to this Notice of Informal Complaint.

In addition, please provide any documents or other materials, which support your response or would otherwise assist us in evaluating the informal complaint. Do not submit original documents; the OPC cannot make photocopies, and will not be responsible for your originals. If at some point we need to review your original records, we will ask for them. If you have already submitted copies of all the documents you want us to consider as part of our review, you do not have to resubmit copies of these documents.

PX20 - 916

Please be advised Rule 8.1(b) of the Rules of Professional Conduct provides in material part, attorneys shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." Further, the Comment following the rule states "it is a separate professional offense for a lawyer to knowingly make a misrepresentation or omission in connection with a disciplinary investigation of the lawyer's own conduct. Paragraph (b) of this Rule also requires correction of any prior misstatements in the matter that the applicant or lawyer may have made an affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware." Failure to do so may constitute a separate violation of the Rules of Professional Conduct.

In appropriate cases Rule 14-533 of the Rules of Lawyer Discipline and Disability allows an attorney the option of diverting certain types of complaints away from discipline, and into one or more alternative programs, the suitability of which depends on the issues and/or misconduct presented by the complaint. The text of the Rule includes conditions that must be met, and enumerates factors essential to determining whether or not diversion is appropriate. The Rule also requires the attorney to pay certain fees in order to participate in diversion. The OPC suggests you review this Rule. Should you choose diversion, and diversion is appropriate, please notify the OPC of your decision, in writing.

If, under Rule 14-510(b)(1) of the RLDD, the OPC refers the matter to a Screening Panel of the Ethics and Discipline Committee of the Utah Supreme Court, you will be notified of the date and time set for a hearing. Please note that Rule 14-510(b) of the RLDD sets forth Screening Panel hearing proceedings. If the matter is heard by a Screening Panel, pursuant to Rule 14-510(b)(5), the Panel has the authority to make its determination based on the facts developed by the informal complaint, answer, investigation, the OPC recommendation and in the Screening Panel hearing. In other words, facts developed at the hearing may give rise to a determination of Rules of Professional Conduct violations not alleged in this Notice of Informal Complaint.

Please note, Rule 14-532(a) of the RLDD provides, "[i]f having received actual notice of the charges filed, the respondent fails to answer the charges within twenty (20) days, the respondent shall be deemed to

PX20 - 917

Page 5 of 7

have admitted the factual allegations." Accordingly, if you do not provide a response to the charges in this Notice of Informal Complaint within 20 days, the OPC may request the Screening Panel find the allegations are admitted.

PX20 - 918

Page 6 of 7

       If you have any questions concerning this matter please call me at the telephone number shown above. Thank you for your anticipated cooperation.

                  Sincerely,

                  Adam C. Bevis
                  Assistant Counsel
                  Office of Professional Conduct

ACB/jl
Enclosure
cc: ▓▓▓ ▓▓▓ (w/out enclosure)

PX20 - 919

## CERTIFICATE OF SERVICE

I hereby certify that on the _28_ day of _October_, 2013, the foregoing Notice of Informal Complaint was mailed via United States first-class mail, postage pre-paid to Benjamin R. Horton at 2825 E Cottonwood Pkway , Ste. 500, Salt Lake City, UT 84121, the address reflected in the records of the Utah State Bar.

PX20 - 920



# Utah State Bar

**Office of Professional Conduct**
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-9912
E-mail: opc@utahbar.org

Billy L. Walker
*Senior Counsel*

Todd Wahlquist
*Deputy Senior Counsel*

Diane Akiyama
*Assistant Counsel*

Adam C. Bevis
*Assistant Counsel*

Sharadee Fleming
*Assistant Counsel*

Barbara L. Townsend
*Assistant Counsel*

January 15, 2014



Huntington, TN

     Re:    Complaint Against Benjamin R. Horton
             OPC File No.: 13-0635

Dear Ms. ███

     Enclosed is a Screening Panel Calendar Notice indicating the date and time of the Screening Panel Hearing in the complaint you filed against Mr. Horton. We ask that you arrive 15 minutes prior to the hearing. The hearing is scheduled to last approximately one hour. The Screening Panel Hearing will not take place in a courtroom, but rather a more informal setting at the Utah State Bar Law and Justice Center.

     Prior to the Screening Panel hearing, the Office of Professional Conduct will prepare a file including all the information submitted by you and Mr. Horton. This file will be provided to you, Mr. Horton, and the members of the Screening Panel approximately one week before the hearing via YouSendIt, an online cloud service. We will have a hard copy available at the hearing, but you are free to print out a copy and bring it with you if you wish.

     The purpose of the hearing is to further clarify any questions that the Screening Panel Members have, develop other evidence, or clarify questions not answered by the written materials. It will not be necessary for you to restate or repeat any of the matters contained in the packets. It is important to note that the Screening Panel is only concerned with the attorney's alleged conduct and cannot order an attorney to refund any money.

     The hearing begins with an introduction of everyone in attendance. The Screening Panel Chair will then read an opening statement. After that, anyone who will be testifying will be placed under oath. At that point, the hearing is turned over to the Panel Member who is assigned to the case to begin questioning. Prior to the conclusion of the hearing both you and Mr. Horton usually will be allowed to give a closing statement. Once the Screening Panel Hearing is finished the members will deliberate until they reach a decision. Ordinarily, the decision will be mailed to both you and Mr. Horton the day following the hearing.

PX20 - 921

Page 2 of 2

Please contact my assistant Jonathan Laguna at 801-297-7048 to confirm your attendance at the hearing or to make the necessary arrangements for a telephonic appearance.

Sincerely,

/Barbara L. Townsend
Assistant Counsel
Office of Professional Conduct

BLT/jl
Enclosure
cc: Benjamin R. Horton w/encl.

Updated: 8/21/12

PX20 - 922

BEFORE THE COMMITTEE ON ETHICS AND DISCIPLINE

OF THE UTAH SUPREME COURT

| In the Matter of the Complaint by | ) | |
|---|---|---|
| | ) | **CALENDAR NOTICE** |
| ▮▮▮▮▮ | ) | |
| Against | ) | **13-0413** |
| | ) | |
| Benjamin R. Horton, Attorney at Law | ) | |

To:  The above-named Complainant and Respondent:

The Utah State Bar's Office of Professional Conduct ("OPC") has referred the above-identified informal complaint for review by a Screening Panel of the Ethics and Discipline Committee of the Supreme Court.

The Screening Panel is appointed by the Utah Supreme Court to hear and consider complaints filed against Respondents for alleged violations of the Rules of Professional Conduct. This panel has the authority to dismiss the complaint(s), issue a caution to the Respondent, issue a private admonishment to the Respondent, issue a public reprimand to the Respondent, or determine that there is probable cause to authorize filing a formal complaint against the Respondent for further proceedings. The Screening Panel in disciplinary matters is concerned only with the Respondent's alleged conduct and cannot order restitution for repayment of money or a judgment against the Respondent.

Pursuant to Rule 14-510(b)(1) of the Rules of Lawyer Discipline and Disability ("RLDD"), as amended November 1, 2009, the Screening Panel has the authority to make its determination based on facts developed by the informal complaint, answer, investigation, the OPC recommendation, and in the <u>Screening Panel hearing</u>. In other words, facts developed at the hearing may give rise to a determination of Rules of Professional Conduct violations not previously alleged in the Notice of Informal Complaint(s) in this matter.

The Screening Panel will conduct a hearing in this matter on **Thursday, March 13, 2014 beginning at 11:30 AM** at the Utah Law and Justice Center at 645 South 200 East, Salt Lake City, Utah. Please note that it would be advisable that you arrive fifteen minutes prior to the time set for your case so that if a case scheduled before your case ends early, you will be ready to proceed earlier than your appointed time. Each case will be set to be heard in a maximum one hour time period.

Complainants and Respondents will be allowed to present their case as set forth below within this maximum time period. If a Complainant or Respondent feels that

PX20 - 923

additional time is needed for their case to be heard, a written request for this additional time must be made to the OPC within five working days from the date of this Calendar Notice. The written request must specify with particularity the reasons for the additional time. The OPC will forward the request for additional time to the Chair or Vice Chair of the Screening Panel, who will announce at the time and place set for the hearing whether additional time will be allowed.

Prior to every case the members of the Screening Panel will have had an opportunity to review all of the information submitted by the parties so that in most cases, one hour per case will be sufficient time to allow the parties to summarize their positions, answer the Screening Panel's questions, and elaborate on what they feel are important pieces of information. Please note that approximately one-week prior to the hearing both the complainant and respondent will be provided with the complete file of all the documents that have been provided to the OPC. This file will be indexed and numbered on each page and will be the official record for the proceeding as reviewed beforehand by the Panel. Therefore, the parties are hereby notified that they should review the official record that they receive to ensure that the documents that they have provided have been enclosed and that they should be prepared to have the hearing conducted based on the official record. After the hearing, the Panel will deliberate and make a decision concerning the case.

Pursuant to Rule 14-510(b)(2) of the RLDD, the Respondent is hereby afforded an opportunity to appear before the Screening Panel and testify under oath, together with any witnesses called by the Respondent, and to present an oral argument with respect to the informal complaint. All testimony will be recorded and preserved so long as proceedings are pending. At least ten days in advance of the hearing, Respondents may submit a written brief, not to exceed ten pages in length. A copy of the brief will be forwarded to the Complainant.

Pursuant to Rule 14-510(b)(3) of the RLDD, the Complainant has the right to appear before the Screening Panel and to testify under oath, together with any witnesses called by the Complainant. The Complainant may be represented by counsel or some other representative.

Pursuant to Rule 14-510(b)(4) of the RLDD, the Complainant and the Respondent each have the right to be present during the presentation of evidence unless they are excluded from the hearing by the Screening Panel Chair or Vice Chair for good cause shown. Either the Complainant or the Respondent may seek responses from the other by posing questions to be asked by the panel chair. Direct cross examination will not be permitted except on request when the panel chair deems it would materially assist the panel in its deliberations.

Please be advised that Rule 14-532(b) of the RLDD provides that "[i]f the Respondent, having been ordered by the Committee to appear and having received actual notice of that order, fails to appear, the Respondent shall have been deemed to have admitted the factual allegations which were the subject of such appearance. The Committee shall not, absent good cause, continue or delay proceedings because of Respondent's failure to appear." In this respect, this Calendar Notice is the Committee's order requiring the Respondent to appear. If the Respondent does not

Page 3 of 4

appear, the OPC may request that the factual allegations in this matter be deemed admitted.

For good cause, the Complainant, the Respondent, and any witnesses may arrange in advance to appear at the hearing by telephone. If you need to request to appear by telephone, call Jonathan Laguna at 801-297-7048.

Requests by the Respondent for continuances from the above-set Screening Panel hearing date, unless stipulated to by the OPC, shall be made in writing through the OPC to the Chair or Vice-Chair of the Ethics and Discipline Committee. Upon consideration of the position of the OPC and the reasons for the Respondent's request for the continuance, the Chair or Vice Chair of the Ethics and Discipline Committee shall decide whether to grant the continuance.

Barbara L. Townsend is the attorney assigned to this case.

Scheduled Panel members are:

Michael McCarthy – Chair
P. Matthew Muir
Victoria Cramer
Kim Cordova
Gary N. Anderson
Jonathan Pappasideris
Dan Sorensen
Suzanne Potts

DATED: January 15th, 2014

OFFICE OF PROFESSIONAL CONDUCT

Barbara L. Townsend
Assistant Counsel
Telephone: (801) 531-9110

Todd Wahlquist
Deputy Senior Counsel
Telephone: (801) 531-9110

PX20 - 925

Page 4 of 4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _15_ day of January, 2014, I mailed via United States first-class mail, postage prepaid, the foregoing Calendar Notice to:

Benjamin R. Horton
2825 E Cottonwood Pkwy
Ste. 500
Salt Lake City UT 84121

Sent to private address



Huntington, TN

PX20 - 926

**Eliza Tito**

| | |
|---|---|
| **From:** | Todd Wahlquist |
| **Sent:** | Tuesday, February 18, 2014 8:57 AM |
| **To:** | Eliza Tito |
| **Subject:** | Benjamin Horton |

Eliza,
Mr. Horton left me a message yesterday saying he was sending in a response to the NOIC.  Will you please print out this email and add it to the file.

Todd Wahlquist

PX20  028

**SUPREME COURT OF UTAH**

**ETHICS AND DISCIPLINE COMMITTEE SCREENING PANEL**

|  | ) | |
|---|---|---|
| ███████ | ) | **SUMMARY OF OPC'S INVESTIGATION** |
|       **Complainant,** | ) | **AND** |
|  | ) | **RECOMMENDATIONS** |
| **BENJAMIN R. HORTON** | ) | |
|  | ) | |
|       **Respondent.** | ) | **OPC Case No. 13-0413** |
|  | ) | |

The Office of Professional Conduct ("OPC") opened a case on June 28, 2013, based upon information received from ███ ███ concerning attorney Benjamin R. Horton.  Pursuant to Rule 14-504 of the Utah Rules of Lawyer Discipline and Disability, the OPC conducted an investigation of the information.  In accordance with Rule 14-510(a)(5), the OPC has determined that the informal complaint could not be resolved by other means, or that the informal complaint sets forth facts which, by their very nature, should be brought before the Screening Panel, or that good cause otherwise exists to bring the matter before the Screening Panel. Therefore, the OPC is bringing the case before the Ethics and Discipline Committee for investigation, consideration and determination or recommendation.   To assist the Committee, the OPC offers the following: (1) a summary of the facts, (2) a summary of the allegations, (3) a summary of the attorney's response to the allegations, (4) the OPC's recommendation regarding

PX20 - 929

potential rule violations, and (5) a discussion of issues and questions the Committee may want to explore in the course of its investigation.

## FACTS

1.  ███ ███ resides in Huntingdon, Tennessee. (004)

2.  Ms. ███ hired Preferred Law, PLLC, a law office, for purposes of obtaining a mortgage modification with a reduced interest rate. (004 – 005)

3.  On December 18, 2012, a fax was sent to Ms. ███ and her husband from Modification Review Board – Preferred Law, PLLC.  Attached to the fax were "testimonials" of other clients who had hired Preferred Law and received loan modifications. (077 – 0118)

4.  On December 19, 2012, a fax was sent to Ms. ███ from Modification Review Board – Preferred Law, PLLC which stated that although the agreement addresses a "no guarantee" policy, Ms. ███ guarantee letter "is binding . . . the guarantee you have been given is binding and supercedes the verbage in the agreement . . .." (062)

5.  In a letter to Ms. ███ dated December 18, 2012, Preferred Law guaranteed that a modification could be secured for Ms. ███ conditioned upon several requirements.   Included with the letter was a payment schedule for payments totaling $4,900.00, to be made over six months. (004 – 005)

2

PX20 - 930

6.     Ms. ██ made payments to Preferred Law as follows: on December 20, 2012 - $1,000.00; on January 24, 2013 - $780.00; on February 22, 2013 - $780.00; on March 21, 2013 - $780.00; and, on April 23, 2013 – $780.00. (006 – 007) (008) (010) (012) (014)

7.     The fee and representation agreement was sent to Ms. ██ dated January 4, 2013, thanking her for choosing the law firm, Preferred Law, PLLC. (047 – 052)

8.     The representation agreement contains a Limitation of Liability clause. (050)

9.     Ms. ██ signed Addendum A to the Limited Services Agreement on January 15, 2013.  The Addendum laid out the legal services to be provided to Ms. ██ (044 – 046)

10.    The Addendum also states "Funds paid to Preferred Law may in its discretion be disbursed immediately or be held in a trust account governed by Utah law until such fees are earned by and disbursed to Preferred Law . . .." (044)

11.    In an email to Ms. ██ dated July 1, 2013, a negotiations manager for Preferred Law indicated that Ms. ██ needed to sign and return the included Continuity Fee Form, for payment of an additional required $297.00 monthly fee until a decision was rendered on her file. (074 - 075)

PX20 - 931

12.  At some point Ms. ▆▆▆ contacted the Tennessee Attorney General's Office which implements the National Mortgage Settlement and helps persons like Ms. ▆▆ facing foreclosure. (030 – 032)

13.  Matt Pulle as attorney with the Tennessee AG's Office initiated an investigation into Ms. ▆▆▆ case. (030 – 032)

14.  On June 21, 2013, Mr. Pulle sent an email to the Office of Professional Conduct regarding his investigation and Mr. Horton's involvement. (030 – 032)

15.  Mr. Pulle concluded that Preferred Law offered nothing of value to Ms. ▆▆▆ and that she was in a far worse position as a result of her affiliation with Preferred Law. (030)

## WITNESSES

As part of its preliminary investigation, the OPC routinely contacts witnesses who may have information related to the allegations contained in the complaint. The following witness will be available to offer testimony at the screening panel hearing:

1.  Matt Pulle. Mr. Pulle is an Assistant Attorney General with the Tennessee Attorney General's Office. Mr. Pulle is involved with Tennessee's efforts to implement the National Mortgage Settlement and became involved with Ms. ▆▆▆ in connection with her efforts to obtain a modification of her mortgage through Preferred Law. Mr. Pulle will be available at the Screening Panel Hearing. (024-032).

4

## ███ ████ ALLEGATIONS

Ms. ███ states her home was in foreclosure so she began looking into the federal Making Homes Affordable program.   At that time, she was contacted by Preferred Law and after providing them with information regarding her delinquent mortgage, she was told by a representative that Preferred Law could work with her mortgage lender, Chase Bank, to obtain a reduced balance and 2% interest rate.

Ms. ███ alleges that she signed a fee and representation agreement and began making monthly payments to Preferred Law, providing them with the necessary forms and information as requested.   Ms. ███ indicates that over the course of her representation, all communications she had with Preferred Law went through Rebecca Peace, Wendi Kartchner, and Jenna Adam.

After making payments to Preferred Law over five months, totaling $4,120.00, Ms. ███ asserts that a day or two before her final payment was to be drawn, she was informed by Ms. Adam that Preferred Law would not be able to obtain a modification of her mortgage because her past due amount was too great and that she should pursue other alternatives.   After receiving this information, Ms. ███ maintains that she then stopped making monthly payments and contacted the Tennessee Attorney General's Office regarding Preferred Law's business practices.

PX20 - 933

## BENJAMIN R. HORTON'S RESPONSE

Mr. Horton did not respond to the OPC's Notice of Informal Complaint.

## ISSUES AND QUESTIONS

1.    <u>What was the relationship between Preferred Law, a law office, and Modification Review Board?</u>

If there was a direct relationship between the two companies where Mr. Horton is the only attorney and fees were shared by work done or in a commission format, then this could violate Rule 5.4.

2.    <u>Is Mr. Horton putting advance legal fees into a Trust Account until earned?</u>

Mr. Horton's representation agreement indicates that he has discretion as to whether or not he can immediately take an advance fee or whether he needs to put it into a trust account until the fee is earned.  If he is not putting advance fees into a Trust Account until he earns the fees, he is violating Rule 1.15(c).

## OPC'S RECOMMENDATIONS

Based solely on the OPC's investigation thus far, and recognizing that the Screening Panel may find additional facts during the hearing or in the course of its investigation, the OPC believes that Mr. Horton may have violated the following Rules of Professional Conduct and makes the following recommendations:

<u>RULES IMPLICATED</u>:

Rule 1.5(a). Fees. This rule states: "A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The

PX20 - 934

factors to be considered in determining the reasonableness of a fee include the following: 1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; 2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; 3) the fee customarily charged in the locality for similar legal services; 4) the amount involved and the results obtained; 5) the time limitations imposed by the client or by the circumstances; 6) the nature and length of the professional relationship with the client; 7) the experience, reputation and ability of the lawyer or lawyers performing the services; and 8) whether the fee is fixed or contingent."

Rule 1.8(h)(1) Conflict of Interest: Current Clients: Specific Rules.   This rule states: "A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement."

Rule 5.4 Professional Independence of a Lawyer.  This rule states: "(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that: (a)(1) an agreement by a lawyer with the lawyer's firm, partner or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons; (a)(2)(i) a lawyer who purchases the practice of a deceased, disabled or disappeared lawyer may, pursuant to the provisions of Rule 1.17, pay to the estate or other representative of that lawyer the agreed-upon purchase price;

7

PX20 - 935

and (a)(2)(ii) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and (a)(3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.

(c) A lawyer shall not permit a person who recommends, employs or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.

(d) A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if: (d)(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; (d)(2) a nonlawyer is a corporate director or officer thereof or occupies the position of similar responsibility in any form of association other than a corporation; or (d)(3) a nonlawyer has the right to direct or control the professional judgment of a lawyer.

PX20 - 936

(e) A lawyer may practice in a non-profit corporation which is established to serve the public interest provided that the nonlawyer directors and officers of such corporation do not interfere with the independent professional judgment of the lawyer."

Rule 5.5(a). Unauthorized Practice of Law; Multijurisdictional Practice of Law. This rule states: "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so."

Rule 7.1. Communications Concerning a Lawyer's Services. This rule states: "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading."

Rule 8.4(c) Misconduct.  This rule states: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

With respect to fees, it appears that Mr. Horton charged and collected a large fee for little or no legal services rendered.  As such, Rule 1.5 is implicated.  With respect to the fee agreement, Mr. Horton limits his liability in violation of Rule 1.8(h)(1).  Rule 5.4 may have been violated if Mr. Horton is in fact sharing fees with a non-lawyer.  By having non-lawyers and no other lawyers performing "legal" services and in that their conduct violates the rules, Mr. Horton appears to have violated Rule 5.5 by his failure to supervise his non-lawyer employees.  Mr. Horton's advertising materials and his states

PX20 - 937

in writing regarding a guarantee are misleading and may violate Rule 7.1. The fact that Mr. Horton holds his law firm out as providing legal services and representations that his firm will be able to obtain a modification are dishonest and deceitful. As such this conduct may violate Rule 8.4(c).

Based on a consideration of all the available information, it is the opinion of the OPC that there is sufficient evidence to support a finding of probable cause that Benjamin R. Horton knowingly violated a Rule of Professional Conduct, and the OPC recommends that the screening panel direct the OPC to file with the district court a formal complaint against Mr. Horton*

*Please note that a formal complaint recommendation does not necessarily mean that an attorney should be suspended or disbarred. The OPC will seek an appropriate sanction as developed by the evidence during the course of the civil case.

At the District Court level it is a trial de novo in accordance with the Rules of Civil Procedure and Rules of Evidence. The District Court pursuant to Rule 14-603 of the Standards for Imposing Lawyer Sanctions has the full range of possible sanctions including Reprimand, Admonition, Probation, Suspension, Disbarment, etc. The District Court can also dismiss the case and any alleged rule violations not established by a preponderance of the evidence.

PX20 - 938



# Utah State Bar

Office of Professional Conduct
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-9912
E-mail: opc@utahbar.org

Billy L. Walker
Senior Counsel

Todd Wahlquist
Deputy Senior Counsel

Diane Akiyama
Assistant Counsel

Adam C. Bevis
Assistant Counsel

Sharadee Fleming
Assistant Counsel

Barbara L. Townsend
Assistant Counsel

March 14, 2014

Benjamin R. Horton
Preferred Law
2825 East Cottonwood Pkwy, Ste 500
Salt Lake City, UT 84121

Re:   Complaints Filed Against Benjamin R. Horton
      OPC File Nos.: 13-0635, 13-0163, 13-0413

Dear Mr. Horton:

At the conclusion of the hearing on March 13, 2014, the Screening Panel of the Ethics and Discipline Committee of the Utah Supreme Court voted to direct the OPC to file a Formal Complaint against you in District Court. After the Complaint is filed and you have submitted your Answer, I am willing to discuss resolution of this matter.

If you would like a copy of the video recording(s) of the Screening Panel Hearing, we will produce it at your request at the cost of $15.00 per DVD. Please let us know at your earliest convenience whether you want the video(s).

Finally, when the Formal Complaint is finalized (and this could take 1-3 months), if you are willing to accept service, please let us know. In most cases, we will try to send you a copy of the finalized Complaint 3-5 days before we will file it with the Court. It would be appreciated if you tell us in writing between now and your receipt of the copy of the Complaint whether you are willing to accept service. If we do not hear from you between now and then, we will assume that you are not willing to accept service; so we will personally serve you after the Complaint is filed.

Thank you for your cooperation.

Sincerely,

Barbara L. Townsend
Assistant Counsel
Office of Professional Conduct

BLT/et

_0214_

PX20 - 939

OPC Case

#14-0174

Benjamin R. Horton / OPC

PX20 - 040



# PRACTICE OF LAW BOARD
## STATE OF WASHINGTON
1325 Fourth Avenue, Suite 600, Seattle, WA 98101-2539
(206) 733-5941 ▪ Fax (206) 727-8314

April 2, 2014

Billy L. Walker
Utah State Bar
Office of Professional Conduct
645 South 200 East
Salt Lake City, UT 84111

Re:    Complaint Alleging Unauthorized Practice of Law
       File No. 14-04

Dear Mr. Walker:

The Practice of Law Board was created by the Washington Supreme Court with authority to investigate allegations of unauthorized practice of law in Washington. General Rule 25. We received the enclosed complaint against Benjamin R. Horton, a lawyer licensed to practice law in your state, not in Washington.

Because of our limited resources and the overlapping jurisdiction of the agencies with authority to license and discipline lawyers, the Board's policy is to refer complaints against active out-of-state attorneys to the disciplinary authority in the state where the lawyer is licensed as well as to the Washington State Bar Association's Office of Disciplinary Counsel.

Very Truly Yours,

Scott A. Smith

Scott A. Smith, Chair
Practice of Law Board

Enclosure

cc:    Felice Congalton, Washington State Office of Disciplinary Counsel
       Benjamin R. Horton, Respondent
       Devon P. Phelps, Complainant

PX20 - 941



R E C E I V E D
NOV – 1 2013
1404
WASHINGTON STATE
PRACTICE OF LAW BOARD

**PRACTICE OF LAW BOARD**
**STATE OF WASHINGTON**

### UNAUTHORIZED PRACTICE OF LAW (UPL) COMPLAINT FORM

*If you believe that you are the victim of a crime or fraud, you should also contact the local police. If you need legal assistance or advice, you should contact a lawyer.*

If you need assistance with this complaint, please call or email the Practice of Law Board at (206) 733-5941 or UPL@wsba.org.

