DAVID C. SHONKA
Acting General Counsel
ADAM M. WESOLOWSKI
GREGORY A. ASHE
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20850
Telephone: 202-326-3068 (Wesolowski)
Telephone: 202-326-3719 (Ashe)
Facsimile: 202-326-3768
Email: awesolowski@ftc.gov, gashe@ftc.gov.

STEVEN W. MYHRE
Acting United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Facsimile: (702) 388-6787

Attorneys for Plaintiff

UNITED STATES DISTR      ~ COURT
DISTRICT OF NE

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | **2:18-cv-00030-GMN-PAL** |
| Plaintiff, | |
| v. | **FTC'S EXHIBITS IN SUPPORT OF ITS *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF RECEIVER, AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| CONSUMER DEFENSE, LLC, *et al.*, | |
| Defendants. | |
| | **FILED UNDER SEAL** |

**VOLUME 11**

1
2
3

# TABLE OF EXHIBITS

## Volume 1

Declaration of Adassa Brown ................................................................ PX01

Declaration of Donna Brundage ............................................................ PX02

Declaration of Ecco Debnam ................................................................ PX03

Declaration of Karyn Evert .................................................................. PX04

Declaration of Stephanie Frierson ........................................................ PX05

Declaration of Patrick Garrett .............................................................. PX06

Declaration of Jason Jones .................................................................. PX07

Declaration of Richard Latimer ............................................................ PX08

## Volume 2

Declaration of Joseph Parma ................................................................ PX09

Declaration of Dennis Peterson ............................................................ PX10

Declaration of Genevieve Podoski........................................................ PX11

Declaration of Stefan Prince ................................................................ PX12

Declaration of Lori Schulz.................................................................... PX13

## Volume 3

Declaration of Terri Riley .................................................................... PX14

Declaration of Timothy Goss................................................................ PX15

Declaration of Wanda Jackson ............................................................. PX16

Declaration of Matthew Wilson............................................................ PX17

Declaration of Sheri Charnock.............................................................. PX18

Declaration of Timothy James ............................................................. PX19

Declaration of Elizabeth Feldstein ................................................................. PX20

    Declaration – Attachment C, pages 1 - 66

**Volume 4**

    Attachment D – Attachment X, part 1, pages 67 - 317

**Volume 5**

    Attachment X, part 2 – Attachment Z, part 1, pages 318-568

**Volume 6**

    Attachment Z, part 2 – Attachment DD, part 1, pages 569 - 819

**Volume 7**

    Attachment DD, part 2 – Attachment GG, pages 820 - 1074

**Volume 8**

    Attachment HH – Attachment PPP, pages 1075 - 1341

**Volume 9**

Declaration of David Aguayo ........................................................................ PX21

Declaration of Jennifer Yadoo ...................................................................... PX22

    Declaration – Attachment C part 1, pages 1 - 217

**Volume 10**

    Attachment C part 2 – Attachment P, pages 218 - 465

**Volume 11**

    Attachment Q – Attachment CC, pages 466 - 563

Declaration of Renee Crawford .................................................................... PX23

Declaration of Nathaniel Al-Najjar .............................................................. PX24

Supplemental Declaration of Jennifer Yadoo ............................................... PX25

Supplemental Declaration of Elizabeth Feldstein ........................................ PX26

# EXHIBIT 22

# DECLARATION OF JENNIFER YADOO
## (continued)

# Attachment Q

PX22 - 466



# LETTER OF ACKNOWLEDGEMENT

April 27, 2015

JAMES ▆▆▆ and MESHELLE ▆▆▆
PREFERRED LAW, PLLC 2825 EAST COTTONWOOD PKWY,
SUITE 500
SALT LAKE CITY, UT 84121

RE: Loan number: ▆▆▆

Dear JAMES ▆▆▆ and MESHELLE ▆▆▆

Attached for execution is the Modification Agreement for your loan serviced by NATIONSTAR MORTGAGE LLC. The Modification Agreement sets forth the future terms of repayment for your loan, and may include capitalization of certain outstanding past due amounts. **The specific terms are identified in the Modification Agreement, and may include a period of time for which your payment will consist only of interest payments (resulting in no principal reduction) and/or change in the amortization term of your loan** (Such a change may result in you owing a lump sum payment upon maturity of your loan).

By executing this Letter of Acknowledgement and the Modification Agreement, you are agreeing to make a qualifying payment of **$5,806.90** dollars ("Qualifying Payment") for your Modification Agreement to become effective. This Qualifying Payment will be applied first to any outstanding fees and charges that are not capitalized under the terms of the Modification Agreement, next to any unpaid non-capitalized interest and finally to unpaid principal. If you fail to make this qualifying payment (or such payment is returned for non-sufficient funds or otherwise denied by the issuing bank), the Modification Agreement shall be deemed invalid and Nationstar Mortgage shall have no obligation to modify your loan in accordance with the terms of the Modification Agreement.

In addition to the foregoing, in consideration of Nationstar Mortgage agreeing to the modification of your loan account, you acknowledge and agree that Nationstar Mortgage may maintain an escrow account to collect funds for the payment of future taxes and insurance in accordance with the terms of the attached Agreement to Maintain Escrow Account.

Should you have any questions regarding the terms of this Letter Acknowledgement or the Modification Agreement, please do not hesitate to contact Janine Richardson at 480-467-0051.

Sincerely,

NATIONSTAR MORTGAGE LLC

Acknowledged and agreed to by:

_____   (Seal)
JAMES ▆▆▆ -Borrower

_____   (Seal)
MESHELLE ▆▆▆ -Borrower






**Recording Requested By:**
**NATIONSTAR MORTGAGE LLC**

**After Recording Return To:**
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

**This Document Prepared By:**
**Heath Harris**
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

**Parcel ID Number:**

_____ [Space Above This Line For Recording Data] _____
Original Loan Amount: **$661,500.00**                                    Loan No: ▮▮▮▮▮▮
                                                                          MIN Number: **100194430011998427**

# LOAN MODIFICATION AGREEMENT
### (Providing for Temporary Fixed Interest Rate, then Adjustable Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **27th** day of **April, 2015**, between **JAMES** ▮▮▮▮▮ and **MESHELLE** ▮▮▮▮▮ ("Borrower") and **NATIONSTAR MORTGAGE LLC**, **whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated _____, ____ and recorded in **Book/Liber N/A**, Page N/A, Instrument No: N/A, of the **Official Records (Name of Records) of** _____ **County, CA (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(Property Address)

the real property described being set forth as follows:



*5 9 6 4 0 7 0 3 2 N N S S E*
LOAN MODIFICATION AGREEMENT - NSARMTempFixedToARM
9396 11/14



*2 0 1 2 8 2 + 1 0*

*(page 1 of 4)*

PX22 - 468

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **May 1, 2015**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$803,197.13**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **2.000%**, from **May 1, 2015** through **April 30, 2017**. Borrower promises to make monthly payments of principal and interest of U.S. **$2,365.86**, beginning on the **1st** day of **June, 2015**, and continuing thereafter on the same day of each succeeding month through **May 01, 2017** (the "Fixed Rate Period"). After the expiration of the Fixed Rate Period, the interest rate and amount Borrower will pay may change in accordance with the terms of the original Note or terms of an active modification to the original Note. Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full, except that, if not sooner paid, the final payment of principal and interest shall be due and payable on **February 1, 2057**, which is the present or extended Maturity Date.

3.  If on the Maturity Date, Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

4.  <u>Failure to Timely Remit Payments:</u>  If at any time during the effective dates of this Modification Agreement the Borrower fails to timely make payments as specified hereinabove and such default or failure continues for more than thirty (30) days, then this Modification Agreement, at the option of Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in full, effective as of the date of this Modification Agreement, and the amounts due and payable under the terms of the Note shall be as originally stated therein, as if this Modification Agreement had never existed.  Time is of the essence with regard to all payments specified hereunder. Nothing contained herein shall prevent or preclude Lender from enforcing any of Lender's rights or remedies under the Note, or under any document or instrument evidencing or securing the indebtedness created by or under the Note, or shall be construed as a waiver of any of Lender's rights or remedies thereby created.

5.  Borrower understands and agrees that

    (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and

PX22 - 469

Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(g)   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original loan documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

In Witness Whereof, the Lender and I have executed this Agreement.

JAMES ████ -Borrower          _____ (Seal)

MESHELLE ████ -Borrower        _____ (Seal)



LOAN MODIFICATION AGREEMENT - NSARMTemplOToARM
8386 11/14



*(page 3 of 4)*

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**JAMES** ████ -Borrower

_____ (Seal)
**MESHELLE** ████ -Borrower

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender
Name: _____
Title: **Assistant Secretary**

_____
Date of Lender's Signature

_____
Mortgage Electronic Registration Systems, Inc - Nominee for Lender

_____
Title: Assistant Secretary



*5 9 6 4 0 7 0 3 2 N N G S E*
LOAN MODIFICATION AGREEMENT - NSARMTempFixedToARM
8398 11/14



*2 0 1 2 8 2 * 1 0*

*(page 4 of 4)*

Loan No.: ███████
Borrower: JAMES ████████ and MESHELLE ████████

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, JAMES ████████ and MESHELLE ████████ ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated _____, _____, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency







Loan No.:
Borrower: JAMES ▮▮▮▮ and MESHELLE ▮▮▮▮

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_____        _____
Borrower - JAMES ▮▮▮▮                              Date

_____        _____
Borrower - MESHELLE ▮▮▮▮                          Date

_____        _____
Borrower -                                                    Date

_____        _____
Borrower -                                                    Date

AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12                    (Page 2 of 2)

PX22 - 473

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number:                                                      Date: **April 28, 2015**

Borrower(s):   **JAMES**          **and MESHELLE**

Property Address:

Lender:   **NATIONSTAR MORTGAGE LLC**

In consideration of **NATIONSTAR MORTGAGE LLC** (the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.  Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses. Borrower's failure to comply with all such requests within such 30 day time period will result in the Lender adjusting the modified terms without the borrower's consent.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.


**JAMES** _____ (Date)
          -Borrower

**MESHELLE** _____ (Date)
          -Borrower


2001 11/12


Errors and Omissions/Compliance Agreement

# Attachment R

# LETTER OF ACKNOWLEDGEMENT

### August 12, 2015



JAMES███████and MESHELLE███████
PREFERRED LAW, PLLC 2825 EAST COTTONWOOD PKWY,
SUITE 500
SALT LAKE CITY, UT 84121

RE: Loan number: ███████

Dear JAMES ███████ and MESHELLE ███████

Attached for execution is the Modification Agreement for your loan serviced by NATIONSTAR MORTGAGE LLC. The Modification Agreement sets forth the future terms of repayment for your loan, and may include capitalization of certain outstanding past due amounts. **The specific terms are identified in the Modification Agreement, and may include a period of time for which your payment will consist only of interest payments (resulting in no principal reduction) and/or change in the amortization term of your loan** (Such a change may result in you owing a lump sum payment upon maturity of your loan).

By executing this Letter of Acknowledgement and the Modification Agreement, you are agreeing to make a qualifying payment of **$11,613.80** dollars ("Qualifying Payment") for your Modification Agreement to become effective. This Qualifying Payment will be applied first to any outstanding fees and charges that are not capitalized under the terms of the Modification Agreement, next to any unpaid non-capitalized interest and finally to unpaid principal. If you fail to make this qualifying payment (or such payment is returned for non-sufficient funds or otherwise denied by the issuing bank), the Modification Agreement shall be deemed invalid and Nationstar Mortgage shall have no obligation to modify your loan in accordance with the terms of the Modification Agreement.

In addition to the foregoing, in consideration of Nationstar Mortgage agreeing to the modification of your loan account, you acknowledge and agree that Nationstar Mortgage may maintain an escrow account to collect funds for the payment of future taxes and insurance in accordance with the terms of the attached Agreement to Maintain Escrow Account.

Your estimated total monthly payment will be **$2,380.35**, which includes your initial monthly escrow payment of **$255.95**.

Should you have any questions regarding the terms of this Letter Acknowledgement or the Modification Agreement, please do not hesitate to contact Janine Richardson at 480-467-0051.

Sincerely,

NATIONSTAR MORTGAGE LLC

Acknowledged and agreed to by:



JAMES ███████ -Borrower _____ (Seal)

MESHELLE ███████ Borrower _____ (Seal)

Please be advised this communication is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the U. S. Bankruptcy Code. If this account has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and not an attempt to collect a debt against you; however, the servicer/lender reserves the right to exercise the legal rights only against the property securing the loan obligation, including the right to foreclose its lien under appropriate circumstances. Nothing in this correspondence shall be construed as an attempt to collect against the borrower personally or an attempt to revive personal liability.



*5 9 6 4 0 7 0 3 2 N N G S E *
Ack. Ltr. - Escrow - No Fee
9386 01/13

* 2 3 0 3 1 8 + 1 0 *

**Recording Requested By:**
**NATIONSTAR MORTGAGE LLC**

**After Recording Return To:**
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

**This Document Prepared By:**

_____
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

**Parcel ID Number:**

_____ [Space Above This Line For Recording Data] _____
Original Loan Amount: $661,500.00                                      Loan No: ███████
                                                                      MIN Number: **100194430011998427**

# LOAN MODIFICATION AGREEMENT
### (Providing for Temporary Interest Only, then Adjustable Interest Rate)

   This Loan Modification Agreement ("Agreement"), made this **12th** day of **August, 2015**, between
**JAMES** ███████ and **MESHELLE** ███████ ("Borrower") and **NATIONSTAR MORTGAGE LLC,**
**whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), and Mortgage
Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box
2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Beneficiary"), amends and supplements (1) the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards
Rider, if any, dated _____, ____ and recorded in **Book/Liber N/A,** of the **Official Records**
**(Name of Records) of** _____ **County, CA (County and State, or other Jurisdiction)** and (2)
the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property", located at
███████

(Property Address)

the real property described being set forth as follows:

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE**



LOAN MODIFICATION AGREEMENT - NSARMtempIOToARM
9398 11/14



*(page 1 of 4)*

**MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **August 1, 2015**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$815,769.23**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.125%**, from **August 1, 2015** through **July 31, 2017**. Borrower promises to make monthly payments of interest of U.S. **$2,124.40**, beginning on the **1st day** of **September, 2015**, and continuing thereafter on the same day of each succeeding month through **August 01, 2017** (the "Interest Only Period"). After the expiration of the Interest Only Period, the interest rate and amount Borrower will pay may change in accordance with the terms of the original Note or terms of an active modification to the original Note. Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full, except that, if not sooner paid, the final payment of principal and interest shall be due and payable on **February 1, 2057**, which is the present or extended Maturity Date.

3.  If on the Maturity Date, Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

4.  <u>Failure to Timely Remit Payments:</u>  If at any time during the effective dates of this Modification Agreement the Borrower fails to timely make payments as specified hereinabove and such default or failure continues for more than thirty (30) days, then this Modification Agreement, at the option of Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in full, effective as of the date of this Modification Agreement, and the amounts due and payable under the terms of the Note shall be as originally stated therein, as if this Modification Agreement had never existed.  Time is of the essence with regard to all payments specified hereunder. Nothing contained herein shall prevent or preclude Lender from enforcing any of Lender's rights or remedies under the Note, or under any document or instrument evidencing or securing the indebtedness created by or under the Note, or shall be construed as a waiver of any of Lender's rights or remedies thereby created.

5.  Borrower understands and agrees that

    (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and

none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(g)   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature.  At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original loan documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.



LOAN MODIFICATION AGREEMENT - NSARMTempFixedToARM
9396 11/14



*(page 3 of 4)*

PX22 - 479

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) – Lender
Name: _____
Title: **Assistant Secretary**

_____
Date of Lender's Signature



LOAN MODIFICATION AGREEMENT - NSARMTempFixedToARM
8389 11/14



*(page 4 of 4)*

Loan No.
Borrower: JAMES ███████ and MESHELLE ███████

# AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, JAMES ███████ and MESHELLE ███████ ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated _____ _____, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property;  (b) leasehold payments or ground rents on the Property, if any;  (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums.  These items are called "Escrow Items."  In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law.  In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount.  Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA").  The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender.  Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA.  If there is a deficiency



AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12

(Page 1 of 2)

Loan No.: ████

Borrower: JAMES ████ and MESHELLE ████

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

Borrower - JAMES ████ _____    _____ Date

Borrower - MESHELLE ████ _____    _____ Date

Borrower - _____    _____ Date

Borrower - _____    _____ Date

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number: ███████                          Date: **August 12, 2015**

Borrower(s):  **JAMES** ███████ **and MESHELLE** ███████

Property Address: ████████████████████

Lender:  **NATIONSTAR MORTGAGE LLC**

In consideration of **NATIONSTAR MORTGAGE LLC** (the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.  Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses. Borrower's failure to comply with all such requests within such 30 day time period will result in the Lender adjusting the modified terms without the borrower's consent.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____ (Date)

**JAMES** ███████ -Borrower

_____ (Date)

**MESHELLE** ███████ -Borrower



2001 11/12



Errors and Omissions/Compliance Agreement

PX22 - 483

# Attachment S

# LETTER OF ACKNOWLEDGEMENT

December 14, 2015



JAMES ████ and MESHELLE ████

RE: Loan number ████

Dear JAMES ████ and MESHELLE ████

Attached for execution is the Modification Agreement for your loan serviced by NATIONSTAR MORTGAGE LLC. The Modification Agreement sets forth the future terms of repayment for your loan, and may include capitalization of certain outstanding past due amounts. **The specific terms are identified in the Modification Agreement, and may include a period of time for which your payment will consist only of interest payments (resulting in no principal reduction) and/or change in the amortization term of your loan** (Such a change may result in you owing a lump sum payment upon maturity of your loan).

By executing this Letter of Acknowledgement and the Modification Agreement, you are agreeing to make a qualifying payment of **$11,613.80** dollars ("Qualifying Payment") for your Modification Agreement to become effective. This Qualifying Payment will be applied first to any outstanding fees and charges that are not capitalized under the terms of the Modification Agreement, next to any unpaid non-capitalized interest and finally to unpaid principal. If you fail to make this qualifying payment (or such payment is returned for non-sufficient funds or otherwise denied by the issuing bank), the Modification Agreement shall be deemed invalid and Nationstar Mortgage shall have no obligation to modify your loan in accordance with the terms of the Modification Agreement.

In addition to the foregoing, in consideration of Nationstar Mortgage agreeing to the modification of your loan account, you acknowledge and agree that Nationstar Mortgage may maintain an escrow account to collect funds for the payment of future taxes and insurance in accordance with the terms of the attached Agreement to Maintain Escrow Account.

Your estimated total monthly payment will be **$2,781.17**, which includes your initial monthly escrow payment of **$289.88**.

Should you have any questions regarding the terms of this Letter Acknowledgement or the Modification Agreement, please do not hesitate to contact Juan Guerrero at 480-467-0044.

Sincerely,

NATIONSTAR MORTGAGE LLC

Acknowledged and agreed to by:

_____ (Seal)
JAMES ████ -Borrower

_____ (Seal)
MESHELLE ████ -Borrower

Please be advised this communication is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the U. S. Bankruptcy Code. If this account has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and not an attempt to collect a debt against you; however, the servicer/lender reserves the right to exercise the legal rights only against the property securing the loan obligation, including the right to foreclose its lien under appropriate circumstances. Nothing in this correspondence shall be construed as an attempt to collect against the borrower personally or an attempt to revive personal liability.



Ack. Ltr. - Escrow - No Fee
9388 01/13



**Recording Requested By:**
**NATIONSTAR MORTGAGE LLC**

**After Recording Return To:**
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

**This Document Prepared By:**

**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

**Parcel ID Number:**

_____ [Space Above This Line For Recording Data] _____
Original Loan Amount: **$661,500.00**                                          Loan No: █████████

# LOAN MODIFICATION AGREEMENT
### (Providing for Temporary Fixed Interest Rate, then Adjustable Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **14th** day of **December, 2015,** between **JAMES** █████ and **MESHELLE** █████ "Borrower") and **NATIONSTAR MORTGAGE LLC**, whose address is **8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated _____, ____ and recorded in **Book/Liber N/A**, Page **N/A**, Instrument No: **N/A**, of the **Official Records (Name of Records)** of _____ **County, CA (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

█████████████████████████████
(Property Address)

the real property described being set forth as follows:

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**



*  5  9  6  4  0  7  0  3  2  N  N  G  S  E  *
LOAN MODIFICATION AGREEMENT - NSARMTempFixedToARM
9396 11/14



*  2  5  4  0  4  0  +  1  D  *

*(page 1 of 4)*

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **December 1, 2015**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$838,168.79**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **2.000%**, from **December 1, 2015** through **November 30, 2017**. Borrower promises to make monthly payments of principal and interest of U.S. **$2,491.29**, beginning on the **1st** day of **January, 2016**, and continuing thereafter on the same day of each succeeding month through **December 01, 2017** (the "Fixed Rate Period"). After the expiration of the Fixed Rate Period, the interest rate and amount Borrower will pay may change in accordance with the terms of the original Note or terms of an active modification to the original Note. Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full, except that, if not sooner paid, the final payment of principal and interest shall be due and payable on **February 1, 2057**, which is the present or extended Maturity Date.

3. If on the Maturity Date, Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

4. **Failure to Timely Remit Payments:**  If at any time during the effective dates of this Modification Agreement the Borrower fails to timely make payments as specified hereinabove and such default or failure continues for more than thirty (30) days, then this Modification Agreement, at the option of Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in full, effective as of the date of this Modification Agreement, and the amounts due and payable under the terms of the Note shall be as originally stated therein, as if this Modification Agreement had never existed.  Time is of the essence with regard to all payments specified hereunder. Nothing contained herein shall prevent or preclude Lender from enforcing any of Lender's rights or remedies under the Note, or under any document or instrument evidencing or securing the indebtedness created by or under the Note, or shall be construed as a waiver of any of Lender's rights or remedies thereby created.

5. Borrower understands and agrees that

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security



LOAN MODIFICATION AGREEMENT - NSARMTempFixedToARM
9396 11/14

*(page 2 of 4)*

PX22 - 487

Instrument are expressly reserved by Lender.

(c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release *in whole or in part of the Note and Security Instrument*

(d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature.  At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original loan documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

**In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, I will remain liable for and bear my own attorney fees and cost incurred in connection with any such action(s).**

In Witness Whereof, the Lender and I have executed this Agreement.



**JAMES** _____  (Seal)
-Borrower



**MESHELLE** _____  (Seal)
-Borrower

LOAN MODIFICATION AGREEMENT - NSARMTempFixedToARM
9396 11/14

*(page 3 of 4)*

**NATIONSTAR MORTGAGE LLC**

By: _____(Seal) – Lender

Name: _____

Title: **Assistant Secretary**

_____

Date of Lender's Signature



LOAN MODIFICATION AGREEMENT - NSARMTempFixedToARM
9398 11/14

*(page 4 of 4)*

Loan No.: ████████
Borrower: JAMES ████████ and MESHELLE ████████

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, JAMES ████████ and MESHELLE ████████ ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated _____, ____, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency





AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12

(Page 1 of 2)



Loan No.:
Borrower: JAMES          and MESHELLE

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_____     Date: _____
**JAMES**          -Borrower

_____     Date: _____
**MESHELLE**          -Borrower

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number: ████                                    Date: **December 14, 2015**

Borrower(s):   **JAMES** ████ **nd MESHELLE** ████

Property Address: ████████████████

Lender:   **NATIONSTAR MORTGAGE LLC**

In consideration of **NATIONSTAR MORTGAGE LLC** (the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.  Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses. Borrower's failure to comply with all such requests within such 30 day time period will result in the Lender adjusting the modified terms without the borrower's consent.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____   _____   (Date)
**JAMES** ████ -Borrower

_____   _____   (Date)
**MESHELLE** ████ -Borrower

2001 11/12

Errors and Omissions/Compliance Agreement

PX22 - 492

Att. 1

# Attachment T

# M Gmail

**Daniel** ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

# Modification
1 message

**Efrain Rivera**
<erivera@modificationreviewboard.com>
To: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Tue, Dec 17, 2013 at 12:43 PM

Here is the information that we talked about.  There are 3 attachment the payment form , borrowers authorization Guarantee latter.With the payment form please fill in your billing information, including  the payment method ,and fill out all requested information on the borrowers authorization sign and date both and return them immediately to us by one of the following methods.  Fax it to:(888) 334-7255 or scan and email them back to me  .Once the forms are received work will start  immediately on your modification, which will protect you from your lender foreclosing or harassing you in any way.

Please feel free to contact me with any questions or concerns that you may have.
I look forward to being of continuing service to you.

--

--

--
Efrain Rivera
Modification Adviser
Phone: 888-980-8053
Fax: 888-334-7255

http://www.bbb.org/utah/business-reviews/loan-modification/modification-review-board-in-sandy-ut-22310080

Preferred Law Links:
www.homeloanmodificationlawyer.com
http://www.bbb.org/utah/business-reviews/attorneys-litigation/preferred-law-

PK22-0494

pllc-in-sandy-ut-22312123

http://www.myutahbar.org/PublicDirectory/PublicDirectory.aspx?s=horton&m=11452

**3 attachments**

**daniel9-17-13GUARANTEE LETTER (MRB).pdf**
236K

**daniel9.4.13PREFERRED LAW 4 - PAYMENT FORM (1).pdf**
381K

**11.18.13PREFERRED LAW - AUTHORIZATION updated (2).pdf**
332K

PX22 - 495

Modification Review Board, LLC

December 17, 2013

Modification Review Board, LLC
9035 S 700 E, Ste. 203
Sandy, UT 84070

Daniel 

Re:     Service Guarantee Agreement

Dear Daniel

Modification Review Board, LLC ("MRB") welcomes you. The law firm of Preferred Law has agreed to submit a Qualified Written Request on your behalf and begin performing its federal review services as documents are received from your lender. Preferred Law's services are identified in its fee agreement. Once your information is received, and unless you direct otherwise in writing, American Home Loan Counselors will initiate your modification services and will be your primary contact throughout the process.

Based on the past performance of American Home Loan Counselors with the assistance of Preferred Law's federal legal services, and our knowledge of your factual situation, MRB hereby GUARANTEES that a modification or home foreclosure alternative pursuant to the HAFA program will be secured for you conditioned upon the following terms:

☐ You allow American Home Loan Counselors to process the modification and you promptly cooperate with Preferred Law and American Home Loan Counselors at all times.

☐ All communications from your lender, if any, are immediately forwarded to Preferred Law.

☐ All documents will be returned when requested by the deadlines given.

☐ There will be no significant changes to your current circumstances.

☐ All relevant information provided by you is entirely accurate and complete.

☐ All payments to Preferred Law are made on time per the Payment Schedule.

☐ You recognize that this guarantee is from MRB.

☐ Any and all disputes between the parties related to this agreement and MRB shall be resolved by binding arbitration in Salt Lake City, Utah, without appeal. You agree that any claim for damages by you against MRB for any reason shall be strictly limited only to only the fee paid by you to Preferred Law.

☐ This agreement constitutes the entire agreement between the parties relating to the transactions contemplated hereby and all other prior or contemporaneous agreements, promises, claims, understandings, representations and statements, oral or written, are merged into this agreement.

Jonathan Hanley
General Manager

Modification Review Board, LLC

I (We), the borrower(s) and homeowner(s), affirm that I (we) have received, read, and understand the foregoing agreement, and agree to the terms thereof.

**Borrower:**

*Date:* _____        *Sign here* ▶ _____

                                    *Client Name:* _____

**Co-Borrower:**

*Date:* _____        *Sign here* ▶ _____

                                    *Client Name:* _____

9035 S 700 E, Ste. 203 ◆ Sandy, UT 84070
Phone: (888) 541-7445 ◆ Fax: (888) 221-6521 ◆ www.modificationreviewboard.com



# PREFERRED LAW

## Payment Form

**Modification Review Board Representative:** Efrain Rivera

**Client Information:**

Name: Daniel

Phone:

E-mail:

Physical Address

**Billing Information:**

Name on Card:

Card Type: Visa, MasterCard, Discover

Daily Limit on Card, if none write NONE:

Card Number:

Expiration:

Code:

Billing Address:

**Payment Schedule:**

|   | Date | Amount |
|---|------|--------|
| 1 | 01/03/2013 | $ 650.00 |
| 2 | 02/03/2014 | $ 650.00 |
| 3 | 03/03/2014 | $ 650.00 |
| 4 | 04/03/2014 | $ 650.00 |
| 5 | 05/03/2014 | $ 650.00 |
| 6 | 06/03/2014 | $ 650.00 |
|   | **TOTAL** | **$ 3,900.00** |

**Client's Signature:**

Date: 1-2 /18 /2013          Sign here ►

**Chargeback Policy:** As described in the "Limited Services Agreement," If you use your credit card to fund o
CHARGEBACK YOUR CARD for any reason. If you are dissatisfied, you must follow the refund or return for
in our working agreement that you have signed. Preferred Law, PLLC does NOT GUARANTEE that we can
be one you agree with. In the event that you breach this clause and chargeback your credit card, you agree
shall be applied to your account in addition to all other remedies provided in the "Limited Services Agreement" and under Utah law.

1 | Page
Payment form

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (888) 980-7457 • Fax: (888) 334-7255 • www.preferredlawteam.com

PX22 - 498



**PREFERRED LAW**

**Borrower(s) Authorization**

Date_____                    Mortgage Account Number:_____

To_____
    (Name of Lender)

The undersigned borrower(s) do hereby appoint Preferred Law, PLLC, acting by and through its employees, staff and agents, as the authorized agents of the undersigned and to negotiate and act on behalf of the undersigned with respect to avoiding foreclosure of the following real property:

*(Address of Property)*_____
*(City, State, Zip)*_____

As necessary to carry out the above, Preferred Law, PLLC, acting by and through its employees, staff and agents, are expressly authorized, on behalf of the undersigned, to:

1.  Communicate with my creditors, home lender, and financial institutions to obtain any and all information regarding my accounts or debts that I may owe, including for example the account balances, payment history, verification of the account and any other information necessary to allow Preferred Law, PLLC to evaluate and formulate settlement, modification relief services, or payment offers on my behalf.

2.  Make good faith settlement or payment offers on my behalf. This authorization shall expire six (6) months from the date above unless rescinded in writing prior to that date.

**Borrower:**                                   **Co-Borrower:**

_____                         _____
Signature                                       Signature

_____                         _____
Printed Name                                    Printed Name

_____                         _____
Social Security Number                          Social Security Number

_____                         _____
Date of Birth                                   Date of Birth

Please be advised the following individuals are authorized REPRESENTATIVES of Preferred Law, PLLC that can be reached at (801) 386-5100:  Benjamin Horton, Attorney•Jonathan Hanley•Sandra Hanley•Shannon Martinez•Bobbi Collins •Rebecca Peace •Jake Snyder•Fernando Moncayo•Amparo Moncayo •Nataly Vasquez •Candice Davies•Teresa Johnson•Amber Orazem •BreaAnna Poole•Brandy Gold•Sonia Celis •Melissa Boynton•Jentry Rock•VerNeita Clark•Ashley Osbourne

**1 | P a g e**
**A u t h o r i z a t i o n**

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (888) 980-7457 • Fax: (888) 224-6524 • www.preferredlawteam.com

PX22 - 499

# Attachment U

**VERY IMPORTANT**

——— Forwarded message ———
From: **FMG Processor** <fmgprocessor@preferredlawteam.com>
Date: Mon, Dec 23, 2013 at 12:27 PM
Subject: 
To: 

Hello 
I am your Processor assigned to your case.
I need to gather these documents for your application, in order to continue working your case and getting you placed in review with your lender.
Here is the list of documents that are being requested:
(Some of the documents may have been asked for earlier, but I need the most current, please fax me all docs requested)
Please return all the attached forms within 48 hours if possible, so I am able to get started on your modification.

Dodd - Frank Form-attached
RMA –attached ( 3 pages)
4506-T- attached-please write your name at top and sign the bottom(We will fill out according to lender)
Hardship Letter-must be signed (I have attached a Sample letter)-or you can go to:WWW.hardshipletters.org
Utility Bill (Electric or Gas only)-most current
2011 Taxes include all pages and W2's -- All signature pages signed
2012 Taxes include all pages and W2's- All signature pages signed
2 months most current Bank Statements -- All Pages - Already received.
Social Security Benefit Statement - Already received.
Mortgage Statement
HOA statement
Declaration page of homeowners insurance- if not escrowed
Property tax statement-if not escrowed

Lease Agreement - Hold up on this one until I tell you the amount that you need still.

Other documents may be asked for as needed.

It is imperative that we receive these documents in a timely manner in order to facilitate your modification.

If process takes longer than 30 days-Updated income verification, bank statements and utility bill needs to be submitted monthly.

**To help provide a blue-print for the stages, we will be going through the next steps as follows:**

1. PRE-STAGE (Collect your documents and items and send via fax or overnight a cease & desist order to your lender.)

Must have the borrowers authorization form to send the cease and desist. It takes up to 72 hours for the

lender to process the request.

2. QUALIFIED WRITTEN REQUEST-STAGE (Specific instructions that we have provided to your lender to follow the proper loan program setup for your situation. Lender has up to 30-days to comply.)

3. INTERNAL AUDIT-STAGE- 10-15 business days (Preferred Law auditor details your income, expenses, documents that we will use for your file.).

4. PREP-STAGE-10-15 business days- (Preferred Law processor reviews the setup to double-check for correctness and packages your file in 1 complete packet to send via fax or overnight to lender and confirm it with lender that it has been received. The lender has up to 5-7 business days to assign to a representative.)

5. LENDER REVIEW-STAGE (Lender goes through loan program guideline procedure step by step. Lender has up to 90-days to comply.) Negotiator team should contact within approximately 5 business days after a lender representative is assigned to the file.


Thank you very much for your attention, if you have any questions or concerns please call me back.

Sincerely,


Nataly Vasquez

(801) 386-5100 Extension 224   Office Hours: 9:30 am to 4:30 pm MST  Monday toFriday





MAKING HOME AFFORDABLE

## Dodd–Frank Certification

The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203). **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program, authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 *et seq.*), or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I/we certify under penalty of perjury that I/we have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction:

    **(a)** felony larceny, theft, fraud, or forgery,
    **(b)** money laundering or
    **(c)** tax evasion.

I/we understand that the servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements by performing routine background checks, including automated searches of federal, state and county databases, to confirm that I/we have not been convicted of such crimes. I/we also understand that knowingly submitting false information may violate Federal law.

This Certificate is effective on the earlier of the date listed below or the date received by your servicer.

_____
Borrower Signature

_____
Co-Borrower Signature

**12/23/2013**
Date

_____
Date

# Attachment V

PX22 - 504

| From: | Jennifer ▓▓▓▓▓▓ |
|---|---|
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Articles to read regarding federal home loan modifications (( four attachments to review )) PROTECTION FROM FORECLOSURE |
| Date: | Friday, March 10, 2017 7:46:24 AM |
| Attachments: | Lenders Not Eager to Fix Mortgages.pdf |
| | ATT00001.htm |
| | 7 THINGS TO KNOW ABOUT OBAMA PLAN (4) (1).pdf |
| | ATT00002.htm |
| | Protection - Settlement Stipulations (8).pdf |
| | ATT00003.htm |
| | PROTECTION FROM FORECLOSURE Section3.3 HAMP (1).pdf |
| | ATT00004.htm |

Sent from my iPhone

Begin forwarded message:

**From:** Rod Kartchner <rkartchner@consumerdefense.com>
**Date:** September 29, 2016 at 9:58:03 AM CDT
**To:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Subject: Articles to read regarding federal home loan modifications (( four attachments to review )) PROTECTION FROM FORECLOSURE**

Hello John and Jennifer,

Please see the five articles that are attached below.   They are designed to help you learn more about federal home loan modifications.

