James C. Mahan
U.S. District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:18-CV-30 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| CONSUMER DEFENSE, LLC, et al., | |
| Defendant(s). | |

Presently before the court is defendant Benjamin Horton's ("Horton") motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue. (ECF No. 24). The FTC filed a response (ECF No. 31), to which Horton replied (ECF No. 54).

Also before the court is defendants Consumer Defense, LLC (Utah); Preferred Law, PLLC; American Home Loan Counselors; Consumer Defense Group, LLC; American Home Loans, LLC; AM Property Management, LLC; FMG Partners, LLC; Brown Legal, Inc.; Zinly, LLC (collectively "the Utah entities"); Jonathan P. Hanley and Sandra X. Hanley's (collectively "the Hanleys") motion to dismiss for lack of personal jurisdiction. (ECF No. 40). The FTC filed a response (ECF No. 63), to which the Utah entities and the Hanleys replied (ECF No. 68).

Also before the court is defendants Consumer Defense, LLC (Nevada); Consumer Link, Inc.; Consumer Defense, LLC (Utah); Preferred Law, PLLC; American Home Loan Counselors; Consumer Defense Group, LLC; American Home Loans, LLC; AM Property Management, LLC; FMG Partners, LLC; Brown Legal, Inc.; Zinly, LLC (collectively "the corporate defendants"); and the Hanleys' motion to dismiss based upon forum non conveniens. (ECF No. 45). The FTC filed a response (ECF No. 64), to which the corporate defendants and the Hanleys replied (ECF No. 70).

**I. Facts**

The instant case arises from an alleged mortgage assistance relief services ("MARS") scheme perpetrated by the corporate defendants, the Hanleys, and Horton (collectively "the defendants") starting in 2011. (ECF No. 1). The FTC alleges that the defendants swindled consumers out of more than $11 million. *Id.* Promising to obtain mortgage loan modifications that would stop or prevent foreclosure, the defendants required consumers to pay advance fees. *Id.* Further, the defendants instructed consumers not to pay their mortgages and to not contact or respond to their lenders. *Id.* The FTC contends that the defendants typically failed to obtain mortgage loan modifications. *Id.* As a result, consumers found themselves with months of interest and missed payments added to their mortgages and have faced foreclosure and bankruptcy in some cases. *Id.*

The FTC maintains that the defendants operated their MARS scheme as a common enterprise of eleven interrelated entities, i.e. the corporate defendants, controlled by three principals, i.e. the Hanleys and Horton. (ECF No. 6). Acting as a common enterprise since 2011, the corporate defendants have played various roles in the alleged MARS scheme. *Id.* Many of the corporate defendants—Consumer Defense, LLC (Nevada and Utah); Consumer Link, Inc.; Preferred Law, PLLC; American Home Loan Counselors; Consumer Defense Group, LLC, f/k/a Modification Review Board, LLC—interacted with consumers to provide MARS service contracts. *Id.* The remaining corporate defendants allegedly functioned as payment collectors and financial conduits that, inter alia, paid for required services, such as websites and offices spaces, for the consumer-facing operations. *Id.*

The corporate defendants shared employees and commingled funds. *Id.* Moreover, when interacting with consumers, the corporate defendants "blurred corporate distinctions" by intermingling contacts, forms, and consumer payments. *Id.* The FTC therefore contends that the corporate defendants, a "maze of interrelated companies," "jointly participated in a 'common venture' in which they benefitted from a shared business scheme . . . ." *Id.* at 29 (citations omitted).

