UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:18-CV-30 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| CONSUMER DEFENSE, LLC, et al., | |
| Defendant(s). | |

Presently before the court is receiver Thomas W. McNamara's motion for authorization to sell real property and vehicles. (ECF No. 101). Defendants Consumer Defense, LLC (Utah); Preferred Law, PLLC; American Home Loan Counselors; Consumer Defense Group, LLC; American Home Loans, LLC; AM Property Management, LLC; FMG Partners, LLC; Brown Legal, Inc.; Zinly, LLC (collectively "Utah entities"); Jonathan P. Hanley and Sandra X. Hanley's (collectively "the Hanleys") filed a response (ECF No. 103), to which McNamara replied (ECF No. 105). The Federal Trade Commission ("FTC") filed a non-opposition. (ECF No. 102).

Also before the court is the FTC's motion to strike. (ECF No. 118). The Utah entities and the Hanleys filed a response (ECF No. 128), to which the FTC replied (ECF No. 129).

Also before the court is a stipulation to extend time to file a response to the FTC's motion to strike. (ECF No. 123).

Also before the court is the FTC's motion for entry of clerk's default. (ECF No. 126). The relevant defendants have not filed a response and the time to do so has passed.

Also before the court is the FTC's motion to admit Jason D. Schall to practice in the District of Nevada. (ECF No. 127).

**James C. Mahan**
**U.S. District Judge**

Also before the court is the Utah entities and the Hanleys' motion for release of funds. (ECF No. 133). The FTC filed a response (ECF No. 138) to which the Utah entities and the Hanleys replied. (ECF No. 141).

Also before the court is the Hanleys' second motion for release of funds. (ECF No. 158). The FTC filed a response (ECF No. 164), to which the Hanleys replied. (ECF No. 168).

Also before the court is the Hanleys' motion to strike. (ECF No. 160). The FTC filed a response. (ECF No. 167). The Hanleys did not file a reply and the time to do so has passed.

**I.     Facts**

The instant case arises from the Utah entities; Consumer Defense, LLC (Nevada); Consumer Link, LLC; the Hanleys; and Benjamin Horton's (collectively "defendants") allegedly fraudulent mortgage assistance relief services ("MARS"). (ECF No. 1). The FTC alleges the following facts:

Defendants began to perpetrate the MARS scheme in 2011, in which they would collect advance fees from consumers and promise to obtain mortgage loan modifications that would stop or prevent foreclosure. *Id*. Once defendants initiated the loan modification process, they would instruct consumers not to pay their mortgages and not to contact or respond to their lenders. *Id.*

Defendants typically failed to obtain mortgage loan modifications. *Id.* As a result, consumers found themselves with months of interest and missed payments added to their mortgages and, in some cases, have faced foreclosure and bankruptcy. *Id.* Ultimately, defendants used the MARS scheme to swindle consumers out of more than $11 million. *Id.*

The MARS scheme was a common enterprise of eleven interrelated entities—the corporate defendants, controlled by the Hanleys and Horton. (ECF No. 6). Most of the corporate defendants interacted with consumers to provide MARS service contracts.[1] *Id*. The remaining entities functioned as payment collectors and financial conduits that paid for required services, such as websites and office spaces. *Id*.

---

[1] The corporate defendants that interacted with customers are Consumer Defense, LLC (Nevada and Utah); Consumer Link, Inc.; Preferred Law, PLLC; American Home Loan Counselors; Consumer Defense Group, LLC, f/k/a Modification Review Board, LLC.

The corporate defendants shared employees and commingled funds. *Id*. Moreover, when interacting with consumers, the corporate defendants "blurred corporate distinctions" by intermingling contacts, forms, and consumer payments. *Id*. The FTC therefore contends that the corporate defendants were a "maze of interrelated companies" that "jointly participated in a 'common venture' in which they benefitted from a shared business scheme . . ." *Id*. (citations omitted).

