# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:18-CV-30 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| CONSUMER DEFENSE, LLC, et al., | |
| Defendant(s). | |

Presently before the court is defendants Jonathan P. Hanley and Sandra X. Hanley's (collectively "the Hanleys") motion for reconsideration. (ECF No. 184). Receiver Thomas W. McNamara ("McNamara") and plaintiff Federal Trade Commission ("FTC") filed separate responses. (ECF Nos. 189, 190). The Hanleys did not reply and the time to do so has passed.

Also before the court is Magistrate Judge Peggy A. Leen's report and recommendation. (ECF No. 191). Defendants Consumer Defense, LLC (Utah); Preferred Law, PLLC; American Home Loan Counselors; Consumer Defense Group, LLC; American Home Loans, LLC; AM Property Management, LLC; FMG Partners, LLC; Brown Legal, Inc.; and Zinly, LLC (collectively "Utah entities") did not file an objection and the time to do so has passed.

Also before the court Jonathan P. Hanley's ("Mr. Hanley") motion for leave to file supplemental exhibits. (ECF No. 198). McNamara filed a response. (ECF No. 202). Mr. Hanley did not file a reply and the time to do so has passed.

**I.     Facts**

The instant case arises from the Utah entities; Consumer Defense, LLC (Nevada); Consumer Link, LLC; the Hanleys; and Benjamin Horton's (collectively "defendants") allegedly

**James C. Mahan**
**U.S. District Judge**

fraudulent mortgage assistance relief services ("MARS"). (ECF No. 1). The FTC alleges the following facts:

Defendants began to perpetrate the MARS scheme in 2011, in which they would collect advance fees from consumers and promise to obtain mortgage loan modifications that would stop or prevent foreclosure. *Id*. Once defendants initiated the loan modification process, they would instruct consumers not to pay their mortgages and not to contact or respond to their lenders. *Id.*

Defendants typically failed to obtain mortgage loan modifications. *Id.* As a result, consumers found themselves with months of interest and missed payments added to their mortgages and, in some cases, faced foreclosure and bankruptcy. *Id.* Ultimately, defendants used the MARS scheme to swindle consumers out of more than $11 million. *Id.*

The MARS scheme was a common enterprise of eleven interrelated entities—the corporate defendants, controlled by the Hanleys and Horton. (ECF No. 6). Most of the corporate defendants interacted with consumers to provide MARS service contracts.[1] *Id*. The remaining entities functioned as payment collectors and financial conduits that paid for required services, such as websites and office spaces. *Id*.

The corporate defendants shared employees and commingled funds. *Id*. When interacting with consumers, the corporate defendants "blurred corporate distinctions" by intermingling contacts, forms, and consumer payments. *Id*. The FTC therefore contends that the corporate defendants were a "maze of interrelated companies" that "jointly participated in a 'common venture' in which they benefitted from a shared business scheme . . ." *Id*. (citations omitted).

The Hanleys and Horton formed the pertinent business entities together. (ECF No. 54). Mr. Hanley controlled and operated the majority of the corporate defendants. (ECF No. 63). Sandra X. Hanley ("Ms. Hanley") managed nearly all the corporate defendants, handled the payroll, and responded to chargebacks on defendants' merchant accounts. *Id*. Ms. Hanley was also a representative who negotiated mortgage loan modifications pursuant to consumer contracts. *Id*.

---

[1] The corporate defendants that interacted with customers are Consumer Defense, LLC (Nevada and Utah); Consumer Link, Inc.; Preferred Law, PLLC; American Home Loan Counselors; Consumer Defense Group, LLC, f/k/a Modification Review Board, LLC.

Benjamin Horton, the only attorney who worked with the Hanleys, allegedly "served as a front for [d]efendants' claim that they [would] provide expert legal assistance to consumers to negotiate mortgage loan modifications." (ECF No. 6). Horton was also the owner, manager, and attorney for Preferred Law, PLLC, ("Preferred Law"), which he dissolved after his Utah bar license was suspended. (ECF Nos. 6, 54).

