ALDEN F. ABBOTT
General Counsel
GREGORY A. ASHE
JASON SCHALL
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
Telephone: 202-326-3719 (Ashe)
Telephone: 202-326-2251 (Schall)
Facsimile: 202-326-3768
Email: gashe@ftc.gov, jschall@ftc.gov

NICHOLAS A. TRUTANICH
United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Facsimile: (702) 388-6787

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>    Plaintiff,<br><br>    v.<br><br>**CONSUMER DEFENSE, LLC,** *et al.*,<br><br>    Defendants. | **Case No. 2:18-cv-00030-JCM-BNW**<br><br>**FTC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

1

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    SUMMARY JUDGMENT STANDARD...................................................... 2

III.   BECAUSE DEFENDANTS FAIL TO RAISE ANY GENUINE DISPUTE AS TO
       MATERIAL FACTS, THE COURT SHOULD ENTER SUMMARY JUDGMENT
       AGAINST DEFENDANTS ............................................................................ 3

       A. Defendants Fail to Refute that They Violated Section 5 of the FTC Act .................... 3

           1. Defendants Fail to Refute that They Did Not Obtain Promised
              Mortgage Relief ...................................................................... 5

           2. Defendants Fail to Refute that They Falsely Claimed Affiliation with the
              Government and Lenders, and Misrepresented Consumers' Obligations to Pay
              Their Mortgages ..................................................................... 11

       B. Defendants Fail to Refute that They Violated Multiple Provisions of
          Regulation O ........................................................................... 12

           1. Defendants Fail to Refute that They Took Prohibited Advance Fees.................. 12

           2. Defendants Fail to Refute that They Made Prohibited Representations.............. 13

           3. Defendants Fail to Refute that They Made Material Misrepresentations ............ 14

           4. Defendants Fail to Refute that They Failed to Make Required Disclosures......... 14

           5. Defendants' Violations of Regulation O Are Not "Technical" Violations........... 16

       C. Defendants Fail to Refute that They Operated as a Common Enterprise and Are
          Jointly and Severally Liable for Violating the FTC Act and Regulation O............... 17

       D. Defendants Fail to Refute that Individual Defendants Jonathan Hanley and Sandra
          Hanley Are Liable for injunctive and Monetary Relief .............................. 18

IV.    DEFENDANTS FAIL TO REFUTE THAT THE SCOPE OF THE PROPOSED ORDER
       IS APPROPRIATE IN LIGHT OF DEFENDANTS' CONDUCT ................................. 20

       A. Defendants Fail to Refute that the Proposed Injunctive Provisions Are
          Appropriate ........................................................................... 20

       B. Defendants Fail to Refute that the Proposed Equitable Monetary Relief
          Is Appropriate ........................................................................ 20

i

1. This Court Has Authority to Enter Monetary Relief .............................................. 20

2. The Amount of the Requested Monetary Relief Is Appropriate .......................... 22

V. DEFENDANTS FAIL TO ESTABLISH ANY GENUINE DISPUTE OF MATERIAL FACTS AS TO ANY OF THEIR REMAINING AFFIRMATIVE DEFENSES ............. 24

VI. CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................2, 3, 5, 8, 9, 10, 13

*Arrow Elecs., Inc. v. Night Operations Sys.*,
    2011 U.S. Dist. LEXIS 72179 (D. Nev. July 1, 2011).......................................24

*British Airways Bd. v. Boeing Co.*,
    585 F.2d 946 (9th Cir. 1978).........................................2, 4, 5, 11, 13, 17, 18, 19

*Consumer Fin. Prot. Bureau v. Gordon*,
    819 F.3d 1179 (9th Cir. 2016)..................................................................16, 17

*Consumer Fin. Prot. Bureau v. Siringoringo*,
    2015 U.S. Dist. LEXIS 188548 (C.D. Cal. Dec. 18, 2015) ...............................17

*FTC v. Affordable Media, LLC*,
    179 F.3d 1228 (9th Cir. 1999).........................................................................20

*FTC v. AMG Capital Mgmt., LLC*,
    910 F.3d 417 (9th Cir. 2018)...........................................................................21

*FTC v. AMG Capital Mgmt., LLC*,
    2019 U.S. App. LEXIS 18551 (9th Cir. Jun. 20, 2019) ....................................21

*FTC v. AMG Servs.*,
    2017 U.S. Dist. LEXIS 66689 (D. Nev. May 1, 2017) .....................................19

*FTC v. Amy Travel Serv., Inc.*,
    875 F.2d 564 (7th Cir. 1989)...........................................................................10

*FTC v. A to Z Mtkg.*,
    2014 U.S. Dist. LEXIS 197440 (C.D. Cal. Sep. 17, 2014)...............................17

*FTC v. Commerce Planet, Inc.*,
    815 F.3d 593 (9th Cir. 2016)...........................................................................21

*FTC v. Commerce Planet, Inc.*,
    878 F. Supp. 2d 1048 (C.D. Cal. 2012) ...........................................................23

*FTC v. Connelly*,
    2006 U.S. Dist. LEXIS 98263 (C.D. Cal. Dec. 20, 2006) ..................................7

iii

*FTC v. Cyberspace.com, LLC*,
  453 F.3d 1196 (9th Cir. 2006)................................................................3, 4, 17, 18

*FTC v. Direct Mktg. Concepts, Inc.*,
  624 F.3d 1 (1st Cir. 2010)................................................................................4

*FTC v. E.M.A. Nationwide, Inc.*,
  2013 U.S. Dist. LEXIS 120914 (N.D. Ohio Aug. 26, 2013) ...........................17

*FTC v. Ewing*,
  2017 U.S. Dist. LEXIS 176209 (D. Nev. Oct. 24, 2017)................................22

*FTC v. Figgie Int'l, Inc.*,
  994 F.2d 595 (9th Cir. 1993)..............................................................4, 22, 23, 24

*FTC v. Five-Star Auto Club*,
  97 F. Supp. 2d 502 (S.D.N.Y. 2000) .............................................................4, 10

*FTC v. Grant Connect, LLC*,
  763 F.3d 1094 (9th Cir. 2014) ........................................................................18

*FTC v. H.N. Singer, Inc.*,
  668 F.2d 1107 (9th Cir. 1982)........................................................................20

*FTC v. Hope for Car Owners, LLC*,
  2013 U.S. Dist. LEXIS 9865 (E.D. Cal. Jan. 24, 2013)................................23

*FTC v. Ivy Capital, Inc.*,
  2013 U.S. Dist. LEXIS 42369 (D. Nev. Mar. 26, 2013)..................................3

*FTC v. Lanier Law, LLC*,
  194 F. Supp. 3d 1238 (M.D. Fla. 2016) ........................................................17

*FTC v. Moneymaker*,
  2011 U.S. Dist. LEXIS 83913 (D. Nev. Jul. 28, 2011)................................17, 18

*FTC v. Mortg. Relief Advocates LLC*,
  2015 U.S. Dist. LEXIS 186809 (C.D. Cal. Jul. 1, 2015) ...............................17

*FTC v. NCH, Inc.*,
  1995 U.S. Dist. LEXIS 21098 (D. Nev. May 25, 1995), *aff'd* 106 F.3d 407
  (9th Cir. 1997)..................................................................................................2

*FTC v. Network Servs. Depot, Inc.*,
  617 F.3d 1127 (9th Cir. 2010)........................................................................17

iv

*FTC v. OMICS Grp. Inc.,*
    374 F. Supp. 3d 994 (D. Nev. 2019) ...............................................2, 3, 4, 15, 17, 18, 20

*FTC v. Pantron I Corp.,*
    33 F.3d 1088 (9th Cir. 1994)........................................................................................3

