ALDEN F. ABBOTT
General Counsel
GREGORY A. ASHE
JASON SCHALL
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
Telephone: 202-326-3719 (Ashe)
Telephone: 202-326-2251 (Schall)
Facsimile: 202-326-3768
Email: gashe@ftc.gov, jschall@ftc.gov

NICHOLAS A. TRUTANICH
United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Facsimile: (702) 388-6787

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **CONSUMER DEFENSE, LLC**, *et al.*, <br><br> Defendants. | **Case No. 2:18-cv-00030-JCM-BNW** <br><br> **ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** |

Plaintiff, Federal Trade Commission ("FTC"), commenced this civil action on January 8, 2018, by filing its Complaint (ECF No. 1) seeking a permanent injunction and other equitable relief pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009), as

Page 1 of 29

clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010), 12 U.S.C. § 5538). On motion by the FTC, on January 10, 2018, the Court entered an *ex parte* temporary restraining order with asset freeze, appointment of a receiver, and other equitable relief. (ECF No. 12.) On February 20, 2018, after a hearing held on February 15, 2018, the Court entered a preliminary injunction continuing the terms of the temporary restraining order. (ECF No. 55.) On July 15, 2019, the FTC filed its motion for summary judgment against Defendants.

This Court, having considered the arguments, memoranda and exhibits filed in support of the FTC's motion for summary judgment, and all other pleadings and files in this action, and now being fully advised in the premises, hereby **GRANTS** the FTC's motion for summary judgment and makes the following findings of law and fact:

## FINDINGS OF LAW AND FACT

1. This is an action by the FTC instituted under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010), 12 U.S.C. § 5538). The Complaint seeks both permanent injunctive relief and disgorgement for Defendants' deceptive and unlawful acts or practices in connection with the marketing and sale of mortgage assistance relief services.

2.  The FTC has the authority under Section 13(b) of the FTC Act to seek the relief it has requested, and the Complaint states a claim upon which relief can be granted against Defendants.

3.  This Court has jurisdiction over the subject matter of this case and personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b). This action arises under 15 U.S.C. § 45(a).

4.  Venue in the District of Nevada is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) and (c).

5.  The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. Pursuant to 12 U.S.C. § 5538, the FTC also enforces Regulation O, 12 C.F.R. Part 1015, which requires mortgage assistance relief services providers to make certain disclosures, prohibits certain misrepresentations, and generally prohibits the collection of an advance fee. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and § 626, 123 Stat. 678, as clarified by § 511, 123 Stat. 1763-64, and amended by § 1097, 124 Stat. 2102-03, 12 U.S.C. § 5538, authorize the FTC, through its own attorneys, to initiate federal district court proceedings to enjoin violations of the FTC Act and Regulation O and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.

6.  Defendant Consumer Defense, LLC (Nevada) is a Nevada limited liability company and transacts or has transacted business in this district and throughout the United States.

7.  Defendant Consumer Link, Inc. is a Nevada corporation and transacts or has transacted business in this district and throughout the United States.

8.  Defendant Consumer Defense, LLC (Utah) is a Utah limited liability company and transacts or has transacted business in this district and throughout the United States.

9.  Defendant Preferred Law, PLLC is a Utah professional limited liability company and transacts or has transacted business in this district and throughout the United States.

10. Defendant American Home Loan Counselors is a Utah corporation and transacts or has transacted business in this district and throughout the United States.

11. Defendant Consumer Defense Group, LLC is a Utah limited liability company and transacts or has transacted business in this district and throughout the United States.

12. Defendant American Home Loans, LLC is a Utah limited liability company and transacts or has transacted business in this district and throughout the United States.

13. Defendant AM Property Management, LLC is a Utah limited liability company and transacts or has transacted business in this district and throughout the United States.

14. Defendant FMG Partners, LLC is a Utah limited liability company and transacts or has transacted business in this district and throughout the United States.

15. Defendant Brown Legal, Inc. is a Utah corporation and transacts or has transacted business in this district and throughout the United States.

