UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:18-CV-30 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| CONSUMER DEFENSE, LLC, et al., | |
| Defendant(s). | |

Presently before the court is the matter of the *Federal Trade Commission v. Consumer Defense, LLC et al*, case number 2:18-cv-00030-JCM-BNW.

Upon an appeal from this court's monetary award, the Ninth Circuit vacated the award and remanded this matter for this court to determine whether a monetary award is nevertheless appropriate.

Also before the court is the Federal Trade Commission ("FTC")'s motion for entry of monetary judgment against defendants Jonathan and Sandra Hanley (the "Hanleys"). (ECF No. 391). It has filed a proposed order thereto. (ECF No. 395). The Hanleys responded to the motion and the proposed order. (ECF Nos. 392, 396). The FTC replied in support of its motion. (ECF No. 393).

**I.    BACKGROUND**

The FTC commenced this action on January 8, 2018, seeking a permanent injunction and other equitable relief pursuant to section 13(b) of the FTC Act ("section 13(b)") and section 5538 of the Dodd-Frank Act against the Hanleys and eleven various corporate defendants (collectively,

**James C. Mahan**
**U.S. District Judge**

"defendants"). (ECF No. 1). The complaint alleged defendants were participating in an unlawful mortgage assistance relief services scheme in violation of section 5 of the FTC Act and multiple provisions of Regulation O. (*Id.*); *see* 15 U.S.C. § 45; 12 C.F.R. Part 1015.

On December 5, 2019, upon motion by the FTC, this court granted summary judgment and entered an order for permanent injunction and monetary judgment against defendants (the "final order"). (ECF No. 320). The final order included an $18,428,370 monetary judgment against defendants as "equitable monetary relief." (*Id.*). While the final order included findings of fact and liability for statutory violations, the Hanleys appealed on the sole ground that the court could not award monetary relief under section 13(b). (*See* ECF Nos. 320, 328, 330). While on appeal, the Supreme Court held in *AMG Capital Management v. FTC*, 141 S.Ct. 1341 (2021) that section 13(b) indeed bars awards of monetary relief.

The Ninth Circuit found (1) it is unclear whether this court awarded monetary relief *solely* under section 13(b), and (2) the FTC—despite no explicit reference thereto in its pleadings—did not waive reliance on section 19 of the FTC Act, 15 U.S.C. § 57b, ("section 19") for monetary relief. (ECF No. 370). The final order was vacated in part and remanded for this court "to consider in the first instance whether an award is appropriate here under section 19 of the FTC Act." (*Id.*).

The order on mandate issued on March 18, 2022, and the FTC filed the instant motion four days later. (ECF Nos. 390, 391). After adjusting for section 19's statute of limitations, the FTC now seeks a monetary judgment of $11,906,792. (ECF No. 391). In opposition, the Hanleys request the court "reject the FTC's demand for payment entirely" and order the FTC to refund any payment the Hanleys have already made to the agency. (ECF No. 392).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. LEGAL STANDARD

The Supreme Court held "[s]ection 13(b) does not explicitly authorize the [FTC] to obtain court-ordered monetary relief, and such relief is foreclosed by the structure and history of the Act." *AMG Cap. Mgmt.*, 141 S.Ct. at 1343. However, monetary relief is instead available under section 19. *Id.*

The relevant language of section 19 reads:

> "The court in an action under subsection (a) shall have jurisdiction to grant such relief as the court finds necessary to **redress injury** to consumers or other persons…resulting from the rule violation or the unfair or deceptive act or practice…. Such relief may include, **but shall not be limited to**, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice, as the case may be; except that **nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages**."

15 U.S.C. § 57b(b) (emphasis added).

The parties agree that the Ninth Circuit's decision in *FTC v. Figgie International, Inc.*, 994 F.2d 595 (1993) (hereinafter "*Figgie*") is the seminal case on monetary relief under section 19. (*See* ECF Nos. 392, 393). In *Figgie*, a seller of heat detectors appealed from the district court order finding it liable for dishonest or fraudulent marketing practices and awarding damages under section 19. 994 F.2d at 598. The district court awarded damages in the amount of $7.59 million to $49.95 million—representative of the range between the seller's profits and the full amount spent by consumers—to be "used to provide direct redress to consumers…who can make a valid claim for such redress." *Id.* at 598, 605.