**ABOUT YOU**
FIRST NAME _Devin_                    MIDDLE NAME _A._

LAST NAME _Phelps_

ADDRESS _150 Israel Rd_

CITY _Tumwater_    STATE _WA_ ZIP CODE _98501_

Telephone _360.664.7894_ E-mail Address _devin.phelps@dfi.wa.gov_

I wish to receive information by:    ☐EMAIL    ☑MAIL

**THE PERSON YOU ARE COMPLAINING ABOUT (RESPONDENT)**

☐ Paralegal

☐ Disbarred Lawyer

☑ Out of State Lawyer

☑ Other _Preferred Law, PPLC_

FIRST NAME _Benjamin_                 MIDDLE NAME _R._

LAST NAME _Horton_

ADDRESS _8180 South 700 East   STE 110_

CITY _Sandy_        STATE _UT_ ZIP CODE _84070-0364_

TELEPHONE _801.386.5100_  EMAIL _benhortonesq@yahoo.com_

Updated 08/08/2013                              1

PX20 - 942

Please include any web address, business license number, other business names, or other identifying information you have:

_____

_____

**CHECK ONE OR MORE AND THEN EXPLAIN WHAT HAPPENED**

A person not authorized to practice law in Washington:

☐ Gave legal advice;

☐ Selected, drafted or completed legal forms, documents, or agreements;

☐ Appeared in court or in a formal administrative proceeding;

☐ Negotiated legal rights or responsibilities for another person;

☐ Offered to provide legal services.

_____

_____

_____

_____

_____

_____

_____

_____

**WAS THERE A CHARGE FOR THE LEGAL SERVICES?** _____ . **IF YES,**

**Who paid** _____  **Amount paid** _____

Updated 08/08/2013                          2

PX20 - 943

Attach copies of any fee agreement, invoices, billing statements, canceled checks, or other documents showing payment.

**ATTACH COMPLAINTS FILED ABOUT THIS PROBLEM WITH ANY LAW ENFORCEMENT AGENCY OR PROSECUTING ATTORNEY.**

**ATTACH COPIES OF RELATED LAW SUITS OR OTHER LEGAL ACTION.**

I affirm that I have read this complaint and the facts stated in the complaint are, to the best of my knowledge, true.  I understand that this complaint form and all attachments will be sent to the respondent and may be made public or sent to other enforcement agencies.
*If you have concerns about the use or disclosure of your name or attachments, contact the Board at UPL@wsba.org.*

_____
Signature

Devon Phelps
Printed Name.

10/30/13
Date

MAIL TO:
PRACTICE OF LAW BOARD
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539

OR EMAIL  UPL@wsba.org

Updated 08/08/2013                    3

PX20 - 944

**DFI Complaint**
**MRS-39**

**Your Information**
Northwest Fair Housing Alliance
35 W. Main, Suite 250
Spokane, WA  99201
509-325-2665
Fax Number:
execdir@nwfairhouse.org

**Your Complaint is Against the Following Company:**
Company Name: Attorney Loan Modifications
Address: 8180 S. 700 E
Address Continued: #110
City: Sandy
Telephone: 853-254-8529
State: UT
Zip Code: 84070
Who You Contacted: Paul Cysewski

**Complaint/Problem**
NWFHA conducted a test of the website http://www.attorneyloanmodifications.com/ for compliance with the Mortgage Assistance Relief Services (MARS) rule (16 CFR 322) and the Mortgage Broker Practices Act of Washington (MBPA) (ch.19.146 RCW).  The tester was assigned tester profile #3, an email account, and a cell phone and phone number.  Tester was directed to call the phone number appearing on the target website: 855-254-8529.

On 5/7/13 at 4:14pm PST the tester called the assigned phone number and spoke to "Paul" (Agent). Agent asked Tester's name and phone number and the Tester said ▮▮▮▮▮▮▮▮▮▮▮▮▮.  The tester advised that he wanted to avoid foreclosure on his house, and was interested in learning whether he would qualify for a loan modification.  Agent asked who the lender was and Tester said U.S. Bank.  Agent asked if the loan was owned by Freddie Mac or Fannie Mae and Tester said he didn't know.  Agent asked about the balance on the mortgage and Tester said $94,456.  Agent asked when the house was purchased and Tester said in 2006.  Agent asked what his payment was and /tester said $750, with taxes.  Agent asked how much went to escrow and Tester said $133.  Agent asked for the address and Tester gave him the address from his profile.  Agent asked for the last four digits of Testers' SN to find out online what his escrow payment was and whether it was owned by Fannie Mae or Freddie Mac. Agent said he was not comfortable giving that over the phone.

Agent said he was originally from Coeur d'Alene and it was nice to talk to someone from the Inland NW. Agent said he'd been a mortgage broker for 12 years, had done well for himself, but had lost his house about six years ago and knew what it was like to on the other side.
Agent said that banks are never allies. They made more money on foreclosures than carrying mortgages. Tester said he'd tried to talk with the bank he could never get past customer service.  Agent said he had a negotiating staff and Tester would have the same contact paralegal he would work with throughout the process..Agent said his company did 50 loan modifications a month with US Bank alone, and 240 per month total.  Agent said that is reported to the BBB, and was in good standing, but was not rated

because loan modification is such a new industry.  Agents said they had referrals from FHA, HUD, and DOJ.  Agent said there was an article in the NY Times about them, which he was going to forward to Tester, along with other attachments about them, and the process for the loan modification itself.  He said these attachments would have details about HAMP and settlement stipulations. Agent said the way to get US Bank to agree with the modification was to do a Forensic Audit in order to expose errors and give Tester more leverage.  H said banks keep people in the dark as to what services are available to the common person.

Tester gave Agent his payment and income information and Agent said Tester was paying 45% of his income towards his mortgage, and said he could work to get that down to 31%.  Agent asked if Tester's SSDI income was health related and Tester said yes.  Tester said he started having health problems last year and was able to make payments for awhile but was now 70 days behind in payments.  Tester said he had tried to make partial payments but to no avail.

Tester said he had talked to other companies who said they couldn't help him because he is in WA and they were in another state.  Agent said his company served all 50 states but was not located in WA.  Paul explained he would compile Tester's information and submit it to a review board and mentioned Preferred Law, and said they would issue a cease and desist order to US Bank and do a QDR.  The forensic audit would expose errors and give them leverage.  Agent said it was natural for a bank to reject the first 2 to 3 offers his company gave, but because of his situation it would be  no problem to get a modification and get his mortgage payment lowered to $558 per month.  Agent said the modification package is protected by law, and that the bank could not foreclose on him during the 6-8 months this process would take.  Tester asked about the costs.  Agent said he could pay $650 for 6 months ($3,900) or $500 for 8 months.  Agent said that Tester would not be making mortgage payments for 6-8 months and would be issued a letter of guarantee explaining how he was protected.  Tester asked if it was a government program and Agent said it was like a government program, administratively speaking.  Agent said he would submit Tester's information to the review board (presumably Modification Review Board), but Tester told him not to as he knew he needed to make a decision soon and needed to give the matter some serious thought.  Paul asked when would be a good time to get ahold of Tester and he said in 2 days.  Tester thanked the agent and call ended at 4:41pm PST.

On May 7, 2013 at 4:55pm PST, Paul Cysewski, Loan Modification Advisor, sent an email to tester which Agent wrote included "a compilation of some of the more difficult cases Preferred Law has litigated, testimonials, Section 3.3 of the HAMP that they enforce which protects you from the lender selling your home while your modification is being reviewed, even if you are *not* making your mortgage payments, the investigative article I referred to and lastly the guideline they enforce that dictates your payment will be reduced to 31% of your monthly household income."

The Agent included "Preferred Law links" and a link to the bbb.org for Utah.  Numerous redacted letters were included that appear to reference details of trial period plans for former clients.  A printout from the Yelp website with 2 favorable reviews in support of the Modification Review Board was also included and several testimonial letters in favor of Bobbie Collins and Preferred Law Team.  The sec. 3.3 from the MHA HAMP Handbook describes how submission of a request for HAMP consideration after a foreclosure sale date has been scheduled can suspend a foreclosure sale.

The attached 2009 NYT article, "Lenders not eager to help fix mortgages": didn't mention Attorney Loan Modifications, the agent,  Preferred Law, etc.

Agent mentioned Preferred Law several times and provided a link to its website, http://preferredlawteam.com/. The address for Preferred Law is the same as the address listed on Attorney Loan Modifications website. Preferred law has one attorney listed, Benjamin Horton, who the site states is licensed in UT and TX.

Results:

As a result of the above communications, the agent has violated the federal MARS rule and the Mortgage Broker Practices Act of Washington.

Attorey Loan Modifications, PLLC, and its agent and/or employee Paul Cysewski, are providers of MARS services pursuant to 16 CFR.322.2(i)&(j).  Paul Cysewski, on behalf of Attorney Loan Modifications, offered to provide the tester, located in the state of Washington, with residential mortgage loan modification services related to residential mortgage loans secured by real property located in the state of Washington.

Paul Cysewski and Benjamin Horton are not licensed by the WA DFi to conduct business as a mortgage broker or loan originator. Attorney Loan Modifications PLLC and Preferred Law have never been licensed by the WA DFI as a loan originator. Attorney Loan Modifications, Paul Cysewski, Benjamin Horton, and Preferred Law are in apparent violation of RCW 19.146.200(1) for engaging in the business of a mortgage broker without first obtaining and maintaining a license under the Act. Pursuant to RCW 19.146.010(14) "Mortgage Broker" means any person who, for compensation or gain, or in the expectation of compensation or gain ... (b) holds himself or herself out as being able to make a residential mortgage loan or assist a person in obtaining or applying to obtain a residential mortgage loan. Pursuant to WAC 208-660-22 006, a person "'assists a person in obtaining or applying to obtain a residential mortgage loan' by, among other things, counseling on loan terms (rates, fees, other costs), [and] preparing loan packages ...."

Paul Cysewski and Benjamin Horton are not exempt from RCW 19.146 as they are not attorneys licensed to practice law in WA who are not principally engaged in the business of negotiating residential mortgage loans.

Attorney Loan Modifications, Paul Cysewski, Preferred Law, and Benjamin Horton are in apparent violation of RCW 19.146.0201(6) for failing to make disclosures to loan applicants as required by RCW 19.146.030 and any other applicable state or federal law:
- In violation of 16 CFR 322.4(B)(1), Tester was not told that he can stop doing business with the MARS at any time or that if she rejects an offer she does not have to pay.
- In violation of 16 CFR 322.4(B)(2), Tester was not told that the MARS is not associated with the government, and their service is not approved by the government or Tester's lender.
- In violation of 16 CFR 322.4(B)(ii), the agent did not make the required disclosure, "Before using this service, consider the following information" at the beginning of the call.
- In violation of 16 CFR 322.4(B)(1), the email correspondence and attachments did not include the required disclosures that Tester can stop doing business with the MARS at any time or that if she rejects an offer she does not have to pay.
- In violation of 16 CFR 322.4(B)(2), the email correspondence and attachments did not include the required disclosures that the MARS is not associated with the government, and their service is not approved by the government or Tester's lender.

PX20 - 947

Attorney Loan Modifications, Paul Cysewski, Preferred Law, and Benjamin Horton violated 16 CFR 322.5 by requesting payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer.

- Attorney Loan Modifications, Paul Cysewski, Preferred Law, and Benjamin Horton are in apparent violation of RCW 19.146.0201(13) for attempting to collect or charge or use or propose any agreement purporting to collect or charge any fee prohibited by RCW 19.146.030 or 19.146.070.
  - Attorney Loan Modifications, Paul Cysewski, Preferred Law, and Benjamin Horton are in apparent violation of RCW 19.146.070(1) for receiving a fee, commission, or compensation of any kind in connection with the preparation, negotiation, and brokering of a residential mortgage loan unless a borrower actually obtains a loan from a lender on the terms and conditions agreed upon by the borrower and mortgage broker.
- Attorney Loan Modifications, Paul Cysewski, Preferred Law, and Benjamin Horton are in apparent violation of RCW 19.146.353 for collecting an advance fee for residential mortgage loan modification services without providing the borrower a written disclosure summary of all material terms, in the format adopted by the department.

Attorney Loan Modifications, Paul Cysewski, Preferred Law, and Benjamin Horton, as third-party residential mortgage loan modification service providers, are in apparent violation of RCW 19.146.355 for receiving an advance fee greater than $750.

The mission of Northwest Fair Housing Alliance (NWFHA) is to eliminate housing discrimination and ensure equal housing opportunity for the people of Washington State through education, counseling and advocacy. The policies and practices described herein have frustrated our mission as well as prevented us from using our resources in support of other fair housing activities.  NWFHA has diverted resources to researching and investigating Respondent's practices described, herein, including conducting testing.

**What do you think will resolve this problem for you?**
☒ Issue orders to Respondents to cease and desist from conducting the business of a loan originator without obtaining and maintaining a loan originator license or qualifying for an exemption from licensure under the Act.
☒ Issue orders to Respondents to cease and desist from conducting the business of a mortgage broker without obtaining and maintaining a loan originator license or qualifying for an exemption from licensure under the Act.
☒ Respondents jointly and severally pay restitution totaling the amount collected for all consumers for residential mortgage loan modification services related to real property or consumers located in the state of Washington.
☒ Respondents jointly and severally pay restitution to NWFHA totaling the amount of diverted resources to investigate the violations identified herein.
☒ Impose fines against Respondents.
**Mortgage Information**
If your complaint involves a mortgage, what is the address of the property?

Address

PX20 - 948



**STATE OF WASHINGTON**
# DEPARTMENT OF FINANCIAL INSTITUTIONS
**DIVISION OF CONSUMER SERVICES**
P.O. BOX 41200 • Olympia, Washington  98504-1200
*Telephone (360) 902-8703 • TDD (360) 664-8126 • FAX (360) 596-3868 • http://www.dfi.wa.gov/cs*

June 19, 2013

Preferred Law, PPLC
dba Attorney Loan Modifications
Attn: Compliance Officer
8180 S 700 E
Sandy, UT 84070

RE:    Unlicensed Activity under the Mortgage Broker Practices Act – RCW 19.146

Dear Preferred Law:

It has come to the Department's attention that you may be engaging in business activity requiring licensure under Washington state law.  Pursuant to chapter 19.146 RCW, the Mortgage Broker Practices Act (Act), individuals and entities providing or offering to provide residential mortgage loan modification services for compensation, including the negotiation of short sale transactions, for Washington State consumers, must be licensed by the Department, unless exempt pursuant to RCW 19.146.020.

RCW 19.146.010 (21) states:
    "Residential mortgage loan modification services" includes negotiating, attempting to negotiate, arranging, attempting to arrange, or otherwise offering to perform a residential mortgage loan modification.  "Residential mortgage loan modification services" also includes the collection of data for submission to any entity performing mortgage loan modification services.

RCW 19.146.040 (11)(b) states:
    "Loan originator" also includes a natural person who for direct or indirect compensation or gain or in the expectation of direct or indirect compensation or gain performs residential mortgage loan modification services or holds himself or herself out as being able to perform residential mortgage loan modification services.

If you are engaging in activity that requires licensure, this letter serves as a request that you discontinue such activity until you have obtained the required license.  The Act and related rules and guidance can be found on the Department's web site at http://dfi.wa.gov/cs/mortgage.htm. Civil, administrative, and criminal penalties may apply for violations of the Act.  You may wish to consult with your attorney regarding the applicability of the Act to your business activities.

Please respond to the enclosed Subpoena at the time, place, and manner of production as instructed. **Please note that you must fully and completely comply with the Subpoena, even if you claim an exemption.**  Thank you for your cooperation.

PX20 - 949

Preferred Law, PPLC
dba Attorney Loan Modifications
June 19, 2013
Page 2

Sincerely,

Devon P. Phelps

Devon P. Phelps
Financial Legal Examiner

Enclosures:     Subpoena to Provide Documents and Explanation

PX20 - 950



*O42128*

Preferred Law, PLLC
Law Office

July 3, 2013

RECEIVED
RESPONDENT

JUL 08 2013

ENFORCEMENT UNIT
DIVISION OF CONSUMER SERVICES
DEPT OF FINANCIAL INSTITUTIONS

State of Washington
Department of Financial Institutions
Attn: Devon P. Phelps
PO Box 41200
Olympia, WA 98504-1200

RE:     Preferred Law, PLLC; Unlicensed Activity under the Mortgage Broker Practices Act – RCS 19.146

Dear Devon Phelps:

Thank you for your letter dated, June 19, 2013. I have enclosed my response to the "Subpoena to Provide Documents and Explanation."

To be clear, we have not engaged in any "loan modification services for compensation" in the State of Washington. Furthermore, our fee agreements explicitly exclude: "FORECLOSURE RESCUE AND PREVENTION SERVICES, LOSS MITIGATION SERVICES, FORECLOSURE CONSULTATION, LOAN MODIFICATION ASSISTANCE, MORTGAGE LOAN ORIGINATION AND SERVICING, MORTGAGE ASSISTANCE RELIEF SERVICE, DEBT NEGOTIATION OR ADJUSTMENT, OR OTHER STATE RELATED RELIEF."

All mortgage assistance relief services are directed to a competent mortgage assistance relief service, HUD certified housing counselor, a non-profit, and/or local counsel in accordance with 16 C.F.R. Part 322.

Please call me at (801) 386-5100 or e-mail me at benhortonesq@yahoo.com if you have any other questions. I look forward to hearing from you.

Sincerely,

Benjamin R. Horton
Attorney at Law

1 | Page

PREFERRED LAW, PLLC ● 8180 S 700 E STE 110 ● SANDY, UT 84070
Phone: (801) 386-5100 ● Fax: (888) 224-6524 ● www.preferredlawteam.com

0080

PX20 - 951

STATE OF WASHINGTON
DEPARTMENT OF FINANCIAL INSTITUTIONS
DIVISION OF CONSUMER SERVICES

| | |
|---|---|
| IN THE MATTER OF DETERMINING Whether there has been a violation of the Mortgage Broker Practices Act of Washington by:<br><br>Preferred Law, PPLC dba Attorney Loan Modifications,<br><br>Respondent. | No. 042128<br><br>**SUBPOENA TO PROVIDE DOCUMENTS AND EXPLANATION** |

THE STATE OF WASHINGTON TO:      Preferred Law, PPLC dba Attorney Loan
                                 Modifications
                                 Attn:  Compliance Officer

    I.    Pursuant to RCW 19.146.235, you are hereby directed to provide the following items and respond to the following questions under penalty of perjury.  Whenever "you" is used it means Respondent(s) or any representative of Respondent(s).

    1.   Are you currently or have you ever provided or offered to provide loan modification services, including short sale negotiation services, for properties or consumers located in the state of Washington?  Yes ☐  No ☒

    Please explain the service provided or offered and the time period provided or offered:

_____

_____

_____

    2.   Provide a complete list of all transactions in which you provided loan modification services, including short sale negotiation services, for properties or consumers located in the state of Washington, to include the transaction involving DFI.  The list should include the consumer name(s), subject property address, date of transaction, compensation received, the specific service provided to earn the compensation, who paid the compensation, and the outcome of your efforts.   N/A

    3.   Provide copies of any and all marketing solicitations targeted to the state of Washington.  Include a list of all websites used for marketing purposes.   None.

    4.   Do you do business under any other name such as under a registered trade name or fictitious name?  Yes ☐  No ☒

    Please list names, if applicable: _____

SUBPOENA AND REQUIREMENT
FOR PRODUCTION OF RECORDS
AND EXPLANATION
Preferred Law, PPLC dba Attorney Loan Modifications

.1

DEPARMENT OF FINANCIAL INSTITUTIONS
Division of Consumer Services
MS 41200
Olympia, WA 98504-1200
(360) 902-8703

0082

PX20 - 952

5. Provide the names and titles of all current and former owners, directors, principals, and officers of Respondent(s):

Benjamin Horton

6. Provide the names and titles of all current and former employees of Respondent(s):

Benjamin Horton

7. Are you or anyone associated with you, such as an owner, director, principal, officer, or employee:

a. Licensed by the Department as a mortgage broker?   Yes ☐  No ☒

b. Licensed by the Department as a consumer loan company?   Yes ☐  No ☒

c. Licensed by the Department as a mortgage loan originator?   Yes ☐  No ☒

d. Licensed by the Department of Licensing as a real estate broker?   Yes ☐  No ☒

e. Licensed as an attorney in the state of Washington?   Yes ☐  No ☒

f. Licensed in any other states in the same or similar capacities?   Yes ☒  No ☐

If yes to any of the above, provide the name(s), state(s), and license number(s).

Utah   Attorney   11452

8. If your company is claiming an exemption under RCW 19.146.020, provide documentation to substantiate your claim and a written explanation of your exclusion from licensure (ie why you are not subject to licensure).

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 2nd day of July, 2013, in Sandy (city), UT (state).

_____          Benjamin Horton
Signature of Authorized Representative     Print Name and Title
Preferred Law, PPLC dba Attorney Loan Modifications

8180 S 700 E, Ste 110
Sandy, UT 84070          (801) 386-5100
Address          Phone Number

SUBPOENA AND REQUIREMENT
FOR PRODUCTION OF RECORDS
AND EXPLANATION
Preferred Law, PPLC dba Attorney Loan Modifications

2

DEPARMENT OF FINANCIAL INSTITUTIONS
Division of Consumer Services
MS 41200
PO Box 41200
Olympia, WA 98504-1200
(360) 902-8703

____0083

PX20 - 953

II.    You must provide the above-requested information and documents to the Department by 5:00 p.m., July 4, 2013.  The Department's address is:

U.S. Mail:                                          Overnight Delivery:
Department of Financial Institutions               Department of Financial Institutions
Division of Consumer Services                      Division of Consumer Services
Enforcement Unit                                   Enforcement Unit
PO Box 41200                                       150 Israel Rd SW
Olympia, WA 98504                                  Tumwater, WA 98501

III.    Pursuant to RCW 19.146.235:  For the purposes of investigating violations or complaints arising under this chapter, the director may at any time, either personally or by a designee, investigate the business, including but not limited to the books, accounts, records, and files used therein, of every licensee and of every person engaged in the business or mortgage brokering, whether such person acts or claims to act under, or without the authority of, this chapter.  The director or designated person may direct, subpoena, or order the attendance of and examine under oath all persons whose testimony may be required about the loans or the business or subject matter of any such investigation, and may direct, subpoena, or order such person to produce books, accounts, records, files, and any other documents the director or designated person deems relevant to the inquiry. No person subject to examination or investigation under this chapter may knowingly withhold, abstract, remove, mutilate, destroy, or secrete any books, records, computer records, or other information.

Served by mail:
Wednesday, June 19, 2013

SUBPOENA AND REQUIREMENT
FOR PRODUCTION OF RECORDS
AND EXPLANATION
Preferred Law, PPLC dba Attorney Loan Modifications

3

DEPARTMENT OF FINANCIAL INSTITUTIONS
Division of Consumer Services
MS 41200
Olympia, WA 98504-1200
(360) 902-8703

0084

PX20 - 954

STATE OF WASHINGTON
DEPARTMENT OF FINANCIAL INSTITUTIONS
DIVISION OF CONSUMER SERVICES

| | |
|---|---|
| IN THE MATTER OF INVESTIGATING A COMPLAINT FILED UNDER THE MORTGAGE BROKER PRACTICES ACT BY:  DFI,<br><br>Complainant,<br><br>AGAINST:  Preferred Law, PLLC d/b/a Attorney Loan Modifications,<br><br>Respondent. | Complaint No. 042128<br><br>THE DEPARTMENT'S RESOLUTION AND CLOSURE OF COMPLAINT |

As you were previously informed, a complaint was opened against Respondent under chapter 19.146 RCW, the Mortgage Broker Practices Act (Act).  Complainant alleged that Respondent was providing residential loan modification services for consumers located in Washington State without a license.

The Department of Financial Institutions Division of Consumer Services, under the authority of RCW 19.146.235, conducted a limited scope investigation into this matter.  Based upon its investigation and the documents and statements provided by the parties, the Department makes the following determination:

- RCW 19.146.200(1): Engaged in the business of a mortgage broker or loan originator without obtaining and maintaining a license in compliance with this section.

Respondent asserted it is exempt from licensure under the Act as it does not perform any modficiation or other loss mitigation services in Washington State as its fee agreement explicitly excludes such "state related relief" services.  However, Respondent's contracts indicate it negotiates with the consumer's lender for relief under federal programs, activity which requires licensure.  Therefore, Respondent must cease and desist from conducting the business of a mortgage broker without licensure or without meeting the requirements for an exemption.  The Department retains the authority to pursue further enforcement action against Respondent in the event that the Department receives other complaints against Respondent.

Accordingly, this Resolution and Closure of Complaint serves as notice that this complaint filed against Respondent is closed.  However, the Department of Financial Institutions Division of Consumer Services retains the authority to reopen this complaint in the event that subsequent information comes to our attention relevant to this matter.  This resolution is not considered a formal administrative or enforcement action for purposes of NMLS disclosure reporting.

Dated: Wednesday, August 29, 2013



Devon P. Phelps
Financial Legal Examiner

PX20 - 955



# Utah State Bar

**Office of Professional Conduct**
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-9912
E-mail: opc@utahbar.org

**Billy L. Walker**
Senior Counsel

**Todd Wahlquist**
Deputy Senior Counsel

**Diane Akiyama**
Assistant Counsel

**Adam C. Bevis**
Assistant Counsel

**Sharadee Fleming**
Assistant Counsel

**Barbara L. Townsend**
Assistant Counsel

April 16, 2014

Preferred Law, PLLC
Benjamin R. Horton, Attorney
2825 E COTTONWOOD PKWY
STE 500
Salt Lake City UT 84121

Re:    Information Submitted Concerning Benjamin R. Horton
       OPC File No. 14-0174

Dear Mr. Horton:

This is to notify you that the Utah State Bar's Office of Professional Conduct ("OPC") has received information concerning your law practice. A copy of the information is enclosed. We recognize that having our office involved in matters such as this can be inconvenient and unsettling. For this reason OPC strives to determine the appropriate course of action as quickly as possible. Because the information received was not verified and notarized it does not constitute a Bar complaint pursuant to Rule 14-510(a) of the Rules of Lawyer Discipline and Disability ("RLDD"). Nevertheless, pursuant to Rule 14-504(b)(1) of the RLDD, the OPC has the duty to screen all information coming to its attention that may relate to misconduct of an attorney.

In accordance with this duty, the OPC will review the information submitted and take one of the following actions:

1)    Refer the information to the Utah State Bar's Consumer Assistance Program;

2)    Return the information to the person with a request for notarization and verification (or notarization by this office as an OPC complaint); or

3)    Decline to prosecute the matter.

If the OPC refers the matter to the Consumer Assistance Program, it can be addressed informally by the Consumer Assistance attorney, Jeannine Timothy. In that case, Ms. Timothy will contact you with respect to her efforts at resolution of the problem between you and the person who submitted the information. Please respond immediately if you are contacted by Ms. Timothy because if this problem is resolved by the Consumer Assistance Program, there will be no record of an official Bar complaint against you based on this information.

PX20 - 956

Page 2 of 2

If the OPC determines the allegations are potentially serious enough to warrant further investigation, it will either request notarization from the person submitting the information or open an OPC complaint based on the information. At that point, the OPC will request a written response from you to the allegations and information submitted.

Where appropriate the OPC may exercise its discretion and decline to prosecute any ethical misconduct allegations. This typically occurs in situations where the allegations are unsupported by sufficient evidence or where there are issues underlying the allegations that should be first considered in another forum. The OPC will inform the person sending the information that once the issues are resolved, information can be resubmitted and reconsidered.