I hope that you will continue to allow me to assist you with your due diligence and research project regarding mortgage relief.

Our agency received your request for information regarding mortgage relief under the Economic Stability Act.

Qualification for a program could entitle you to a reduced monthly payment and your past due balance, if any, moved to the back of your loan, less penalties and fees.  In addition, you will be protected from your home being sold at auction.

There are many programs available at this time to help people who have fallen behind on their mortgage payments due to a hardship or who just want to refinance into a lower rate.

Please call me at your earliest convenience to complete the qualification process and determine if you qualify and to discuss ALL of your various mortgage relief options.

**Thank You,**

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-2231008



**Thursday, August 13, 2009**

## Obama's Loan Modification Plan: 7 Things You Need to Know
### The White House releases fresh details on its plan to save the housing market

*By Luke Mullins*
Posted March 4, 2009

At the heart of the President Barack Obama's ambitious plan to rescue the housing market is the conviction that restructuring distressed mortgages will keep struggling borrowers in their homes and help insert a floor beneath plummeting property values. With $75 billion dedicated to reworking troubled loans, that's a big bet—especially considering that a top banking regulator said last December that almost 53 percent of loans modified in the first quarter of 2008 went bad again within six months. But supporters argue that mortgage modifications need to be properly engineered to work—and many early ones weren't. To that end, the Obama administration on Wednesday unveiled fresh details on its plan to restructure at-risk loans and help as many as four million home owners avoid foreclosure. Here are seven things you need to know about Obama's loan modification program.

 **1. Payments, not prices**: The plan centers on the belief that struggling borrowers will stay in their homes—even as values decline sharply—as long as they can make their monthly payments. Although not everyone agrees with this, billionaire investor Warren Buffett endorsed the philosophy in his most recent letter to shareholders. "Commentary about the current housing crisis often ignores the crucial fact that most foreclosures do not occur because a house is worth less than its mortgage (so-called "upside-down" loans)," Buffett wrote. "Rather, foreclosures take place because borrowers can't pay the monthly payment that they agreed to pay."

**2. Thirty-one percent**: To that end, the administration's plan requires participating loan servicers to reduce monthly payments to no more than 38 percent of the borrower's gross monthly income. The government would then chip in to bring payments down further, to no more than 31 percent of the borrower's monthly income. In lowering the payment, the servicer would first reduce the interest rate to as low as 2 percent. If that's not enough to hit the 31 percent threshold, they would then extend the terms of the loan to up to 40 years. If that's still not enough, the servicer would forebear loan principal at no interest. The plan

PX22 - 507

does not, however, require servicers to reduce mortgage principal, which Richard Green, the director of the Lusk Center for Real Estate at USC, considers a shortcoming. "For underwater loans, if you don't write down the balance to be less than the value of the house, people still have an incentive to default," Green says. "Writing down the principal first instead of last—which is what [the Obama administration is] proposing—makes sense to me."

**3. Cash incentives**: To encourage participation, servicers will be paid $1,000 for each modification and will get an additional $1,000 payout each year for as many as three years, as long as the borrower continues making payments. Borrowers, meanwhile, can get up to $1,000 knocked off the principal of their loan each year for as many as five years if they make their payments on time. Neither party can receive the cash incentives until the modified loan payments have been made for at least three months.

**4. Financial hardship**: The Obama administration is pitching its plan as an effort to help responsible homeowners ensnared in the historic housing slump and painful recession—not speculators. As such, only owner-occupied, primary residences with outstanding principal balances of up to $729,750 are eligible. Occupancy status will be verified through documents, such as the borrower's credit report. In addition, the program is designed to target homeowners who are undergoing "serious hardships"—such as a loss of income—which have put them at risk of default. To participate, borrowers will have to sign an affidavit of financial hardship and verify their income with documents. "If we would have had such stringent verification over the last four or five years, we probably wouldn't be in as bad a position as we are in," says Richard Moody, the chief economist at Mission Residential. But while Moody has no objection to such verification, obtaining documents from so many homeowners could be an onerous effort. "It's going to be a very time-consuming process," he says. Only loans originated on or before Jan. 1, 2009, are eligible, and modified payments will remain in place for five years. Now that the administration's plan is out, lenders are free to begin modifying loans.

**5. Net present value**: To determine if a particular mortgage will be modified, the servicer will perform a so-called net present value test. The test compares the expected cash flow that the loan would generate if it is modified with the expected cash flow it would generate if it isn't. If the modified loan is expected to produce more cash flow for the mortgage holder, the servicer is to restructure the loan. Howard Glaser, a mortgage industry consultant and a U.S. Department of Housing and Urban Development official

PX22 - 508

during the Clinton administration, called this component of the plan "clever," arguing that it would work to ensure broad participation. "When you apply the formula, the loans that are modified are the ones that are in the best economic interest of the investors to modify," Glaser says. "The federal subsidy for the payment on the modification...tips the scale toward modification as a better deal for the investor."

**6. Second liens**: The Obama plan also addresses the issue of second liens—such as home equity loans or home equity lines of credit—by offering incentives to extinguish them. But key details on this component of the plan remained unclear. "Distinguishing the second lien is really important," Green says. "[But] exactly how they are going to convince the second lien holder to do this is not clear to me at all."

**7. Will it work?** Moody argues that while the plan may reduce foreclosures for primary residences, it could lead to a spike in defaults for another group of homeowners. Although he supports the administration's efforts to focus the initiative on primary residences, Moody notes that "it could be the case that a lot of [real estate speculators] have been just hanging on waiting to see exactly what the details are of this [plan]," Moody says. Now that it's clear the Obama plan leaves speculators out, "we could actually see a spike in foreclosures or at least mortgage defaults among this group."

Glaser, meanwhile, worries that lenders may soon be overwhelmed by inquiries from homeowners looking to participate. "Starting today, millions of borrowers are going to start to call their lenders to see whether or not they are eligible," he said. "And I'm not sure that the financial services industry has the capacity to handle these inquiries."

**Tags:** loans | mortgages | real estate | housing market | housing | Obama administration

Copyright © 2009 U.S.News & World Report LP All rights reserved.

# Lenders not eager to help fix mortgages

**Lucrative fees gained even in foreclosure**

By Peter S. Goodman

NEW YORK TIMES NEWS SERVICE

2:00 a.m. July 30, 2009

## HIGHLIGHTS

**Not motivated to modify:** Data on delinquencies reinforce the notion that servicers are inclined to let problem loans float in purgatory – neither taking control of houses and selling them, nor modifying loans to give homeowners a break.

**Delinquencies increase:** From June 2008 to June 2009, the number of U.S. mortgages 90 days or more delinquent soared from 1.8 million to nearly 3 million, according to the realty research company First American Core Logic. During that period, the number of loans that resulted in the bank taking ownership of the home declined to 245,000 from 333,000.

This week, the Obama administration summoned mortgage company executives to Washington to demand they move faster to lower payments for homeowners sliding toward foreclosure. Treasury officials called on the companies to hire and train more people quickly to field applications for relief.

But industry insiders and legal experts said the limited capacity of mortgage companies isn't the primary factor impeding the government's $75 billion program to prevent foreclosures. Instead, they said many mortgage companies are reluctant to give strapped homeowners a break, because the companies collect lucrative fees on delinquent loans.

Even when borrowers stop paying, mortgage companies that service the loans collect fees out of the proceeds when homes are sold in foreclosure. The longer borrowers remain delinquent, the greater the opportunities for these mortgage companies to extract revenue – fees for insurance, appraisals, title searches and legal services.

"It frustrates me when I see the government looking to the servicer for the solution, because it will never ever happen," said Margery Golant, a Florida lawyer who defends homeowners against foreclosure and who worked as deputy counsel for a major mortgage company, Ocwen Financial. "I don't think they're motivated to do modifications at all. They keep hitting the loan all the way through for junk fees. It's a

license to do whatever they want."

Rich Miller, a governance project manager at Countrywide Financial and Bank of America before he left in January, said Bank of America had been reluctant to modify loans, which hurts the bottom line. The company has been waiting and hoping the economy will improve and delinquent customers will resume making payments, he said.

"That's the short-term strategy," said Miller, who oversaw training programs at Countrywide, which was bought by Bank of America, and now works as an industry consultant.

Bank of America disputed that characterization. "To think that somehow or other we would jeopardize investor relationships and customer relationships for the very small incremental income we would receive by delaying seems ludicrous," said Robert V. James, the bank's senior vice president for mortgage operations. "It's not the right thing to do."

Mortgage companies, some of which are affiliated with the nation's largest banks, are paid to manage pools of loans owned by investors. Under their contracts, the companies typically collect a percentage of the value of the loans they service. They extract their share regardless of whether borrowers are current on their payments. Indeed, their percentage often increases on delinquent loans.

Legal experts said the opportunities for additional revenue in delinquency are considerable, confronting mortgage companies with a conflict between their financial interest in harvesting fees and their responsibility to collect as much as they can for investors who own most mortgages.

"The rules by which servicers are reimbursed for expenses may provide a perverse incentive to foreclose rather than modify," concluded a recent paper published by the Federal Reserve Bank of Boston.

Under the Obama administration's foreclosure program, a servicer that modifies a loan for a homeowner collects $1,000 from the government, followed by $1,000 a year for each of the next three years.

A senior Treasury adviser, Seth Wheeler, said these payments amount to "meaningful incentives to servicers to help overcome the challenges and competing demands they face in considering and completing loan modifications." He added mortgage companies "are contractually obligated to the terms of this program, which require them to offer modifications to qualified borrowers."

But experts said the administration's incentives are often outweighed by the benefits of collecting fees from delinquency, and then more fees through the sale of homes in foreclosure.

"If they do a loan modification, they get a few shekels from the government," said David Dickey, who formerly headed a national mortgage sales team at Countrywide and Bank of America, leaving in March to start a mortgage advisory firm, National Home Loan Advocates. By contrast, he said, the road to foreclosure, especially if it's prolonged, is lined with fees. "There's all sorts of things behind the scenes," he said.

When borrowers begin to fall behind, mortgage companies typically collect late fees reaching 6 percent of the monthly payments.

"For many subprime servicers, late fees alone constitute a significant fraction of their total income and profit," said Diane E. Thompson, a lawyer for the National Consumer Law Center, in testimony to the Senate Banking Committee this month. "Servicers thus have an incentive to push homeowners into late

payments and keep them there: If the loan pays late, the servicer is more likely to profit."

She cited Ocwen Financial, which reported that nearly 12 percent of its income in 2007 came from fees charged to borrowers.

As a home slides toward foreclosure, mortgage companies pay for many services required to take control of the property and resell it. They typically funnel orders for title searches, insurance policies, appraisals and legal filings to companies they own or share revenue with.

Ocwen established its title company, Premium Title Services, in part to keep more of the revenue flowing from foreclosures, said Golant, who was involved in starting the venture.

"It was hugely profitable," she said. "Premium Title would charge for the title when it got transferred to Ocwen, then charge again when it got transferred to the new buyer, and then sell title insurance. It was easy money."

Mortgage companies not only gain this extra business through their subsidiaries, but also collect reimbursement for the payments when the houses are sold.

The investors who own bad mortgages accept whatever is left. Investors typically don't notice how much they relinquish to the servicers, because fees are embedded in complex sales.

"It's under the radar," Golant said.

Ultimately, the benefits of delinquency erode incentives for mortgage companies to dispose of troubled loans quickly, experts say, allowing distressed houses to decay and fall in value – a fact of little interest to the servicer.

"At the end of the day, it doesn't matter what the house sells for, because they don't take that loss," said Golant. "Meanwhile, they are collecting all these fees."

In the Union-Tribune on Page A1

**Find this article at:**
http://www3.signonsandiego.com/stories/2009/jul/30/1n30mortgage00056-lenders-not-eager-help-fix-mortg/?uniontrib

⬚ Check the box to include the list of links referenced in the article.

© Copyright 2007 Union-Tribune Publishing Co. • A Copley Newspaper Site

✖

## National Mortgage  Settlement:

On March 14, 2012 the United States of America and 49 of the 50 US states (all but Oklahoma) filed a complaint in the United States District Court for the District of Columbia against numerous mortgage loan servicers, including Bank of America, Citigroup, GMAC Mortgage/Ally Financial, JP Morgan Chase, and Wells Fargo (as well as certain subsidiaries of these mortgage loan servicers).

The complaint accused these mortgage loan servicers of outrageous and ongoing misconduct relating to their origination and servicing of single family residential mortgage loans, including abuses in the foreclosure process. More specifically, **Bank of America**, **Citigroup**, **GMAC Mortgage** /**Ally Financial**, **JP Morgan Chase**, **Wells Fargo**, and the others were accused of the staggering list of wrongdoings below.

1. Unfair, deceptive, and unlawful loan servicing processes;
2. Unfair, deceptive, and unlawful loan modification and loss mitigation processes;
3. Wrongful foreclosure conduct – including premature and unauthorized foreclosures;
4. Unfair and deceptive origination of mortgage loans;
5. Violations of the Direct Endorsement Program (relating to FHA loans);
6. Failure to comply with underwriting requirements;
7. Failure to comply with quality control requirements;
8. Ignoring or circumventing bankruptcy related protections and laws;
9. Violation of the Servicemembers Civil Relief Act; and
10. Use of false and deceptive affidavits and other documents to facilitate the above violations.

## Terms of the Settlement:

*"The servicing standards make foreclosure a last resort by requiring servicers to evaluate homeowners for other loss mitigation options first. In addition, **banks will be restricted from foreclosing while the homeowner is being considered for a loan modification.** The new standards also include procedures and timelines for reviewing loan modification applications and give homeowners the right to appeal denials. Servicers will also be required to create a single point of contact for borrowers seeking information about their loans and maintain adequate staff to handle calls.*

*The agreement will be filed as a consent judgment in the U.S. District Court for the District of Columbia. Compliance with the agreement will be overseen by an independent monitor, Joseph A. Smith Jr. Smith has served as the North Carolina Commissioner of Banks since 2002. Smith is also the former Chairman of the Conference of State Banks Supervisors (CSBS). The monitor will oversee implementation of the servicing standards required by the agreement; impose penalties of up to $1 million per violation (or up to $5 million for certain repeat violations); and publish regular public reports that identify any quarter in which a servicer fell short of the standards imposed in the settlement.*

some action to protect the interests of the owner, investor, guarantor or servicer of the loan in response to action taken by the borrower or other parties in the foreclosure process; or (c) there is not sufficient time following the borrower's acceptance of the TPP for the servicer to halt the activity or event, provided that in no event shall the servicer permit a sale to go forward.   The servicer must document in the servicing file if any of the foregoing exceptions to the requirement to halt an existing foreclosure sale is applicable.

## 3.3 Suspension of Scheduled Foreclosure Sale

When a borrower submits a request for HAMP consideration after a foreclosure sale date has been scheduled and the request is received no later than midnight of the seventh business day prior to the foreclosure sale date (Deadline), the servicer must suspend the sale as necessary to evaluate the borrower for HAMP. Servicers are not required to suspend a foreclosure sale when: (1) a request for HAMP consideration is received after the Deadline; (2) a borrower received a permanent modification and lost good standing (as described in Section 9.4); (3) a borrower received a TPP offer and failed to make one or more payments under the TPP by the last day of the month in which it was due; or (4) a borrower was evaluated based upon an Initial Package and determined to be ineligible under HAMP requirements.

The servicer will not be in violation of this section to the extent that a court with jurisdiction over the foreclosure proceeding (if any), or the bankruptcy court in a bankruptcy case, or the public official charged with carrying out the activity or event, fails or refuses to halt the sale after the servicer has made reasonable efforts to move the court or request the public official for a cessation of the sale. The servicer must document in the servicing system and/or mortgage file if the foregoing exception to the requirement to suspend an existing foreclosure sale is applicable.

A borrower is deemed to have requested consideration for HAMP when an Initial Package is received by the servicer or its foreclosure attorney/trustee prior to the Deadline.  However, the servicer may establish additional requirements for requests received later than 30 calendar days prior to a scheduled foreclosure sale date, including, for example, a requirement that the Initial Package be delivered through certified/express delivery mail with return receipt/delivery confirmation to either the servicer or the foreclosure attorney/foreclosure trustee.  These requirements must be posted on the servicer's Website and communicated to the borrower in writing in accordance with Section 2.2 or through other written communication.

If the borrower contacts the servicer prior to the Deadline, the servicer must inform the borrower of the Deadline and any document submission requirements.

## 3.4 Mitigating Foreclosure Impact

The servicer must take the following actions to mitigate foreclosure impact:

### 3.4.1 Simultaneous Trial Period Plan and Foreclosure Explanation

When a borrower is simultaneously in foreclosure and is either being evaluated for HAMP or is in a TPP, the servicer must provide the borrower with a written notification that explains, in clear language, the concurrent modification and foreclosure processes and that states that even though certain foreclosure activities may continue, the home will not be sold at a foreclosure sale while the borrower is being considered for HAMP or while the borrower is making payments under a TPP.  For model language for this notification, refer to Exhibit B.  Use of the model language is optional; however, it illustrates the level of specificity that is deemed to be in compliance with the language requirements of this Handbook.

### 3.4.2 Foreclosure Attorney/Trustee Communication

Servicers must develop and implement written policies and procedures to provide notification to their foreclosure attorney/trustee regarding a borrower's HAMP status, including whether the

PX22 - 514

# Attachment W

| From: | Jennifer ████ |
|-------|---------------|
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Documents To Be Completed And Returned Back To Me (( see a total of four attachments )) |
| Date: | Friday, March 10, 2017 7:46:10 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
>
> ████████████████████████
>
> **Subject: Documents To Be Completed And Returned Back To Me (( see a total of four attachments ))**
>
> Hello John and Jennifer,
>
> Once you have successfully printed out these four attachments and you have all 9 pages in your hands, please call me so that we can review your modification paperwork over the phone together.
>
> Per our discussion, please find your Guarantee, Borrowers Authorization form, Payment Schedule and Fee Agreement. *Would you please complete, sign and fax back them to the fax number listed below: (Total of 4 pages: The Borrowers Authorization, the PF and pages 1 and 3 of the Consumer Advocacy Agreement)*
>
> Within 1-2 business days of receipt of the above requested documents you will receive an email from your counselor who will be setting up your file and coordinating with Consumer Defense.
>
> **Please note the following:**
>
> 1. **On the Borrowers Authorization (BA):** Name of First Lender is the lender you make payments to, not necessarily the first lender you had when you got the loan.
>
> 2. **On the Payment Form (PF) : A)** Name on card refers to card holder not the name of the institution, AND THAT IS THE PERSON WHO MUST SIGN THE FORM. **B)** The date of your first payment will be 14 days from the date I receive your paperwork, this is why there are months

and year but no dates listed.

**_Thank You,_**

**_Rod Kartchner_**

**_Senior Modification Advisor_**

**_888-980-7497  Direct Toll Free_**

**_888-334-7255 Fax Number_**

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/

<CONSUMER LINK - AUTHORIZATION (1).pdf>

John - PAYMENT FORM.pdf>

John GUARANTEE LETTER IIO.pdf>

John SERVICE AGREEMENT.pdf>

# Payment Form

Consumer Defense, LLC Representative: Rod Kartchner  9-30-16

**Client Information:**

     Name:     John and/or Jennifer ███████       Phone: ███████

     E-mail: ███████

     Physical Address: ███████

**Billing Information:**

     Name on Card: _____

     Card Type (circle): Visa, MasterCard, Discover: _____

     Card Number: _____

     Expiration: _____ / _____     Code: _____

     Billing Address: _____

**Payment Schedule:**

|  | Date | Amount |
|---|---|---|
| 1 | 10-    -16 | $ 250.00 |
| 2 | 10-    -16 | $ 250.00 |
| 3 | 11-    -16 | $ 250.00 |
| 4 | 11-    -16 | $ 250.00 |
| 5 | 12-    -16 | $ 250.00 |
| 6 | 12-    -16 | $ 250.00 |
| 7 | 1-    -17 | $ 250.00 |
| 8 | -17 | $ 250.00 |
| 9 | 2-    -17 | $ 250.00 |
| 10 | -17 | $ 250.00 |
| 11 | 3-    -17 | $ 250.00 |
| 12 | -17 | $ 250.00 |
| 13 | 4-    -17 | $ 250.00 |
| 14 | -17 | $ 250.00 |
| 15 | 5-    -17 | $ 200.00 |
| 16 | -17 | $ 200.00 |
|  | **TOTAL** | $ |

**Client's Signature:**

*Date:* _____        *Sign here* ▶        _____

Att. A

# Attachment X

PX22 - 520

| | |
|---|---|
| **From:** | Jennifer ████ █ |
| **To:** | Yadoo, Jennifer |
| **Subject:** | Fwd: Docs....Re: Document request -- JUST A REMINDER |
| **Date:** | Friday, March 10, 2017 8:44:17 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 4, 2016 at 7:27:30 PM CDT
> **To:** Jennifer ████ █ <████████
> **Subject: Re: Docs....Re: Document request — JUST A REMINDER**
>
> Thanks
>
> Much appreciated
>
> I will look for the docs tomorrow
>
> On Tue, Oct 4, 2016 at 6:11 PM, Jennifer ████ █
> <████████ wrote:
>> John does at work only. He goes in at 5 am he can fax it all again
>>
>> Sent from my iPhone
>>
>> On Oct 4, 2016, at 7:06 PM, Rod Kartchner <rkartchner@consumerdefense.
>> com> wrote:
>>
>>> Hi Jennifer,
>>>
>>> Do you have a way to FAX me a copy of Service Solutions
>>> monthly mortgage statement?
>>>
>>> Thanks,
>>>
>>> Rod
>>>
>>> On Tue, Oct 4, 2016 at 2:29 PM, Rod Kartchner
>>> <rkartchner@consumerdefense.com> wrote:
>>>> Hi Jennifer,
>>>>
>>>> Could you please send me a mortgage statement on your first and
>>>> your second?
>>>>
>>>> --

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009    1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan
modifications: http://www.attorneyloanmodifications.com/success-stories/

| From: | Jennifer ▮▮▮▮ ▮ |
|-------|-----------------|
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Re: |
| Date: | Friday, March 10, 2017 8:45:24 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 5, 2016 at 12:57:36 PM CDT
> **To:** Jennifer ▮▮▮▮ ▮ <▮▮▮▮▮▮▮▮▮▮▮
> **Subject: Re:**

Jennifer,

greetings

I have not yet ▮▮▮▮ a fax.

What is it that he sent?   How many pages?

Please let me know

thanks

Rod

On Wed, Oct 5, 2016 at 11:39 AM, Jennifer ▮▮▮ ▮
< ▮▮▮▮▮▮▮▮▮ wrote:
> John has confirmation from faxing this morning.
>
>    Sent from my iPhone

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,

LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009   1-800-456-3907 (toll-free)

Link to references from homeowners with completed federal home loan modifications: http://www.attorneyloanmodifications.com/success-stories/

| From: | Jennifer ▓▓▓▓▓ |
|-------|----------------|
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Thank you - I ▓▓▓▓ all 4 pages.........Re: correct fax # |
| Date: | Friday, March 10, 2017 8:47:08 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 6, 2016 at 5:39:26 PM CDT
> **To:** Jennifer ▓▓▓▓▓ ▓ <▓▓▓▓▓▓▓▓▓▓▓▓▓>
> **Subject: Thank you - I** ▓▓▓▓▓ **all 4 pages.........Re: correct fax #**
>
> Jennifer and John,
>
> Thank you for sending me the Service Solutions statements for the first and for the second mortgage.
>
> Can you call me this evening to review your modification case?
>
> Blessings,
>
> Rod
>
> On Wed, Oct 5, 2016 at 12:44 PM, Rod Kartchner <rkartchner@consumerdefense.com> wrote:
>> Jennifer,
>>
>> Sorry, I am not finding a fax from John.
>>
>> My correct FAX # is (888) 334-7255.
>>
>> Or, you could scan and Email documents back to me.
>>
>> Let me know.
>>
>> Thanks
>>
>> Rod
>>
>> On Wed, Oct 5, 2016 at 12:40 PM, Jennifer ▓▓▓▓ ▓▓ <▓▓▓▓▓▓▓▓▓▓▓▓▓> wrote:
>>> Should be 4 pages. He has sent it 3 times. I will get him to send from another fax when he comes home.
>>>
>>> Sent from my iPhone

On Oct 5, 2016, at 12:57 PM, Rod Kartchner
<<u>rkartchner@consumerdefense.com</u>> wrote:

> Jennifer,
>
> greetings
>
> I have not yet ███████ a fax.
>
> What is it that he sent?   How many pages?
>
> Please let me know
>
> thanks
>
> Rod
>
> On Wed, Oct 5, 2016 at 11:39 AM, Jennifer ███████ █
> <████████████████████> wrote:
>> John has confirmation from faxing this morning.
>>
>> Sent from my iPhone
>
>
>
> --
> ***Thank You,***
>
> ***Rod Kartchner***
>
> ***Senior Modification Advisor***
>
> ***888-980-7497  Direct Toll Free***
>
> ***888-334-7255 Fax Number***
>
> A + rating at the Better Business Bureau -- Consumer Defense,
> LLC: <u>http://www.bbb.org/utah/business-reviews/loan-modificat</u>
> <u>ion/consumer-defense-llc-in-sandy-ut-22310080/</u>   Better Business
> Bureau: <u>801-892-6009</u>   <u>1-800-456-3907</u> (toll-free)
> Link to references from homeowners with completed federal home loan
> modifications: <u>http://www.attorneyloanmodifications.com/success-stories/</u>

--
***Thank You,***

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009    1-800-456-3907
(toll-free)
Link to references from homeowners with completed federal home loan
modifications: http://www.attorneyloanmodifications.com/success-stories/

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009    1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan
modifications: http://www.attorneyloanmodifications.com/success-stories/

| From: | Jennifer ████ █ |
| To: | Yadoo, Jennifer |
| Subject: | Fwd: How are you doing? |
| Date: | Friday, March 10, 2017 8:45:43 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 6, 2016 at 2:09:36 PM CDT
> **To:** Jennifer ████ █ ████████ <
> **Subject: How are you doing?**
>
> Hi Jennifer,
>
> Could you please call me?  Thanks, I just want to have a chance to explain the
> modification paperwork to you.
>
> My # is 888-980-7497.
>
> *Thank You,*
>
> *Rod Kartchner*
>
> *Senior Modification Advisor*
>
> *888-980-7497  Direct Toll Free*
>
> *888-334-7255 Fax Number*
>
> A + rating at the Better Business Bureau – Consumer Defense,
> LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-
> sandy-ut-22310080/   Better Business Bureau: 801-892-6009    1-800-456-3907 (toll-
> free)
> Link to references from homeowners with completed federal home loan
> modifications: http://www.attorneyloanmodifications.com/success-stories/

| From: | Jennifer █████ █ |
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Question |
| Date: | Friday, March 10, 2017 8:46:22 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 6, 2016 at 7:26:17 PM CDT
> **To:** Jennifer ████████ < ████████████████ >
> **Subject: Re: Question**
>
> Sounds good
>
> Just remember to call me or Email late in the day or when John gets home from work to verify that I have ████ everything that I need
>
> On Thu, Oct 6, 2016 at 6:20 PM, Jennifer ████ █
> < ████████████ > wrote:
>> Thank God! Thank You so much, I have everything together for him to fax it but he can't fax until 2:30 or so unfortunately. It will get there!
>>
>> Sent from my iPhone
>>
>> On Oct 6, 2016, at 7:16 PM, Rod Kartchner <rkartchner@consumerdefense.com> wrote:
>>
>>> There are no fees for the second
>>>
>>> they are doing that for free
>>>
>>> Consumer Defense is not able legally to start the modification on the second mortgage until they are finished with the modification on the first
>>>
>>> Nothing to be concerned about!
>>>
>>> Talk soon,
>>>
>>> Rod
>>>
>>> On Thu, Oct 6, 2016 at 6:13 PM, Jennifer ████ █
>>> < ████████████ > wrote:
>>>> Sorry we started filling out the payment form on first mortgage

PX22 - 529

and what is to be paid on second??

Sent from my iPhone

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business
Bureau: 801-892-6009   1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan
modifications: http://www.attorneyloanmodifications.com/success-stories/

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009   1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan
modifications: http://www.attorneyloanmodifications.com/success-stories/

PX22 - 530

| | |
|---|---|
| **From:** | Jennifer ████ █ |
| **To:** | Yadoo, Jennifer |
| **Subject:** | Fwd: How are we doing? |
| **Date:** | Friday, March 10, 2017 8:46:39 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 7, 2016 at 1:33:24 PM CDT
> **To:** Jennifer ████ █ <████████████>
> **Subject: How are we doing?**
>
> Jennifer,
>
> Your or John are going to call me late afternoon, after the docs have been faxed back to me, right?
>
> Just looking for a confirmation.
>
> *Thank You,*
>
> *Rod Kartchner*
>
> *Senior Modification Advisor*
>
> *888-980-7497  Direct Toll Free*
>
> *888-334-7255 Fax Number*
>
> A + rating at the Better Business Bureau -- Consumer Defense, LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009    1-800-456-3907 (toll-free)

| From: | Jennifer ████ █ |
|---|---|
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Sorry - the fax did not come through |
| Date: | Friday, March 10, 2017 8:47:08 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 7, 2016 at 6:51:22 PM CDT
> **To:** Jennifer ████ █ <███████████>
> **Subject: Sorry - the fax did not come through**
>
> Hi Jennifer,
>
> Could you resend the paperwork over the weekend?
>
> I am sorry about the inconvenience, but I checked the fax and there was nothing there from you or from John.
>
> Let me know
>
> Thanks
>
> Rod
>
> On Fri, Oct 7, 2016 at 5:44 PM, Jennifer ████ ████ <███████████> wrote:
>> Did you get the fax? He ran to the store and we had company right when he got home.
>>
>> Sent from my iPhone
>>
>> On Oct 7, 2016, at 1:33 PM, Rod Kartchner <rkartchner@consumerdefense.com> wrote:
>>
>>> Jennifer,
>>>
>>> Your or John are going to call me late afternoon, after the docs have been faxed back to me, right?
>>>
>>> Just looking for a confirmation.
>>>
>>> **Thank You,**
>>>
>>> **Rod Kartchner**

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense, LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009    1-800-456-3907 (toll-free)

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense, LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009    1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan modifications: http://www.attorneyloanmodifications.com/success-stories/

| From: | Jennifer ████ █ |
| --- | --- |
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Wonderful - talk to you later today |
| Date: | Friday, March 10, 2017 8:47:25 AM |

Sent from my iPhone

Begin forwarded message:

**From:** Rod Kartchner <rkartchner@consumerdefense.com>
**Date:** October 10, 2016 at 12:42:46 PM CDT
**To:** Jennifer ████ █ <████████████>
**Subject: Wonderful - talk to you later today**

Hi Jennifer,

Hope you had a good weekend.

I will look for your fax later this afternoon.

Please be sure to call me after you send the fax just to ██ me the heads up.

Talk soon,

Rod

On Fri, Oct 7, 2016 at 8:19 PM, Jennifer ████ █
<████████████> wrote:
We can't send fax till Monday afternoon.

Sent from my iPhone

On Oct 7, 2016, at 6:51 PM, Rod Kartchner <rkartchner@consumerdefense.com> wrote:

Hi Jennifer,

Could you resend the paperwork over the weekend?

I am sorry about the inconvenience, but I checked the fax and there was nothing there from you or from John.

Let me know

Thanks



Rod

On Fri, Oct 7, 2016 at 5:44 PM, Jennifer ▮▮▮▮ ▮
< ▮▮▮▮▮▮▮▮▮▮▮ > wrote:
Did you get the fax? He ran to the store and we had company
right when he got home.

Sent from my iPhone

On Oct 7, 2016, at 1:33 PM, Rod Kartchner
<rkartchner@consumerdefense.com> wrote:

> Jennifer,
>
> Your or John are going to call me late afternoon,
> after the docs have been faxed back to me, right?
>
> Just looking for a confirmation.
>
> **Thank You,**
>
> **Rod Kartchner**
>
> **Senior Modification Advisor**
>
> **888-980-7497  Direct Toll Free**
>
> **888-334-7255 Fax Number**
>
> A + rating at the Better Business Bureau -- Consumer
> Defense, LLC: http://www.bbb.org/utah/business-
> reviews/loan-modification/consumer-defense-llc-in-sandy-
> ut-22310080/   Better Business Bureau: 801-892-6009
> 1-800-456-3907 (toll-free)

--

**Thank You,**

**Rod Kartchner**

**Senior Modification Advisor**

**888-980-7497  Direct Toll Free**

**888-334-7255 Fax Number**

A + rating at the Better Business Bureau — Consumer Defense,

LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009   1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan modifications: http://www.attorneyloanmodifications.com/success-stories/

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau — Consumer Defense, LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009   1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan modifications: http://www.attorneyloanmodifications.com/success-stories/

PX22 - 536

# Payment Form

Consumer Defense, LLC▬▬▬▬▬▬        Rod Kartchner  9-30-16

**Client Information:**

    Name:     John and/or Jennifer ▬▬▬▬       Phone: (205) 422-5624

    E-mail: ▬▬▬▬▬▬▬

    Physical Address: ▬▬▬▬▬▬▬▬▬▬

**Billing Information:**

    Name on Card: _____

    Card Type (circle): Visa, MasterCard, Discover: _____

    Card Number: _____

    Expiration: _____ / _____    Code: _____

    Billing Address: _____

**Payment Schedule:**

|    | Date      | Amount    |
|----|-----------|-----------|
| 1  | 10-  -16  | $ 250.00  |
| 2  | 10-  -16  | $ 250.00  |
| 3  | 11-  -16  | $ 250.00  |
| 4  | 11-  -16  | $ 250.00  |
| 5  | 12-  -16  | $ 250.00  |
| 6  | 12-  -16  | $ 250.00  |
| 7  | 1-  -17   | $ 250.00  |
| 8  | -17       | $ 250.00  |
| 9  | 2-  -17   | $ 250.00  |
| 10 | -17       | $ 250.00  |
| 11 | 3-  -17   | $ 250.00  |
| 12 | -17       | $ 250.00  |
| 13 | 4-  -17   | $ 250.00  |
| 14 | -17       | $ 250.00  |
| 15 | 5-  -17   | $ 200.00  |
| 16 | -17       | $ 200.00  |
|    | TOTAL     | $         |

PX22 - 537

**Client's Signature**:

*Date:* _____          *Sign here* ▶   _____

| | |
|---|---|
| **From:** | Jennifer ▇▇▇▇ ▇ |
| **To:** | Yadoo, Jennifer |
| **Subject:** | Fwd: Greetings |
| **Date:** | Friday, March 10, 2017 8:47:42 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 12, 2016 at 10:22:13 AM CDT
> **To:** Jennifer ▇▇▇▇ ▇ <▇▇▇▇▇▇▇▇
> **Subject:** Greetings
>
> Hi Jennifer,
>
> Hoping to get the paperwork all done today.
>
> John said that we would stop by the UPS store to fax the 4 pages.
>
> Please remember to confirm with me after the fax is sent.
>
> **Thank You,**
>
> **Rod Kartchner**
>
> **Senior Modification Advisor**
>
> **888-980-7497  Direct Toll Free**
>
> **888-334-7255 Fax Number**
>
> A + rating at the Better Business Bureau – Consumer Defen

| | |
|---|---|
| **From:** | Jennifer ▮▮ |
| **To:** | Yadoo, Jennifer |
| **Subject:** | Fwd: Just one more thing |
| **Date:** | Friday, March 10, 2017 8:48:42 AM |

Sent from my iPhone

Begin forwarded message:

**From:** Rod Kartchner <rkartchner@consumerdefense.com>
**Date:** October 12, 2016 at 3:50:00 PM CDT
**To:** Jennifer ▮▮▮ <▮▮▮▮▮>
**Subject: Just one more thing**

Jennifer,

Please let John know that I got 9 pages and it came through quite well.