The defendants entered into MARS service contracts with 74 Nevada residents. (ECF No. 63). While defendants marketed their products nationally, in their promotion of the "Hardest Hit

Fund Program," the defendants' websites targeted several states specifically, including Nevada.[1] *Id.* These websites prompted consumers to provide personal information in order to determine whether or not they would be eligible for the mortgage services offered. *Id.*

The FTC contends that growing numbers of negative consumer reviews regarding the Utah entities led the individual defendants to form two Nevada entities, Consumer Defense, LLC, and Consumer Link, Inc., ("the Nevada entities"). *Id*. In so doing, the defendants established mailing addresses in Las Vegas and Reno. *Id*. The defendants represented to consumers that they were located at these addresses, despite the fact that these locations were "virtual offices" where no employees worked. (ECF Nos. 63, 40). While the Nevada entities were not formed until 2016, these entities represent approximately 30% of the MARS service contracts entered into since 2011. (ECF No. 63). Moreover, the Nevada entities account for approximately 66% of the MARS service contracts entered into after their formation. *Id.* All of these consumer contracts contain a forum selection clause requiring customers to litigate their disputes in Clark County, Nevada. *Id.*

Jonathan Hanley controlled and operated the majority of these corporate defendants. *Id*. He is listed on most of the corporate papers and as the contact for many of the corporate defendants' service providers. *Id*. He is a signatory for many of the corporate bank accounts and has replied to consumer complaints in regard to several of the corporate defendants. *Id*. He paid for necessary mail services for the Nevada entities. *Id*.

Sandra Hanley managed numerous corporate defendants, handled all of the corporate defendants' payroll, and responded to chargebacks on the defendants' merchant accounts. *Id*. She is a signatory on multiple corporate bank accounts and appears on various consumer contracts as a representative authorized to negotiate mortgage loan modifications. *Id*. On several occasions, both of the Hanleys paid for the corporate defendants' expenses with their personal credit cards. (ECF No. 1).

Horton, the only attorney who worked with the Hanleys, allegedly "served as a front for [d]efendants' claim that they [would] provide expert legal assistance to consumers to negotiate

---

[1] The "Hardest Hit Fund Program" purportedly allowed residents of a few states in particular, including Nevada, to qualify for additional funding in order to make their mortgage payments and keep their homes.

mortgage loan modifications." (ECF No. 6 at 5). In some instances, defendants represented to consumers that the services the consumers were paying for were not related to loan modifications, but were legal services offered by Horton, the corporate defendants' attorney. *Id.* As the owner, manager, and attorney for Preferred Law, PLLC, ("Preferred Law"), Horton signed and sent qualified written request letters on its behalf. (ECF Nos. 54, 6).

Horton dissolved Preferred Law in November of 2016 due to the suspension of his Utah bar license. (ECF No. 54). The dissolution of Preferred Law occurred after the formation of the Nevada entities in July and September of 2016. (ECF No. 6). Horton aided the Hanleys in forming these entities, drafting their paperwork, and setting up their offices. (ECF No. 54). Moreover, even after his suspension in September 2016, Horton continued to receive notifications regarding outstanding consumer complaints. *Id*.

The FTC filed the underlying complaint on January 8, 2018, alleging six counts of unfair or deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) against all defendants.[2] (ECF No. 1). The FTC alleges that (1) the corporate defendants constitute a common enterprise and can therefore be held jointly and severally liable, and (2) the individual defendants, as persons who "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of [. . .] the common enterprise," may be held individually liable under the FTC Act for the enterprise's violations thereof. (ECF Nos. 1 at 8, 5 at 29-31).

On February 20, 2018, the court granted the FTC's motion for preliminary injunction, maintaining the asset freeze set in place by the temporary restraining order entered on January 10, 2018. (ECF Nos. 12, 55). On February 23, 2018, the parties stipulated to release the Hanleys' personal bank account from the asset freeze. (ECF No. 62). On February 28, 2018, the parties also stipulated to release $25,000 for defendants' attorney's fees. (ECF No. 65). On March 21, 2018,

---

[2] The causes of action asserted in the complaint are as follows: (1) deceptive representations regarding substantially more affordable loan payments, substantially lower interest rates, or foreclosure avoidance; (2) deceptive representations regarding loan modification services; (3) advance payments for mortgage assistance relief services; (4) prohibited representations; (5) material misrepresentations; (6) failure to disclose. (ECF No. 1). Counts (3) – (6) assert violations of the MARS Rule, 12 C.F.R. Part 1015, which constitute unfair or deceptive acts or practices in or affecting commerce under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *Id.*

- 4 -

the corporate defendants and the Hanleys filed a notice of appeal as to the court's order granting the FTC's preliminary injunction. (ECF No. 81). On May 4, 2018, the court granted the Hanleys' motion for release of funds for reasonable living expenses and attorney's fees. (ECF No. 104).