Horton and the Hanleys formed the pertinent business entities together. (ECF No. 54). Jonathan Hanley controlled and operated the majority of the corporate defendants. (ECF No. 63). Sandra Hanley managed nearly all the corporate defendants, handled the payroll, and responded to chargebacks on defendants' merchant accounts. *Id*. Ms. Hanley was also a representative who negotiated mortgage loan modifications pursuant to consumer contracts. *Id*.

Horton, the only attorney who worked with the Hanleys, allegedly "served as a front for [d]efendants' claim that they [would] provide expert legal assistance to consumers to negotiate mortgage loan modifications." (ECF No. 6). Moreover, Horton was the owner, manager, and attorney for Preferred Law, PLLC, ("Preferred Law"), which Horton dissolved due to the suspension of his Utah bar license. (ECF Nos. 6, 54).

The FTC filed the underlying complaint on January 8, 2018, alleging six causes of action pursuant to Section 5(a) of the Federal Trade Commission Act ("FTC act"), 15 U.S.C. § 45(a) against all defendants. (ECF No. 1). The causes of action in the complaint are as follows: (1) deceptive representations regarding substantially more affordable loan payments, substantially lower interest rates, or foreclosure avoidance; (2) deceptive representations regarding loan modification services; (3) advance payments for mortgage assistance relief services; (4) prohibited representations; (5) material misrepresentations; (6) failure to disclose. *Id*.[2]

On February 20, 2018, the court granted the FTC's motion for preliminary injunction, which maintained the asset freeze that the court set in place with a temporary restraining order on January 10, 2018. (ECF Nos. 12, 55). On February 23, 2018, the parties stipulated to release the

---

[2] Counts (3) – (6) assert violations of the MARS Rule, 12 C.F.R. Part 1015, which constitute unfair or deceptive acts or practices in or affecting commerce under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *Id*.

**James C. Mahan**
**U.S. District Judge**

- 3 -

Hanleys' personal bank account from the asset freeze. (ECF No. 62). On February 28, 2018, the parties also stipulated to release $25,000 for defendants' attorney's fees. (ECF Nos. 65, 67).

On March 21, 2018, the corporate defendants and the Hanleys appealed the preliminary injunction. (ECF No. 81). On May 4, 2018, the court granted the Hanleys' motion for release of funds, in which court authorized the release of $6,300 a month for a period of six months and $30,000 for attorney's fees. (ECF No. 104).

Now, the parties have filed several motions requesting various forms of relief. (ECF Nos. 101, 118, 123, 126, 127, 133, 158, 160).

## II. Legal Standard

### a. Motion to strike pursuant to Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispending with those issues prior to trial . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

### b. Clerk's entry of default

Federal Rule of Civil Procedure 55(a) authorizes the clerk to enter default where a party "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." Fed R. Civ. P. 55(a).

A defendant must serve an answer within twenty-one days after being served with the summons and complaint, unless another time is specified by the rule or by federal statute, or defendant has timely waived service. Fed. R. Civ. P. 12(a)(1)(A). However, if a defendant files a Rule 12 motion and "the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4)(A).

## III. Discussion

The court is currently considering eight motions that the litigants have filed. Three of these eight motions, (ECF Nos. 101, 133, 158), request relief that is related to the asset freeze that the

court issued pursuant to the preliminary injunction that the court issued on February 20, 2018. Because the corporate defendants and the Hanleys have appealed the preliminary injunction, the court first addresses its jurisdiction over the asset freeze before proceeding to resolve the pending motions.

*a. Jurisdiction*

"Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Natural Res. Def. Council v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam)). The purpose of this rule "is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously." *Id*.

This rule "is a creature of judicial prudence, however, and is not absolute." *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983). With regards to a final judgment in an action for an injunction or a receivership, and any proceedings taken to enforce it, the district court retains jurisdiction. *See* Fed. R. Civ. P. 62(a). This exception also includes orders to pay disgorgement. *See SEC v. Clark,* 915 F.2d 439, 453 (9th Cir. 1990) ("The SEC's power to obtain injunctive relief has been broadly read to include disgorgement of profits realized from violations of the securities law.") (citations omitted).