The FTC filed the underlying complaint on January 8, 2018, alleging six causes of action pursuant to Section 5(a) of the Federal Trade Commission Act ("FTC act"), 15 U.S.C. § 45(a) against all defendants. (ECF No. 1). The causes of action in the complaint are as follows: (1) deceptive representations regarding substantially more affordable loan payments, substantially lower interest rates, or foreclosure avoidance; (2) deceptive representations regarding loan modification services; (3) advance payments for mortgage assistance relief services; (4) prohibited representations; (5) material misrepresentations; (6) failure to disclose. *Id.*[2]

On February 20, 2018, the court granted the FTC's motion for preliminary injunction, which maintained the asset freeze that the court set in place with a temporary restraining order on January 10, 2018. (ECF Nos. 12, 55). On January 18, 2019, the court granted McNamara's motion for authorization to sell properties and vehicles that the court enjoined with the preliminary injunction. (ECF No. 182). The court also authorized the release of $57,043.04 for attorney's fees. *Id.*

The Hanleys now request that the court vacate its January 18, 2019, order and prevent McNamara from selling the respective real properties and vehicles. (ECF No. 184). The magistrate judge recommends that the court enter default judgment against the Utah entities for failing to comply with court orders. (ECF No. 191). Lastly, Mr. Hanley requests leave to file supplemental exhibits in support of his objection to a magistrate judge order. (ECF No. 198).

. . .

. . .

. . .

---

[2] Counts (3) – (6) assert violations of the MARS Rule, 12 C.F.R. Part 1015, which constitute unfair or deceptive acts or practices in or affecting commerce under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *Id.*

James C. Mahan
U.S. District Judge

- 3 -

## II. Legal Standard

### a. Reconsideration

A motion for reconsideration "should not be granted, absent highly unusual circumstances." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Rule 54(b) permits a district court to revise an order that does not terminate the action at any time before the entry of judgment. Fed. R. Civ. P. 54(b); *see also Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001). However, reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotations omitted). A motion for reconsideration is also an improper vehicle "to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in litigation." *Marlyn Nutraceuticals*, 571 F.3d at 880.

### b. Report and recommendation

This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).

Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review

employed by the district court when reviewing a report and recommendation to which no objections were made).

**III.	Discussion**

Before the court are three motions.  First, the court will deny the Hanleys' motion for reconsideration because the movants have not provided good cause for the court to amend its January 18, 2019, order.  Second, the court will adopt the magistrate judge's report and recommendation because the Utah entities willfully failed to comply with the court's orders. Third, the court will grant Mr. Hanley's motion for leave to file supplemental exhibits because the exhibits are relevant to Mr. Hanley's underlying objection.

*a.	Reconsideration*

The Hanleys argue that the court should amend its January 18, 2019, order on two grounds: (1) the consumer benefit in this case is in excess of $120,000,000.00, which offsets the entire potential money judgment of approximately $11,000,000.000 and (2) the office condominium located at 41 West 9000 South, Sandy, Utah 84070 ("Sandy office") and a residential condominium located at 8165 Royal Street East #9, Park City, Utah 84060 ("Parks condominium") should not be sold because McNamara caused the mortgages on the properties to default.  (ECF No. 184).

The Hanleys do not provide any explanation of how they calculated consumer benefits in the amount of $120,000,00.00.  The FTC believes that the Hanleys are referring to documents that defendants produced when they were opposing the FTC's motion for preliminary injunction.  (ECF No. 190).  The court already examined those documents and determined that they do not show consumer benefits that would offset the entire potential money judgment in this action.  (ECF Nos. 55, 100).

As for the defaults, McNamara represents that the mortgage on the Sandy office matured on April 3, 2018, with debt in excess of $510,000.  (ECF No. 3).  The Hanleys' purported rental profit of $2,000.00 to $3,000.00 could not satisfy an outstanding obligation of half a million dollars.  *Id*.  McNamara also represents that the mortgage on the Park City Condo was already in

1 default when the Hanleys turned over the property in early March 2018. (ECF No. 189). The
2 Hanleys did not reply to McNamara's brief or otherwise contest his representations.