*FTC v. Publishers Bus. Servs.,*
    540 F. App'x 555 (9th Cir. 2013) ..............................................................................22

*FTC v. Publ'g Clearing House, Inc.,*
    104 F.3d 1168 (9th Cir. 1997)......................................................................2, 4, 5, 19

*FTC v. Stefanchik,*
    559 F.3d 924 (9th Cir. 2009)...............................................................................2, 3, 8

*FTC v. Stefanchik,*
    2007 U.S. Dist. LEXIS 25173 (W.D. Wash. Apr. 3, 2007), *aff'd* 559 F.3d 924
    (9th Cir. 2009)............................................................................................................3, 4

*FTC v. World Travel Vacation Brokers,*
    861 F.2d 1020 (7th Cir. 1988).......................................................................................4

*John v. City of El Monte,*
    505 F.3d 907 (9th Cir. 2007).........................................................................................5

*Resort Car Rental Sys. Inc. v. FTC,*
    518 F.2d 962 (9th Cir. 175)........................................................................................15

*Rodriguez v. Jerome's Furniture Warehouse,*
    2017 U.S. Dist. LEXIS 115358 (S.D. Cal. Jul. 24, 2017)...................................21

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953)....................................................................................................20

*In re Washington Mut. Overdraft Prot. Litig.,*
    539 F. Supp. 2d 1136 (C.D. Cal. 2008) ...........................................5, 6, 11, 12, 14, 15, 18

## STATUTES & REGULATIONS

12 U.S.C. § 5538 ......................................................................................................22

15 U.S.C. § 45 .............................................................................................................1

15 U.S.C. § 53(b) ...................................................................................................20, 22

v

15 U.S.C. § 57a .................................................................................................22

15 U.S.C. § 57b(b) ............................................................................................22

2009 Omnibus Appropriations Act, Pub. L. No. 111-8, 123 Stat. 524 (Mar. 11, 2009)................16

Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, 124 Stat. 1734 (May 22, 2009) ........................................................................16

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010) ....................................................................................16

12 C.F.R. Part 1015........................................................................................1, 16

12 C.F.R. § 1015.2 ...........................................................................................15

12 C.F.R. § 1015.3(a).......................................................................................14

12 C.F.R. § 1015.3(b)(1)..................................................................................14

12 C.F.R. § 1015.3(b)(3) and (4) ....................................................................14

12 C.F.R. § 1015.4(a), (b).................................................................................15

12 C.F.R. § 1015.5(a).......................................................................................13

12 C.F.R. § 1015.5(c).......................................................................................13

16 C.F.R. Part 322............................................................................................16

Fed. R. Civ. P. 56(a)...........................................................................................2

**MISCELLANEOUS**

75 FR 48458 (Aug. 10, 2010) ............................................................................7

75 FR 75092 (Dec. 1, 2010)..............................................................................16

Circuit Advisory Committee Note to Rules 35-1 to 35-3 ................................21

## I.   INTRODUCTION

Represented Defendants' Opposition (ECF No. 294) raises no principled basis for denying the FTC's Motion for Summary Judgment (ECF No. 255).  Neither does Defendant Hanley's Opposition (ECF No. 295) or his exhibits, [1] which, although notable for their bulk, consist of either unsubstantiated, largely unfocussed opinion, generalizations, and denials as to the FTC's evidence or introduce facts that are irrelevant to Defendants' liability and the relief available under the FTC Act.  In short, Defendants have not proffered any evidence to rebut the FTC's showing that Defendants violated Section 5 of the FTC Act, 15 U.S.C. § 45, and multiple provisions of Regulation O, 12 C.F.R. Part 1015, by:

- Misrepresenting they would generally obtain mortgage modifications for consumers that would make consumers' payments substantially more affordable;

- Misrepresenting that they were affiliated with or endorsed by the government, had special relationships with consumers' lenders, and that consumers were not obligated to pay their mortgages;

- Routinely charging prohibited advance fees;

- Routinely telling consumers not to contact or communicate with their lenders or servicers; and

- Failing to place clearly and prominently required disclosures in their general commercial and consumer-specific commercial communications.

Neither have they proffered any evidence to rebut the FTC's showing that (1) Defendants acted in common enterprise when violating the FTC Act and Regulation O and, accordingly, are jointly and severally liable for those violations; and (2) individual Defendants Jonathan Hanley and Sandra Hanley had the authority to control, did control, or participated in the violative acts and

---

[1] The label "PX" refers to the FTC's exhibits filed in support of its motion for preliminary injunction.  (ECF Nos. 7- 7-10, 49-2 – 49-13.)  The label "SJX" refers to the FTC's exhibits filed with its motion for summary judgment.  (ECF Nos. 255-2 – 255-22.)  The label "DX" refers to Defendants' exhibits filed in support of their opposition to summary judgment.  (ECF Nos. 294-1, 294-2, 303-2 – 303-22.)

practices, and had the requisite knowledge of the unlawful conduct and, accordingly, are liable for injunctive and equitable monetary relief.

Defendants have failed to identify any genuine issue of material fact that would require resolution by trial. The applicable law fully supports the judgment that the FTC seeks. The proposed injunctive provisions and monetary relief provided in the proposed final order is appropriate in light of Defendants' past conduct and the likelihood of recurrence absent such relief. Accordingly, the Court should grant the FTC's Motion for Summary Judgment.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56, the Court should enter summary judgment if the non-moving party does not produce sufficient evidence for the trier of fact to return a verdict in its favor. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986). After the party moving for summary judgment "comes forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial," as the FTC has done in its brief, "the burden then shifts to the opposing party to establish that a genuine issue of material fact exists." *FTC v. OMICS Grp. Inc.*, 374 F. Supp. 3d 994, 1008 (D. Nev. 2019). Courts have held that legal memoranda and oral arguments are not evidence sufficient enough to defeat a summary judgment motion where no dispute otherwise exists. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978); *see also FTC v. NCH, Inc.*, 1995 U.S. Dist. LEXIS 21098, at *4 (D. Nev. May 25, 1995), *aff'd,* 106 F.3d 407 (9th Cir. 1997). Defendants' bald assertions or a "mere scintilla of evidence" are insufficient to withstand summary judgment; rather, they must present "affirmative evidence from which a jury could find in their favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact"). "The nonmoving party cannot avoid

2

summary judgment by relying solely on conclusory allegations that are unsupported by factual

data. Instead, the opposition must go beyond the assertions and allegations of the pleadings and

set forth specific facts by producing competent evidence that shows a genuine issue for trial."

*OMICS Grp.*, 374 F. Supp. 3d at 1008 (internal citations omitted). In addition, "[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Factual disputes that are

irrelevant or unnecessary will not be counted." *Id.*

## III. BECAUSE DEFENDANTS FAIL TO RAISE ANY GENUINE DISPUTE AS TO MATERIAL FACTS, THE COURT SHOULD ENTER SUMMARY JUDGMENT AGAINST DEFENDANTS

Here, there is no genuine dispute regarding the evidence establishing that (1) Defendants

have violated Section 5 of the FTC Act and multiple provisions of Regulation O; (2) Defendants

operate as a common enterprise and are, therefore, jointly liable, and (3) individual Defendants

Jonathan Hanley and Sandra Hanley have the necessary level of involvement and knowledge to

be individually liable.

### A. Defendants Fail to Refute that They Violated Section 5 of the FTC Act

Defendants do not refute that an act or practice is deceptive under Section 5 if it involves

a material representation or omission that is likely to mislead consumers acting reasonably under

the circumstances. *Stefanchik*, 559 F.3d at 928. Nor do they dispute that a misrepresentation is

material if it involves facts that a reasonable person would consider important in choosing a

course of action, *see FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006), that

express claims are presumed material, *see FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th

Cir. 1994); *OMICS Grp.*, 374 F. Supp. 3d at 1010, and that consumers' reliance on Defendants'

express claims is presumptively reasonable. *FTC v. Ivy Capital, Inc.*, 2013 U.S. Dist. LEXIS

42369, at *23 (D. Nev. Mar. 26, 2013); *FTC v. Stefanchik*, 2007 U.S. Dist. LEXIS 25173, at *14

(W.D. Wash. Apr. 3, 2007) ("Reasonable consumers are not required to doubt the veracity of express representations"), *aff'd*, 559 F.3d 924 (9th Cir. 2009); *FTC v. Five-Star Auto* Club, 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000) (reasonable for consumers "to interpret express statements as intending to say exactly what they say").

Nor do Defendants dispute that when considering whether a claim is deceptive, courts consider the "net impression" created by the representation, even when the solicitation contains some truthful disclosures. *Cyberspace*, 453 D.3d at 1200; *OMICS Grp*., 374 F. Supp. 3d at 1010. They do not dispute that a representation is also deceptive if the maker lacks adequate substantiation evidence for the claim. *FTC v. Direct Mktg. Concepts, Inc*., 624 F.3d 1, 8 (1st Cir. 2010); *OMICS Grp*., 374 F. Supp. 3d at 1010. Neither do they dispute that the FTC need not prove reliance by each consumer misled by Defendants. *FTC v. Figgie Int'l, Inc*., 994 F.2d 595, 605 (9th Cir. 1993); *OMICS Grp*., 374 F. Supp. 3d at 1015. And they do not dispute that the FTC need not prove Defendant's acted with intent or bad faith to defraud. *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988); *OMICS Grp*., 374 F. Supp. 3d at 1010, Thus, the Court can reject their sixth affirmative defense.

Here, Defendants fail to provide affirmative evidence to raise any genuine dispute that they misrepresented that: (1) they would obtain mortgage modifications for consumers that would make consumers' payment substantially more affordable; (2) they were affiliated with or endorsed by the government and had special relationships with lenders; and (3) consumers were not obligated to pay their mortgages.[2]

---

[2] Defendants do not dispute that they have marketed mortgage assistance relief services online and through telemarketing. At most, Defendant Hanley, without evidence, claims Defendants never engaged in outbound telemarketing. (DX01 at 8.) *See Publ'g Clearing House*, 104 F.3d at 1171; *British Airways Bd.*, 585 F.2d at 952. But in any event, telemarketing includes both inbound and outbound calls, and there is no dispute that consumers interacted with Defendants via telephone.

**1. Defendants Fail to Refute that They Did Not Obtain Promised Mortgage Relief**

Defendants fail to raise any genuine dispute that they misrepresented that they would generally obtain mortgage modifications for consumers that would make consumers' payments substantially more affordable. Defendants have not proffered any evidence to dispute that, through their websites, purported consumer testimonials, telemarketers, and written material, Defendants represent that they would obtain loan modifications for consumers that would substantially reduce consumers' monthly payments, including claims of a perfect or near perfect (98%) success rate (see ECF No. 255 at 20-23 (SMF 41, 42, 43, 44, and 45), and thus concede them. "[T]he movant's uncontradicted factual allegations ordinarily are accepted." *In re Washington Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d 1136, 1145 (C.D. Cal. 2008) (*citing John v. City of El Monte,* 505 F.3d 907, 912 (9th Cir. 2007)). Instead, Defendants' rebuttals consist of blanket statements either unsupported by any citation to evidence, *see British Airways Bd.*, 585 F.2d at 952, or based solely on the conclusory statements of Defendant Hanley. *See Publ'g Clearing House*, 104 F.3d at 1171. Finally, Defendants' rebuttals include extraneous information that is irrelevant to whether Defendants represented their success rate.[3] *See Anderson*, 477 U.S. at 248.

---

[3] For example, Defendant Hanley discusses the back story behind several consumer testimonials used as examples by the FTC (ECF No. 295 at 17-18; DX01 at 4-5, 37-63), but does not dispute that his websites tout their stories as examples of successes (and, in any event, the FTC is not challenging whether their experiences were accurate). He also spills considerable ink discussing the perceived shortcomings of several of the FTC's consumer declarants. (ECF No. 295 at 39-42; DX01 at 9; DX21.) Not only are his criticisms unsupported by any evidence, *see British Airways Bd.*, 585 F.2d at 952, or based solely on his self-serving declaration, *Publ'g Clearing House*, 104 F.3d at 1171, but nowhere does he dispute that the declarants' statements were accurate as to what Defendants said regarding their success in obtaining modifications, that Defendants failed to obtain modifications for them, or any of the other representations charged in the Complaint.

Nor have Defendants proffered any evidence that refutes that in numerous instances those representations were either false or misleading or were not substantiated at the time they were made. (ECF No. 255 at 23-24 (SMF 46-49).) First, they offer no evidence refuting the extensive list of consumer experiences evidenced by the FTC that Defendants' promised modifications never materialized. (ECF No. 255 at 23 (SMF 46).) *See In re Washington Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d at 1145. At best, they point to the FTC's responses to many of their requests for admissions. (ECF No. 295 at 42-45; DX16; DX17; DX18; DX19.) But the thrust of the thousands of facts that Defendants asked the FTC to admit is that some of their consumers received mortgage modifications.[4] This is not in dispute; the problem is that Defendants promised a 98% success rate (*see, e.g.*, PX02 at 1 ¶ 3; PX03 at 1 ¶ 4; PX17 at 1 ¶ 4; PX27 Att. D at 77, 81-83; PX28 Att. DD at 399:12-21, Att. EE at 416:1-2, 426:5-23, 439:23-25, Att II 606:22-15), while in fact, most of their customers did not experience success. (*See* ECF No. 255 at 23-25 (SMF 46-49).)

Second, Defendants do not proffer any reliable evidence refuting the FTC's analysis of their own customer relationship data (called Loan Post) that shows that despite their promise of a 98% success rate, Defendants obtained modifications resulting in either a decrease in interest rate or monthly payment for only approximately 27.6% of their customers).[5] (ECF No. 255 at 24 (SMF 47).) Instead, Defendants attempt to discredit the FTC expert's analysis of a random sample of Loan Post by claiming errors in the underlying analysis. (ECF No. 295 at 10-11; DX03 at 3-15.) In fact, there is no error in analysis.[6] First, Defendants take issue with the FTC

---

[4] In their ten sets of requests for admissions, Defendants propounded 704 requests that contained over 4,000 distinct requests to admit; yet those requests only relate to approximately 530 separate consumers. (*See* DX04, DX05, DX06, DX07, DX16, DX17, DX18, DX19.)

[5] Notably, the FTC expert's results are consistent with the evidence presented by the FTC at the preliminary injunction hearing (unrefuted by Defendants). (ECF No. 255 at 24 (SMF 48).)

[6] Defendants rely exclusively on the "analysis" of their office manager Bobbi Collins in their

expert's conclusion that Defendants had approximately 6,230 customers. They claim 45 consumers were wrongly coded by the FTC as "clients." (ECF No. 295 at 10-11; DX03 at 7-15.) But by their own admission, all of these consumers were clients;[7] they merely object that these consumers, who either terminated their client status after signing up or failed to submit all of the documents requested by Defendants, should be included in the success rate denominator. Nor do they offer any legal argument to support their attempt to inflate artificially their success rate by limiting the denominator to only those consumers who completed the process. *See FTC v. Connelly*, 2006 U.S. Dist. LEXIS 98263, at *34-36 (C.D. Cal. Dec. 20, 2006) (holding that for analogous debt relief operation, denominator is all consumers not just those completing the program); 75 FR 48458, 48501 (Aug. 10, 2010) ("a provider must take into account the experience of all of its customers, including those who dropped out or otherwise failed to complete the program"). Thus, Defendants have failed to demonstrate how the FTC erred in coding which sample accounts were clients.

Second, they claim numerous purported errors in the FTC's coding of which sample accounts obtained loan modifications. (ECF No. 295 at 10.) But out of 200 random accounts, they can only point to three instances where the FTC incorrectly coded as "no" accounts that should have been "yes." (DX03 at 3-4.) This is nothing more than the proverbial "mere scintilla

---

efforts to refute the FTC's expert. (*See* DX03.) Not only was she never disclosed by Defendants as a rebuttal expert but Defendants offer no evidence qualifying her in statistical analysis or the creation or implementation of random samples. Thus, her statements regarding the FTC's random samples are simply the opinions of a lay person, and cannot overcome expert testimony.
[7] *See* DX03 at 7-15 (of the 45 consumers for whom they claim were not clients, Bobbi Collins admits that 31 "engaged the services of defendants," that 4 consumers were "a client," that for 5 consumers their "file was open," "was active," or "was closed" by Defendants, that for 3 consumers, they simply did not submit all required documents, that 1 consumers passed away during the process, and that 1 changed his mind during the process).

of evidence in [their] favor" that the Ninth Circuit has held "insufficient to withstand summary judgment."[8]  *Stefanchik*, 559 F.3d at 929.

In addition, Defendants attempt to mischaracterize the FTC expert's testimony and declaration by trying to switch the results of the two random samples conducted by the FTC. (ECF No. 294 at 4-5 (claiming that FTC expert found that Defendants obtained loan modifications for "approximately 73.2 percent of their customers"); ECF No. 295 at 7 (same).) As discussed in his affidavit and deposition, the FTC expert conducted random samples on two separate databases.  (DXAAA at 10, 28:9-10 ("I did a random sample of 200 for two different data sets."), 10, 29:23-25 ("Q: I'm sorry, let me make sure I understand this.  There were actually two random samples of 200?  A:  Yes.").  The first random sample was of Defendants' entire customer database (referred to as Loan Post).  (SJX19 at 3 ¶ 6.)  The second random sample was of a set of files that Defendants had attempted to submit in support of their opposition to the preliminary injunction (referred to as "Exhibit A").  (*Id.* at 8 ¶ 26; DXAAA at 11, 31:12-13 ("I was provided a second data set, Exhibit A"), 14-15, 45:25-46:2 ("So the random sample—so the random sample of Exhibit A is a different data set that was provided later in the process.").)  To the extent Defendants are implying that the FTC expert's results from the second random sample (of Exhibit A) apply to Defendants' entire customer database (Loan Post), the FTC expert clearly stated that they could not.  (DXAAA at 11, 32:10-12 ("The statistical statements that I make from a random population are only going to be relevant for that population.").)

As the FTC has explained elsewhere (*see, e.g.*, ECF 286 at 4-6), Defendants submitted a thumb drive (called "Exhibit A") as part of their opposition to the FTC's motion for a

---

[8] The FTC's expert observed that 64 out of 200 account names in the random sample obtained a loan modification, resulting in a 32.0% incidence rate, with a 95% confidence interval of 25.5% to 38.5%.  Changing that number to 67 out of 200 only raises the incidence rate by 1.5%, to 33.5%, which is well within the 95% confidence interval.  This factual "dispute" is irrelevant and does not change the outcome of the case.  *Anderson*, 477 U.S. at 248.

preliminary injunction that Defendants represented to the Court evidenced 3,294 successful loan modifications (ECF No. 44 at 8, 9 n.6 (stating that Exhibit A contained "a copy of each successful loan modification located so far in the electronic data").)  The purpose of the second random sample (Exhibit A random sample) was to determine whether Defendants' representation to the Court that Exhibit A evidenced 3,294 successful loan modifications was accurate.  The FTC expert determined that it did not.[9]  (SJX19 at 9 ¶ 30; DXAAA at 15, 48:3-9.)  Defendants' Exhibit A evidences only approximately 1,504 modifications, not 3,294.  (SJX19 at 9 ¶ 30.)

Defendants lament that the FTC did not review the Exhibit A random sample against those consumers' files in Loan Post.  (ECF No. 295 at 6; DX01 at 2-4.)  Because Exhibit A and Exhibit A alone was represented as evidencing 3,297 successful loan modifications, only documents contained in Exhibit A are relevant to the results of the random sample.  Accordingly, the fact that the FTC "did not review these files against LoanPost" (ECF No. 295 at 6) or that Defendant Hanley may have found documents not contained in Exhibit A to support his assertion that consumers in the sample had, in fact, obtained a loan modification (id.; DX01 at 2-4, 15-32) is irrelevant for purposes of the second random sample.[10]  *See Anderson*, 477 U.S. at 248.

Finally, Defendants spill much ink describing their business operations and their purported skill and expertise.  (*See, e.g.*, ECF No. 295 at 18-20; DX01 at 7-8, Att. N; DX03 at 2; DX08; DX09; DX12; DX13; DX14; DX15.)  Despite whatever skill and expertise Defendants' negotiators may have had, their evidence does not substantiate the claims made by their sales

---

[9] In addition, the FTC found that Exhibit A contained multiple duplicate records and, after taking into account duplicates, contained records for only approximately 2,055 unique customer names, (SJX11 at 3-4 ¶¶ 6-8; SJX12 at 3-4 ¶¶ 5-6), a fact undisputed by Defendants.

[10] Accepting, for the sake of argument, Defendants' argument that the Exhibit A random sample should have been reviewed against Loan Post and that 95% of the Exhibit A random sample evidenced a loan modification (ECF No. 295 at 6-7), their Exhibit A would, in that case, still only evidence 1,952 loan modifications, which is less than the 2,446 estimated by the FTC based on the Loan Post random sample, and corresponds to a success rate of only 30%.

force of over 90% success. [11]   Accordingly, whatever facts Defendants offer about their so-called

expertise are not relevant to disproving the Complaint allegations.  Again, these are solely factual

disputes that are irrelevant and do not change the outcome of the case. *Anderson*, 477 U.S. at

248.  Further, Defendants offer no rebuttal to that the fact that courts have held that unqualified

performance claims imply that consumers generally will receive the claimed performance and

that the benefit is a significant one.  *Five-Star Auto Club*, 97 F. Supp. 2d at 528.  Nor do they

contest that "[t]he existence of some satisfied customers does not constitute a defense under the

FTC [Act]."  *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 572 (7th Cir. 1989).

       In sum, Defendants have failed to establish a genuine dispute that in numerous instances,

Defendants have represented that they will generally obtain mortgage modifications for

consumers that will make consumers' payments substantially more affordable—indeed, they

have promised that they achieve such outcomes for over 90% of their customers—but those

claims lack a reasonable basis and are false.  Thus, summary judgment is appropriate on Count I.

---

[11] In any event, contrary to Defendants' assertion that the "entirety of the defendants' business model was operated in compliance with state and federal law" (ECF No. 295 at 18), when asked to evaluate their business practices, the corporate Defendants' former lawyers concluded "we believe that all three companies are likely in violation of state and federal law in several material respects" (SJX21 Att. A at 12), including collecting illegal advance fees (*id*. at 13-15), misrepresenting that consumers would receive legal representation (*id*. at 15-17), operating with state law licensing (*id*. at 17-19), and their practice of restructuring junior liens for properties where there was also a modified first lien.  (*Id*. at 19-22.)  The firm concluded that "[f]ailure to address the risks and issues identified . . . could result in [Defendants] being criminally prosecuted."  (*Id*. at 24.)  (The FTC recognizes that SJX21 is new evidence but notes that it only obtained the evidence on October 28, 2019.  (*Id*. at 5.)  The Receiver issued a subpoena for the information on February 19, 2019 (ECF No. 197-2 at 10), but Defendants filed a motion to quash on March 12, 2019.  (ECF No. 196.)  The Magistrate Judge denied that motion on October 9, 2019.  (ECF No. 296 at 5.)  Pursuant to LR IB 3-1(a), the Receiver waited 14 days before obtaining the information.)

### 2. Defendants Fail to Refute that They Falsely Claimed Affiliation with the Government and Lenders, and Misrepresented Consumers' Obligations to Pay Their Mortgages

Defendants fail to raise any genuine dispute that they misrepresented affiliation with or endorsement by the government and special relationships with lenders. Defendants have not proffered any evidence to dispute that, through their websites, telemarketers, and written material, Defendants represent that they are affiliated with government programs (see ECF No. 255 at 25-26 (SMF 50, 51, 52), and thus concede them. *In re Washington Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d at 1145. Indeed, Defendant Jonathan Hanley instructed employees not to correct consumers if they thought Defendants were part of the government's hardest hit funds program. (PX28 Att. I at 140.) They also do not dispute, and thus concede, misleading consumers about their relationship with lenders. (ECF No. 295 at 46 (noting that the FTC's SMF 54, 55, 56, and 57 are undisputed).)

Defendants concede they are not affiliated with or endorsed by the government. (ECF No. 295 at 46 (noting that FTC's SMF 53 and 56 are undisputed).) As to their "special contacts," Defendants merely point to readily available telephone contact lists for various lenders and servicers [12] (*id.*; DX01 at 6-7, Att. M), and make the same generic references to unidentified contacts. (*See, e.g.*, DX08 at 8 (former employee could identify only one individual at HUD and was aware of only one former employee who went to work at a servicer); DX09 at 4-5 (former employee could only identify the same one individual at HUD); DX20 (additional declaration by former employee only makes generic references to unidentified contacts).) And no doubt over the course of obtaining their few, modest successes, Defendants have interacted and become

---

[12] Defendants' argument that "[t]hese are not phone numbers that consumers would have access to" is unsupported by any citation to evidence, *see British Airways Bd.*, 585 F.2d at 952, and can be disregarded. Indeed, a simple Internet search can identify contact numbers for the loan modification departments of most lenders and servicers.

familiar with the same individuals at particular lenders. But this generic list is a far cry from

having special contacts and "the key to each bank" (PX20 Att. Y at 440) claimed by Defendants.

Similarly, Defendants fail to offer any evidence to refute that they routinely advised

consumers not to pay their mortgages, (ECF No. 255 at 27-28 (SMF 58)), and thus concede this

fact. *See In re Washington Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d at 1145. Nor do they

dispute the harm to consumers from such advice, (ECF No. 255 at 27-28 (SMF 58)), and thus

concede this fact. *Id.* Thus, there is no genuine dispute that such claims are deceptive as alleged

in Count II.

**B. Defendants Fail to Refute that They Violated Multiple Provisions of Regulation O**

**1. Defendants Fail to Refute that They Took Prohibited Advance Fees**

Defendants fail to raise any genuine dispute that they routinely charged prohibited

advanced fees (see ECF No. 255 at 30-32 (SMF 66-74)), and thus concede this point. *Id.*

Indeed, Defendants routinely instructed employees not to work on consumer accounts until they

had begun payment. (ECF No. 255 at 31 (SMF 69); SJX20 Att. B at 185 (email from Defendant

Sandra Hanley stating "2500 is the minimum requirement for submission"), Att. CC at 187

(email from Defendant Sandra Hanley stating "we can not [sic] submit file to Lender until we

have received a considerable portion of our fees").) Instead, Defendants argue that Regulation

O's advance fee ban is "unconscionable" as a "catch 22" because, they claim, Regulation O

requires loan modification providers to produce a summary of material differences to consumers

before Defendants can earn their fee but lenders are not required to provide them with such a

summary. (ECF No. 295 at 48-49.) Defendants are mistaken. Section 1015.5(a) of Regulation

O prohibits mortgage assistance relief service providers from "[r]equest[ing] or receiv[ing]

payment of any fee or other consideration until the consumer has executed a written agreement

between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or service." 12 C.F.R. § 1015.5(a).  Meanwhile Section 1015.5(c) of Regulation O is a separate provision requiring mortgage assistance relief service providers to furnish consumers with a notice describing all material differences.  *Id.* § 1015.5(c).  Nothing in the regulation or any case interpreting the regulation makes the disclosure requirement of Section 1015.5(c) a condition of receiving a fee under Section 1015.5(a).[13]  The only condition to receiving a fee is set forth in Section 1015.5(a), namely that the consumer "execute[] a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer."  *Id.* § 1015.5(a).[14]  But Defendants already knew this—as early as June 2016, they knew they were collecting advance fees in violation of Regulation O but continued anyway. (SJX21 Att. A at 12-15.)

Accordingly, Defendants have failed to establish a genuine dispute that in numerous instances they charged prohibited advance fees as alleged in Count III.

### 2. Defendants Fail to Refute that They Made Prohibited Representations

Defendants fail to raise any genuine dispute that they routinely represented that consumers cannot or should not contact or communicate with their lenders.  They offer no evidence refuting the consumer experiences, including transcripts of Defendants' own

---

[13] Accordingly, Defendants' claim that lenders failed to provide them with summaries of material differences, in addition to being unsupported by any citation to evidence, *see British Airways Bd.*, 585 F.2d at 952, is irrelevant to whether Defendants illegal charged advance fees. *Anderson*, 477 U.S. at 248.

[14] Defendants may be confused because Section 1015.5(c) requires that this separate disclosure be made "at the time the mortgage assistance relief service provider furnishes the consumer with the written agreement specified in paragraph (a)." *Id.* § 1015.5(c).  An operation with as much experience in the loan modification industry as Defendants claim to have presumably should be familiar with the basic law and regulations governing that industry.

telemarketers, demonstrating that Defendants told consumers they should not communicate with their lenders. (ECF No. 255 at 28 (SMF 59).) *See In re Washington Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d at 1145. Indeed, they admit in their Opposition brief that "we have advised consumers it's not advisable." (ECF No. 295 at 47.) Their only evidence is one telephone transcript in which, although Defendants did state that "So you are—you are absolutely allowed to talk to your lender" (PX28 at 632), Defendants immediately followed that by saying "However, it is absolutely advised not to—and I'll send you an article from the New York Times—because they trap you. They purposefully trap you. They will . . . So absolutely you can talk to Wells Fargo, but I were you, I wouldn't." (Id. at 632-33.)

Accordingly, Defendants have failed to establish a genuine dispute that in numerous instances they represented that consumers should not contact or communicate with their lenders in violation 12 C.F.R. § 1015.3(a) as alleged in Count IV.

### 3. Defendants Fail to Refute that They Made Material Misrepresentations

Defendants do not dispute that Section 1015.3(b) prohibits mortgage assistance relief service providers from misrepresenting any material aspect of a mortgage assistance relief service including (1) the likelihood of obtaining a loan modification, (2) that the provider is affiliated with, endorsed or approved by, or otherwise associated with the government, and (3) that the consumers is not obligated to pay their mortgages. 12 C.F.R. § 1015.3(b)(1), (3), (4). As discussed in Section III.A.1 and 2 above, Defendants fail to raise any genuine dispute that they routinely made these material misrepresentations as alleged in Count V.

### 4. Defendants Fail to Refute that They Failed to Make Required Disclosures

Defendants fail to raise any genuine dispute that, in numerous instances, they failed to place clearly and prominently in their general and consumer-specific commercial communications the disclosures required by Regulation O. Defendants offer no evidence

14

refuting that their websites abogadodemodificacion.com, homeloanmodificationlawyer.com, americanhomeloans.com, consumerdefense.com, hardshipletters.com, hardshipletter.org, and preferredlawteam.com fail to contain at all the disclosures required by Section 1015.4(a) (disclosures required in all general commercial communications).[15]   (See ECF No. 255 at 29 (SMF 61).)   *See In re Washington Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d at 1145.  With respect to their other websites, such as attorneyloanmodifications.com, there is no dispute that Defendants made disclosures, but there is also no dispute that those disclosures only appear at the very bottom of the webpage or via hyperlink (ECF No. 295 at 21), which Defendants fail to dispute does not satisfy Regulation O's requirement that disclosures be "unavoidable."  12 C.F.R. § 1015.2 (definition of "clear and prominent" (4)(iii)).  And the fact that Defendants include a disclosure at the end of their service contract (ECF No. 295 at 48) does not absolve them of liability as Regulation O requires the disclosures to be made in *every* general and consumer-specific commercial communication.   12 C.F.R. § 1015.4(a), (b).[16]

Nor do Defendants offer any evidence disputing that in numerous instances their telemarketers failed to give consumers the disclosures required by Section 1015.4(b) (disclosures required in all consumer-specific commercial communications).   (See ECF 255 at 29-30 (SMF 64).)  *See In re Washington Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d at 1145.  Accordingly,

---

[15] They argue that these websites were not "commercially active," (ECF No. No. 295 at 21), yet offer no evidence disputing that all of these websites were live as recently as a few weeks before the FTC filed suit (see PX22 at 2 ¶ 5 (FTC paralegal captured live websites as recently as late December 2017)), and that consumers could enter their information on those websites to be contacted by Defendants or the websites provided a phone number to contact Defendants.  (See, e.g., PX22 Att. A at 21, Att. B at 39, Att. D at 374, Att. E at 386, Att. F at 393, Att. G at 399.)
[16] Moreover, it is well established that the law is violated if first contact is made through deception "even if the buyer later becomes fully informed before entering the contract."  *Resort Car Rental Sys, Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975); *OMICS Grp.*, 374 F. Supp. 3d at 1010.

1

2

3   Defendants have failed to establish a genuine dispute that in numerous instances they failed to

4   make required disclosures as alleged in Count VI.

5          **5.   Defendants' Violations of Regulation O Are Not "Technical" Violations**

6          Defendants do not challenge that they provide mortgage assistance relief services to

7   consumers or that they are subject to the requirements of Regulation O, 12 C.F.R. Part 1015,

8   which establishes a series of requirements and prohibitions to prevent unfair and deceptive acts

9   and practices by mortgage assistance relief services providers. And as discussed above, they fail

10  to establish a genuine dispute that in numerous instances they violated multiple provisions of

11  Regulation O. Instead, Defendants argue that these violations are just "technical in nature" and

12  do not warrant "draconian steps." (ECF No. 294 at 2.) This is not accurate, but in any event, is

13  irrelevant to the dispute at issue.[17]

14

15         Moreover, numerous courts have granted summary judgment and equitable relief on these

16  so-called "technical" violations of Regulation O. *See, e.g., Consumer Fin. Prot. Bureau v.*

17

18  [17] In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or deceptive acts or
    practices with respect to mortgage loans. *See* § 626 of 2009 Omnibus Appropriations Act
19  ("Omnibus Act"), Public Law 111-8, 123 Stat. 524, 678 (Mar. 11, 2009), as clarified by § 511 of
    the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("Credit Card Act"),
20  Public Law 111-24, 124 Stat. 1734, 1763-64 (May 22, 2009). Title X of the Dodd-Frank Wall
    Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Public Law 111-203, 124 Stat.
21  1376 (July 21, 2010), transferred the FTC's rulemaking authority under the Omnibus Act, as
    amended, to the Consumer Financial Protection Bureau ("CFPB"). On December 16, 2011, the
22  CFPB republished the Mortgage Assistance Relief Services Rule as Regulation O, 12 C.F.R. Part
    1015. Regulation O's precursor, the Mortgage Assistance Relief Services Rule, 12 C.F.R. Part
23  322, was issued because the FTC, state attorneys general, and other law enforcement found that
    the unfair or deceptive practices of mortgage assistance relief services providers was
24  "widespread and are causing substantial consumer harm." 75 FR 75092, 75096 (Dec. 1, 2010).
    For example, advising consumers to stop communicating with their lenders causes substantial
25  consumer injury because it could deprive consumers "of critical information about (1) possible
    work-out options, (2) the veracity of the provider's claims, (3) whether the provider is actually
26  performing, and (4) in some cases, that foreclosure and the loss of their homes is imminent." *Id.*
    at 75106. Meanwhile, the required disclosures provide "material information to prevent
27  deception and thereby assist consumers in making informed decisions about purchasing
    mortgage assistance relief services." *Id.* at 75111. Each provision of the Rule was specifically
    contemplated and included and thus violating any part of it is illegal—not just "technical."

*Gordon*, 819 F.3d 1179, 1194-95 (9th Cir. 2016); *Consumer Fin. Prot. Bureau v. Siringoringo*, 2015 U.S. Dist. LEXIS 188548, at *10 (C.D. Cal. Dec. 18, 2015); *FTC v. Mortg. Relief Advocates LLC*, 2015 U.S. Dist. LEXIS 186809 (C.D. Cal. Jul. 1, 2015); *FTC v. A to Z Mktg*., 2014 U.S. Dist. LEXIS 197440, at *23-24 (C.D. Cal. Sep. 17, 2014); *FTC v. Lanier Law, LLC*, 194 F. Supp. 3d 1238 (M.D. Fla. 2016); *FTC v. E.M.A. Nationwide, Inc*., 2013 U.S. Dist. LEXIS 120914 (N.D. Ohio Aug. 26, 2013).

In short, Defendants fail to establish any genuine dispute that they violated multiple provisions of Regulation O as alleged in Counts III, IV, V, and VI.

### C. Defendants Fail to Refute that They Operated as a Common Enterprise and Are Jointly and Severally Liable for Violating the FTC Act and Regulation O

Defendants do not dispute that where corporate entities operate together and act as a common enterprise, each may be held liable for the deceptive acts and practices of the others. *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010); *OMICS Grp*., 374 F. Supp. 3d at 1012. Nor do they dispute the various factors courts use when determining whether a common enterprise exists, such as "common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of companies; unified advertising; and evidence that reveals that no real distinction exists between the corporate defendants." *Network Servs. Depot*, 617 F.3d at 1143; *OMICS Grp*., 374 F. Supp. 3d at 1012. They also fail to offer any evidence disputing that Defendants operated as a common enterprise. (ECF No. 255 at 18-19 (SMF 28, 29, 30, 31, 32, 33, 34).) Defendants' rebuttals (ECF No. 295 at 35-37) consist of blanket statements unsupported by any citation to evidence.[18] *See British Airways Bd*., 585 F.2d

---

[18] Defendants' argument that they relied on former defendant Benjamin Horton is without legal merit. "[R]eliance on advice of counsel [is] not a valid defense." *Cyberspace.com*, 453 F.3d at 1202; *FTC v. Moneymaker*, 2011 U.S. Dist. LEXIS 83913, at *4 (D. Nev. Jul. 28, 2011). Neither

at 952.  Accordingly, Defendants fail to establish any genuine dispute that they operated as a common enterprise and are jointly and severally liable for violating Section 5 of the FTC Act and Regulation O.

**D. Defendants Fail to Refute that Individual Defendant Jonathan Hanley and Sandra Hanley Are Liable for Injunctive and Monetary Relief**

Defendants fail to refute that once corporate liability for an FTC Act violation is established, individuals may be held liable for injunctive relief based on those violations if they participated directly in the violations or had authority to control the entities.  *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101-02 (9th Cir. 2014); *OMICS Grp.*, 374 F. Supp. 3d at 1013. Neither do they refute that monetary injunctive relief against individuals is also appropriate if the individual acted with knowledge of the unlawful conduct.  *Grant Connect, LLC*, 763 F.3d at 1101-02; *OMICS Grp.*, 374 F. Supp. 3d at 1013.  They also fail to refute the various statements of material fact (ECF No. 255 at 15-16 (SMF 13, 14, 15, 16, 17, 18, 19, 20); *see also* SJX21 Att. A at 24) that demonstrate that Defendant Jonathan Hanley had the requisite authority to control, participation, and knowledge of Defendants' wrongful acts warranting liability.  (See ECF No. 295 at 31-33 (Defendants admit as undisputed most of these facts).)  *See In re Washington Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d at 1145.  And Defendants' rebuttals (ECF No. 295 at 32-33) consist of blanket statements unsupported by any citation to evidence.[19]  *See British Airways*

---

is good faith (as alleged in Defendants' sixth affirmative defense) a defense to liability.  *Id.* ("whether an individual acts in good or bad faith is immaterial to liability under [the FTC Act]") (internal citation omitted); *OMICS Grp.*, 374 F. Supp. 3d at 1010.  In any event, Defendants have long been on notice that their business practices were problematic.  (SJX21 Att. A at 7-25.)

[19] As discussed *supra* at footnote 18, Defendants' argument that they relied on former defendant Benjamin Horton's legal advice is without legal merit.  *Cyberspace.com*, 453 F.3d at 1202; *Moneymaker*, 2011 U.S. Dist. LEXIS 83913, at *4.  Defendants also accuse FTC paralegal Emilie Saunders of submitting a "perjurious Declaration" and ask that "all declarations" executed by the paralegal be stricken.  (ECF No. 295 at 33.)  Defendants offer no evidence at all to support this baseless allegation.

*Bd.*, 585 F.2d at 952.  Nor do they offer any legal argument why he should not be liable for injunctive and equitable monetary relief.

With respect to Defendant Sandra Hanley, Defendants offer no evidence to refute that Defendant Sandra Hanley had the authority to control, participated, and had knowledge of Defendants' wrongful acts.  (ECF No. 255 at 18-19 (SMF 28, 29, 30, 31, 32, 33, 34); see also SJX21 Att. A at 8, 24.)  Defendants' rebuttals (ECF No. 295 at 33-34) consist of blanket statements unsupported by any citation to evidence.  *See British Airways Bd.*, 585 F.2d at 952. In fact, Defendants admit that her "name appears on some of the corporate ledgers and bank accounts" and that she "served primarily as an office manager type employee, carrying out policies and decisions made by others."  (ECF No. 294 at 10-11; ECF No. 295 at 33; DX08 at 2; DX09 at 2.)  Instead, they argue that such evidence is "insufficient" to hold her liable because she was not "involved in any of the significant strategic decisions that form the basis of the FTC's action."  (*Id.* at 10.)  They cite no legal authority, however, to support their claim that involvement in "significant strategic decisions" is the touchstone for individual liability under the FTC Act.  They ignore the Ninth Circuit's holdings that an individual's position as a corporate officer or authority to sign documents on behalf of a corporate defendant is sufficient to show requisite control.  *Publ'g Clearing House*, 104 F.3d at 1170; *FTC v. AMG Servs.*, 2017 U.S. Dist. LEXIS 66689, at *18 (D. Nev. May 1, 2017).  Likewise, they ignore that the FTC need only demonstrate that an individual have knowledge of unlawful practices to hold him or her liable for equitable monetary relief.  *Publ'g Clearing House*, 104 F.3d at 1171; *AMG Servs.*, 2017 U.S. Dist. LEXIS 66689, at *17.  Among other things, the undisputed evidence shows that Ms. Hanley routinely directed the payment of illegal advance fees.  (ECF No. 255 at 17-18 (SMF 27).)  "The extent of an individual's involvement in a fraudulent scheme alone is sufficient to

19

establish the requisite knowledge for personal restitutionary liability." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1225 (9th Cir. 1999).

In short, Defendants fail to establish any genuine dispute that Defendants Jonathan Hanley and Sandra Hanley may be enjoined from violating the FTC Act and Regulation O and be held liable for consumer redress or other monetary relief in connection with their activities.

## IV. DEFENDANTS FAIL TO REFUTE THAT THE SCOPE OF THE PROPOSED ORDER IS APPROPRIATE IN LIGHT OF DEFENDANTS' CONDUCT

Defendants fail to refute that the scope of the FTC's proposed final order is appropriate in light of their ongoing, deceptive conduct.

### A. Defendants Fail to Refute that the Proposed Injunctive Provisions Are Appropriate

Defendants fail to refute that Section 13(b) of the FTC Act expressly authorizes courts to grant a permanent injunction against violations of any provisions of law enforced by the FTC. 15 U.S.C. § 53(b); *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982); *OMICS Grp.*, 374 F. Supp. 3d at 1013. Nor do they refute that a permanent injunction is justified when there is a "cognizable danger of recurrent violation, or some reasonable likelihood of future violations." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). In its Motion for Summary Judgment, the FTC spelled out in detail the various proposed injunctive provisions and the legal support for those provisions. (*See* ECF No. 255 at 51-54.) Defendants offer no rebuttable as to why these provisions are not appropriate.

### B. Defendants Fail to Refute that the Proposed Equitable Monetary Relief Is Appropriate

#### 1. This Court Has Authority to Enter Monetary Relief

The bulk of Defendants' opposition is spent arguing that Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), does not authorize the Court to enter equitable monetary relief. (ECF No. 294

20

at 5-8.)  Defendants elaborate at length on Judge O'Scannlain's concurring opinion in *FTC v. AMG Capital Mgmt., LLC*, 910 F.3d 417 (9th Cir. 2018), and ask this Court to ignore binding Ninth Circuit precedent to "follow the reasoning of the special concurrence."  (ECF No. 294 at 8.).  But as Defendants acknowledge, the Ninth Circuit denied rehearing *en banc*, noting that "no judge has requested a vote on whether to rehear the matter en banc."  *FTC v. AMG Capital Mgmt., LLC*, 2019 U.S. App. LEXIS 18551, at*1 (9th Cir. Jun. 20, 2019).  Thus it appears that no judge of the Ninth Circuit—including Judges O'Scannlain and Bea[20]—wish to "revisit *Commerce Planet* and its predecessors." *AMG*, 910 F.3d at 437 (O'Scannlain, J., concurring).  The unanimous panel decision in *AMG* remains the law, including its observation that the Ninth Circuit has "repeatedly held that § 13 [of the FTC Act] 'empowers district courts to grant any ancillary relief necessary to accomplish complete justice, including restitution.'"  *AMG*, 910 F.3d at 426 (quoting *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 598 (9th Cir. 2016)); *see also id.* ("[Defendant] contends that the Commission improperly used Section 13(b) to pursue penal monetary relief under the guise of equitable authority . . . Our precedent thus squarely forecloses [Defendant's] argument." (internal quotation marks and alterations omitted)).  And "it is hornbook law that this Court is bound by a published Ninth Circuit decision unless and until it is overturned by Congress, the Ninth Circuit, or the Supreme Court." *Rodriguez v. Jerome's Furniture Warehouse*, 2017 U.S. Dist. LEXIS 115358, at *6 (S.D. Cal. Jul. 24, 2017).  This includes circuit court decisions under review by the Supreme Court. *Id.* (Supreme Court had granted *certiorari* on the Ninth Circuit's decision upon which the district court was relying).  Accordingly, this Court is bound by the Ninth Circuit's ruling in *Commerce Planet*.

---

[20] Any judge of the Court may "call for en banc consideration, whereupon a vote will be taken." *See* Circuit Advisory Committee Note to Rules 35-1 to 35-3, *available at* http://cdn.ca9.uscourts.gov/datastore/uploads/rules/frap.pdf.

Further, Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), is not the Court's only basis for entering equitable monetary relief. The FTC also brings this action pursuant to the Dodd-Frank Act, 12 U.S.C. § 5538, (ECF No. 1 at 2 ¶ 1), which states that any violation of a rule prescribed under this paragraph shall be treated as "a violation of a rule under section 18 of the Federal Trade Commission Act (15 U.S.C. 57a) regarding unfair or deceptive acts or practices," 12 U.S.C. § 5538(a)(1), and that the FTC shall enforce the rules "in the same manner, by the same means, and with the same jurisdiction, as though all applicable terms and provisions of the [FTC] Act were incorporated into and made part of this section." *Id.* § 5538(a)(3). Section 19 of the FTC Act, 15 U.S.C. § 57b, governs violations of rules under Section 18 regarding unfair or deceptive acts or practices and expressly provides that a court "shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers" resulting from such violations, including "the refund of money or return of property [and] the payment of damages." 15 U.S.C. § 57b(b). Thus, the Court has authority to enter the requested monetary relief against Defendants.

### 2.   The Amount of the Requested Monetary Relief Is Appropriate

Next, Defendants argue that the FTC's calculations are not reasonable because, they claim, some percentage of consumers received "exactly what they promised and exactly what they expected," they cannot "be deemed to have been damaged" and the funds received from those customers should not be included in the damages calculation. (ECF No. 294 at 9; *see also* ECF No. 115 at 12 (eighth affirmative defense)). Defendants' argument ignores established Ninth Circuit law that consumer redress is not reduced by any value received by consumers. *FTC v. Publishers Bus. Servs., Inc.*, 540 F. App'x 555, 557-58 (9th Cir. 2013) ("The fraud in the selling, not the value of the thing sold, is what entitles consumers . . . to full refunds.") (citing *Figgie Int'l*, 994 F.2d at 606); *FTC v. Ewing*, 2017 U.S. Dist. LEXIS 176209, at *35 (D. Nev.

Oct. 24, 2017) ("a product's value should not reduce or preclude equitable monetary relief"); *FTC v. Hope for Car Owners, LLC*, 2013 U.S. Dist. LEXIS 9865, at *17 (E.D. Cal Jan. 24. 2013) ("even if a small number of customers had received some reduction in monthly payment, it would be irrelevant to the redress calculation"); *FTC v. Commerce Planet, Inc.*, 878 F. Supp.2d 1048, 1091 (C.D. Cal. 2012) (FTC does not need to prove the product or service "was essentially worthless to obtain restitution").  Courts focus on the seller's misrepresentations that tainted the customers' purchasing decisions, because had the consumer been told the truth, they may not have entered into the contract or purchased the product in the first place. *Figgie Int'l*, 994 F.2d at 604.

Defendants' reliance on *FTC v. Commerce Planet, Inc.*, 878 F. Supp.2d 1048, is misplaced. *Commerce Planet* was a negative option case where consumers had to take affirmative steps to avoid being enrolled in paying for a product they did not initially purchase. The damages were reduced in that case, not because there was some benefit conferred to the consumers, but because the defendant succeeded in showing that some consumers knew of the negative option and proceeded to enter into the agreement anyways.  *Id.* at 1090 (Defendant successfully showed that a certain percentage of consumers cancelled within the free trial period or maintained their membership in excess of three to six months, suggesting that some consumers knew about the terms of membership and yet purchased the program nonetheless.).

Here, consumers based their *entire* purchase decision on Defendants' deceptive representations, in sharp contrast with the *Commerce Planet* defendant's failure to disclose a negative option.  Defendants' misrepresentations and their failure to make required disclosures lured in consumer's business.  Had consumers been told the truth—that most consumers who paid Defendants' (illegal) fees achieved no success despite the promise of a 90% success rate, that they were not endorsed by government programs, and that they had no special relationships

with lenders—and had consumers been given required disclosures, they may never have chosen to enter into contract with Defendants.  Thus, the mere fact that some consumers coincidentally received a loan reduction does not reduce damages because consumers chose and purchased the service based on complete deception—the "fraud [was] in the selling." *Figgie Int'l*, 994 F.2d at 606.

In addition, Defendants' charging illegal advance fees, misrepresentations of government and lender affiliation and consumers' obligations to pay their mortgages, representations that consumers should not contact their lenders, and failure to make required disclosures, all serve as additional, independent bases for monetary relief.

Meanwhile, Defendants do not dispute that between January 2013 and January 2018, they had gross revenues of $19,154,115 and paid $725,745 in chargebacks, returns, and refunds, resulting in a net consumer injury of $18,428,370.  (ECF No. 255 at 33 (SMF 75).)

## V.   DEFENDANTS FAIL TO ESTABLISH ANY GENUINE DISPUTE OF MATERIAL FACT AS TO ANY OF THEIR REMAINING AFFIRMATIVE DEFENSES

Finally, Defendants fail to dispute any legal or factual arguments as to any of their other affirmative defenses.  The FTC has discussed above Defendants' sixth and eighth affirmative defenses.  As to their remaining defenses (first, second, third, fourth, fifth, seventh, eleventh, and thirteenth), Defendants offer no legal argument to refute the FTC's arguments that these defenses are without merit.  Moreover, they have offered no evidence to support any of these defenses. "[B]ecause the motion under consideration here is a motion for summary judgment rather than a motion to strike or to dismiss, [the defendant], as the party with the burden of proof on affirmative defenses, may not merely 'rest upon the allegations of [its] pleadings but must set forth specific facts showing that there is a genuine issue for trial.'" *Arrow Elecs., Inc. v. Night Operations Sys.*, 2011 U.S. Dist. LEXIS 72179, at *18 (D. Nev. July 1, 2011).  Defendants fail to

set forth any facts showing that there is a genuine issue for trial on their affirmative defenses. Accordingly, they fail as a matter of law.

## VI.    CONCLUSION

Accordingly, for the reasons set forth herein and in the FTC's Motion for Summary Judgment, the FTC respectfully requests that this Court grant its motion for summary judgment and enter the previously submitted proposed order.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated:  November 5, 2019          */s/ Gregory A. Ashe*
GREGORY A. ASHE
JASON SCHALL
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
Telephone: 202-326-3719 (Ashe)
Telephone: 202-326-2251 (Schall)
Facsimile: 202-326-3768
Email: gashe@ftc.gov, jschall@ftc.gov

NICHOLAS A. TRUTANICH
United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Facsimile: (702) 388-6787

*Attorneys for Plaintiff*
FEDERAL TRADE COMMISSION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 5, 2019, true and correct copies of **FTC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was filed electronically with the United States District Court for the District of Nevada using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

*/s/Gregory A. Ashe*
Attorney for Plaintiff Federal Trade Commission