16. Defendant Zinly, LLC is a Utah limited liability company and transacts or has transacted business in this district and throughout the United States

17. At all times material to this Complaint, acting alone or in concert with others, Defendant Jonathan Hanley has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants.  He had actual knowledge of the

violative acts and practices set forth in Findings 22–38 below. Defendant Jonathan Hanley transacts or has transacted business in this district and throughout the United States.

18. At all times material to this Complaint, acting alone or in concert with others, Defendant Sandra Hanley has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants. She had actual knowledge of the violative acts and practices set forth in Findings 22–38 below. Defendant Sandra Hanley transacts or has transacted business in this district and throughout the United States.

19. Defendants Consumer Defense, LLC (Nevada), Consumer Link, Inc., Consumer Defense, LLC (Utah), Preferred Law, PLLC, American Home Loan Counselors, Consumer Defense Group, LLC, American Home Loans, LLC, AM Property Management, LLC, FMG Partners, LLC, Brown Legal, Inc., and Zinly, LLC have operated as a common enterprise while engaging in the deceptive and unlawful acts and practices set forth in Findings 22–38 below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, managers, business functions, and that commingle funds. Because Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices set forth in Findings 22–38 below.

20. Defendant Jonathan Hanley has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

21. Defendant Sandra Hanley has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

22. The activities of Defendants are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

23. Since at least 2011, Defendants have marketed mortgage assistance relief services online and through telemarketing. Defendants have preyed on financially distressed homeowners by luring them into signing contracts for mortgage assistance relief services with promises that Defendants will modify consumers' mortgage loans to make their payments more affordable. Defendants have touted a perfect or nearly perfect track record of success in obtaining modifications, including with particular lenders, and in many instances have provided a guarantee that they will not fail to obtain modifications for their customers. Defendants have often claimed that these modifications will reduce homeowners' interest rates and monthly payments by substantial amounts.

24. Defendants have typically charged $3,900 in monthly installments of $650, depending on how much the consumer is willing to pay. Defendants have explicitly told consumers that they will not start working on their files until they receive payment. Defendants have charged these fees before they have obtained any modification or settlement offers from lenders and consumers have agreed to such offers.

25. In numerous instances, Defendants have failed to obtain any relief for their customers. In numerous instances, consumers have learned from their lenders that Defendants failed to provide complete modification documents, submitted irrelevant requests for information that would not lead to getting a modification, or never even contacted the lenders at all. Many consumers have incurred substantial interest charges and other penalties from paying Defendants instead of their mortgages, and some have fallen into foreclosure and lost their homes.

26. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or sale or performance of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants generally will obtain mortgage loan modifications for consumers that will make their payments substantially more affordable, substantially lower their interest rates, or help them avoid foreclosure. In truth and in fact, in numerous instances in which Defendants have made these representations, such representations were false or not substantiated at the time Defendants made them. Therefore, the making of these representations constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

27. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or sale of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants are affiliated with, endorsed or approved by, or are otherwise associated with the maker, holder, or servicer of the consumer's dwelling loan, including claiming that Defendants have a special relationship or special agreements with the maker, holder, or servicer of the consumer's dwelling loan. In truth and in fact, in numerous instances in which Defendants have made these representations, Defendants were not affiliated with, endorsed or approved by, or were otherwise associated with the maker, holder, or servicer of the consumer's dwelling loan. Therefore, Defendants' representations are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

28. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or sale of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants are part of or affiliated with, endorsed

Case 2:18-cv-00030-JCM-BNW Document 253-23 Filed 12/05/19 Page 8 of 29

or approved by, or are otherwise associated with the federal government or federal government programs. In truth and in fact, in numerous instances in which Defendants have made these representations, Defendants were not part of or affiliated with, endorsed or approved by, or were otherwise associated with the federal government or federal government programs. Therefore, Defendants' representations are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

29. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or sale of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that the consumer is not obligated to, or should not, make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan. In truth and in fact, in numerous instances in which Defendants have made these representations, the consumer was obligated to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan. Therefore, Defendants' representations are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

30. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have asked for or received payment before consumers have executed a written agreement between the consumer and the loan holder or servicer that incorporates the offer obtained by Defendants, in violation of Section 1015.5(a) of Regulation O, 12 C.F.R. § 1015.5(a).

31. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have represented, expressly or by

implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer, in violation of Section 1015.3(a) of Regulation O, 12 C.F.R. § 1015.3(a).

32. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have misrepresented, expressly or by implication, material aspects of their services, including, but not limited to, Defendants' likelihood of obtaining mortgage loan modifications for consumers that will make their payments substantially more affordable, substantially reduce their interest rates, and avoid foreclosure, in violation of Section 1015.3(b) of Regulation O, 12 C.F.R. § 1015.3(b).

33. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have misrepresented, expressly or by implication, material aspects of their services, including, but not limited to, Defendants are affiliated with, endorsed or approved by, or otherwise associated with (i) the United States government, (ii) any governmental homeowner assistance plan, (iii) any Federal government agency, unit, or department; or (iv) the maker, holder, or servicer of the consumer's dwelling loan, in violation of Section 1015.3(b) of Regulation O, 12 C.F.R. § 1015.3(b).

34. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have misrepresented, expressly or by implication, material aspects of their services, including, but not limited to, the consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan, in violation of Section 1015.3(b) of Regulation O, 12 C.F.R. § 1015.3(b).

35. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have failed to clearly and prominently make the following disclosures in all general commercial communications: (a) "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," and (b) "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of Section 1015.4(a) of Regulation O, 12 C.F.R. § 1015.4(a).

36. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have failed to clearly and prominently make the following disclosures in all consumer-specific commercial communications: (a) "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," (b) "[Name of company] is not associated with the government, and our service is not approved by the government or your lender," and (c) "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of Section 1015.4(b) of Regulation O, 12 C.F.R. § 1015.4(b).

37. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have failed to clearly and prominently make the following disclosures in all general and consumer-specific commercial communications: "If you stop paying your mortgage, you could lose your home and damage your credit," in violation of Section 1015.4(c) of Regulation O, 12 C.F.R. § 1015.4(c).

38. Defendants have received revenues less refunds and chargebacks of at least $18,428,370 since January 8, 2013, as a direct result of their violations of Section 5 of the FTC Act and Regulation O.

39. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act of Regulation O. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

40. Based on the record before this Court, the Court finds that there is no genuine issue as to any material fact, and the FTC is entitled to judgment as a matter of law against Defendants pursuant to Federal Rule of Civil Procedure 56.

41. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

42. This Court is persuaded that the danger of future violations by Defendants justifies the issuance of injunctive relief. Specifically, it is proper in this case to issue a permanent injunction that: (a) bans Defendants from marketing or selling any secured or unsecured debt relief product or service; (b) prohibits Defendants from making various misrepresentations regarding financial-related products and services or any other product or service; (c) requires Defendants to have substantiation for claims regarding any product or service; (d) prohibits

Defendants from disclosing, using, or benefitting from customer information of any person that any Defendant obtained before the entry of this Order in connection with their marketing and sale of mortgage assistance relief services; and (e) provides such other ancillary relief as is necessary to assist the FTC and the Court in monitoring Defendants' compliance with such a permanent injunction

43. It is proper in this case to enter a monetary judgment against Defendants, jointly and severally, for their violations of Section 5 of the FTC Act and Regulation O. The FTC is entitled to judgment against Defendants, jointly and severally, in the amount of $18,428,370, the total gross revenues received by them less refunds and chargebacks, even though this amount may exceed their unjust enrichment.

44. This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

45. Pursuant to Federal Rule of Civil Procedure 65(d) the provisions of this Order are binding upon each Defendant, their successors and assigns, and their officers, agents, employees and attorneys, and upon those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

46. Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. **"Assisting Others"** includes:

1. performing customer service functions, including receiving or responding to consumer complaints;

2. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4. providing names of, or assisting in the generation of, potential customers;

5. performing marketing, billing, or payment services of any kind; or

6. acting or serving as an owner, officer, director, manager, or principal of any entity

B. **"Defendants"** means the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination. **"Corporate Defendants"** means Consumer Defense, LLC (a Nevada LLC), Consumer Link, Inc., Consumer Defense, LLC (a Utah LLC), Preferred Law, PLLC, American Home Loan Counselors, Consumer Defense Group, LLC (f/k/a Modification Review Board, LLC), American Home Loans, LLC, AM Property Management, LLC, FMG Partners, LLC, Brown Legal, Inc., and Zinly, LLC, and their successors and assigns and any other entity marketing or selling Secured or Unsecured Debt Relief Products or Services that is owned or controlled, in whole or in part, by any Defendant. **"Individual Defendants"** means Jonathan P. Hanley and Sandra X. Hanley, and any other names by which they might be known.

C. **"Financial Product or Service"** means any product, service, plan, or program represented, expressly or by implication, to:

Case 2:18-cv-00030-JCM-BNW Document 220 Filed 12/05/18 Page 14 of 29

1.  provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit;

2.  provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

3.  improve, repair, or arrange to improve or repair, any consumer's credit record, credit history, or credit rating; or

4.  provide advice or assistance to improve any consumer's credit record, credit history, or credit rating

D. "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

E. "**Receivership Entities**" means the Corporate Defendants, as well as any other business related to Defendants' mortgage assistance relief services business and which the Receiver has reason to believe is owned or controlled in whole or in part by any Defendant, including but not limited to any other mortgage assistance relief services business operated by the Individual Defendants.

F. "**Secured or Unsecured Debt Relief Product or Service**" means:

1.  With respect to any mortgage, loan, debt, or obligation between a Person and one or more secured or unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

    a.  stop, prevent, or postpone any mortgage or deed of foreclosure sale for a Person's dwelling, any other sale of collateral, any repossession of a Person's dwelling or other

collateral, or otherwise save a Person's dwelling or other collateral from foreclosure or repossession;

b. negotiate, obtain, or arrange a modification, or renegotiate, settle, or in any way alter any terms of the mortgage, loan, debt, or obligation, including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a Person to a secured or unsecured creditor or debt collector;

c. obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation;

d. negotiate, obtain, or arrange any extension of the period of time within which a Person may (i) cure his or her default on the mortgage, loan, debt, or obligation, (ii) reinstate his or her mortgage, loan, debt, or obligation, (iii) redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

e. obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

f. negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder.

The foregoing shall include any manner of claimed assistance, including auditing or examining a Person's application for the mortgage, loan, debt, or obligation

2. With respect to any loan, debt, or obligation between a Person and one or more unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

    a. repay one or more unsecured loans, debts, or obligations; or

    b. combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

## ORDER

### BAN ON SECURED AND UNSECURED DEBT RELIEF PRODUCTS AND SERVICES

**I.**     **IT IS THEREFORE ORDERED** that Defendants are permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, or selling, or Assisting Others in the advertising, marketing, promoting, offering for sale, or selling, of any Secured or Unsecured Debt Relief Product or Service.

### PROHIBITED MISREPRESENTATIONS REGARDING FINANCIAL PRODUCTS AND SERVICES

**II.**     **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any Financial Product or Service, are permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, expressly or by implication:

    A.     the terms or rates that are available for any loan or other extension of credit, including:

        1.     closing costs or other fees;

2.    the payment schedule, monthly payment amount(s), any balloon payment, or other payment terms;

3.    the interest rate(s), annual percentage rate(s), or finance charge(s), and whether they are fixed or adjustable;

4.    the loan amount, credit amount, draw amount, or outstanding balance; the loan term, draw period, or maturity; or any other term of credit;

5.    the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third parties;

6.    whether any specified minimum payment amount covers both interest and principal, and whether the credit has or can result in negative amortization; or

7.    that the credit does not have a prepayment penalty or whether subsequent refinancing may trigger a prepayment penalty and/or other fees

B.    the ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing current, accurate negative information from the consumer's credit record or history;

C.    that a consumer will receive legal representation; or

D.    any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics

## PROHIBITED MISREPRESENTATIONS REGARDING ANY PRODUCTS OR SERVICE

**III.    IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, in connection with the advertising, marketing, promoting, offering for sale, or selling of any product, service, plan, or program, are permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, expressly or by implication:

A.    any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

B.    that any Person is affiliated with, endorsed or approved by, or otherwise connected to any other Person; government entity; public, non-profit, or other non-commercial program; or any other program;

C.    the nature, expertise, position, or job title of any Person who provides any product, service, plan, or program;

D.    the Person who will provide any product, service, plan, or program to any consumer;

E.    that any Person providing a testimonial has purchased, received, or used the product, service, plan, or program;

F.    that the experience represented in a testimonial of the product, service, plan, or program represents the Person's actual experience resulting from the use of the

product, service, plan, or program under the circumstances depicted in the advertisement; or

G.  any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics

## PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS

IV. **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, in connection with the sale of any product or service, are permanently restrained and enjoined from making any representation or Assisting Others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of such product or service, unless the representation is non-misleading, and, at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## CUSTOMER INFORMATION

V. **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A. failing to provide sufficient customer information to enable the FTC to efficiently administer consumer redress. If a representative of the FTC requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the FTC, within 14 days;

B. disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the marketing or sale of Secured or Unsecured Debt Relief Products or Services; and

C. failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the FTC.

D. Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

**MONETARY JUDGMENT**

**VI.    IT IS FURTHER ORDERED** that:

A. Judgment in the amount of EIGHTEEN MILLION, FOUR HUNDRED TWENTY EIGHT THOUSAND, THREE HUNDRED AND SEVENTY DOLLARS ($18,428,370) is entered in favor of the FTC against Defendants, jointly and severally, with post-judgment interest at the legal rate, as equitable monetary relief.

B.  The monetary judgment set forth in this Section VI is enforceable against any asset, real or personal, whether located within the United States or outside the United States, owned jointly or singly by, on behalf of, for the benefit of, in trust by or for, or as a deposit for future goods or services to be provided to, any Defendant, whether held as tenants in common, joint tenants with or without the right of survivorship, tenants by the entirety, and/or community property.

C.  All financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or Person, whether located within the United States or outside the United States, that holds, controls, or maintains accounts or assets of, on behalf of, or for the benefit of, any Receivership Entity, whether real or personal, whether located within the United States or outside the United States, shall, within ten (10) business days from receipt of a copy of this Order, turn over such account or asset to the Receiver or his designated agent, including, but not limited to:

1.  E*TRADE Securities LLC shall, within ten (10) business days of receipt of a copy of this Order, liquidate all holdings in account number xxxx6352 in the name of Brown Legal, Inc. and transfer the proceeds of such liquidation to the Receiver or his designated agent;

2.  Wells Fargo Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in account number xxxx9414 in the name of FMG Partners LLC;

3.  JP Morgan Chase Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in (a) account number xxxx9282 in the name of Consumer Defense LLC, (b) account

Case 2:18-cv-00030-JCM-BNW  Document 253-23  Filed 07/15/19  Page 22 of 29

number xxxx0861 in the name of Preferred Law PLLC, (c) account number
xxxx5805 in the name of AM Property Management LLC, (d) account number
xxxx2192 in the name of Preferred Law PLLC, (e) account number xxxx8202 in the
name of American Home Loans, LLC, (f) account number xxxx0958 in the name of
Modification Review Board, LLC, and (g) account number xxxx3556 in the name of
Modification Review Board, LLC;

4. YapStone shall, within ten (10) business days of receipt of a copy of this Order,
transfer to the Receiver or his designated agent all funds, if any, in account number
xxxx8119 in the name of Jonathan Hanley and/or Sandra Hanley;

5. Airbnb shall, within ten (10) business days of receipt of a copy of this Order, transfer
to the Receiver or his designated agent all funds, if any, in the account in the name of
AM Property Management, LLC;

6. Authorize.net shall, within ten (10) business days of receipt of a copy of this Order,
transfer to the Receiver or his designated agent all funds, if any, in merchant account
number xxxx1617 in the name of AM Property Management LLC;

7. Intuit Payment Solutions LLC shall, within ten (10) business days of receipt of a copy
of this Order, transfer to the Receiver or his designated agent all funds, if any, in (a)
merchant account number xxxx7065 in the name of AM Property Management LLC,
(b) merchant account number xxxx3533 in the name of AM Property Management
LLC, and (c) merchant account number xxxx9747 in the name of Preferred Law
PLLC.

D. In partial satisfaction of the judgment against Defendants in Section VI.A, any financial
or brokerage institution, escrow agent, title company, commodity trading company,

business entity, or person, whether located within the United States or outside the United States, that holds, controls, or maintains accounts or assets of, on behalf of, or for the benefit of, any Individual Defendant, whether real or personal, whether located within the United States or outside the United States, shall, within ten (10) business days from receipt of a copy of this Order, turn over such account or asset to the FTC or its designated agent, including, but not limited to:

1. E*TRADE Securities LLC shall, within ten (10) business days of receipt of a copy of this Order, liquidate all holdings in account number xxxx3682 in the name of Sandra Hanley and transfer the proceeds of such liquidation to the FTC or its designated agent;

2. JP Morgan Chase Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all cash currently being held in safe deposit box number xxxx3127 in the name of Sandra Hanley.

E. The asset freeze is modified to permit the transfers identified in this Section. Upon completion of those transfers, the asset freeze as to Defendants is dissolved.

F. Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

G. All money paid to the FTC pursuant to this Order may be deposited into a fund administered by the FTC or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the FTC may apply any remaining money for such other equitable relief (including consumer information

remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the FTC or its representatives may take pursuant to this Subsection.

## CONTINUATION OF RECEIVERSHIP

**VII.** **IT IS FURTHER ORDERED** that Thomas McNamara, Esq., shall continue as a permanent receiver over the Receivership Entities with full powers of a permanent receiver, including but not limited to those powers set forth in the Preliminary Injunction (ECF No. 55), and including full liquidation powers. The Receiver is directed to wind up the Receivership Entities and liquidate all assets within 365 days after entry of this Order, including but not limited to the following assets: (a) the real property located at 41 West 9000 South, Sandy, Utah, (b) the real property located at 8165 Royal Street East, #9, Park City, Utah, (c) the 2008 Mercedes Benz S550 identified in the Preliminary Report of Temporary Receiver (ECF No. 26), (d) the 2014 Porsche Carrera 4S identified in the Preliminary Report of Temporary Receiver (ECF No. 26), and (e) the 2015 Forest River Viking V-Trec Camping Trailer identified in the Preliminary Report of Temporary Receiver (ECF No. 26). Any party or the Receiver may request that the Court extend the Receiver's term for good cause. Upon termination of the receivership and final payment to the Receiver of all approved fees, costs, and expenses, the Receiver shall turn over to the FTC or its designated agent all remaining assets in the receivership estate.

## ORDER ACKNOWLEDGMENTS

**VIII.** **IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.   Each Defendant, within 7 days of entry of this Order, must submit to the FTC an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.   For 5 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.   From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## COMPLIANCE REPORTING

IX.   **IT IS FURTHER ORDERED** that Defendants make timely submissions to the FTC:

A.   One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

   1.   Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the FTC may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical,

postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which the Individual Defendants must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the FTC.

2. Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2. Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C. Each Defendant must submit to the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to the FTC required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a FTC representative in writing, all submissions to the FTC pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Consumer Defense, X180017.

## RECORDKEEPING

X. **IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, each

Corporate Defendant and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.    accounting records showing the revenues from all products and services sold;

B.    personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC; and

E.    a copy of each unique advertisement or other marketing material.

## COMPLIANCE MONITORING

**XI.    IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the FTC, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.   For matters concerning this Order, the FTC is authorized to communicate directly with each Defendant.  Defendants must permit representatives of the FTC to interview any employee or other Person affiliated with any Defendant who has agreed to such an interview.  The Person interviewed may have counsel present.

C.   The FTC may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the FTC's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.   Upon written request from a representative of the FTC, any consumer reporting agency must furnish consumer reports concerning the Individual Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

**RETENTION OF JURISDICTION**

**XII.   IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED:**

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE

DATED: December 5, 2019