The Ninth Circuit vacated and remanded because "Congress provided for 'redress,'" and the seller's "receipts and profits provide neither the top nor bottom limit of the remedy." *Id.* at 607. Further, an award exceeding redress to consumers is punitive in nature, which is expressly prohibited by the language of section 17. *See* 15 U.S.C. 57b(b); *id.* at 607 (noting disgorgement

of the seller's receipts exceeding redress to consumers would be for the purposes of punishing the seller).

*Figgie* instructs that whether monetary damages are appropriately awarded under section 19 depends on the purpose of the damages. Thus, to determine whether damages may be appropriately awarded here depends on what purposes the monetary award may be used for. Any portion that provides redress to consumers is permitted under section 19, whilst any portions that are punitive and exemplary in nature are not. 15 U.S.C. § 57b(b); *see Figgie*, 994 F.2d at 598, 605, 607.

## III.   DISCUSSION

The court first addresses the vacated portion of the final order and considers the issue on remand. Subsequently, the court adjudicates the FTC's instant motion.

### a. The final order

The relevant portion of the final order reads:

> All money paid to the FTC pursuant to this Order may be deposited into a fund administered by the FTC or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the FTC may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.

(ECF No. 320 at 23–24). It permits use of the monetary award in three ways: (1) for equitable relief including consumer redress and associated expenses; (2) other equitable relief reasonably related to defendants' unlawful practices; and (3) deposit to the U.S. Treasury as disgorgement. (*See id.*). The court addresses each in turn.

James C. Mahan
U.S. District Judge

- 4 -

Both statutory language and caselaw explicitly allow for direct consumer redress under section 19.  15 U.S.C. § 57b(b); *Figgie*, 994 F.2d at 605.  Moreover, both allow for associated expenses.  15 U.S.C. § 57b(b); *Figgie*, 994 F.2d at 605.  Section 19 explicitly permits, without exhaustion, expenses for contract modification, monetary refund, property return, payment of damages, and public notification of unlawful practices and availability of monetary award. *See* 15 U.S.C. § 57b(b).  The Ninth Circuit permitted expenses for finding consumers, advertising availability of monetary redress and falsity of misrepresentations, processing consumer claims, and reimbursing consumers. *See Figgie*, 994 F.2d at 607.[1]

In terms of redress, the final order allows "consumer redress and any attendant expenses for the administration of any redress fund."  (ECF No. 320).  Consumer redress and attendant expenses are clearly permitted as part of a monetary award. *See* 15 U.S.C. § 57b(b); *Figgie*, 994 F.2d at 605.  However, as written, the final order is too broad.  (*See* ECF No. 320).  The Ninth Circuit requires *reasonable* spending. *Figgie*, 994 F.2d at 607 ("We can see no basis for allowing the [FTC] to keep money in excess of what it *reasonably spends* to [provide redress]….").  Section 19 would permit only "consumer redress and *reasonable* attendant expenses for the administration of any redress fund." *See* 15 U.S.C. § 57b(b); *id*.

The final order allowed for other relief where "direct redress to consumers is wholly or partially impracticable or money remains after redress is completed."  (ECF No. 320).  Specifically, "the FTC may apply any remaining money for such other equitable relief (including

---

[1] "We can see no basis for allowing the [FTC] to keep money in excess of what it *reasonably spends* to find purchasers of the heat detectors, advertise to them the availability of money and the importance of using smoke rather than heat detectors at appropriate locations, and process their claims and reimburse them." (emphasis added).

James C. Mahan
U.S. District Judge

- 5 -

consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint." (*Id.*). *Figgie* precludes this type of award. 994 F.2d at 608.

In *Figgie*, the Ninth Circuit determined the district court's order providing for money not used to refund consumers to be donated to nonprofit organizations concerned with fire safety was an "extraordinary provision" that could not "be characterized as 'redress.'" *Id.* Even though donating money to such nonprofit organizations is clearly related to defendants' misrepresentations, the court found that "[t]his portion of the award was outside the boundaries of the discretion given to the district court by [section 19]." *Id.* It noted the prohibition of exemplary or punitive damages demonstrated that Congress's intent "was not to punish deceptive trade practices," but "only to authorize redress to consumers and others for 'injury resulting' from the trade practice." *Id.*

Distribution of money after redress is completed—or where it is impracticable—even for purposes "reasonably related" to the Hanleys' unlawful practices is precluded under *Figgie*. (*See* ECF No. 320); 994 F.2d at 607.

Likewise, *Figgie* precludes disgorgement under section 19. 994 F.2d at 607. Allowing the FTC to keep funds beyond not only redress, but also "other equitable relief" that is expressly precluded, as disgorgement would be inconsistent and unjust. Thus, authorizing monetary award "not used for such equitable relief to be deposited to the U.S. Treasury as disgorgement" is not permitted under section 19. (ECF No. 320); *see* 15 U.S.C. § 57b(b); *Figgie*, 994 F.2d at 607.

### b. FTC's motion for entry of monetary judgment

Consistent with the foregoing, the court must revise its monetary judgment awarded in the final order. The FTC adjusted its request to account for the statute of limitations under section 19. (ECF Nos. 391, 395-1). To wit, instead of the original $18,428,370, the FTC now requests

**James C. Mahan**
**U.S. District Judge**

- 6 -

$11,906,792.  (ECF Nos. 320, 391).  Notably, as with the prior award, this number depends on the Hanleys' net revenues.  (ECF Nos. 320, 391).

The Ninth Circuit has addressed how to appropriately determine redress under section 19.  *See Figgie*, 994 F.2d at 606–09.  "The fraud in selling, not the value of the thing sold, is what entitles consumers…to refunds."  *Id.* at 606.  "[R]eceipts and profits provide neither the top nor bottom limit of the remedy" when the remedy is redress.  *Id.* at 607.  The minimum amount of redress should not exceed what is necessary to "mak[e] amends to someone who has been wronged."  *See id.* at 607.  In other words, the minimum amount of redress should not be more than what is necessary to return consumers to the status quo by refunding them and compensating them for their losses resulting from the seller's unlawful practices.  *See id.*  The maximum amount of redress may be the full price of what consumers spent on the service or product that was the subject of deceptive practices.  *See id.* at 598, 608.  It matters not if this amount exceeds the seller's profits.  *Id.* at 608.

The parties dispute the effect of *FTC v. Elegant Solutions*.  (*See* ECF Nos. 395, 396).  There, the Ninth Circuit briefly discussed monetary relief under section 19.  Filed Memorandum Disposition at 7, *FTC v. Elegant Sols., Inc.*, No. 20-55766, (9th Cir. June 9, 2022) (hereinafter "*Elegant Solutions*").  Though unreported and therefore nonbinding, this court finds it persuasive.  In *Elegant Solutions*, the district court granted a monetary award under section 19 "based on a calculation of consumer loss, as opposed to a calculation of net unlawful profits."  *Id.* (citing *Figgie*, 994 F.2d at 607).  The Ninth Circuit found this was a proper calculation.  *Id.*

Concerning a monetary award, this case is analogous.  Both matters award monetary relief under section 19 pursuant to a rule violation contemplated by 15 U.S.C. § 57b(a).  Thus, the proper monetary award here is total consumer loss, less any refunds or chargebacks.  In other words,

**James C. Mahan**
**U.S. District Judge**

- 7 -

defendants' net revenues. However, the monetary award is subject to limitation of how it can be spent. *See Figgie*, 994 F.2d at 608. Any award in excess of this is to be refunded to the Hanleys. *See id.* (instructing the district court to "modify its order to provide for refund to [the seller] of any funds not expended for authorized purposes").

To summarize, authorized purposes include only redress to consumers and reasonable attendant expenses. *See Figgie*, 994 F.2d at 606–08. Redress may include refunds and compensation for any harm resulting from the Hanleys' unlawful practices contemplated in the "FINDINGS OF LAW AND FACT" section of the final order. (*See* ECF No. 320). The award must be sufficient to provide redress to all consumers harmed by the Hanley's deceptive practices, but may only be used as necessary to redress consumers who make a valid claim. Any excess is to be refunded to the Hanleys.

## IV.  CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the final order (ECF No. 320) is VACATED insofar as it awards a monetary judgment against the Hanleys.

IT IS FURTHER ORDERED that the final order (ECF No. 320) still maintains full force and effect against the corporate defendants.

IT IS FURTHER ORDERED that the injunctive provisions of the final order maintain full force and effect against the Hanleys.

IT IS FURTHER ORDERED that the FTC's motion for monetary judgment against defendants Jonathan and Sandra Hanley (ECF No. 391) is GRANTED.

IT IS FURTHER ORDERED that the FTC's proposed order (ECF No. 395) is REJECTED.

**James C. Mahan**
**U.S. District Judge**

- 8 -

IT IS FURTHER ORDERED that judgment in the amount of ELEVEN MILLION NINE HUNDRED SIX THOUSAND SEVEN HUNDRED NINETY-TWO ($11,906,792) is entered in favor of the FTC against the Hanleys, jointly and severally, with post-judgment interest at the legal rate in accordance with the following terms:

A. The monetary judgment set forth in this Section VI is enforceable against any asset, real or personal, whether located within the United States or outside the United States, owned jointly or singly by, on behalf of, for the benefit of, in trust by or for, or as a deposit for future goods or services to be provided to, any Defendant, whether held as tenants in common, joint tenants with or without the right of survivorship, tenants by the entirety, and/or community property.

B. All financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or Person, whether located within the United States or outside the United States, that holds, controls, or maintains accounts or assets of, on behalf of, or for the benefit of, any Receivership Entity, whether real or personal, whether located within the United States or outside the United States, shall, within ten (10) business days from receipt of a copy of this Order, turn over such account or asset to the Receiver or his designated agent, including, but not limited to:

   1. YapStone shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in account number xxxx8119 in the name of Jonathan Hanley and/or Sandra Hanley;

C. In partial satisfaction of the judgment against Defendants in Section VI.A, any financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or person, whether located within the United States or outside the

James C. Mahan
U.S. District Judge

- 9 -

United States, that holds, controls, or maintains accounts or assets of, on behalf of, or for the benefit of, any Individual Defendant, whether real or personal, whether located within the United States or outside the United States, shall, within ten (10) business days from receipt of a copy of this Order, turn over such account or asset to the FTC or its designated agent, including, but not limited to:

1. E*TRADE Securities LLC shall, within ten (10) business days of receipt of a copy of this Order, liquidate all holdings in account number xxxx3682 in the name of Sandra Hanley and transfer the proceeds of such liquidation to the FTC or its designated agent;

2. JP Morgan Chase Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all cash currently being held in safe deposit box number xxxx3127 in the name of Sandra Hanley.

D. The asset freeze is modified to permit the transfers identified in this Section. Upon completion of those transfers, the asset freeze as to Defendants is dissolved.

E. Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

F. All money paid to the FTC pursuant to this Order may be deposited into a fund administered by the FTC or its designee to be used for equitable relief, including consumer redress and reasonable attendant expenses for the administration of the redress fund. Redress includes refunds and compensation for any harm resulting from the Hanleys unlawful practices. Defendants have no right to challenge any actions the FTC or its representatives may take pursuant to this Subsection.

**James C. Mahan**
**U.S. District Judge**

1  IT IS FURTHER ORDERED that this court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this order.

DATED December 30, 2022.

_____
UNITED STATES DISTRICT JUDGE