For more information about the process, and the rules governing the OPC, you may visit the Bar's website at www.utahbar.org/opc/.

You will be notified as this matter progresses in accordance with what is stated in this letter.

Sincerely,

Diane Akiyama
Assistant Counsel
Office of Professional Conduct

DA/cms
Enclosure

PX20 - 957

# OPC Case

# #14-2338

## Benjamin R. Horton / █████████

PX20 - 958



## Tell the Problem you are having.

I filed a Refund and Demand notice June 14, 2014 with:
Preferred Law, PLLC
8180 South 700 East Street
Suite 110
Sandy, UT 84070-0564
I never had contact with a lawyer. Mr. Benjamin Horton is the only lawyer name I could identify on the Firms Web-site.

Preferred Law was hired to assist me receive a Federal Loan Mortgage Modification Program under the Federal Mortgage Assistance Relief Act. (MARS). The mortgage collector for our home was IndyMack Bank a collection agent owned by One West Bank. My mortgage was sold to Ocwen Mortgage Services LLC, January 1st. 2014. The transaction took place without 3rd party assistance from Preferred Law.  I contacted them when I was informed by the bank my mortgage was sold. In November and December 2013 they made 3 auto withdraws of $297.00 total $891.00 from my bank account. They did nothing for these funds.

I was unaware it was illegal to charge upfront fees for services supplied for the H.A.M.P. (Home Affordable Modification Program.) I did not learn of this until May 2014 when I contacted a home owner's advocacy group.

When Preferred Law was hired my expectation was I supply all documents to qualify for a modification, which I did, and they would handle all inquiries with the mortgage collector. My vision is limited and medically impaired with wet Macular degeneration. During the nine months the law firm was paid for  their service the following negative events took place:
- I had 3 different  negotiators assigned in 9 months.
- The house almost sold in foreclosure auction Monday after Labor Day 2013 (Information Enclosed.)
- The modification cancelled by IndyMac Band and sold to Ocwen Mortgage Services, LLC 02/01/2014 without Preferred Law assistance.( Information enclosed)
- The house is turned over for foreclosure to Ocwen, LLC. in November 2014. .

My bank account was charged $3900.00 and $891.00 for a total of $4791.00 for this mortgage modification assistance.
My last demand and complaint notice, September 11, 2014 with the Preferred Law Audit department has been ignored.

Please help me receive a refund 0f $4,791.00. This situation has caused a severe hardship for my family and I lost my home.

Respectfully:

e-mail:

Atlanta,, GA





# Utah State Bar

**Office of Professional Conduct**
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-9912
E-mail: opc@utahbar.org

**Billy L. Walker**
Senior Counsel

**Todd Wahlquist**
Deputy Senior Counsel

**Diane Akiyama**
Assistant Counsel

**Adam C. Bevis**
Assistant Counsel

**Sharadee Fleming**
Assistant Counsel

**Barbara L. Townsend**
Assistant Counsel

August 31, 2015

Benjamin R. Horton
2825 E. Cottonwood Parkway, Ste. 500
Salt Lake City, UT 84121

Re:  Informal Complaint Filed By ▮▮▮▮▮▮▮
     OPC File No.: 14-2338

Dear Mr. Horton:

This is to notify you that the Utah State Bar's Office of Professional Conduct ("OPC") has received a Notarized and Verified Informal Complaint from ▮▮▮▮▮▮▮  A copy of the informal complaint is enclosed.  We recognize that having our office involved in matters such as this can be inconvenient and unsettling.  For this reason the OPC strives to determine the appropriate course of action as quickly as possible.  In accordance with its authority, and pursuant to the Rules of Lawyer Discipline and Disability, the OPC will review the matter and take one of the following actions:

1) Dismiss the matter when, in our view, the factual allegations of the Informal Complaint, even if true, do not raise the likelihood that there has been a violation of the Rules of Professional Conduct;

2) Exercise our discretion and decline to prosecute any misconduct allegations in certain situations, such as when the allegations are unsupported by sufficient evidence or where there are issues underlying the allegations that should be first considered in another forum (the OPC will inform the person sending the information that once the issues are resolved, information can be resubmitted and reconsidered);

3) In cases that satisfy the parameters identified in Rule 14-533 of the Rules of Lawyer Discipline and Disability, agree to divert certain types of complaints away from discipline, and into one or more alternative programs, the suitability of which depends on the issues and/or misconduct presented by the complaint (if you are interested in Diversion your request to have your case considered for Diversion should be submitted to the OPC in writing after reviewing the rule to familiarize yourself with the qualifications and requirements of the program);

PX20 - 960

4) Continue to the next stage in the process, which may include a Notice of Informal Complaint.

The OPC's course of action in these matters is generally based on our review of the materials provided by the complaining party as well as the attorney's response to the allegations. This letter is to inform you that we have received an informal complaint, and any information you provide our office will assist in our initial review and may lead to a quicker resolution of this matter.

If you have questions about the disciplinary process and your rights and obligations with respect to it please contact Jeannine Timothy, who serves in the Disciplinary Process Information Office. You can reach her at 801-257-5515. Ms. Timothy can provide general information about attorney discipline and can refer you to the appropriate procedural rules in order to guide you through this process. Ms. Timothy cannot, however, give legal advice and because she is not part of the Office of Professional Conduct her opinions are not binding on this office. For more information about the process, and the rules governing the OPC, you may visit the Bar's website at www.utahbar.org/opc/.

You will be notified as the matter progresses in accordance with what has been stated in this letter. If you are willing to accept future correspondence and notices from the OPC electronically at the email address on record with the Utah State Bar, you may notify us in writing or by email at opcstaff@utahbar.org.

Sincerely,

Adam C. Bevis
Assistant Counsel
Office of Professional Conduct


ACB/cms
Enclosure

PX20 - 961



# Utah State Bar

**Office of Professional Conduct**
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-9912
E-mail: opc@utahbar.org

Billy L. Walker
Senior Counsel

Todd Wahlquist
Deputy Senior Counsel

Diane Akiyama
Assistant Counsel

Adam C. Bevis
Assistant Counsel

Sharadee Fleming
Assistant Counsel

Barbara L. Townsend
Assistant Counsel

September 23, 2015

Benjamin R. Horton
2825 E. Cottonwood, Pkwy. Ste. 500
Salt Lake City, UT  84121

## NOTICE OF INFORMAL COMPLAINT
### OPC File No.: 14-2338

Dear Mr. Horton:

On August 31, 2015 ▮▮▮▮▮▮ filed an informal complaint against you with the Utah State Bar's Office of Professional Conduct ("OPC"). A true copy of the signed informal complaint is attached hereto. Pursuant to Rule 14–504 and 14-510 of the Utah Rules of Lawyer Discipline and Disability ("RLDD"), the OPC conducted an investigation of the information and has determined that good cause exists to bring the matter before a Screening Panel of the Utah Supreme Court's Ethics and Discipline Committee.

### FACTS

Based on the informal complaint and our investigation thus far, this is a summary of our viewpoint as to what has occurred:

1. Mr. John ▮▮▮▮ retained you to assist him in a mortgage modification case. The fee agreement was sent to Mr. ▮▮▮▮ and signed by him on October 10, 2013.
2. On February 19, 2013, Mr. ▮▮▮▮ received a letter guaranteeing a modification of his loan.
3. Mr. ▮▮▮▮ states that he was billed, and paid, $4,791.00 for legal services, yet he believes nothing of substance had been accomplished for the fees paid.
4. It appears most, if not all, of the complainant's contacts with your firm were through non-lawyer assistants. His requests for a refund and information about his case were generally addressed to your staff. He states he never spoke to an attorney while he was represented by Preferred Law.
5. Your firm eventually offered to refund $1,100.00 of the retainer on January 6, 2015.

PX20 - 962

6.  The complainant is located in Georgia. According to Utah State Bar records, you are not licensed to practice law in Georgia.

## RULE VIOLATIONS

Based on the OPC's investigation thus far, we have preliminarily determined that the following Rules of Professional Conduct may have been violated:

Rule 1.3 - Diligence: This rule states: "A lawyer shall act with reasonable diligence and promptness in representing a client." You may have violated this Rule if, as alleged, you failed to diligently represent your client.

Rule 1.4(a) - Communication: This rules states: " A lawyer shall:  (1) promptly inform the client of any decision or circumstance with respect to which the client's  informed consent, as defined in Rule 1.0(e), is required by these Rules;  (2) reasonably consult with the client about the means by which the client' s objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information; and  (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law." You may have violated this Rule if you never actually communicated with your client about his case. He states that he never spoke directly to an attorney, and only found your name on the website for Preferred Law after dealing with non-lawyers throughout the representation.

Rule 1.5(a) - Fees:  This rules states: "A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:  (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;  (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;  (3) the fee customarily charged in the locality for similar legal services;  (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances;  (6) the nature and length of the professional relationship with the client;  (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and  (8) whether the fee is fixed or contingent." You may have violated this Rule if, as alleged, you collected an excessive fee from Mr. ▪▪▪▪

PX20 - 963

Rule 5.5(a) - Unauthorized Practice of Law; Multijurisdictional Practice of Law: This rules states: "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." You may have violated this Rule by practicing law in Georgia, and/or by allowing your non-attorney staff to engage in UPL in Georgia.

## YOUR RESPONSE

Rule 14-510(a)(6) of the Rules of Lawyer Discipline and Disability ("RLDD") provides, "[w]ithin twenty (20) days after service of the Notice of Informal Complaint on the respondent, the respondent shall file with OPC counsel a written and signed answer setting forth in full an explanation of the facts surrounding the informal complaint, together with all defenses and responses to the claims of possible misconduct."

If you previously submitted a written response to a request for information from the OPC, you may incorporate your previous response into your answer to this Notice of Informal Complaint. If you have already submitted copies of documents you can simply refer to them in your answer and you do not need to resubmit copies of these documents.

Following receipt of your response, or if no response is submitted by you, the OPC will refer the matter to a Screening Panel of the Ethics and Discipline Committee of the Utah Supreme Court pursuant to rules 14-510(a)(6) and 14-510(b)(1) of the RLDD. You will be notified of the date and time set for the hearing. Please note that rule 14-510(b) of the RLDD sets forth Screening Panel hearing procedures.

## CONSEQUENCES OF FAILURE TO RESPOND

Rule 14-532(a) of the RLDD provides, "[i]f having received actual notice of the charges filed, the respondent fails to answer the charges within twenty (20) days, the respondent shall be deemed to have admitted the factual allegations." Accordingly, if you do not provide a response to the charges in this Notice of Informal Complaint within 20 days, the OPC may request the Screening Panel find the allegations are admitted.

PX20 - 964

Additionally, Rule 8.1(b) of the Rules of Professional Conduct provides, in material part, attorneys shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." Further, the Comment following the rule states "it is a separate professional offense for a lawyer to knowingly make a misrepresentation or omission in connection with a disciplinary investigation of the lawyer's own conduct. Paragraph (b) of this Rule also requires correction of any prior misstatements in the matter that the applicant or lawyer may have made and affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware." Failure to do so may constitute a separate violation of the Rules of Professional Conduct.

Sincerely,

Adam C. Bevis
Assistant Counsel
Office of Professional Conduct

ACB/
Enclosure
cc: ████████ (w/out enclosure)

CERTIFICATE OF SERVICE

I hereby certify that on the _23_ day of _September_, 2015, the foregoing Notice of Informal Complaint was mailed via United States first-class mail, postage pre-paid to Mr. Benjamin R Horton at 2825 E COTTONWOOD PKWY STE 500 SALT LAKE CITY, UT  84121, the address reflected in the records of the Utah State Bar.

PX20 - 966





October 8, 2015

Utah State Bar
Office of Professional Conduct
Attn: Adam C. Bevis
645 South 200 East, Suite 205
Salt Lake City, UT  84111-3834

RE:   Response ▮▮▮▮ (the "Complainant")
        OPC File No. 14-2338

Dear Mr. Bevis:

I am in receipt of the Notice of Informal Complaint, dated September 23, 2015.  This formal response incorporates my prior letter submitted to the Utah State Bar, dated May 13, 2015.

In addition to the May 13, 2015 letter and its attachments, what follows are my responses to the factual and rule violations allegations in the Notice of Informal Complaint.

**FACTS**

1.   *Mr. ▮▮▮▮ retained you to assist him in a mortgage modification case.  The fee agreement was sent to Mr. ▮ and signed by him on October 10, 2013.*

**Answer:**  The allegation is false.  The Complainant became a client on February 25, 2013.  He was a client until February 14, 2014.  Although Mr. ▮▮▮ had possession of the fee agreement from March 2013, he did not sign it until October 10, 2013 (he requested a new copy).  The fee agreement, signed by Mr. ▮▮▮ identified the services that Preferred Law, PLLC ("Preferred Law") agreed to provide which explicitly and clearly excluded mortgage modification services.  To be clear, we do not provide any other services but those identified in the fee agreement.  By providing these federal legal services, Preferred Law created an atmosphere in which a modification could take place for Mr. ▮▮▮  Preferred Law's efforts were successful.

2.   *On February 19, 2013, Mr. ▮▮▮ received a letter guaranteeing a modification of his loan.*

**Answer:**  On February 19, 2013, Modification Review Board, LLC, not Preferred Law, submitted a letter guaranteeing that Mr. ▮▮▮ would obtain a modification if he would meet certain conditions.  Based on Mr. ▮▮▮▮ subsequent actions in prematurely terminating all services, Mr. ▮▮▮ did not meet said conditions.

3.   *Mr. ▮▮▮ states that he was billed, and paid, $4,791.00 for legal services, yet he believes nothing of substance had been accomplished for the fees paid.*

**Answer:**  The allegation is false.  Preferred Law, PLLC did exactly as it promised in its fee agreement.  Preferred Law created the atmosphere in which a modification could take place.  Mr. ▮▮▮ would have most certainly

1 | ▮ ▮▮

PX20 - 967

received a modification but for his ill-advised decision to terminate all services. Also, the amount paid by Mr. ▇ over the one-year period was **$4,141.00** (one payment was returned for $650).

4. *In appears most, if not all, of the complainant's contacts with your firm were through non-lawyer assistants. His requests for a refund and information about his case were generally addressed to your staff. He states he never spoke to an attorney while he was represented by Preferred Law.*

**Answer:** Correct. However, it should be noted that I maintained a supervisory role throughout the entire process and Mr. ▇ was continually apprised of his situation on a near weekly basis. At no time has Mr. ▇ alleged that he was not being dutifully apprised of his situation. There was no necessity for me to personally telephone Mr. ▇.

5. *Your firm eventually offered to refund $1,100.00 of the retainer on January 6, 2015.*

**Answer:** In addition to other attempts, Preferred Law offered $1,100 of the total fees paid by Mr. ▇ in order to end the relationship amicably.

6. *The complainant is located in Georgia. According to Utah State Bar records, you are not licensed to practice law in Georgia.*

**Answer:** Correct. All of Preferred Law's legal services were limited to federal legal issues only and contractually excluded all state-specific issues.

### RULE VIOLATIONS

**Rule 1.3 – Diligence.**

As shown in the May 13, 2015 letter, on February 25, 2013, Preferred Law took on representation, submitted its Qualified Written Request to IndyMac OneWest began reviewing the file and all documentation received, submitted all modification work to American Home Loan Counselors (AHLC), and continued its federal compliance supervisory role as agreed in the fee agreement. Preferred Law maintained a supervisory role throughout its representation of Mr. ▇ over a one-year period. AHLC, which provided the day-to-day work, maintained good notes and also performed diligently. In the end, our mutual efforts were going to be successful; however, Mr. ▇ arbitrarily and prematurely terminated our combined services.

**Rule 1.4(a) – Communication.**

There is nothing in the allegation of the Complainant that says that I violated Rule 1.4(a) in any manner. Rule 1.4(a) does not forbid attorneys from working through other personnel in keeping the client apprised of his or her situation. As shown in the notes, attached to the Notice of Complaint, Mr. ▇ was informed of the status of his file on a near weekly basis. Mr. ▇ was "reasonably informed about the status of the matter …" as required by Rule 1.4(a).

**Rule 1.5(a) – Fees.**

All services charged over the one-year period were reasonable. The OPC would find it difficult to find another lawyer who would charge less. In addition to those factors outlined in Rule 1.5, the OPC must note that this sort

2 | P a g e

of legal representation carries with it the HIGH potentiality of being sued and facing a myriad of complaints in many jurisdictions.

**Rule 5.5(a) – Unauthorized Practice of Law; Multijurisdictional Practice of Law.**

The fee agreement, signed by Mr. ███ identified the federal legal services that Preferred Law agreed to provide on his behalf. All of these services are related exclusively to federal law. These type of legal services are not prohibited by Rule 5.5(a).

**Conclusion**

In summary, Preferred Law was hired by Mr. ███ to create, via federal law, a legal atmosphere in which a mortgage modification could take place. Mr. ███ house was set for foreclosure on September 3, 2013 but was confirmed cancelled on August 26, 2013. But for our actions, Mr. ███ would have lost his house on September 3, 2013 and remained in his home until terminating our services on February 14, 2014. In addition, from January 2013, Mr. ███ did <u>not</u> pay his mortgage.

The fact that Mr. ███ mortgage loan servicer changed on his file from IndyMac to Ocwen was HIGHLY indicative that Mr. ███ was going to get the modification he desired if we would have only continued using our services. Against, our explicit instruction, Mr. ███ terminated our services on February 14, 2014 and then his home was allegedly turned over for foreclosure on November 14, 2014, nine months later.

Sincerely,

Benjamin R. Horton
Attorney at Law

PREFERRED LAW PLLC • 3265 E COTTONWOOD PKWY • SALT LAKE CITY, UT 84121
Phone (855) 554-2457 • Fax (855) 321-2352 • www.preferredlaw.com

PX20 - 969

November 6, 2015
Utah State Bar
Office of Professional Conduct
Attn: Adam C. Bevis
645 South East, Suite 205
Salt Lake City, UT 84111-3834



Response Mr. Benjamin R. Horton Preferred Law PLLC.
November 6, 2015 Letter
OPC File No.14-2338

Dear Mr. Bevis,
My response to Mr. Horton is Rule 1.5 Fees.

<u>*Mr. Horton states that my fees paid were $ 4,141.00.*</u>

Thus is false. Attached is bank statements exhibit A and Exhibit B Proof of payment drawn from
Bank America, Roswell, GA. No draws were sent to Preferred Law PLLC. Total Payments  were
$4,791.00.
I have no records of receiving a $650.00 credit.

The FTC requires attorneys place advanced fees they collect in a client trust account and comply
with state laws and regulations covering such accounts. This requires client funds be kept
separate from Lawyers' personal and/or business funds until such time the funds have been
earned.
In summary I demand the $650.00 credit not received plus (3) three continuity payments
$297.00 totaling $791.00 + $650.00 = $ 1441.00.
Sincerely



Atlanta, Ga. ███

PX20 - 970

Date November 5, 2013
<u>Proof of Payment Form Exhibit A.</u>
Six $650.00 bank draws, Bank American, Roswell, GA.

March 7, 2013 AM Property Inc. Attach Sht. $650.00
April 9, 2013 FMG, LLC   See Attached Sheet $650.00
May 9, 2013  FMG, LLC   See Attached Sheet $650.00
June 7, 2013 FMG, LLC See Attached Sheet    $650.00
July 9, 2013  FMG, LLC See Attached Sheet    $650.00
August 6, 2013 FMG, LLC See Attached Sheet $650.00
 **SUB. Total Paid to Exhibit A.            $3900.00**

<u>Proof of Payment Form Exhibit B Continuty Fees.</u>
Three $297.00 bank draws, Bank America, Roswell, GA
November 29, 2013 AM Property MANA See Attached Sht. $297.00 s
December 31, 2013 AM Property MANA See Attached Sht.  $297.00
January 28, 2014, AM Property MANA See Attached Sheet.   $297.00
**Sub. Total Paid to Exhibit B.                $891.00**
                              **Grand Total $4791.00**

**Complianant has no record of $650.00 credit.**

BEFORE THE ETHICS AND DISCIPLINE COMMITTEE

OF THE UTAH SUPREME COURT

| | |
|---|---|
| In the Matter of the<br>Complaint Against:<br><br>    Benjamin R. Horton,<br>    Attorney At Law | )<br>)<br>)<br>)<br>)<br>)<br>) |

**NOTICE OF HEARING**

**February 4, 2016 12:45 pm**

**14-2338**
**Complainant:** ▮▮▮▮▮▮

To:  The above-named Respondent:

The Utah State Bar's Office of Professional Conduct ("OPC") has referred the above-identified informal complaint for review by a Screening Panel of the Ethics and Discipline Committee of the Supreme Court.

The Screening Panel members assigned to hear this matter are:

| | |
|---|---|
| Alexis Cairo<br>Public Member | Nanci Bockelie<br>Bockelie Law Office |
| Linda Blake<br>Public Member | Amy Kennedy<br>Dart, Adamson & Donovan |
| Randall Jeffs<br>Jeffs & Jeffs | Bryan Pattison<br>Durham Jones & Pinegar |
| Eric Mittelstadt<br>Utah Legal Services | Corbin Gordon<br>Gordon Law Group |

If you believe there may be a conflict of interest with any Panel Members, you should raise the issue in writing prior to the hearing.

The Screening Panel will conduct a hearing in this matter on **Thursday, February 4, 2016 beginning at 12:45 pm** at the Utah Law and Justice Center at 645 South 200 East, Salt Lake City, Utah.  Please note that it would be advisable that you arrive fifteen minutes prior to the time set for this matter so that if another matter

PX20 - 972

scheduled before your matter ends early, you will be ready to proceed earlier than your appointed time.

The Screening Panel is appointed by the Utah Supreme Court to hear and consider complaints filed against Respondents for alleged violations of the Rules of Professional Conduct. This panel has the authority to dismiss the complaint, issue a caution to the Respondent, issue a private admonishment to the Respondent, issue a public reprimand to the Respondent, or determine that there is probable cause to authorize filing a formal Complaint against the Respondent for further proceedings. The Screening Panel, in disciplinary matters, is concerned only with the Respondent's alleged conduct and cannot order restitution for repayment of money or a judgment against the Respondent.

Pursuant to Rule 14-510(b)(1) of the Rules of Lawyer Discipline and Disability ("RLDD"), the Screening Panel has the authority to make its determination based on facts developed by the informal complaint, answer, investigation, the OPC's recommendation, and in the Screening Panel Hearing.

Each case will be set to be heard in a one hour time period. Prior to every hearing, the members of the Screening Panel will have had an opportunity to review all of the information submitted by the parties so that in most cases, one hour is sufficient to allow the parties to summarize their positions, answer the Screening Panel's questions, and elaborate on the issues feel are important pieces of information.

Complainants and Respondents will be allowed to present evidence as set forth below within this time period. If a Complainant or Respondent feels that additional time is needed, a written request for additional time must be made within five working days of the date of this Notice of Hearing. The written request must specify with particularity the reasons for the additional time. As secretary to the Panel, the OPC will forward the request for additional time to the Chair or Vice Chair of the Screening Panel, who will determine whether additional time will be allowed.

Please note that prior to the Hearing, both the Complainant and Respondent will be provided (via a cloud service) a summary of the OPC's investigation and an electronic copy of all the documents that have been provided to the OPC. The documents will be indexed and numbered on each page and will be the official record for the proceeding as reviewed beforehand by the Panel. Therefore, the parties are hereby notified that they should review the official record they receive to ensure the documents they have provided have been included, and they should be prepared to have the Hearing conducted based on the official record. A hard copy of the file will be available for reference at the Hearing.

Pursuant to Rule 14-510(b)(2) of the RLDD, the Respondent is hereby afforded an opportunity to appear before the Screening Panel and testify under oath, together with any witnesses called by the Respondent, and to present oral argument with respect to the informal complaint. All testimony will be recorded and preserved so long as proceedings are pending. At least ten days in advance of the Hearing, the Respondent may submit a written brief, not to exceed ten pages in length. It is not necessary for a Respondent to wait until receiving the summary of the OPC's investigation before submitting a brief. A copy of the brief will be forwarded to the Complainant.

Pursuant to Rule 14-510(b)(3) of the RLDD, the Complainant has the right to appear before the Screening Panel and to testify under oath, together with any witnesses called by the Complainant. The Complainant may be represented by counsel or some other representative.

Pursuant to Rule 14-510(b)(4) of the RLDD, the Complainant and the Respondent each have the right to be present during the presentation of evidence unless they are excluded from the Hearing by the Screening Panel Chair or Vice Chair for good cause. Either the Complainant or the Respondent may seek responses from the other by posing questions to be asked by the Panel Chair. Direct cross examination will not be permitted except on request when the Panel Chair deems it would materially assist the Panel in its deliberations. After the Hearing, the Panel will deliberate and make a decision concerning the case.

Please be advised that Rule 14-532(b) of the RLDD provides; "[i]f the Respondent, having been ordered by the Committee to appear and having received actual notice of that order, fails to appear, the Respondent shall have been deemed to have admitted the factual allegations which were the subject of such appearance. The Committee shall not, absent good cause, continue or delay proceedings because of Respondent's failure to appear." In this respect, this Notice of Hearing is the Committee's order requiring the Respondent to appear. If the Respondent does not appear, the OPC may request that the factual allegations in this matter be deemed admitted.

For good cause, the Complainant, the Respondent, and any witnesses may arrange in advance to appear at the Hearing by telephone. If you need to request to appear by telephone, call Laura Pennock at 801-297-7044.

Requests by the Respondent for a continuance of the Hearing pursuant to rule 14-510(b)(9), unless stipulated to by the OPC, shall be made in writing through the OPC to the Chair or Vice-Chair of the Ethics and Discipline Committee. Upon consideration of the position of the OPC and the reasons for the Respondent's request for the

continuance, the Chair or Vice Chair of the Ethics and Discipline Committee shall decide whether to grant the continuance.

At the hearing, the OPC will be represented by Barbara L. Townsend.

DATED: December 22, 2015.

OFFICE OF PROFESSIONAL CONDUCT

Barbara L. Townsend
Assistant Counsel
Telephone: (801) 531-9110

Diane Akiyama
Assistant Counsel
Telephone: (801) 531-9110

PX20 - 975

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2015, I mailed via United States first-class mail, postage prepaid, the foregoing Notice of Hearing to:

Benjamin R. Horton
2825 East Cottonwood Pkwy, Suite 500
Salt Lake City, UT  84121



Atlanta, GA

PX20 - 976

**BEFORE THE ETHICS AND DISCIPLINE COMMITTEE**

**OF THE UTAH SUPREME COURT**

| | |
|---|---|
| In the Matter of the<br>Complaint Against:<br><br>Benjamin R. Horton,<br>Attorney At Law | ) )<br>) )<br>) )<br>) )<br>) )<br>) )<br>) )<br>) )<br>) | **SUMMARY OF OPC'S INVESTIGATION**<br>**AND**<br>**RECOMMENDATIONS**<br><br>OPC Case #:  14-2338 |

The Office of Professional Conduct ("OPC") opened a case on December 12, 2014, based upon information received from ▮▮▮▮▮▮▮ concerning attorney Benjamin R Horton.  Pursuant to Rule 14-504 of the Utah Rules of Lawyer Discipline and Disability, the OPC conducted an investigation of the information.  In accordance with Rule 14-510(a)(5), the OPC has determined that the informal complaint could not be resolved by other means, or that the informal complaint sets forth facts which, by their very nature, should be brought before the Screening Panel, or that good cause otherwise exists to bring the matter before the Screening Panel. Therefore, the OPC is bringing the case before the Ethics and Discipline Committee for investigation, consideration and determination or recommendation.  To assist the Committee, the OPC offers the following: (1) a summary of the facts, (2) a summary of the allegations, (3) a summary of the attorney's response to the allegations, (4) the OPC's recommendation regarding potential rule violations, and (5) a discussion of issues and questions the Committee may want to explore in the course of its investigation.

PX20 - 977

## FACTS

1. Mr. ▇▇ retained Mr. Horton and his firm, Preferred Law, to assist him in a mortgage modification case on February 25, 2013. [084]

2. On February 25, 2013 Mr. ▇▇ was sent a "welcome" email from Mr. Horton's paralegal, Frank Dodd indicating that certain documents needed to be sent. [120-121]

3. Also on February 25, 2013, Stacey Rasmussen spoke to Mr. ▇▇ on the telephone and a "sales Pac" document was uploaded by a billing representative, a BA documents was uploaded by Grant Canfield. [120]

4. Mr. ▇▇ signed the Fee and Representation Agreement with Preferred Law on October 10, 2013 as "Borrower."  The Agreement stated that Preferred Law would provide the following services: "analyze his or her federal case," "prepare documents," and to "speak with the Borrower's lender." [011-020]

5. The Agreement further provides that "[a]ll state related matters related to Borrower's case, if any, will be immediately forwarded, with Borrower's permission, to local counsel and will not be governed by the terms of this agreement." [011]

6. Mr. Horton's Agreement provides that there is a limit on his liability and that the signor has had a chance to obtain independent counsel and is currently represented in making the Agreement. [014]

7. The Addendum to Mr. Horton's legal services Agreement provides for the estimation of charges for "federal legal services provided by Preferred Law" in four phases, each requiring a charge of $974. [018-019]

8. Mr. Horton's Agreement Addendum also states that fees are due only after work is

performed and that they are not advance fees. In addition, the Addendum states, "Preferred Law believes in earning fees through persistent efforts and work performed, before billing Borrower for that work." [019]

9. The Addendum provides that "the document and preparation fees (after payment of the phases above) will be **$297 monthly** beginning after the end of the payment schedule date of this Agreement." [020]

10. On February 19, 2013, Mr. ███ received a letter from Jonathan Hanley guaranteeing a modification of his loan. [009]

11. Between February 25, 2013 and March 11, 2013, Grant Canfield, Stacey Rasmussen and Katie Gilson worked on Mr. ███ matter. [119-120]

12. On March 11, 2013, Stephanie Sala, a Mortgage Modification Processor for Preferred Law spoke to Mr. ███ on the telephone and sent an email. [0119]

13. Between February 2013 and February 24, 2014 the following non lawyers worked on Mr. ███ matter for Preferred Law: Bobbi Collins, Shannon Martinez, Jake Snyder, Melissa Boynton, VerNeita Clark, Melissa Hearon, Rebecca Peace, BreaAnna Poole, Abigail Torres, Calleen Bailey, Jentry Rock, Sonia Celis, Jacqueline Smith, Megan Sanchez, Teresa Johnson, David Matute, Jenna Adam, Ashley Brewer, Carrie Connor, Candice Davies, Erika Lorenzo, Stephanie Sala and a billing representative. [88-121]

14. On July 9, 2013, David Matute sent an email to Bobbi Collins asking her to find out what "In REM" means. [0109]

15. According to Mr. Horton, he "submitted all modification work to American Home Loan Counselors" because Preferred Law is only allowed to create an atmosphere

in which a modification can take place." [084]

16. Mr. ▇ states that he was billed, and paid, $4,791.00 for legal services. [025-026, 028-040, 043-045]

17. Mr. ▇ requests for a refund and information about his case were addressed to non-attorneys working for companies other than Preferred Law. Mr. ▇ states that he never spoke to an attorney while he was represented by Preferred Law. [087-121]

18. Preferred Law advertises that it is a law firm with a legal team that has years of experience providing legal services. [0205-0208]

19. Preferred Law's legal team is comprised of one attorney, Benjamin Horton. [0205-0208]

20. Mr. Horton's firm eventually offered to refund $1,100.00 of the retainer on January 6, 2015. [077-078]

21. The complainant is located in Georgia. According to Utah State Bar records, Mr. Horton is not licensed to practice law in Georgia. [001]

## WITNESSES

As part of its preliminary investigation, the OPC routinely contacts witnesses who may have information related to the allegations contained in the complaint. The following witnesses will be available to offer testimony at the screening panel hearing:

▇▇▇▇▇▇▇

PX20 - 980

## MR. ███████ ALLEGATIONS

Mr. ███ states that he hired Preferred Law to obtain a mortgage loan modification. He paid a total of $4,791.00 in legal fees. Mr. ███ alleges that he was guaranteed a loan modification, but no meaningful work was performed on his case and that his loan was eventually sold to third party without Preferred Law's assistance.

Mr. ███ asserts that throughout the months of legal representation, he had three different case managers, all non-lawyers assistants and that communication was difficult. He further states that he never spoke with an attorney.

## MR. HORTON'S RESPONSE

Mr. Horton states that Mr. ███ signed the fee agreement with Preferred Law which excluded mortgage modification services, instead creating an atmosphere in which modification could take place.  He further asserts that it was Modification Review Board, LLC, not Preferred Law that submitted the letter of guarantee.

Mr. Horton states that he maintained a supervisory role throughout Mr. ████ representation and that there was never a necessity to personally telephone Mr. ███.  He further asserts that the modification was unsuccessful because Mr. ███ prematurely terminated their services.

Also, Mr. Horton asserts that he provides federal legal services and that all of his legal services were limited to federal legal issues only and contractually all state-specific issues.

## ISSUES AND QUESTIONS

1.    <u>Did Mr. Horton Charge and Collect Advance Fees?</u>

Given that Mr. Horton's fee schedule requires monthly payments, it is difficult to say

that the money was earned upon receipt, ie. how much work was done and by whom prior to the $974 payment.

2.    Did Mr. Horton place the fees into his client trust account until earned?

Mr. Horton asserts in his Fee Agreement that the fees are not advance fees and apparently this designation is designed to allow him to call the fees earned on receipt. Therefore the question remains whether or not Mr. Horton put the funds in a trust account until they were earned.

3.    Did Mr. ███ have independent counsel when he signed the limitation of liability clause in the Agreement?

Mr. ███ signed the Agreement indicating that he had consulted independent counsel and was represented at the time he signed the Agreement. Did Mr. ███ read and understand this provision before he signed the Agreement? Was he in Mr. Horton's office when he signed the Agreement or was all of this done electronically?

4.    How were the fees disbursed to the non-lawyers and what is the role of Preferred Law?

Mr. Horton has provided no evidence of where the fees were deposited or how he was paid for his supervision of the non lawyers or how the non lawyer employees were paid for the work they did on the case? Where are the employees located? Who actually works for Preferred Law the law firm contracted to perform legal services?

## OPC'S RECOMMENDATIONS

Based solely on the OPC's investigation thus far, and recognizing that the screening panel may find additional facts during the hearing or in the course of its investigation, the OPC believes the following Rules of Professional Conduct may have

been violated by Mr. Horton and makes the following recommendations:

RULES IMPLICATED:

**Rule 1.3** Diligence:

A lawyer shall act with reasonable diligence and promptness in representing a client.

**Rule 1.4(a)** Communication:

(a) A lawyer shall:  (a)(1) promptly inform the client of any decision or circumstance with respect to which the client's  informed consent, as defined in Rule 1.0(e), is required by these Rules;  (a)(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (a)(3) keep the client reasonably informed about the status of the matter;  (a)(4) promptly comply with reasonable requests for information; and  (a)(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

**Rule 1.5(a)** Fees:

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:  (a)(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;  (a)(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;  (a)(3) the fee customarily charged in the locality for similar legal services;  (a)(4) the amount involved and the results obtained;   (a)(5) the time limitations imposed by the client or by the circumstances;  (a)(6) the nature and length of the professional relationship with the client;

(a)(7) the experience, reputation and ability of the lawyer or lawyers performing the services; and  (a)(8) whether the fee is fixed or contingent.

**Rule 1.15(a)** Safekeeping Property:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated or elsewhere with the consent of the client or third person. The account may only be maintained in a financial institution that agrees to report to the Office of Professional Conduct in the event any instrument in properly payable form is presented against an attorney trust account containing insufficient funds, irrespective of whether or not the instrument is honored. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

**In addition to the Rules above which were charged in the NOIC, the OPC believes that Mr. Horton may have violated the following rules and hereby puts him on notice of these additional rules:**

**Rule 1.8(h)** Conflict of Interest: Current Clients:

A lawyer shall not: (1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or (2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of

seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.

**Rule 1.15(c)** Safekeeping Property:

A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

**Rule 5.4(a)** Professional Independence of a Lawyer:

A lawyer or law firm shall not share legal fees with a non-lawyer, except that: (1) an agreement by a lawyer with the lawyer's firm, partner or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons; (2)(i) a lawyer who purchases the practice of a deceased, disabled or disappeared lawyer may, pursuant to the provisions of Rule 1.17, pay to the estate or other representative of that lawyer the agreed-upon purchase price; and (2)(ii) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and (3) a lawyer or law firm may include non-lawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

**Rule 5.4(b)** Professional Independence of a Lawyer:

A lawyer shall not form a partnership with a non-lawyer if any of the activities of the partnership consist of the practice of law.

Mr. Horton's Fee Agreement has implications for several rules. It appears from the Fee Agreement and other documents as well as Mr. Horton's response that Preferred Law and its lawyer, Mr. Horton, May not have provided any legal services for Mr. ██████   It appears that the work done consists of some emails and perhaps telephone calls but there are no letters from Mr. Horton to lenders or to Mr. ████   The work was done by non lawyers apparently under Mr. Horton's supervision and control. The work that was done provided Mr. ████ with very little value and did not accomplish what was promised to him. These facts implicate Rule 1.5.

Rule 5.4 is implicated due to the apparent nature of Mr. Horton's relationship with the non lawyers working on the case and also when Mr. Horton explains how fees were distributed to non lawyers. Rule 1.15 may be implicated as Mr. Horton explains whether or not fees were placed in his client trust account and held until earned. Mr. Horton's Fee Agreement purports to get around the requirement that legal fees need to be placed not the trust account until earned by saying that the fees are not advance fees.

In addition, Mr. Horton's Agreement attempts to provide cover from Rule 1.8 by stating in the agreement that Mr. ████ had independent counsel review the agreement prior to signing and that at the time of signing, Mr. ████ was represented. Mr. ████ will need to provide testimony to see if this is in fact true.

It is not clear what type of financial relationship Mr. Horton and Preferred Law has with the employees of Preferred Law and other entities, but it is clear that the work done on this case was not done by Mr. Horton, even though Mr. ████ believes that he hired a law firm to do legal work on his behalf.

After gathering the additional facts, the Screening Panel will need to determine whether or not Mr. Horton was negligent.  From the OPC's perspective at this point, it seems that Mr. Horton made a concerted effort to try to go around potential rule violations when he prepared his Fee Agreement and in contracting or hiring the non lawyers to work for him.  It is the opinion of the OPC that there is sufficient evidence to support a finding of probable cause that Mr. Horton knowingly violated a Rule of Professional Conduct, and the OPC recommends that the screening panel direct the OPC to file with the district court a formal complaint against Mr. Horton.*

*Please note that a formal complaint recommendation does not necessarily mean that an attorney should be suspended or disbarred. The OPC will seek an appropriate sanction as developed by the evidence during the course of the civil case.

At the District Court level it is a trial de novo in accordance with the Rules of Civil Procedure and Rules of Evidence. The District Court pursuant to Rule 14-603 of the Standards for Imposing Lawyer Sanctions has the full range of possible sanctions including Reprimand, Admonition, Probation, Suspension, Disbarment, etc. The District Court can also dismiss the case and any alleged rule violations not established by a preponderance of the evidence.

Dated:  _1-22-16_     Name: _____
                            Barbara L. Townsend

Dated:  _1-22-16_     Name: _____
                            Adam C. Bevis



# Utah State Bar

**Office of Professional Conduct**
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-9912
E-mail: opc@utahbar.org

Billy L. Walker
Senior Counsel

Todd Wahlquist
Deputy Senior Counsel

Diane Akiyama
Assistant Counsel

Adam C. Bevis
Assistant Counsel

Sharadee Fleming
Assistant Counsel

Barbara L. Townsend
Assistant Counsel

February 2, 2016

Benjamin R. Horton
2825 E. Cottonwood Pkwy Ste. 500
Salt Lake City, UT  84121
benhortonesq@yahoo.com

Re:   Informal Complaint Filed By ▉▉▉▉▉▉
      OPC File No.: 14-2338

Dear Mr. Horton:

This is to supplement our Screening Panel summary and to notify you of an amendment to the Rules that recently took effect. The change is to Rule 14-510(b)(8) of the Supreme Court Rules of Professional Practice. The rule change allows for evidence to be presented at the hearing including mitigation and aggravating evidence. The rule change allows the OPC to present any prior discipline and current public cases. You may also present witnesses and present evidence of any mitigating circumstances you wish to present.

Should you have any questions, please let me know.

Sincerely,

/Barbara L. Townsend
Assistant Counsel
Office of Professional Conduct

BLT/cms

PX20 - 988



# Utah State Bar®

**Clerk of the Ethics and Discipline Committee of the Utah Supreme Court**

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077 • Fax: 801-665-0052
Email: ethicsclerk@utahbar.org



February 8, 2016

**The Ethics and
Discipline
Committee of the
Utah Supreme Court**

Terrie T. McIntosh
Committee Chair
Private Practice
Salt Lake City

Catherine L. Brabson
Vice Chair
Salt Lake City Attorney's
Office
Salt Lake City

Jeffrey J. Hunt
Vice Chair
Parr, Brown, Gee & Loveless
Salt Lake City

Benjamin R. Horton

Re:     Complaint Filed By █████████
        OPC File No.: 14-2338

Dear Benjamin R. Horton:

At the conclusion of the hearing on February 4th, the Screening Panel of the Ethics and Discipline Committee of the Utah Supreme Court voted to Direct the Office of Professional Conduct to file a Formal Complaint against you in District Court.

If you would like a copy of the video recording(s) of your Screening Panel Hearing, please contact me at the address or email above. The cost of the recording is $15.00 which must be paid by check or cash in advance. Please make checks payable to "The Utah State Bar."

Sincerely,

Brady Whitehead
*Clerk of the Ethics and Discipline Committee*

cc: Office of Professional Conduct

# OPC Case

# #17-0148

# Benjamin R. Horton / ███ ████

PX20 - 990



**THE STATE BAR**
**OF CALIFORNIA**

845 SOUTH FIGUEROA STREET, LOS ANGELES, CALIFORNIA 90017-2515

OFFICE OF CHIEF TRIAL COUNSEL
ENFORCEMENT UNIT
Gregory P. Dresser, Interim Chief Trial Counsel

TELEPHONE: (213) 765-1000
FAX: (213) 765-1319
http://www.calbar.ca.gov

February 27, 2017



Utah State Bar
Office of Professional Conduct
645 South 200 East, Suite 205
Salt Lake City, UT 84111–3834

### CONFIDENTIAL OFFICIAL INFORMATION

RE:     Agency Referral of Non-California Attorney Complaint
        State Bar Case Number:     16-NA-15581
        Respondent/Non-Attorney:   Benjamin R. Horton

Dear Office of Professional Conduct:

Our office received a complaint from ▆▆ and ▆▆▆▆ alleging the unlawful practice of law in California by Benjamin R. Horton.  According to our records, Mr. Horton is not a licensed attorney in California but is a licensed attorney in the State of Utah.  Mr. Horton appears to have been operating out of Utah but was providing legal services for Mr. and Mrs. ▆▆▆ who are residents of California.  The State Bar investigated this complaint and we have now completed our investigation.  Based upon the findings of our investigation, we are sending a Cease and Desist Notice to Mr. Horton.  However, we are bringing this matter to your attention as it may involve conduct over which your office has jurisdiction. Enclosed is a copy of the complaint.

Because the allegations may subject Mr. Horton to disciplinary proceedings within your jurisdiction, we are referring this matter to your office, in confidence and pursuant to California Business and Professions Code Section 6044.5 and California Evidence Code Section 1040.

If you have any questions or would like further information, please contact Investigator Matthew Gideon at (213) 765-1179.

Very truly yours,

Melanie J. Lawrence
Acting Deputy Chief Trial Counsel

Enclosures

cc:    ▆▆ and ▆▆▆▆

_002

PX20 - 991



# THE STATE BAR
## OF CALIFORNIA

# INTER-OFFICE
# COMMUNICATION

| | |
|---|---|
| **DATE:** | February 22, 2017 |
| **TO:** | **FILE** |
| **FROM:** | Matthew Gideon, Investigator |
| **FILE NUMBER:** | 16-NA-15581 |
| **RESPONDENT'S NAME:** | Benjamin R. Horton, Esq. (Preferred Law Group), NA #703742 |
| **SUBJECT:** | File Closing Memo - CND |

It is recommended that this complaint file be closed with the issuance of a cease and desist letter to the respondent to prevent any future unauthorized practices of law.

## ALLEGATIONS INVESTIGATED

1. B&P Code §6125 & §6126- *Unauthorized Practice of Law*

## COMPLAINT

███ and ███████ (CW's) hired Preferred Law Group (Benjamin Horton) (R) on April 6, 2014 and paid R $3,896 to assist CWs in securing a loan modification on CWs second mortgage. CWs complain that R, who is an attorney in Utah, improperly charged and collected advanced fees for the services. CWs also complain that R failed to perform competently, delayed in performance, failed to communicate and failed to return fees. CWs complained to the California Department of Justice which contacted R. R provided a written response to the DOJ on January 19, 2016. R denied he was hired to assist with a loan modification and maintained his services dealt with federal issues and not state, and points to the fee agreement to confirm this. CWs however maintain that R was hired for a loan modification.

## INVESTIGATION

Thru investigative efforts, a data base search within the California State Bar repository revealed that R is not a current member. R is an active member of the State Bar of Utah as well as the State Bar of Texas. According to the Utah State Bar website, R is currently suspended. Both State Bar websites identify that R is practicing under the firm Preferred Law, PLLC, which is located at 2825 E. Cottonwood Pkwy., Ste. 500, Salt Lake City, Utah 84121.

1

PX20 - 992

As of February 16, 2017 according to the BBB website, Preferred Law, PLLC is now located at 8180 S. 700 E #110 in Salt Lake City, Utah 84124 with the same telephone number of (801) 386-5100. After calling this number and speaking with the receptionist, she stated that R was no longer with the firm which is now called Consumer Defense, LLC even though the voice mail prompt identifies the company as Consumer Link. The receptionist indicated that Preferred Law, PLLC was bought out by Consumer Defense, LLC which is comprised of mortgage advisors and Consumer Link which is comprised of mortgage negotiators and their location is at 8180 S. 700 E #110 in Salt Lake City, Utah 84124. R's telephone number on the Utah State Bar website is listed as (888) 980-7457 which prompts to Consumer Link.

Complaining Witness

On July 29, 2016, Paralegal Jesus Arambula, contacted and spoke with both CWs simultaneously over the telephone.

CWs informed me that in early March of 2014, Ms. ▆▆▆▆▆▆ conducted an online search for the purpose of locating a company to assist her and her husband with a loan modification on their second mortgage loan. She recalls locating Preferred Law, contacting the company, and speaking to a man named "Rod". They informed Rod about wanting to modify their second mortgage loan and he informed them that Preferred Law would be able to assist them with the loan modification. CWs were informed that the loan modification process would be taken care of in four months. They were also told that the loan modification process was a federal matter and was something that Preferred Law could take care of even if it was based out of Salt Lake City, Utah.

On or about April 6, 2014, the CWs received the contract from Preferred Law. They recall reading the contract and not understanding why it stated that Preferred Law does not provide loan modification assistance. They then contacted Rod and asked him about the wording on the contract. Rod told them not to worry about the wording on the contract as the services would include assistance in obtaining a loan modification. After talking to Rod, CWs signed the contract and forwarded it to Preferred Law along with additional documentation and information requested.

Approximately four months after retaining Preferred Law, CWs were informed, over the telephone, that Preferred Law was unable to negotiate a deal to modify their loan but were still working on the matter. At that point, Preferred Law had already made four separate monthly deductions of $974, from April through July, including an additional deduction of $297 out of CWs' bank account for the alleged services. CWs at one point were informed that until they were late paying their first mortgage loan, the second mortgage loan lender would not work with them. The representative from Preferred Law basically told CWs that although he was not telling CWs to stop paying their first mortgage loan, he was letting them know that the second mortgage loan lender would not speak with Preferred Law about modifying the loan unless the CWs were defaulted on their first mortgage loan. As instructed, the CWs stopped paying the first mortgage loan.

In March 2015, after 11 months of going back and forth, providing Preferred Law with documentation and information and not receiving a response for weeks, CWs began to get suspicious. They then began contacting the mortgage loan lenders to see if anything was being done. They contacted Wells Fargo, their first mortgage lender, and were informed that a loan modification was denied in January of 2015. The CWs, however, recall that when speaking with a representative from Preferred Law, they were told that Preferred Law was still working on getting the loan modification through Wells Fargo. They also

_004

contacted Chase, their second mortgage lender, and were told that they too had declined to modify their loan. Chase had declined the loan modification in January 2015 and had since closed their case.

At some point in April 2015, in order to be able to speak with and negotiate terms with the lenders, CWs sent Preferred Law a cease and desist letter requesting that they stop any and all work pertaining to the loan modification. CWs also requested that Preferred Law close their file and refund their money for failing to conduct the services agreed upon and paid for. Preferred Law did not respond to CWs letter.

On December 18, 2015, after having not received any response or any refund, CWs filed a complaint with the Better Business Bureau in the State of Utah. It was at that point that they found out that Preferred Law had 30 complaints against them, all of which involve loan modifications. CWs soon received a copy of a 1/19/16 letter from Benjamin Horton of Preferred Law written to the California Department of Justice (letter was enclosed with CWs State Bar complaint). To date, CWs have yet to receive a refund.

CWs ultimately dealt with the lenders, Wells Fargo and Chase, and were able to obtain the loan modification without any assistance from Preferred Law. Through the process, they were also informed that they did not need to be late on any payments in order to request for a modification. The loan modification process took about 6 months for CWs to complete on their own.

Respondent

On January 19, 2016, R submitted a written response to the California Department of Justice regarding legal service performed for the CW's (see Attachment 1). R illustrated that the legal services that were performed on behalf of the CW's were strictly limited to federal law. R explained that he drafted a Qualified Written Request (see Attachment 1) pursuant to the Title 15 U.S.C. § 1601, et seq., the Fair Debt Collection Practices Act (FDCPA) and RESPA, codified as Title 12 § 2605 E(1)(B) and Reg. X § 3500.21(f)2 of the United States Code, and a subsequent federal analysis and review of all documentation supplied by the lender. R also noted that the retainer agreement signed by the CW's explicitly states that services to be performed do not include loan modifications as well as many other associated mortgage services (see Attachment 2).

Conclusion

Our investigation revealed that on April 6, 2014 R was hired to perform legal services regarding a financial matter on behalf of CW's. Shortly thereafter, R promised to draft a Qualified Written Request to obtain pertinent information relative to the CW's mortgage loan(s) and conduct a review and analysis of all documentation supplied by the lender. From April 2014 through July 2014, R was paid $3,896 to assist with CW's loan modification despite the language in his retainer agreement stating that his firm does not perform this or other related mortgage services. On February 17, 2017 sent via email to this office, R acknowledged submitting the QWR on behalf of the CW's.

On April 6, 2015, CW's sent R a cease and desist letter to preclude R from further contact and negotiations with their respective banks, Wells Fargo and Chase. CW's were able to obtain a loan modification independently. Furthermore, CW's allege that R has not contacted them or provided them with a refund, as R stated in his letter to California DOJ on January 19, 2016 (see Attachment 1).

3

PX20 - 994

## ANALYSIS / DISPOSITION

The alleged misconduct was identified on April 6, 2014. Since that time, our office has not received any additional complaints against attorney, Benjamin Horton. Based upon the evidence obtained, it appears that R has engaged in UPL.

This case was discussed with Senior Trial Counsel (STC) Augustin Hernandez on February 16, 2016, regarding whether we should proceed with further investigation. For the reasons discussed above, the decision was made to close this file after the issuance of a CND letter. A law enforcement referral was made to the Ventura County District Attorney's Office and the Utah State Bar.



*U.[illegible]*

Preferred Law, PLLC
Law Office

January 19, 2016

California Department of Justice
Public Inquiry Unit
Attn:  Jeanette Salazar
P.O. Box 944255
Sacramento, CA  94244-2550

RE:  ▮▮▮▮▮▮▮▮▮▮▮▮ Simi Valley, CA ▮▮▮▮▮

Dear Ms. Salazar:

Thank you for your letter dated December 21, 2015.  I am the attorney and manager responsible for the law office of Preferred Law, PLLC, which is located in Salt Lake City, Utah.  Please direct all future correspondence to me.

Ms. ▮▮▮▮ is mistaken regarding the scope of our services which are detailed in our written fee agreement.  For your review, I have enclosed the fee agreement which Ms. ▮▮▮▮ completed and signed.

With respect to Ms. ▮▮▮▮ our duties as a law firm were strictly limited to federal law.  Our firm's services included the drafting of a Qualified Written Request pursuant to the TILA 15 U.S.C. § 1601, et seq., the Fair Debt Collection Practices Act (FDCPA) and RESPA, codified as Title 12 § 2605 (e)(1)(B) and Reg. X § 3500.21(f)2 of the United States Code, and a subsequent federal analysis and review of all documentation supplied by the lender.  We performed these services on behalf of the client.

As is established in our written fee agreement, signed by Ms. ▮▮▮▮ any services related to foreclosure rescue and prevention services, loss mitigation services, foreclosure consultation, loan modification assistance, mortgage loan origination and servicing, mortgage assistance relief service, debt negotiation or adjustment, or other state related relief are directed to a competent mortgage assistance relief service, HUD certified housing counselor, and/or local counsel in accordance with 16 C.F.R. Part 322.

Furthermore, our fee agreement explicitly excludes: "FORECLOSURE RESCUE AND PREVENTION SERVICES, LOSS MITIGATION SERVICES, FORECLOSURE CONSULTATION, LOAN MODIFICATION ASSISTANCE, MORTGAGE LOAN ORIGINATION AND SERVICING, MORTGAGE ASSISTANCE RELIEF SERVICE, DEBT NEGOTIATION OR ADJUSTMENT, OR OTHER STATE RELATED RELIEF."

1 | P a g e

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (801) 386-5100 • Fax: (801) 224-6524 • www.preferredlawteam.com

017

PX20 - 996

Essentially, our duty as a law office was, pursuant to federal law, to create an atmosphere in which Mr. ███████ modification could occur; however, we do not conduct any modification work through our office. Mr. ██████ file was never neglected and all work continued until the day that Mr. ██████ arbitrarily shut his file down.

However, it is our intent to maintain happy clientele. Accordingly, we have attempted on several occasions to reach out to Ms. ██████ to the settle the matter but he has not returned our communications. We are willing to settle the matter in the amount of $1,000. Please e-mail me at benhortonesq@yahoo.com (or you may call me at (801) 386-5100, ext. 212) if you have any other questions. I look forward to hearing from you.

Sincerely,

Benjamin R. Horton
Attorney at Law

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (801) 386-5100 • Fax: (888) 224-6524 • www.preferredlawteam.com

PX20 - 997



| | |
|---|---|
| THE STATE BAR<br>OF CALIFORNIA | INTER-OFFICE<br>COMMUNICATION |

Date:      August 3, 2016

To:        Cecilia Horton-Billard

From:      Jesus Arambula

Subject:   Benjamin R. Horton (Preferred Law, PLLC)

UPL No.:   16-23007

**TELEPHONE MEMO:**

On July 29, 2016, at approximately 4:05 p.m., I contacted and spoke with both CWs (███ & ███ ███ simultaneously over the telephone.

CWs informed me that in early March of 2014, Ms. ███ conducted an online search for the purpose of locating a company to assist her and her husband with a loan modification on their second mortgage loan. She recalls locating Preferred Law, contacting the company, and speaking to a man named "Rod". They informed Rod about wanting to modify their second mortgage loan and he informed them that Preferred Law would be able to assist them with the loan modification. CWs were informed that the loan modification process would be taken care of in 4 months. They were also told that the loan modification process was a federal matter and was something that Preferred Law could take care of even if it was based out of Salt Lake City, Utah.

On or about April 6, 2014, the CWs received the contract from Preferred Law. They recall reading the contract and not understanding why it stated that Preferred Law does not provide loan modification assistance. They then contacted Rod and asked him about the wording on the contract. Rod told them not to worry about the wording on the contract as the services would include assistance in obtaining a loan modification. After talking to Rod, CWs signed the contract and forwarded it to Preferred Law along with additional documentation and information requested.

Approximately four months after retaining Preferred Law, CWs were informed, over the telephone, that Preferred Law was unable to negotiate a deal to modify their loan but were still working on the matter. At that point, Preferred Law had already made four separate monthly deductions of $974, from April through July, including an additional deduction of $297 out of CWs' bank account for the alleged services. CWs at one point were informed that until they were late paying their first mortgage loan, the second mortgage loan lender would not work with them. The representative from Preferred Law basically told CWs that although he was not telling CWs to stop paying their first mortgage loan, he was letting them know that the second mortgage loan lender would not speak with Preferred Law about modifying the loan unless the CWs were defaulted on their first mortgage loan. As instructed, the CWs stopped paying the first mortgage loan.

PX20 - 998

Cecilia Horton-Billard
August 3, 2016
Page 2

In March 2015, after 11 months of going back and forth, providing Preferred Law with documentation and information and not receiving a response for weeks, CWs began to get suspicious. They then began contacting the mortgage loan lenders to see if anything was being done. They contacted Wells Fargo, their first mortgage lender, and were informed that a loan modification was denied in January of 2015. The CWs, however, recall that when speaking with a representative from Preferred Law, they were told that Preferred Law was still working on getting the loan modification through Wells Fargo. They also contacted Chase, their second mortgage lender, and were told that they too had declined to modify their loan. Chase had declined the loan modification in January 2015 and had since closed their case.

At some point in April 2015, in order to be able to speak with and negotiate terms with the lenders, CWs sent Preferred Law a seize and desist letter requesting that they stop any and all work pertaining to the loan modification. CWs also requested that Preferred Law close their file and refund their money for failing to conduct the services agreed upon and paid for. Preferred Law did not respond to CWs letter.

On December 18, 2015, after having not received any response or any refund, CWs filed a complaint with the Better Business Bureau in the State of Utah. It was at that point that they found out that Preferred Law had 30 complaints against them, all of which involve loan modifications. CWs soon received a copy of a 1/19/16 letter from Benjamin Horton of Preferred Law written to the California Department of Justice (letter was enclosed with CWs State Bar complaint). To date, CWs have yet to receive a refund.

CWs ultimately dealt with the lenders, Wells Fargo and Chase, and were able to obtain the loan modification without any assistance from Preferred Law. Through the process, they were also informed that they did not need to be late on any payments in order to request for a modification. The loan modification process took about 6 months for CWs to complete on their own.

.

PX20 - 999

March 26, 2014

Modification Review Board, LLC
9035 S 700 E, Ste. 203
Sandy, UT 84070

 and ▮▮▮▮
Simi Valley, CA ▮▮▮

Re:     Service Guarantee Agreement

Dear Mr. and Mrs. ▮▮▮▮

Modification Review Board, LLC ("MRB") welcomes you. The law firm of Preferred Law has agreed to submit a Qualified Written Request on your behalf and begin performing its federal review services as documents are received from your lender. Preferred Law's services are identified in its fee agreement. Once your information is received, and unless you direct otherwise in writing, American Home Loan Counselors will initiate your modification services and will be your primary contact throughout the process.

Based on the past performance of American Home Loan Counselors with the assistance of Preferred Law's federal legal services, and our knowledge of your factual situation, MRB hereby GUARANTEES that a modification or home foreclosure alternative pursuant to the HAFA program will be secured for you conditioned upon the following terms:

☐ You allow American Home Loan Counselors to process the modification and you promptly cooperate with Preferred Law and American Home Loan Counselors at all times.

☐ All communications from your lender, if any, are immediately forwarded to Preferred Law.

☐ All documents will be returned when requested by the deadlines given.

☐ There will be no significant changes to your current circumstances.

☐ All relevant information provided by you is entirely accurate and complete.

☐ All payments to Preferred Law are made on time per the Payment Schedule.

☐ You recognize that this guarantee is from MRB.

☐ Any and all disputes between the parties related to this agreement and MRB shall be resolved by binding arbitration in Salt Lake City, Utah, without appeal. You agree that any claim for damages by you against MRB for any reason shall be strictly limited only to only the fee paid by you to Preferred Law.

☐ This agreement constitutes the entire agreement between the parties relating to the transactions contemplated hereby and all other prior or contemporaneous agreements, promises, claims, understandings, representations and statements, oral or written, are merged into this agreement.

Jonathan Hanley
General Manager

PX20 - 1000

To: Preferred Law PLLC/ Modification Review Board LLC/ Default Support Center.
Attn. Mr. Benjamin Horton
8180 S. 700 E. # 110
Sandy, Ut, 84070
December 12, 2016

Re: ████████████████  Simi Valley, CA ███████
Dear Mr. Benjamin Horton

In your letter send to the district attorney office of the state of California addressed to Ms. Salazar, you stated that you have been trying to reach out to Mr. █████  I have yet to receive any letters, emails or correspondence of any sort from you. It is an untrue statement that you have been trying to reach out to either myself or my wife. You stated in your letter that you do not perform Loan modifications, or the quest for loan modifications. Please explain to me why your representative "Rod Kercher" informed us that we have to send all required documentations in for review to be qualified for "a loan modification". We email all the required documents and we received a phone call from "Rod Kercher" and he informed us that "we qualified for a loan modification". That's the reason we signed the contract that "Rod Kercher" send us. "Rod Kercher" also informed us that it is perfectly legal for your law firm to practice law in California. Otherwise, if he had told us the truth, we would done things differently and sought another legal consult in California.

Your staff "Brianna Whitmire & Alaina Parkinson" also consistently delayed the processing of the documents that we've send, and ask for duplicate of the same documents multiple times, also asking for updates constantly. The modification is delayed exactly 4 months so that your firm was able to collect all the payments and then we were able to speak to someone. Your firm required that we allowed for automatic debits from our account before anyone from your firm started assisting us.

Your representative "Brianna Whitmire & Alaina Parkinson" has MIS REPRESENTED your ability to assist us. Your firm was supposed to help us obtain a loan modification for a lower rate. After committing our faith in your firm for over a year, your firm was not able to accomplished anything, except for putting us in a much worse situation. Your staff informed us that we had to stop making payments to our second as well as our first in order to get the financial institutions attention. That is an untrue statement according to the financial institutions. In your offer to the district attorney's office and not to us, you stated that you will only refund $1,000.00 to us out of $3,896.00. You have not yet reach out to us with any offer that is reasonable.

In order to save our home from your miss-representation, we had to pay over $45,000.00 and we lost a tremendous amount in cost of funds to refinance our other building because of your agents missed leading advice. Our loan modification was done and finished in 3 months without your firm or your assistance. We are waiting for your reply in the next 30 days.

Sincerely,

██ ████

CC: The State Bar of California

PX20 - 1001

To Preferred Law                                    April 13, 2015

2825 E. Cottonwood Parkway Ste 500

Salt Lake City, UT 84121

Attn.: Brianna Whitmire/Alaina Parkinson

Due to the circumstances, that our request for loan modification has not been approved and also has
been denied without notification to us, we decided it is best that we do not use your counsel anymore.

We were told at the beginning by Rod Kercher that this process only takes 4 months, and yet we have
approach the one year mark already.  His information is misleading. Also,  at the beginning, we had told
each person we spoke to at Preferred Loan that we only wanted to work on the modification for the 2nd
only, but each person we worked with insisted that 'the first mortgage must  be worked on before the
second will be willing to work with us'.  Even though there was many documents needed, and we
provided them, whenever we call, it took multiple times for someone to return our phone calls and
emails.  We also received an email from Alaina Parkinson that accuses us of not cooperating with the
process of the modification, even though it was after Wells Fargo Home Mortgage had denied the
request for modification.

We also learned that the 'California homeowners bill of rights 'Senate SB94' has been violated by your
firm.  It states on that law that the law firm can only invoice us after the loan modification takes place.
Your law firm did the opposite and took advantage of us and wanted the payment in advance, and
nothing had been accomplished.  You were only able to stop the 2nd from foreclosure notices after 7
months.  We are requesting Preferred Law to refund all our money and all our documentations within
two weeks, or we will be seeking legal actions.

Sincerely,

 & ███ ██████

PX20 - 1002

**Gideon, Matthew**

| | |
|---|---|
| **From:** | Benjamin Horton, Attorney <benhortonesq@yahoo.com> |
| **Sent:** | Friday, February 17, 2017 8:51 AM |
| **To:** | Gideon, Matthew |
| **Subject:** | RE: California State Bar Matter |

I did state that I submitted a QWR pursuant to federal law on the behalf of ███ and ███ ███ but I never said that the ███ first or second mortgage is "federally related."

**From:** Gideon, Matthew [mailto:Matthew.Gideon@calbar.ca.gov]
**Sent:** Thursday, February 16, 2017 3:49 PM
**To:** Benjamin Horton, Attorney
**Subject:** RE: California State Bar Matter

This matter is regarding  legal services you performed on behalf of ███ and ███ ███ on or about April 1, 2014 (16-NA-15581).  You stated in correspondence to CA DOJ, that you submitted a QWR on their behalf to their mortgage servicer.  Please explain in what way the ███ first or second mortgage is  "federally related?"

Respectfully,

**From:** Benjamin Horton, Attorney [mailto:benhortonesq@yahoo.com]
**Sent:** Thursday, February 16, 2017 2:18 PM
**To:** Gideon, Matthew
**Subject:** RE: California State Bar Matter

What can I help you with?

**From:** Gideon, Matthew [mailto:Matthew.Gideon@calbar.ca.gov]
**Sent:** Thursday, February 16, 2017 2:27 PM
**To:** benhortonesq@yahoo.com
**Subject:** California State Bar Matter

Please contact me as soon as possible.  Your cooperation is greatly appreciated.

Respectfully,

Matthew Gideon | Investigator
Office of Chief Trial Counsel
The State Bar of California | 845 S. Figueroa St. | Los Angeles, CA 90017
Tel: 213-765-1179 | matthewgideon@calbar.ca.gov | Fax: 213-765-1318

*This message may contain confidential information that may also be privileged.  Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose the message in whole or in part.  If you have received this message in error, please advise the sender by reply e-mail and delete all copies of the message. Thank you.*

PX20 - 1003



**THE STATE BAR
OF CALIFORNIA**

845 SOUTH FIGUEROA STREET, LOS ANGELES, CALIFORNIA 90017-2515

OFFICE OF CHIEF TRIAL COUNSEL
ENFORCEMENT UNIT
Gregory P. Dresser, Interim Chief Trial Counsel

TELEPHONE: (213) 765-1000
FAX: (213) 765-1318
http://www.calbar.ca.gov

February 27, 2017

<u>Via U.S. Mail and E-mail to: benhortonesq@yahoo.com</u>

Benjamin Horton, Esq.
2825 E. Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121

# CEASE AND DESIST

RE:   Case No.  UPL-16-NA-15581

Dear Mr. Horton:

The State Bar of California has received information that you may have engaged, or that you may be engaging on an ongoing basis, in the unauthorized practice of law.  California Business and Professions Code section 6125 provides, "No person shall practice law in California unless the person is an active member of the State Bar."  According to our official membership records, you are not an attorney licensed to practice law in this state.

The practice of law includes, but is not limited to, the following activities: (1) performing services in court cases/litigation; (2) giving legal advice and counsel; and (3) preparing legal instruments and contracts that secure legal rights – even if the matters involved do not have anything to do with lawsuits or the courts.  (*People v. Merchants Protective Corp.* (1922) 189 Cal. 531, 535.)

The unauthorized practice of law occurs when someone who is not licensed as a member of the State Bar engages in any of these activities, unless specifically permitted to do so by a law.  It also occurs when an unlicensed person holds himself or herself out as being entitled to do these activities, even if the person does not actually represent that he or she is a licensed California attorney.  (Bus. & Prof. Code, §§ 6126, subd. (a) and 6126.7.)[1]

<u>SUMMARY OF ALLEGED CONDUCT</u>

Our investigation has revealed that on April 6, 2014, you were employed by ▉ and ▉▉ to perform legal services pertaining to their home mortgage loan modification matter despite the language in your retainer agreement stating that you were not performing loan modification services or other loan

---

[1] The California Business and Professions Code may be reviewed at
http://www.leginfo.ca.gov/.html/bpc_table  of  contents.html.

PX20 - 1004

Benjamin Horton
Page 2

forbearance services.  You informed the ████ that you would prepare a Qualified Written Request to obtain pertinent information relative to their home mortgage loan and that you would conduct a review and analysis of all documentation received from their lender.  From April 2014 through July 2014 you were paid $3,896 in legal fees to represent the ████ in their loan modification matter.

You are not a licensed attorney in the State of California.  Your conduct constitutes the unlawful practice of law and is in violation of Business and Professions Code sections 6125 and 6126.

Based on the conduct alleged below and/or our investigation, the following sections of the Business and Professions Code appear to apply:

<u>PARALEGALS:</u>

Paralegals are subject to the provisions of California Business and Professions Code sections 6450 through 6456.

A paralegal must either contract with or be employed by an attorney, law firm, corporation, governmental agency, or other entity, while working under the direction and supervision of an active member of the State Bar of California.  A paralegal may not provide legal advice, or represent a client in court, or select, explain, draft, or recommend the use of any legal document, except to his or her attorney employer or supervisor, or engage in any conduct that constitutes the unlawful practice of law.  In addition, a paralegal may not establish the fees to charge a client for services.  The fees charged to the client are to be set only by the attorney who supervises the paralegal's work.  A paralegal who does any of these prohibited activities is engaged in the unauthorized practice of law.

Paralegals must meet certain educational requirements and fulfill mandatory continuing legal education requirements; and be certified by their supervising attorney every two years.  (Bus. & Prof. Code, § 6450, subd. (d).)

<u>LEGAL DOCUMENT ASSISTANTS:</u>

Legal document assistants are subject to the provisions of California Business and Professions Code sections 6400 through 6415.

A legal document assistant provides only self help service to a member of the public who is representing himself or herself in a legal matter.  "Self help service" means all of the following: "(1) completing legal documents in a ministerial manner, selected by a person who is representing himself or herself in a legal matter, by typing or otherwise completing the documents at the person's specific direction; (2) providing general published factual information that has been written or approved by an attorney, pertaining to legal procedures, rights, or obligations to a person in representing himself or herself; (3) making published legal documents available to a person who is representing himself or herself in a legal matter; and (4) filing and serving legal forms and documents at the specific direction of a person who is representing himself or herself in a legal matter."  If a legal document assistant gives any advice, explanation, opinion, or recommendation to a consumer about possible legal rights, remedies, defenses, options, selection of forms, or strategies, then he or she is engaged in the unauthorized practice of law.

PX20 - 1005

Benjamin Horton
Page 3

Legal document assistants are required to register with their county clerk, pay a registration fee, and post a bond. (Bus. & Prof. Code, §§ 6402-6407.)

POTENTIAL LEGAL IMPLICATIONS:

Engaging in the unauthorized practice of law may result in serious legal consequences if a court determines that you have violated the law. The unauthorized practice of law is a crime, punishable by up to one year in county jail or by a fine of up to one thousand dollars ($1,000), or both. (Bus. & Prof. Code, § 6126, subd. (a).) The unauthorized practice of law is also contempt of the authority of the courts and may be punished as contempt of court. (Bus. & Prof. Code, § 6127, subd. (b).)

Moreover, the unauthorized practice of law may be enjoined in a civil action brought in the Superior Court by the State Bar of California. (Bus. & Prof. Code, § 6030.) The Superior Court, upon application of the State Bar of California, may assume jurisdiction over the practice of any person engaged in the unauthorized practice of law and may issue orders directing the State Bar to shut that practice down. (Bus. & Prof. Code, § 6126.3.)

Certain additional penalties and remedies may also apply to violations by paralegals, legal document assistants, and immigration consultants. (See Bus. & Prof. Code, §§ 6142.1, 6415, 6455, 22445, 22446.5, and 22447.)

Please note that the State Bar does not have authority to order you to discontinue providing your services. Only a court may determine that you have violated, or are violating, any law and, if appropriate, impose a remedy or penalty for such violation. You may have a right, prior to the initiation of any court action by the State Bar, to request a declaratory ruling regarding whether the performance of your service is lawful. You are further notified that any right to a declaratory ruling supplements any other legal rights that you may already have to establish the legality of your services.

NOTICE

You are hereby on notice that, based upon our investigation to date and your actions described above, it is the opinion of the State Bar Office of Chief Trial Counsel ("OCTC") that you have engaged in the unauthorized practice of law. You are hereby notified that OCTC may investigate the allegations outlined herein and, if it finds cause, take appropriate action to ensure your compliance with these laws.

You should immediately **CEASE AND DESIST** engaging in the unauthorized practice of law. If the State Bar of California receives additional information that, despite, this notice, you continue to engage in violation of the above laws, the State Bar may take any appropriate action to ensure your compliance with these laws and to protect the public.

Respectfully,

Agustin Hernandez
Senior Trial Counsel
AH/mg

PX20 - 1006



**THE STATE BAR
OF CALIFORNIA**

845 SOUTH FIGUEROA STREET, LOS ANGELES, CALIFORNIA 90017-2515

**OFFICE OF CHIEF TRIAL COUNSEL
ENFORCEMENT UNIT**
Gregory P. Dresser, Interim Chief Trial Counsel

TELEPHONE: (213) 765-1000
FAX: (213) 765-1319
http://www.calbar.ca.gov

February 27, 2017

Utah State Bar
Office of Professional Conduct
645 South 200 East, Suite 205
Salt Lake City, UT 84111–3834

<u>CONFIDENTIAL OFFICIAL INFORMATION</u>

RE:  Agency Referral of Non-California Attorney Complaint
State Bar Case Number:        16-NA-15581
Respondent/Non-Attorney:    Benjamin R. Horton

Dear Office of Professional Conduct:

Our office received a complaint from ▓▓ and ▓▓▓ ▓▓▓▓ alleging the unlawful practice of law in California by Benjamin R. Horton.  According to our records, Mr. Horton is not a licensed attorney in California but is a licensed attorney in the State of Utah.  Mr. Horton appears to have been operating out of Utah but was providing legal services for Mr. and Mrs. ▓▓▓▓ who are residents of California.  The State Bar investigated this complaint and we have now completed our investigation.  Based upon the findings of our investigation, we are sending a Cease and Desist Notice to Mr. Horton.  However, we are bringing this matter to your attention as it may involve conduct over which your office has jurisdiction.  Enclosed is a copy of the complaint.

Because the allegations may subject Mr. Horton to disciplinary proceedings within your jurisdiction, we are referring this matter to your office, in confidence and pursuant to California Business and Professions Code Section 6044.5 and California Evidence Code Section 1040.

If you have any questions or would like further information, please contact Investigator Matthew Gideon at (213) 765-1179.

Very truly yours,

Melanie J. Lawrence
Acting Deputy Chief Trial Counsel

Enclosures

cc: ▓▓ and ▓▓▓▓▓▓

PX20 - 1007



# Utah State Bar.

**Office of Professional Conduct**
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-9912
E-mail: opc@utahbar.org

Billy L. Walker
*Senior Counsel*

Todd Wahlquist
*Deputy Senior Counsel*

Diane Akiyama
*Assistant Counsel*

Adam C. Bevis
*Assistant Counsel*

Sharadee Fleming
*Assistant Counsel*

Barbara L. Townsend
*Assistant Counsel*

March 17, 2017

Benjamin R. Horton
2825 E Cottonwood Pkwy, Ste 500
Salt Lake City, UT 84121

Re: Information Submitted by the State Bar of California
OPC Case No.: 17-0148

Dear Mr. Horton:

This is to notify you that the Utah State Bar's Office of Professional Conduct ("OPC") has received information from the State Bar of California. A copy of the information is enclosed. We recognize that having our office involved in matters such as this can be inconvenient and unsettling. For this reason the OPC strives to determine the appropriate course of action as quickly as possible. Although the information received does not constitute a Bar complaint pursuant to Rule 14-510(a) of the Rules of Lawyer Discipline and Disability ("RLDD"), the OPC has the duty to screen all information coming to its attention that may relate to misconduct of an attorney pursuant to Rule 14-504(b)(1) of the RLDD.

In accordance with this duty, the OPC will review the information submitted and take one of the following actions:

1) Refer the information to the Utah State Bar's Consumer Assistance Program;
2) Refer the information to the Professionalism Counseling Board;
3) Return the information to the person with a request to resubmit it consistent with rule 14-510(a) as an informal complaint;
4) Open an OPC informal complaint; or
5) Decline to prosecute the matter.

The OPC's course of action in these matters is generally based on our review of the materials provided by the complaining party as well as the attorney's response to the allegations. This letter is to inform you that we have received the information, and any information

PX20 - 1008

Page 2 of 3

you provide our office will assist in our initial review and may lead to a quicker resolution of this matter.

If the OPC refers the matter to the Consumer Assistance Program, it can be addressed informally by the Consumer Assistance attorney, Jeannine Timothy. In that case, Ms. Timothy will contact you with respect to her efforts at resolution of the problem between you and the person who submitted the information. Please respond immediately if you are contacted by Ms. Timothy because if this problem is resolved by the Consumer Assistance Program, there will be no record of an official Bar complaint against you based on this information.

If you have questions about the disciplinary process and your rights and obligations with respect to it please contact Jeannine Timothy, who also serves in the Disciplinary Process Information Office.   You can reach Ms. Timothy in that office at 801-257-5515. Ms. Timothy can provide general information about attorney discipline and can refer you to the appropriate procedural rules in order to guide you through this process.  Ms. Timothy cannot, however, give legal advice and because she is not part of the Office of Professional Conduct her opinions are not binding on this office.   For more information about the process, and the rules governing the OPC, you may visit the Bar's website at www.utahbar.org/opc/.

## YOUR DESIGNATED ADDRESS

As part of the licensing process, attorneys are required to provide the Utah State Bar ("the Bar") with a current business and home address, and to designate an address as their "Preferred Address."  During the course of its investigation, the OPC will keep you notified as the matter progresses.  Unless you contact our office in writing and request that a different address be used, we will send correspondence to the "Preferred Address" as designated on your licensing forms.  Keep in mind that providing an alternate address to our office does NOT change your preferred address with the Bar.  If you wish to change your preferred address with the Bar for purposes other than the current OPC matter, you will need to contact the Bar's licensing department.  Also keep in mind that, just like your preferred address with the Bar, any alternate address you provide to our office will be information that may be disclosed to complainants, or other necessary individuals, during the course of the OPC's investigation.

PX20 - 1009

Page 3 of 3

Also note that if correspondence from our office is returned as undeliverable, or if our requests for information are ignored by you, correspondence may be sent to your home address. Finally, if you are willing to accept future correspondence and notices from the OPC electronically at the email address on record with the Bar, you may notify us in writing or by email at opcstaff@utahbar.org.

Sincerely,

Diane Akiyama
Assistant Counsel
Office of Professional Conduct

DA/ mb
Enclosure

PX20 - 1010



# Utah State Bar

**Office of Professional Conduct**
645 South 200 East, Suite 205 • Salt Lake City, Utah 84111-3834
Telephone: (801) 531-9110 • FAX: (801) 531-9912
E-mail: opc@utahbar.org

**Billy L. Walker**
Senior Counsel

**Todd Wahlquist**
Deputy Senior Counsel

**Diane Akiyama**
Assistant Counsel

**Adam C. Bevis**
Assistant Counsel

**Sharadee Fleming**
Assistant Counsel

**Barbara L. Townsend**
Assistant Counsel

April 5, 2017

Benjamin R. Horton
2825 E Cottonwood Pkwy Ste 500
Salt Lake City, UT 84121

Re:   Information Submitted by ██ ████
      OPC File No. 17-0148

Dear Mr. Horton:

This is to notify you that the Utah State Bar's Office of Professional Conduct ("OPC") has received information from ██████ ███████ A copy of the information is enclosed.

Ms. ██████ information will be incorporated in the information submitted by the California State Bar, OPC Case No. 17-0148. Please feel free to contact me if you have questions about the processing of this matter.

Sincerely,

Diane Akiyama
Assistant Counsel
Office of Professional Conduct

DA/mb

PX20 - 1011

# Attachment FF

**Barbara L. Townsend, #5568**
Assistant Counsel
OFFICE OF PROFESSIONAL CONDUCT
Utah State Bar
645 South 200 East
Salt Lake City, UT 84111
(801) 531-9110
opcfiling@utahbar.org

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| **In the Matter of the Discipline of:**<br><br>**Benjamin R. Horton, #11452**<br><br>          **Respondent.** | **DISCIPLINE BY CONSENT AND SETTLEMENT AGREEMENT**<br><br>**Civil No. 140905954**<br>**Judge Paige Petersen** |

Pursuant to Rule 14-520 of the Rules of Lawyer Discipline and Disability ("RLDD"), Respondent, Benjamin R. Horton, by and through his counsel, Gary G. Sackett, and the Office of Professional Conduct ("OPC"), by and through Barbara L. Townsend, Assistant Counsel, hereby resolve the above-captioned disciplinary matter by consent, based on the following admissions, statements, representations and facts.

### I. ADMISSIONS

Mr. Horton admits as follows:

1.      Mr. Horton enters into this agreement voluntarily, without duress or coercion fully understanding the implications of his admission and the misconduct admitted to, and in exchange for these admissions, the OPC has agreed to recommend

PX20 - 1013

that the Court accept the discipline set forth in this agreement as a fair and just resolution of this matter.

2. Mr. Horton has violated Rules 1.3 (Diligence), 1.4(a) (Communication), 1.5(a) (Fees), 1.8(h)(1) (Conflict of Interest: Current Clients: Specific Rules), 5.3(a) (Responsibilities Regarding Nonlawyer Assistants), 5.4 (Professional Independence of a Lawyer), 7.1 (Communications Concerning a Lawyer's Services), 8.1(b) (Bar Admission and Disciplinary Matters) and 8.4(c) (Misconduct), of the Rules of Professional Conduct.

3. Mr. Horton specifically admits the factual allegations and legal conclusions stated in this Agreement.

## II. ADMITTED FINDINGS OF FACT

4. Benjamin R. Horton is an attorney licensed to practice law in the State of Utah and a member of the Utah State Bar. Mr. Horton's business address, according to the records of the Executive Director of the Utah State Bar, is 2825 East Cottonwood Parkway, Suite 500, Salt Lake City, Utah 84121.

5. According to the records of the Executive Director of the Utah State Bar, Mr. Horton has been a member of the Utah State Bar since May 23, 2007.

6. This Complaint was brought pursuant to the directive of the Chair of the Ethics and Discipline Committee of the Utah Supreme Court, based upon an Informal Complaints submitted against Mr. Horton by Eric Trager, Diann Dodd and Stacie Chvilicek.

7. The OPC served a Notice of Informal Complaint ("NOIC") in the Chvilicek matter on Mr. Horton on October 10, 2013.

2

8.      The OPC served a Notice of Informal Complaint ("NOIC") in the Dodd matter on Mr. Horton on October 28, 2013.

9.      The OPC served a Notice of Informal Complaint ("NOIC") in the Trager matter on Mr. Horton on December 6, 2013.

10.     On March 13, 2014, a Screening Panel of the Ethics and Discipline Committee of the Utah Supreme Court ("the Screening Panel") heard the Chvilicek, Dodd and Trager matters.

11.     At the conclusion of the hearing on March 13, 2014, the Screening Panel directed the OPC to file a formal Complaint against Mr. Horton with respect to each of the matters. The matters were consolidated and one Complaint filed.

12.     Jurisdiction is proper in this Court pursuant to Rule 14-511(a), Rules of Lawyer Discipline and Disability ("RLDD").

13.     Venue is proper in this Court pursuant to Rule 14-511(b) of the RLDD, in that at all relevant times, Mr. Horton practiced law in Salt Lake County.

(Chvilicek Matter)

14.     Stacie and Dean Chvilicek are residents of Wisconsin.

15.     On August 31, 2011, Mr. Chvilicek submitted a request for legal representation to Compass Law for a modification of their home mortgage loan with Wells Fargo Bank.

16.     The Chviliceks made payments to Compass Law as follows: on September 13, 2011 - $974.00; on October 18, 2011 - $974.00; and, on November 18, 2011 - $974.00.

3

17.    In a letter to Mr. Chvilicek dated December 14, 2011, Compass Law stated that the business had recently undergone an organization alteration due to a change in lead attorney representation. The letter stated that all terms of Mr. Chvilicek's previous contract with Compass Law would remain the same, that the file was being transferred to a different law firm, Preferred Law, and that all remaining payments should be made directly to Preferred Law.

18.    Mr. Horton is the owner of Preferred Law and is the only attorney employed by Preferred Law.

19.    On December 28, 2011, the Chviliceks made a $974.00 payment to Preferred Law.

20.    On January 9, 2012, Wells Fargo sent a letter to Mr. Chvilicek indicating that a letter had been sent to Preferred Law acknowledging the representation but no response was received from the firm.

21.    The Chviliceks made payments to Preferred Law as follows: on January 30, 2012 - $297.00; on February 29, 2012 - $297.00; on March 30, 2012 - $297.00; and, on April 30, 2012 - $297.00.

22.    Mr. Horton did not deposit the fees paid by the Chviliceks into his client trust account.

23.    In a letter to Mr. Chvilicek dated June 14, 2012, Wells Fargo stated that it was unable to process his request for a loan modification because it had not received any input from Mr. Chvilicek's attorney.

4

24.     On October 18, 2012, the Chviliceks submitted a request for a refund of the $5,084.00 paid to Compass Law and Preferred Law based on their dissatisfaction with the firms' legal representation.

25.     In response to several email inquiries regarding the status of the refund request, Preferred Law employee, Tyla Carroll, informed Ms. Chvilicek that Phil Hanley had been assigned to handle the request.  Ms. Carroll's email instructed Ms. Chvilicek to contact Mr. Hanley, which they did.

26.     On February 12, 2013, after not receiving a response from Mr. Hanley to their request, the Chviliceks resubmitted their request for a refund of the fees they paid to Compass Law and Preferred Law via certified mail, which was received by Preferred Law on February 19, 2012.

27.     On October 10, 2013, the OPC served by regular mail to Mr. Horton's preferred address of record an NOIC concerning Ms. Chvilicek's informal complaint, requiring his response within 20 days.

28.     Mr. Horton did not provide a response to the NOIC.

(Dodd Matter)

29.     Diann Dodd resides in Huntingdon, Tennessee.

30.     Ms. Dodd hired Preferred Law, a law office owned and operated by Mr. Horton, for purposes of obtaining a mortgage modification with a reduced interest rate.

31.     On December 18, 2012, a fax was sent to Ms. Dodd and her husband from Modification Review Board – Preferred Law, PLLC. Attached to the fax were "testimonials" of other clients who had hired the firm and received loan modifications.

5

32.     On December 19, 2012, a fax was sent to Ms. Dodd from Modification Review Board – Preferred Law, PLLC which stated that although the agreement addresses a "no guarantee" policy, Ms. Dodd's guarantee letter "is binding . . . the guarantee you have been given is binding and supercedes the verbage in the agreement..."

33.     In a letter to Ms. Dodd dated December 18, 2012, Preferred Law guaranteed that a modification could be secured for Ms. Dodd conditioned upon several requirements and giving her a payment schedule for payments totaling $4,900.00, to be made over six months.

34.     The fee and representation agreement was sent to Ms. Dodd dated January 4, 2013, thanking her for choosing the law firm, Preferred Law, PLLC. A Limitation of Liability clause is contained in the agreement.

35.     Ms. Dodd made payments to Preferred Law as follows: on December 20, 2012 - $1,000.00; on January 24, 2013 - $780.00; on February 22, 2013 - $780.00; on March 21, 2013 - $780.00; and, on April 23, 2013 - $780.00.

36.     Mr. Horton did not deposit any of the fees Ms. Dodd paid into his client trust account.

37.     Ms. Dodd signed Addendum A to the Limited Services Agreement on January 15, 2013. The Addendum laid out the legal services to be provided to Ms. Dodd.

38.     The Addendum also states "Funds paid to Preferred Law may in its discretion be disbursed immediately or be held in a trust account governed by Utah law until such fees are earned by and disbursed to Preferred Law . . .."

6

39.     In an email to Ms. Dodd dated July 1, 2013, a negotiations manager for Preferred Law indicated that Ms. Dodd needed to sign and return a Continuity Fee Form for payment of an additional required $297.00 monthly fee until a decision was rendered on her file.

40.     At some point, Ms. Dodd contacted the Tennessee Attorney General's Office which implements the National Mortgage Settlement and helps persons like Ms. Dodd facing foreclosure.

41.     Matt Pulle, an attorney with the Tennessee AG's Office, initiated an investigation into Ms. Dodd's case.

42.     Mr. Pulle concluded that Preferred Law offered nothing of value to Ms. Dodd and that she was in a far worse position as a result of her affiliation with Preferred Law.

43.     On October 28 2013, the OPC served by regular mail to Mr. Horton's preferred address of record an NOIC concerning Ms. Dodd's informal complaint, requiring his response within 20 days.

44.     Mr. Horton did not provide a response to the NOIC.

(Trager Matter)

45.     Eric Trager is a resident of California.

46.     Mr. Horton is an attorney licensed to practice law in Utah and Texas.

47.     On March 24, 2013, Mr. Trager received notice from his mortgage company, Nationstar Mortgage, that he had been approved to enter a trial period plan under the Home Affordable Modification Program ("HAMP").

7

48.     On April 4, 2013, Mr. Trager emailed Preferred Law, Mr. Horton's law firm, and provided notice that he had been approved for a HAMP trial plan period and provided information stating that he had made the March payment for the modification.

49.     On April 5, 2013, Preferred Law sent an email to Mr. Trager with a payment authorization form and a payment schedule.

50.     On April 9, 2013, Preferred Law sent an email to Mr. Trager with a Guarantee Letter attached. The Guarantee Letter stated that Preferred Law "guarantees" that a modification will be secured for you conditioned upon some requirements.

51.     On April 9, 2013, Preferred Law sent an email to Mr. Trager requesting documents.

52.     On April 10, 2013, Mr. Trager sent two emails to Preferred Law providing the requested documents.

53.     On April 12, 2013, Preferred Law charged $650 against Mr. Trager's bank account.

54.     On April 22, 2013, Mr. Trager sent an email to Preferred Law wherein he again attached the notice from Nationstar Mortgage indicating that he had been approved for a trial period plan under HAMP. Mr. Trager's message also included a letter from Nationstar dated March 7, 2013, notifying him of issues with the payment he had made.

55.     On April 22, 2013, Preferred Law sent an email to Mr. Trager which included an attached Fee and Representation Agreement and an Addendum to Limited Services Agreement.

56.     On April 25, 2013, Candice Davies, a loan processor employed by Preferred Law, contacted Nationstar and was informed that Mr. Trager had been approved for a Tier II Home Affordable Modification Program with an interest rate of 4.125% and that Mr. Trager had made payments to Nationstar for March and April.

57.     On May 1, 2013, Ms. Davies sent an email to Cyndie Morrison, Mr. Trager's representative, and provided her with the information obtained during her April 25, 2013 conversation with Nationstar Mortgage. Ms. Davies stated that it was Preferred Law's position that the current interest rate of 4.125% was the best rate Mr. Trager could obtain.

58.     On May 1, 2013, Ms. Morrison responded to Ms. Davies and informed her that Mr. Trager had not made the April payment and inquired as to whether Preferred Law was going to continue to negotiate with Nationstar for better terms.

59.     Preferred Law made the following charges against Mr. Trager's bank account: on May 15, 2013 - $650; on June 12, 2013 - $450; on July 26, 2013 - $750; and, on August 15, 2013 - $650.

60.     Mr. Horton did not deposit any of the fees paid by Mr. Trager into his client trust account.

61.     On August 23, 2013, Preferred Law wrote Ms. Morrison an email stating that because Mr. Trager had accepted the trial offer and made payments to Nationstar but then defaulted on his payments, he was no longer eligible for a HAMP modification under his current financial circumstances, even though the payments had been made in March and April.

9

62.     On September 12, 2013, Mr. Trager submitted an Audit Request Form to Preferred Law requesting a refund of the $3,150.00 he had paid.

### III. CONCLUSIONS OF LAW

Mr. Horton specifically admits that he violated the following rules:

63.     Rule 1.3 (Diligence) of the Rules of Professional Conduct states:

> A lawyer shall act with reasonable diligence and promptness in representing a client.

❖ (Chvilicek Matter) By failing to respond to inquiries from Wells Fargo on behalf of Mr. Chvilicek, Mr. Horton failed to act with reasonable diligence in violation of Rule 1.3 (Diligence).

64.     Rule 1.4(a) (Communication) of the Rules of Professional Conduct states:

> (a) A lawyer shall: (a)(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules; (a)(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (a)(3) keep the client reasonably informed about the status of the matter; (a)(4) promptly comply with reasonable requests for information; and (a)(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

❖ (Chvilicek Matter) By failing to respond to requests for information from his clients, failing to keep his clients informed and failing to promptly comply with requests from his clients, Mr. Horton violated Rule 1.4(a) (Communication).

❖ (Trager Matter) By failing to respond to requests for information from his clients, failing to keep his clients informed and failing to promptly comply

10

with requests from his clients, Mr. Horton violated Rule 1.4(a) (Communication).

65.     Rule 1.5(a) (Fees) of the Rules of Professional Conduct states:

A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses.  The factors to be considered in determining the reasonableness of a fee include the following 1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; 2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; 3) the fee customarily charged in the locality for similar legal services; 4) the amount involved and the results obtained; 5) the time limitations imposed by the client or by the circumstances; 6) the nature and length of the professional relationship with the client; 7) the experience, reputation and ability of the lawyer or lawyers performing the services; and 8) whether the fee is fixed or contingent.

❖ (Chvilicek Matter) By failing to provide any meaningful legal services to the Chviliceks in exchange for fees paid, Mr. Horton charged and collected an unreasonable fee, in violation of Rule 1.5(a) (Fees).

❖ (Dodd Matter) By failing to provide any meaningful legal services to Ms. Dodd in exchange for fees paid, Mr. Horton charged and collected an unreasonable fee and violated Rule 1.5(a) (Fees).

❖ (Trager Matter) By failing to provide any meaningful legal services to Mr. Trager in exchange for fees paid, Mr. Horton charged and collected an unreasonable fee and violated Rule 1.5(a) (Fees).

66.     Rule 1.8(h)(1) (Conflict of Interest: Current Clients: Specific Rules) of the Rules of Professional Conduct states:

11

> A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement.

❖ (Dodd Matter) By not taking adequate steps to ensure Ms. Dodd obtained independent representation in connection with the engagement agreement she entered into with Mr. Horton and by failing to advise Ms. Dodd that she should in fact seek independent legal review of the liability waiver included in his engagement agreement, Mr. Horton violated Rule 1.8(h)(1) (Conflict of Interest: Current Clients: Specific Rules).

67.   Rule 5.3(a) (Responsibilities Regarding Nonlawyer Assistants) of the Rules of Professional Conduct states:

> With respect to a nonlawyer employed or retained by or associated with a lawyer: (a) a partner and a lawyer who individually or together with other lawyers possess comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer.

❖ (Chvilicek Matter) By failing to implement adequate measures to supervise nonlawyer employees and agents to ensure the actions and conduct of these nonlawyers is compatible with Mr. Horton's professional obligations, Mr. Horton violated Rule 5.3(a) (Responsibilities Regarding Nonlawyer Assistants).

❖ (Dodd Matter) By failing to implement adequate measures to supervise nonlawyer employees and agents to ensure the actions and conduct of these nonlawyers is compatible with Mr. Horton's professional obligations,

12

Mr. Horton violated Rule 5.3(a) (Responsibilities Regarding Nonlawyer Assistants).

❖ (Trager Matter) By failing to implement adequate measures to supervise nonlawyer employees and agents to ensure the actions and conduct of these nonlawyers is compatible with Mr. Horton's professional obligations, Mr. Horton violated Rule 5.3(a) (Responsibilities Regarding Nonlawyer Assistants).

68.    Rule 5.4 (Professional Independence of a Lawyer) of the Rules of Professional Conduct states:

> (a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that: (a)(1) an agreement by a lawyer with the lawyer's firm, partner or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons; (a)(2)(i) a lawyer who purchases the practice of a deceased, disabled or disappeared lawyer may, pursuant to the provisions of Rule 1.17, pay to the estate or other representative of that lawyer the agreed-upon purchase price; and(a)(2)(ii) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and (a)(3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

❖ (Chvilicek Matter) By operating Preferred Law by and through other nonlawyer companies and by sharing fees and accounts with his other companies, Mr. Horton violated Rule 5.4 (Professional Independence of a Lawyer).

PX20 - 1025

❖ (Dodd Matter) By operating Preferred Law by and through other nonlawyer companies and by sharing fees and accounts with his other companies, Mr. Horton violated Rule 5.4 (Professional Independence of a Lawyer).

❖ (Trager Matter) By operating Preferred Law by and through other nonlawyer companies and by sharing fees and accounts with his other companies, Mr. Horton violated Rule 5.4 (Professional Independence of a Lawyer).

69.     Rule 7.1 (Communications Concerning a Lawyer's Services) of the Rules of Professional Conduct states:

> A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.

❖ (Dodd Matter) By guaranteeing results, Mr. Horton misled Ms. Dodd and violated Rule 7.1 (Communications Regarding a Lawyer's Services).

❖ (Trager Matter) By guaranteeing results, Mr. Horton misled Mr. Trager and violated Rule 7.1 (Communications Regarding a Lawyer's Services).

70.     Rule 8.1(b) (Bar Admission and Disciplinary Matters) of the Rules of Professional Conduct states:

> An applicant for admission to the Bar, or a lawyer in connection with a Bar admission application or in connection with a disciplinary matter, shall not: (b) Fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority....

14

- ❖ (Chvilicek Matter) By failing to respond to the OPC's NOIC, Mr. Horton Violated Rule 8.1(b) (Bar Admission and Disciplinary Matters).

- ❖ (Dodd Matter) By failing to respond to the OPC's NOIC, Mr. Horton Violated Rule 8.1(b) (Bar Admission and Disciplinary Matters).

71.   Rule 8.4(c) of the Rules of Professional Conduct states:

It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation

- ❖ (Dodd Matter) By taking money and doing little or no legal work, by allowing other companies and nonlawyers to provide legal services and by making misrepresentations to clients, Mr. Horton engaged in conduct that was dishonest or deceitful and violated Rule 8.4(c).

- ❖ (Trager Matter) By taking money and doing little or no legal work, by allowing other companies and nonlawyers to provide legal services and by making misrepresentations to clients, Mr. Horton engaged in conduct that was dishonest or deceitful and violated Rule 8.4(c).

## IV. AGGRAVATING AND MITIGATING CIRCUMSTANCES

72.   The OPC and Mr. Horton stipulate that, for purposes of this discipline by consent agreement, there are no aggravating or mitigating circumstances as outlined in Rules 14-607(a) and 14-607(b) of the Standards for Imposing Lawyer Sanctions ("Standards").

## V. PENDING CASES

73.   In addition to the three Bar complaints that were consolidated into this formal Complaint, there are six other open OPC cases pending against Mr. Horton as of

15

this date:  OPC Case Nos. 14-2338, 15-0286, 15-0944, 15-1177, 16-0139 and 16-0459.

As part of the settlement of this matter, Mr. Horton acknowledges that these complaints raise allegations for possible further investigation.  As part of the resolution of this Complaint filed by the OPC, OPC has agreed to dismiss OPC Case Nos. 14-2338, 15-0286, 15-0944, 15-1177, 16-0139, 16-0459.

## RECOMMENDATION OF DISCIPLINE

74.    Pursuant to Rule 14-605(b), Standards, suspension is generally appropriate when a lawyer;

> (1) knowingly engages in professional misconduct as defined in Rule 8.4(a), (d), (e), or (f) of the Rules of Professional Conduct and causes injury or potential injury to a party, the public, or the legal system, or causes interference or potential interference with a legal proceeding;

75.    Subject to the Court's approval, Mr. Horton and the OPC agree that Mr. Horton's license to practice law shall be suspended for a period of three years for his violation of the Rules of Professional Conduct.

76.    During the period of suspension, Mr. Horton is hereby enjoined and prohibited from practicing law in the State of Utah, holding himself out as an attorney at law, performing any legal services for others, giving legal advice to others, accepting any fee directly or indirectly for rendering legal services as an attorney, appearing as counsel or in any representative capacity in any proceeding in any Utah court or before any Utah administrative body as an attorney (whether state, county, municipal, or other), or holding himself out to others or using his name in any manner in conjunction with the words "Attorney at Law", "Counselor at Law", or "Lawyer."

16

77. To be reinstated to the practice of law from this Order, Mr. Horton must fully comply with the provisions of Rule 14-525, RLDD, including fully reimbursing the Utah State Bar's Lawyers' Fund for Client Protection for any amounts paid on account of his conduct.

Dated this 7th day of September, 2016.

Benjamin R. Horton
Respondent

Dated this 9th day of September, 2016.

Gary G. Sackett
Counsel for Respondent

Dated this 13th day of September, 2016.

Barbara L. Townsend
Assistant Counsel
Office of Professional Conduct

17



The Order of the Cou.  .s stated below:
Dated:  September 15, 2016      /s/  PAIGE PETERSEN
04:55:25 PM                          District Court Judge

RECEIVED
SEP 1 5 2016
Office of Professional Conduct

Barbara L. Townsend, #5568
Assistant Counsel
Utah State Bar
Office of Professional Conduct
645 South 200 East
Salt Lake City, Utah 84111
(801) 531-9110
opcfiling@utahbar.org

## IN THE THIRD JUDICIAL DISTRICT COURT

## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| In the Matter of the Discipline of | ORDER OF DISCIPLINE: SUSPENSION |
|---|---|
| Benjamin R. Horton, #11452 | |
| Respondent. | Civil No. 140905954 Judge Paige Petersen |

The above-captioned matter having come before the Court upon the pleadings, and the Court having reviewed all pleadings and papers on file herein, including the Affidavit of Consent and the Discipline by Consent and Settlement Agreement entered into between Respondent, Benjamin R. Horton, by and through his counsel, Gary G. Sackett, and the Utah State Bar's Office of Professional Conduct, and the Court having been fully advised in the premises, does now, ORDER, ADJUDGE and DECREE, that for the disciplinary violations set forth in the Discipline by Consent and Settlement Agreement:

IT IS HEREBY ORDERED that Mr. Horton's license to practice law be suspended for a period of three years, effective 30 days from the date the order is signed.  Mr. Horton shall comply with all requirements of Rule 14-526 of the Rules of

Lawyer Discipline and Disability.

IT IS FURTHER ORDERED THAT during the period of suspension, Mr. Horton is hereby enjoined and prohibited from practicing law in the State of Utah, holding himself out as an attorney at law, performing any legal services for others, giving legal advice to others, accepting any fee directly or indirectly for rendering legal services as an attorney, appearing as counsel or in any representative capacity in any proceeding in any Utah court or before any Utah administrative body as an attorney (whether state, county, municipal, or other), or holding himself out to others or using his name in any manner in conjunction with the words "Attorney at Law", "Counselor at Law", or "Lawyer."

IT IS FURTHER ORDERED that to be reinstated to the practice of law from this Order, Mr. Horton must fully comply with the provisions of Rule 14-525, including fully reimbursing the Utah State Bar's Lawyers' Fund for Client Protection for any amounts paid on account of his conduct.

IT IS FURTHER ORDERED that  as part of the resolution of this Complaint filed by the OPC, OPC has agreed to dismiss the six other open OPC cases pending against Mr. Horton: OPC Case Nos. 14-2338, 15-0286, 15-0944, 15-1177, 16-0139, 16-0459.

Approved as to form:
/s/ Gary G. Sackett
Gary G. Sackett
Counsel for Respondent

***END OF ORDER***
Upon approval of the Court, this becomes an Order when the Judge's signature appears on the top right corner of the first page

# Attachment GG

PX20 - 1032

# Shopper Info for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Private Label ID | 1 |
| Login Name: | jonathanhanley22 |
| First Name: | Jonathan |
| Middle Name: | P |
| Last Name: | Hanley |
| Company: | |
| Address1: | 8180 s 700 e |
| Address2: | 110 |
| City: | Sandy |
| State/Prov: | UT |
| Postal Code: | 84070 |
| Country: | US |
| Phone1: | +1.8013865100 |
| Phone1Extension: | |
| Phone2: | +1.8019135704 |
| Fax: | |
| Mobile: | +1.8019135504 |
| Email: | jhanley@preferredlawteam.com |
| BirthDate: | October 18 |
| Gender: | m |
| Date Created: | 5/23/2011 8:12:28 AM |
| Last Changed By | gdPostPurchase.StoreShopperInfo |
| Last Changed By Date | 5/10/2017 10:40:17 AM |
| Status: | |
| Fraud: | Verified by Fraud Dept - Customer OK |
| Shopper Pin | |
| Password Reminder | Pref...12 |
| Twitter Handle | |

PX20 - 1033

# Domain List – All for Shopper ID 44029388

| Domain Name | Status | Created | Expires | Order ID |
|---|---|---|---|---|
| LOANHELPUS.COM | 0 Active | 5/23/2011 | 5/23/2021 | 330218527 |
| MORTGAGERECOVERY.ORG | 8 Cancelled | 6/23/2011 | 6/23/2013 | 337877082 |
| MORTGAGERECOVERY.INFO | 8 Cancelled | 6/23/2011 | 6/23/2013 | 337877082 |
| MORTGAGERECOVERY.NET | 8 Cancelled | 6/23/2011 | 6/23/2013 | 337877082 |
| MORTGAGERECOVERY.BIZ | 8 Cancelled | 6/23/2011 | 6/22/2013 | 337877082 |
| MODIFICATIONREVIEWBOARD.COM | 0 Active | 9/13/2011 | 9/13/2018 | 359014414 |
| MODIFYUSA.COM | 19 Transferred Away | 9/13/2011 | 9/13/2013 | 359015054 |
| BROWNLEGALCORP.COM | 8 Cancelled | 10/17/2011 | 10/17/2012 | 367988218 |
| PREFERREDLAWTEAM.COM | 0 Active | 10/26/2011 | 10/26/2017 | 370301512 |
| PREFERREDLEGALGROUP.COM | 8 Cancelled | 10/26/2011 | 10/26/2012 | 370346128 |
| AMPROPERTYINC.COM | 0 Active | 10/28/2011 | 10/28/2018 | 370624619 |
| HARPATTORNEY.COM | 0 Active | 10/29/2011 | 10/29/2017 | 371172903 |
| FMGADVISORS.COM | 0 Active | 11/30/2011 | 11/30/2017 | 379477842 |
| ATTORNEYLOANMOD.COM | 0 Active | 1/12/2012 | 1/12/2018 | 390873468 |
| 4506-TFORM.COM | 8 Cancelled | 1/21/2012 | 1/21/2013 | 393352043 |
| MORTGAGEMODIFICATIONFORMS.COM | 8 Cancelled | 1/21/2012 | 1/21/2013 | 393352043 |
| WHATISAHARDSHIPLETTER.COM | 8 Cancelled | 1/21/2012 | 1/21/2013 | 393352043 |
| LOANMODIFICATIONRATES.COM | 8 Cancelled | 1/21/2012 | 1/21/2013 | 393352043 |
| FORM4506T.COM | 8 Cancelled | 1/21/2012 | 1/21/2013 | 393352043 |
| MODIFICATIONRATES.COM | 8 Cancelled | 1/21/2012 | 1/21/2013 | 393352043 |
| AMHOUSESERVICES.COM | 8 Cancelled | 1/22/2012 | 1/22/2013 | 393617103 |
| PREFERREDLAWOFFICE.COM | 8 Cancelled | 1/26/2012 | 1/26/2016 | 394742075 |
| PRINCIPALFORGIVENESSMODIFICATION. COM | 8 Cancelled | 1/31/2012 | 1/31/2013 | 396000387 |
| HOWTOREDUCEPRINCIPAL.COM | 8 Cancelled | 1/31/2012 | 1/31/2013 | 396000387 |
| APRINCIPALREDUCTIONMODIFICATION. COM | 8 Cancelled | 1/31/2012 | 1/31/2013 | 396000387 |
| HAMPPRINCIPAL.COM | 8 Cancelled | 1/31/2012 | 1/31/2013 | 396000387 |
| HOWTOFORGIVEPRINCIPAL.COM | 8 Cancelled | 1/31/2012 | 1/31/2013 | 396000387 |
| WHATISPRINCIPALFORGIVENESS.COM | 8 Cancelled | 1/31/2012 | 1/31/2013 | 396000387 |
| FORGIVEPRINCIPAL.COM | 8 Cancelled | 1/31/2012 | 1/31/2013 | 396000387 |
| WHATISPRINCIPALREDUCTION.COM | 8 Cancelled | 1/31/2012 | 1/31/2013 | 396001504 |
| CRIMINALLAWCONSULTATION.COM | 8 Cancelled | 8/12/2012 | 8/12/2013 | 452951734 |
| MYBESTCRIMINALLAWYER.COM | 8 Cancelled | 8/12/2012 | 8/12/2013 | 452951734 |
| EVIDENCEEXAMINATION.COM | 8 Cancelled | 8/12/2012 | 8/12/2013 | 452951734 |
| SUSPENDEDLICENSEUTAH.COM | 8 Cancelled | 8/12/2012 | 8/12/2013 | 452951734 |
| BESTCHILDSUPPORTLAWYER.COM | 8 Cancelled | 8/12/2012 | 8/12/2014 | 452951734 |
| GREATESTCRIMINALLAWYER.COM | 8 Cancelled | 8/12/2012 | 8/12/2013 | 452951734 |
| MYBESTCHILDCUSTODYLAWYER.COM | 8 Cancelled | 8/12/2012 | 8/12/2013 | 452951734 |
| UTAHDUIADVICE.COM | 8 Cancelled | 8/12/2012 | 8/12/2013 | 452951734 |
| CLARKHANLEY.COM | 0 Active | 8/12/2012 | 8/12/2018 | 452951734 |
| MYFREEDUIADVICE.COM | 8 Cancelled | 8/12/2012 | 8/12/2013 | 452951734 |
| KEEPMYCHILDREN.COM | 8 Cancelled | 8/12/2012 | 8/12/2013 | 452951734 |
| JOSEPHINEHANLEY.COM | 0 Active | 8/12/2012 | 8/12/2018 | 452951734 |
| BESTDUIADVICE.COM | 8 Cancelled | 8/12/2012 | 8/12/2014 | 452951734 |

## Domain List - All for Shopper ID 44029388

| Domain Name | Status | Created | Expires | Order ID |
|---|---|---|---|---|
| MASSEMAILCAMPAIGN.COM | 0 Active | 11/27/2011 | 11/27/2017 | 452961920 |
| CFQA.COM | 0 Active | 10/12/2006 | 10/12/2019 | 452969885 |
| AMERICANHOMELOANS.COM | 0 Active | 6/25/2001 | 1/25/2018 | 453550569 |
| CURRENCYSALE.COM | 0 Active | 8/2/2012 | 8/2/2018 | 453586502 |
| PARTYINGTONIGHT.COM | 0 Active | 8/4/2012 | 8/4/2017 | 455354649 |
| MOSTPAYING.COM | 0 Active | 7/20/2012 | 7/20/2018 | 455655577 |
| NLXH.COM | 0 Active | 9/26/2007 | 9/26/2017 | 455655608 |
| LBGV.COM | 0 Active | 10/5/2009 | 10/5/2018 | 455655616 |
| MYAHLC.ORG | 8 Cancelled | 9/28/2012 | 9/28/2013 | 467374460 |
| MYAHLC.INFO | 8 Cancelled | 9/28/2012 | 9/28/2013 | 467374460 |
| AMERICANHOMELOANCOUNSELORS.NET | 8 Cancelled | 9/28/2012 | 9/28/2013 | 467374460 |
| MYAHLC.NET | 8 Cancelled | 9/28/2012 | 9/28/2013 | 467374460 |
| MYAHLC.COM | 0 Active | 9/28/2012 | 9/28/2017 | 467374460 |
| AMERICANHOMELOANCOUNSELORS.ORG | 0 Active | 9/28/2012 | 9/28/2017 | 467374460 |
| AMERICANHOMELOANCOUNSELORS.INFO | 8 Cancelled | 9/28/2012 | 9/28/2013 | 467374460 |
| AMERICANHOMELOANCOUNSELORS.COM | 0 Active | 9/28/2012 | 9/28/2017 | 467374460 |
| ILLINOISHARPREFINANCE.COM | 0 Active | 9/28/2012 | 9/28/2017 | 467374460 |
| SANDRAHANLEY.COM | 0 Active | 10/16/2012 | 10/16/2019 | 472923262 |
| FUNNIESTPRANK.COM | 0 Active | 2/4/2013 | 2/4/2019 | 511326220 |
| ATTORNEYLOANMODIFICATIONS.COM | 0 Active | 2/12/2013 | 2/12/2018 | 512047986 |
| MYSECONDCHANCELOAN.COM | 0 Active | 2/22/2013 | 2/22/2018 | 515740411 |
| MODIFYUSA.COM | 165 Cancelled - Never Transferred | 2/23/2013 | n/a | 516088069 |
| HEELKICK.COM | 0 Active | 11/18/2011 | 11/18/2017 | 516781635 |
| LOAN-HELP.ORG | 0 Active | 2/26/2013 | 2/26/2018 | 517198933 |
| COLORADOHARPREFINANCE.COM | 0 Active | 2/27/2013 | 2/27/2018 | 517547367 |
| HARPREFINANCEARIZONA.INFO | 0 Active | 2/27/2013 | 2/27/2018 | 517547367 |
| HARPREFINANCENEVADA.COM | 0 Active | 2/27/2013 | 2/27/2018 | 517547367 |
| CALIFORNIAHARPREFINANCE.ORG | 0 Active | 2/27/2013 | 2/27/2018 | 517547367 |
| HARPHOMELOANPROGRAM.COM | 0 Active | 2/27/2013 | 2/27/2018 | 517547367 |
| QUALIFYFORHARP.ORG | 0 Active | 2/27/2013 | 2/27/2018 | 517547367 |
| HARPREFINANCEUTAH.COM | 0 Active | 2/27/2013 | 2/27/2018 | 517547367 |
| MORTGAGEREPAIR.ORG | 0 Active | 4/4/2013 | 4/4/2018 | 532413066 |
| ARMOURCREDIT.COM | 0 Active | 4/9/2013 | 4/9/2018 | 534674353 |
| ARMOURLENDING.COM | 0 Active | 4/9/2013 | 4/9/2018 | 534674353 |
| THEBOSTONMARATHONBOMB.COM | 8 Cancelled | 4/15/2013 | 4/15/2015 | 536879312 |
| SEOROOKIES.COM | 0 Active | 6/7/2012 | 6/7/2019 | 538013931 |
| ABIGAIL-HANLEY.COM | 0 Active | 4/20/2013 | 4/20/2018 | 538750264 |
| JONATHAN-HANLEY.COM | 0 Active | 4/20/2013 | 4/20/2018 | 538750264 |
| JHPROGRAMS.COM | 0 Active | 4/26/2013 | 4/26/2018 | 540989932 |
| THECALIFORNIAHARPREFINANCE.COM | 0 Active | 4/26/2013 | 4/26/2018 | 540989932 |
| CLIENTSHEETS.NET | 8 Cancelled | 4/26/2013 | 4/26/2014 | 540989932 |

## Domain List - All for Shopper ID 44029388

| Domain Name | Status | Created | Expires | Order ID |
|---|---|---|---|---|
| CLIENTSHEETS.INFO | 8 Cancelled | 4/26/2013 | 4/26/2014 | 540989932 |
| CLIENTSHEETS.COM | 0 Active | 4/26/2013 | 4/26/2018 | 540989932 |
| CLIENTSHEETS.ORG | 8 Cancelled | 4/26/2013 | 4/26/2014 | 540989932 |
| FIXEDMORTGAGEQUOTE.COM | 0 Active | 3/20/2013 | 3/20/2018 | 541849676 |
| HOTMORTGAGELEADS.COM | 0 Active | 3/31/2003 | 3/31/2018 | 543741817 |
| CREDITREPAIRPRO.COM | 0 Active | 11/1/2000 | 11/1/2017 | 544443993 |
| ZINLY.COM | 0 Active | 3/25/2013 | 3/25/2018 | 544446666 |
| RATESONMORTGAGES.COM | 0 Active | 9/12/2012 | 9/12/2018 | 553971963 |
| BESTTWOPIECE.COM | 8 Cancelled | 6/7/2013 | 6/7/2014 | 556923763 |
| HOTTWOPIECE.COM | 8 Cancelled | 6/7/2013 | 6/7/2014 | 556923763 |
| BESTONEPIECE.COM | 8 Cancelled | 6/7/2013 | 6/7/2014 | 556923763 |
| HOTTESTSWIMSUIT.COM | 8 Cancelled | 6/7/2013 | 6/7/2014 | 556923763 |
| HOTONEPIECE.COM | 8 Cancelled | 6/7/2013 | 6/7/2014 | 556923763 |
| HOTTESTONEPIECE.COM | 8 Cancelled | 6/7/2013 | 6/7/2014 | 556923763 |
| DEERVALLEYSKIHOME.COM | 0 Active | 2/16/2014 | 2/16/2018 | 655810949 |
| THEDEERVALLEYSKIHOUSE.COM | 8 Cancelled | 2/16/2014 | 2/16/2016 | 655812688 |
| ASSASSINSWIM.COM | 0 Active | 2/19/2014 | 2/19/2018 | 657113359 |
| SXIMENA.COM | 0 Active | 3/26/2014 | 3/26/2018 | 672354949 |
| USAINSURANCECENTER.COM | 149 Deleted - Redeemable | 4/2/2014 | 4/2/2017 | 753173772 |
| INSURANCEPROS.COM | 0 Active | 11/12/1996 | 11/11/2017 | 769237454 |
| ABOGADODEMODIFICACION.COM | 0 Active | 3/2/2012 | 3/2/2019 | 789683852 |
| HOMELOANMODIFICATIONLAWYER.COM | 0 Active | 1/24/2012 | 1/24/2018 | 789683865 |
| HARDSHIPLETTERS.ORG | 0 Active | 2/13/2012 | 2/13/2019 | 789683898 |
| emergencybk.com | 0 Active | 2/16/2016 | 2/16/2018 | 938508729 |
| consumerdefense.com | 0 Active | 6/30/1999 | 6/30/2021 | 944766314 |
| defaultsupport.net | 0 Active | 6/22/2016 | 6/22/2018 | 991682128 |
| defaultsupport.com | 0 Active | 6/22/2016 | 6/22/2018 | 991682128 |
| defaultsupport.info | 0 Active | 6/22/2016 | 6/22/2018 | 991682128 |
| defaultsupport.org | 0 Active | 6/22/2016 | 6/22/2018 | 991682128 |
| hardshipletters.com | 0 Active | 11/1/2007 | 11/1/2017 | 1003545456 |
| homerelief.com | 0 Active | 8/1/2002 | 8/1/2017 | 1026674339 |

# Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | MODIFICATIONREVIEWBOARD.COM |
| Registrar: | |
| Registration Period: | 7 |
| Create Date: | 9/13/2011 5:19:51 PM |
| Expiration Date: | 9/13/2018 5:19:51 PM |
| Update Date: | 9/6/2016 5:32:46 PM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 9/6/2016 3:32:51 PM |
| Custom DNS: | Yes |
| Name Servers: | ns49.domaincontrol.com |
| | ns50.domaincontrol.com |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 9/14/2015 6:13:41 AM |

## Technical Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 9/14/2015 6:13:42 AM |

## Administrative Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 9/14/2015 6:13:42 AM |

## Billing Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 9/14/2015 6:13:42 AM |

## Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | PREFERREDLAWTEAM.COM |
| Registrar: | |
| Registration Period: | 5 |
| Create Date: | 10/26/2011 10:30:41 AM |
| Expiration Date: | 10/26/2017 10:30:41 AM |
| Update Date: | 10/27/2016 8:22:31 AM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 10/27/2016 6:22:38 AM |
| Custom DNS: | Yes |
| Name Servers: | ns41.domaincontrol.com |
| | ns42.domaincontrol.com |
| Auto Renew: | Yes |
| Renew Period: | 0 |

### Registrant Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | Brown Legal, Inc. |
| Email: | jonathan@fnblawoffice.com |
| Address 1: | ██████ |
| Address 2: | |
| City: | Sandy |
| State/Province: | Utah |
| Postal Code: | ██ |
| Country: | United States |
| Phone: | (801) 913-5504 |
| Fax: | |
| Modify Time: | 11/9/2012 4:11:05 PM |

### Technical Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | Brown Legal, Inc. |
| Email: | jonathan@fnblawoffice.com |
| Address 1: | ██████ |
| Address 2: | |
| City: | Sandy |
| State/Province: | Utah |
| Postal Code: | |
| Country: | United States |
| Phone: | (801) 913-5504 |
| Fax: | |
| Modify Time: | 11/9/2012 4:11:05 PM |

### Administrative Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | Brown Legal, Inc. |
| Email: | jonathan@fnblawoffice.com |
| Address 1: | ██████ |
| Address 2: | |
| City: | Sandy |
| State/Province: | Utah |
| Postal Code: | ██ |
| Country: | United States |
| Phone: | (801) 913-5504 |
| Fax: | |
| Modify Time: | 11/9/2012 4:11:05 PM |

### Billing Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | Brown Legal, Inc. |
| Email: | jonathan@fnblawoffice.com |
| Address 1: | ██████ |
| Address 2: | |
| City: | Sandy |
| State/Province: | Utah |
| Postal Code: | ██ |
| Country: | United States |
| Phone: | (801) 913-5504 |
| Fax: | |
| Modify Time: | 11/9/2012 4:11:05 PM |

# Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | AMPROPERTYINC.COM |
| Registrar: | |
| Registration Period: | 7 |
| Create Date: | 10/28/2011 3:17:46 AM |
| Expiration Date: | 10/28/2018 3:17:46 AM |
| Update Date: | 10/4/2016 1:24:43 PM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 10/4/2016 11:25:54 AM |
| Custom DNS: | Yes |
| Name Servers: | ns41.domaincontrol.com |
| | ns42.domaincontrol.com |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | Brown Legal, Inc. |
| Email: | jonathan@fnblawoffice.com |
| Address 1: | ▮▮▮ |
| Address 2: | |
| City: | Sandy |
| State/Province: | Utah |
| Postal Code: | ▮▮▮ |
| Country: | United States |
| Phone: | (801) 913-5504 |
| Fax: | |
| Modify Time: | 11/9/2012 4:09:59 PM |

## Technical Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | Brown Legal, Inc. |
| Email: | jonathan@fnblawoffice.com |
| Address 1: | ▮▮▮ |
| Address 2: | |
| City: | Sandy |
| State/Province: | Utah |
| Postal Code: | |
| Country: | United States |
| Phone: | (801) 913-5504 |
| Fax: | |
| Modify Time: | 11/9/2012 4:09:59 PM |

## Administrative Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | Brown Legal, Inc. |
| Email: | jonathan@fnblawoffice.com |
| Address 1: | ▮▮▮ |
| Address 2: | |
| City: | Sandy |
| State/Province: | Utah |
| Postal Code: | ▮▮▮ |
| Country: | United States |
| Phone: | (801) 913-5504 |
| Fax: | |
| Modify Time: | 11/9/2012 4:09:59 PM |

## Billing Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | Brown Legal, Inc. |
| Email: | jonathan@fnblawoffice.com |
| Address 1: | ▮▮▮ |
| Address 2: | |
| City: | Sandy |
| State/Province: | Utah |
| Postal Code: | ▮▮▮ |
| Country: | United States |
| Phone: | (801) 913-5504 |
| Fax: | |
| Modify Time: | 11/9/2012 4:09:59 PM |

# Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | AMERICANHOMELOANS.COM |
| Registrar: | |
| Registration Period: | 6 |
| Create Date: | 6/25/2001 5:42:39 AM |
| Expiration Date: | 1/25/2018 8:06:14 PM |
| Update Date: | 2/27/2013 11:30:52 AM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | True |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 8/2/2016 2:29:15 PM |
| Custom DNS: | Yes |
| Certified Domain Status: | CD verification pending email validation |
| Name Servers: | NS43.DOMAINCONTROL.COM |
| | NS44.DOMAINCONTROL.COM |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 8/17/2012 5:33:14 PM |

## Technical Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 8/17/2012 5:33:14 PM |

## Administrative Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 8/17/2012 5:33:14 PM |

## Billing Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 8/17/2012 5:33:14 PM |

PX20 - 1040

## Contact Audit History

## AMERICANHOMELOANS.COM

| Modified | Origin | Note |
|---|---|---|
| 8/17/2012 5:33:14 PM | dp_UsedDomainsPurchase_sp | Billing info updated from: Jonathan\|Hanley\|jhanley@modificationreviewboard.com\|Brown Legal, Inc.\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8019135504\|«BLANK»\| |
| 8/17/2012 5:33:14 PM | dp_UsedDomainsPurchase_sp | Administrative info updated from: Jonathan\|Hanley\|jhanley@modificationreviewboard.com\|Brown Legal, Inc.\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8019135504\|«BLANK»\| |
| 8/17/2012 5:33:14 PM | dp_UsedDomainsPurchase_sp | Technical info updated from: Jonathan\|Hanley\|jhanley@modificationreviewboard.com\|Brown Legal, Inc.\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8019135504\|«BLANK»\| |
| 8/17/2012 5:33:14 PM | dp_UsedDomainsPurchase_sp | Registrant info updated from: Jonathan\|Hanley\|jhanley@modificationreviewboard.com\|Brown Legal, Inc.\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8019135504\|«BLANK»\| |

# Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | ATTORNEYLOANMODIFICATIONS.COM |
| Registrar: | |
| Registration Period: | 5 |
| Create Date: | 2/12/2013 4:13:03 PM |
| Expiration Date: | 2/12/2018 4:13:03 PM |
| Update Date: | 1/26/2015 5:45:01 PM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 1/14/2016 1:50:40 PM |
| Custom DNS: | No |
| Name Servers: | AUTH01.NS.KORAX.NET |
| | AUTH02.NS.KORAX.NET |
| | AUTH03.NS.KORAX.NET |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 1/26/2015 3:44:38 PM |

## Technical Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 1/26/2015 3:44:38 PM |

## Administrative Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 1/26/2015 3:44:38 PM |

## Billing Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 1/26/2015 3:44:38 PM |

PX20 - 1042

# Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | ABOGADODEMODIFICACION.COM |
| Registrar: | |
| Registration Period: | 7 |
| Create Date: | 3/2/2012 1:55:09 PM |
| Expiration Date: | 3/2/2019 1:55:09 PM |
| Update Date: | 1/24/2017 6:12:08 PM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 1/24/2017 4:12:15 PM |
| Custom DNS: | No |
| Name Servers: | AUTH01.NS.KORAX.NET |
| | AUTH02.NS.KORAX.NET |
| | AUTH03.NS.KORAX.NET |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 2/4/2015 1:27:22 PM |

## Technical Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 2/4/2015 1:27:22 PM |

## Administrative Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 2/4/2015 1:27:22 PM |

## Billing Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 2/4/2015 1:27:22 PM |

# Contact Audit History

## ABOGADODEMODIFICACION.COM

| Modified | Origin | Note |
|---|---|---|
| 2/4/2015 1:27:22 PM | dp_UsedDomainsPurchase_sp | Billing info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:27:22 PM | dp_UsedDomainsPurchase_sp | Administrative info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:27:22 PM | dp_UsedDomainsPurchase_sp | Technical info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:27:22 PM | dp_UsedDomainsPurchase_sp | Registrant info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |

# Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | HOMELOANMODIFICATIONLAWYER.COM |
| Registrar: | |
| Registration Period: | 6 |
| Create Date: | 1/24/2012 6:17:48 PM |
| Expiration Date: | 1/24/2018 6:17:48 PM |
| Update Date: | 2/4/2015 3:19:19 PM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 2/4/2015 1:19:30 PM |
| Custom DNS: | No |
| Name Servers: | AUTH01.NS.KORAX.NET |
| | AUTH02.NS.KORAX.NET |
| | AUTH03.NS.KORAX.NET |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | |
| Email: | jhanley@preferredlawteam.com |
| Address 1: | 9035 S. 700 E. #203 |
| Address 2: | |
| City: | Sandy |
| State/Province: | UT |
| Postal Code: | 84070 |
| Country: | United States |
| Phone: | +1.8013865100 |
| Fax: | |
| Modify Time: | 2/4/2015 1:18:57 PM |

## Technical Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | |
| Email: | jhanley@preferredlawteam.com |
| Address 1: | 9035 S. 700 E. #203 |
| Address 2: | |
| City: | Sandy |
| State/Province: | UT |
| Postal Code: | 84070 |
| Country: | United States |
| Phone: | +1.8013865100 |
| Fax: | |
| Modify Time: | 2/4/2015 1:18:57 PM |

## Administrative Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | |
| Email: | jhanley@preferredlawteam.com |
| Address 1: | 9035 S. 700 E. #203 |
| Address 2: | |
| City: | Sandy |
| State/Province: | UT |
| Postal Code: | 84070 |
| Country: | United States |
| Phone: | +1.8013865100 |
| Fax: | |
| Modify Time: | 2/4/2015 1:18:57 PM |

## Billing Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | |
| Email: | jhanley@preferredlawteam.com |
| Address 1: | 9035 S. 700 E. #203 |
| Address 2: | |
| City: | Sandy |
| State/Province: | UT |
| Postal Code: | 84070 |
| Country: | United States |
| Phone: | +1.8013865100 |
| Fax: | |
| Modify Time: | 2/4/2015 1:18:57 PM |

PX20 - 1045

# Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | HARDSHIPLETTERS.ORG |
| Registrar: | |
| Registration Period: | 7 |
| Create Date: | 2/13/2012 7:21:08 PM |
| Expiration Date: | 2/13/2019 7:21:08 PM |
| Update Date: | 1/24/2017 11:13:35 PM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 1/24/2017 4:13:40 PM |
| Custom DNS: | No |
| Name Servers: | AUTH01.NS.KORAX.NET |
| | AUTH02.NS.KORAX.NET |
| | AUTH03.NS.KORAX.NET |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 3/12/2017 10:57:47 PM |

## Technical Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 3/12/2017 10:57:48 PM |

## Administrative Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 3/12/2017 10:57:47 PM |

## Billing Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 3/12/2017 10:57:47 PM |

# Contact Audit History

# HARDSHIPLETTERS.ORG

| Modified | Origin | Note |
|---|---|---|
| 2/4/2015 1:27:25 PM | RegDBPBillingSvc Insert Domain By Proxy contact information | Billing info updated from: Registration\|Private\|HARDSHIPLETTERS.OR G@domainsbyproxy.com\|Domains By Proxy, LLC\|DomainsByProxy.com\|14747 N Northsight Blvd Suite 111, PMB 309\|Scottsdale\|AZ\|85260\|United States\|+1.4806242599\|+1.4806242598\| |
| 2/4/2015 1:27:22 PM | updated by epp_VerifyContactData_sp | Billing info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:27:22 PM | updated by epp_VerifyContactData_sp | Administrative info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:27:22 PM | updated by epp_VerifyContactData_sp | Technical info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:27:22 PM | updated by epp_VerifyContactData_sp | Registrant info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:19:14 PM | Successfully removed RegistryID and AuthInfo from contact for pre-Replacement processing | Technical info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:19:14 PM | Successfully removed RegistryID and AuthInfo from contact for pre-Replacement processing | Billing info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:19:14 PM | Successfully removed RegistryID and AuthInfo from contact for pre-Replacement processing | Administrative info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 2/4/2015 1:19:14 PM | Successfully removed RegistryID and AuthInfo from contact for pre-Replacement processing | Registrant info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|9035 S. 700 E. #203\|«BLANK»\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |

PX20 - 1047

## Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | consumerdefense.com |
| Registrar: | |
| Registration Period: | 13 |
| Create Date: | 6/30/1999 10:27:21 PM |
| Expiration Date: | 6/30/2021 10:27:21 PM |
| Update Date: | 4/20/2016 10:03:21 AM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 9/7/2016 11:31:46 AM |
| Custom DNS: | Yes |
| Name Servers: | NS55.DOMAINCONTROL.COM |
| | NS56.DOMAINCONTROL.COM |
| Auto Renew: | Yes |
| Renew Period: | 0 |

### Registrant Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | |
| Email: | jhanley@preferredlawteam.com |
| Address 1: | 9035 S. 700 E. #203 |
| Address 2: | |
| City: | Sandy |
| State/Province: | UT |
| Postal Code: | 84070 |
| Country: | United States |
| Phone: | +1.8013865100 |
| Fax: | |
| Modify Time: | 3/1/2016 2:57:19 PM |

### Technical Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | |
| Email: | jhanley@preferredlawteam.com |
| Address 1: | 9035 S. 700 E. #203 |
| Address 2: | |
| City: | Sandy |
| State/Province: | UT |
| Postal Code: | 84070 |
| Country: | United States |
| Phone: | +1.8013865100 |
| Fax: | |
| Modify Time: | 3/1/2016 2:57:19 PM |

### Administrative Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | |
| Email: | jhanley@preferredlawteam.com |
| Address 1: | 9035 S. 700 E. #203 |
| Address 2: | |
| City: | Sandy |
| State/Province: | UT |
| Postal Code: | 84070 |
| Country: | United States |
| Phone: | +1.8013865100 |
| Fax: | |
| Modify Time: | 3/1/2016 2:57:19 PM |

### Billing Contact

| | |
|---|---|
| Name: | Jonathan Hanley |
| Company: | |
| Email: | jhanley@preferredlawteam.com |
| Address 1: | 9035 S. 700 E. #203 |
| Address 2: | |
| City: | Sandy |
| State/Province: | UT |
| Postal Code: | 84070 |
| Country: | United States |
| Phone: | +1.8013865100 |
| Fax: | |
| Modify Time: | 3/1/2016 2:57:20 PM |

# Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | hardshipletters.com |
| Registrar: | |
| Registration Period: | 1 |
| Create Date: | 11/1/2007 12:33:38 AM |
| Expiration Date: | 11/1/2017 12:33:38 AM |
| Update Date: | 8/2/2016 5:04:03 PM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 10/23/2016 10:10:15 AM |
| Custom DNS: | No |
| Name Servers: | AUTH01.NS.KORAX.NET |
| | AUTH02.NS.KORAX.NET |
| | AUTH03.NS.KORAX.NET |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 8/2/2016 2:29:03 PM |

## Technical Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 8/2/2016 2:29:03 PM |

## Administrative Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 8/2/2016 2:29:03 PM |

## Billing Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 8/2/2016 2:29:03 PM |

PX20 - 1049

# Domain Information for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Domain Name: | homerelief.com |
| Registrar: | |
| Registration Period: | 14 |
| Create Date: | 8/1/2002 1:31:50 PM |
| Expiration Date: | 8/1/2017 1:31:50 PM |
| Update Date: | 9/14/2016 12:27:41 PM |
| Transfer Away Eligibility Date: | |
| Status: | 0 Active |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 1/18/2017 4:42:38 PM |
| Custom DNS: | Yes |
| Name Servers: | NS57.DOMAINCONTROL.COM |
| | NS58.DOMAINCONTROL.COM |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 1/18/2017 4:42:35 PM |

## Technical Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 1/18/2017 4:42:35 PM |

## Administrative Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 1/18/2017 4:42:35 PM |

## Billing Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | DBP@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 14455 N. Hayden Road |
| City: | Scottsdale |
| State/Province: | Arizona |
| Postal Code: | 85260 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Modify Time: | 1/18/2017 4:42:35 PM |

# Contact Audit History
## homerelief.com

| Modified | Origin | Note |
|---|---|---|
| 1/18/2017 4:42:35 PM | RegAgentSvc: AgentContactUpdateCompletion: Successfully updated contact. Changed status from 0 to 0 (Active). | Billing info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|8180 s 700 e\|110\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 1/18/2017 4:42:35 PM | RegAgentSvc: AgentContactUpdateCompletion: Successfully updated contact. Changed status from 0 to 0 (Active). | Administrative info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|8180 s 700 e\|110\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 1/18/2017 4:42:35 PM | RegAgentSvc: AgentContactUpdateCompletion: Successfully updated contact. Changed status from 0 to 0 (Active). | Technical info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|8180 s 700 e\|110\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 1/18/2017 4:42:35 PM | RegAgentSvc: AgentContactUpdateCompletion: Successfully updated contact. Changed status from 0 to 0 (Active). | Registrant info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|8180 s 700 e\|110\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 9/14/2016 10:27:42 AM | dp_UsedDomainsPurchase_sp | Billing info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|8180 s 700 e\|110\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 9/14/2016 10:27:42 AM | dp_UsedDomainsPurchase_sp | Administrative info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|8180 s 700 e\|110\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 9/14/2016 10:27:42 AM | dp_UsedDomainsPurchase_sp | Technical info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|8180 s 700 e\|110\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |
| 9/14/2016 10:27:42 AM | dp_UsedDomainsPurchase_sp | Registrant info updated from: Jonathan\|Hanley\|jhanley@preferredlawteam.com \|«BLANK»\|8180 s 700 e\|110\|Sandy\|UT\|84070\|United States\|+1.8013865100\|«BLANK»\| |

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 1082463163 |
| Reseller: | GoDaddy |
| Date: | 1/24/2017 4:13:31 PM By customer via Online |
| Source Code: | ??? |

**Shipping Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 50.198.182.125::50.198.182.125 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $44.32*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████ 8228 |
| Creditcard Information: | Visa Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 12113-1 | .ORG Domain Name Renewal - 2 Years (recurring) Length: 1 year(s) HARDSHIPLETTERS.ORG This a service item. | $23.98 | $23.98 | 1 | $0.00 | $24.34 |
| 1 | 17001-1 | Private Registration Services - Renewal Length: 2 year(s) HARDSHIPLETTERS.ORG This a service item. | $9.99 | $9.99 | 1 | $0.00 | $19.98 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $44.32 | $0.00 | $0.00 | $44.32 |

Confidential Treatment
Requested By
Go Daddy Operating Company, LLC

PX20 - 1052

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 1082462977 |
| Reseller: | GoDaddy |
| Date: | 1/24/2017 4:12:05 PM By customer via Online |
| Source Code: | ??? |

**Shipping Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 50.198.182.125::50.198.182.125 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $36.92*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████8228 |
| Creditcard Information: | Visa Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10102-1 | .COM Domain Name Renewal - 2 Years (recurring) Length: 1 year(s) ABOGADODEMODIFICACION.COM This a service item. | $16.58 | $16.58 | 1 | $0.00 | $16.94 |
| 1 | 17001-1 | Private Registration Services - Renewal Length: 2 year(s) ABOGADODEMODIFICACION.COM This a service item. | $9.99 | $9.99 | 1 | $0.00 | $19.98 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $36.92 | $0.00 | $0.00 | $36.92 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

PX20 - 1053

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 1079687688 |
| Reseller: | GoDaddy |
| Date: | 1/18/2017 4:42:34 PM By customer via Online |
| Source Code: | ??? |

## Shipping Information

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

## Billing Information

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 50.198.182.125::50.198.182.125 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $4.25*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ▓▓▓▓▓4537 |
| Creditcard Information: | MasterCard Exp. ▓▓▓ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 7001-1 | Private Registration Services Length: 0.532 year(s) HOMERELIEF.COM This a service item. | $9.99 | $7.99 | 1 | $0.00 | $4.25 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $4.25 | $0.00 | $0.00 | $4.25 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

PX20 - 1054

## Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 1079160180 |
| Reseller: | GoDaddy |
| Date: | 1/17/2017 10:07:08 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

**Shipping Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $8.47*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████8228 |
| Creditcard Information: | Visa Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10101-1 | .COM Domain Name Renewal - 1 Year (recurring) Length: 1 year(s) ATTORNEYLOANMOD.COM | $8.29 | $8.29 | 1 | $0.00 | $8.47 |
| 1 | 562250-1 | Renewal Usage Length: 1 month(s) | $0.00 | $0.00 | 1 | $0.00 | $0.00 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $8.47 | $0.00 | $0.00 | $8.47 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

PX20 - 1055

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 1045023669 |
| Reseller: | GoDaddy |
| Date: | 10/27/2016 6:22:23 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

**Shipping Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $104.35*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████8228 |
| Creditcard Information: | Visa Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10101-1 | .COM Domain Name Renewal - 1 Year (recurring) Length: 1 year(s) PREFERREDLAWTEAM.COM | $8.29 | $8.29 | 1 | $0.00 | $8.47 |
| 1 | 52002-1 | Hosting - Web - Economy - Linux - US Region - Renewal - 1 year (recurring) Length: 1 year(s) | $95.88 | $95.88 | 1 | $0.00 | $95.88 |
| 2 | 562250-1 | Renewal Usage Length: 1 month(s) | $0.00 | $0.00 | 1 | $0.00 | $0.00 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $104.35 | $0.00 | $0.00 | $104.35 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 1035435637 |
| Reseller: | GoDaddy |
| Date: | 10/4/2016 11:24:36 AM By customer via Online |
| Source Code: | ??? |

**Shipping Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 173.10.23.2::173.10.23.2 |
| **Transaction Occurred as: United States Dollar (USD)** | |
| *Payment 1: $16.94* | |
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████4537 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10102-1 | .COM Domain Name Renewal - 2 Years (recurring) Length: 1 year(s) AMPROPERTYINC.COM This a service item. | $16.58 | $16.58 | 1 | $0.00 | $16.94 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $16.94 | $0.00 | $0.00 | $16.94 |

**Confidential Treatment**
**Requested By**
**Go Daddy Operating Company, LLC**

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 1023661178 |
| Reseller: | GoDaddy |
| Date: | 9/6/2016 3:32:40 PM By customer via Online |
| Source Code: | ??? |

## Shipping Information

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

## Billing Information

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 173.10.23.2::173.10.23.2 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $36.92*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████4537 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10102-1 | .COM Domain Name Renewal - 2 Years (recurring) Length: 1 year(s) MODIFICATIONREVIEWBOARD.COM This a service item. | $16.58 | $16.58 | 1 | $0.00 | $16.94 |
| 1 | 17001-1 | Private Registration Services - Renewal Length: 2 year(s) MODIFICATIONREVIEWBOARD.COM This a service item. | $9.99 | $9.99 | 1 | $0.00 | $19.98 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $36.92 | $0.00 | $0.00 | $36.92 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 1019332187 |
| Reseller: | GoDaddy |
| Date: | 8/26/2016 3:27:56 PM By Rebecca J Booth via Phone |
| Source Code: | ?SR |

**Shipping Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 216.69.191.112::216.69.191.112 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $2,500.00*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████4537 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM".

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 739-1 | GoDaddy Auctions - Domain Purchase - Transaction Assured Length: 1 year(s) homerelief.com This a service item. | $34.99 | $2,500.00 | 1 | $0.00 | $2,500.00 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $2,500.00 | $0.00 | $0.00 | $2,500.00 |

**Confidential Treatment**
**Requested By**
**Go Daddy Operating Company, LLC**

PX20 - 1059

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 1003545456 |
| Reseller: | GoDaddy |
| Date: | 8/2/2016 2:29:00 PM By customer via Online |
| Source Code: | ??? |

**Shipping Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

8180 s 700 e

110

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

Evening Phone: +1.8019135704

jhanley@preferredlawteam.com

IP: 173.10.23.2::173.10.23.2

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $349.16*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████ 8228 |
| Creditcard Information: | Visa Exp. ███ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 182-1 | Certified Domain Length: 1 year(s) AMERICANHOMELOANS.COM This a service item. | $4.99 | $0.00 | 1 | $0.00 | $0.00 |
| 1 | 780-1 | .COM Premium Domain Name Registration Length: 1 year(s) hardshipletters.com This a service item. | $14.99 | $14.99 | 1 | $0.00 | $15.17 |
| 2 | 779-1 | Premium Domain Name Purchase (one-time fee) Length: 1 year(s)  This a service item. | $324.00 | $324.00 | 1 | $0.00 | $324.00 |
| 3 | 7002-1 | Private Transfer Services Length: 1 year(s) hardshipletters.com This a service item. | $9.99 | $9.99 | 1 | $0.00 | $9.99 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $349.16 | $0.00 | $0.00 | $349.16 |

**Confidential Treatment Requested By**

**Go Daddy Operating Company, LLC**

## Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 965461813 |
| Reseller: | GoDaddy |
| Date: | 4/20/2016 8:03:17 AM By customer via Online |
| Source Code: | ??? |

**Shipping Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 73.20.88.121::73.20.88.121 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $42.35*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ▇▇▇▇4537 |
| Creditcard Information: | MasterCard Exp. ▇▇▇ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10105-1 | .COM Domain Name Renewal - 5 Years (recurring) Length: 1 year(s) CONSUMERDEFENSE.COM This a service item. | $41.45 | $41.45 | 1 | $0.00 | $42.35 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $42.35 | $0.00 | $0.00 | $42.35 |

**Confidential Treatment**
**Requested By**
**Go Daddy Operating Company, LLC**

PX20 - 1061

## Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 942823504 |
| Reseller: | GoDaddy |
| Date: | 2/26/2016 3:11:46 PM By Chris  Mesimer via Phone |
| Source Code: | ?SR |

### Shipping Information

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

### Billing Information

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 216.69.191.112::216.69.191.112 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $5,000.00*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████4537 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 739-1 | GoDaddy Auctions - Domain Purchase - Transaction Assured Length: 1 year(s) consumerdefense.com This a service item. | $34.99 | $5,000.00 | 1 | $0.00 | $5,000.00 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $5,000.00 | $0.00 | $0.00 | $5,000.00 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

PX20 - 1062

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 893705002 |
| Reseller: | GoDaddy |
| Date: | 10/27/2015 2:37:36 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

**Shipping Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $96.89*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Sandra Hanley |
| Creditcard Number: | ████ 4529 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10101-1 | .COM Domain Name Renewal - 1 Year (recurring) Length: 1 year(s) PREFERREDLAWTEAM.COM | $14.99 | $12.83 | 1 | $0.00 | $13.01 |
| 1 | 52002-1 | Hosting - Web - Economy - Linux - US Region - Renewal - 1 year (recurring) Length: 1 year(s) | $83.88 | $83.88 | 1 | $0.00 | $83.88 |
| 2 | 10067-1 | Bandwidth Renewal (recurring) Length: 1 month(s) | $0.00 | $0.00 | 1 | $0.00 | $0.00 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $96.89 | $0.00 | $0.00 | $96.89 |

**Confidential Treatment**
**Requested By**
**Go Daddy Operating Company, LLC**

PX20 - 1063

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 877068669 |
| Reseller: | GoDaddy |
| Date: | 9/14/2015 6:13:39 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

**Shipping Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

**Transaction Occurred as: United States Dollar (USD)**

***Payment 1: $23.00***

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Sandra Hanley |
| Creditcard Number: | ████4529 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10101-1 | .COM Domain Name Renewal - 1 Year (recurring) Length: 1 year(s) MODIFICATIONREVIEWBOARD.COM | $14.99 | $12.83 | 1 | $0.00 | $13.01 |
| 1 | 17001-1 | Private Registration Services - Renewal Length: 1 year(s) MODIFICATIONREVIEWBOARD.COM | $9.99 | $9.99 | 1 | $0.00 | $9.99 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $23.00 | $0.00 | $0.00 | $23.00 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 786036743 |
| Reseller: | GoDaddy |
| Date: | 1/26/2015 3:44:34 PM By customer via Online |
| Source Code: | ??? |

## Shipping Information

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

## Billing Information

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 174.52.28.234::174.52.28.234 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $75.48*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ▮▮▮▮1273 |
| Creditcard Information: | MasterCard Exp. ▮▮▮ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10103-1 | .COM Domain Name Renewal - 3 Years (recurring) Length: 1 year(s) ATTORNEYLOANMODIFICATIONS.COM This a service item. | $44.97 | $44.97 | 1 | $0.00 | $45.51 |
| 1 | 17001-1 | Private Registration Services - Renewal Length: 3 year(s) ATTORNEYLOANMODIFICATIONS.COM This a service item. | $9.99 | $9.99 | 1 | $0.00 | $29.97 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $75.48 | $0.00 | $0.00 | $75.48 |

Confidential Treatment
Requested By
Go Daddy Operating Company, LLC

PX20 - 1065

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 789684944 |
| Reseller: | GoDaddy |
| Date: | 2/4/2015 1:27:20 PM By customer via Online |
| Source Code: | GDBBXP1078 |

**Shipping Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 174.52.28.234::174.52.28.234 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $92.86*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████1273 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10102-1 | .COM Domain Name Renewal - 2 Years (recurring) Length: 1 year(s) ABOGADODEMODIFICACION.COM This a service item. | $29.98 | $29.98 | 1 | $0.00 | $30.34 |
| 1 | 12113-1 | .ORG Domain Name Renewal - 2 Years (recurring) Length: 1 year(s) HARDSHIPLETTERS.ORG This a service item. | $35.98 | $35.98 | 1 | $0.00 | $36.34 |
| 2 | 7001-1 | Private Registration Services Length: 2.071 year(s) ABOGADODEMODIFICACION.COM This a service item. | $9.99 | $7.99 | 1 | $3.31 | $13.24 |
| 3 | 7001-1 | Private Registration Services Length: 2.025 year(s) HARDSHIPLETTERS.ORG This a service item. | $9.99 | $7.99 | 1 | $3.24 | $12.94 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $92.86 | $0.00 | $0.00 | $92.86 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

GD 017189

PX20 - 1066

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 751857868 |
| Reseller: | GoDaddy |
| Date: | 10/27/2014 6:12:47 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

## Shipping Information

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

## Billing Information

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $96.89*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████1273 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10101-1 | .COM Domain Name Renewal - 1 Year (recurring) Length: 1 year(s) PREFERREDLAWTEAM.COM | $14.99 | $12.83 | 1 | $0.00 | $13.01 |
| 1 | 52002-1 | Hosting - Web - Economy - Linux - US Region - Renewal - 1 year (recurring) Length: 1 year(s) | $83.88 | $83.88 | 1 | $0.00 | $83.88 |
| 2 | 10067-1 | Bandwidth Renewal (recurring) Length: 1 month(s) | $0.00 | $0.00 | 1 | $0.00 | $0.00 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $96.89 | $0.00 | $0.00 | $96.89 |

Confidential Treatment
Requested By
Go Daddy Operating Company, LLC

PX20 - 1067

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 653285535 |
| Reseller: | GoDaddy |
| Date: | 2/10/2014 9:55:03 AM By customer via Online |
| Source Code: | GDBBX2092 |

**Shipping Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: +1.8013865100

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 67.166.126.25::67.166.126.25 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $331.38*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ████████1273 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) FUNNIESTPRANK.COM This a service item. | $14.99 | $14.99 | 1 | $0.00 | $15.17 |
| 1 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) ATTORNEYLOANMODIFICATIONS.COM This a service item. | $14.99 | $14.99 | 1 | $0.00 | $15.17 |
| 2 | 17001-1 | Private Registration Services - Renewal Length: 1 year(s) ATTORNEYLOANMODIFICATIONS.COM This a service item. | $9.99 | $9.99 | 1 | $0.00 | $9.99 |
| 3 | 986-1 | .ORG Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) LOAN-HELP.ORG This a service item. | $17.99 | $17.99 | 1 | $0.00 | $18.17 |
| 4 | 17001-1 | Private Registration Services - Renewal Length: 1 year(s) LOAN-HELP.ORG This a service item. | $9.99 | $9.99 | 1 | $0.00 | $9.99 |
| 5 | 986-1 | .ORG Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) CALIFORNIAHARPREFINANCE.ORG This a service item. | $17.99 | $17.99 | 1 | $0.00 | $18.17 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 593072966 |
| Reseller: | GoDaddy |
| Date: | 9/9/2013 10:45:16 AM By customer via Online |
| Source Code: | ??? |

## Shipping Information

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: 8013865100

jhanley@preferredlawteam.com

## Billing Information

Jonathan Hanley

9035 S. 700 E. #203

Sandy, UT 84070 us

Daytime Phone: 8013865100

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 67.166.126.25::67.166.126.25 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $252.74*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ██████1273 |
| Creditcard Information: | MasterCard Exp. ██ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 70041-1 | .COM Bulk Domain Name Renewal (6-20) - 2 years (recurring) Length: 1 year(s) MODIFICATIONREVIEWBOARD.COM This a service item. | $29.98 | $25.66 | 1 | $0.00 | $26.02 |
| 1 | 17001-1 | Private Registration Services - Renewal Length: 2 year(s) MODIFICATIONREVIEWBOARD.COM This a service item. | $9.99 | $9.99 | 1 | $0.00 | $19.98 |
| 2 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) PREFERREDLAWTEAM.COM This a service item. | $14.99 | $12.83 | 1 | $0.00 | $13.01 |
| 3 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) AMPROPERTYINC.COM This a service item. | $14.99 | $12.83 | 1 | $0.00 | $13.01 |
| 4 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) HARPATTORNEY.COM This a service item. | $14.99 | $12.83 | 1 | $0.00 | $13.01 |
| 5 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) FMGADVISORS.COM This a service item. | $14.99 | $12.83 | 1 | $0.00 | $13.01 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 512047986 |
| Reseller: | GoDaddy |
| Date: | 2/12/2013 2:12:21 PM By customer via Online |
| Source Code: | ??? |

**Shipping Information**

Jonathan Hanley

Brown Legal, Inc.

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: 8019135504

jhanley@preferredlawteam.com

**Billing Information**

Jonathan Hanley

Brown Legal, Inc.

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: 8019135504

jhanley@preferredlawteam.com

| | |
|---|---|
| IP: | 173.10.23.2::173.10.23.2 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $21.16*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Jonathan Hanley |
| Creditcard Number: | ▓▓▓▓1273 |
| Creditcard Information: | MasterCard Exp. ▓▓ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 101-1 | .COM Domain Name Registration - 1 Year (recurring) Length: 1 year(s) ATTORNEYLOANMODIFICATIONS.COM This a service item. | $14.99 | $12.99 | 1 | $0.00 | $13.17 |
| 1 | 7001-1 | Private Registration Services Length: 1 year(s) ATTORNEYLOANMODIFICATIONS.COM This a service item. | $9.99 | $9.99 | 1 | $2.00 | $7.99 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $21.16 | $0.00 | $0.00 | $21.16 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

## Legal Receipt for Shopper ID 44029388

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 6 | 972-1 | .INFO Bulk Domain Name Registration (6-20) (recurring) Length: 1 year(s) AMERICANHOMELOANCOUNSELORS.INFO This a service item. | $1.00 | $1.00 | 1 | $1.00 | $0.18 |
| 7 | 966-1 | .COM Bulk Domain Name Registration (6-20) (recurring) Length: 1 year(s) AMERICANHOMELOANCOUNSELORS.COM This a service item. | $11.99 | $10.99 | 1 | $1.00 | $10.17 |
| 8 | 966-1 | .COM Bulk Domain Name Registration (6-20) (recurring) Length: 1 year(s) ILLINOISHARPREFINANCE.COM This a service item. | $11.99 | $10.99 | 1 | $1.00 | $10.17 |
| 9 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) PREFERREDLAWTEAM.COM This a service item. | $11.99 | $11.99 | 1 | $0.00 | $12.17 |
| 10 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) AMPROPERTYINC.COM This a service item. | $11.99 | $11.99 | 1 | $0.00 | $12.17 |
| 11 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) CFQA.COM This a service item. | $11.99 | $11.99 | 1 | $0.00 | $12.17 |
| 12 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) NLXH.COM This a service item. | $11.99 | $11.99 | 1 | $0.00 | $12.17 |
| 13 | 968-1 | .COM Bulk Domain Name Renewal (6-20) (recurring) Length: 1 year(s) LBGV.COM This a service item. | $11.99 | $11.99 | 1 | $0.00 | $12.17 |
| 14 | 17001-1 | Private Registration Services - Renewal Length: 1 year(s) PREFERREDLAWTEAM.COM This a service item. | $9.99 | $9.99 | 1 | $2.50 | $7.49 |
| 15 | 17001-1 | Private Registration Services - Renewal Length: 1 year(s) AMPROPERTYINC.COM This a service item. | $9.99 | $9.99 | 1 | $2.50 | $7.49 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $135.42 | $0.00 | $0.00 | $135.42 |

**Confidential Treatment Requested By**
**Go Daddy Operating Company, LLC**

PX20 - 1071

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 462751529 |
| Reseller: | GoDaddy |
| Date: | 9/14/2012 3:35:37 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

## Shipping Information

Jonathan Hanley

Brown Legal, Inc.

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: 8019135504

jhanley@modificationreviewboard.com

## Billing Information

Jonathan Hanley

Brown Legal, Inc.

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: 8019135504

jhanley@modificationreviewboard.com

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $46.00*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Sandra X. Hanley |
| Creditcard Number: | ████2241 |
| Creditcard Information: | MasterCard Exp. ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10101-1 | .COM Domain Name Renewal - 1 Year (recurring) Length: 1 year(s) MODIFICATIONREVIEWBOARD.COM | $14.99 | $12.83 | 1 | $0.00 | $13.01 |
| 1 | 17001-1 | Private Registration Services - Renewal Length: 1 year(s) MODIFICATIONREVIEWBOARD.COM | $9.99 | $9.99 | 1 | $0.00 | $9.99 |
| 2 | 10101-1 | .COM Domain Name Renewal - 1 Year (recurring) Length: 1 year(s) MODIFYUSA.COM | $14.99 | $12.83 | 1 | $0.00 | $13.01 |
| 3 | 17001-1 | Private Registration Services - Renewal Length: 1 year(s) MODIFYUSA.COM | $9.99 | $9.99 | 1 | $0.00 | $9.99 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $46.00 | $0.00 | $0.00 | $46.00 |

**Confidential Treatment
Requested By
Go Daddy Operating Company, LLC**

PX20 - 1072

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 455348926 |
| Reseller: | GoDaddy |
| Date: | 8/20/2012 10:53:39 AM By customer via Online |
| Source Code: | ??? |

**Shipping Information**

Jonathan Hanley

Brown Legal, Inc.

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: 8019135504

jhanley@modificationreviewboard.com

**Billing Information**

Jonathan Hanley

Brown Legal, Inc.

9035 S. 700 E. #203

Sandy, UT 84070 US

Daytime Phone: 8019135504

jhanley@modificationreviewboard.com

| | |
|---|---|
| IP: | 173.10.23.2::173.10.23.2 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $125.80*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Sandra X. Hanley |
| Creditcard Number: | ▮▮▮▮▮▮2241 |
| Creditcard Information: | MasterCard Exp. ▮▮▮▮ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 10105-1 | .COM Domain Name Renewal - 5 Years (recurring) Length: 1 year(s) AMERICANHOMELOANS.COM This a service item. | $74.95 | $74.95 | 1 | $0.00 | $75.85 |
| 1 | 17001-1 | Private Registration Services - Renewal Length: 5 year(s) AMERICANHOMELOANS.COM This a service item. | $9.99 | $9.99 | 1 | $0.00 | $49.95 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $125.80 | $0.00 | $0.00 | $125.80 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

# Legal Receipt for Shopper ID 44029388

| | |
|---|---|
| Shopper ID: | 44029388 |
| Receipt ID: | 454513778 |
| Reseller: | GoDaddy |
| Date: | 8/17/2012 5:33:12 PM By customer via Online |
| Source Code: | ??? |

| **Shipping Information** | **Billing Information** |
|---|---|
| Jonathan Hanley | Jonathan Hanley |
| Brown Legal, Inc. | Brown Legal, Inc. |
| 9035 S. 700 E. #203 | 9035 S. 700 E. #203 |
| Sandy, UT 84070 US | Sandy, UT 84070 US |
| Daytime Phone: 8019135504 | Daytime Phone: 8019135504 |
| jhanley@modificationreviewboard.com | jhanley@modificationreviewboard.com |

| | |
|---|---|
| IP: | 174.52.98.237::174.52.98.237 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $4.41*

| | |
|---|---|
| Paid: | Credit Card |
| Name: | Sandra X. Hanley |
| Creditcard Number: | ██████████2241 |
| Creditcard Information: | MasterCard Exp ████ |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|
| 0 | 7001-1 | Private Registration Services Length: 0.441 year(s) AMERICANHOMELOANS.COM This a service item. | $9.99 | $9.99 | 1 | $0.00 | $4.41 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $4.41 | $0.00 | $0.00 | $4.41 |

**Confidential Treatment Requested By Go Daddy Operating Company, LLC**

PX20 - 1074