However, for some reason, the payment schedule did not come through at all.

Could you please have John resend or FAX to me the Payment Form?

Thanks

Rod

On Wed, Oct 12, 2016 at 12:46 PM, Rod Kartchner
<rkartchner@consumerdefense.com> wrote:
  Hey - thankful for friends

  But, I wonder why his office fax does not work????????????????????

  On Wed, Oct 12, 2016 at 12:18 PM, Jennifer ▮▮
  <▮▮▮▮▮> wrote:
    We are going to try and fax in a bit from our friends fax! Yeah

    Sent from my iPhone

    On Oct 12, 2016, at 12:19 PM, Rod Kartchner
    <rkartchner@consumerdefense.com> wrote:

      Jennifer,

      Can he leave the paperwork with you so that you can send it from

a store?

Over and over again trying from work has not gone through.

Are there no other options?

On Wed, Oct 12, 2016 at 11:13 AM, Jennifer ███████ █ █
< ████████████████ > wrote:
He couldn't go by ups today he will try again from work
tomorrow.

Sent from my iPhone

On Oct 12, 2016, at 10:22 AM, Rod Kartchner
<rkartchner@consumerdefense.com> wrote:

Hi Jennifer,

Hoping to get the paperwork all done today.

John said that we would stop by the UPS store to
fax the 4 pages.

Please remember to confirm with me after the fax
is sent.

**Thank You,**

**Rod Kartchner**

**Senior Modification Advisor**

**888-980-7497  Direct Toll Free**

**888-334-7255 Fax Number**

A + rating at the Better Business Bureau – Consumer
Defen

--

**Thank You,**

**Rod Kartchner**

**Senior Modification Advisor**

**888-980-7497  Direct Toll Free**

**888-334-7255 Fax Number**

A + rating at the Better Business Bureau -- Consumer Defense, LLC: http://www.bbb.org/utah/business-reviews/loan-modificat ion/consumer-defense-llc-in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009   1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan modifications: http://www.attorneyloanmodifications.com/success-stories/

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense, LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/  Better Business Bureau: 801-892-6009   1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan modifications: http://www.attorneyloanmodifications.com/success-stories/

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense, LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/  Better Business Bureau: 801-892-6009   1-800-456-3907 (toll-free)
Link to references from homeowners with completed federal home loan modifications: http://www.attorneyloanmodifications.com/success-stories/

| From: | Jennifer ▓▓▓▓ ▓ |
|---|---|
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Resending........Fwd: Resending payment schedule (( attached )) |
| Date: | Friday, March 10, 2017 8:49:11 AM |
| Attachments: | ▓▓▓ John - PAYMENT FORM.pdf |
| | ATT00001.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 13, 2016 at 8:42:28 PM CDT
> **To:** Jennifer ▓▓▓▓ ▓ <▓▓▓▓▓▓▓▓▓▓▓▓>
> **Subject: Resending........Fwd: Resending payment schedule (( attached ))**

---------- Forwarded message ----------
From: **Rod Kartchner** <rkartchner@consumerdefense.com>
Date: Wed, Oct 12, 2016 at 4:05 PM
Subject: Resending payment schedule (( attached ))
To: Jennifer ▓▓▓ ▓ <▓▓▓▓▓▓▓▓▓▓▓▓>

Jennifer and John,

Please see if you can go to a store like the UPS store

or go to the public library to see if you can get this payment schudule printed out.

Once all the blanks are filled in, please fax it back to me.

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-
sandy-ut-22310080/  Better Business Bureau: 801-892-6009    1-800-456-3907 (toll-
free)
Link to references from homeowners with completed federal home loan

modifications: http://www.attorneyloanmodifications.com/success-stories/

| From: | Jennifer ▓▓▓▓ |
|---|---|
| To: | Yadoo, Jennifer |
| Subject: | Fwd: .......How is it coming? |
| Date: | Friday, March 10, 2017 8:49:51 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** October 18, 2016 at 12:26:59 PM CDT
> **To:** Jennifer ▓▓▓▓ ▓ < ▓▓▓▓▓▓▓▓▓▓▓ >
> **Subject:** .......**How is it coming?**
>
> Hi Jennifer,
>
> Were you able to print out the new payment form?
>
> How is it going now?
>
> Please let me know.
>
> Thanks
>
> Rod
>
> On Mon, Oct 17, 2016 at 1:36 PM, Rod Kartchner
> <rkartchner@consumerdefense.com> wrote:
>> Hi Jennifer,
>>
>> How is it going?
>>
>> Is John sending the filled out payment form today?
>>
>> Thanks
>>
>> Rod
>>
>> On Fri, Oct 14, 2016 at 8:47 AM, Rod Kartchner
>> <rkartchner@consumerdefense.com> wrote:
>>> Hi Jennifer,
>>>
>>> Is there anything that I can do to help?
>>>
>>> Is John going to try to get the payment schedule back to me today?
>>>
>>> ***Thank You,***

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Def

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-
in-sandy-ut-22310080/   Better Business Bureau: 801-892-6009    1-800-456-3907
(toll-free)
Link to references from homeowners with completed federal home loan
modifications: http://www.attorneyloanmodifications.com/success-stories/

--

*Thank You,*

*Rod Kartchner*

*Senior Modification Advisor*

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

A + rating at the Better Business Bureau -- Consumer Defense,
LLC: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-
sandy-ut-22310080/   Better Business Bureau: 801-892-6009    1-800-456-3907 (toll-
free)
Link to references from homeowners with completed federal home loan
modifications: http://www.attorneyloanmodifications.com/success-stories/

Att. Y

# Attachment Y

| From: | Jennifer ████ |
|---|---|
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Payment Confirmation |
| Date: | Friday, March 10, 2017 8:57:10 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Alli Parkinson <aparkinson@consumerdefense.com>
> **Date:** November 28, 2016 at 10:09:16 AM CST
> **To:** ████████████████████
> **Subject: Payment Confirmation**

### APPROVAL

| | |
|---|---|
| Approval Code | 000809 |
| Response Code | 00  Approved |
| AVS Response Code | |
| Card Verification Number Response Code | |
| Credit Card Type | ◆            Expiration Date    ████ |
| Card Number | ████████████    Card Verification # |
| Amount | 250.00 |
| Surcharge Amount | |
| Order ID # | 11 |
| Street | |
| City | |
| State | |
| Postal Code | |
| Order Description | |
| Transaction Date | 11/28/2016 11:08:05 EST |
| Transaction Reference Number [TxRefNum] | 583C5665204143342FF0933091C2647E0C9B5338 |

--
*--Thanks*

--Alli Parkinson
Billing
Consumer Defense & AHLC
**801-938-8066**
*Hours of operation Monday-Friday 8:00-4:00 (MST)*

Confidentiality Notice: This message, including any attachment(s), may contain confidential information protected by law. The information contained herein is for the sole use of the intended recipient(s). If you have received this message in error, please contact the sender at the e-mail address listed above and destroy all copies of the original message, including any attachments. Thank you.

| From: | Jennifer ███████ |
|---|---|
| To: | Yadoo, Jennifer |
| Subject: | Fwd: Payment Confirmation |
| Date: | Friday, March 10, 2017 8:57:34 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Alli Parkinson <aparkinson@consumerdefense.com>
> **Date:** December 14, 2016 at 10:55:24 AM CST
> **To:** ███████████████████
> **Subject: Payment Confirmation**

## APPROVAL

| Approval Code | 260287 | | |
|---|---|---|---|
| Response Code | 00  Approved | | |
| AVS Response Code | | | |
| Card Verification Number Response Code | | | |
| Credit Card Type | ████ | Expiration Date | ███████ |
| Card Number | ███████████ | Card Verification # | |
| Amount | 300.00 | | |
| Surcharge Amount | | | |
| Order ID # | 12 | | |
| Street | | | |
| City | | | |
| State | | | |
| Postal Code | | | |
| Order Description | | | |
| Transaction Date | 12/14/2016 11:53:51 EST | | |
| Transaction Reference Number [TxRefNum] | 5851791F7EB85F97211150C5E934048A50D053D2 | | |

--
*--Thanks*
*--Alli Parkinson*
*Billing*
*Consumer Defense & AHLC*
**801-938-8066**
*Hours of operation Monday-Friday 8:00-4:00 (MST)*

Confidentiality Notice: This message, including any attachment(s), may contain confidential information protected by law. The information contained herein is for the sole use of the intended recipient(s). If you have received this message in error, please contact the sender at the e-mail address listed above and destroy all copies of the original message, including any attachments. Thank you.



# Attachment Z

| | |
|---|---|
| **From:** | Jennifer ████ |
| **To:** | Yadoo, Jennifer |
| **Subject:** | Fwd: Quit payments |
| **Date:** | Friday, March 10, 2017 8:58:19 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Shannon Martinez <smartinez@consumerdefense.com>
> **Date:** January 3, 2017 at 12:00:02 PM CST
> **To:** Jennifer ████████████████████
> **Subject: Re: Quit payments**
>
>
> I have forwarded your email to management and billing.
>
>
>
> *----Thank you*
>
> *-- Shannon Martinez*
> *Processing Manager*



**801-386.5100 EXT 202**
**888.224.6524 FAX**
**Available hours: Monday-Friday 9:30am-4:30pm (MST)**

Confidentiality Notice: This message, including any attachment(s), may contain confidential information
protected by law. The information contained herein is for the sole use of the intended recipient(s). If you have
received this message in error, please contact the sender at the e-mail address listed above and destroy all
copies of the original message, including any attachments. Thank you.

On Tue, Jan 3, 2017 at 10:51 AM, Jennifer ████████
████████████████ wrote:
We John and Jennifer ████████ would like to stop our payments and we no
longer have any need for your company. Due to the misguiding of your
company.

Sent from my iPhone

# Attachment AA

PX22 - 554

| From: | Jennifer ████████ |
| To: | Yadoo, Jennifer |
| Subject: | Fwd: 1-16-17 udpate from Rod........Re: Greetings |
| Date: | Friday, March 10, 2017 9:00:18 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** January 16, 2017 at 3:35:51 PM CST
> **To:** Jennifer ██████████████████████
> **Subject: 1-16-17 udpate from Rod........Re: Greetings**

Jennifer,

Thanks for the note,.

Sorry to hear that it has come to filing a ch 13

Still a good idea to call me so we can go over the details

I wish I had known that there was problem much earlier, I may have been able to help a lot

I do not know why Shannon is referring you elsewhere for a BK filing, as the chapter 13 is expensive and it does nothing to resolve the actual mortgage issues, it only gets the sale date cancelled and buys you additional time.

when is a good time to talk on the phone?

let me know

thanks

Rod

On Mon, Jan 16, 2017 at 2:29 PM, Jennifer ██████████
██████████████████████ > wrote:
| We are filing chapter 13 tomorrow morning at 9:30

| Sent from my iPhone

On Jan 16, 2017, at 2:58 PM, Rod Kartchner <rkartchner@consumerdefense.com> wrote:

Jennifer,

Wow - I just got you message.  I tried to call, and left a voice mail.

Their offices are closed today for MLK day, but I should be able to find out from them tomorrow what has been going on in your case.

I am really sorry to discover that there is a problem in your modification case.

But, please -- lets keep trying until we connect.   I want to get your side of the story AND get a report from them on what is happening in your case.

I might be able to be of service.

Talk soon.

**Thank You,**

**Rod Kartchner**

**Senior Modification Advisor**

**888-980-7497  Direct Toll Free**

**888-334-7255 Fax Number**


--

**Thank You,**

**Rod Kartchner**

**Senior Modification Advisor**

**888-980-7497  Direct Toll Free**

**888-334-7255 Fax Number**

Link to references from homeowners with completed federal home loan modifications: http://www.attorneyloanmodifications.com/success-stories/

# Attachment BB

PX22 - 557

| | |
|---|---|
| **From:** | Jennifer ▮▮▮▮ |
| **To:** | Yadoo, Jennifer |
| **Subject:** | Fwd: Greetings -- Jennifer |
| **Date:** | Friday, March 10, 2017 8:59:50 AM |

Sent from my iPhone

Begin forwarded message:

> **From:** Rod Kartchner <rkartchner@consumerdefense.com>
> **Date:** February 13, 2017 at 11:47:54 AM CST
> **To:** Jennifer ▮▮▮▮▮▮
> **Cc:** Audit Department <auditdepartment@consumerdefense.com>
> **Subject: Greetings — Jennifer**
>
> Hi Jennifer,
>
> Thanks for the note.
>
> I am forwarding your note to the audit department.
>
> They are the ones that handle the refunds.
>
> I dont' know why you wouldn't get your money back, too bad it is not my decision
> - I don't work for them.
>
> Keep in touch,
>
> Rod
>
> On Sun, Feb 12, 2017 at 9:43 AM, Jennifer ▮▮▮▮ ▮▮▮▮▮wrote:
>> How can we get our money back? Y'all need to do the right thing. We've got
>> numerous emails from yall and our Attorney is looking in to this. You've got
>> our address
>>
>> Sent from my iPhone

--

***Thank You,***

***Rod Kartchner***

***Senior Modification Adviser***

**Consumer Defense Group**

*888-980-7497  Direct Toll Free*

*888-334-7255 Fax Number*

Link to references from homeowners with completed federal home loan modifications: http://www.attorneyloanmodifications.com/success-stories/

# Attachment CC

| | |
|---|---|
| **From:** | Jennifer ▮▮▮ |
| **To:** | Yadoo, Jennifer |
| **Subject:** | Fwd: Request for refund |
| **Date:** | Friday, March 10, 2017 9:00:25 AM |
| **Attachments:** | ▮▮▮ refund req.pdf |
| | ATT00001.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** Audit Department <auditdepartment@consumerdefense.com>
> **Date:** March 1, 2017 at 3:46:49 PM CST
> **To:** ▮▮▮▮▮▮▮▮▮▮
> **Subject: Request for refund**

> John/Jennifer,

> Please see attached the necessary forms that need to be filled out and returned in
> order to process your request. Once we receive the completed copies back we will
> conduct a full audit on your file regarding your request.

> Please let us know if you have any questions at this time.

> --

> Regards,

> **Consumer Defense Audit Department**
> **888-980-7519 Ext 238**

> Confidentiality Notice: This message, including any attachment(s), may contain confidential
> information protected by law. The information contained herein is for the sole use of the intended
> recipient(s). If you have received this message in error, please contact the sender at the e-mail
> address listed above and destroy all copies of the original message, including any attachments.
> Thank you.



March 1, 2017

John 
Jennifer
Bessemer AL

Re:     Audit Request Form

Dear Sir or Madam:

You are receiving the attached "Audit Request Form" because you have contacted Consumer Defense, LLC to request the return of fees paid.  In order to evaluate your request, we will need to perform an audit of your file with us and Consumer Link, Inc., your payment account history, and the written agreement between you and our office.

By filling out and returning the attached form, you confirm that you would like us to perform this audit and you also provide us with the information necessary to do so.

IMPORTANT NOTE IF THERE IS ONGOING WORK ON YOUR FILE:

If Consumer Defense, LLC and/or Consumer Link, Inc. is/are currently conducting ongoing work for you, all of these efforts will be immediately halted and your file put on hold upon receipt of this completed form.  If you have concerns about the effect this could have on ongoing work, we encourage you to contact Consumer Defense, LLC and/or Consumer Link, Inc. before returning the completed form.

You agree that Consumer Defense, LLC and/or Consumer Link, Inc., including its/their owners, members, managers, representatives, agents, etc., will not be liable for any damages whatsoever related to the halting of all work on your file.

Please contact Consumer Defense, LLC if you have further questions.

Sincerely,
Consumer Defense, LLC

— ·

Consumer Defense, LLC • 500 North Rainbow Blvd • Suite 300 • Las Vegas, NV  89107
Phone: (888) 980-7566 • Fax: (888) 334-7255 • www.consumerdefense.com

PX22 - 562



**Consumer Defense**

# AUDIT REQUEST FORM

Please fill out the information below and submit the completed form by either mail or fax as indicated below. Once your form is received, your entire file will be reviewed after which you will be contacted with the results. We appreciate your business.

IMPORTANT NOTE IF THERE IS ONGOING WORK ON YOUR FILE:

If Consumer Defense, LLC and/or Consumer Link, Inc. is/are currently conducting ongoing work for you, all of these efforts will be immediately halted and your file put on hold upon receipt of this completed form. If you have concerns about the effect this could have on ongoing work, we encourage you to contact Consumer Defense, LLC and/or Consumer Link, Inc. before returning the completed form. You agree that Consumer Defense, LLC and/or Consumer Link, Inc., including its/their owners, members, managers, representatives, agents, etc., will not be liable for any damages whatsoever related to the halting of all work on your file.

Client Name: _____

Address: _____

_____

Lender: _____

Total Amount Paid to Consumer Defense, LLC:  $_____

Please note that if the payment(s) was drafted directly from your checking account, you must attach a copy of the bank statement(s) verifying that the deduction(s) of those funds from your account.

Reason for your request: _____

_____

_____

_____

_____

COMPLETE AND RETURN VIA MAIL OR FAX:

Mail:   Consumer Defense, LLC
        500 North Rainbow Blvd, Suite 500
        Las Vegas, NV  89107
Fax:    (888) 334-7255

*Date:* _____       Sign *here* ▶ _____

                               *Client Name:* _____

Consumer Defense, LLC • 500 North Rainbow Blvd • Suite 300 • Las Vegas, NV  89107
Phone: (888) 980-7566 • Fax: (888) 334-7255 • www.consumerdefense.com

PX22 - 563

# EXHIBIT 23

# DECLARATION OF RENÉE CRAWFORD

## DECLARATION OF RENÉE CRAWFORD
## PURSUANT TO 28 U.S.C. § 1746

I, Renée Crawford, make the following statement:

1. I am a U.S. citizen over the age of 18 residing in Modesto, California.  I am currently employed as a social worker.  I have personal knowledge of the facts stated below.

2. In or around 2016, I fell behind on my mortgage.  My mortgage payments were approximately $1066 a month.  I had previously applied for a mortgage modification, but was rejected by my lender, Citibank.  In or around April 2016, I was looking on the Internet for companies that could help me and received a call from a woman named Deanne Mosher.  I do not remember the name of the company Deanne said she worked with, but it may have been Modification Review Board.  For most of the time I worked with the company, it went by the name Preferred Law, but Deanne did not identify herself as working with Preferred Law before I signed up.

3. I told Deanne that I wanted a modification and was three or four months behind on my mortgage.  I said that I wanted to stay with Citibank.  Deanne promised me that I would be able to stay with Citibank.  She said that Modification Review Board worked with Citibank all the time and had a special connection with it.  Deanne told me that they could obtain a modification that would lower my monthly payments to about half of what I was paying at the time.  Deanne said that Modification Review Board had experience in the field and that it could guarantee a modification for me.  She gave me examples of other clients whom Modification Review Board had helped previously, including one person whose Citibank mortgage payment was about $2,000.  Deanne said that the

company had obtained a modification from Citibank that reduced that client's mortgage payment to around $750.

4. Deanne told me that the company would charge fees for their services, and that I had to make a payment before the company would work on my modification. I said that I could not afford to pay both Modification Review Board and my mortgage. Deanne reassured me that I would not have to pay my lender at all, and that I could just pay the company instead. Deanne also said that the fees to Modification Review Board would be broken up into affordable installments.

5. Deanne told me that the process would take about 60 days. I said that I was already behind on my mortgage and worried that my lender might foreclose on my house during that time. Deanne claimed that Modification Review Board would guarantee it would prevent foreclosure and that I should not worry.

6. On or around April 26, 2016, Deanne emailed me some paperwork to fill out and sign. The paperwork said something about government housing counseling specialists, so I thought that Preferred Law might have been affiliated with the government. Some of the paperwork was for a company called Preferred Law. This name made me think that the company was a legitimate law firm. The fee schedule on the paperwork was different than I remember Deanne explaining to me over the phone. It listed six monthly payments of $650, for a total of $3900, which was significantly more than I expected. I faxed the paperwork to Deanne on or around that same day. A true and correct redacted copy of this paperwork is attached to this declaration as *Attachment A.*

7. Preferred Law told me I should not talk to my lender while I was signed up with Preferred Law, and that I should contact Preferred Law if Citibank contacted me.

Preferred Law also said that I should not agree to anything without consulting Preferred Law.

8. Preferred Law withdrew $650, its first monthly payment, from my debit card on or around May 3, 2016. At the request of Preferred Law, I provided documents such as pay stubs and a list of my monthly expenses.

9. When I signed up with Preferred Law, I gave Preferred Law the name and contact information of the representative at Citibank with whom I previously worked on a modification. About two weeks after this, I contacted the Citibank representative and he said that no one from Preferred Law had contacted him, but that my mortgage had been transferred to another department at Citibank. I did not contact Citibank after that to verify with whom Preferred Law was speaking.

10. Additionally, my Preferred Law representative kept changing after I signed up. Originally, Deanne introduced me to a woman named Cassie Rasmussen who she said was my home loan counselor. At some point, I was told that Cassie left Preferred Law, and a representative named Shannon Martinez took over. There were several other representatives I worked with as well, such as Alli Parkinson and a woman named Rebecca. Even though Deanne told me that Preferred Law had attorneys, I never spoke to anyone who identified himself or herself as an attorney.

11. Alli Parkinson would email me with monthly payment reminders from the billing department at Preferred Law. On or around June 7, 2016, I received an email from Bobbi Collins reminding me that Preferred Law would withdraw a payment for $525 on June 8, 2016 under either "AM Property Management," "Preferred Law," or "FMG Partners." The email was signed by Alli Parkinson, and included a "comments" section that

appeared to contain copy-and-pasted correspondence between myself and Preferred Law employees.  A true and correct redacted copy of the June 7, 2016 payment reminder and the notes in the "comments" section is attached to this declaration as ***Attachment B.***

12. The comments section describes a series of conversations about my monthly payments. The comments indicated that on or around May 23, 2016, I emailed Cassie about lowering my monthly payment to Preferred Law.  I said that I needed to reduce the payment to $150 or $200 because I had several expenses and medical bills at risk of going into collections.  The notes indicate that I requested that Preferred Law not attempt to withdraw a $600 payment on June 2, 2016, because I would not have the money in my account.  Alli entered notes dated May 25, 2016 indicating she told me that Preferred Law could not lower my payment to $150 or $200 a month.  The notes indicate I told Alli that the most I could pay to Preferred Law was $400 a month, and that she told me that she would have to speak with Preferred Law's management.  Bobbi entered notes dated May 31, 2016 that read as follows:

> to Jonathan, Sandra, me
>
> I HAVE YET TO HEAR BACK ON THIS.
>
> SO THIS IS WHAT I ADVISE
>
> ALI CALL HER AND LET HER KNOW THE LOWEST WE CAN GO
>
> IS $500
>
> SHE MAKES PLENTY

13. Notes dated June 2, 2016 indicate that Preferred Law changed my payment to $500 but added a $25 fee.  I do not remember reading these notes at the time or speaking with anyone named Bobbi, Jonathan, or Sandra.

14. On June 13, 2016, I received an email from Shannon Martinez that she would be the new point of contact. I replied to this email that I had previously emailed Cassie a document sent to me by my mortgage company last week and asked what Shannon needed from me. Shannon responded that the letter was a notice of default, which is a standard letter mortgage companies send when a customer is behind on their mortgage. Shannon also requested updated documents, which I provided. A true and correct redacted copy of this email exchange is attached to this declaration as *Attachment C.*

15. I continued to make monthly payments to Preferred Law until around October 2, 2016. Preferred Law did not notify me about what was going on with my mortgage, and I always had to initiate contact. Originally, according to the payment form I signed, I was supposed to stop paying Preferred Law in October 2016. However, Preferred Law told me that I was not done paying them and would need to continue to make payments to pay off a balance on my account. On or around September 1, 2016, I received a letter from Preferred Law that I had an outstanding balance of $1900. The letter said that if I did not pay the balance off, Preferred Law would submit the delinquent account to collections, which could lead to additional fees and expenses. The letter also said that Preferred Law understood that paying my mortgage was a priority, even though Preferred Law had previously told me I did not need to pay my mortgage. A true and correct redacted copy of this letter is attached to this declaration as *Attachment D.*

16. I was afraid that if I stopped paying Preferred Law, it could take legal action against me for not fulfilling the agreement. I continued to pay Preferred Law through November 2017 because I felt obligated to pay off the $3900 balance that was on the contract. This was financially difficult, and when I told a Preferred Law representative I needed to

reduce my payments, she told me that the lowest payment Preferred Law would accept was $100 a month.

17. On or around September 8, 2016, I received a letter from Benjamin Horton at Preferred Law. The letter said that the company's services as a law office had concluded and that my file was approved for a trial modification. The letter said that American Home Loan Counselors would monitor my trial modification until it was made permanent, and that I should send my file manager any correspondence from my lender. A true and correct redacted copy of this letter is attached to this declaration as *Attachment E.*

18. In or around September 2016, Nationstar Mortgage ("Nationstar") contacted me to say that it was my new loan servicer and that my monthly loan payment was now about $1086, beginning with a three-month trial period. Nationstar did not mention Preferred Law, but because of the timing, I believed that this was the modification Preferred Law obtained for me. I was shocked to find out that my loan had been modified without my knowledge or consent. I would not have agreed to this modification, because the monthly payment was about $20 higher, and it was not with Citibank.

19. Shortly after I found out about the modification, I contacted Preferred Law to express my dissatisfaction that it had misrepresented its services and obtained a modification that was on worse terms. Initially, no one would talk to me; I left several voicemail messages but never received a response. Eventually, I emailed one of my contacts at Preferred Law. Rebecca finally responded to me that I should be happy with what I had because I had a fresh start and still had my home. I said that I had never heard of Nationstar and wanted to stay with Citibank. Rebecca told me that Nationstar was a reputable mortgage lender and that this would be better than if I had stayed with Citibank. I also contacted Deanne,

and said that Preferred Law had not provided the services it promised, and so I wanted some of my money back. Deanne said she would have to talk to someone else at Preferred Law and get back to me. I never heard from Deanne again.

20. Beginning in or around November 2016, the emails from Alli reminding me about my payments began saying that she was contacting me on behalf of the billing department at American Home Loan Counselors, instead of Preferred Law. Additionally, the emails also listed different companies that Preferred Law would process my payments under, such as Consumer Defense, American Home Loans, AM Property Management, and Elect Check E-Check Plus. True and correct redacted copies of some of these monthly payment reminders are attached to this declaration as *Attachment F.*

21. In or around December 2016, I contacted the State Bar of California. Someone from the State Bar of California responded to me that lawyers should not charge upfront fees for loan modification services before the agreed upon services are completed. In or around July 2017, I contacted another law firm. A paralegal at the law firm told me that Preferred Law might be a scam and that it should not have collected upfront fees from me. The person I contacted said that I could file a complaint with the FTC, my state Attorney General's office, and the CFPB. I filed a complaint with the CFPB.

22. Preferred Law did not tell me that I could stop doing business with them at any time or reject an offer of mortgage assistance that my lender offers without having to pay the company for the services. Preferred Law did not even give me a chance to reject the offer of mortgage assistance, and I had to pay them upfront. No one at Preferred Law disclosed to me that the company was not associated with the government and its service was not approved by the government or any lender. Preferred Law did not tell me that

the lender might not agree to modify the loan, even if I used the company's services. In fact, Preferred Law told me that it was sure it would be able to obtain a modification at better terms. No one at Preferred Law told me that if I stopped paying my mortgage, I might lose my home or damage my credit. Preferred Law instead instructed me to pay it instead of my mortgage.

23. In total, I paid Preferred Law thousands of dollars. To my knowledge, I never received any legal services. Preferred Law did not fulfill its promise of obtaining a modification for me that would lower my monthly payment. Instead, it obtained a modification for me on worse terms with a different lender without my consent. Right now, I am current on my mortgage, but it has been a struggle because of the increased payment.


I declare under penalty of perjury that the foregoing is true and correct.

Executed in Modesto, California this 15 day of December 2017.


Renée Crawford

# Attachment A

M Gmail

Renee Crawford ▉▉▉▉▉▉▉▉

## Modification Documents
1 message

Deanne Mosher <dmosher@modificationreviewboard.com>

Tue, Apr 26, 2016 at 9:16 AM

To: Renee Crawford ▉▉▉▉▉▉▉▉▉

It was a pleasure to talk with you about your mortgage modification and I look forward to helping you.

Please find the following forms attached:

1) Borrower's Authorization (complete & return)

2) Payment Form (complete & return)

3) Service Agreement (complete & return pages 1,7&10)

4) Guarantee (complete & return pg 2)

5) Fax Coversheet

Make sure that the person who's name is on the credit or debit card is the one who signs the payment form.

Please print documents. Fill in your billing information, including the payment method then fill out all other requested information, sign and date documents and return them immediately to me by one of the following methods. Fax it to:(888)334-7255 or scan and email (Camscanner - free smart phone app/crop the picture so only the paper is showing). Once the forms are received work will start immediately on your modification, which will protect you from your lender foreclosing or harassing you in any way.

Overview:

American Home Loan Counselors (AHLC) is a non profit agency that will be processing your modification at no charge to you. In conjunction with Benjamin Horton esq, they conduct a Forensic Audit to secure the best terms and conditions. There are no upfront fees for legal services. A crisis fee will be necessary if a sale date is set by lender prior to entering modification review.

Within the first two weeks of receiving your paperwork, AHLC will be doing a Verification of Mortgage Information (VMI) as well as gathering documents from you to submit your file for modification.

Gmail - Modification Documents

In addition, as way of review, you are not ever paying the attorney your scheduled payment while making a mortgage payment. If your modification is granted before your scheduled payments are completed, the attorney will revise the payments to ones you can afford.

—

*Best Regards,*

*Deanne Mosher*
*Senior Modification Advisor*

*888-980-7203  Direct Toll Free*

*801-938-5022 Local*

*888-334-7255 Fax Number*

Preferred Law success stories:  http://www.attorneyloanmodifications.com/success-stories/

Preferred Law "A+" Rating with BBB: http://www.bbb.org/utah/business-reviews/attorneys-and-lawyers-litigation/preferred-law-pllc-in-sandy-ut-22312123/

American Home Loan Counselors: https://secure.utah.gov/bes/details.html?entity=8445150-0140

Preferred Law Attorney Benjamin
Horton: https://services.utahbar.org/MemberDirectory/Profile/customercd/11452

**6 attachments**

 **Fax Coversheet.pdf**
146K

**LETTER of GUARANTEE_Renee Crawford.pdf**
257K

**Payment Form _Renee Crawford.pdf**
466K

**Service Agreement_Renee Crawford.pdf**
513K

**BA American Home Loan Counselors.pdf**
293K

**FA EXPLANATION.pdf**
387K

| Modification Review Board | phone: 801-938-5022 Fax 888-334-7255 |
| 9035 S 700 E, Ste. 203 Sandy UT 84070 | www.modificationreviewboard.com |



| To: Deanne Mosher | From: Reneé Crawford |
| Phone: 888-980-7203 | Phone: ▮▮▮-▮▮▮-▮▮ |
| Fax: 888-334-7255 | Date: 4-26-2016 |
| Email: dmosher@modificationreviewboard.com | Pages: 7 |

Comments:

Please Call me when you receive these documents.

Thank you,

Reneé Crawford.



American Home Loan Counselors
A NONPROFIT CORPORATION

Kenneth.m.lehmann@citi.com
Home Specialist
Kenneth M Lehmann

## Borrower's Authorization

Date: **4-26-2016**      Mortgage Loan Number: 

Name of First Lender **Citi Mortgage 1-800-**

The undersigned borrower(s) do hereby appoint **American Home Loan Counselors**, acting by and through its employees, staff and agents, as the authorized agents of the undersigned and to negotiate and act on behalf of the undersigned with respect to avoiding foreclosure of the following real property:

Address of Property 

City, State, Zip **Modesto CA**

As necessary to carry out the above, **American Home Loan Counselors**, acting by and through its employees, staff and agents, are expressly authorized, on behalf of the undersigned, to:

1. Communicate with my creditors, home lender, and financial institutions to obtain any and all information regarding my accounts or debts that I may owe, including for example the account balances, payment history, verification of the account and any other information necessary to allow **American Home Loan Counselors** to evaluate and formulate settlement, modification relief services, or payment offers on my behalf.

2. Make good faith settlement or payment offers on my behalf. This authorization shall expire six (6) months from the date above unless rescinded in writing prior to that date.

Borrower:                                          Co-Borrower:

**Reneé Crawford**                                 Signature
Signature

**Reneé Crawford**                                 Printed Name
Printed Name                                       N/a

Social Security Number                             Social Security Number

Date of Birth                                      Date of Birth

Please be advised the following individuals are authorized REPRESENTATIVES of **American Home Loan Counselors** that can be reached at (801) 386-5100:  ○ Jonathan Hanley ○ Bobbi Collins ○ Shannon Martinez ○ Rebecca Peace ○ VerNelta Clark ○ Mia Apche ○ Brianne Whitmire ○ Misty Frampton ○ Ali Parkinson ○ Ana Amaya ○ Cameron James ○ Cassie Rasmussen ○ Stefanie Chacon

American Home Loan Counselors
8180 S 700 E STE 110
Sandy, Utah 84070-0564
(801) 386-5100
(888) 334-7255

I (We), the borrower(s) and homeowner(s), affirm that I (we) have received, read, and understand the foregoing agreement, and agree to the terms thereof.

**Borrower:**

Date: 4-26-2016

Sign here ▷ *Reneé Crawford*

Client Name: Reneé Crawford

**Co-Borrower:**

Date: _____

Sign here ▷ _____

Client Name: _____



## PREFERRED LAW

### Payment Form

**Modification Review Board Representative:** D. Mosher

Renee Crawford

Modesto CA

**Billing Information:**

Name of person on Card: Reneé Crawford

Card Type: Visa, MasterCard, Discover:

Daily Limit on Card, if none write NONE: None

Card Number:

Expiration:

Code:

**Payment Schedule:**

|   | Date | Amount |
|---|------|--------|
| 1 | 5/2/16 | $650.00 |
| 2 | 6/2/16 | $650.00 |
| 3 | 7/2/16 | $650.00 |
| 4 | 8/2/16 | $650.00 |
| 5 | 9/2/16 | $650.00 |
| 6 | 10/2/16 | $650.00 |
|   | Total | $3900.00 |

**Signature of person on the card/bank account:**

Date: 4-26-2016          Sign here ▷ Reneé Crawford

**Chargeback Policy:** As described in the "Limited Services Agreement," if you use your credit card to fund our services, YOU AGREE NOT TO CHARGEBACK YOUR CARD for any reason. If you are dissatisfied, you must follow the refund or return for credit policy and procedures set forth in our working agreement that you have signed. Preferred Law, PLLC does NOT GUARANTEE that we can reach a solution that will necessarily be one you agree with. In the event that you breach this clause and chargeback your credit card, you agree that liquidated damages of $250 shall be applied to your account in addition to all other remedies provided in the "Limited Services Agreement" and under Utah law.

1 | Page
Payment Form

PREFERRED LAW, PLLC •2825 E COTTONWOOD PKWY •STE 500 •SALT LAKE CITY, UT 84121
Phone (388) 508-7457• Fax (816) 33 : 7255• www.preferredlawutah.com



**PREFERRED LAW**

April 26, 2016

Renee Crawford
█████████████
Modesto CA ████

Re: Fee and Representation Agreement

Dear Renee ,

Thank you for choosing the law firm of Preferred Law, PLLC to assist you in protecting your homeowner rights pursuant to certain federal statutes and programs.  Fundamental to a sound relationship is a clear understanding of the terms and conditions upon which we will be providing federal homeowner relief services.  Please read this representation agreement (the "Agreement") carefully as this Agreement constitutes a binding contract.  Should you disagree with any of the terms of this Agreement, you must notify Preferred Law, PLLC as soon as practicable so such terms may be meaningfully negotiated.

This Agreement is entered into between the law firm of Preferred Law, PLLC ("Preferred Law") and the following borrower and co-borrower:



| | **Borrower** | **Co-Borrower** |
|---|---|---|
| Name | Renée Crawford | |
| Address | █████ | |
| City, State, Zip | Modesto, CA | n/a |
| Phone Number | █████ | |
| E-mail | █████ | |

IN CONSIDERATION of the promises and covenants of the parties to this Agreement, the above-named borrower and co-borrower(s) (collectively referred to as "Borrower") and Preferred Law hereby agree as follows:

1. **Services and Fees – Federal Services Only.**  Borrower hereby appoints Preferred Law as Borrower's agent to analyze his or her federal case, prepare documents, and speak with the Borrower's lender or other person/entity servicing Borrower's account only as provided in this Agreement.  The services and fees are set out in detail below and in Addendum A of this Agreement, which is incorporated herein.  Borrower AGREES to the services and fees identified in Addendum A.  All fees will be charged monthly but will never exceed the amount chargeable for work that has already been completed by Preferred Law.
   All state related matters related to Borrower's case, if any, will be immediately forwarded, with Borrower's permission, to local counsel and will not be governed by the terms of this agreement.  Borrower acknowledges and agrees that Preferred Law only analyzes, consults, and determines Borrower's federal rights and protection identified under federal law, including the

1 | P a g e
Retainer Agreement



Equal Credit Opportunity Act (ECOA), Fair Credit Reporting Act (FCRA), Real Estate Settlement Procedures Act (RESPA) and the Truth In Lending Act (TILA), Making Home Affordable Program (MHA), Home Affordable Modification Program (HAMP), FHA-HAMP, Home Affordable Foreclosure Alternatives Program (HAFA), Home Affordable Refinance Program (HARP), Home Affordable Unemployment Program (UP), Second Lien Modification Program (2MP), Treasury/FHA Second Lien Program (FHA2LP), and other federally derived programs and laws. These services also include the drafting of any necessary Qualified Written Request pursuant to the TILA 15 U.S.C. § 1601, et seq., the Fair Debt Collection Practices Act (FDCPA) and RESPA, codified as Title 12 § 2605 (e)(1)(B) and Reg. X § 3500.21(f)2 of the United States Code, and the subsequent analysis and review of all documentation supplied by the lender.

PREFERRED LAW ONLY REPRESENTS THE BORROWER WITH RESPECT TO HIS OR HER FEDERAL RIGHTS.  IN ACCORDANCE WITH STATE AND FEDERAL LAW, PREFERRED LAW DOES *NOT* PERFORM THE FOLLOWING SERVICES: FORECLOSURE RESCUE AND PREVENTION SERVICES, LOSS MITIGATION SERVICES, FORECLOSURE CONSULTATION, LOAN MODIFICATION ASSISTANCE, MORTGAGE LOAN ORIGINATION AND SERVICING, MORTGAGE ASSISTANCE RELIEF SERVICE, DEBT NEGOTIATION OR ADJUSTMENT, OR OTHER STATE RELATED RELIEF.  PREFERRED LAW IS NOT ASSOCIATED WITH THE GOVERNMENT AND OUR SERVICES HAVE NOT BEEN APPROVED BY BORROWER'S LENDER.  ALL MORTGAGE ASSISTANCE RELIEF SERVICES, IF ANY, ARE DIRECTED TO AMERICAN HOME LOAN COUNSELORS, A NONPROFIT CORPORATION, AN ALTERNATIVE COMPETENT MORTGAGE ASSISTANCE RELIEF SERVICE IN ACCORDANCE WITH 12 C.F.R. PART 1015 (REGULATION O), A HUD APPROVED HOUSING COUNSELING AGENCY, OR LOCAL COUNSEL, WHICH SHALL NOT BE GOVERNED BY THE TERMS OF THIS AGREEMENT UNLESS STATED OTHERWISE.  BORROWER MAY AT HIS OR HER OPTION SELECT AN ALTERNATIVE MORTGAGE ASSISTANCE RELIEF SERVICE OR NONPROFIT AT ANY TIME TO ASSIST BORROWER.  BORROWER AGREES PREFERRED LAW MAY ENGAGE THE SERVICES OF, AND RELEASE BORROWER'S FINANCIAL AND OTHER CONFIDENTIALY INFORMATION TO AMERICAN HOME LOAN COUNSELORS, LOCAL COUNSEL, OR OTHER MORTGAGE ASSISTANCE RELIEF SERVICE ON BEHALF OF BORROWER AS PREFERRED LAW DEEMS NECESSARY UNLESS DIRECTED OTHERWISE BY BORROWER IN WRITING.  BORROWER ACKNOWLEDGES AND AGREES THAT PREFERRED LAW IS AN ENTIRELY SEPARATE ENTITY FROM AMERICAN HOME LOAN COUNSELORS, MODIFICATION REVIEW BOARD, LLC, HUD APPROVED COUNSELING AGENCIES, AND BORROWER'S LOCAL COUNSEL.  BORROWER ACKNOWLEDGES AND AGREES THAT PREFERRED LAW SHALL NOT BE GOVERNED BY ANY PROMISES OR GUARANTEES MADE BY ANY OTHER ENTITY, AND ANY CLAIM BY BORROWER RELATED TO ANY PURPORTED PROMISES OR GURANTEES SHALL BE DIRECTED TO SUCH OTHER ENTITY AND NOT PREFERRED LAW.

2.   **Limited Scope of this Agreement in Predatory Lending Demand Letter Cases.**  Where Preferred Law has agreed that there is a basis for submitting a verified complaint and demand letter pursuant to federal law, Preferred Law agrees that this Agreement shall include specific follow-up negotiations that are precipitated by the demand letter.  However, the commencement of actual litigation in the form of a court or arbitration filing of the complaint and service on the defendant is NOT covered by this Agreement and will be handled through local counsel only.

PREFERRED LAW, PLLC ● 2825 E COTTONWOOD PKWY ● STE 500 ● SALT LAKE CITY, UT 84121
Phone: (888) 980-7457 ● Fax: (888) 336-7255 ● www.preferredlawteam.com



Preferred Law litigation attorneys are licensed to litigate in the States of Utah and Texas, but may work with co-counsel in other states in which affiliated attorneys are present. Borrower understands and agrees that co-counsel, if any is required, will likely charge fees to Borrower in addition to Preferred Law, particularly if any litigation, bankruptcy, or state-matter representation is required

3. **Borrower's Obligations.** Borrower AGREES to the following:

   a. Borrower shall immediately notify Preferred Law if Borrower receives telephone calls, e-mails or any other correspondence from his or her lender or lender's attorney(s). Although Borrower is free to communicate with his or her lender at all times, Borrower should direct any and all communications from his or her lender to Preferred Law. Borrower hereby certifies that he or she does not have a sale date, except as set forth previously in this Agreement.

   b. Borrower shall provide Preferred Law with accurate and current financial information and financial history as requested by Preferred Law and shall cooperate with ongoing requests. Borrower agrees to submit the completed Preferred Law financial package within ten (10) days from the date of this Agreement (or such time frame agreed upon in writing between Borrower and Preferred Law).

   c. Borrower shall make all payments in accordance with the payment schedule identified in Addendum A. Borrower acknowledges that any rejected or delayed payments will result in a fee payable to Preferred Law in the amount of $25 for each NSF payment and a $25 fee for payment rescheduling. No payment rescheduling shall be authorized within 5 days before the payment date. Borrower agrees to pay a late fee of $50 for each payment not received within 30 days from the due date of the payment.

   d. Borrower agrees that should Borrower use a credit card to pay for Preferred Law's services, BORROWER AGREES NOT TO CHARGEBACK THE CARD for any reason. Borrower agrees that Preferred Law makes NO GUARANTEE of services. In the event that Borrower breaches this provision and chargebacks his or her credit card, Borrower agrees that liquidated damages of $250 shall be applied to Borrower's account in addition to all other remedies provided in this Agreement and under law.

   **Failure to meet any of these obligations may negatively affect the outcome of this representation.** Preferred Law may attempt to provide the services set forth under this Agreement even if Borrower has failed to meet the obligations set forth above. Borrower agrees that he or she solely bears the responsibility for providing accurate and timely information and documents as set forth above.

4. **Withdrawal from Representation.** Preferred Law reserves the right to IMMEDIATELY withdraw from representation or place Borrower's file on hold if, among other things, Borrower fails to

<div align="right">
3 | Page<br>
Retainer Agreement
</div>

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (888) 980-7457 • Fax: (888) 934-7255 • www.preferredlawteam.com

PX23 - 19



honor the terms of this Agreement, including non-payment or untimely payment to Preferred Law and/or court filing fees; failure to cooperate with or follow advice on a material matter, or if any fact or circumstance arises that would render continuing representation unlawful or unethical or in violation of the Utah Rules of Professional Conduct.  Upon withdrawal, Preferred Law shall be entitled to any and all fees earned to that point, including fees necessary to close Borrower's account, and shall return any and all unearned fees to Borrower.  Notwithstanding the above, Preferred Law shall only withdraw from representation as strictly permitted under the Utah Rules of Professional Conduct.

5. **Confidentiality.**  Borrower agrees to not disclose to third parties, other than Borrower's attorney(s) or financial advisor(s), any information obtained from Preferred Law, including the forms used in this transaction or other proprietary information obtained from Preferred Law in the course of receiving service from Preferred Law.

6. **Limited Legal Advice.**  Borrower does not anticipate, and does not hereby authorize, Preferred Law to represent Borrower in any litigation, lawsuit or other court proceeding, or to provide any tax advice unless otherwise agreed to in a separate agreement.  Unless otherwise agreed to in writing and signed by the parties, Preferred Law will *not* be assisting, representing, or forming an attorney-client relationship with Borrower in any manner or capacity *except* with respect to those federal matters discussed above.  This Agreement does NOT cover other related claims that may arise and may require legal services (e.g., lender lawsuits, insurance disputes, collection defense, tax advice, bankruptcy, etc.).  Non-attorney representatives of Preferred Law, including agents who communicate with Borrower are not authorized to give legal advice, whether relating to bankruptcy or other legal issues.

7. **No Guarantee of Success.**  Borrower understands that Preferred Law does NOT GUARANTEE that a foreclosure sale will be stopped or that Preferred Law will otherwise help Borrower reach a desirable outcome.  Borrower understands and agrees that representation by Preferred Law will not necessarily result in stopping the foreclosure sale.  Borrower acknowledges that Preferred Law has made no promises about the outcome and that any opinion offered by Preferred Law or any other entity will not constitute a guaranty.

8. **Limitation of Liability.**  <u>Borrower and Preferred Law agree that any claim for damages by Borrower against Preferred Law (which shall include for purposes of this paragraph American Home Loan Counselors and Modification Review Board, LLC) for any reason shall be strictly limited only to the FEE paid by Borrower to Preferred Law pursuant to this Agreement.</u>  Preferred Law makes NO WARRANTY, express or implied, except as expressly stated in this Agreement.  Borrower hereby expressly waives all warranties, express or implied, except as expressly stated in this Agreement.  Borrower also expressly waives any right to claim damages against Preferred Law, whether consequential or incidental, except for damages not exceeding the FEE actually paid by Borrower.  Borrower expressly acknowledges Preferred Law has made no such promises or guarantees of results.

4 | P a g e
R e t a i n e r   A g r e e m e n t

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (888) 980-7457 • Fax: (888) 334-7255 • www.preferredlawteam.com

PX23 - 20



BORROWER ACKNOWLEDGES THAT HE OR SHE HAS HAD ADEQUATE TIME TO SEEK INDEPENDENT COUNSEL AND IS NOW CURRENTLY REPRESENTED IN MAKING THIS AGREEMENT IN LIMITING PREFERRED LAW'S POTENTIAL MALPRACTICE AND OTHER LIABILITY TO BORROWER.

9. **Paperless Documents, E-mail, and Signatures.** Preferred Law is committed to reducing waste and as such, conducts significant business via electronic, paperless means. Therefore, the parties mutually understand and agree that signature of a facsimile copy and electronic signature shall be deemed authentic and original for all lawfully enforceable purposes. Further, Borrower agrees to receive any and all correspondence and communications from Preferred Law via e-mail and grants Preferred Law authority to sign, electronically or otherwise, routine documents that relate to the scope of representation on Borrower's behalf. Borrower AGREES that Preferred Law, including its attorneys, agents, representatives, and employees, may communicate with Borrower or send information to Borrower me via e-mail. Borrower acknowledges any and all risks inherent with electronic communications and releases, discharges, acquits and forgives Preferred Law, including its attorneys, agents, representatives, and employees, from any and all claims, actions, suits, and demands due to disclosure or theft of Borrower's identify or information.

10. **Amendments.** This Agreement, including all Addendums, may not be superseded, amended or added to except by a separate agreement in writing, signed by the parties hereto, or their respective successors-in-interest.

11. **Indemnity.** So far as permitted under law, Borrower agrees to indemnify and hold Preferred Law (including American Home Loan Counselors and/or Modification Review Board, LLC) harmless from any and all liability, loss or expenses (including attorney's fees and costs) arising out of or relating to the real property identified herein, Borrower's lender arrangement, or the services provided by Preferred Law for Borrower pursuant to this Agreement.

12. **Interpretation/Applicable Law/Venue.** This Agreement is made in Salt Lake County, Utah, and shall be construed pursuant to the laws of the State of Utah, without reference to any conflict of laws provisions and/or procedures which may otherwise apply. Subject to the small claims court and arbitration provisions below, the parties to this Agreement (including American Home Loan Counselors and/or Modification Review Board, LLC) further agree that the venue for the resolution of any dispute between the parties arising out of this Agreement shall be proper only in Salt Lake County, Utah.

13. **Collection.** Notwithstanding any other Section of this Agreement, should Borrower fail in any manner to timely pay Preferred Law for its services as described in this Agreement and Addendum A, Borrower AGREES to pay any and all attorney's fees and costs, incurred by Preferred Law or any other authorized collection entity in collecting the same. Borrower AGREES that Preferred Law or its authorized agent may use any and all personal, employment, financial, confidential, and other information supplied by Borrower to Preferred Law, including



information obtained from Borrower's lender(s), financial institution(s), family, etc., in pursuing collection against Borrower.

14. **Partial Invalidity.** If any court of competent jurisdiction holds any sentence, term, or provision of this Agreement to be illegal or invalid, said sentence, term, or provision shall be deemed to be severed and deleted; such deletion shall not affect the validity of the remaining terms and provisions of this Agreement.

15. **Lien.** To the fullest extent permitted under Utah and federal law, and pursuant to Utah Code Ann. § 38-2-7, commencing on the date of Borrower's signature and acceptance below, Preferred Law is hereby given a lien for the balance of compensation due from Borrower on any money or property owned by Borrower, including Borrower's home, that is the subject of or connected with work performed by Preferred Law for Borrower, including but not limited to: (a) any real or personal property that is the subject of or connected with the work performed for Borrower; (b) any funds held by Preferred Law for Borrower, including any amounts paid as a retainer to Preferred Law; and (c) any settlement, verdict, report, decision, or judgment in Borrower's favor in any matter or action in which Preferred Law assisted, including any proceeds derived from the matter or action, whether or not Preferred Law is employed by Borrower at the time the settlement, verdict, report, decision, or judgment is obtained. Borrower AGREES that any amounts received by Preferred Law related to Borrower's matter may be first applied towards any and all outstanding fees and costs incurred on Borrower's behalf prior to any disbursement to Borrower.

16. **Small Claims Court and Arbitration.** Excluding collection proceedings against Borrower as described in Section 13 above, any and all disputes between the parties, including malpractice claims, *shall* be resolved by submission to and litigation in the SMALL CLAIMS DIVISION OF THE SALT LAKE COUNTY JUSTICE COURT OF UTAH. If for any reason the dispute is not within the jurisdiction of the Small Claims division of the Salt Lake County Justice Court of Utah, then the dispute *shall* be resolved by *binding* arbitration in Salt Lake City, Utah, without appeal, and any award rendered thereunder may be entered in any court of competent jurisdiction. Excluding collection proceedings against Borrower as described in Section 13 above, the prevailing party shall be awarded attorney's fees and costs as set by the court or arbitrator but in no manner shall such amount exceed $2,000 total.

EXCLUDING MATTERS SUBJECT TO THE JURISDICTION OF THE SMALL CLAIMS DIVISION OF THE SALT LAKE COUNTY JUSTICE COURT DESCRIBED ABOVE, BORROWER AGREES TO HAVE ANY AND ALL DISPUTES ARISING OUT OF THE MATTERS DESCRIBED IN THIS AGREEMENT, INCLUDING MALPRACTICE CLAIMS AND ALL CLAIMS AGAINST MODIFICATION REVIEW BOARD, LLC AND AMERICAN HOME LOAN COUNSELORS, DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY UTAH OR FEDERAL LAW AND BORROWER IS GIVING UP ANY RIGHT BORROWER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT, JURY TRIAL, OR BY CLASS ACTION. IF BORROWER REFUSES TO SUBMIT TO ARBITRATION, BORROWER MAY BE COMPELLED TO ARBITRATE UNDER UTAH LAW AND PREFERRED LAW SHALL BE AWARDED ALL ATTORNEY'S FEES AND COSTS IN

6 | Page
Retainer Agreement

PX23 - 22



## PREFERRED LAW

COMPELLING THE SAME NOTWITHSTANDING ANY OTHER PROVISION.  BORROWER HAS READ AND UNDERSTANDS THE FOREGOING SECTION AND HEREBY AGREES TO ITS TERMS.

17. **Legal Representation.**  Borrower acknowledges and represents that he or she has had reasonable opportunity to seek independent legal counsel and is currently represented by independent counsel in signing this Agreement.

18. **Entire Agreement.**  This Agreement and any follow-on addendums, including Addendum A, constitute the entire agreement between the parties relating to the transactions contemplated hereby and all other prior or contemporaneous agreements, promises, claims, understandings, representations and statements, oral or written, are merged into this Agreement.  By signing below, Borrower is AGREEING to all of the Phases identified in Addendum A. Borrower may agree to additional phases of work through execution of additional addendums.

**NOTICE TO BORROWER.** It is not necessary to pay a third party to arrange for a loan modification or other form of forbearance from Borrower's mortgage lender or servicer. Borrower may call his or her lender directly to ask for a change in loan terms. Nonprofit housing counseling agencies also offer these and other forms of borrower assistance free of charge. A list of nonprofit housing counseling agencies approved by the United States Department of Housing and Urban Development (HUD) is available from a local HUD office or by visiting www.hud.gov. Preferred Law is not associated with the government, and Preferred Law's federal legal services have not been approved by the government or Borrower's lender. Borrower's lender may not agree to change Borrower's loan; and if Borrower stops paying Borrower's mortgage, Borrower could lose Borrower's home and damage Borrower's credit rating.  Borrower acknowledges that Preferred Law encourages Borrower to make timely mortgage payments at all times in accordance with Borrower's agreement with his or her lender.

I (We), the borrower(s) and homeowner(s), affirm that I (we) have received, read, and understand the foregoing agreement, and AGREE to the terms thereof.

Borrower:

Date: 4-26-2016          Sign here ▷ _Reneé Crawford_

Client Name: _Reneé Crawford_

Co-Borrower:

Date: _____     Sign here ▷ _____

Client Name: _____

PREFERRED LAW, PLLC • 2825 E COTTONWOOD PKWY • STE 500 • SALT LAKE CITY, UT 84121
Phone: (888) 980-7457 • Fax (888) 384-7255 • www.preferredlawteam.com



(Addendum to "Limited Services Agreement")

The federal legal services provided by Preferred Law, PLLC ("Preferred Law") are roughly divided into four phases and the principal fees for those services are due upon completion of each phase.  No upfront fees are required.  The payment arrangement may be broken into multiple payments depending on circumstances as agreed to by Preferred Law in writing.  Funds paid to Preferred Law may in its discretion be disbursed immediately or be held in a trust account governed by Utah law until such fees are earned by and disbursed to Preferred Law as described below.

### Phases and Estimated Value of Services

**Phase 1 – Preliminary Legal Review; File Underwriting**

Initial consultation and review.  Preliminary federal legal review of the file.  Initial attorney review.  Attorney or paralegal phone consultation.  Underwriting of the file based on financial ratios for conformity to federal and/or lender specific guidelines and known policies and tolerances.  Review and analysis of possible federal predatory lending issues and review of forensic audit if applicable.  Borrower financial review.  Submission of Borrower's documentation and information to a Mortgage Assistance Relief Service (e.g., American Home Loan Counselors, a nonprofit corporation, HUD Approved Housing Counseling Agencies, and/or local counsel) for submittal and/or escalation.

**Estimated Value of Service        $974**

**Phase 2 – Application and Processing Assistance**

If necessary, submittal of cease and desist letter, Borrower's Authorization letter, and if applicable, RESPA & TILA letters.  Preparation and submittal of package to a Mortgage Assistance Relief Service or nonprofit entity based on federal and/or lender specific guidelines, including analysis and compilation of income verification (e.g. profit and loss statements), expenses, etc.  Review by Preferred Law attorney for federal eligibility and compliance.  Attorney review for alternative federal legal options.  Cooperation with Mortgage Assistance Relief Service, nonprofit entity, and/or local counsel for processing of Borrower's application.

**Estimated Value of Service        $974**

**Phase 3 – Verification and Supplemental Submissions**

Secure confirmation that the package has been received and is in active review.  Preparation and submittal of other necessary documents as needed including a Qualified Written Request pursuant to federal law.  Develop dialogue with Borrower and lender to ensure that loss mitigation process continues unabated with Mortgage Assistance Relief Service.  Review of

8 | P a g e
Retainer Agreement

PREFERRED LAW, PLLC ● 2825 E COTTONWOOD PKWY ● STE 500 ● SALT LAKE CITY, UT 84121
Phone: (888) 980-7457 ● Fax: (808) 334-7755 ● www.preferredlawteam.com

PX23 - 24



Mortgage Assistance Relief Service's preparation and submittal of supplemental or additional modification packages and income verification as required by the lender.

Estimated Value of Service        **$974**

**Phase 4 – Tender of Demand Letter with Verified Complaint**

Review and analysis of the documentation provided through Qualified Written Request. Collecting and submitting additional or updated information.  If Preferred Law has agreed to take the matter on as a preliminary federal predatory lending case, research and prepare a verified predatory lending complaint and cover demand letter through local counsel as necessary.  Tender of the verified complaint and demand letter and specific follow on negotiations as limited and set forth in the "Limited Services Agreement."

Estimated Value of Service        **$974**

A.  <u>Notice Regarding Compliance with Applicable State Law</u>.  By signing this agreement, Borrower is agreeing to pay the above fees upon completion of service.  No advance fee is required. Borrower must provide a completed Payment Form (included herein); however payment shall be due or processed in accordance with the dates on the Payment Form.

B.  <u>Purpose of Fees</u>.  Borrower acknowledges, understands, and agrees that Preferred Law will use the aforementioned fees and costs for legal services rendered by Preferred Law and <u>such fees will not be used to pay Borrower's escrow or mortgage payment or for other purposes</u>.  Preferred Law's fees are separate from those of local counsel.

C.  <u>Limited Availability of Refund</u>.  The aforementioned fees are due only after the agreed upon work has been completed or the associated costs or expenses have been incurred and are not advance fees.  Fees charged are not in any way predicated upon success of Preferred Law's services. Preferred Law believes in earning fees through persistent efforts and work performed, before billing Borrower for that work.  In many cases, success of Preferred Law on behalf of borrower depends on the actions and decisions of third parties and may be outside of the control of Preferred Law. Additionally, programs and financial institutions may frequently change policies without notice.  A refund will not be available in cases where duplicative efforts and/or increased time and resources are required.

D.  <u>Payment Dates are Approximate</u>.  The payment dates listed on the Payment Information Form and within this Agreement are approximate.  Actual payments generally will usually be charged within three business days of the date listed.  This allows for delays due to unavailability of funds, holidays, weekends and unanticipated technical issues.  Please ensure that funds are available for the scheduled payment well in advance (at least 3 days) of the payment date(s) listed and remain available after that date.  Please also refer to the NSF and Payment Chargeback sections contained in the Payment Information Form and this Agreement for more information.

9 | P a g e
R e t a i n e r   A g r e e m e n t



E.  <u>Document and Preparation Fees</u>.  Borrower is responsible for payment of document and preparation fees for each work in which work is performed by Preferred Law.  This fee covers the monthly expenses and costs such as facsimiles, photocopies, courier fees, mailing costs, long-distance telephone calls, file maintenance and other miscellaneous document and preparation costs associated with ongoing efforts on Borrower's behalf.  In most cases, a loan work-out, as arranged through a Mortgage Assistance Relief Service or nonprofit entity, has been agreed to within the first five months of representation under this agreement.  However, work may, due to third party delays, continue past that time period due to circumstances beyond the control of Preferred Law.  In such cases, the document and preparation fees are increased to reflect increased expenses associated with the maintenance of long-term representation.

If necessary, the document and preparation fees (after payment of the phases above) will be **$297 monthly beginning after the end of the payment schedule date of this Agreement.**

F.  <u>10% Reduction of Principal Contingency Fee</u>.  If applicable, **American Home Loan Counselors** (not Preferred Law) may negotiate to reduce or discharge the secured debt including a second mortgage attached to your property.  Only if American Home Loan Counselors is successful and you agree to the lender's offer, you AGREE to pay a contingency fee to American Home Loan Counselors or its assigns in the amount of 10% of the total debt forgiven as a result of the negotiation with respect to the property.  This Debt Reduction Contingency Fee must be paid over a period not to exceed five years in equal monthly payments at 4% annual interest.  American Home Loan Counselors and Preferred Law make no guarantees or claims regarding the potential tax consequences of debt forgiveness.

I (we) the undersigned person(s) hereby agree to the <u>10% Reduction of Principal Contingency Fee</u> described above.

Borrower's Initials:  _RC_          Co-Borrower's Initials:  _N/A_

I hereby acknowledge that I have read and understand all of the terms and conditions set forth in this agreement/addendum and do AGREE to them.

**Borrower:**
Date: _4-26-2016_          Sign here ▷  _Renee Crawford_

Client Name:  _Reneé Crawford_

**Co-Borrower:**
Date: _____          Sign here ▷  _____

Client Name:  _____

PREFERRED LAW, PLLC ● 2825 E COTTONWOOD PKWY ● STE 500 ● SALT LAKE CITY, UT 84121
Phone: (918) 930-742 / ● Fax: (828) 334-7255 ● www.preferredlawteam.com

PX23 - 26



## EXPLANATION OF RETAINER AGREEMENT FEES

The process is broken down into 4 Phases.

This retainer fee agreement is to disclose under Utah Law, the value cost of services and is for the purpose of stating you retained our services.

This is separate from the payment schedule you signed with your advisor.
**However, these ARE NOT additional fees.**
**The 974.00 is stating the VALUE.**

Your actual payments you make have already been agreed by you and your advisor.

I need this retainer signed and scan and email, or faxed back to me.
If you have further questions, please call me at 801-386-5100 ext 202.

Shannon Martinez
Manager
Preferred Law, PLLC

April 26, 2016

Modification Review Board, LLC
9035 S 700 E, Ste. 203
Sandy, UT  84070

Renee Crawford

Modesto CA

Re:  Service Guarantee Agreement

Dear Renee,
Modification Review Board, LLC ("MRB") welcomes you.  The law firm of Preferred Law has agreed to submit a Qualified Written Request on your behalf and begin performing its federal review services as documents are received from your lender.  Preferred Law's services are identified in its fee agreement.  Once your information is received, and unless you direct otherwise in writing, American Home Loan Counselors will initiate your modification services and will be your primary contact throughout the process.

Based on the past performance of American Home Loan Counselors with the assistance of Preferred Law's federal legal services, and our knowledge of your factual situation, MRB hereby GUARANTEES that a modification or home foreclosure alternative pursuant to the HAFA program will be secured for you conditioned upon the following terms:

☐ You allow American Home Loan Counselors to process the modification and you promptly cooperate with Preferred Law and American Home Loan Counselors at all times.

☐ All communications from your lender, if any, are immediately forwarded to Preferred Law.

☐ All documents will be returned when requested by the deadlines given.

☐ There will be no significant changes to your current circumstances.

☐ All relevant information provided by you is entirely accurate and complete.

☐ All payments to Preferred Law are made on time per the Payment Schedule.

☐ You recognize that this guarantee is from MRB.

☐ Any and all disputes between the parties related to this agreement and MRB shall be resolved by binding arbitration in Salt Lake City, Utah, without appeal.  You agree that any claim for damages by you against MRB for any reason shall be strictly limited only to only the fee paid by you to Preferred Law.

☐ This agreement constitutes the entire agreement between the parties relating to the transactions contemplated hereby and all other prior or contemporaneous agreements, promises, claims, understandings, representations and statements, oral or written, are merged into this agreement.

Jonathan Hanley
General Manager

PX23 - 28

# Attachment B

**Renee Crawford**

| | |
|---|---|
| **From:** | Renee Crawford < ████████████ > |
| **Sent:** | Monday, November 27, 2017 6:46 AM |
| **To:** | Renee Crawford |
| **Subject:** | Fwd: Smartsheet Discussion: Renee Crawford |

---------- Forwarded message ----------
From: Bobbi Collins via Smartsheet <user@smartsheet.com>
Date: Tue, Jun 7, 2016 at 2:04 PM
Subject: Smartsheet Discussion: Renee Crawford
To: < ████████████ >



Hello,

I am contacting you on behalf of the billing department at Preferred Law to remind you of the following payment that will be processed on WEDNESDAY JUNE 8, 2016, according to your payment agreement:

AMOUNT: $525.00

If your payment is declined or returned there will be a $25.00 fee added to your account. Any file with a payment hold will have a $50.00 fee added to the account to remove the hold.

Your payment will be processed using the bank account information that you provided and will be listed on your bank statement as one of the following:

* AM Property Management
* Preferred Law
* FMG Partners

If you have any questions regarding this payment please give the billing department a call at the number below. ANY RESCHEDULED PAYMENTS WILL HAVE A $50.00 CHARGE.

Please remember our Chargeback Policy: As described in the "limited Services Agreement" If you use your credit card to fund our services. YOU AGREE NOT TO CHARGEBACK YOUR CARD for any reason. If you are dissatisfied, you must follow the refund or return for credit policy and procedures set forth in our working agreement that you have signed. In the event that you breach this clause and chargeback your credit card, you agree that liquidated damages of $250 shall be applied to your Account in addition to all other remedies provided in the "Limited Services Agreement" and under Utah law.

Thank you,
Alli Parkinson
Preferred Law
888-980-7457 ext 235

| | |
|---|---|
| **Title:** | Renee Crawford |
| **Comments:** | adjusted payments accordingly to the 500.00 client requested also changed today's due date to 6.8.16 per her request and I added the fee |

bcollins@preferredlawteam.com on 06/02/16 1:55 PM

1

Called Renee, no answer. LVM stating that management is only able to lower payment to $500.00. Left my contact info.
aparkinson@preferredlawteam.com on 05/31/16 2:53 PM

Bobbi Collins
2:41 PM (10 minutes ago)

to Jonathan, Sandra, me
I HAVE YET TO HEAR BACK ON THIS.
SO THIS IS WHAT I ADVISE

ALI CALL HER AND LET HER KNOW THE LOWEST WE CAN GO IS $500
SHE MAKES PLENTY
aparkinson@preferredlawteam.com on 05/31/16 2:52 PM

Called Renee, she is frustrated that her payment can't be lowered to 100-200. She wanted to know what the lowest she can pay is. Told her I don't have a figure that is already approved, that she'd need to say what it is she can do and I'd reach out to management for approval. She said the most she could pay is $400.00 a month. Told her I'd be in touch as soon as I heard back from management.
aparkinson@preferredlawteam.com on 05/25/16 1:49 PM

Notes Entered By Role Date Notes Type Notes
Bobbi Collins
Email: bcollins@preferredlawteam.com Manager May 25, 2016 03:28 PM - EST
General renee just left a vm stating she needs to speak to billing asked for call back at ▮▮▮▮▮▮▮
aparkinson@preferredlawteam.com on 05/25/16 1:47 PM

Called Renee, no answer. LVM stating that we are not able to go that low. Left my contact info and requested callback.
aparkinson@preferredlawteam.com on 05/23/16 3:16 PM

Bobbi Collins
11:28 AM (3 hours ago)

to me
we cant go that low but see what we can do
---------- Forwarded message ----------
From: Cassie Rasmussen <info@mailer.theloanpost.com>
Current Update
1st Lien Loan # 11222548478
2nd Lien Loan #
Primary File Status New- May 23, 2016 12:09 PM
File Status
Notes Entered By Role Date Notes Type Notes
Cassie Rasmussen
Email: crasmussen@preferredlawteam.com Processor May 23, 2016 12:09 PM -
EST General Renee Crawford
Attachments10:07 AM (0 minutes ago)

to me
Good Morning Cassie,

I would like the firm to consider my monthly expenses that was submitted to you some time ago, and to review my dependents on all check stubs in order to pay monthly obligations. I need to reduce the amount of $600 to about $150 -$200 until some of these expense are reduced. I am doing my very best to obtain a second job to assist in this matter. Also, I received a medical statement from last year that is over $6,000 and will soon be in collection within the next 3 months. I

2

understand that I owe the firm and will do my best to make the necessary arrangement to pay the debt off. At this time, I'm asking that the amount of $600 not be deducted from the checking account on the 2nd of June 2016. Because that amount will not be available. Please contact me when you have determined an affordable payment arrangement.

Thank you,

Renee Crawford

aparkinson@preferredlawteam.com on 05/23/16 3:14 PM

Sent using **Smartsheet**, the online tool that helps coordinate anything, anytime, anywhere. Sent by bcollins@preferredlawteam.com

Unsubscribe from mailings that Renee Crawford sends using Smartsheet

3

# Attachment C

M Gmail

Renee Crawford <████████████████████>

## AMERICAN HOME LOAN COUNSELORS
4 messages

**Shannon Martinez** <smartinez@preferredlawteam.com>
To: ██████████████████

Mon, Jun 13, 2016 at 10:01 AM

Hello ,

Previously you were working with Cassie.

I will now be the point of contact moving forward on your file.

Any documents you need to send in, please email them or fax them to me.

I will contact you again after I have a chance to look over your file.

Please email me or call me with any questions you may have.

I look forward to speaking with you soon.

_

*---Thank you*

*--Shannon Martinez*
*Processing Manager*
*American Home Loan Counselors*

*8180 S 700 E #110*
*Sandy UT 84070*

*801.386.5100 EXT 202*
*888.224.6524 FAX*
*Hours of operation Monday-Friday 9am-5pm (MST)*

Confidentiality Notice: This message, including any attachment(s), may contain confidential information
protected by law. The information contained herein is for the sole use of the intended recipient(s). If you
have received this message in error, please contact the sender at the e-mail address listed above and
destroy all copies of the original message, including any attachments. Thank you.

**Renee Crawford** <████████████████>
To: Shannon Martinez <smartinez@preferredlawteam.com>

Tue, Jun 14, 2016 at 12:29 AM

Okay,  what do you need. I e-mail Cassie document sent to me by the mortgage company last week. Did
you get it?

Renée

Gmail - AMERICAN HOME LOAN COUNSELORS                    Page 2 of 2

[Quoted text hidden]

**Shannon Martinez** <smartinez@preferredlawteam.com>          Tue, Jun 14, 2016 at 9:38 AM
To: Renee Crawford <█████████████>

Hello Renee,

Yes, I did receive the letter, it was a notice of default, its a standard letter they send when someone is behind.

What I need from you at this time, is updated documents

May-June pay stubs
June gas or electric bill
April -May bank statements

also what is your Hire Date?

Let me know if you have any questions.

[Quoted text hidden]

**Renee Crawford** <█████████████>                          Tue, Jun 14, 2016 at 10:12 AM
To: Shannon Martinez <smartinez@preferredlawteam.com>

My hired date is 2/6/1995. I will have the item for you in the morning.

Renée

[Quoted text hidden]

# Attachment D



September 1, 2016

Renee Crawford

Modesto, CA

Re:    Outstanding Balance: $1900.00

Dear Renee:

It has been a pleasure assisting you and American Home Loan Counselors in enabling your combined efforts in obtaining your recent home loan modification.

Please be aware that your account has an outstanding balance in the amount of **$1900.00**.

We understand that paying your mortgage is a priority, and do not want to cause you difficulty in making those payments; however it is important that your account with us is paid off. Accordingly, please contact us in the next 10 days by telephone at **(801) 386-5100, Ext. 235** to set up a reasonable payment plan.   Please be aware that it is our intent to work with you.  We have worked with many others in developing affordable payment plans that meet their budget, and will be more than happy to work with you to set up an individualized payment plan.

Unfortunately, if you choose not to work with us, we will have no other option but to submit the delinquent account to collections. Should collections be pursued, you may be obligated to pay additional fees and expenses in accordance with the terms of the retainer agreement.  We certainly prefer to amicably work with you in setting up a reasonable payment plan and avoid these extra expenses.

We look forward to speaking with you.

Billing Department

---

**FAIR DEBT COLLECTION PRACTICES ACT NOTICE:**

THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Unless you dispute the validity of this debt within 30 days, it will be assumed to be valid. If you notify the above-named creditor in writing, within 30 days that you dispute this debt or any portion thereof, the creditor will obtain and mail to you verification of this debt or a copy of a judgment against you. Upon your written request within the 30 day period, the creditor, or the person or entity serving this notice, will provide you with the name and address of the original creditor, if different from the current creditor.

1 | P a g e

# Attachment E



September 8, 2016

Renee Crawford

▬▬▬▬▬▬▬▬
Modesto CA ▬▬▬▬

RE:    Conclusion of Federal Review Services

Dear Renee:

In accordance with our fee agreement, our services as a law office have concluded. According to our records. your file has been approved for a trial modification. American Home Loan Counselors will continue to monitor your trial modification until it is made permanent.

Please continue to send your file manager any correspondence that comes from your Lender.

Please call us with any questions or concerns you may have.

Sincerely,

Benjamin R. Horton
Attorney at Law

# Attachment F

**Renee Crawford**

**From:** Renee Crawford <█████████████
**Sent:** Monday, November 27, 2017 6:48 AM
**To:** Renee Crawford
**Subject:** Fwd: AHLC Payment Reminder

---------- Forwarded message ----------
From: Alli Parkinson via Smartsheet <user@smartsheet.com>
Date: Mon, Nov 21, 2016 at 8:13 AM
Subject: AHLC Payment Reminder
To: <​███████████████​>



Comments

Hello,

I am contacting you on behalf of the billing department at American Home Loan
Counselors (AHLC) to remind you of the following payment that will be processed on
WEDNESDAY NOVEMBER 23 2016, according to your payment agreement:

AMOUNT: $100.00

If your payment is declined or returned there will be a $25.00 fee added to your
account. Any file with a payment hold will have a $50.00 fee added to the account to
remove the hold.

Your payment will be processed using the bank account information that you
provided and will be listed on your bank statement as one of the following:

* AM Property Management
* Preferred Law

If you have any questions regarding this payment please give the billing department
a call at 801-938-8066. ANY RESCHEDULED PAYMENTS WILL HAVE A $50.00
CHARGE.
Thank you,
Alli Parkinson
801-938-8066
aparkinson@preferredlawteam.com on 11/21/16 9:12 AM

Start using **Smartsheet**, the online tool that helps coordinate anything with anyone
Sent by aparkinson@preferredlawteam.com

10 to learn more about Smartsheet | Contact | Privacy Policy | User Agreement | Report Misuse

1

**Renee Crawford**

| | |
|---|---|
| **From:** | Renee Crawford < ▬▬▬▬▬▬ > |
| **Sent:** | Monday, November 27, 2017 6:49 AM |
| **To:** | Renee Crawford |
| **Subject:** | Fwd: AHLC Payment Reminder |

--------- Forwarded message ---------
From: Alli Parkinson via Smartsheet <user@smartsheet.com>
Date: Mon, Jan 30, 2017 at 9:00 AM
Subject: AHLC Payment Reminder
To: < ▬▬▬▬▬▬ >



 **Comments**

Hello,

I am contacting you on behalf of the billing department at American Home Loan
Counselors (AHLC) to remind you of the following payment that will be processed on
WEDNESDAY FEBRUARY 1 2017 according to your payment agreement:

AMOUNT: $100.00

If your payment is declined or returned there will be a $25.00 fee added to your
account. Any file with a payment hold will have a $50.00 fee added to the account to
remove the hold.

Your payment will be processed using the bank account information that you
provided and will be listed on your bank statement as one of the following:

* AM Property Management
* Preferred Law
* Consumer Defense

If you have any questions regarding this payment please give the billing department
a call at 801-938-8066. ANY RESCHEDULED PAYMENTS WILL HAVE A $50.00
CHARGE.
Thank you,
Alli Parkinson
801-938-8066
aparkinson@preferredlawteam.com on 01/30/17 9:59 AM

Sharing by **Smartsheet**, the work management and automation platform that helps teams and
teams to work better.
Sent by aparkinson@preferredlawteam.com

One Smartsheet notice Government Privacy Policy this right this come the terms of usage

1

PX23 - 42

**Renee Crawford**

| | |
|---|---|
| **From:** | Renee Crawford <▬▬▬▬▬▬> |
| **Sent:** | Monday, November 27, 2017 6:51 AM |
| **To:** | Renee Crawford |
| **Subject:** | Fwd: AHLC Payment Reminder |

---------- Forwarded message ---------
From: Alli Parkinson via Smartsheet <user@smartsheet.com>
Date: Fri, Oct 6, 2017 at 10:04 AM
Subject: AHLC Payment Reminder
To: <▬▬▬▬▬▬▬>



Comments

Row 70: Renee

Alli Parkinson(aparkinson@americanhomeloans.com) | October 6, 2017 11:03 AM
Hello,

I am contacting you on behalf of the billing department at American Home Loan
Counselors (AHLC) to remind you of the following payment that is due on WEDNESDAY
OCTOBER 11 2017 according to your payment agreement:

AMOUNT: $100.00

Please be advised that if your payment is returned there will be a $100.00 fee added to
your account.

Your payment will be processed using the bank account information that you provided
and will be listed on your bank statement as one of the following:

* American Home Loans
* Elect Check E-Check Plus
* AM Property Management

If you have any questions regarding this payment please give the billing department a call
at 801-938-8066. RESCHEDULED PAYMENTS REQUIRE AT LEAST 24 HOUR
NOTICE! ANY RESCHEDULED PAYMENTS WILL HAVE A $25.00 CHARGE.
Thank you,
Alli Parkinson
801-938-8066

Sent using **Smartsheet**, the best way to plan, track, automate, and resource for work, enabling you to
- move from idea to impact — fast.
Sent by aparkinson@americanhomeloans.com

1

### DECLARATION OF NATHANIEL AL-NAJJAR
### PURSUANT TO 28 U.S.C. § 1746

I, Nathaniel Al-Najjar, hereby state that I have personal knowledge of the facts set forth below.  If called as a witness, I could and would testify competently as follows:

1.  I am a citizen of the United States and am over the age of eighteen (18) years old.  I am employed as a Paralegal Specialist ("Paralegal") with the Federal Trade Commission ("FTC") in the Midwest Regional Office.  My office address is 230 South Dearborn Street, Suite 3030, Chicago, Illinois 60604.

2.  I have been a Paralegal with the FTC since July 2016.  As part of my work, I research and investigate suspected violations of consumer protection laws, including the Federal Trade Commission Act and the Mortgage Assistance Relief Services Rule.  In the normal course of carrying out my responsibilities, I regularly use Internet search engines, electronic databases, spreadsheet software, and a variety of other software-based investigative and organizational tools.  I regularly review a variety of records, including bank data, website registration data, and telecommunications records, engaging in analysis for indicators of fraudulent activity.

3.  As part of my duties at the FTC, I was asked to conduct and record an undercover call with Preferred Law, PLLC ("Preferred Law").  On or about October 20, 2016, I placed a telephone call to 801-386-5100, a number identified as affiliated with Preferred Law over the course of the FTC's investigation.

4.  For the purpose of this undercover call, I posed as a distressed homeowner looking for an adjustment to his mortgage payments.

5.  An unidentified female answered the phone, and confirmed that this was Preferred Law.  I was then transferred to a male representative named Paul Cysewski.  We spoke at length about my situation, and how Preferred Law could help.  I successfully recorded this

conversation. I made a copy of the recording and arranged for the copy to be transcribed. The original recording is saved on my work computer. I have reviewed the transcript of the call and compared it to the original recording. The transcript accurately reflects the telephone call. A true and correct transcript of my conversation with Mr. Cysewski (with my undercover name and contact information redacted) is attached hereto as *Attachment A*.

6. At some point prior to this undercover call, I had created an email account with Google in the name of my undercover identity. I gave Mr. Cysewski this email address during our conversation to receive written information about his company and its services.

7. Later that day, on October 20, 2016, I received an email from Paul Cysewski. He referred to his company as "Consumer Defense". A true and correct copy of the email I received from Mr. Cysewski (with my undercover name and contact information redacted) is attached hereto as *Attachment B*. The email also included an attachment titled "Settlement Stipulations.pdf." A true and correct copy of this attachment is attached hereto as *Attachment C*.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements made in this declaration are true and correct.

Executed in Chicago, IL on December 21, 2017.

Nathaniel Al-Najjar

# Attachment A

1                OFFICIAL TRANSCRIPT PROCEEDING

2                 FEDERAL TRADE COMMISSION

3

4    MATTER NO.     1723021

5    TITLE              PREFERRED LAW, LLC

6    DATE          RECORDED:  OCTOBER 20, 2016

                  TRANSCRIBED:  APRIL 17, 2017

7

     PAGES         1 THROUGH 37

8

9

10

11           TELEPHONE CONTACT WITH PAUL CYSEWSAI

12

13

14

15

16

17

18

19

20

21

22

23

24              For The Record, Inc.

25      (301) 870-8025 - www.ftrinc.net - (800) 921-5555

2

```
1               FEDERAL TRADE COMMISSION

2                     I N D E X

3

4   RECORDING:                          PAGE:

5   Telephone conversation with Paul Cysewsai      4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25            For The Record, Inc.   (301) 870-8025 - www.ftrinc.net -

26   (800) 921-5555                    .
```

3

1                    FEDERAL TRADE COMMISSION

2

3     In the Matter of:            )

4     Preferred Law, LLC           )   Matter No. 1723021

5                                  )

6     ----------------------------)

7                                  October 20, 2016

8

9

10

11            The following transcript was produced from a

12    digital file provided to For The Record, Inc. on April

13    7, 2017.

14

15

16

17

18

19

20

21

22

23

24

25                    For The Record, Inc.   (301) 870-8025 - www.ftrinc.net -

26    (800) 921-5555

4

```
1                    P R O C E E D I N G S

2                     -    -    -    -    -

3              MR. AL-NAJJAR:  My name is Nathaniel Al-

4    Najjar, and I am a paralegal at the Federal Trade

5    Commission.  Today I am calling Preferred Law, LLC, at

6    the number 801-386-5100.  It is October 20th,

7    approximately 3:30 p.m.

8

9         TELEPHONE CONVERSATION WITH PAUL CYSEWSAI

10             RECORDED MESSAGE:  Welcome to the Default

11   Support Center.  Our office hours are Monday through

12   Friday, 8:00 a.m. to 4:00 p.m., Mountain time.  For a

13   directory of extensions, press one.  For immediate

14   assistance, press three.

15             (Phone ringing.)

16             UNIDENTIFIED FEMALE:  This is (inaudible).

17   How may I direct your call?

18             MR. AL-NAJJAR:  Hi, this is ◆ here.  Is

19   this -- is this Preferred Law, LLC?

20             UNIDENTIFIED FEMALE:  Yes.  Yes, it is.

21             MR. AL-NAJJAR:  Okay.  All right, fantastic.

22   How can you direct my call?  Well, I was hoping to

23   talk to somebody about -- hopefully to get some help

24   with some mortgage issues that I've been having

25   lately.              For The Record, Inc.   (301) 870-8025 -

26   www.ftrinc.net - (800) 921-5555
```

5

1          UNIDENTIFIED FEMALE:  Okay.

2          MR. AL-NAJJAR:  Yeah.

3          UNIDENTIFIED FEMALE:  Okay.  Let me go --

4     let me see what representative is available.  So I'm

5     going to put you on a brief hold.  Okay?

6          MR. AL-NAJJAR:  Okay, sounds good.

7          (On hold.  Music playing.)

8          UNIDENTIFIED FEMALE:  Okay.  Are you still

9     there?

10         MR. AL-NAJJAR:  Yes, I am.

11         UNIDENTIFIED FEMALE:  Okay.  I'm going to go

12    ahead and get you sent over to one of our

13    representatives.  His name is Paul.  Okay?

14         MR. AL-NAJJAR:  Okay.  All right.

15         UNIDENTIFIED FEMALE:  All right.

16         (Phone ringing.)

17         MR. CYSEWSAI:  This is Paul.  How can I help

18    you?

19         MR. AL-NAJJAR:  Hi.  This is ▇ here.  I

20    hope you can help me.  I got transferred over to you.

21    I was hoping to talk to somebody about some of the

22    mortgage issues that I've been having and, you know,

23    hopefully talk to somebody that would be able to help

24    me with them.

25         MR. CYSEWSAI:  Well, I'm a senior advisor

26    For The Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

6

1    here, been here four and a half years with a company

2    that's been doing modifications for five and a half.

3          MR. AL-NAJJAR: Okay. That sounds pretty

4    good.

5          MR. CYSEWSAI: We've done well over 6,000.

6    So possibly, but, you know, I'm going to give you the

7    straight scoop and we'll go from there --

8          MR. AL-NAJJAR: All right.

9          MR. CYSEWSAI: -- you know, and see what can

10   be done.

11         MR. AL-NAJJAR: That sounds pretty good.

12   That sounds pretty good.

13         MR. CYSEWSAI: (Inaudible) do an assessment

14   together over the phone here. Okay?

15         MR. AL-NAJJAR: Okay.

16         MR. CYSEWSAI: Now, I assume you're late --

17   you're behind on your mortgage.

18         MR. AL-NAJJAR: Yeah, unfortunately about

19   three months. Yeah, quite behind.

20         MR. CYSEWSAI: Okay, a few months. Now,

21   tell me why you got behind.

22         MR. AL-NAJJAR: Pardon?

23         MR. CYSEWSAI: Can you explain to me what

24   caused you to get behind on your mortgage?

25         MR. AL-NAJJAR: Yeah. Well, I lost my job      For

26   The Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

7

1    and I was out of work for about two months, and then

2    by the time I was able to find another job, it was

3    paying almost $20,000 less, which, you know, didn't --

4    it made the monthly expenses hit a little harder and,

5    you know, paying for the mortgage was difficult.

6              MR. CYSEWSAI:  Okay.  Are you on a

7    speakerphone or --

8              MR. AL-NAJJAR:  Yeah, I just prefer being on

9    speakerphone.

10             MR. CYSEWSAI:  Yeah, because I got an echo

11   coming through, so --

12             MR. AL-NAJJAR:  Oh, sorry.  Yeah.  Well, I

13   mean, I have some of my mortgage papers next to me, so

14   having the phone up to my ear I didn't think would be

15   -- is that all right?

16             MR. CYSEWSAI:  Well, we'll see what we can

17   do.

18             MR. AL-NAJJAR:  Okay.

19             MR. CYSEWSAI:  I might have to ask you to

20   switch if it gets too much feedback.  Okay.  So in a

21   nutshell you've had a loss or reduction of income.

22             MR. AL-NAJJAR:  Yeah.

23             MR. CYSEWSAI:  Okay.  And let's see here.

24   You had a loss of a job, right?

25             MR. AL-NAJJAR:  Yeah.  Well, I mean, I'm        For The

26   Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

8

1    employed now, but, yeah, the loss of the job was

2    really what --

3              MR. CYSEWSAI:  Yeah.  I was trying to get a

4    time line here.

5              MR. AL-NAJJAR:  Right.

6              MR. CYSEWSAI:  Loss of a job.  New job,

7    about $20,000 less a year.

8              MR. AL-NAJJAR:  Yeah.

9              MR. CYSEWSAI:  Okay.  That certainly

10   qualifies the hardship part.

11             MR. AL-NAJJAR:  Okay.  Well, yeah, tell me

12   about it, yeah.

13             MR. CYSEWSAI:  Okay.  So (inaudible) here.

14   Okay.  Now -- and you say you're about two months

15   behind?

16             MR. AL-NAJJAR:  Three months behind.

17             MR. CYSEWSAI:  You've never had a

18   modification?

19             MR. AL-NAJJAR:  No.  I applied for one with

20   my bank, but they turned me down.

21             MR. CYSEWSAI:  Got you.  Well, they like

22   doing that to a lot of people.

23             MR. AL-NAJJAR:  Yeah.

24             MR. CYSEWSAI:  Who is your lender?

25             MR. AL-NAJJAR:  Bank of America.          For The Record,

26   Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

9

```
 1              MR. CYSEWSAI:  Okay.  Do you know if it's
 2    FHA or a conventional loan?
 3              MR. AL-NAJJAR:  It's a conventional.
 4              MR. CYSEWSAI:  Okay.  Do you have a balance
 5    on your mortgage, on the principal balance?
 6              MR. AL-NAJJAR:  Well, what's remaining is
 7    about 220.
 8              MR. CYSEWSAI:  Okay.  And what is your
 9    interest rate?
10              MR. AL-NAJJAR:  Interest rate is at five and
11    three-quarters.
12              MR. CYSEWSAI:  What is your monthly mortgage
13    payment?
14              MR. AL-NAJJAR:  It's about $1,675.
15              MR. CYSEWSAI:  And do you know how much of
16    that goes into escrow to pay those taxes and insurance
17    every month?
18              MR. AL-NAJJAR:  I don't -- I don't know how
19    much pays that.
20              MR. CYSEWSAI:  Okay.  Do you have a mortgage
21    statement there?  You mentioned you've got your
22    paperwork.
23              MR. AL-NAJJAR:  No, I don't have one in
24    front of me.
25              MR. CYSEWSAI:  Okay.  What paperwork do you          For
26    The Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555
```

PX24 - 12

1    have?

2              MR. AL-NAJJAR:  Mostly just some notes that

3    I took down with the last meeting that I had with a

4    representative of the bank.

5              MR. CYSEWSAI:  Oh, okay.  All right.  What -

6    - are you able to, some time in the near future, get

7    your hands on an old mortgage statement?

8              MR. AL-NAJJAR:  Yeah, yeah.  I mean, yeah, I

9    guess I can probably go search and try to get one of

10   those in the basement somewhere.

11             MR. CYSEWSAI:  You know, they send them out

12   monthly.

13             MR. AL-NAJJAR:  Okay.

14             MR. CYSEWSAI:  Now, what year did you take

15   your mortgage out?

16             MR. AL-NAJJAR:  2010.

17             MR. CYSEWSAI:  Okay.  No refinances after

18   that, is that correct?

19             MR. AL-NAJJAR:  Pardon?

20             MR. CYSEWSAI:  No refinances after that?

21             MR. AL-NAJJAR:  Nope.

22             MR. CYSEWSAI:  Okay.  Sir, what is your

23   name?                                                      .

24             MR. AL-NAJJAR:  ████████████.

25             MR. CYSEWSAI:  Do you have a middle initial?        For

26   The Record, Inc.    (301) 870-8025 - www.ftrinc.net - (800) 921-5555

11

```
 1              MR. AL-NAJJAR:  ███
 2              MR. CYSEWSAI:  █  So it's  ███████
 3   ████████████████?
 4              MR. AL-NAJJAR:  Yeah.
 5              MR. CYSEWSAI:  Okay.  Are you the only one
 6   on the mortgage?
 7              MR. AL-NAJJAR:  Am I the only one on the
 8   mortgage?  Yeah.
 9              MR. CYSEWSAI:  Yes.  Okay.  What's your
10   phone number?
11              MR. AL-NAJJAR:  Yeah, phone number, you can
12   reach me at  █████████.
13              MR. CYSEWSAI:  Is that your cell?
14              MR. AL-NAJJAR:  Yeah.
15              MR. CYSEWSAI:  Okay.  Do you also have a pen
16   and paper handy?
17              MR. AL-NAJJAR:  Yeah, I do.
18              MR. CYSEWSAI:  I want to -- I want you to
19   have my direct line, okay?  My name is Paul, my last
20   name is spelled C-Y-S-E-W-S-A-I.
21              MR. AL-NAJJAR:  Yeah.
22              MR. CYSEWSAI:  I'm with Consumer Defense,
23   and my direct line is 888-980 --
24              MR. AL-NAJJAR:  Mm-hmm.
25              MR. CYSEWSAI:  -- 7834, 7834.            For The Record,
26   Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555
```

12

1           MR. AL-NAJJAR:  Okay.  That's good to have,

2     thank you.

3           MR. CYSEWSAI:  Now, what -- pardon me?

4           MR. AL-NAJJAR:  That's good to have, thank

5     you.

6           MR. CYSEWSAI:  Yeah, you bet, you bet.  What

7     state are you in?

8           MR. AL-NAJJAR:  Maryland.

9           MR. CYSEWSAI:  Okay.  And your zip code?

10          MR. AL-NAJJAR:  I was hoping to -- yeah, I

11    mean, so I was hoping to not actually give out such

12    personal information right now.  I'm still calling a

13    couple places, shopping around.  Is that all right at

14    this point?

15          MR. CYSEWSAI:  Sure, sure.  You know, that's

16    part of my assessment is to pull the property up on

17    zillow.com and see what the value comes in.

18          MR. AL-NAJJAR:  Oh, okay.

19          MR. CYSEWSAI:  You know, so I do the

20    assessment over the phone instead of saying, hey,

21    ███████, I want you to send me a whole bunch of

22    paperwork in the mail and we'll get back to you at a

23    convenient time after -- you know, so --

24          MR. AL-NAJJAR:  Right.

25          MR. CYSEWSAI:  Because a lot of this          For The

26    Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

1   assessment, especially after I've been doing this four

2   and a half years, I can give you an idea of what can

3   be accomplished.   Okay?

4           MR. AL-NAJJAR:  Okay.

5           MR. CYSEWSAI:  What's -- how much an hour do

6   you make at your job?

7           MR. AL-NAJJAR:  How much now?

8           MR. CYSEWSAI:  Yes.

9           MR. AL-NAJJAR:  Well, about $2,500 a month.

10          MR. CYSEWSAI:  Okay.  Are you hourly or

11  salary?

12          MR. AL-NAJJAR:  I'm salary.

13          MR. CYSEWSAI:  Okay.  What is your gross

14  salary, whether it's yearly or per month?

15          MR. AL-NAJJAR:  Yeah, gross would be

16  $42,850.

17          MR. CYSEWSAI:  Okay, 42,850, that helps me

18  out here.  I'll extrapolate how much per month here,

19  okay?

20          MR. AL-NAJJAR:  Okay.

21          MR. CYSEWSAI:  According -- you know,

22  criteria and guidelines, it's based off of gross

23  income.  Okay?

24          MR. AL-NAJJAR:  Okay.

25          MR. CYSEWSAI:  With the factors that they                For

26  The Record, Inc.    (301) 870-8025 - www.ftrinc.net - (800) 921-5555

14

 1    use.  I mean --

 2              MR. AL-NAJJAR:  Yeah.

 3              MR. CYSEWSAI:  -- (inaudible).  Well, then

 4    they want -- you know, if they wanted net, then they

 5    would use a different calculation, a different

 6    factoring method.

 7              MR. AL-NAJJAR:  Right.

 8              MR. CYSEWSAI:  Okay.  So you're 3,570 per

 9    month, okay, times -- I'm doing a little bit of

10    calculation here.

11              MR. AL-NAJJAR:  Okay.

12              MR. CYSEWSAI:  How much did you buy your

13    house for?

14              MR. AL-NAJJAR:  I think it was $300,000.

15              MR. CYSEWSAI:  Three hundred?

16              MR. AL-NAJJAR:  Yeah.

17              MR. CYSEWSAI:  You think you've got about

18    $80,000 equity or --

19              MR. AL-NAJJAR:  Yeah.  Well, I mean, yeah I

20    mean, the down payment was $60,000.

21              MR. CYSEWSAI:  Do you have a computer there

22    (inaudible)?

23              MR. AL-NAJJAR:  Not in front of me, no.

24              MR. CYSEWSAI:  Oh, okay.

25              MR. AL-NAJJAR:  Sorry.                    For The Record, Inc.

26    (301) 870-8025 - www.ftrinc.net - (800) 921-5555

15

1             MR. CYSEWSAI:  I was just -- since you don't

2    want to give me an address, I was going to have you go

3    on Zillow.

4             MR. AL-NAJJAR:  Oh, okay.

5             MR. CYSEWSAI:  Okay.  All right.  Now, they

6    don't have you in foreclosure yet, do they?

7             MR. AL-NAJJAR:  No, not yet.  That's --

8    yeah, hopefully -- yeah.

9             MR. CYSEWSAI:  Have you had a bankruptcy in

10   the last seven years?

11            MR. AL-NAJJAR:  No.

12            MR. CYSEWSAI:  Okay.  All right, all right.

13   Now, remember I told you that we've been here five and

14   a half years, we've done well over 6,000

15   modifications.  I've personally been here four and a

16   half years.

17            MR. AL-NAJJAR:  Yeah, yeah.

18            MR. CYSEWSAI:  I look at this and I go,

19   what can be done?  And the thing is, you know, I'm

20   delivering news, good news, bad news, indifferent,

21   whatever it is, and I'm not going to just tell you

22   what you want to hear.

23            MR. AL-NAJJAR:  Yeah.

24            MR. CYSEWSAI:  But looking at your wage

25   reductions, you definitely -- first of all, you've had          For

26   The Record, Inc.    (301) 870-8025 - www.ftrinc.net - (800) 921-5555

1   a hardship that definitely qualifies you.  And, second

2   of all, you qualify for a much lower payment.  Okay?

3                MR. AL-NAJJAR:  Yeah.  Yeah, that's what

4   I -- that's good.

5                MR. CYSEWSAI:  Now, one thing that I want

6   you to realize is as we're talking here, these

7   programs go away next -- at the end of the year.

8   Okay?  They've used up the taxpayer dollars on this,

9   so --

10               MR. AL-NAJJAR:  So --

11               MR. CYSEWSAI:  -- they're probably not going

12  to renew this program.

13               MR. AL-NAJJAR:  These programs, they're  --

14  sorry, could you elaborate on that?  They're going

15  away?

16               MR. CYSEWSAI:  Yeah.  The Making Homes More

17  Affordable Act --

18               MR. AL-NAJJAR:  Yeah.

19               MR. CYSEWSAI:  -- you know, it was a law

20  that they passed and they extrapolated $47 billion in

21  taxpayer dollars to pay for this program.

22               MR. AL-NAJJAR:  Okay.

23               MR. CYSEWSAI:  Okay.  And so now they've

24  come to the end of the road, they've used up the

25  funds, okay?                   For The Record, Inc.   (301) 870-8025 -

26  www.ftrinc.net - (800) 921-5555

1          MR. AL-NAJJAR:  Yeah.

2          MR. CYSEWSAI:  So, you know, prior to 2009,

3    there was no such thing as, you know, a federal

4    hardship modification program.

5          MR. AL-NAJJAR:  Right, right.

6          MR. CYSEWSAI:  In the history of mortgages,

7    there never has.  So, anyway, you've got to be

8    cognizant of that so you're aware.

9          MR. AL-NAJJAR:  Well, I mean, is it still

10   possible to -- I mean, if that program -- so has it

11   already ended or is it going to -- because I want

12   to -- I mean, if it's --

13         MR. CYSEWSAI:  No, no, no, no, no.  It ends

14   at the end of the year.  In other words, if you're not

15   in the system, if we haven't submitted a file before

16   then --

17         MR. AL-NAJJAR:  Oh, okay.

18         MR. CYSEWSAI:  -- then you're not all right.

19         MR. AL-NAJJAR:  All right.

20         MR. CYSEWSAI:  All we've got to do is submit

21   a file.  And I'm just -- I'm telling you some

22   information that you should be aware of.

23         MR. AL-NAJJAR:  Yeah.

24         MR. CYSEWSAI:  Okay?

25         MR. AL-NAJJAR:  No, thank you for that.        For The

26   Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

1          MR. CYSEWSAI:  All right, all right.  So,

2     you know, you want to save your house.  You don't want

3     to be like me in 2009.  I was a mortgage broker and

4     great income and it ended overnight as a mortgage

5     broker, and I tried to fight Wells Fargo on my own

6     and, guess what, I lost my house.  So --

7          MR. AL-NAJJAR:  I'm sorry.

8          MR. CYSEWSAI:  -- they don't care.

9          MR. AL-NAJJAR:  Yeah.

10          MR. CYSEWSAI:  So I try to give you all the

11     details so when you're doing your assessment that

12     you're aware of the whole dynamics and the

13     possibilities.

14          MR. AL-NAJJAR:  Yeah.

15          MR. CYSEWSAI:  So a modification takes -- it

16     takes five, six months to do with a lender.

17          MR. AL-NAJJAR:  Yeah.

18          MR. CYSEWSAI:  Even with us that negotiates

19     with them, you know, we've done -- if we haven't done

20     several hundred with Bank of America, we've done a

21     thousand, you know --

22          MR. AL-NAJJAR:  Okay.

23          MR. CYSEWSAI:  A big lender.

24          MR. AL-NAJJAR:  Yeah.

25          MR. CYSEWSAI:  But it's a process.  I mean,          For

26     The Record, Inc.    (301) 870-8025 - www.ftrinc.net - (800) 921-5555

1    we can do it start to finish in less than 60 days.

2    But they drag it on, you know.  They don't want to see

3    your (inaudible).

4              MR. AL-NAJJAR:  Right.

5              MR. CYSEWSAI:  (Inaudible).  So we -- our

6    modification, we'll negotiate for you.  Now, once you

7    come on board with us, you'll be protected by federal

8    law and they cannot foreclose as long as we are

9    negotiating on your behalf.

10             MR. AL-NAJJAR:  Well, that's great.  Okay,

11   good.

12             MR. CYSEWSAI:  You will be protected and

13   they, the lenders, will be restricted.  It's a pretty

14   severe -- now, let me -- now, here's an example -- and

15   I don't necessarily hope for this because this has

16   happened in about one in 6,000 with us.  But --

17             MR. AL-NAJJAR:  Okay.

18             MR. CYSEWSAI:  -- a big lender in California

19   didn't pass onto their foreclosure department to halt

20   their proceedings and they went ahead and put it on

21   the steps of the auction -- or the courthouse to be

22   auctioned and sold the house and that's a huge, huge

23   violation.  But we stuck with them and those people

24   ended up getting their house free and clear.  I mean,

25   that's how stringent or how --                    For The Record, Inc.

26   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

20

1           MR. AL-NAJJAR:  Yeah.

2           MR. CYSEWSAI:  But I'm not asking you to

3    hold out hope.  I'm just telling you --

4           MR. AL-NAJJAR:  That's what happened.

5           MR. CYSEWSAI:  -- that's how --

6           MR. AL-NAJJAR:  Yeah.

7           MR. CYSEWSAI:  -- the hard and fast rule.

8    So a modification, you're not making payments until

9    you're processed.  You're protected by federal law and

10   they cannot foreclose on your house during that time.

11          MR. AL-NAJJAR:  Yeah.

12          MR. CYSEWSAI:  We will get you a much lower

13   rate.  Your payments should be closer to, you know,

14   $1,100, $1,200.

15          MR. AL-NAJJAR:  Yeah.

16          MR. CYSEWSAI:  You know, at this point I

17   don't know what the escrow part of your payment is, so

18   I don't know --

19          MR. AL-NAJJAR:  Right.

20          MR. CYSEWSAI:  -- you know, is it going to

21   be $1,200 or $1,300.  But in any case, it's going to

22   be $400 or $500 less than you're making -- or paying.

23          MR. AL-NAJJAR:  Yeah, that sounds good,

24   yeah.

25          MR. CYSEWSAI:  We can -- we negotiate with                    For

26   The Record, Inc.    (301) 870-8025 - www.ftrinc.net - (800) 921-5555

21

1     Bank of America.  We can get rates down to 4 percent,

2     you know --

3           MR. AL-NAJJAR:  Right.

4           MR. CYSEWSAI:  And that's -- you know,

5     you're going to have a fresh start on your mortgage,

6     current again and then from that time forward with

7     reduced interest rate resulting in A reduced payment.

8           MR. AL-NAJJAR:  Yeah.  No, that --

9           MR. CYSEWSAI:  And during the modification

10    process, you will make six payments to Consumer

11    Defense to do this for you.

12          MR. AL-NAJJAR:  Wait, sorry, could you --

13    what did you just say?

14          MR. CYSEWSAI:  I said, during the

15    modification process --

16          MR. AL-NAJJAR:  Yeah.

17          MR. CYSEWSAI:  -- you will pay Consumer

18    Defense six monthly payments of (inaudible).

19          MR. AL-NAJJAR:  Okay.  So --

20          MR. CYSEWSAI:  You've got a few people

21    working on this, just like when you go to work and get

22    paid for your service and time.

23          MR. AL-NAJJAR:  Yeah.

24          MR. CYSEWSAI:  Same way here.  You're going

25    to have negotiators and processors and --       For The Record,

26    Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

```
1              MR. AL-NAJJAR:  Right.
2              MR. CYSEWSAI:  -- litigation people all
3    working (inaudible) on this.
4              MR. AL-NAJJAR:  Yeah.
5              MR. CYSEWSAI:  And we will -- we will
6    guarantee a modification.
7              MR. AL-NAJJAR:  Okay.  So, yeah, so I'll be
8    -- I'll just be paying you in monthly installments,
9    then?
10             MR. CYSEWSAI:  Monthly installments of $650
11   for six months.  Six monthly payments.
12             MR. AL-NAJJAR:  Okay.  All right.  I mean,
13   yeah, but compared to what -- compared to what's going
14   to come out of this in terms of my monthly payments
15   for, you know, how many months, that's going to be --
16   yeah, no.  All right.  Well --
17             MR. CYSEWSAI:  Yeah.  And we'll make sure we
18   get you a permanent modification that will last the
19   life of your loan.  There's all kinds of
20   modifications.  There's in-house modifications where
21   there are step-up interest rates, time and so on and
22   forth, that as time goes on your interest rates go up.
23   We're dealing with a lot of people now that, you know,
24   four or five years ago, you know, were given a reduced
25   payment and interest rate, but now their payments are         For
26   The Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555
```

1    back up to 5 percent and they're just as higher or

2    higher than they were when they started, you know?

3                 MR. AL-NAJJAR:  Yeah.

4                 MR. CYSEWSAI:  And -- but the problem is

5    there's no oversight committee or anybody governing

6    the lenders.  They're supposed to be self-governing.

7    The only one they govern is people like us and, you

8    know --

9                 MR. AL-NAJJAR:  Yeah.

10                MR. CYSEWSAI:  So if they come back with an

11   offer on a modification that's not acceptable, we just

12   turn it back around to them.

13                MR. AL-NAJJAR:  Yeah.  Yeah, I mean, so, you

14   know, what you're saying sounds really good.  I'm just

15   -- I mean, and I'm sure this will help a lot.  I'm

16   just a little bit -- you know, if I'm making payments,

17   you know, once I sign up with you guys, I'm making

18   $650 payments to you guys and then I'm also paying --

19   you know, I imagine in the meantime until this all

20   gets sorted out, I'll still be paying my mortgage

21   payments, my current --

22                MR. CYSEWSAI:  No.

23                MR. AL-NAJJAR:  What?

24                MR. CYSEWSAI:  No, no, no.  You missed that

25   part.                For The Record, Inc.   (301) 870-8025 -

26   www.ftrinc.net - (800) 921-5555

1          MR. AL-NAJJAR:  Oh, okay.

2          MR. CYSEWSAI:  During the modification

3     process --

4          MR. AL-NAJJAR:  Yeah.

5          MR. CYSEWSAI:  -- the next five to seven

6     months, you cannot be making payments to your lender.

7          MR. AL-NAJJAR:  Oh, okay.

8          MR. CYSEWSAI:  Okay?

9          MR. AL-NAJJAR:  All right, all right.

10         MR. CYSEWSAI:  And if you start making

11    payments, it will disqualify you from the program.

12         MR. AL-NAJJAR:  Okay.

13         MR. CYSEWSAI:  That's a qualifying -- that's

14    a qualifying part of this, is you're not making

15    payments during the modification process, but yet

16    you're protected by federal law.

17         MR. AL-NAJJAR:  Okay, yeah.  Sorry, I missed

18    that.  But then, I mean, you guys are going to make

19    sure that you're telling Bank of America that there's

20    a reason I'm not -- I just want to make sure that they

21    know that -- why I'm not paying those payments

22    anymore.

23         MR. CYSEWSAI:  Well, yeah, I mean, within

24    the first couple of weeks, they're going to get a

25    cease and desist order.          For The Record, Inc.   (301) 870-

26    8025 - www.ftrinc.net - (800) 921-5555

25

1           MR. AL-NAJJAR:  Okay.

2           MR. CYSEWSAI:  They're going to get a

3   qualified written response from us that they, by law,

4   have to respond back to us --

5           MR. AL-NAJJAR:  Okay.

6           MR. CYSEWSAI:  -- with a detailed mortgage

7   history so we can do a forensic audit in the mortgage

8   history.

9           MR. AL-NAJJAR:  Yeah.

10          MR. CYSEWSAI:  And then that forensic audit

11  will uncover errors of omission and commission.  It

12  always does.

13          MR. AL-NAJJAR:  Yeah.

14          MR. CYSEWSAI:  You know, these are things

15  that puts them on a defensive.

16          MR. AL-NAJJAR:  Right.

17          MR. CYSEWSAI:  We have a negotiating team

18  headed by one of the top negotiators in the country

19  who will be negotiating this.

20          MR. AL-NAJJAR:  Yeah.  Well, I mean, so

21  cease and desist you say.  So, I mean -- so what

22  you're basically saying is that once I sign up with

23  you guys, I'm not going to be contacting -- you know,

24  I'm not going to be in contact with them is what

25  you're saying.          For The Record, Inc.  (301) 870-8025 -

26  www.ftrinc.net - (800) 921-5555

```
1              MR. CYSEWSAI:  Yeah.  They can't be hounding
2    and harassing you for payment --
3              MR. AL-NAJJAR:  Okay.
4              MR. CYSEWSAI:  -- collection, you know?
5              MR. AL-NAJJAR:  Yeah.  So -- so --
6              MR. CYSEWSAI:  Everything will be funneled
7    through the processing department --
8              MR. AL-NAJJAR:  Perfect.
9              MR. CYSEWSAI:  -- you know?  And the
10   thing -- here's another thing, you know, with stuff
11   like this.  You know, sometimes people, when they try
12   to go directly to the lender, they give them too much
13   information, you know?
14             MR. AL-NAJJAR:  Yeah.
15             MR. CYSEWSAI:  It's knowing what to give and
16   what not to give them.
17             MR. AL-NAJJAR:  Yeah.  Okay.  So, I mean,
18   yeah, if they try to contact me, I mean, you say they
19   won't, but if they try to contact me, it's just like,
20   you know, I don't have to talk to them anymore?
21             MR. CYSEWSAI:  No, yeah.  You'll have the
22   phone number to your personal processor and you'll
23   say --
24             MR. AL-NAJJAR:  Good, good.
25             MR. CYSEWSAI:  -- here, call Rebecca or          For The
26   Record, Inc.    (301) 870-8025 - www.ftrinc.net - (800) 921-5555
```

27

1    Cameron or --

2         MR. AL-NAJJAR:  Yeah.

3         MR. CYSEWSAI:  I'm just naming some people

4    off in processing, here's their phone number, you

5    know?

6         MR. AL-NAJJAR:  Right.

7         MR. CYSEWSAI:  But once they get the cease

8    and desist, they think -- you know, they can send you

9    all kinds of garbage mail or mail, but they can't be

10   calling you.

11        MR. AL-NAJJAR:  Okay.

12        MR. CYSEWSAI:  So --

13        MR. AL-NAJJAR:  Yeah.  I mean, I've been

14   talking to my bank too much, as you can imagine.

15        MR. CYSEWSAI:  Yeah.  Well, you know, I did

16   the same thing and I was a mortgage broker, you know?

17   So --

18        MR. AL-NAJJAR:  Yeah.

19        MR. CYSEWSAI:  -- you don't know.  And, you

20   know, we've got a large tool chest, so to speak, we

21   know which tools to use and which ones not.

22        MR. AL-NAJJAR:  Yeah.

23        MR. CYSEWSAI:  I like to say, ▮▮▮▮▮ don't

24   put a car mechanic working on airplanes if you want it

25   to fly, especially if you're going to fly on it.        For The

26   Record, Inc.    (301) 870-8025 - www.ftrinc.net - (800) 921-5555

28

```
 1              MR. AL-NAJJAR:  Yeah.  And -- okay.  So I
 2    guess -- and then you mentioned -- so the whole team
 3    there, you got processors.  I mean, you guys are going
 4    to be my representatives in this.  Is this --
 5              MR. CYSEWSAI:  Absolutely.
 6              MR. AL-NAJJAR:  Fantastic.
 7              MR. CYSEWSAI:  Absolutely.
 8              MR. AL-NAJJAR:  You mentioned -- I heard you
 9    even said, like, litigation.  You're not going to sue
10    Bank of America, right?
11              MR. CYSEWSAI:  No, no, no, no, no, no.
12              MR. AL-NAJJAR:  Okay.
13              MR. CYSEWSAI:  No, mediation, negotiation,
14    processing, you know --
15              MR. AL-NAJJAR:  All right.  Yeah, okay.  But
16    do you have any, like, lawyers there?
17              MR. CYSEWSAI:  No.  We used to be partnered
18    with a law firm, but it was counterproductive.
19              MR. AL-NAJJAR:  Okay.
20              MR. CYSEWSAI:  We found that it puts up a
21    bigger stonewall with the lenders.  So --
22              MR. AL-NAJJAR:  Okay.
23              MR. CYSEWSAI:  -- they'd rather work with
24    strictly a negotiating consulting type company than
25    they do --            For The Record, Inc.   (301) 870-8025 -
26    www.ftrinc.net - (800) 921-5555
```

29

1          MR. AL-NAJJAR:  Okay.

2          MR. CYSEWSAI:  -- you know -- because what

3   they would do is just get bigger and better law firms

4   and -- you know --

5          MR. AL-NAJJAR:  Yeah.

6          MR. CYSEWSAI:  -- but, like I said, we used

7   to be partnered, but we kind of --

8          MR. AL-NAJJAR:  Yeah.

9          MR. CYSEWSAI:  And it served the purpose for

10  a while, but --

11         MR. AL-NAJJAR:  Yeah.

12         MR. CYSEWSAI:  -- we're much more -- much

13  more effective without them, you know?  And we invoked

14  all the guidelines under the Making Homes More

15  Affordable Act.  So, I mean --

16         MR. AL-NAJJAR:  Yeah.  So -- and the Making

17  Homes More Affordable, that's what's running out.

18  Right?

19         MR. CYSEWSAI:  Yeah, yeah.

20         MR. AL-NAJJAR:  Okay.  But, I mean, so -- I

21  mean, am I going to qualify for that?

22         MR. CYSEWSAI:  Well, sure.  I already

23  qualified you.  I'm a senior advisor here.  I'm one of

24  the most senior guys here.

25         MR. AL-NAJJAR:  Yeah.               For The Record, Inc.

26  (301) 870-8025 - www.ftrinc.net - (800) 921-5555

PX24 - 32

30

1          MR. CYSEWSAI:  So, yeah, you qualify.

2          MR. AL-NAJJAR:  Okay.

3          MR. CYSEWSAI:  Based on hardship -- based on

4      the information you've given me, you've had a

5      hardship.

6          MR. AL-NAJJAR:  Yeah.

7          MR. CYSEWSAI:  And, you know, you're going

8      to have -- have time to extrapolate on a hardship

9      letter in a little more detail.

10          MR. AL-NAJJAR:  Right.

11          MR. CYSEWSAI:  I'll give you a sample or

12     we'll give you a sample of one of them.  But -- yeah,

13     you qualify based on that.  You qualify based on a

14     reduced payment.  Your income has been reduced.

15     That's not hard to prove, you know?  And you've got

16     pay stubs from before and you've got pay stubs now

17     or --

18          MR. AL-NAJJAR:  Yep.

19          MR. CYSEWSAI:  -- W-2s or whatever, so --

20          MR. AL-NAJJAR:  Yep.  Okay, all right.

21     So -- well, this is -- yeah, no, this is -- this is

22     exactly what I wanted to hear today.  What -- so what

23     would be the next steps going forward from here?

24          MR. CYSEWSAI:  The next step is we get the

25     complete address and start with some documents in an          For

26     The Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

31

1    e-mail to you so you can print out.

2              MR. AL-NAJJAR:  Yeah.

3              MR. CYSEWSAI:  And sign them -- fill them

4    in, sign them and either fax them or e-mail them back

5    to me.

6              MR. AL-NAJJAR:  Okay.

7              MR. CYSEWSAI:  I only need four documents, a

8    total of nine pages, that come to you at this point.

9              MR. AL-NAJJAR:  Okay.

10             MR. CYSEWSAI:  When I receive them back,

11   your file will go through another screening process

12   with processing -- as it enters into processing, and

13   within 24 to 48 hours you'll be assigned a personal

14   processor.

15             MR. AL-NAJJAR:  Okay.

16             MR. CYSEWSAI:  They'll be right there for

17   you every step of the way and giving you updates and

18   so on.

19             MR. AL-NAJJAR:  All right.  That sounds --

20   okay.  I mean, but when -- when do I need to pay --

21   like, make that first $650 payment?

22             MR. CYSEWSAI:  Well, it depends when you

23   can.  I mean, if you want to go to work -- if you want

24   us to go to work -- let's say if you want us to go to

25   work tomorrow, Friday the 21st, right --        For The Record,

26   Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

1            MR. AL-NAJJAR:  Yeah.

2            MR. CYSEWSAI:  -- the first payment would be

3    due on November the 4th.  We will go to work two weeks

4    in advance.

5            MR. AL-NAJJAR:  Okay.

6            MR. CYSEWSAI:  There's not a lot of

7    companies out there that won't -- that go to work

8    without a deposit or an up-front fee or a retainer

9    fee.

10           MR. AL-NAJJAR:  Yeah.

11           MR. CYSEWSAI:  We're going to trust you --

12   even though you're three months -- you know, we're

13   going to trust you on your word that we're going to go

14   through and start a bunch of work before we get that

15   first draw.

16           MR. AL-NAJJAR:  Okay, all right.  Well, that

17   sounds good.  So on my end, the last thing I need to

18   do, everything you've told me is pretty good and I've

19   been taking notes.  So the last thing I need to do is

20   talk to my wife.  And I have your private number now,

21   or your direct -- your direct number, anyway.  And so

22   you guys are in Mountain time zone, right?

23           MR. CYSEWSAI:  Yes.

24           MR. AL-NAJJAR:  Okay.

25           MR. CYSEWSAI:  Now, may I -- may I e-mail                For

26   The Record, Inc.    (301) 870-8025 - www.ftrinc.net - (800) 921-5555

33

```
1    you just some information, mostly website, and I'm
2    going -- a website link to the Better Business Bureau.
3    You'll see that we've got an A-plus rating.  We're in
4    good standing.
5              MR. AL-NAJJAR:  Yeah.
6              MR. CYSEWSAI:  I've got a website that has
7    success stories that the lenders have validated,
8    proved success with them on their letterhead.
9              MR. AL-NAJJAR:  Yeah.
10             MR. CYSEWSAI:  You know, this is -- that's
11   (inaudible).  You know, I want you to take a look at
12   that website.  But you'll see that there are
13   affiliates that we have worked with and we have
14   partnered with, have been -- you can go to that
15   website, look up Bank of America, Chase, Wells
16   Fargo, U.S. Bank, and click on it and see hundreds of
17   cases -- well, you know, what we've done.  It's just a
18   sampling, random sampling.
19             MR. AL-NAJJAR:  Yeah.
20             MR. CYSEWSAI:  So, you can see.  And you
21   don't have, you know, to believe my words.  See what
22   the lenders are saying.  I mean, this is on their
23   letterhead or the federal document letterhead.
24             MR. AL-NAJJAR:  Yeah.  All right.  Well,
25   yeah, no, I've love to take a look at that.  Yeah.        For
26   The Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555
```

34

1    So, sure, you need -- you ready to write down my

2    e-mail address?

3              MR. CYSEWSAI:  Yeah, I'm ready to go.

4              MR. AL-NAJJAR:  Okay.  It's ███████, as

5    it's spelled --

6              MR. CYSEWSAI:  Okay.  Can you hold one

7    moment, please?  Let me put this on hold.

8              MR. AL-NAJJAR:  Sure.

9              (On hold.)

10             MR. CYSEWSAI:  I'm sorry, I've been

11   expecting a call back from the doctor.  So --

12             MR. AL-NAJJAR:  Oh, okay.

13             MR. CYSEWSAI:  It came from the same area,

14   but it's not -- okay, █████.

15             MR. AL-NAJJAR:  ██████, as it's spelled,

16   my last name, and then ████████.

17             MR. CYSEWSAI:  Okay.  I'm going to spell

18   this out letter for letter so I got it correct.

19             MR. AL-NAJJAR:  Okay.

20             MR. CYSEWSAI:  Okay.  ████, so like █████,

21   ████.

22             MR. AL-NAJJAR:  Yeah.

██             MR. CYSEWSAI:  ████████████████████

24   █████████████████, that's one-two

25   digits --              For The Record, Inc.   (301) 870-8025 -

26   www.ftrinc.net - (800) 921-5555

```
1              MR. AL-NAJJAR:  Yep.

2              MR. CYSEWSAI:  -- ████████.

3              MR. AL-NAJJAR:  Yep, that's it.

4              MR. CYSEWSAI:  Okay.  I'm going to send this

5      to you.  Also, in there I'm going to put the page, a

6      document that's called the settlement stipulation.

7      This is like one page out of 1,200 and some odd pages.

8      It's a law document on the Making Homes More

9      Affordable Act.

10             MR. AL-NAJJAR:  Okay.

11             MR. CYSEWSAI:  But basically I'm only going

12     to give you one page because you don't want to try to

13     go through 1,200 pages.

14             MR. AL-NAJJAR:  Yeah, I don't have the time

15     for that.

16             MR. CYSEWSAI:  But this part will say that

17     you're protected by federal law, you know.

18             MR. AL-NAJJAR:  Yeah.

19             MR. CYSEWSAI:  Anyway, I'll put that in

20     there, ██████

21             MR. AL-NAJJAR:  Yeah.

22             MR. CYSEWSAI:  And --

23             MR. AL-NAJJAR:  All right.

24             MR. CYSEWSAI:  I'll get this e-mail to you

25     here in just a few, and you can look at those website        For

26     The Record, Inc.    (301) 870-8025 - www.ftrinc.net - (800) 921-5555
```

1    links and --

2              MR. AL-NAJJAR:  Yeah.

3              MR. CYSEWSAI:  -- get comfortable about us

4    and who we are and, you know, been here -- started

5    five and a half years ago or so and we're still here.

6    So --

7              MR. AL-NAJJAR:  Yeah.  No, I can't wait to

8    look through that.  And I -- yeah, so I have your

9    number so you'll be hearing from me soon, and I'll

10   take a look at those documents in the e-mail tonight.

11             MR. CYSEWSAI:  Okay.  It will say loan

12   modification information.

13             MR. AL-NAJJAR:  Okay.

14             MR. CYSEWSAI:  So -- in the subject line and

15   your inbox, check your spam box, whatever.  So --

16             MR. AL-NAJJAR:  Okay.  Yeah, no, I'll look

17   for it if it goes anywhere else.

18             MR. CYSEWSAI:  Okay, ▮▮▮▮, I look forward

19   to talking with you in the morning -- maybe we can

20   talk in the morning.  I've got some appointments in

21   the afternoon outside of the office.  But --

22             MR. AL-NAJJAR:  Okay.  Yeah, yeah, give me a

23   call tomorrow morning.

24             MR. CYSEWSAI:  Okay, I'll do that.

25             MR. AL-NAJJAR:  All right, thank you.          For The

26   Record, Inc.   (301) 870-8025 - www.ftrinc.net - (800) 921-5555

37

1          MR. CYSEWSAI:  You have a good evening.

2          MR. AL-NAJJAR:  Yeah, you, too.  All right.

3    Bye.

4          MR. CYSEWSAI:  Bye.

5          (The call was concluded.)

6          (The recording was concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          For The Record, Inc.   (301) 870-8025 - www.ftrinc.net -

26    (800) 921-5555

38

```
 1              CERTIFICATE OF TRANSCRIPTIONIST

 2

 3         I, George Quade, do hereby certify that the

 4    foregoing proceedings and/or conversations were

 5    transcribed by me via CD, videotape, audiotape or

 6    digital recording, and reduced to typewriting under my

 7    supervision; that I had no role in the recording of

 8    this material; and that it has been transcribed to the

 9    best of my ability given the quality and clarity of

10    the recording media.

11         I further certify that I am neither counsel

12    for, related to, nor employed by any of the parties to

13    the action in which these proceedings were

14    transcribed; and further, that I am not a relative or

15    employee of any attorney or counsel employed by the

16    parties hereto, nor financially or otherwise

17    interested in the outcome of the action.

18

19

20    DATE:  4/17/2017        S/George Quade

21                           GEORGE QUADE, CERT

22

23

24

25              For The Record, Inc.   (301) 870-8025 - www.ftrinc.net -

26    (800) 921-5555
```

# Attachment B



# M Gmail

███████████████████████████████

## Loan Modification Information

**Paul Cysewski <pcysewski@consumerdefense.com>**              Thu, Oct 20, 2016 at 4:04 PM
To ████████████████████

██████



It was a pleasure to meet and talk with you on the phone today. My sole purpose here at Consumer Defense is to save your home from foreclosure and to get you a payment that is much more manageable with your current reduced income. I look forward to talking with you Tomorrow and getting started on the process of a Loan Modification.


**Thank You,**

**Paul Cysewski**
**Senior Modification Advisor**

888-980-7834
888-334-7255  Fax Number

**Website links:**


A+ BBB rating Consumer Defense: http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-22310080/


http://www.bbb.org/utah/business-reviews/loan-modification/consumer-defense-llc-in-sandy-ut-

The second one is a link to references from folks that have had a modification completed for them recently.

**Success Stories**: For past home loan modification references, go to:
http://www.attorneyloanmodifications.com/success-stories/


Confidentiality Notice: This message, including any attachment(s), may contain confidential information protected by law. The information contained herein is for the sole use of the intended recipient(s). If you have received this message in error, please contact the sender at the e-mail address listed above and destroy all copies of the original message, including any attachments. Thank you.

📄 **Settlement Stipulations.pdf**
154K

# Attachment C

"The servicing standards make foreclosure a last resort by requiring servicers to evaluate homeowners for other loss mitigation options first. In addition, **banks will be restricted from foreclosing while the homeowner is being considered for a loan modification.** The new standards also include procedures and timelines for reviewing loan modification applications and give homeowners the right to appeal denials. Servicers will also be required to create a single point of contact for borrowers seeking information about their loans and maintain adequate staff to handle calls.

The agreement will be filed as a consent judgment in the U.S. District Court for the District of Columbia. Compliance with the agreement will be overseen by an independent monitor, Joseph A. Smith Jr. Smith has served as the North Carolina Commissioner of Banks since 2002. Smith is also the former Chairman of the Conference of State Banks Supervisors (CSBS). The monitor will oversee implementation of the servicing standards required by the agreement; impose penalties of up to $1 million per violation (or up to $5 million for certain repeat violations); and publish regular public reports that identify any quarter in which a servicer fell short of the standards imposed in the settlement.

**The agreement does not prevent any action by individual borrowers who wish to bring their own lawsuits. State attorneys general also preserved, among other things, all claims against the Mortgage Electronic Registration Systems (MERS), and all claims brought by borrowers."**

PX 25

# EXHIBIT 25

# SUPPLEMENTAL DECLARATION OF JENNIFER YADOO

**FIRST SUPPLEMENTAL DECLARATION OF**
**JENNIFER YADOO**
**PURSUANT TO 28 U.S.C. § 1746**

I, Jennifer Yadoo, declare that:

1.      I have personal knowledge of the facts as set forth below.

2.      I am a citizen of the United States and am over eighteen (18) years of age.  As described in my initial declaration pertaining to this case, PX 22, I am a Paralegal Specialist for the Federal Trade Commission ("FTC").

3.      I have been assigned to work on the Commission's investigation of Defendants Consumer Defense, LLC ("Consumer Defense – Nevada"); Consumer Link, Inc. ("Consumer Link"); Preferred Law, PLLC ("Preferred Law"); American Home Loan Counselors; American Home Loans, LLC ("American Home Loans"); Consumer Defense Group, LLC, f/k/a Modification Review Board, LLC ("Consumer Defense Group"); Consumer Defense, LLC ("Consumer Defense – Utah"); Brown Legal, Inc. ("Brown Legal"); AM Property Management, LLC ("AM Property"); FMG Partners, LLC ("FMG Partners"); and Zinly, LLC ("Zinly") (collectively, the "Corporate Defendants"); and Jonathan P. Hanley; Sandra X. Hanley; and Benjamin R. Horton (collectively, the "Individual Defendants").

4.      During the investigation, the FTC received complaints from the Better Business Bureau of Utah. The BBB typically solicits business responses to complaints it receives.  In addition to consumer complaints, the BBB also provided Defendants' responses to those complaints.  Jonathan Hanley responded to some of the complaints filed by consumers on behalf of Preferred Law, PLLC, Consumer Defense, LLC, and Modification Review Board, LLC. In some cases, Jonathan Hanley identified himself as "General Manager."  True and correct

redacted copies of complaints which include Jonathan Hanley's responses are attached to this declaration as **Attachment A.**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements made in this declaration are true and correct.

Executed in Washington, D.C., on December 29, 2017.

Jennifer Yadoo

**FIRST SUPPLEMENTAL DECLARATION OF**
**JENNIFER YADOO**
**PURSUANT TO 28 U.S.C. § 1746**

I, Jennifer Yadoo, declare that:

1.      I have personal knowledge of the facts as set forth below.

2.      I am a citizen of the United States and am over eighteen (18) years of age.  As described in my initial declaration pertaining to this case, PX 22, I am a Paralegal Specialist for the Federal Trade Commission ("FTC").

3.      I have been assigned to work on the Commission's investigation of Defendants Consumer Defense, LLC ("Consumer Defense – Nevada"); Consumer Link, Inc. ("Consumer Link"); Preferred Law, PLLC ("Preferred Law"); American Home Loan Counselors; American Home Loans, LLC ("American Home Loans"); Consumer Defense Group, LLC, f/k/a Modification Review Board, LLC ("Consumer Defense Group"); Consumer Defense, LLC ("Consumer Defense – Utah"); Brown Legal, Inc. ("Brown Legal"); AM Property Management, LLC ("AM Property"); FMG Partners, LLC ("FMG Partners"); and Zinly, LLC ("Zinly") (collectively, the "Corporate Defendants"); and Jonathan P. Hanley; Sandra X. Hanley; and Benjamin R. Horton (collectively, the "Individual Defendants").

4.      During the investigation, the FTC received complaints from the Better Business Bureau of Utah. The BBB typically solicits business responses to complaints it receives.  In addition to consumer complaints, the BBB also provided Defendants' responses to those complaints.  Jonathan Hanley responded to some of the complaints filed by consumers on behalf of Preferred Law, PLLC, Consumer Defense, LLC, and Modification Review Board, LLC. In some cases, Jonathan Hanley identified himself as "General Manager."  True and correct

# Modification Review Board, LLC

**Case #:** 10640036

| | | | |
|---|---|---|---|
| **Consumer Info:** |  | **Business Info:** | Modification Review Board, LLC<br>9035 S 700 E Ste 203<br>Sandy, UT 84070<br>(888) 980-7078 |

**Date Filed:** 5/26/2015 7:08:46 PM

**Nature of the Complaint:** Contract Issues

**Consumer's Original Complaint:**

My husband and I sought the assistance of Modification Review Board to help us modify our mortgage with USAA. We were given a guarantee that they would be able to obtain a modification of our loan. We were told that we would need to pay $3896 in order to obtain this modification using their services. I questioned whether it was legal to pay for these services up front and was told that each month we would make a payment in the amount of 974 which would cover their services and that work would be ongoing with our case. They stated that by the last and fourth payment we should have a modification on our home loan. I emailed paystubs, bank accounts, financial forms, letters etc. almost monthly to them to be forwarded to USAA. I was told on severeal occassions that everything was fine and not to worry. I questioned the length of time it was taking in January and was told it is a lengthy process. On March 25, 2015 we receved a letter from USAA accelorating our mortgage and putting us in foreclosure. I immediately called USAA who told me that they had never received a modification package from Modification Review Board/Preferred Law. That they had received a cease and dissist order and a few random documents, but no formal package. I call Preferred Law/ Modification Review Board who told me that our package had been submitted on march 23. I spoke to USAA again and they stated that the package was incomplete and innaccurate. I then faxed all of our documents to USAA myself. When I spoke to Preferred Law again they told me that USAA had told them the file was complete and we should be expecting a decision soon. I then received a letter from USAA stating that more documents were needed to complete our review. I again faxed all of our documents myself and dealt with USAA. I was told that our file was finally in review as of May 6 2015 after my fax of May 4. I emailed modification review board to explain my concerns with their services and to request a refund. I was told that they had done what they were supposed to do and that USAA was lying to me. My last email communications to them have been unanswered

**Consumer's Desired Resolution:**

A full refund of all money paid to them

# Complaint Timeline

| | |
|---|---|
| **05/27/2015** | Pending initial BBB review: Process complaint<br>**kgarcia@utah.bbb.org** |
| **05/27/2015** | Pending initial Business response: Action taken<br>**kgarcia@utah.bbb.org** |

| | | |
|---|---|---|
| 06/07/2015 | Reminder sent to Business: Action Taken **Threshold Application** | |
| 06/15/2015 | Business HAS NOT responded to Reminder: Action Taken (No Letters) **Threshold Application** | |
| 06/22/2015 | Final Reminder Sent to Non AB Business: Action taken kgarcia@utah.bbb.org | |
| 06/30/2015 | No response: Action Taken **Threshold Application** | |
| 04/28/2016 | Reopened Complaint: Complaint Reopen jslavik@utah.bbb.org | |
| 04/28/2016 | Pending consumer Response: Action taken jslavik@utah.bbb.org | |
| 04/28/2016 | Pending BBB review of Consumer rejection: Action Taken: Extranet ▮▮▮▮▮ | |
| 04/29/2016 | Pending Business Response of Rejection: Action taken jslavik@utah.bbb.org | |
| 04/29/2016 | Business responded to rejection: Action Taken: Extranet jhanley@modificationreviewboard.com | |
| 04/29/2016 | Pending consumer rebuttal response: Action taken jslavik@utah.bbb.org | |
| 05/01/2016 | Pending BBB Review of Consumer 2nd Rejection: Action Taken: Extranet ▮▮▮▮▮ | |
| 05/02/2016 | 3 Day Hold for Consumer: Manual state change jslavik@utah.bbb.org | |
| 05/06/2016 | Consumer HAS NOT responded to extension: Action Taken (No Letters) **Threshold Application** | |
| 05/06/2016 | Answered: Action taken jhouskeeper@utah.bbb.org | |

# Complaint Messages

**04/28/2016 – Mrs. ▮▮▮▮▮▮**
I do not accept the response made by the business to resolve this complaint

Complaint: 10640036

I am rejecting this response because: The response to our complaint gives false information. We did not have an original modification that we defaulted on. We were seeking the help of modification review board in order to obtain a first modification which they failed to do. They give no explanations to why they never sent a complete modification package to USAA. The only reason I was able to get USAA to attach our late payments to the end of our loan was because of the work I did myself after Modification Review Board failed to do the things they promised. We now have a mortgage payment that is $500

more than our original payment. We were told that they would guarantee to lower our payment. Not to mention that they took money prior to actually getting a modification which is illegal. I have been contacted by the Consumer Finance Protection Fraud Unit in regards to their practices. I had requested a refund of the money paid and they never returned my communications. They stated that they tried to contact us on several occasions in June, but that is untrue, we were never contacted by them. I am requesting that they refund the money paid to us as per their "written guarantee" as THEY did not obtain the modification of adding the arrears to our mortgage. We would not have had so many late payments had they done the things they said they would do in a timely manner. Thank you for your attention to this matter.

Sincerely,

███████████

**04/29/2016 - Jonathan Hanley**
Respond to Complaint
We worked diligently and accurately on their behalf and we have again emailed her the forms that were sent three times in the month of June.  Of course we like to end our client relationship on a good note.  Therefore we would like her to follow up with us so we can resolve the issue in both of our best interests. We have emailed her the necessary paperwork and will wait to hear from her.

**05/01/2016 - Mrs. ███████████**
I do not accept the response made by the business to resolve this complaint

Complaint: 10640036

I am rejecting this response because: I went back through my emails from June 2015 and I received nothing from them. I did receive an email from them on 4/29/2016 with an "audit" form i am supposed to fill out so that they can "audit" my account and determine whether they will refund my money. If they are so sure they acted diligently and accurately and already know the details of my situation, then why are they asking for an "audit" form. I'm sure it is just another tactic to tell me that they will not refund my money because they did what they were supposed to do. Why did it take them a year to respond to my complaint here. I submitted this complaint in May 2015 and finally got a response April 2016. They did not act diligently and accurately on our case. They did nothing and caused us to become 8 months behind on our mortgage along with late fees and foreclosure fees that got tacked on because of their negligence. USAA never received a full and accurate modification package from them, just random papers a few times, not even accurate or up to date patsy's or bank statements. I WAS THE ONE WHO FINALLY SUBMITTED A FULL PACKAGE MYSELF.  I will submit the audit form and give an update when I receive an answer.

Sincerely,

███████████

## Preferred Law, PLLC

**Case #:** 10382761

| | | | |
|---|---|---|---|
| **Consumer Info:** |  | **Business Info:** | Preferred Law, PLLC<br>8180 S 700 E Ste 110<br>Sandy, UT 84070 |

**Date Filed:** 5/26/2014 12:36:37 AM

**Nature of the Complaint:** Guarantee Or Warranty Issues

**Consumer's Original Complaint:**

Preferred Law told me it would take 2 to 3 mo's. to complete My Loan Modif and they failed it took 7 mo's, and I was also given a guaranteed letter. When I first contacted Preferred Law in regards to my Home Loan Modification I spoke a person by the name of Deann and Ashley Osborne was the one handling my Home Loan Modification and a few other people working for this law firm asured me that they could help with the loan modif. It took them 7 months to only give me a disappointment at the end and told me that it did not go through. They also gave me a guaranteed letter to assure me that they work hard to help people with their home loans. Bank of America kept calling me to let me know that they were still missing items to make a decision on the loan and every time I contacted Preferred Law they kept telling me that Bank of America was lying and that they were send all documents to them. I don't think the bank is going to lie about that because preferred Law kept asking me to send in the same documents over and over again. I believe it was because the kept loosing them or were just lacking the effort to get my loan modification complete. They drag it on for 7 months to assure they can withdraw there six months contract agreement and then I received a letter stating that I was to pay around 280.00 fees while they continued to work on my Loan Modification because they had already got paid their money to help me but they really didn't they just helped them self to charge me and knowing that the bank has the last word on the decision not Preferred Law they made me believe that they would get me a lower Payment or some kind of Modification. I had been doing this Loan Modification on my own but kept getting denied so I thought that a law firm could probably help me and they didn't. They did nothing different then I did. I believe they just took my money and did nothing for me. So I'am asking to return all money paid to Preferred Law they failed there term of 2 to 3 months that I was given and failed to get me a Loan modification for my home. I was given a guaranteed letter. If a business is going to give a guaranteed letter to their clients then that is because they are sure of what they are telling you what they can do, but again they did nothing for me. So again I ask for my 3,900.00 back I paid my fees for their help but didn't get anything in return. Thank you for you time and understanding. other people I spoke with Candice Davies and Amber Orazem, and Bobbi Collins.

**Consumer's Desired Resolution:**

I am asking for the money that I paid for services and for they assured me that they can and would make sure that I got a Loan Modification on my home wither it be to lower payment, or reinstate my Loan or any of the other Loan Modifications being offered. The amount I am asking for is 3,900.00

Thank You for your time and understanding

# Complaint Timeline

| | |
|---|---|
| **05/26/2014** | Complaint Received by BBB: Process complaint **web** |
| **05/28/2014** | Inform Business of the Complaint: Legacy **Otto** |
| **05/28/2014** | Send acknowledgement to Consumer: Legacy **Otto** |
| **05/28/2014** | Complaint Reviewed by BBB Operator: Legacy **lwest@utah.bbb.org** |
| **06/04/2014** | Forward Business response to Consumer: Legacy **lwest@utah.bbb.org** |
| **06/04/2014** | More info received from the consumer: Legacy **lwest@utah.bbb.org** |
| **06/04/2014** | Receive Business Response: Legacy **WEB** |
| **06/06/2014** | Received Consumer Rebuttal: Legacy **WEB** |
| **06/20/2014** | Case Closed AJR: Legacy **Otto** |
| **06/20/2014** | Inform Business - Case Closed AJR: Legacy **Otto** |
| **06/20/2014** | Inform Consumer - Case Closed AJR: Legacy **Otto** |
| **06/20/2014** | Bureau judged complaint resolved: Legacy **lwest@utah.bbb.org** |
| **06/23/2014** | More info received from the business: Legacy |

# Complaint Messages

**06/04/2014 - Imported**
More info received from the consumer
Duplicate Complaint filed. Deleted Case #22165617

I contacted Preferred Law about my Loan Modification and explained the situation and they promised and assured me that with their services they would work so hard to ensure that my Loan Modification will come through and they didn't. They only tell you what you want to here so that you can sign an agreement with them, and they also told me that the Loan Modification would take 2 to 3 months and it took them nearly 8 months just to tell me at the end that they were not able to come through and all they can do is apologize sorry sorry sorry. There is no law firm that can make the final decision, but the

bank..they only help them self to automatically withdraw your money and do nothing. It took them that long only to give me a disappointment. They also gave me a Guaranteed Letter that they can get me a loan modification and they failed to do what they said they would do..I would like my money back. Giving me a Guaranteed Letter means that the business which is Preferred Law is sure of what they tell you and they are sure your loan modification will come through. I would like my money back because Preferred Law failed to comply with a Guaranteed Letter, and they also sent me a letter toward the end to charge me around 289.00 fees while the continued to work on until it closed but they didn't get any of that.█████████████20-14
Product_Or_Service: Loan Modification

DesiredSettlementID: Refund
I was given a Guaranteed Letter. I a bussiness is willing to give someone a Guaranteed Letter then it is because they are sure of what they can do for you and are sure of what they tell you, right.


**06/04/2014 – Imported**
Receive Business Response
Contact Name and Title: Jon Hanley General Manager
Contact Phone: 801.386.5100 ext 203
Contact Email: bcollins@preferredlawteam.com
We have worked diligently on Ms. ███████ case. We had options for Ms. ██████ which she refused. However we want to address any and all concerns she may have. This is why we agreed to review her file for a refund per her request. We sent our internal audit forms to Ms. ██████ on May 12th. To this day we still have not received the audit forms back. As mentioned if she will follow up with us and return the audit form we will work quickly on reviewing her file for a refund.


**06/06/2014 – Imported**
Received Consumer Rebuttal
(The consumer indicated he/she DID NOT accept the response from the business.)
They claimed to have worked diligently but not good enough. It took more than 2-3 months but they took more than 6 months due to they wanted to make sure that they got their money paid, because if they would have got it done within the time frame they gave me, and if my loan modification would have not gone through by that time frame then I would not have finished paying them due to false information given to me once again I was given a gauranteed letter and they assured me it would come through as long as I sent them all documets they requested and as long as the monely was in my account on the date they would withdraw the money, and my lender at the time was Bank of America they called me many times asking for documents that they hadnt received from Preferred Law. I spoke to Preferred Law inregards to this and they said Bank of America
was lieing. I think Preferred Law was delaying the process to get their six months withdraw from my Bank. I never recieved an audit form or I would have responded to it and as far as them saying they gave me an option was only to charge me more money when I told them I was going to contact Keep Your Homes California people for help after loosing 3,900.00 Preferred Law asked me to send them a number

that Keep Your Home Californis people would give me once a case was open with them and then Preferred Law said they can continue working with them, but at that time I didn't beleive they could help with this Loan...The Bank has the say first of all not Keep Your Home California and not even Preferred Law, but will contact Preferred Law about this audit form they say they sent. Thank You and I hope to resolve this matter.

**06/23/2014 – Imported**
More info received from the business
Although we feel as though we worked diligently and accurately on Ms. █████ behalf, we have agreed to complete a full audit of her file regarding the work completed and fees paid to determine if a refund is possible. Per Ms. █████ request for a refund we mailed and emailed our internal audit forms which were just received today June 23, 2014. We will reach out to Ms. ████ once we complete our Audit regarding her request.

# EXHIBIT 26

# FIRST SUPPLEMENTAL DECLARATION OF ELIZABETH FELDSTEIN

## FIRST SUPPLEMENTAL DECLARATION OF
## ELIZABETH FELDSTEIN
## PURSUANT TO 28 U.S.C. § 1746

I, Elizabeth Feldstein, declare that:

      1.     I have personal knowledge of the facts as set forth below.

      2.     I am a citizen of the United States and am over eighteen (18) years of age.  As described in my initial declaration pertaining to this case, PX 20, I am a Paralegal Specialist for the Federal Trade Commission ("FTC").

      3.     I have been assigned to work on the Commission's investigation of Defendants Consumer Defense, LLC ("Consumer Defense – Nevada"); Consumer Link, Inc. ("Consumer Link"); Preferred Law, PLLC ("Preferred Law"); American Home Loan Counselors; American Home Loans, LLC ("American Home Loans"); Consumer Defense Group, LLC, f/k/a Modification Review Board, LLC ("Consumer Defense Group"); Consumer Defense, LLC ("Consumer Defense – Utah"); Brown Legal, Inc. ("Brown Legal"); AM Property Management, LLC ("AM Property"); FMG Partners, LLC ("FMG Partners"); and Zinly, LLC ("Zinly") (collectively, the "Corporate Defendants"); and Jonathan P. Hanley; Sandra X. Hanley; and Benjamin R. Horton (collectively, the "Individual Defendants").

**State Bar Association & Licensee Searches**

      4.     On or around January 5, 2018, I visited the website for the Utah Bar Directory of Attorneys at <https://services.utahbar.org/Member-Directory>.  I searched for "Hanley" under the last name field.  Neither Jonathan Hanley nor Sandra Hanley appeared as a match.  I searched for "Horton" under the last name field.  The search results included a listing for Benjamin Horton (Bar Number 11452).  The search results listed his organization as Preferred Law, PLLC and his status as "SuspDisc."  When I clicked on the entry for Benjamin Horton, the business

contact information listed Preferred Law, PLLC's mailing address as 2825 E Cottonwood Pkwy, STE 500, Salt Lake City, Utah 84121.

5.        On or around January 5, I visited the website for the State Bar of Texas "Find a Lawyer" page at <https://www.texasbar.com/findalawyer/>.  I searched for "Hanley" under the last name field.  Neither Jonathan Hanley nor Sandra Hanley appeared as a match.  I searched for "Horton" under the last name field.  The search results included a listing for Benjamin Richard ("Ben") Horton.  The search results listed his primary practice location as Sandy, UT and his address as 2825 E Cottonwood Pkwy, STE 500, Salt Lake City, UT 84121.  I clicked on the entry for Benjamin Horton, which identified his bar card number as 24053273.  The profile stated that Benjamin Horton was eligible to practice in Texas, and that the profile was last certified on January 1, 2016.

6.        On or around January 5, 2018, I visited the website for the Connecticut Department of Banking page on Debt Negotiators Licensed in Connecticut at <http://www.ct.gov/dob/cwp/view.asp?a=2233&q=449828>.  The page included a link to a downloadable file of debt negotiators licensed to do business in Connecticut.  I downloaded the excel file and reviewed the licensees listed.  None of the Defendants appeared to be on this list.

7.        On or around January 5, 2018, I visited the website for the Oregon Division of Financial Regulation page "Check a license" at <http://dfr.oregon.gov/gethelp/Pages/check-license.aspx>.  I clicked on the link entitled "Debt management service providers."  The page had a link to a downloadable file of licensed debt management/HUD foreclosure counseling licensees.  I downloaded the text file and reviewed the licensees listed.  None of the Defendants appeared to be on this list.

## Consumer Complaints and Interviews

8.      In developing an investigation, many of the initial leads derive from consumer complaints.  FTC staff interviewed numerous consumers who had interactions with the Defendants.  In many cases, consumers had physical documents and emails received from the Defendants that they shared with the FTC.

9.      I primarily obtained consumer complaints from two sources: the Consumer Sentinel Network and the Better Business Bureau ("BBB").  Consumer Sentinel is a database of consumer complaints maintained and administered by the FTC.  The database receives complaints from consumers who directly contact the FTC, as well as from the FTC's partnership with other law enforcement agencies and consumer protection organizations.

10.      The BBB typically solicits business responses to complaints it receives.  In addition to consumer complaints, the BBB provided any responses made by the Defendants.

11.      Over the course of this investigation, I conducted telephone interviews of several consumers who signed up for Defendants' services.  I also spoke with one former employee of Defendants'.  This declaration describes my recollection of those interviews.

## Interview with Laura

12.      Laura is a former employee of Defendants who resides in Sandy, Utah.  I obtained Laura's contact information from a consumer who had been in contact with her.  FTC counsel Ioana Gorecki and I spoke with Laura on or around April 26, 2017.

13.      Laura told us that in or around May 2014, she answered an advertisement in a local newspaper for a receptionist job opportunity at a company called Preferred Law.  The company was located in Sandy, Utah.  Laura said that she interviewed for the position and was hired shortly thereafter.

14.     Laura started working at Preferred Law on or around May 19, 2014.  Her duties involved answering the phones at Preferred Law's main reception desk.  She worked at Preferred Law for approximately two weeks.

15.     During her employment, Laura noticed that Preferred Law operated under several different names.  For example, when she got her first paycheck, the company name listed was "Modification Review Board."  However, her W2 statement came from "Preferred Law."  She also remembered the company using the name "American Home Loan Counselors."

16.     While working as a receptionist for Preferred Law, Laura received numerous calls from Preferred Law's clients.  Laura said that often times, clients would call because they could not get in touch with their Preferred Law representative.  The clients would tell Laura that they had left many messages for their representative but had not received a call back.  In these cases, Laura was told to transfer the client to that representative's voicemail or to take down their message.

17.     Laura said that in some cases, these representatives that the clients were seeking had either quit or been fired, and no one had informed the clients.  In other cases, although the representatives were still employed by Preferred Law, they did not seem to return clients' messages in a timely manner.  For example, Laura noticed that in some cases, the same clients would call repeatedly and say that their representative still had not gotten back to them.

18.     Preferred Law's call center was located close to the reception desk at which Laura sat.  She said that about nine employees worked in the cubicles located in the call center, and they were on the phone all the time.  Because of the call center's proximity to her desk, she could often hear other employees' conversations with clients.  She could tell from what the employees were saying that the clients were dissatisfied and complaining about something.  Laura would

often hear employees yell at clients over the phone.  Other employees at Preferred Law told her that some of their consumers had complained multiple times.

19.     During her two weeks working for Preferred Law, Laura had conversations with another Preferred Law employee and with the employee she had replaced.  Both told her that Preferred Law takes clients' money and promises to save their homes, but that most of the time, the clients lose their houses anyway.  The employee Laura replaced told her that Preferred Law was ripping off consumers.

20.     At the end of two weeks working for Preferred Law, Laura decided to quit.

**Interview with Lorene**

21.     On or around August 15, 2017, I spoke with a consumer named Lorene, who resides in Chicago, Illinois.  Lorene filed a complaint with the BBB on or around August 1, 2017.

22.     Lorene told me that she fell behind on her mortgage in or around February 2017. Lorene had already been denied for a modification once before.  Her lender, TCF Bank ("TCF"), had not yet placed her house into foreclosure but was talking about the possibility of foreclosure. TCF recommended Lorene reach out to Hardest Hit, a government program that provided mortgage assistance.  Lorene told me that she went online, searched for "Hardest Hit," and put her information into a website that she thought was the website for the Hardest Hit program.

23.     In or around February 2017, Lorene received a call from a representative named Kester Davis at Consumer Defense.  The Hardest Hit program did not come up in their conversation, but because this was shortly after Lorene had searched for the Hardest Hit program, she believed that Consumer Defense was the program that TCF recommended she contact.  Kester said that Consumer Defense had helped several people in the past and could

prevent TCF from foreclosing on Lorene's home.  Kester told Lorene that Consumer Defense could guarantee either a mortgage modification or a new loan.  Kester said that Consumer Defense worked with TCF before and it would not be a problem to get the modification approved because they knew exactly what they needed to do.

24.      Kester asked Lorene to provide some initial personal information to Consumer Defense, which she did.  Kester subsequently called Lorene back and told her that there would be fees for Consumer Defense's services.  Kester said that if Consumer Defense was unable to obtain a modification or a new loan for Lorene, she would get her money back.  Kester said that Lorene should pay Consumer Defense instead of paying her mortgage.  He told Lorene that Consumer Defense could stop the foreclosure and that she should let Consumer Defense handle everything.  He said that Lorene should not contact her lender and that if TCF contacted her, she should have Consumer Defense respond.

25.      Lorene told me that because of the modification guarantee and the money-back guarantee, she decided to sign up with Consumer Defense.  Consumer Defense sent Lorene some paperwork with information about the fees for her to sign.  Lorene remembered that the paperwork also said that Consumer Defense was affiliated with the Better Business Bureau.  Lorene signed the paperwork.

26.      Consumer Defense took payments directly out of Lorene's checking account on or around the 14th of every month, beginning in or around February 2017.  While she was paying Consumer Defense, Lorene worked with two or three different employees.  Lorene tried to stay in touch with Consumer Defense regularly to get information about the status of her modification, but it would often take weeks and multiple follow-up attempts before she would receive a response.

27.     In or around May 2017, Lorene received a call from TCF.  Lorene told the representative that she was working with Consumer Defense.  However, the representative at TCF said that they did not know Lorene was working with a third party and that Consumer Defense had not contacted them.  Lorene subsequently called Consumer Defense to ask why they had not contacted her lender even though she had already been paying their fees for several months.  The Consumer Defense representative Lorene spoke with said that she should not have talked to her lender.  Lorene asked the representative if Consumer Defense was going to contact TCF.

28.     At some point around June of 2017, Lorene was supposed to be done with her payments to Consumer Defense.  However, in or around June, Lorene received some new paperwork from Consumer Defense to sign that would authorize them to take out additional, smaller payments.  Lorene did not sign the new paperwork authorizing them to continue to take payments out of her account.  However, Consumer Defense still took out a monthly payment on or around July 14, 2017 anyway.  Lorene subsequently contacted her bank and told them that they should not authorize any future charges from Consumer Defense.

29.     In or around August 2017, Lorene received a modification denial notice from TCF.  The notice cited a prior modification denial and her credit history as reasons why TCF was not approving the modification application.  Lorene contacted Consumer Defense to find out why she had been denied for a modification.  The representative Lorene spoke with did not know that she had been denied for a modification, and asked her to send Consumer Defense the denial letter.  The representative said that Consumer Defense would try to apply for another modification.  At that point, Lorene told the representative she thought Consumer Defense was a scam and that she would no longer be paying them.

30.     Lorene requested a refund, both over the phone and in writing.  Lorene had to contact Consumer Defense several times about a refund before receiving a response.  On or around August 9, 2017, Consumer Defense responded that they would look into her refund request.  Lorene has not heard anything from Consumer Defense since, and at the time of our conversation, her home was in foreclosure.

**Interview with Anna**

31.     In 2017, I spoke several times with a consumer named Anna, who filed a complaint with the Consumer Financial Protection Bureau on or around June 24, 2015.  Based on our conversations, I drafted a declaration summarizing her experience with the Defendants.  In or around April 2017, I read through the following paragraphs.  Anna confirmed that the above paragraphs were an accurate reflection of her experience.

a.  I am a citizen of the United States and am over eighteen (18) years of age.  I live in Chicago, Illinois.  I have personal knowledge of the facts stated herein.

b.  In or around 2010, my husband was diagnosed with cancer.  Because he had recently lost his job, he did not have medical insurance.  We had difficulty paying our mortgage because he was our main source of income.  I had to cash out my retirement savings in order to secure our home.

c.  In 2011, my husband passed away and I was no longer able to pay the mortgage.  I had tried to obtain a modification on my own, but the process was confusing.  I kept having to speak to different employees with my mortgage servicer and could not get the application processed.

d.  In late 2013 or early 2014, my home was in foreclosure proceedings.  When I attended a hearing, the judge said I needed to go online and look up the Illinois Hardest Hit

program.  The judge said that if I came back to the next hearing in 30 days having done nothing, he would put my house on the auction block.

e.  In January 2014, I went online and researched the Illinois Hardest Hit program.  When I contacted the number on their website, the representative told me that a loan counselor would call me back.

f.  Shortly after this conversation, I was contacted by a company called Preferred Law about modification services.  Because of the timing, I believed that Preferred Law was working with the Illinois Hardest Hit program and that they were located in or near Chicago.  I explained my situation, and the representative told me that no one gets a modification without legal representation anymore, which was why the judge had referred me to them.  The representative said that Preferred Law was a law firm that could guarantee a modification for me.  He said that Preferred Law would definitely be able to get my mortgage payments down from approximately $1,500 to approximately $800 a month.  The representative told me that situations like mine involving a financial hardship were the reason that modifications existed.  He said that I would be guaranteed to keep my home and would own it outright in sixteen years.

g.  The representative said that in order to sign up with Preferred Law, I would need to pay approximately $3,800.  I was told that normally, I would need to pay the fee in six payments, but because I was a widow, they would allow me to make seven payments instead of six in order to reduce the amount I had to pay each month.

h.  The representative also asked me if I was currently making payments on my mortgage.  When I told him that I was not, and could not afford to make my mortgage payments,

he said that I had to be in arrears in order to qualify for the modification program.
Because of this, I believed I needed to continue making no payments on my mortgage.

i.  I believed that Preferred Law was trustworthy because they appeared to be affiliated
with the organization the judge insisted I contact. I thought that this was my last
chance to keep my home, so I decided to sign up with Preferred Law. The
representative set up automatic withdrawals so that Preferred Law could take payments
directly out of my account.

j.  Preferred Law withdrew the first payment from my account within the next three days
and requested that I send documentation to support the modification, including bank
statements and paycheck stubs. I sent Preferred Law everything they asked for.

k.  When I returned to court for the next foreclosure hearing, I told the judge I had a
payment arrangement with Preferred Law. A representative from my mortgage servicer
attended the hearing and told the judge that they would wait on the foreclosure until the
modification application was processed.

l.  Preferred Law told me to let them communicate with my mortgage servicer on my
behalf. However, I continued to call the mortgage company each month to try to figure
out what was going on with my mortgage.

m.  Preferred Law contacted me every couple of months to ask for updated bank
statements. Roughly ten months later, Preferred Law sent me a modification package.
The proposed modification would have reduced my payments by just $20 a month. I
was shocked by this, because they had previously promised me they could reduce my
payments by several hundreds of dollars each month. I knew I would not be able to
keep my home under these terms, and was distraught.

n.  I was desperate to keep my home, so I signed up with another third-party mortgage assistance company called Ray of Hope Negotiations.  On or around December 16, 2014, we sent an affidavit to my mortgage servicer asking them to cease all communication with Preferred Law.

o.  In or around March of 2015, Preferred Law sent me another modification offer with the exact same terms as the previous offer.  I did not know why Preferred Law was still in communication with my mortgage servicer.   Ray of Hope Negotiations contacted my mortgage servicer and discovered that they had still been sending correspondence to Preferred Law and that they had been in contact with Preferred Law only once in the last ten months.  Because my mortgage servicer thought I was ignoring their correspondence, they had placed my home on the auction block.  My home was subsequently sold.

p.  After I lost my home, I called the Illinois Hardest Hit program and asked why they had referred me to a company that took my money and did not save my home.  The woman I spoke with told me they had not referred me to Preferred Law.  She could not explain how Preferred Law had obtained my contact information.

q.  I called Preferred Law every few months to request a refund, but was told that Preferred Law did not owe me any money because they had obtained a modification on my behalf – even though it was not the modification they had promised me at the beginning.  Ray of Hope Negotiations has also contacted Preferred Law on my behalf to request a refund.  Preferred Law sent Ray of Hope some paperwork I could fill out to get a refund, but Ray of Hope has since refused to forward that paperwork to me until I pay them more money.

r.   In total, I paid Preferred Law approximately $4,000.  Preferred Law did not obtain the
modification they promised, and I lost my home as a result.  For a period of time, I was
homeless and was going without food.

32.      I mailed Anna the declaration containing the above text for her signature.  I have
not received a signed declaration from Anna as of the date this declaration is signed.

**Documents from State Agencies**

33.      The FTC obtained records from the New Mexico Attorney General's Office
("New Mexico AG").  The production included documents that appear to be addressed to a
consumer named Julie from Modification Review Board.  True and correct redacted copies of
some of these documents are attached to this declaration as **Attachment A.**

34.      On or around January 5, 2018, I visited the Oregon Division of Financial
Regulation ("Oregon DFR") page < http://dfr.oregon.gov/AdminOrders/enf-orders2016/DM-15-
0011.pdf>.  When I visited the URL, my internet browser downloaded a document entitled
"Final Order to Cease and Desist and Assessing Civil Penalties."  A true and correct copy of this
document is attached to this declaration as **Attachment B.**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements made
in this declaration are true and correct.

Executed in Washington, D.C., on ___Jan 5, 2018___ .

Elizabeth Feldstein

# Attachment A

May 7, 2015

Modification Review Board, LLC
9035 S 700 E, Ste. 203
Sandy, UT 84070

**Julie** 

**Albuquerque, NM**

Re:     Service Guarantee Agreement

**Dear Julie             :**

Modification Review Board, LLC ("MRB") welcomes you. The law firm of Preferred Law has agreed to submit a Qualified Written Request on your behalf and begin performing its federal review services as documents are received from your lender. Preferred Law's services are identified in its fee agreement. Once your information is received, and unless you direct otherwise in writing, American Home Loan Counselors will initiate your modification services and will be your primary contact throughout the process.

Based on the past performance of American Home Loan Counselors with the assistance of Preferred Law's federal legal services, and our knowledge of your factual situation, MRB hereby GUARANTEES that a modification or home foreclosure alternative pursuant to the HAFA program will be secured for you conditioned upon the following terms:

☐   You allow American Home Loan Counselors to process the modification and you promptly cooperate with Preferred Law and American Home Loan Counselors at all times.

☐   All communications from your lender, if any, are immediately forwarded to Preferred Law.

☐   All documents will be returned when requested by the deadlines given.

☐   There will be no significant changes to your current circumstances.

☐   All relevant information provided by you is entirely accurate and complete

☐   All payments to Preferred Law are made on time per the Payment Schedule.

☐   You recognize that this guarantee is from MRB.

☐   Any and all disputes between the parties related to this agreement and MRB shall be resolved by binding arbitration in Salt Lake City, Utah, without appeal. You agree that any claim for damages by you against MRB for any reason shall be strictly limited only to only the fee paid by you to Preferred Law.

☐   This agreement constitutes the entire agreement between the parties relating to the transactions contemplated hereby and all other prior or contemporaneous agreements, promises, claims, understandings, representations and statements, oral or written, are merged into this agreement.

**Jonathan Hanley**
**General Manager**

I (We), the borrower(s) and homeowner(s), affirm that I (we) have received, read, and understand the foregoing agreement, and agree to the terms thereof.

**Borrower:**

Date: _____          *Sign here* ▶  _____

                               *Client Name:*  _____

**Co-Borrower:**

Date: _____          *Sign here* ▶  _____

                               *Client Name:*  _____

## EXPLANATION OF WHY YOU SHOULD DO THE MODIFICATON

Your bank will have a **Cease and Desist Order** on them so they have to wait until the modification is completed.  The Bank cannot <u>**foreclose or issue a notice of sale during**</u> the modification.  When your new loan (modification) is completed you will pay the same Bank the new lower payments & interest rate with the principal amount owed reduced.  This is a win, win situation for you.


You have to be 61 days behind on your  mortgage to be eligible for any modification.  You may continue to pay on your loan after that but it really will make no difference.  Please reconsider your options.

# Attachment B



**STATE OF OREGON
DEPARTMENT OF CONSUMER AND BUSINESS SERVICES
DIVISION OF FINANCIAL REGULATION**

| In the Matter of: | Division Case No.: DM 15-0011 |
|---|---|
| | OAH Case No.: 1604469 |
| Benjamin R. Horton, | |
| | FINAL ORDER TO CEASE AND DESIST |
| Respondent. | AND ASSESSING CIVIL PENALTIES |

On September 16, 2015, the Department of Consumer and Business Services, Division of Financial Regulation (Division or DFR) issued an Order to Cease and Desist, Proposed Order Assessing Civil Penalties and Notice of Right to a Hearing (Order to Cease and Desist) to Preferred Law PLLC, Modification Review Board LLC, American Home-Loan Counselors, and Benjamin R. Horton (Respondents). On October 5, 2015, Benjamin R. Horton, on behalf of Respondents, requested a hearing.

On February 9, 2016, the Division referred the hearing request to the Office of Administrative Hearings (OAH). The OAH assigned Senior Administrative Law Judge (ALJ) Dove L. Gutman to preside at hearing.

On February 17, 2016, the Division issued an Amended Order to Cease and Desist, Proposed Order Assessing Civil Penalties and Notice of Right to a Hearing as to Benjamin R. Horton Only (Amended Order to Cease and Desist).

On April 21, 2016, ALJ Gutman convened a prehearing telephone conference. Senior Assistant Attorney General Joanna Tucker Davis represented the Division. Benjamin R. Horton (Horton or Respondent) appeared and represented himself. During the telephone conference, ALJ Gutman set dates for the parties to file Motions for Summary Determination (June 9, 2016), Responses (June 30, 2016), and Replies (July 21, 2016). ALJ Gutman also scheduled the hearing for October 4, 2016 through October 6, 2016.

<div style="writing-mode: vertical">Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387</div>

On June 7, 2016, Horton filed Respondent's Motion for Summary Determination and attachment (Verification). On June 9, 2016, Ms. Tucker Davis filed the Division's Motion for Summary Determination (MSD) and Exhibits A1 through A37.

On June 21, 2016, Horton filed his Reply and attachment (Verification). On June 28, 2016, the Division filed its Response to Respondent's MSD. On July 21, 2016, ALJ Gutman closed the record and took the matter under advisement.

On August 9, 2016, ALJ Gutman issued a Ruling on Motion for Summary Determination, granting the Division's MSD and denying Horton's MSD. Because there were other allegations in the Division's Amended Notice to Cease and Desist that were not raised in the Division's MSD, those other allegations remained for hearing.

On September 7, 2016, the Division issued its Second Amended Order to Cease and Desist, Proposed Order Assessing Civil Penalties and Notice of Right to a Hearing as to Benjamin R. Horton Only (Second Amended Order to Cease and Desist), withdrawing all of the remaining issues for hearing and requesting that a Proposed Order be issued in the case.

On September 19, 2016, ALJ Gutman, issued an Amended Ruling on Motions for Summary Determination, and Proposed Order and concluded that all of the issues were decided and granted summary determination in favor of the Division. ALJ Gutman denied Respondent's Motion for Summary Determination.

Respondent has not filed exceptions to the Proposed Order and the time for doing so has expired.

**Therefore, having reviewed the entire record in this matter, the Director issues the following finding of fact, conclusions of law and issue a final order consistent with that proposed by OAH.**

<div align="center">ISSUES</div>

Whether there are genuine issues of material fact that remain to be determined, and if not, whether the Division or Respondent is entitled to a ruling as a matter of law.



Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

*Division's issues*

2. Whether Respondent violated ORS 86A.103(1) by engaging in residential mortgage transactions in Oregon without first obtaining a license as a mortgage broker under ORS 86A.095 to 86A.198.

3. Whether Respondent violated ORS 697.612(1)(a) by performing a debt management service without Respondent, Preferred Law PLLC (PL), Modification Review Board LLC (MRB), and American Home Loan Counselors (AHLC) being registered with the Director to provide such a service.

4. Whether Respondent violated ORS 697.612(1)(b)(A) by soliciting and receiving an application from DH and JB for a debt management service when Respondent, PL, MRB, and AHLC were not registered as debt management service providers.

5. Whether Respondent violated ORS 697.612(1)(b)(E) when Respondent, through PL, MRB, and AHLC provided advice, assistance, instruction or instruction material regarding debt management service to DH and JB when Respondent, PL, MRB, and AHLC were not registered as debt management service providers.

6. Whether Respondent, by and through PL, MRB, and AHLC violated ORS 697.692(1)(a) by accepting or receiving an initial fee of more than $50 from DH and JB.

7. Whether Respondent, by and through PL, MRB, and AHLC published an advertisement that contained a false, misleading or deceptive statement or representation in that the Oregon Department of Justice was not involved with any Preferred Law matter, in violation of ORS 86A.163(1).

8. Whether Respondent and all entities owned or controlled by Respondent shall be ordered to cease and desist from violating Oregon statutes regulating mortgage lending, ORS 86A.100 et seq., and debt management service providers, ORS 697.602 to 697.842.

9. Whether Respondent shall be ordered to pay civil penalties, jointly and severally with PL, MRB, and AHLC in the amount of $35,000 as follows:

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

Page 3 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

a. $10,000 for committing two violations of ORS 86A.103(1), ORS 697.612(1)(b)(E), ORS 697.612(1)(a);

b. $10,000 for committing two violations of ORS 697.612(1)(b)(A);

c. $10,000 for committing two violations of ORS 697.692(1)(a); and

d. $5,000 for committing one violation of ORS 86A.163(1).

*Respondent's issues*

10. Whether Respondent cannot be held liable under ORS 86A.103(1) and 86A.163(1) because Respondent did not engage or offer to engage in "residential mortgage transactions" as a "mortgage broker."

11. Whether Respondent cannot be held liable under ORS 697.612(1)(a), 697.612(1)(b)(A), 697.612(1)(b)(E) and 697.692(1)(a) because Respondent did not perform any "debt management services."

## DOCUMENTS CONSIDERED

The following documents were reviewed and considered in this matter: Respondent's MSD and attachment (Verification), the Division's MSD and Exhibits A1 through A37, Respondent's Reply and attachment (Verification), the Division's Response to Respondent's MSD, and the pleadings.

## LEGAL STANDARD FOR SUMMARY DETERMINATION

Motions for Summary Determination are governed by OAR 137-003-0580, which provides, in pertinent part:

> (1) Not less than 28 calendar days before the date set for hearing, the agency or a party may file a motion requesting a ruling in favor of the agency or party on any or all legal issues (including claims and defenses) in the contested case. The motion, accompanied by any affidavits or other supporting documents, shall be served on the agency and parties in the manner required by OAR 137-003-0520.





Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

Page 4 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97101-3881
Telephone: (503) 378-4387

(2) Within 14 calendar days after service of the motion, the agency or a party may file a response to the motion. The response may be accompanied by affidavits or other supporting documents and shall be served on the agency and parties in the manner required by OAR 137-003-0520.

(3) The administrative law judge may establish longer or shorter periods than those under section (1) and (2) of this rule for the filing of motions and responses.

*****

(6) The administrative law judge shall grant the motion for a summary determination if:

(a) The pleadings, affidavits, supporting documents (including any interrogatories and admissions) and the record in the contested case show that there is no genuine issue as to any material fact that is relevant to resolution of the legal issue as to which a decision is sought; and

(b) The agency or party filing the motion is entitled to a favorable ruling as a matter of law.

(7) The administrative law judge shall consider all evidence in a manner most favorable to the non-moving party or non-moving agency.

(8) Each party or the agency has the burden of producing evidence on any issue relevant to the motion as to which that party or the agency would have the burden of persuasion at the contested case hearing.

(9) A party or the agency may satisfy the burden of producing evidence through affidavits. Affidavits shall be made on personal knowledge, establish that the affiant is competent to testify to the matters stated therein and contain facts that would be admissible at the hearing.

(10) When a motion for summary determination is made and supported as provided in this rule, a non-moving party or non-moving agency may not rest upon the mere allegations or denials contained in that party's or agency's notice or answer, if any. When a motion for summary determination is made and supported as provided in this rule, the administrative law judge or the agency must explain the requirements for filing a response to any unrepresented party or parties.

(11) The administrative law judge's ruling may be rendered on a single issue and need not resolve all issues in the contested case.

(12) If the administrative law judge's ruling on the motion resolves all issues in the contested case, the administrative law judge shall issue a proposed order in accordance with OAR 137-003-0645 incorporating that ruling or a final order in accordance with OAR 137-003-0665 if the administrative law judge has authority to issue a final order without first issuing a proposed order.

<div align="center">FINDINGS OF FACT</div>

*Background*

1. Benjamin R. Horton (Horton or Respondent) is an attorney who is licensed to practice law in Utah and Texas. (Exs. A3, A6.) Horton is not licensed to practice law in Oregon. (Exs. A3, A7.) Horton's address on the Utah State Bar website is 8180 South 700 East Suite 110, Sandy, Utah 84070. (Ex. A6.)

2. Preferred Law PLLC (PL) was first registered with the State of Utah on October 26, 2011, with a principle place of business of 2825 E. Cottonwood Parkway, Suite 500, Salt Lake City, Utah 84121. Horton is listed as PL's Registered Agent. Horton is the only member and manager of PL. Horton is the only attorney at PL. (Exs. A1, A2, A3, A35.)

3. Modification Review Board LLC (MRB) filed Articles of Organization with the State of Utah on October 26, 2011, with a reported address of 9035 S 700 E Suite 203, Sandy, Utah 84070. Horton is listed as MRB's Registered Agent. Jonathan and Sandra Hanley are listed as members and initial managers. (Exs. A3, A5.)

4. American Home-Loan Counselors (AHLC) was first registered with the State of Utah on September 21, 2012, with a principle address of 8180 South 700 East Suite 110, Sandy, Utah 84070. AHLC is registered as a non-profit corporation. Jonathan Hanley is listed as the Registered Agent. (Exs. A3, A24.)



<div style="writing-mode: vertical-rl">Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387</div>

Page 6 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

5. AM Property Management, LLC (AM) was first registered with the State of Utah on November 1, 2011, with a reported address of 8180 South 700 East #110, Sandy, Utah, 84070. Horton is listed as the Registered Agent of AM. (Ex. A36.)

6. PL and AHLC have the same phone number. (Exs. A1, A15.)

7. PL and MRB have the same address and phone number on documents they provide to consumers. (Exs. A1, A12, A13.)

8. PL and MRB post the same advertisement on their respective web sites. (Ex. A1, A31.)

9. PL, MRB, and AHLC share some of the same employees, including Jonathan Hanley, Shannon Martinez, and Bobbi Collins. (Ex. A1, A12, A25.)

10. Horton, PL, MRB, and AHLC have never been registered with the Oregon Secretary of State to conduct business in Oregon. (Exs. A3, A4.)

11. Horton, PL, MRB, and AHLC have never been registered to provide debt management services in Oregon. (Exs. A3, A8.)

12. Horton, PL, MRB, and AHLC have never been licensed to provide mortgage banker or mortgage broker services in Oregon. (Ex. A9.)

*Transaction involving DH*

13. On or about March 27, 2012, DH, an Oregon resident, contracted with MRB and PL to assist him with obtaining a loan modification for his real property located in Creswell, Oregon. On March 27, 2012, DH received a "Service Agreement and Application for Mortgage Assistance" from MRB. The form authorized MRB to negotiate on DH's behalf to obtain modification relief services. DH filled out and returned the form to MRB. (Exs. A1, A10, A12.)

14. On or about April 2, 2012, DH received an email from Shannon Martinez, an employee of PL, stating, in part:



Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

I am your Paralegal assigned to your case.  Please call me to go over some information on your file.  I need to gather these documents for your application, in order to continue working on your case and getting you placed in review with your lender.

Here are [sic] a list of documents that are being requested:

\*\*\*\*\*

Please return all the attached forms within 48 hours, so I am able to get started on your modification.

Service Retainer – attached
Borrowers Authorization – attached

\*\*\*\*\*

Shannon Martinez
Paralegal
Preferred Law, PLLC



Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

(Ex. A14.)  DH signed and returned the attached documents, including the borrower's

authorization form, authorizing MRB to engage in modification relief services on DH's behalf;

the fee and representation agreement with PL for assistance with the loan modification,

including negotiating the terms of the loan with the lender; and an agreement allowing PL to

withdraw monthly payments from DH's bank account for the loan modification services.  (Exs.

A1, A10, A13, A14, A16, A17.)

  15.  On or about April 16, 2012, DH began making monthly payments of $650 to Horton

and PL.  DH paid six monthly payments of $650 (4/12 through 9/12), and six monthly payments

of $297 (10/12 through 3/13).  AM and/or PL deducted the monthly payments from DH's bank

account.  (Exs. A16, A17.)

  16.  DH paid Horton and PL $5,682 to obtain a mortgage modification.  DH did not

receive a mortgage modification for his Creswell property.  DH did not receive a refund from

Horton, PL or MRB.  (Exs. A10, A16, A17.)

  17.  On December 19, 2014, a Sheriff's Deed was entered in Lane County Deeds and

Records showing that DH's home had gone into foreclosure.  (Exs. A15, A21.)

Page 8 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

1    *Transaction involving JB*

2         18. On or about November 23, 2012, JB, an Oregon resident, contracted with AHLC

3    and PL to assist him with obtaining a loan mortgage modification for his real property in

4    Glendale, Oregon.  AHLC sent JB a packet of documents to fill out and return, including an

5    application and/or borrower's authorization form, authorizing AHLC to engage in modification

6    relief services on JB's behalf.  JB filled out the documents and returned them to AHLC.  (Exs.

7    A1, A22, A23, A26, A27.)

8         19. On or about November 23, 2012, JB signed a fee and representation agreement with

9    PL for assistance with the loan mortgage modification, including negotiating the terms of the

10   loan with the lender.  JB also signed an agreement allowing PL to withdraw monthly payments

11   from his checking account for those services.  (Exs. A1, A22, A23, A26, A27.)

12        20. On or about November 23, 2012, JB began making monthly payments of $650 to

13   Horton and PL.  JB paid six monthly payments of $650 (11/12 through 4/13), and fifteen

14   monthly payments of $297 (5/13 through 8/14).  (Exs. A23, A26, A27.)

15        21. In November 2013, PL faxed a loan modification application to JB's loan service

16   provider, Ocwen Loan Servicing.  PL corresponded with Ocwen Loan Servicing through

17   August 2014 regarding a loan modification for JB.  (Ex. A37.)

18        22. On September 30, 2014, Horton sent a letter to JB stating that he had sent a

19   qualified written request (QWR) to JB's lender.  In the letter, Horton also stated that PL was

20   performing its federal analysis and review of all of the documentation supplied by JB's lender in

21   response to the QWR, and that mortgage assistance relief services had been directed to AHLC.

22   (Ex. A28.)

23        23. JB paid Horton and PL $8,355 to obtain a loan mortgage modification.  JB did not

24   receive a loan mortgage modification for his Glendale property.  JB did not receive a refund

25   from Horton, PL or AHLC.  (Exs. A1, A22.)

26   //

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

Page 9 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency
Case No. DM-15-0011

24. On May 31, 2016, according to A Notice of Sheriff's Sale Real Property, JB's home was to be sold at auction. (Exs. A3, A30.)

*Complaints and investigations*

25. In March 2013, Horton responded to a complaint filed on the "Get Out of Debt Guy" website, an on-line complaint board, acknowledging that PL is his law firm and it "assists homeowners with federal home loan assistance." (Exs. A3, A33.)

26. In July 2013, DH filed a complaint against PL with the Division. (Exs. A10, A11.)

27. On September 11, 2013, Debbie Myers, Financial Examiner with the Division, sent a letter to Ms. Martinez of PL, requesting a response to the letter regarding unregistered debt management services activities of PL and requesting a refund on behalf of DH. (Exs. A11, A18.) On September 27, 2013, Ms. Myers sent a similar letter to PL. (Ex. A19.)

28. On October 3, 2013, Horton responded to Ms. Myers' September 27, 2013 letter stating, among other things, that he was the attorney and manager responsible for PL. (Ex. A20.)

29. On November 14, 2014, JB filed a complaint against PL and AHLC with the Division. (Exs. A22, A23.)

30. On November 23, 2014, Lonnie Bates, Financial Examiner with the Division, sent a letter to PL and AHLC advising them of JB's complaint and requesting a response. (Exs. A23, A29.) The Division did not receive a response to Mr. Bates' letter. (Ex. A23.)

31. On December 12, 2014, the Banking Commissioner for the State of Connecticut issued a Temporary Order to Cease and Desist, Order to Pay Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to a Hearing against Preferred Law, PLLC. (Ex. A35.)

32. On January 10, 2014, United States Magistrate Judge Evelyn J. Furse entered a Memorandum Decision and Order in Case No 2:13-cv-92-EJV where Jonathan Hanley, an individual, Modification Review Board, LLC, a Utah limited liability corporation, Preferred

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387



1 | Law, LLC, a Utah limited liability corporation, and Benjamin R. Horton, an individual, were

2 | defendants in a civil law suit filed in the United States District Court, District of Utah, Central

3 | Division on February 4, 2013. (Exs. A31, 32.)  In the Order, Judge Furse found the Defendants'

4 | contract with the plaintiffs (for a loan modification) to be unconscionable. (Ex. A32 at 17.)

5 |      33.  On or about June 17, 2016, Cynthia L. Domas, Financial Enforcement Officer with

6 | the Division, performed an internet search of PL's website, which revealed a list of lenders that

7 | PL worked with and a list of testimonials from satisfied customers from over 24 states,

8 | including one from Oregon.  The testimonial and advertisement from Oregon stated:

9 |         Oregon

10 |         Department of Justice
        Appeal. 2% interest rate,

11 |         $40,000 principal forgiven
        & $40,000 principal

12 |         Deferred.

13 | (Exs. A3, A34.)

14 | *Other matters*

15 |      34.  On September 16, 2015, the Division issued an Order to Cease and Desist, Proposed

16 | Order Assessing Civil Penalties and Notice of Right to a Hearing (Order to Cease and Desist) to

17 | Preferred Law PLLC, Modification Review Board LLC, American Home-Loan Counselors, and

18 | Benjamin R. Horton (Respondents). (*Order to Cease and Desist.*)

19 |      35.  On November 25, 2015, the Division issued a Final Order to Cease and Desist and

20 | Final Order Assessing Civil Penalties Entered by Default as to Preferred Law, PLLC,

21 | Modification Review Board, LLC, and American Home Loan Counselors only. (Ex. A1.)

22 |      36.  On February 17, 2016, the Division issued an Amended Order to Cease and Desist,

23 | Proposed Order Assessing Civil Penalties and Notice of Right to a Hearing as to Benjamin R.

24 | Horton Only. (*Amended Order to Cease and Desist.*)

25 |

26 |

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387



Page 11 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469,
Agency Case No. DM-15-0011

37.  On September 7, 2016, the Division issued a Second Amended Order to Cease and Desist, Proposed Order Assessing Civil Penalties and Notice of Right to a Hearing as to Benjamin R. Horton Only.  (*Second Amended Order to Cease and Desist.*)

## CONCLUSIONS OF LAW

1.   There are no genuine issues of material fact that remain to be determined, and the Division is entitled to a ruling as a matter of law. OAR 137-000-0580.

2.   Respondent violated ORS 86A.103(1) by engaging in residential mortgage transactions in Oregon without first obtaining a license as a mortgage broker under ORS 86A.095 to 86A.198.

3.   Respondent violated ORS 697.612(1)(a) by performing a debt management service without Respondent, Preferred Law (PL), Modification Review Board LLC (MRB), and American Home Loan Counselors (AHLC) being registered with the Director to provide such a service.

4.   Respondent violated ORS 697.612(1)(b)(A) by soliciting and receiving an application from DH and JB for a debt management service when Respondent, PL, MRB, and AHLC were not registered as debt management service providers.

5.   Respondent violated ORS 697.612(1)(b)(E) when Respondent, through PL, MRB, and AHLC provided advice, assistance, instruction or instruction material regarding debt management service to DH and JB when Respondent, PL, MRB, and AHLC were not registered as debt management service providers.

6.   Respondent, by and through PL, MRB, and AHLC violated ORS 697.692(1)(a) by accepting or receiving an initial fee of more than $50 from DH and JB.

7.   Respondent, by and through PL, MRB, and AHLC published an advertisement that contained a false,  misleading or deceptive statement or representation in that the Oregon Department of Justice was not involved with any Preferred Law matter, in violation of ORS 86A.163(1).

Page 12 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

8.      Respondent and all entities owned or controlled by Respondent shall be ordered to cease and desist from violating Oregon statutes regulating mortgage lending, ORS 86A.100 et seq., and debt management service providers, ORS 697.602 to 697.842.

9.      Respondent shall be ordered to pay civil penalties, jointly and severally with PL, MRB, and AHLC in the amount of $35,000 as follows:

      a. $10,000 for committing two violations of ORS 86A.103(1), ORS 697.612(1)(b)(E), ORS 697.612(1)(a);

      b. $10,000 for committing two violations of ORS 697.612(1)(b)(A);

      c. $10,000 for committing two violations of ORS 697.692(1)(a); and

      d. $5,000 for committing one violation of ORS 86A.163(1).

*Respondent's issues*

10.     Respondent can be held liable under ORS 86A.103(1) and 86A.163(1) because Respondent did engage or offer to engage in "residential mortgage transactions" as a "mortgage broker."

11.     Respondent can be held liable under ORS 697.612(1)(a), 697.612(1)(b)(A), 697.612(1)(b)(E) and 697.692(1)(a) because Respondent did perform "debt management services."

<div align="center">OPINION</div>

1.      The Division contends it Motion for Summary Determination should be granted. The Division contends that there are no genuine issues of material fact that remain to be determined, and it is entitled to a ruling as a matter of law.  Respondent contends that his Motion for Summary Determination should be granted.  Respondent contends that there are no genuine issues of material fact that remain to be determined, and he is entitled to a ruling as a matter of law.

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

Page 13 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

2.      Preliminary matter - *Whether Respondent acted as a "mortgage broker" under ORS 86A.100(5)(a)(C), and whether Respondent engaged in "residential mortgage transactions in this state" under ORS 86A.103(2).*

ORS 86A.100 provides, in part:

> (5)(a) "Mortgage broker" means a person that:
>
> *****
>
> (C) For compensation, or in the expectation of compensation, either directly or indirectly makes, negotiates or offers to make or negotiate a mortgage loan.

ORS 86A.103 provides, in part:

> (2) For purposes of this section, a person "engages in residential mortgage transaction in this state" when any act constituting the business of a mortgage banker or mortgage broker and involving a residential mortgage transaction originates from this state or is directed to and received in this state or when the real estate that is the subject of the activities of the mortgage banker or mortgage broker is located in this state.

3.      As indicated above, a mortgage broker means a person that either directly or indirectly makes, negotiates or offers to make or negotiate a mortgage loan for compensation, or in the expectation of compensation. Additionally, under ORS 86A.103(2), any "residential mortgage transaction" is deemed to be subject to Oregon law if the transaction: 1) originates in Oregon, 2) is directed to and received by a person in Oregon, or 3) involves real estate in Oregon.

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387



Page 14 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

4.      The evidence in the record establishes that Horton, through PL, MRB and AHLC, contracted with DH and JB to provide mortgage loan modifications for residential properties located in Oregon for compensation.

5.      PL is Horton's law firm.  PL and MRB have the same address and phone number on documents they provide to consumers.  PL and AHLC have the same phone number.  PL, MRB and AHLC share the same employees, including Jonathan Hanley, Shannon Martinez, and Bobbie Collins.  Horton acknowledged to the Division that it was his law firm that contracted with DH and JB, and it was his employees that communicated with DH and JB.  As such, Horton directed and controlled PL, MRB and AHLC in their transactions with DH and JB. Accordingly, Horton is responsible for the transactions involving DH and JB.

6.      Horton, through PL, MRB and AHLC, offered to negotiate a mortgage loan modification for DH and JB, both of whom were Oregon residents and had mortgages on their residential homes located in Oregon.  DH and JB signed documents with MRB and/or AHLC to obtain loan modification services.  In addition, DH and JB both signed a contract with PL for services that included negotiating the terms on their residential mortgage loans.

7.      The evidence in the record establishes that Horton acted as a mortgage broker when he, for compensation, or in the expectation of compensation, either directly or indirectly made, negotiated, or offered to make or negotiate a modification to the terms and conditions of a mortgage loan for DH and JB.

8.      The evidence in the record also establishes that Horton engaged in residential mortgage transactions in this state by acting as a mortgage broker when he, through PL, MRB and AHLC, offered to negotiate a modification to the terms and conditions of DH's and JB's individual residential mortgage loans secured by property located in Oregon.

9.      Therefore, the evidence in the record establishes that Horton acted as a mortgage broker and engaged in residential mortgage transactions in Oregon in his dealings with DH and JB.

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387



*Division's issues*

10.   *Whether Respondent violated ORS 86A.103(1) by engaging in residential mortgage transactions in Oregon without first obtaining a license as a mortgage broker under ORS 86A.095 to 86A.198.*

11.   ORS 86A.103 is titled "License required to engage in residential mortgage transactions as mortgage banker or mortgage broker" and provides:

> (1) It is unlawful for any person to engage in residential mortgage transactions in this state as a mortgage banker or mortgage broker unless the person is licensed under ORS 86A.095 to 86A.198.  A person who is a mortgage banker or mortgage broker under ORS 86A.100, but who does not engage in residential mortgage transactions in this state, is not required to obtain a license under ORS 86A.095 to 86A.198.

> (2) For purposes of this section, a person "engages in residential mortgage transactions in this state" when any act constituting the business of a mortgage banker or mortgage broker and involving a residential mortgage transaction originates from this state or is directed to and received in this state or when the real estate that is the subject of the activities of the mortgage banker or mortgage broker is located in this state.

12.   Pursuant to ORS 86A.103(1), it is unlawful for any person to engage in residential mortgage transactions in this state as a mortgage banker or mortgage broker unless the person is licensed under ORS 86A.095 to 86A.198.  A mortgage broker means a person that either directly or indirectly makes, negotiates or offers to make or negotiate a mortgage loan for compensation, or in the expectation of compensation.  ORS 86A.100(5)(a)(C).

13.   As stated previously, Horton, through PL, MRB and AHLC, offered to negotiate a mortgage loan modification for DH and JB, both of whom were Oregon residents and had

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387



1   mortgages on their residential homes located in Oregon.  Horton was not licensed in Oregon as

2   a mortgage banker or mortgage broker at the time.

3       14.     The evidence in the record establishes that Horton engaged in residential

4   mortgage transactions in this state as a mortgage banker or mortgage broker without being

5   licensed under ORS 86A.095 to 86A.198.  Thus, Horton violated ORS 86A.103(1).

6       15.     *Whether Respondent violated ORS 697.612(1)(a) by performing a debt*

7   *management service without Respondent, Preferred Law (PL), Modification Review Board LLC*

8   *(MRB), and American Home Loan Counselors (AHLC) being registered with the Director to*

9   *provide such a service.*

10      ORS 697.612 is titled "Registration requirement; exceptions" and states, in part:

11          (1) A person that has not registered with the Director of the

12          Department of Consumer and Business Services under ORS

13          697.632 may not engage in business in this state in the course of

14          which the person:

15          (a) Performs a debt management services;

16      ORS 697.602 provides, in part:

17          (2) "Debt management service" means an activity for which a

18          person receives money or other valuable consideration or expects

19          to receive money or other valuable consideration in return for:

20                          *****

21          (d) Obtaining or attempting to obtain as an intermediary on a

22          consumer's behalf a concession from a creditor including, but not

23          limited to, a reduction in the principal, interest, penalties or fees

24          associated with a debt.

25      16.     As indicated above, a person may not engage in debt management services in

26   Oregon without being registered with the Division.

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

Page 17 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469,
Agency Case No. DM-15-0011

17.     Horton, through PL, MRB and AHLC, contracted to negotiate a mortgage loan modification for DH and JB, both of whom were Oregon residents and had mortgages on their residential homes located in Oregon.

18.     DH and JB signed documents with MRB and/or AHLC to obtain loan modification services.  In addition, DH and JB both signed a contract with PL for services that included negotiating the terms on their residential mortgage loans.

19.     Horton, through PL, MRB and AHLC, attempted to obtain a modification of DH's and JB's mortgage loans from their respective lenders, and was compensated with money for those attempts.  Horton, PL, MRB and AHLC were not registered with the Division to perform the debt management services provided to DH and JB.  Consequently, Horton violated ORS 697.612(1)(a).

20.     *Whether Respondent violated ORS 697.612(1)(b)(A) by soliciting and receiving an application from DH and JB for a debt management service when Respondent, PL, MRB, and AHLC were not registered as debt management service providers.*

ORS 697.612 provides:

> (1) A person that has not registered with the Director of the Department of Consumer and Business Services under ORS 697.632 may not engage in business in this state in the course of which the person:
>
>                         *****
>
> (b) Receives money or other valuable consideration or expects to receive money or other valuable consideration for:
>
> (A) Soliciting or receiving an application from a consumer for a debt management service;

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

21.     Pursuant to the authority cited above, a person that is not registered with the Division may not engage in business in Oregon in the course of which the person receives money or expects to receive money for soliciting or receiving an application from a consumer for a debt management service.

22.     *DH.* On March 27, 2012, DH received a "Service Agreement and Application for Mortgage Assistance" from MRB. The form authorized MRB to negotiate loan modification relief services on DH's behalf. DH filled out and returned the form to MRB. On April 2, 2012, Ms. Martinez, with PL, sent an email to DH requesting that he fill out several attached forms, including a borrower's authorization and fee agreement, so PL could get started on DH's modification. DH filled out the forms and returned them to PL. On April 16, 2012, DH began making payments to PL for the loan modification services.

23.     The evidence in the record establishes that Horton, through PL and MRB, solicited and received an application from DH for a debt management service while expecting to receive money for said service. In addition, the evidence in the record establishes that Horton, PL and MRB where not registered with the Division to engage in debt management service in Oregon. Consequently, Horton violated ORS 697.612(1)(b)(A).

25.     *JB.* On or about November 23, 2012, JB received an application and/or borrower's authorization form from AHLC, authorizing AHLC to engage in modification relief services on JB's behalf. JB filled out the documents and returned them to AHLC. JB also received a fee agreement from PL, authorizing PL to provide assistance with loan mortgage modification. JB signed and returned the agreement. On November 23, 2012, JB began making payments to PL for the loan modification services.

26.     The evidence in the record establishes that Horton, through PL and AHLC, solicited and received an application from JB for a debt management service while expecting to receive money for said service. The evidence in the record also establishes that Horton, through




Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

Page 19 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

1  PL and AHLC, were not registered with the Division to engage in debt management service in

2  Oregon.  Consequently, Horton violated ORS 697.612(1)(b)(A).

3      27.    *Whether Respondent violated ORS 697.612(1)(b)(E) when Respondent, through*

4  *PL, MRB, and AHLC provided advice, assistance, instruction or instruction material regarding*

5  *debt management service to DH and JB when Respondent, PL, MRB, and AHLC were not*

6  *registered as debt management service providers.*

7      ORS 697.612 provides:

8          (1) A person that has not registered with the Director of the

9          Department of Consumer and Business Services under ORS

10         697.632 may not engage in business in this state in the course of

11         which the person:

12                          *****

13         (b) Receives money or other valuable consideration or expects to

14         receive money or other valuable consideration for:

15                          *****

16         (E) Providing advice, assistance, instruction or instructional

17         material concerning a debt management service to a consumer.

18

19     28.    As cited above, a person that is not registered with the Division may not engage

20  in business in Oregon in the course of which the person receives money or expects to receive

21  money for providing advice or assistance concerning a debt management service to a consumer.

22     29.    Horton, through PL and MRB, provided advice and/or assistance to DH

23  concerning a mortgage loan modification.  Horton, through PL and MRB, provided the

24  assistance for compensation and without being registered with the Division.  Thus, Horton

25  violated ORS 697.612(1)(b)(E).

26  //

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

Page 20 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469,
Agency Case No. DM-15-0011

30.     Additionally, Horton, through PL and AHLC, provided advice and/or assistance to JB concerning a mortgage loan modification.  Horton, through PL and AHLC, provided the assistance for compensation and without being registered with the Division.  Therefore, Horton violated ORS 697.612(1)(b)(E).

31.     *Whether Respondent, by and through PL, MRB, and AHLC violated ORS 697.692(1)(a) by accepting or receiving an initial fee of more than $50 from DH and JB.*

ORS 697.692 is titled "Fees" and provides, in part:

> (1) A debt management service provider may charge a consumer
>
> only the following fees:
>
> (a) An initial fee of not more than $50.

32.     As indicated above, a debt management service provider may charge a consumer an initial fee of not more than $50.

33.     *DH.*  On or about March 27, 2012, DH contracted with MRB and PL to assist him with obtaining a loan modification for his real property in Creswell, Oregon.  On or about April 2, 2012, DH signed a fee and representation agreement with PL for assistance with the loan modification.  DH also signed an agreement allowing PL to withdraw monthly payments from his bank account for those services.  On April 16, 2012, DH paid an initial fee of $650 to Horton and PL, which is in excess of $50.  Accordingly, Horton, by and through PL and MRB violated ORS 697.692(1)(a).

34.     *JB.*  On or about November 23, 2012, JB contracted with AHLC and PL to assist him with obtaining a loan modification for his real property in Glendale, Oregon.  On or about November 23, 2012, JB signed a fee and representation agreement with PL for assistance with the loan modification.  JB also signed an agreement allowing PL to withdraw monthly payments from his checking account for those services.  On November 23, 2012, JB paid an initial fee of

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387



1   $650 to Horton and PL, which is in excess of $50.  As such, Horton, by and through PL and

2   AHLC violated ORS 697.692(1)(a).

3       35.     *Whether Respondent, by and through PL, MRB, and AHLC published an*

4   *advertisement that contained a false, misleading or deceptive statement or representation in*

5   *that the Oregon Department of Justice was not involved with any Preferred Law matter, in*

6   *violation of ORS 86A.163(1).*

7       ORS 86A.163 is titled "Prohibited advertisements" and provides, in part:

8               A mortgage banker or mortgage broker shall not use or cause to

9               be published any advertisement that:

10              (1) Contains any false, misleading or deceptive statement or

11              representation;

12      36.     Pursuant to ORS 86A.163, a mortgage banker or mortgage broker shall not use

13  or cause to be published any advertisement that contains any false, misleading or deceptive

14  statement or representation.

15      37.     On or about June 17, 2016, Respondent, through PL, published an advertisement

16  on PL's website listing the lenders that PL worked with and the deals that PL was able to obtain

17  for its clients in approximately 24 states, including Oregon.  The testimonial and advertisement

18  from Oregon refers to the "Department of Justice" and purports to have had $40,000 of the

19  client's loan forgiven and $40,000 of the loan deferred.  Respondent is not lawfully allowed to

20  perform or advertise this service in Oregon.

21      38.     The evidence in the record establishes that Respondent, by publishing an

22  advertisement that falsely advertises that he can prided these services in Oregon, violated ORS

23  86.A163(1).

24      39.     *Whether Respondent and all entities owned or controlled by Respondent shall be*

25  *ordered to cease and desist from violating Oregon statutes regulating mortgage lending, ORS*

26  *86A.100 et seq., and debt management service providers, ORS 697.602 to 697.842.*

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

ORS 697.825 is titled "Enforcement; orders" and provides, in part:

> (1) The Director of the Department of Consumer and Business
> Services may, if the director has reason to believe that a person:
> (a) Violated, is violating or is about to violate ORS 697.612,
> 697.642 to 697.702 or 697.752, a rule adopted under ORS
> 697.632 or an order issued under ORS 697.652 or 697.732, issue
> an order to cease and desist from the violation.

ORS 86A.127 provides, in part:

> (4) If the director has reasonable cause to believe that any person
> has been engaged, is engaging or is about to engage in any
> violation of any provision of ORS 86A.095 to 86A.198, may issue
> an order, subject to ORS 86A.139, directed to the person, and to
> any other person directly or indirectly controlling the person, to
> cease and desist from the violation or threatened violation.

40.     Pursuant to the statutory authority cited above, the Director of the Division has the authority to order a person to cease and desist from violating Oregon statutes regulating mortgage lending and debt management service providers.

42.     In this matter, because Horton, through PL, MRB, and AHLC, has violated various Oregon statutes regulating mortgage lending and debt management service providers, it is entirely appropriate for the Director to order Horton and his various entities to cease and desist from that behavior.

43.     Accordingly, Respondent and all entities owned or controlled by Respondent shall be ordered to cease and desist from violating Oregon statutes regulating mortgage lending and debt management service providers.



Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

Page 23 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97101-3881
Telephone: (503) 378-4387



44.     *Whether Respondent shall be ordered to pay civil penalties, jointly and severally with PL, MRB, and AHLC in the amount of $35,000 as follows:* ·

    *a. $10,000 for committing two violations of ORS 86A.103(1), ORS 697.612(1)(b)(E), ORS 697.612(1)(a);*

    *b. $10,000 for committing two violations of ORS 697.612(1)(b)(A);*

    *c. $10,000 for committing two violations of ORS 697.692(1)(a); and*

    *d. $5,000 for committing one violation of ORS 86A.163(1).*

ORS 697.832 is titled "Civil penalties" and provides, in part:

    (1) In addition to any other liability or penalty provided by law, the Director of the Department of Consumer and Business Services may impose a civil penalty on a person in an amount not to exceed $5,000 for each violation of ORS 697.612 or 697.642 to 697.702, rules adopted under ORS 697.632 or order issued under ORS 697.825.

ORS 86A.992 provides, in part:

    (1) In addition to all other penalties and enforcement provisions provided by law, any person who violates or who procures, aids or abets in the violation of any provision of ORS 86A.095 to 86A.198 or any rule or order of the Director of the Department of Consumer and Business Services shall be subject to a penalty of not more than $5,000 for every violation, which shall be paid to the General Fund of the State Treasury.

Page 24 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469, Agency Case No. DM-15-0011

45.     As indicated above, the Director of the Division may impose a civil penalty of not more than $5,000 for every violation of ORS 697.612 or 697.642 to 697.702, and any provision of ORS 86A.095 to 86A.198.

46.     A review of the record establishes the following:

a.      Horton violated ORS 86A.103(1), ORS 697.612(1)(a), and ORS 697.612(1)(b)(E). The Division's requested civil penalty amount of $10,000 is appropriate for the violations.

b.      Horton committed two violations of ORS 697.612(1)(b)(A). The civil penalty amount of $10,000 is appropriate for the violations.

c.      Horton committed two violations of ORS 697.692(1)(a). The civil penalty amount of $10,000 is appropriate for the violations.

d.      Horton committed one violation of ORS 86A.163(1). The civil penalty amount of $5,000 is appropriate for the violation.

Consequently, Horton shall pay civil penalties jointly and severally with PL, MRB, and AHLC, in the amount of $35,000 for the violations.

*Respondent's issues*

47.     *Whether Respondent cannot be held liable under ORS 86A.103(1), 86A.154(3) and 86A.163(1) because Respondent did not engage or offer to engage in "residential mortgage transactions" as a "mortgage broker."*

48.     Respondent contends that he did not offer or engage in residential mortgage transactions as a mortgage broker. However, as set forth previously, the evidence in the record establishes that Respondent, through PL, MRB and AHLC, engaged in residential mortgage transactions in this state as a mortgage banker or mortgage broker and without being licensed with the Division. Thus, Respondent's argument is unpersuasive.

//

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387



49.     Respondent also contends that PL's fee agreement included a disclaimer that PL did not offer loan modification assistance.

50.     However, the evidence in the record establishes that despite any disclaimer, Respondent, through PL, offered and engaged in loan modification assistance with DH and JB. On April 2, 2012, Ms. Martinez, paralegal of PL, notified DH that he needed to fill out the attached forms within 48 hours so she could get started on his "modification."  Additionally, in November 2013, PL communicated with Ocwen Loan Servicing about modifying JB's loan. Moreover, DH and JB contracted with and paid money to PL for loan modification services. Thus, regardless of any disclaimer contained in PL's fee agreement, Respondent, through PL, offered and engaged in loan modification assistance for DH and JB for compensation and without being licensed with the Division.

51.     *Whether Respondent cannot be held liable under ORS 697.612(1)(a), 697.612(1)(b)(A), 697.612(1)(b)(E) and 697.692(1)(a) because Respondent did not perform any "debt management services."*

52.     Respondent contends that he did not perform a debt management service. However, as set forth previously, the evidence in the record establishes that Respondent, through PL, MRB and AHLC, performed debt management services for DH and JB for compensation and without being registered with the Division.  Consequently, Respondent's argument is unpersuasive.

53.     Respondent also contends that he did not charge an initial fee.  However, both DH and JB paid an initial fee of $650 to Horton and PL.  As such, Respondent's argument is not persuasive.

*Additional arguments by Respondent*

54.     Respondent contends that he has no control over MRB and AHLC. However, Respondent is the registered agent for MRB and, as such, has authority to make



Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387

1  decisions for MRB.  In addition, Respondent's own law firm, PL, shares the same phone

2  number with AHLC, and by reasonable inference, the same office location.  Moreover, PL and

3  MRB have the same address and phone number on the documents they provide to consumers.

4  Furthermore, PL, MRB, and AHLC, share some of the same employees.  Finally, MRB and

5  AHLC utilize PL's fee agreement as part of their application process with consumers.  Thus, the

6  evidence clearly establishes that PL, MRB and AHLC are intertwined in their business actions,

7  and Respondent has authority and/or control over all three entities.

8      55.     Respondent also contends that the Division has failed to allege sufficient facts to

9  pierce the corporate veil and hold Respondent personally liable for the actions of PL or the other

10  entities.

11     56.     The laws that are at issue in this case (ORS chapters 697 and 86A) govern both

12  individuals and entities.  Although the entities in this case have been sanctioned via a default

13  order, Respondent is being held individually responsible for his actions in violating the laws of

14  Oregon.  The evidence in the record establishes that Respondent violated the laws of Oregon

15  and should be penalized for those violations.  Accordingly, Respondent's argument is without

16  merit.

17     57.     In this matter, the ALJ granted Summary Determination and found that the

18  Division had interpreted its rules fairly and uniformly and that the proposed civil penalties were

19  appropriate. The ALJ also determined that Respondent's Motion for Summary Determination

20  was without merit. Because the ruling and Proposed Order resolved all of the issues, the hearing

21  that was previously scheduled for October 4th through the 6th was cancelled.

22  //

23  //

24  //

25  //

26  

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97101-3881
Telephone: (503) 378-4387



Page 27 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469,
Agency Case No. DM-15-0011

ORDERS

Based on the foregoing, the Director issues the following orders:

Order to Cease and Desists

1.      Respondent and all entities owned or controlled by Respondent shall cease and desist from violating Oregon statutes regulating mortgage lending, ORS 86A.100 et. seq. and debt management services providers, ORS 697.602 to 697.842.

Order Assessing Civil Penalties

2.      Respondent shall pay civil penalties, jointly and severally with PL, MRB, and AHLC in the amount of $35,000 as follows:

a.      $10,000 for committing two violations of ORS 86A.103(1), ORS 697.612(1)(b)(E), ORS 697.612(1)(a)

b.      $10,000 for committing two violations of ORS 697.612(1)(b)(A)

c.      $10,000 for committing two violations of ORS 697.692(1)(a); and

d.      $5,000 for committing one violation of ORS 86A.163(1)

3.      In accordance with ORS 86A.992, ORS 697.612, and 183.745(2), the civil penalties assessed herein shall become due and payable 10 days after the order becomes final by operation of law or on appeal. Failure to pay the entire penalty within 30 days of becoming due, will result in the Division taking steps to collect the debt.

//

//

//

Division of Financial Regulation
Labor and Industries Building
350 Winter Street NE, Suite 410
Salem, OR 97301-3881
Telephone: (503) 378-4387



1         This Order is a "Final Order" under ORS 183.310(6)(b).  Subject to that provision, the

2    entry of this Order does not limit other remedies that are available to the Director under Oregon

3    law.

4         Dated this    2nd    day of         December           , 2016.

5

6                               PATRICK M. ALLEN, Director
                                Department of Consumer and Business Services

7                               /S/ David Tatman

8                               David C. Tatman
                                Chief of Enforcement

9

10   **NOTICE:**  You are entitled to judicial review of this Order.  Judicial review may be obtained
     by filing a petition for review within 60 das from the service of this order.  Judicial review is in

11   accordance with ORS 183.428.(1) to the Oregon Court of Appeals.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26




Page 29 of 29 – Final Order In the Matter of Benjamin Horton– OAH Case No. 1604469,
Agency Case No. DM-15-0011