In defendant Horton's motion, Horton moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer venue to the District of Utah pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. §§ 1391, 1404(a). (ECF No. 24). The Utah entities and the Hanleys' motion to dismiss requests dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (ECF No. 40). Lastly, the corporate defendants and the Hanleys' motion to dismiss requests dismissal based upon forum non conveniens. (ECF No. 45).

**II.     Legal Standard**

   *a. Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. When a defendant's motion to dismiss is based upon written materials, as opposed to an evidentiary hearing, the court need only "inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995)) (internal quotations omitted, alteration in original). Undisputed allegations in plaintiff's complaint must be taken as true and factual disputes should be construed in the plaintiff's favor. *Id.*

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Where a state has a "long-arm" statute providing its court's jurisdiction to the fullest extent permitted by the due process clause, as Nevada does, a court need only address federal due process standards. *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065); *see also Boschetto*, 539 F.3d at 1015. Generally, a court may exercise personal jurisdiction over a defendant only where the defendant has certain minimum contacts with the forum state "such that

the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

Two categories of personal jurisdiction exist: (1) general jurisdiction; and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

General jurisdiction arises where the defendant has continuous and systematic ties with the forum, even if those ties are unrelated to the litigation. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414–16). "[T]he plaintiff must demonstrate the defendant has sufficient contacts to constitute the kind of continuous and systematic general business contacts that approximate physical presence." *In re W. States Wholesale Nat'l Gas Litig.*, 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009) (internal quotation marks and citations omitted). The United States Supreme Court recently clarified that general jurisdiction exists only where the defendant is at "home" in the forum state. *See Daimler AG v. Bauman*, --- U.S. ----, ----,134 S. Ct. 746, 760–62 (2014).

Specific jurisdiction arises where sufficient contacts with the forum state exist such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two prongs. *Id*. If a plaintiff meets this burden, a defendant hoping to defeat jurisdiction must show that the court's exercise of jurisdiction would be unreasonable. *Id.*

. . .

James C. Mahan
U.S. District Judge

*b. Venue*

Under the FTC Act, "[a]ny suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28." 15 U.S.C. § 53(b). Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss for improper venue. Under 28 U.S.C. § 1391(b), venue is proper when:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action

*i. Forum Non Conveniens*

"The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 (1981). "A *forum non conveniens* determination is committed to the sound discretion of the district court." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) (quoting *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir.1998)). *Forum non conveniens* is "an exceptional tool to be employed sparingly." *Carijano v. Occidental Petroleum Corp.,* 643 F.3d 1216, 1224 (9th Cir. 2011) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)).

"To prevail on a motion to dismiss based upon *forum non conveniens,* a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015), cert. denied, 136 S. Ct. 915 (2016) (quoting *Carijano v. Occidental Petroleum Corp.,* 643 F.3d 1216, 1224 (9th Cir.2011)).

However, dismissal under the *forum non conveniens* doctrine is not appropriate in federal cases where the alternative forum is another federal district court. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 61 (2013) ("federal courts invoke *forum non conveniens* in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best") (internal quotations and citations omitted); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512–13 (9th Cir. 2000) ("Section 1404(a) . . .

James C. Mahan
U.S. District Judge

- 7 -

serves as a statutory substitute for forum non conveniens in federal court when the alternative forum is within the territory of the United States.").

    *ii. Transfer*

Even when venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). A district court's decision on whether to transfer a case requires the court to conduct a case specific "consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). A district court has broad discretion when determining whether to transfer venue pursuant to § 1404(a). *Id.*

**III. Discussion**

  *a. Personal Jurisdiction*

As an initial matter, no general jurisdiction exists over the Utah entities, the Hanleys, or Horton, as they are domiciled in Utah for the purposes of jurisdiction and are therefore not "at home" in Nevada. (ECF No. 1). Accordingly, to withstand dismissal under Rule 12(b)(2), plaintiff must demonstrate that its allegations establish a prima facie case for specific jurisdiction. *See Boschetto*, 539 F.3d at 1015. The plaintiff therefore must show that the moving defendants have sufficient minimum contacts to justify the imposition of personal jurisdiction and that the exercise of personal jurisdiction is reasonable, i.e. it does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S. at 316; *Schwarzenegger*, 374 F.3d at 802.

    *i. Minimum Contacts*

When a federal statute contains a nationwide service of process provision, federal due process demands that the defendant's minimum contacts with the United States as a whole, not the forum state in particular, justify the exercise of personal jurisdiction. *See Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1414 (9th Cir. 1989). Thus, "the inquiry to determine 'minimum contacts' is [. . .] "whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Vigman*, 764 F.2d at 1316).

In *Vigman*, the Court examined a nationwide service provision contained in the Securities Exchange Act and concluded that the national contacts analysis applies to foreign defendants as well as residents. *Vigman*, 764 F.2d at 1316. In *Go-Video*, the court clarified that the *Vigman* holding could be extended to the Clayton Act because "the two statutes' service of process provisions are nearly identical."[3] *Go-Video, Inc.*, 885 F.2d at 1414.

In that case, the court rejected defendants' argument that Supreme Court case law undermined the national contacts test, as well as their contention that the burden placed upon defendants showed that the national contacts test necessarily breeds unconstitutional results. *Id.* at 1415. The court indicated that absent clear Supreme Court precedent to the contrary, it would adhere to *Vigman*. *Id.* at 1416. The court upheld *Vigman* and *One-Video* in *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (quoting *Vigman*, the court held that "[i]n a statute providing for nationwide service of process, the inquiry to determine 'minimum contacts' is [. . .] 'whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country.'").

As the FTC Act national service provision is nearly identical to the national service provision contained in the Security Exchange Act and Clayton Act, a national contacts analysis is appropriate.[4] *See Fed. Trade Comm'n v. AMG Servs., Inc.*, No. 2:12-CV-00536-GMN-VCF, 2017 WL 374470 (D. Nev. Jan. 26, 2017), *aff'd sub nom. Fed. Trade Comm'n v. Americans for Fin. Reform*, 720 F. App'x 380 (9th Cir. 2017). In *AMG Services*, the district court denied a third party's

---

[3] The Securities Exchange Act provision reads: "Any suit or action [. . .], may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." 15 U.S.C. § 78aa. In comparison, under the Clayton Act, "Any suit, action, or proceeding [. . .] may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22.

[4] Under the FTC Act, "'[a]ny suit may be brought where [any] person, partnership, or corporation [that is violating, or is about to violate, any provision of law enforced by the FTC] resides or transacts business, or wherever venue is proper under section 1391 of Title 28. [. . .] In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found." 15 U.S.C. § 53(b).

James C. Mahan
U.S. District Judge

motion to dissolve an asset freeze order against it due to lack of personal jurisdiction. *Id*. at 3. The Ninth Circuit affirmed the district court's order:

> "[P]ursuant to the FTC Act's nationwide service of process provision, the district court has nationwide personal jurisdiction over [the moving defendant], even though [the defendant] is a non-party to the underlying enforcement action. [. . .] Although [the defendant] argues that personal jurisdiction in the District of Nevada is improper because it does not have minimum contacts with the forum state, it is undisputed that [the defendant] does have minimum contacts with the United States sufficient to satisfy the nationwide service of process test. . . . ."

*Fed. Trade Comm'n v. Americans for Fin. Reform*, 720 F. App'x 380, 383 (9th Cir. 2017) (citations omitted).[5]

Like the defendants in *Go-Video*, the Utah entities and the Hanleys claim that a "sea change" in Supreme Court personal jurisdiction case law precludes a national contacts analysis. (ECF No. 40). Additionally, according to these defendants, a national contacts test "plainly conflict[s]" with the Fourteenth Amendment and therefore violates the Fifth Amendment as well. *Id.* at 11. However, the Ninth Circuit has repeatedly held that the exercise of personal jurisdiction under a federal statute with a nationwide service provision is constitutional, so long as the defendant has sufficient minimum contacts with the United States. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). The Supreme Court has never held otherwise. (ECF No. 63 at 4).

As indicated by the Utah entities and the Hanleys, "[i]t is undisputed that [d]efendants have contacts with the United States as a whole." (ECF No. 40). This assertion holds true for Horton, a Utah resident who allegedly played a principal role in the MARS scheme at issue, which operated in the United States. The moving defendants' therefore have sufficient minimum contacts to justify personal jurisdiction.

### ii. *Reasonableness*

When minimum contacts have been established, the defendant "must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (emphasis added). The exercise of

---
[5] The court recognizes that, as pointed out by the Utah entities and the Hanleys, this case is not binding. (ECF No. 40 at n. 4). Nonetheless, the court finds the Ninth Circuit's reasoning persuasive and adopts that reasoning here.

specific personal jurisdiction is reasonable unless it offends traditional notions of fair play and substantial justice. *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1021. The court will balance seven factors in making this determination:

> (1) the extent of the [defendant's] purposeful injection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum;
> (3) the extent of conflict with the sovereignty of the defendant's state;
> (4) the forum state's interest in adjudicating the dispute;
> (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
> (7) the existence of an alternative forum.
>
> *Id.*

"A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (clarifying that "the 'brunt' of the harm need not be suffered in the forum state"). Thus, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the most serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987).

States have a "manifest interest in providing effective means of redress for [their] residents." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Further, "[a] choice of law provision may reinforce a defendant's 'deliberate affiliation with the forum State and the foreseeability of possible litigation there.'" *Parasoft Corp. v. Parasoft S.A.*, no. cv 14-9166-DMG (PLAx), 2015 WL 12645754, at *3 (C.D. Cal. Feb. 9, 2015) (quoting *Elec. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1353 (Fed. Cir. 2003)).

"[The most efficient judicial resolution] factor focuses on the location of the evidence and witnesses." *Panavision*, 141 F.3d at 1323 (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). "It is no longer weighed heavily given the modern advances in communication and transportation." *Id.*

Horton contends that he does not have sufficient minimum contacts with Nevada to justify this court's exercise of personal jurisdiction because (1) he has never lived in Nevada; (2) Preferred Law was based in Utah and never entered into any MARS service contracts with Nevada residents; and (3) he "has not operated, represented, managed, or owned any business associated with home loan modifications or any other type of business located in Nevada." (ECF No. 24). Horton further argues that "too much of a burden has been placed on [d]efendant[,]" because (1) this court granted the FTC's motion for a preliminary injunction to freeze defendants' assets and terminate their income, and (2) "key witnesses" are located in Utah. (ECF Nos. 24, 54). Horton maintains that these burdens make an exercise of personal jurisdiction in Nevada "manifestly unfair" and unreasonable.

Similarly, the Utah entities and the Hanleys maintain that this court's exercise of personal jurisdiction would violate the Fifth Amendment's Due Process Clause because (1) the moving defendants do not have sufficient minimum contacts with Nevada; (2) these defendants and many of their witnesses are located in Utah; (3) they would experience financial hardship if required to litigate in Nevada; (4) the Hanleys have personal responsibilities in Utah; (5) these defendants "had no reason to expect or foresee litigation in Nevada;" and (6) the interests of the FTC, the federal judicial system, and the forum state all favor the District of Utah's adjudication of this case. (ECF No. 40).

The moving parties' argument that they could not have reasonably expected to be haled into a Nevada district court is not relevant given the FTC Act's national service of process provision.[6] All of the moving defendants "acted within [a] district of the United States [and] sufficiently caused foreseeable consequences in this country." *Action Embroidery*, 368 F.3d at 1180. The defendants therefore could have reasonably expected to be haled into a district court in the United States.

---

[6] Even if this were the correct inquiry, the defendants' use of a "Hardest Hit Fund Program" hook, entering into MARS service contracts with Nevada residents, forming two Nevada entities, and utilizing a Nevada forum selection clause show that defendants' did purposefully interject themselves into the forum state's affairs and thus could have reasonably expected to be haled into a Nevada district court. *See Panavision*, 141 F.3d at 1322.

Further, the financial, evidentiary, and witness-related burdens raised by Horton, the Utah defendants, and the Hanleys do not rise to the level of a due process violation. *See Panavision*, 141 F.3d at 1323. In *Panavision*, the court concluded that even though the burden to an Illinois defendant to litigate in California was significant, it did not constitute a due process violation. *Id*. There, the court noted that "in this era of fax machines and discount air travel requiring [the defendant] to litigate in California is not constitutionally unreasonable." *Id*. Less than five hundred miles separate Las Vegas and Salt Lake City, rendering the burden on the defendants in this case significantly less than the burden upon the *Panavision* defendant. This is also true in light of continued technological advances in communication and transportation, which lessen the financial burden upon defendant and make the location of evidence and witnesses a fairly insignificant factor.

Additionally, while the defendants highlight their current lack of financial resources, this court's decision to freeze their assets and enjoin defendants from continuing the alleged MARS scheme results from the defendants' own illegal activities. The fact that the defendants cannot utilize their ill-gotten monies to pay for travel expenses and litigation costs without court approval does not constitute a burden. Although the court is more receptive to the Hanley's personal responsibilities, these circumstances are simply not sufficient to make out a 'compelling case' that the exercise of personal jurisdiction is unreasonable.

Similarly, the interest factors asserted by the Utah entities and the Hanleys are insufficient to shift the balance in their favor. The moving defendants claim that "this case bears no unique relationship to the State of Nevada," but once again, this is not the correct inquiry in light of the nationwide service of process provision. (ECF No. 40 at 19). This case clearly bears a relationship to the United States, and the federal government therefore has an interest in its adjudication. As the events and harm underlying this case touch multiple states, including both Utah and Nevada, this federal interest does not conflict with "the sovereignty of the defendant's state." As indicated by the Utah entities and the Hanleys, "the choice of forum should be largely immaterial." (ECF No. 40 at 18). The final factors—the importance of the forum to the plaintiff's interest in convenient and effective relief and the existence of an alternative forum—are therefore neutral.

1  The moving defendants have sufficient minimum contacts with the United States to justify personal jurisdiction and have not presented a 'compelling case' that the exercise of personal jurisdiction would be unreasonable. The moving defendants are therefore amenable to personal jurisdiction under the FTC Act in Nevada.

b. *Venue*

i. *Forum Non Conveniens*

Because dismissal based on *forum non conveniens* is inappropriate in federal cases when the alternative forum is another federal district court, the corporate defendants and the Hanleys' motion for dismissal based on *forum non conveniens* is improper. *See Ravelo Monegro*, 211 F.3d at 512–13 (9th Cir. 2000); *see also Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013) ("Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.'"). However, in the interest of judicial efficiency, the court will consider the motion as a de facto motion to transfer under 28 U.S.C. § 1404.

ii. *Transfer*

In considering a motion to transfer venue under 28 U.S.C. § 1404(a), the court may weigh a number of factors, including:

(1) the location where the relevant agreements were negotiated and executed;
(2) the state that is most familiar with the governing law;
(3) the plaintiff's choice of forum;
(4) the respective parties' contacts with the forum;
(5) the contacts relating to the plaintiff's cause of action in the chosen forum;
(6) the differences in the costs of litigation in the two forums;
(7) the availability of compulsory process to compel attendance of unwilling non-party witnesses;
(8) the ease of access to sources of proof;
(9) the presence of a forum selection clause; and
(10) the relevant public policy of the forum state.

*Jones*, 211 F.3d at 498–99. When considering these factors, courts employ a balancing approach, and no single factor is dispositive. *See Lens.com, Inc. v. 1-800 CONTACTS, Inc.*, 2:11-cv-0091-GMN-RJJ, 2012 WL 1155470, at *6 (D. Nev. Apr. 4, 2012).

In weighing these factors, the court remains mindful of "the plaintiff's venue privilege." *Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) ("Because plaintiffs are ordinarily allowed to select whatever forum they consider the most

advantageous (consistent with jurisdictional and venue limitations), we have termed their selection 'the plaintiff's venue privilege.'") (citation omitted); *see also Van Dusen*, 376 U.S. at 634 ("There is nothing, however, in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue."). Thus, while "courts have developed a bewildering variety of . . . formulations to describe the weight to be accorded [to] the plaintiff's initial choice of forum," "[t]here is normally a strong presumption in favor of honoring [this choice]." *See* 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.); *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.,* 61 F. 3d 696, 703 (9th Cir. 1995).

In order to overcome the presumption in favor of the plaintiff's choice of forum, the moving party has the burden of showing that the convenience of parties and the interest of justice heavily favor transfer. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Because "[t]he plaintiff's choice of forum is entitled to significant weight . . ., the defendant must make a strong showing of inconvenience to warrant transfer to another district." *Robinson Corp. v. Auto-Owners Ins. Co.*, 304 F. Supp. 2d 1232, 1243 (D. Haw. 2003) (quotation marks omitted). Moreover, defendant has the burden of showing that the alternative forum is the *more appropriate* forum. *See Jones*, 211 F.3d at 499.

While he briefly raises the issue of *forum non conveniens*, Horton, a pro se defendant, requests that this court transfer the entire action, or sever and transfer the action against him pursuant to § 1404. (ECF No. 24). Horton maintains that transfer is appropriate because (1) he "only lived and did business in Utah," (2) "[t]he vast majority of the primary businesses, witnesses, property, employees, records, and defendants are all located within Utah," (3) Preferred Law's MARS service contracts contained a Utah forum selection clause and were negotiated in Utah, and (4) the costs of litigating in Nevada would be unfair. *Id.*

Conversely, for the first time in their reply in support of their motion to dismiss based on *forum non conveniens*, the corporate defendants and the Hanleys argue that a transfer to the district of Utah is proper (ECF No. 70). Their reply maintains that transfer is appropriate because (1) the

defendants retain possession of the relevant contracts; (2) the instant case may require the application of Utah law; (3) the plaintiff's choice of forum is not entitled to deference; (4) "[t]his is a Utah controversy;" (5) the cost of litigating in Nevada "will be precipitously higher" than in Utah because Las Vegas "is several hours drive from [d]efendants' place of residence;" (6) witnesses who live outside of Nevada will be inconvenienced; and (7) "virtually all of the sources of proof are located in Utah." (ECF Nos. 45, 70).

The plaintiff's choice of forum is entitled to deference here because the FTC's chosen forum does have a connection to all of the parties. Horton argues that he did not transact any business in Nevada and that none of the allegations against him arose from events or omissions in Nevada. (ECF No. 24). As properly asserted by the FTC, "Horton wrongly views himself in isolation from the other [d]efendants." (ECF No. 31 at 9 n. 2). The FTC asserts that Horton acted as a principal in a common enterprise.[7] (ECF No. 1). The fact that Horton was temporarily disbarred for his actions soon after the Nevada entities were formed, dissolved Preferred Law as a result, and could no longer function as "a front for [. . .] expert legal assistance" does not change his principal role in the common enterprise. *Id.*

Further, Horton played an active role in forming the Nevada entities and his involvement in the alleged MARS scheme continued even after the revocation of his Utah bar license. (ECF No. 54). Moreover, the FTC alleges that the formation of the Nevada entities became necessary only as a result of increasingly problematic consumer complaints against the Utah entities. (ECF No. 63). It is reasonable to conclude that Preferred Law had to be dissolved because consumers could easily discover that its record owner and manager had committed ethical violations. *See id.* Thus, Horton's arguments that his decision to dissolve Preferred Law somehow distances him from the Nevada entities fails.

---

[7] While the Utah entities and the Hanleys suggest that "the FTC has not shown any evidence of the required elements of a common enterprise," this assertion is itself completely unsubstantiated and in fact contradicts the record, which provides sufficient evidence at this point in litigation to support the FTC's common enterprise claim. (EFC Nos. 68 at 3, 6 at 2-8, 28-31).

1    Based on his role in forming the Nevada entities and his involvement with the alleged MARS scheme, Horton transacted business in Nevada. Accordingly, venue is proper under the FTC Act in regard to the claims against Horton.

Like Horton's argument, the contention that the Utah entities are separate from the Nevada entities and therefore have no connection to Nevada fails because the Utah entities incorrectly view themselves in isolation from their Nevada counterparts. The Utah entities are part of a common enterprise. (ECF No. 1). Some of the Utah entities belonging to this common enterprise did business with Nevada residents. *Id.* Additionally, this common enterprise includes two Nevada entities that represent approximately 30% of the MARS service contracts entered into since 2011. (ECF Nos. 1, 63). Thus, a substantial amount of the events giving rise to the FTC's claim against the common enterprise, including the Utah entities, occurred in Nevada. As a result, venue is also proper for the claims against the Utah entities under the FTC Act.

Finally, the Hanleys clearly transacted business in Nevada, as they owned and operated the Nevada entities. By choosing to form these entities in Nevada, the Hanleys availed themselves to the benefits and protections of Nevada's laws. The fact that these locations constituted "virtual offices" is irrelevant. The Hanleys cannot rely upon their misrepresentations to consumers to overcome the plaintiff's venue privilege. The FTC Act clearly allows for proper venue in Nevada for the claims against the Hanleys.

Because venue is proper for all of the FTC's claims, the moving defendants must overcome the plaintiff's venue privilege in order to justify transfer. However, Nevada is not a significantly inconvenient forum for defendants who reside in Utah, only hours away from Las Vegas.[8] (ECF No. 45). Moreover, the location of sources of proof in Utah is insignificant because (1) technological advancements easily allow for the transmission of evidence and transportation of witnesses across neighboring state lines, and (2) the moving defendants have failed to allege or

---

[8] The defendants' utilization of Nevada forum selection clauses when drafting some of their MARS service contracts seriously undermines their contention that a Nevada forum is so inconvenient as to warrant transfer. If the defendants were genuinely and substantially inconvenienced by Nevada as a forum, surely they would not have required consumers to bring their claims in Clark County, Nevada. (ECF No. 64).

show that any of its "key witnesses" are unwilling to testify.[9] *Carijano*, 643 F.3d at 1231 ("When no witness' unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor.") (citation omitted).

Nevada does have an interest in protecting its residents and in preventing out-of-state residents from utilizing Nevada entities to defraud consumers on a national scale. The fact that defendants were based in and reside in Utah does not diminish Nevada's legitimate interest in this controversy. Additionally, this court is fully capable of applying both federal and Utah law as necessary. The moving defendants' assertion that this court will adjudicate the issue slightly less efficiently than a Utah district court, even if true, does not warrant transfer. A slightly faster resolution does not show that the alternative forum is more appropriate than the plaintiff's chosen forum, nor does it overcome the plaintiff's privilege.

Because the plaintiff's chosen venue is entitled to deference and none of the defendants have made an adequate showing of inconvenience, transfer to the alternative forum is inappropriate.

## IV.  Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Horton's motion to dismiss for lack of personal jurisdiction or transfer venue (ECF No. 24) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED, that the Utah entities and the Hanleys' motion to dismiss for lack of personal jurisdiction (ECF No. 40) be, and the same hereby is, DENIED.

. . .

. . .

. . .

---

[9] While the Nevada entities and the Hanleys cite specific witnesses in their reply, they misunderstand the FTC's point that "[d]efendants have not identified any non-party witnesses for whom compulsory process would be *necessary*." (ECF Nos. 64 at 9, 70 at 8) (emphasis added). While the moving defendants have identified particular witnesses in their reply, they have still failed to show that any of these witnesses would not voluntarily provide a deposition. Thus, none of the defendants, including Horton, have shown that a compulsory process is necessary for a single non-party witness.

IT IS FURTHER ORDERED, that the corporate defendants and the Hanleys' motion to dismiss on the basis of forum non conveniens (ECF No. 45) be, and the same hereby is, DENIED.

DATED June 7, 2018.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**