Further, the Ninth Circuit has recognized that the district courts have an inherent power to "preserve the status quo during the pendency of an appeal." *Natural Resources Def. Council*, Inc., 242 F.3d at 1166. Because the three motions that pertain to the asset freeze request relief that would affect the status quo of the estate, either by selling assets or releasing funds, this court is the appropriate forum to decide the merits of those motions.

Accordingly, the court hereby proceeds to adjudicate the pending motions in turn.

*b. Authorization for sale of real property and vehicles*

McNamara request that the court authorize the private sale of an office condominium located at 41 West 9000 South, Sandy, Utah 84070 ("Sandy office") and a residential condominium located at 8165 Royal Street East #9, Park City, Utah 84060 (Parks condominium"). (ECF No. 101). McNamara also requests that the court authorize the sale of the following four

vehicles: (1) 2014 Porsche Carrera 4S; (2) 2008 Mercedes Benz S550; (3) 2007 Chevrolet Suburban; and (4) 2015 Forest River Viking V-Tree Camping Trailer. *Id* The Utah entities and the Hanleys argue that the court cannot authorize the sale of property under receivership until there is a finding of liability. (ECF No. 103). The counter-movants are incorrect. Courts regularly freeze assets with a preliminary injunction and authorize the sale of those assets prior to finding liability in order to preserve the value of the estate. *See, e.g., F.T.C. v. Johnson*, No. 2:10-cv-02203-RLH-GWH, 2011 WL 3841039 (D. Nev. Aug. 26, 2011); *see also, e.g., S.E.C. v. TLC Investments and Trade Co.,* 147 F. Supp. 2d 20131, 1036 (C.D. Cal. 2001) ("First, Liquidation at this time, prior to entry of judgment, is appropriate because . . . ongoing management alone will drain money out of the estate . . .").

Courts may direct an appointed receiver to arrange the private sale of property if the court finds that doing so would serve the best interests of the estate. 28 U.S.C. § 2001(b). In ordering a private sale, § 2001(b) requires the court to "appoint three disinterested persons to appraise such property" and to not confirm a private sale "at a price less than two-thirds of the appraised value." *Id.* However, 28 U.S.C. § 2004 gives district courts the discretion to deviate from the standard set in Section 2001(b), allowing courts authorize sale of *personal property* without three disinterested appraisals. 28 U.S.C. § 2004; *United States v. Stonehill*, 83 F.3d 1156, 1160 (9th Cir. 1996).

The Sandy office is subject to a matured promissory note in the amount of $510,000 and monthly office association assessments in the amount of $549.04. (ECF No. 101-1). The outstanding amount owed to the association is $3,000. *Id*. The Parks condominium is subject to a delinquent loan, with at least $25,000 due, and association dues of $4,000 per quarter. *Id*. The outstanding amount owed to the association is approximately $19,000. *Id*.

McNamara represents that the estate does not have sufficient assets to service the liabilities on the properties. *Id*. Moreover, the properties are likely to incur further obligations, such as common assessments and property taxes, that will unnecessarily diminish the value of the estate. Accordingly, the court will authorize private sale of the properties and appoint three neutral appraisers pursuant to 28 U.S.C. § 2001(b). *See United States,* 83 F.3d at 1160.

**James C. Mahan**
**U.S. District Judge**

As for the vehicles, which are incurring storage costs in excess of $5,000 per year, are inherently depreciating assets. *See* (ECF No. 101). Thus, selling the vehicles before they incur further loss in value will maximize recovery and reduce costs for the receivership estate.

McNamara requests that the court authorize sale of the vehicles pursuant to 28 U.S.C. § 2004, which allows the court to deviate from the standards set forth in § 2001. *See* 28 U.S.C. § 2004; *United States*, 83 F.3d at 1160. Specifically, McNamara requests permission to use commercially reasonable sales methods, such as receiving proposals from dealers and comparing those offers with other sales avenues. (ECF No. 101).

Given the nature of automobile sales and the interest in favor of ensuring the largest return to the receivership estate, McNamara's requested manner of sale would best preserve the value of the estate. Thus, the court will exercise its "broad powers and wide discretion . . . in an equity receivership" and authorize sale of the vehicles pursuant to § 2004. *S.E.C. v. Capital Consultants*, LLC, 397 F.3d 733, 738 (9th Cir. 2005).

*c. Motion to strike pursuant to Federal Rule of Civil Procedure 12(f)*

As a preliminary matter, the court will grant the stipulation to extend time for defendants to file a response to the FTC's motion to strike. Thus, the court will treat the Utah entities and the Hanleys' response (ECF No. 128) as having been timely filed.

On July 2, 2018, the Utah entities and the Hanleys filed an answer that contained fourteen affirmative defenses. (ECF No. 115). The FTC moves to strike the eighth, ninth, tenth and twelfth of those defenses. (ECF No. 118).

*i. Eighth affirmative defense*

The Utah entities and the Hanleys' eighth affirmative defense is that any monetary relief is subject to offset by benefits received by consumers, refunds paid to customers, business expenses, and defendants' taxes. (ECF No. 115).

A monetary award to consumers in this case may reflect benefits that the consumers received, including a reduction for any refunds. *FTC v. USA Financial, LLC*, No. 8:08-cv-899-T-17MAP, 2009 WL 10671254 at *3 (M.D. Fla. Feb. 18, 2009); *FTC v. Bronson Partners, LLC et al.*, No. 3:04-cv-1866(SRU), 2006 WL 197357 (D. Conn. Jan. 25, 2006). Moreover, the FTC

admits that refunds would offset the amount of any equitable monetary judgment. (ECF No. 118). Accordingly, the court will deny the FTC's motion to strike as to these defenses.

However, there does not exist any authority in support of the Utah entities and the Hanleys' assertion that costs, business expenses, or taxes should offset any monetary award. *See FTC*, 2006 WL 197357 at *2. Therefore, the court will grant the FTC's motion to strike as to these defenses. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading any insufficient defense . . .").

### *ii. Ninth affirmative defense*

The Utah entities and the Hanleys' ninth affirmative defense is that any monetary relief is subject to offset by damages that the FTC caused when it moved for a temporary restraining order and preliminary injunction. (ECF No. 115). The court is not aware of and the counter-movants have not provided any authority showing that this is a proper affirmative defense. Accordingly, the court will strike the Utah entities and the Hanleys' ninth affirmative defense for being an "insufficient defense[.]" Fed. R. Civ. P. 12(f).

### *iii. Tenth affirmative defense*

The Utah entities and the Hanleys' tenth affirmative defense is that laches bars the FTC's claims. (ECF No. 115).

Laches is not available against the federal government when it undertakes an action to enforce a public right or to protect the public interest. *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *See United States v. Ruby Co.*, 588 F.2d 697, 705 n.10 (9th Cir. 1978). Here, the FTC is seeking consumer redress, which renders this action an effort to enforce a public right or protect the public interest. *See, e.g., FTC v. Moneymaker*, No. 2:11-cv-461-JCM(RJJ), 2011 WL 3290375 at *2 (striking a latches affirmative defense against the FTC in an enforcement action). Therefore, the court will strike the tenth affirmative defense.

### *iii. Twelfth affirmative defense*

The Utah entities and the Hanleys' twelfth affirmative defense is that waiver or estoppel bar the FTC's claims. (ECF No. 115).

Waiver, like latches, is not available against the federal government when it undertakes an action to enforce a public right or to protect the public interest. *See Donovan v. Schmoutey,* 592

U.S. District Judge

- 8 -

F. Supp. 1361, 1403 (D. Nev. 1984). As the court discussed above, this case constitutes a government action to enforce a public right or to protect the public interest. Thus, the Utah entities and the Hanleys may not plead waiver as an affirmative defense.

Equitable estoppel, on the other hand, is a viable affirmative defense if the defendant alleges some affirmative misconduct on the part of the government. *Ruby Co.*, 588 F.2d at 705; *see also INS v. Hibi*, 414 U.S. 5, 8–9 (1973) (holding that estoppel does not apply to government actions absent affirmative misconduct). However, if the defendant does not allege the necessary elements, the defense fails as a matter of law. *See Donovan,* 592 F. Supp. at 1403 ("The estoppel defense raised by defendants fails as a matter of law because defendants failed to allege its necessary elements.").

Here, the Utah entities and the Hanleys merely recite the word "estoppel" without providing allegations of some affirmative misconduct on the part of the government. (ECF No. 115). Thus, the estoppel defense fails as a matter of law. *See Donovan,* 592 F. Supp. at 1403.

Accordingly, the court will strike the Utah entities and the Hanleys' twelfth affirmative defense.

    *d. Clerk's entry of default*

The FTC moves for clerk's entry of default against defendants Consumer Defense, LLC (Nevada) ("Consumer Defense") and Consumer Link, Inc. ("Consumer Link") due to the relevant defendants' failure to timely file a responsive pleading. (ECF No. 126).

On March 19, 2018, Consumer Defense and Consumer Link waived service of a summons and complaint. (ECF Nos. 87, 90). At that time, Consumer Defense and Consumer Link had already filed a Rule 12 motion to dismiss, which triggered the tolling period under Federal Rule of Civil Procedure 12(a)(4)(A). (ECF No. 45).

On June 7, 2018, the court denied the Rule 12 motion to dismiss. (ECF No. 112). Pursuant to the fourteen-day filing period under Rule 12(a)(4)(A), Consumer Defense and Consumer Link had until June 31, 2018, to file and serve an answer. Because neither defendant filed an answer by that deadline, the court will direct the clerk to enter default.

. . .

James C. Mahan
U.S. District Judge

- 9 -

*e. Motion to admit government attorney*

The FTC requests that the court admit government attorney Jason D. Schall to practice in the District of Nevada for all matters in this district, including this action, during the period of his employment with the United States. (ECF No. 127).

With respect to admission of a government attorney, the Local Rules provide in pertinent part:

> Unless the court orders otherwise, any attorney who is a member in good standing of the highest court of any state, commonwealth, territory, or the District of Columbia, who is employed by the United States as an attorney and has occasion to appear in this court on behalf of the United States, is entitled to be permitted to practice before this court during the period of employment upon motion by the employing federal entity, the United States Attorney, the United States Trustee's Office, or the Federal Public Defender for this district or one of the assistants.

LR IA 11-3.

The FTC has filed a proper motion under the Local Rules in which the FTC represents that Jason D. Schall is "an active member in good standing of the Bar of the State of New York (Bar No. 4288437) and the Bar of the District of Columbia (Bar No. 495070)." (ECF No. 107). Good cause appearing, the court will grant the FTC's motion to admit Jason D. Schall to practice in the District of Nevada.

*f. Motion for release of funds*

The Utah entities and the Hanleys request that the court release $27,043.04 for attorney's fees. (ECF No. 133).

The release of funds for attorney's fees lies within the discretion of the court. *See United States v. Monsanto*, 491 U.S. 600, 615-16 (1989). The lack of availability of other funds and the fact that the defendants have not yet been found liable for the alleged wrongdoing are considerations courts have evaluated when determining whether to release funds for attorney's fees. *Commodity Futures Trading v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) ("Discretion must be exercised by the district court in light of the fact that wrongdoing is not yet proved when the application for attorney fees is made.").

The Utah entities and the Hanleys have mailed an *in camera* submission, which includes an itemization of the attorney's fees that they incurred from February 2018 through August 2018. *See* (ECF No. 134). In light of the complex nature of this lawsuit, the quality of the work performed, ongoing discovery, and the several motions that the movants litigated in the relevant time period, $27,043.04 constitutes a reasonable fee.

While the court recognizes the importance of competent representation, the court is at least equally conscious of the public interest in asset preservation for redress purposes. *See World Wide Factors*, 882 F.2d at 348 (approving limitation on attorney's fees "out of concern for preserving funds for ultimate distribution to defrauded customers"). Accordingly, after weighing several competing interests here, the court will authorize the release of funds for the Utah entities and the Hanleys' attorney's fees in the amount of $27,043.04.

  g. *Second motion for release of funds*

The Hanleys request that the court release an additional $30,000 for attorney's fees and an additional $6,300 per month for living expenses. (ECF No. 158).

On May 4, 2018, the court authorized the release of living expenses in the amount of $6,300 per month for a period of six months. (ECF No. 104). The court also held that it authorized the release of monthly living expenses for a period of six months in order to afford the Hanleys reasonable time to secure adequate employment to support the basic needs of their family. *Id*.

The six-month period has expired and the Hanleys have not provided any evidence showing that they attempted to secure employment in good faith. The Hanleys failure to take advantage of the opportunity that the court provided cannot justify further diminishing the estate. Accordingly, the court will not authorize the release of living expenses.

As for attorney's fees, the Hanleys have complied with the court's previous order requiring the Hanleys provide an itemization of attorney's fees. *See* (ECF No. 134). The court has reviewed the itemized submission and, as discussed above, finds that the legal fees with respect to the funds which the court has already released are reasonable.

Accordingly, the court will authorize the release of an additional $30,000 in attorney's fees so that the Hanleys may secure adequate representation. *See World Wide Factors*, 882 F.2d at 348

James C. Mahan
U.S. District Judge

(approving limitation on attorney's fees "out of concern for preserving funds for ultimate distribution to defrauded customers"). The Hanleys shall submit an exact itemization documenting the use of the funds. At that time, the court will evaluate the reasonableness of the attorney's fees and the potential subsequent release of attorney's fees as this litigation proceeds.

### h. Motion to strike declaration

The Hanleys move to strike Ecco Debnam's declaration (ECF No. 7 at PX03) on the grounds that it contains numerous false claims that are inconsistent with a prior deposition testimony. (ECF No. 160). The motion primarily consists of arguments attacking Debnam's credibility. *See id.* The only statement that the Hanleys specifically identify as being false is paragraph six of the declaration, in which Debnam states, "Preferred Law told me not to make any more payments on my mortgage or talk to my lender." *Id.*; *see also* (ECF No. 7 at PX03).

Pursuant to the sham affidavit doctrine, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The doctrine does not preclude a party "from elaborating upon, explaining or clarifying prior testimony[.]" *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009) (internal quotations omitted). However, when the circumstances clearly and unambiguously show that the contradiction is a sham, the court may strike the document. *Id.*; *see also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

Here, defendants have not deposed Debnam. Thus, there does not exist prior deposition testimony for Debnam to contradict in his sworn declaration. Accordingly, the court will deny the Hanleys' motion to strike Debnam's declaration.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that McNamara's motion for authorization to sell real property and vehicles (ECF No. 101) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that McNamara shall file with this court within seven (7) days from the date of this order a proposed order that explicitly appoints three proposed appraisers by name, among the other required findings of fact, conclusions of law, and orders therein.

IT IS FURTHER ORDERED that the FTC's motion to strike (ECF No. 118) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that the stipulation to extend time to file a response to the FTC's motion to strike (ECF No. 123) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the FTC's motion for clerk's entry of default (ECF No. 126) be, and the same hereby is, GRANTED.

The clerk shall enter default as to defendants Consumer Defense, LLC (Nevada) and Consumer Link, Inc. pursuant to Federal Rule of Civil Procedure 55(a).

IT IS FURTHER ORDERED that the FTC's motion to admit Jason D. Schall to practice in the District of Nevada (ECF No. 127) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the Utah entities and the Hanleys' motion for release of funds (ECF No. 133) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that the Hanleys' second motion for release of funds (ECF No. 158) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that the Hanleys' motion to strike (ECF No. 160) be, and the same hereby is, DENIED.

DATED January 17, 2019.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**