3 In consideration of the foregoing, the Hanleys have not shown that the court committed
4 clear error, that the initial decision was unjust, or that newly discovered evidence warrants
5 amending the court's January 28, 2019, order. Accordingly, the court will deny the Hanleys'
6 motion for reconsideration.

*b. Report and recommendation*

The magistrate judge recommends that the court enter default judgment against the Utah entities because the Utah entities did not comply with an order to retain substitute counsel and an order to show cause why the court should not impose sanctions. (ECF No. 191). The magistrate judge warned the Utah entities in the order to show cause that failure to comply may result in default judgment. (ECF No. 181). Although the Utah entities have not objected to the recommendation, court engages in a *de novo* review to determine whether to adopt the magistrate judge's findings.

Under Federal Rule of Civil Procedure 37, the court may render a default judgment as the ultimate sanction for refusal to obey discovery orders. Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997). Default judgment is a drastic remedy that may be used only in "extreme circumstances and only where the violation is due to willfulness, bad faith, or fault of the party." *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (quotes and citation omitted). Willfulness or bad faith may be established by "disobedient conduct not shown to be outside the control of the litigant." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993).

Here, the Utah entities failed to abide by a discovery order requiring the Utah entities to retain substitute counsel by December 20, 2018. *See* (ECF No. 147, 181); *see also Nachman v. Regenocyte Worldwide, Inc.*, No. 2:13-cv-0319-MMD-PAL, 2014 WL 3748616 at *11-14 (D. Nev. July 29, 2014) (treating an order to retain counsel as a discovery order under Rule 37). Because the Utah entities have not shown that their disobedient conduct was beyond their control,

**James C. Mahan**
**U.S. District Judge**

the court finds that the Utah entities' failure to comply establishes willfulness. *See Henry*, 983 F.2d at 948–49.

Thus, default judgment may be an appropriate sanction following the consideration of five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (quotes and citation omitted).

The public's interest in expeditious resolution of litigation and the court's need to manage its docket weighs in favor of default judgment. *See Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). Further, there exists a great risk of prejudice against the FTC and consumers because the Utah entities' absence has prevented the FTC from being able to resolve this litigation on the merits. *See Robinson v. City of Hamilton*, 28 F.3d 108 (9th Cir. 1994). The court recognizes that the public policy of favoring disposition of cases on their merits weighs against default judgment. *See Wanderer*, 910 F.2d at 656. However, the court has already applied a lesser sanction of warning the Utah entities that failure to comply could result in sanctions. *See Connecticut General*, 482 .3d at 1096.

In consideration of the foregoing, default judgment is appropriate. The court will adopt the magistrate judge's order in its entirety.

  *c. Leave to file supplemental points and authorities*

On February 22, 2019, the magistrate judge denied Mr. Hanley's motion to compel McNamara to produce all email accounts in connection with the receivership estate. (ECF No. 192). The magistrate judge held that Mr. Hanley improperly filed his motion and that McNamara had already produced all relevant documents in his possession. *Id*. On March 8, 2019, Mr. Hanley objected to the magistrate judge's order, arguing that the magistrate judge improperly declined to recognize that McNamara destroyed an "immeasurable" amount of records. (ECF No. 195).

Now, Mr. Hanley wants to submit supplemental exhibits of email communications related to the preservation of email accounts. (ECF No. 198). As Mr. Hanley proceeds *pro se* and the

exhibits are relevant to the underlying objection, the court will exercise leniency and grant Mr. Hanley's motion for leave to file supplemental exhibits.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Hanleys' motion for reconsideration (ECF No. 184) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Magistrate Judge Peggy A. Leen's report and recommendation (ECF No. 191) be, and the same hereby is, ADOPTED in its entirety.

IT IS FURTHER ORDERED that Mr. Hanley's motion for leave to file supplemental exhibits (ECF No. 198) be, and the same hereby is, GRANTED.

DATED April 30, 2019.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge